**No. 24-40315**

# In the United States Court of Appeals
## FOR THE FIFTH CIRCUIT

SPACE EXPLORATION TECHNOLOGIES, CORPORATION,
*Plaintiff - Appellant*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency; JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board; LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board; MARVIN E. KAPLAN, in his official capacity as a Board Member of the National Labor Relations Board; GWYNNE A. WILCOX, in her official capacity as a Board Member of the National Labor Relations Board; DAVID M. PROUTY, in his official capacity as a Board Member of the National Labor Relations Board; JOHN DOE, in his official capacity as an Administrative Law Judge of the National Labor Relations Board,
*Defendants - Appellees*

On Appeal from the U.S. District Court for the Southern District of Texas, No. 1:24-cv-00001, Judge Rolando Olvera

## EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

HARRY I. JOHNSON, III
MORGAN, LEWIS & BOCKIUS LLP
2049 Century Park East, Suite 700
Los Angeles, CA  90067
(310) 255-9005

CATHERINE L. ESCHBACH
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX  77002
(713) 890-5719

MICHAEL E. KENNEALLY
AMANDA L. SALZ
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 739-3000

*Counsel for Space Exploration Technologies Corp.*

## CERTIFICATE OF INTERESTED PERSONS

### *No. 24-40315, Space Exploration Technologies Corp. v. NLRB*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1. Space Exploration Technologies Corp. ("SpaceX"), Plaintiff and Petitioner. SpaceX has no parent corporation and no publicly held corporation owns 10% or more of its stock.

2. National Labor Relations Board, a federal administrative agency, Defendant and Respondent

3. Jennifer Abruzzo, in her official capacity as the General Counsel of the National Labor Relations Board, Defendant and Respondent

4. Lauren M. McFerran, in her official capacity as Chairman of the National Labor Relations Board, Defendant and Respondent

5. Marvin E. Kaplan, in his official capacity as Board Member of the National Labor Relations Board, Defendant and Respondent

6.    Gwynne A. Wilcox, in her official capacity as Board Member of the National Labor Relations Board, Defendant and Respondent

7.    David M. Prouty, in his official capacity as Board member of the National Labor Relations Board, Defendant and Respondent

8.    Tom Moline, *Amicus Curiae* in the underlying proceedings

9.    Deborah Lawrence, *Amicus Curiae* in the underlying proceedings

10.    Scott Beck, *Amicus Curiae* in the underlying proceedings

11.    Paige Holland-Thielen, *Amicus Curiae* in the underlying proceedings

12.    Pacific Legal Foundation, *Amicus Curiae* in the underlying proceedings

13.    Rolando Olvera, in his official capacity as United States District Judge of United States District Court for the Southern District of Texas, Brownsville Division

14.    John Doe, in his official capacity as an Administrative Law Judge of the National Labor Relations Board, Defendant[1]

---

[1] Judge Sharon L. Steckler was recently named as the ALJ in the underlying matter but has not been officially substituted by the time of

15.    United States of America, appropriates funds for and assumes debts of Defendants and Respondents

The undersigned counsel for SpaceX, separately lists the following persons as attorneys of record:

16.    Harry I. Johnson, III, Attorney for SpaceX

17.    Michael E. Kenneally, Attorney for SpaceX

18.    Catherine L. Eschbach, Attorney for SpaceX

19.    Amanda L. Salz, Attorney for SpaceX

20.    David G. Oliveira, Attorney for SpaceX

21.    Alamdar S. Hamdani, Attorney for Defendants

22.    Daniel David Hu, Attorney for Defendants

23.    Benjamin S. Lyles, Attorney for Defendants

24.    Kevin P. Flanagan, Attorney for Defendants

25.    David P. Boehm, Attorney for Defendants

26.    Daniel Brasil Becker, Attorney for Defendants

27.    Grace L. Pezzella, Attorney for Defendants

28.    Matheus Teixeira, Attorney for Defendants

---

the ruling giving rise to this motion. Judge Mara-Louis Anzalone, a second ALJ, was also named to act as Special Master.

29.    Dalford Dean Owens, Jr, Attorney for Defendants

30.    Laurie Burgess, Attorney for *Amicus Curiae*

31.    Anne Shaver, Attorney for *Amicus Curiae*

32.    Nimish Desai, Attorney for *Amicus Curiae*

33.    Joshua M. Robbins, Attorney for *Amicus Curiae*

34.    Oliver J. Dunford, Attorney for *Amicus Curiae*

Dated:  May 1, 2024                    s/ Michael E. Kenneally
                                       MICHAEL E. KENNEALLY

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ..........................................i

TABLE OF AUTHORITIES........................................................ vi

INTRODUCTION AND NATURE OF EMERGENCY............................ 1

FACTUAL AND PROCEDURAL BACKGROUND................................. 6

ARGUMENT ....................................................................... 11

I.     SpaceX is likely to succeed on the merits of its constitutional
       claims because *Jarkesy* is dispositive. ......................................... 12

       A.     The NLRB's ALJs are unconstitutionally insulated from
              removal. ................................................................ 12

       B.     The NLRB's adjudication of private rights and legal
              relief violates the Seventh Amendment. ............................. 15

II.    SpaceX will suffer irreparable harm without a preliminary
       injunction........................................................................ 21

       A.     The unconstitutionality of the NLRB proceedings
              inflicts irreparable harm....................................... 21

       B.     The NLRB proceedings are also inflicting irreparable
              economic harm. ....................................................... 24

III.   The balance of harms and public interest favor a preliminary
       injunction........................................................................ 25

CONCLUSION ................................................................... 27

CERTIFICATE OF SERVICE.................................................... 28

CERTIFICATE OF COMPLIANCE.......................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alpine Sec. Corp. v. FINRA,*
  No. 23-5129, 2023 WL 4703307 (D.C. Cir. July 5, 2023) .................. 23

*Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.,*
  309 U.S. 261 (1940) .................................................................. 20

*Atlas Roofing Co., Inc. v. OSHRC,*
  430 U.S. 442 (1977) .................................................................. 19

*Axon Enter., Inc. v. FTC,*
  598 U.S. 175 (2023) ............................................................. *passim*

*BST Holdings, L.L.C. v. OSHA,*
  17 F.4th 604 (5th Cir. 2021) ..................................................... 26

*Burgess v. FDIC,*
  639 F. Supp. 3d 732 (N.D. Tex. 2022) ....................................... 24

*Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry,*
  494 U.S. 558 (1990) .................................................................. 19

*Cmty. Fin. Servs. Ass'n of Am. Ltd. v. CFPB,*
  51 F.4th 616 (5th Cir. 2022) ..................................................... 22

*Cochran v. SEC,*
  20 F.4th 194 (5th Cir. 2021) ..................................................... 23

*Collins v. Dep't of the Treasury,*
  83 F.4th 970 (5th Cir. 2023) ..................................................... 22

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.,*
  710 F.3d 579 (5th Cir. 2013) ............................................... 21, 26

*Deerfield Med. Ctr. v. City of Deerfield Beach,*
  661 F.2d 328 (5th Cir. 1981) ..................................................... 21

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Doran v. Salem Inn, Inc.*,
422 U.S. 922 (1975) ............................................................................ 23

*Elrod v. Burns*,
427 U.S. 347 (1976) ............................................................................ 21

*Fortune v. Nat'l Cash Reg. Co.*
364 N.E.2d 1251 (Mass. 1977) ........................................................ 18

*Free Enter. Fund v. PCAOB*,
561 U.S. 477 (2010) .............................................................. 12, 23, 26

*Granfinanciera, S.A. v. Nordberg*,
492 U.S. 33 (1989) .............................................................................. 20

*In re Fort Worth Chamber of Com.*,
98 F.4th 265 (5th Cir. 2024) ............................................................... 3

*Jarkesy v. SEC*,
34 F.4th 446 (5th Cir. 2022) ...................................................... *passim*

*League of Women Voters of U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ............................................................. 26

*Louisiana v. Biden*,
55 F.4th 1017 (5th Cir. 2022) ..................................................... 12, 26

*Lucia v. SEC*,
585 U.S. 237 (2018) ..................................................................... 14, 15

*Mertens v. Hewitt Assocs.*,
508 U.S. 248 (1993) ............................................................................ 18

*Myers v. United States*,
272 U.S. 52 (1926) .............................................................................. 12

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Nken v. Holder*,
   556 U.S. 418 (2009) .......................................................................... 25

*NLRB v. Jones & Laughlin Steel Corp.*,
   301 U.S. 1 (1937) .............................................................................. 19

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
   584 U.S. 325 (2018) .......................................................................... 20

*Petermann v. Teamsters Loc. 396*,
   344 P.2d 25 (Cal. Ct. App. 1959) .................................................... 18

*Seila L. LLC v. CFPB*,
   591 U.S. 197 (2020) .......................................................................... 12

*Stern v. Marshall*,
   564 U.S. 462 (2011) .......................................................................... 26

*Thryv, Inc.*,
   372 N.L.R.B. No. 22 (Dec. 13, 2022) ................................ 4, 17, 18, 19

*Tull v. United States*,
   481 U.S. 412 (1987) ...................................................................... 16, 18

*Ward v. Village of Monroeville*,
   409 U.S. 57 (1972) ............................................................................ 24

*Wenner v. Tex. Lottery Comm'n*,
   123 F.3d 321 (5th Cir. 1997) ............................................................ 24

*Westrock Servs., Inc.*,
   366 N.L.R.B. No. 157 (Aug. 6, 2018) .................................... 13, 14, 15

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) .............................................................................. 12

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**CONSTITUTIONAL PROVISIONS & STATUTES**

5 U.S.C.
§ 1202 ............................................................... 14
§ 7521 ......................................................... 13, 14

28 U.S.C.
§ 1391 ................................................................. 9
§ 1406 ................................................................. 8

29 U.S.C. § 153 ................................................... 14

U.S. CONST.
amend. VII ............................................... *passim*
art. II .............................................. 2, 4, 12, 14
art. III ................................................... *passim*

**RULES**

5th Cir. Rule 27.3 .................................................. 1

**OTHER AUTHORITIES**

THE FEDERALIST No. 78 (Alexander Hamilton) (C. Rossiter ed. 1961)... 26

## INTRODUCTION AND NATURE OF EMERGENCY

*Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023), controls this case and necessitates immediate issuance of a preliminary injunction. This Court should preliminarily enjoin officers of the National Labor Relations Board ("NLRB" or "Board") (collectively, "Defendants") from proceeding further in administrative proceedings against Space Exploration Technologies Corp. ("SpaceX") that are inflicting here-and-now constitutional injuries.

To halt any further violation of its constitutional rights, SpaceX requests that this Court immediately issue an administrative stay of the ongoing NLRB proceedings, which opened before an Administrative Law Judge ("ALJ") on March 5, 2024, pending a decision on this Emergency Motion.[2] Relief is needed **by tomorrow, May 2 at 12 p.m. Pacific Time (2 p.m. Central Time),** when one of the ALJs will conduct a conference on discovery issues in the administrative proceedings. SpaceX meets the requirements for emergency relief under Circuit Rule 27.3 and satisfies all four preliminary injunction factors.

---

[2] SpaceX filed the Emergency Motion today, May 1, 2024, to afford this Court time to provide emergency relief before tomorrow's ALJ hearing.

1

For months, SpaceX has been subjected to NLRB proceedings that violate the Constitution four times over. In this emergency posture, SpaceX focuses on just two constitutional claims: (1) the ALJs' removal protections violate Article II and (2) the ALJ's role as factfinder violates the Seventh Amendment and Article III.[3]

To forestall these ongoing violations of its constitutional rights, SpaceX moved for a preliminary injunction of the NLRB proceedings on January 12, 2024, after the NLRB refused SpaceX's multiple requests to voluntarily delay the administrative proceedings (which the NLRB could halt at any time) to permit resolution of SpaceX's constitutional claims. The administrative hearing nonetheless opened on March 5, 2024, although opening statements and testimony were postponed so the ALJ could resolve significant discovery disputes. On April 24, 2024, SpaceX received notice that, on May 2, 2024, an ALJ would be holding a conference on those issues. Despite the exigency, the district court has not acted on the request for preliminary relief that SpaceX filed nearly four months

---

[3] SpaceX's focus on just two of its constitutional challenges aims to facilitate this Court's expedited review and is not a forfeiture of SpaceX's arguments for preliminary injunctive relief on its other challenges.

ago. Without this Court's intervention, SpaceX will suffer a new irreparable constitutional injury tomorrow.

This Court has already considered this case on a mandamus petition from the district court's order transferring this case to the Central District of California. Although this Court, by sharply divided votes, declined to exercise its mandamus power to grant relief, the case remains in the Southern District of Texas. After the denial of SpaceX's en banc petition, SpaceX sought reconsideration of the district court's transfer order and, alternatively, a ruling on the long-pending preliminary injunction motion (given the ongoing administrative proceeding) before initiation of the transfer. When SpaceX learned that it was certain to incur additional constitutional harm on May 2, SpaceX asked the district court for a preliminary injunction in time to prevent that harm. The district court has not ruled on SpaceX's requests for preliminary injunctive relief, leaving SpaceX with no option but to come to this Court to ask for preliminary injunctive relief to prevent the ongoing constitutional harm. *See In re Fort Worth Chamber of Commerce*, 98 F.4th 265, 270 (5th Cir. 2024) ("An effective denial of a preliminary injunction is an appealable order.").

Under binding Fifth Circuit precedent, SpaceX is likely to succeed on the merits of its constitutional claims. *Jarkesy* controls SpaceX's ALJ-removal and Seventh Amendment claims.

First, the administrative proceeding is being conducted by ALJs who exercise substantial executive functions while being insulated from presidential control through three layers of removal protections. Under this Court's reasoning in *Jarkesy*, 34 F.4th at 463, such a removal scheme violates Article II by impeding the President's ability to remove the ALJs. In *Jarkesy*, this Court held that a matching set of removal restrictions was unconstitutional as applied to ALJs of the Securities Exchange Commission ("SEC"). 34 F.4th at 463-64. The same conclusion follows here, because the NLRB has recognized that SEC and NLRB ALJs are identically situated.

Second, the NLRB proceeding violates SpaceX's Seventh Amendment jury-trial right by adjudicating private rights outside the confines of an Article III court. The NLRB's General Counsel alleges that SpaceX wrongfully terminated certain employees and seeks a broad award of compensatory damages for those employees. *See generally Thryv, Inc.*,

372 N.L.R.B. No. 22 (Dec. 13, 2022) (holding the NLRB will provide expansive monetary compensation for wrongfully terminated employees). The NLRB seeks to vindicate quintessential private rights for the benefit of private parties. But the Constitution permits the NLRB to adjudicate only public rights through its non-jury administrative proceedings. *See Jarkesy*, 34 F.4th at 451-55 (holding that SEC administrative adjudications violate the Seventh Amendment "because such claims do not concern public rights alone").

SpaceX is being irreparably harmed by these constitutional violations, and the irreparable harm will continue unless the Court preliminarily enjoins the NLRB proceedings pending a final decision on the merits. Even if the judiciary can cure some of the constitutional problems at final judgment, it cannot undo the injury SpaceX suffers in the meantime through "subjection to an illegitimate proceeding, led by an illegitimate decisionmaker" in "proceedings [that] violate the separation of powers." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023). Under binding precedent, such harm is "a here-and-now injury" that "is impossible to remedy once the proceeding is over." *Id.* (citation omitted). The balance of equities and public interest weigh strongly in SpaceX's favor for similar reasons.

Unless this Court issues an administrative stay and preliminary injunction of the NLRB proceedings, SpaceX's continuing constitutional harm will increase when an ALJ holds a hearing on May 2, 2024, to address the parties' discovery disputes. SpaceX respectfully requests that this Court preliminarily enjoin any further NLRB administrative proceedings pending resolution of this appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

SpaceX operates a space launch business and a global satellite-based internet service known as Starlink. D. Ct. Dkt. 37-1 ¶¶ 5-8. It employs over 14,000 people in facilities around the country, including in its Starbase facility in Boca Chica, Texas, where it is developing, manufacturing, and launching Starship, the most powerful rocket ever built; its rocket development facility in McGregor, Texas; its human spaceflight mission operations and integration facility in Houston, Texas; and its Starlink manufacturing facility in Bastrop, Texas. *Id.* ¶ 9.

On June 15, 2022, a small group of SpaceX employees sent an open letter (the "Open Letter") to SpaceX employees across all of SpaceX's locations, in many cases flooding multiple channels of communication, and

demanding that SpaceX take certain actions addressing perceived short-comings and soliciting employees to fill out a hyperlinked survey to indicate support for the Open Letter's demands and provide feedback. D. Ct. Dkt. 1 ¶¶ 43-44. Because the Open Letter blatantly violated company policies and caused significant disruption, SpaceX discharged four employees involved with its mass distribution, and discharged a few additional employees for lying during a subsequent leak investigation. *Id.* ¶¶ 43-46.

In November 2022, eight discharged former employees (the "Charging Parties") filed NLRB charges alleging that SpaceX committed unfair labor practices (the "Charges"). *Id.* ¶ 47. SpaceX submitted to the NLRB a position statement refuting the Charging Parties' allegations, along with supporting evidence. *Id.* ¶ 48.

On January 3, 2024, the Regional Director for Region 31 issued an order consolidating the administrative cases, with a consolidated administrative complaint and notice that an ALJ hearing would occur just two months later, on March 5, 2024. *Id.* ¶ 49. The next day, SpaceX filed this action in the Southern District of Texas, Brownsville Division, seeking injunctive and declaratory relief based on four constitutional problems

with the NLRB proceedings. *Id.* ¶¶ 51-138. SpaceX asked the NLRB to stay the agency proceedings to give the courts time to adjudicate these issues, but the NLRB and its prosecutors (despite having waited over a year to file their complaint) refused these requests. D. Ct. Dkt. 37-2 ¶¶ 4-8. SpaceX therefore moved for a preliminary injunction on January 12 to ensure enough time for a ruling before the scheduled start date of the administrative hearing on March 5, 2024. D. Ct. Dkt. 37, at 1, 6. Defendants opposed on February 2, and SpaceX filed its reply on February 12, reiterating its need for a ruling before March 5, 2024. D. Ct. Dkt. 79, at 1.

Meanwhile, on January 11, Defendants moved to transfer the case to the Central District of California. SpaceX urged the district court to decide the preliminary injunction motion before or at the same time as the transfer motion because of the need for expeditious resolution of the preliminary injunction motion and because transferring the case first would significantly delay resolution of the preliminary injunction motion; SpaceX emphasized that Defendants entirely controlled the timing of the hearing and need for relief. D. Ct. Dkts. 49, 49-1, 56, & 64 at 20.

On February 15, the district court granted Defendants' motion to transfer under 28 U.S.C. § 1406, finding that venue was improper in the

Southern District of Texas under 28 U.S.C. § 1391(e), and initiated the electronic transfer. SpaceX sought an emergency writ of mandamus from this Court, requesting relief in time for the preliminary injunction to be resolved before the March 5 hearing. *In re SpaceX*, No. 24-40103, Dkt. 2 (5th Cir. Feb. 16, 2024).

On February 19, 2024, this Court administratively stayed the transfer before it was completed, but at Defendants' urging, the Central District of California docketed the case anyway. No. 24-40103, Dkts. 46 & 110-1. On February 26, however, this Court directed the district court to "immediately" request that the Central District of California return the case for procedural clarity and comity. No. 24-40103, Dkt. 46. On March 1, the district court requested the case back. After its return to the Southern District of Texas, a divided panel issued a one-line order on March 5, denying mandamus over Judge Elrod's dissent. No. 24-40103, Dkt. 59. The procedural confusion caused by Defendants' interactions with the Central District of California, and resulting delay in the return of the case, seems to have delayed a ruling on the mandamus petition.

That same day, March 5, the administrative hearing formally opened. A judge of this Court withheld the mandate, No. 24-40103, Dkt.

66, keeping the administrative stay of the transfer in effect. SpaceX quickly filed an expedited petition for en banc rehearing on March 7, again noting the need for prompt relief given SpaceX's irreparable constitutional injury from the already opened hearing and each new development in that proceeding. No. 24-40103, Dkt. 71. An evenly divided court denied the en banc petition by an 8-to-8 vote on April 17, with Judge Jones authoring a dissent that five other Members of the Court joined. No. 24-40103, Dkt. 111. The administrative stay of the transfer was dissolved that same day.

Because the Southern District of Texas still had jurisdiction over this action, SpaceX immediately asked the district court to reconsider its transfer order based on the additional input from judges of this Court. D. Ct. Dkt. 112. In the alternative, SpaceX requested that the district court resolve the preliminary injunction motion before transfer given the already delayed adjudication of the preliminary injunction motion, the harm accumulating since March 5, and the likelihood that transfer would increase the delay. *Id.*

SpaceX learned on April 24 that an ALJ had scheduled a May 2 hearing to address discovery issues. D. Ct. Dkt. 117-1. The parties to the

10

administrative proceeding have significant discovery disputes, and the rulings on the scope of discovery will have a large impact on the administrative proceeding moving forward. On April 26, SpaceX filed its reply in support of reconsideration. D. Ct. Dkt. 117. SpaceX informed the district court of the accelerated need for a ruling on the preliminary injunction motion—the ALJ has ordered a court reporter, which is an indication that the hearing will likely include rulings on pending discovery issues. *Id.* Given the heightened need for a prompt preliminary injunction ruling to prevent new harm, SpaceX requested a ruling in advance of the May 2 hearing. *Id.* at 1-2, 4-5.

As of 10 p.m. Central Time on April 30, 2024, the district court had not ruled on SpaceX's January 12 motion for a preliminary injunction or SpaceX's April 17 motion for reconsideration. This inaction constitutes an effective denial of the preliminary injunction, which SpaceX has now appealed. D. Ct. Dkt. 119.

## ARGUMENT

Preliminary injunctive relief is proper when a movant establishes (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance

of equities tips in its favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Louisiana v. Biden*, 55 F.4th 1017, 1022 (5th Cir. 2022). SpaceX satisfies all four factors.

## I.  SpaceX is likely to succeed on the merits of its constitutional claims because *Jarkesy* is dispositive.

### A.  The NLRB's ALJs are unconstitutionally insulated from removal.

Article II vests all executive power in the President, "who must 'take Care that the Laws be faithfully executed.'" *Seila L. LLC v. CFPB*, 591 U.S. 197, 203 (2020). The president does not execute federal law "alone and unaided." *Myers v. United States*, 272 U.S. 52, 117 (1926). "He must execute them by the assistance of subordinates." *Id.* But because the executive responsibility remains vested in the President, the officers of every administrative agency—including "independent" ones—must be subject to presidential oversight. *See Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513-14 (2010). The Constitution thus requires that the President have the "power to remove—and thus supervise—those who wield executive power on his behalf." *Seila L.*, 591 U.S. at 204.

SpaceX is likely to succeed on the merits of its constitutional challenge to the NLRB ALJs' removal protections. Fifth Circuit precedent requires this conclusion. In *Jarkesy*, the Fifth Circuit held that indistinguishable "statutory removal restrictions" for SEC ALJs "are unconstitutional." 34 F.4th at 465. Under 5 U.S.C. § 7521(a), "SEC ALJs may be removed by the Commission 'only for good cause established and determined by the [MSPB] on the record after opportunity for hearing.'" 34 F.4th at 464. Similarly, SEC Commissioners and MSPB members themselves "can only be removed by the President for cause." *Id.* Moreover, SEC ALJs are "sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy*, 34 F.4th at 464. But the multiple "layers of for-cause protection" unconstitutionally "stand in the President's way." *Id.* at 465.

Defendants cannot distinguish NLRB ALJs from SEC ALJs. On the contrary, NLRB precedent forecloses such a distinction. *Westrock Servs., Inc.*, 366 N.L.R.B. No. 157, slip op. at 1 (Aug. 6, 2018) ("Board judges, like SEC judges, are inferior officers[.]"). SEC and NLRB ALJs are both "inferior officers" who "have substantial authority" in agency investigations

13

and enforcement actions. *Jarkesy*, 34 F.4th at 464. And, like SEC ALJs, NLRB ALJs are covered by "at least two layers of for-cause protection" that "stand in the President's way." *Id.* at 465. Indeed, 5 U.S.C. § 7521(a), which allows an employing agency to remove its ALJs only when the MSPB finds good cause, applies equally to both sets of ALJs; and 5 U.S.C. § 1202(d) applies equally to the MSPB members in both cases as well. The NLRB Members also have explicit removal protection: they are removable only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a). So, like SEC ALJs, NLRB ALJs are unconstitutionally insulated from the President's oversight. *See Jarkesy*, 34 F.4th at 464.

Under *Jarkesy*, Defendants cannot now backtrack from the NLRB's *Westrock* decision to try to distinguish SEC ALJs. The *Jarkesy* Court's assessment of SEC ALJs tracked the Supreme Court's assessment of SEC ALJs in *Lucia v. SEC*, 585 U.S. 237 (2018), a case applying Article II's Appointments Clause. *See Jarkesy*, 34 F.4th at 464 ("The Supreme Court decided in *Lucia* that SEC ALJs are 'inferior officers' under the Appointments Clause because they have substantial authority within SEC enforcement actions."). In *Westrock*, the Board explained that NLRB ALJs

14

are indistinguishable from SEC ALJs under *Lucia* itself: "Although the Court's holding in *Lucia* was specific to SEC administrative law judges, its reasoning supports a determination that Board judges, like SEC judges, are inferior officers, and as such we agree that they must be appointed pursuant to the Appointments Clause." *WestRock*, 366 N.L.R.B. No. 157, slip op. at 1.

Under *Jarkesy*, *Lucia* provides the relevant framework for assessing ALJs' removal protections. And under *Westrock*, the Board itself recognizes that the *Lucia* framework treats SEC and NLRB ALJs the same. Accordingly, under binding precedent, SpaceX is likely to—indeed must—prevail on the merits of the removal protection claim.

## B. The NLRB's adjudication of private rights and legal relief violates the Seventh Amendment.

The NLRB proceeding against SpaceX also violates the Seventh Amendment, which preserves the right to trial by jury "[i]n Suits at common law." U.S. CONST. amend. VII. Today's Board claims authority to award extensive compensatory damages to make employees whole for alleged violations of their legal rights. This effort to adjudicate private rights and afford legal relief without the safeguards of juries and an impartial judiciary, which Article III requires, exceeds the constitutional

bounds for administrative adjudications. SpaceX is suffering a here-and-now injury because it has a right to a jury in an Article III court as the factfinder on such allegations, regardless of the outcome of the current proceeding.

In *Jarkesy*, this Court reaffirmed that the right to trial by jury "is a 'fundamental' component" of the American legal system and "one of our most vital barriers to governmental arbitrariness." 34 F.4th at 452 (citation omitted). In applying the Seventh Amendment, a court must determine (1) "whether [the] action's claims arise 'at common law' under the Seventh Amendment" and, if so, (2) "whether the Supreme Court's public-rights cases nonetheless permit Congress to assign it to agency adjudication without a jury trial." *Id.* at 453 (citation omitted). "This analysis applies not only to common-law forms of action, but also to causes of action created by congressional enactment." *Tull v. United States*, 481 U.S. 412, 417 (1987).

The NLRB proceeding against SpaceX involves claims that arise at common law within the meaning of *Jarkesy* and *Tull*. The Board has lately taken the view that it may, and should, award broad monetary relief "to compensate affected employees for all direct or foreseeable

pecuniary harms that these employees suffer as a result of the [employer's] unfair labor practice." *See Thryv*, 372 N.L.R.B. No. 22, slip op. at 1. According to the Board, such compensation may include compensation for "interest and late fees on credit cards" and other "credit card debt," "penalties" based on "early withdrawals" from a "retirement account" to cover living expenses, compensation for loss of a "car" or "home" based on an inability "to make loan or mortgage payments" or "rent," and new or increased "transportation or childcare costs," among other things. *Thryv*, 372 N.L.R.B. No. 22, slip op. at 9-10 (citation omitted). Although the latter categories of monetary relief are not found in the statute, the Board nonetheless awards them to "mak[e] employees whole" and "to restore the wronged to the position he would have occupied but for the action of the wrongdoer." *Id.* at 8, 10 (citation omitted); *see also id.* at 12.

The NLRB's administrative complaint against SpaceX seeks all relief as may be just and proper to remedy the unfair labor practices alleged. *See* D. Ct. Dkt. 37-2 at 9. Under *Thryv*, this relief necessarily includes the newly authorized damages "to compensate [unlawfully terminated] employees for all direct or foreseeable pecuniary harms that these

employees suffer as a result of" the unlawful termination. *Thryv*, 372 N.L.R.B. No. 22, slip op. at 1.

The Supreme Court has recognized, however, that "compensatory damages," or "monetary relief for all losses . . . sustained as a result of the alleged breach of . . . duties," are "the classic form of *legal* relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (some emphases omitted). And an action by an employee against an employer seeking full compensation arising from an alleged wrongful discharge is akin to a proceeding seeking compensatory and consequential damages for a breach of contract or for a tort. *Cf. Fortune v. Nat'l Cash Reg. Co.* 364 N.E.2d 1251, 1257 (Mass. 1977) (treating bad-faith discharge of an at-will employee as a breach of contract); *Petermann v. Teamsters Loc. 396*, 344 P.2d 25, 27-28 (Cal. Ct. App. 1959) (recognizing cause of action for discharge in violation of public policy). For this reason, the Board's effort to obtain compensatory damages from SpaceX is "more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty." *Tull*, 481 U.S. at 417.

The public-rights doctrine does not authorize Congress to assign these claims to administrative agencies. Again, the Board's admitted purpose is "making employees whole" and remedying the private wrong. *Thryv*, 372 N.L.R.B. No. 22, slip op. at 8, 10, 12. In this way, the Board aims beyond vindicating public rights—"the public interest in effecting federal labor policy"—and targets "the wrong done the individual employee." *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 573 (1990) (citation omitted). Denying the Board the ability to award this form of compensation would not "dismantle the statutory scheme." *Jarkesy*, 34 F.4th at 455. "Common-law courts have [awarded compensatory damages] for centuries," *id.*, yet the Board's latest claim of authority to do so is a novelty not even authorized by the statute.

The fact that the original design of the NLRB may have passed constitutional scrutiny under the Seventh Amendment, *see NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 47 (1937); *Atlas Roofing Co., Inc. v. OSHRC*, 430 U.S. 442, 453 (1977), does not mean that the agency's current operations do. Nor, in any event, would Congress have carte blanche to ignore the Seventh Amendment and Article III, even if it had wanted

to do so, simply by creating a new statutory framework and administrative agency. Congress cannot "conjure away the Seventh Amendment by mandating that traditional legal claims" proceed before "an administrative tribunal." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989); *see also Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 334 (2018) ("Congress cannot 'confer the Government's "judicial Power" on entities outside Article III.'"). As originally conceived, the NLRB was confined to awarding the narrow relief enumerated in the statute, consistent with the Board's mandate to act as "as a public agent" rather than a provider of a "private administrative remedy." *Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.*, 309 U.S. 261, 265, 269 (1940) (citation omitted). Now, however, the Board wants to provide private legal remedies in the form of full compensatory relief to make employees whole violating the Seventh Amendment, and intruding into the domain of Article III. *See Oil States*, 584 U.S. at 344 (noting the connection between the Seventh Amendment right and Article III). Under *Jarkesy* and the Supreme Court precedent that it implements, SpaceX is likely to succeed on the merits of this claim too.

## II.     SpaceX will suffer irreparable harm without a preliminary injunction.

SpaceX also meets the second requirement for a preliminary injunction: irreparable harm. Without preliminary relief, SpaceX will be required to further undergo unconstitutional proceedings before an insufficiently accountable agency official and without the jury it is entitled to. These two constitutional injuries cannot be remedied after the administrative process. Unless this Court grants a preliminary injunction blocking the NLRB proceedings, SpaceX will suffer "harm for which there is no adequate remedy at law." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013).

### A.     The unconstitutionality of the NLRB proceedings inflicts irreparable harm.

Deprivation of a constitutional right "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *accord Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). The Supreme Court recently confirmed that an unconstitutionally structured agency proceeding inflicts irreparable harm. *Axon*, 598 U.S. at 191.

As for SpaceX's ALJ removal claim, "being subjected to unconstitutional agency authority . . . by an unaccountable ALJ . . . is a here-and-now injury" that is "impossible to remedy once the proceeding is over." *Id.* An appellate court "could of course vacate the [agency]'s order," but a "separation-of-powers claim" challenging unconstitutional removal protections "is not about that order." *Id.* Such a claim "is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker." *Id.* Once the proceeding has concluded, a court cannot remedy *that* harm: "[a] proceeding that has already happened cannot be undone," and "[j]udicial review . . . would come too late to be meaningful." *Id.* at 191-92. This reasoning directly applies here.

Before the district court, the NLRB pointed to inapposite cases where courts refused to invalidate *past* agency action taken by unconstitutionally insulated Executive Branch officials. *See* D. Ct. Dkt. 69 (citing *Cmty. Fin. Servs. Ass'n of Am. Ltd. v. CFPB*, 51 F.4th 616, 625 (5th Cir. 2022); *Collins v. Dep't of the Treasury*, 83 F.4th 970, 982 (5th Cir. 2023)). Such cases are off point because they did not reject the availability of relief from ongoing unconstitutional proceedings. The Supreme Court has made clear that a challenge to an agency's "power to proceed at all"

22

differs from a challenge to "action[s] [already] taken in the agency proceedings." *Axon*, 598 U.S. at 192. Being subjected "to an illegitimate proceeding, led by an illegitimate decisionmaker," "cannot be undone" after the fact. *Id.* at 191; *see also Cochran v. SEC*, 20 F.4th 194, 212-13 (5th Cir. 2021) (if removal claim is "meritorious," plaintiff should not be "forc[ed] to litigate before an ALJ who is unconstitutionally insulated from presidential control"), *aff'd and remanded sub nom.*, *Axon*, 598 U.S. 175; *Alpine Sec. Corp. v. FINRA*, No. 23-5129, 2023 WL 4703307, at *3 (D.C. Cir. July 5, 2023) (Walker, J., concurring) (finding an injunction of an administrative adjudication pending appeal appropriate based on *Axon* because the plaintiff was likely to prevail on claim that officers were unlawfully "shielded from removal"). At the bare minimum, SpaceX is "entitled to declaratory relief sufficient to ensure that the [labor law] requirements and . . . standards to which [it is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter.*, 561 U.S. at 513. Because there is no mechanism for such declaratory relief before final judgment in this action, a preliminary injunction is necessary to prevent the irreparable injury and preserve the status quo so the judiciary can provide meaningful final relief. *See, e.g.*, *Doran v. Salem Inn*,

*Inc.*, 422 U.S. 922, 931 (1975); *Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997).

And as for the deprivation of SpaceX's right to a jury in the NLRB proceedings, that is also a "here-and-now" injury inflicting irreparable harm. Because SpaceX is "entitled under the Seventh Amendment to a jury trial, the irreparable injury requirement is automatically satisfied without the need to consider Plaintiff's particular showings." *Burgess v. FDIC*, 639 F. Supp. 3d 732, 749 (N.D. Tex. 2022). As with having to proceed before unaccountable executive officials, having to proceed without a jury outside an Article III court cannot be remedied after the proceeding has already run its course. *Cf. Ward v. Village of Monroeville*, 409 U.S. 57, 61-62 (1972) (A flawed adjudicative process cannot "be deemed constitutionally acceptable simply because the State eventually offers a defendant an impartial adjudication. Petitioner is entitled to a neutral and detached judge in the first instance.").

## B.    The NLRB proceedings are also inflicting irreparable economic harm.

While the unconstitutional nature of the proceeding is enough to establish irreparable harm, the real-world burdens of that proceeding constitute additional irreparable harm.

Responding to the charges and preparing for the proceedings will continue to involve extensive preparation by SpaceX and its counsel. D. Ct. Dkt. 37-1 ¶¶ 13-17. These burdens come at a time when SpaceX is preparing for numerous challenging missions. *Id.* ¶¶ 18-19. Participation in and preparation for the NLRB proceedings is imposing significant burdens on employee time and company resources. *Id.* ¶¶ 17, 20.

The federal government often uses these financial and reputational harms to its advantage. *Cf. Axon*, 598 U.S. at 216 (Gorsuch, J., concurring) ("Aware, too, that few can outlast or outspend the federal government, agencies sometimes use this as leverage to extract settlement terms they could not lawfully obtain any other way."). But there is no way to recover the lost time, money, or focus caused by these proceedings, even if SpaceX eventually succeeds in getting an administrative rehearing that avoids the constitutional defects identified above. Without a stay of these proceedings until the Court can award a constitutionally adequate remedy, SpaceX will suffer concrete harm that is unrecoverable.

## III. The balance of harms and public interest favor a preliminary injunction.

The balance of harms and the public interest factors merge in this case because the government is the defendant. *Nken v. Holder*, 556 U.S.

418, 435 (2009). Both factors tilt strongly in SpaceX's favor.

Given its likelihood of success on the merits, an injunction would not harm Defendants because the government suffers no cognizable harm from stopping "the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); *see also, e.g.*, *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021). Nor would an injunction "disserve the public interest." *Louisiana*, 55 F.4th at 1022; *see also Daniels Health Scis.*, 710 F.3d at 585 ("[T]he public is served when the law is followed."). It is not in the public interest to have an increasingly expansive administrative process that has "slip[ped] from the Executive's control, and thus from that of the people," *Free Enter.*, 561 U.S. at 499, or that infringes the constitutional imperative that "the judiciary remain truly distinct from . . . the executive," *Stern v. Marshall*, 564 U.S. 462, 483 (2011) (quoting THE FEDERALIST No. 78, at 466 (Alexander Hamilton) (C. Rossiter ed. 1961)). And even if the Court grants the injunction but ultimately determines the proceedings are constitutional or can be cured, Defendants can proceed with the

NLRB proceedings. The NLRB took from November 16, 2022 until January 3, 2024 to file a complaint on the employees' charges. D. Ct. Dkt. 1 ¶¶ 47-50. A brief additional delay will not cause any meaningful harm.

## CONCLUSION

For all these reasons, this Court should immediately stay and enjoin the NLRB's administrative proceedings against SpaceX, including but not limited to the May 2, 2024 ALJ conference. Relief is needed before tomorrow, **May 2, at 12 p.m. Pacific Time (2 p.m. Central Time)**.

Dated:  May 1, 2024

HARRY I. JOHNSON, III
MORGAN, LEWIS & BOCKIUS LLP
2049 Century Park East, Suite 700
Los Angeles, CA  90067
(310) 255-9005

CATHERINE L. ESCHBACH
MORGAN, LEWIS & BOCKIUS
1000 Louisiana Street, Suite 4000
Houston, TX  77002
(713) 890-5719

Respectfully submitted,

s/ Michael E. Kenneally
MICHAEL E. KENNEALLY
AMANDA L. SALZ
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 739-3000

*Counsel for Space Exploration Technologies Corp.*

## CERTIFICATE OF SERVICE

I certify that on this May 1, 2024, I electronically filed the foregoing Emergency Motion for Injunction Pending Appeal with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system.

I further certify that I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following case participants:

HONORABLE ROLANDO OLVERA
*United States District Judge*
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF
TEXAS, BROWNSVILLE DIVISION
Reynaldo G. Garza-Filemon B.
Vela United States Courthouse
600 E. Harrison St.
Brownsville, TX 78520

NATIONAL LABOR RELATIONS
BOARD
 *Contempt, Compliance, and*
  *Special Litigation Branch*
KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*
DANIEL BRASIL BECKER
*Trial Attorney*
GRACE L. PEZZELLA
*Trial Attorney*
DAVID P. BOEHM
*Trial Attorney*

Dalford D. Owens, Jr.
*Attorney-in-Charge for Defendants*
1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
(202) 273-4202
david.boehm@nlrb.gov

JOSHUA M. ROBBINS
PACIFIC LEGAL FOUNDATION
*Attorney-in-Charge*
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
(202) 888-6881
jrobbins@pacificlegal.org

OLIVER J. DUNFORD
PACIFIC LEGAL FOUNDATION
4400 PGA Blvd., Suite 307
Palm Beach Gardens, FL 33410
(561) 691-5000
odunford@pacificlegal.org

*Counsel for Amicus Curiae Pacific Legal Foundation*

ANNE B. SHAVER
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
(415) 956-1000
ashaver@lchb.com

LAURIE M. BURGESS
BURGESS LAW OFFICES, P.C.
498 Utah Street
San Francisco, CA 94110
(312) 320-1718
lburgess@burgess-laborlaw.com

Nimish Ramesh Desai
LIEFF CABRASER ET AL
275 Battery Street
29th Floor
San Francisco, CA 94111
(415) 956-1000
ndesai@lchb.com

*Counsel for Amici Curiae Tom Moline, Scott Beck, Deborah Lawrence, and Paige Holland-Thielen*

s/ Michael E. Kenneally
MICHAEL E. KENNEALLY

*Counsel for Space Exploration Technologies Corp.*

## CERTIFICATE OF COMPLIANCE

1.    This petition complies with the type-volume limitations of Fed. R. App. P. 27(d)(2)(A) because this petition contains 5,179 words.

2.    This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font.


Dated:  May 1, 2024              s/ Michael E. Kenneally
                                MICHAEL E. KENNEALLY

                                *Counsel for Space Exploration Technologies Corp.*