No. 24-40315

# In the United States Court of Appeals
## FOR THE FIFTH CIRCUIT

SPACE EXPLORATION TECHNOLOGIES, CORPORATION,
*Plaintiff - Appellant*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency; JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board; LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board; MARVIN E. KAPLAN, in his official capacity as a Board Member of the National Labor Relations Board; GWYNNE A. WILCOX, in her official capacity as a Board Member of the National Labor Relations Board; DAVID M. PROUTY, in his official capacity as a Board Member of the National Labor Relations Board; JOHN DOE, in his official capacity as an Administrative Law Judge of the National Labor Relations Board,
*Defendants - Appellees*

On Appeal from the U.S. District Court for the Southern District of Texas, No. 1:24-cv-00001, Judge Rolando Olvera

## EXHIBITS IN SUPPORT OF EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

HARRY I. JOHNSON, III
MORGAN, LEWIS & BOCKIUS LLP
2049 Century Park East, Suite 700
Los Angeles, CA 90067
(310) 255-9005

CATHERINE L. ESCHBACH
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
(713) 890-5719

MICHAEL E. KENNEALLY
AMANDA L. SALZ
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-3000

*Counsel for Space Exploration Technologies Corp.*

# INDEX

| Dkt. No. | Description | Date |
|---|---|---|
| | **Space Exploration Techs. Corp. v. NLRB** <br> **No. 24-cv-1 (S.D. Tex.)** | |
| 1 | Complaint for Declaratory and Injunctive Relief | 1/4/24 |
| 37 | Plaintiff's Motion for Preliminary Injunction | 1/12/24 |
| 37-1 | Exhibit A: Declaration of Jamin Gallman | |
| 37-2 | Exhibit B: Declaration of Catherine L. Eschbach | |
| 69 | Defendants' Response in Opposition to Plaintiff's Motion for a Preliminary Injunction | 2/2/24 |
| 79 | Plaintiff's Reply in Support of Its Motion for a Preliminary Injunction | 2/12/24 |
| 112 | Plaintiff SpaceX's Motion for Reconsideration or, in the Alternative, a Ruling on Its Preliminary Injunction Motion | 4/17/24 |
| 116 | Defendants' Opposition to Plaintiff's Motion for Reconsideration, or in the Alternative, a Ruling on Its Preliminary Injunction Motion | 4/23/24 |
| 117 | Plaintiff SpaceX's Reply in Support of Motion for Reconsideration or, in the Alternative, a Ruling on Its Preliminary Injunction Motion | 4/26/24 |
| 117-1 | Exhibit A: April 24, 2024 Email Notice of May 2, 2024 Teleconference | |
| 117-2 | Exhibit B: April 24, 2024 ALJ Order | |

**INDEX**
(continued)

| Dkt. No. | Description | Date |
|---|---|---|
| 118 | Defendants' Surreply to Plaintiff's Motion for Reconsideration, or in the Alternative, a Ruling on Its Preliminary Injunction Motion | 4/29/23 |
| 119 | Notice of Appeal | 4/30/24 |
| | ***In re: Space Exploration Techs.***<br>**No. 24-40103 (5th Cir.)** | |
| 2 | Docketing Letter | 2/16/24 |
| 2-1 | Attachment: Emergency Petition for Writ of Mandamus | |
| 46 | Unpublished Order (In the Interest of Procedural Consistency and Comity, the Southern District of Texas is Directed to Immediately Request That the Central District of California Return the Transferred Case to the Southern District of Texas, Brownsville Division) | 2/26/24 |
| 59 | Published Order Denying Petition for Writ of Mandamus | 3/5/24 |
| 66 | Order (Issuance of the Mandate Is Withheld) | 3/5/24 |
| 71 | Petition for Expedited Rehearing En Banc of Space Exploration Technologies Corp. | 3/7/24 |
| 110-1 | Unpublished Order (Issued as to Attorneys David Boehm and Lynn Ta) | 4/17/24 |

# INDEX
(continued)

| Dkt. No. | Description | Date |
|---|---|---|
| 111 | Unpublished Order Denying Petition for Rehearing En Banc | 4/17/24 |

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| **SPACE EXPLORATION TECHNOLOGIES CORP.,**<br><br>     **Plaintiff,**<br><br>       **v.**<br><br>**NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,**<br><br>     **Defendants.** | Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Space Exploration Technologies Corp. ("SpaceX") brings this action for declaratory and injunctive relief, alleging as follows:

### INTRODUCTION

1.      This action stems from an unlawful attempt by the National Labor Relations Board ("NLRB") to subject SpaceX to an administrative proceeding whose structure violates Article II, the Fifth Amendment, and the Seventh Amendment of the Constitution of the United States.

2.      Article II vests all executive power in the President, "who must 'take Care that the Laws be faithfully executed.'" *Seila L. LLC v. CFPB*, 140 S. Ct. 2183, 2191 (2020).

3.      To discharge that responsibility, the President must have the power to remove subordinate officers who assist in carrying out the President's duties. *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513–14 (2010).

4.      The Fifth Circuit has held that this removal power extends to administrative law judges ("ALJs") who "perform substantial executive functions." *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023).

5.      Article II requires that the President "have sufficient control over the performance of [such ALJs'] functions, and, by implication, . . . be able to choose who holds the positions." *Id.* This constitutionally required degree of control is lacking when the ALJs are insulated by "[t]wo layers of for-cause protection"—that is, when the ALJs are removable only for cause, by officials who themselves are removable only for cause. *Id.*; *see Free Enter. Fund*, 561 U.S. at 492–508. The Fifth Circuit therefore held that the removal restrictions for ALJs set forth in 5 U.S.C. § 7521(a) are unconstitutional as applied to ALJs for the Securities and Exchange Commission ("SEC"). *Jarkesy*, 34 F.4th at 465.

6.      The same reasoning applies to the ALJs of the NLRB, including the ALJ assigned to preside over the pending NLRB proceedings against SpaceX. Like the SEC ALJs in *Jarkesy*, NLRB ALJs are "inferior officers" who "have substantial authority" within agency investigations and enforcement actions. *Jarkesy*, 34 F.4th at 464; *see also Westrock Servs., Inc.*, 366 N.L.R.B. No. 157, slip op. at 1 (Aug. 6, 2018) ("Board judges, like SEC judges, are inferior officers[.]"). And like SEC ALJs, NLRB ALJs are covered by two layers of removal protection, which insulate them from oversight by the President. *See* 5 U.S.C. §§ 1202(d), 7521(a); 29 U.S.C. § 153(a). So, like the SEC ALJs in *Jarkesy*, NLRB ALJs are unconstitutionally insulated from the President's

oversight, and the Court should declare that the NLRB ALJs' having two layers of removal protection is unconstitutional. *See Jarkesy*, 34 F.4th at 464.

7.      Neither the Fifth Circuit nor the Supreme Court has decided whether the NLRB Members' layer of removal protection is unconstitutional. But the correct answer, given the relevant Supreme Court precedent and nature of the NLRB Members' functions, is a resounding yes.

8.      The NLRB may argue that its Members' removal protections are constitutional under the reasoning of *Humphrey's Executor v. United States*, 295 U.S. 602, 627–28 (1935). That ruling, particularly as the Supreme Court has recently clarified it, does not apply to the NLRB's Members today.

9.      *Humphrey's Executor* applies only to agency officials who do not exercise "executive power in the constitutional sense," as the Court concluded about the Commissioners of the Federal Trade Commission ("FTC") in 1935. *Id.* at 628; *see also Seila L.*, 140 S. Ct. at 2198; *Jarkesy*, 34 F.4th at 465 n.19. Whatever might have been true of the FTC's Commissioners in 1935, it is quite clear today that the NLRB's Members exercise substantial executive power under the Constitution. There is no justification for extending *Humphrey's Executor* to them.

10.     The existence of unconstitutional removal protections inflicts twofold harm. It limits the President's constitutional authority, of course. But it also produces an administrative bureaucracy that operates on regulated parties without the constitutionally required "degree of electoral accountability." *Collins v. Yellen*, 141 S. Ct. 1761, 1784 (2021).

11.     Because such removal protections affect not just the President, but also ordinary Americans who must interact with the administrative state, it makes no legal difference whether the President objects to a given statutory limit on his removal powers: "the separation of powers

3

does not depend on the views of individual Presidents, nor on whether 'the encroached-upon branch approves the encroachment.'" *Free Enter. Fund*, 561 U.S. at 497 (citations omitted).

12.     When a party is regulated by administrative officials who are shielded by unconstitutional removal protections, Supreme Court precedent teaches that the party is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive." *Id.* at 513.

13.     To prevent SpaceX from undergoing protracted administrative proceedings before an unconstitutionally structured agency—after which SpaceX is unlikely to have a chance to secure meaningful retrospective relief—the Court should stay or enjoin the current agency proceedings, declare that the NLRB's structure violates the separation of powers under Article II of the Constitution, and permanently enjoin the NLRB and its General Counsel from pursuing unfair labor practice charges against SpaceX before agency officials that are unconstitutionally insulated from presidential oversight.

14.     The NLRB proceedings against SpaceX also suffer from another constitutional infirmity. They violate the Seventh Amendment, which preserves the right to trial by jury "[i]n Suits at common law." U.S. CONST. amend. VII.

15.     The right to trial by jury "is a 'fundamental' component" of the American legal system and "remains one of our most vital barriers to governmental arbitrariness." *Jarkesy*, 34 F.4th at 452 (quoting *Reid v. Covert*, 354 U.S. 1, 9–10 (1957)).

16.     SpaceX does not take issue with the NLRA's express authorization of backpay, *see* 29 U.S.C. § 160(c), which is a form of equitable relief when it is restitutionary in nature, *see Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 570–73 (1990).

17.     But the NLRB has recently claimed for itself the authority to award a broader range of relief, including traditional forms of legal relief that go far beyond the equitable restitutionary backpay remedy permitted by the statute. *See Thryv, Inc.*, 372 N.L.R.B. No. 22 (Dec. 13, 2022).

18.     Indeed, the NLRB's administrative complaint against SpaceX seeks these expanded remedies.

19.     These new remedies, however, are nothing short of compensatory damages intended "to compensate [unlawfully terminated] employees for all direct or foreseeable pecuniary harms that these employees suffer as a result of" the unlawful termination. *Id.* at 1.

20.     Money damages designed to compensate for losses are "the classic form of *legal* relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993).

21.     But not even Congress can "conjure away the Seventh Amendment by mandating that traditional legal claims" proceed before "an administrative tribunal." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989).

22.     As the Fifth Circuit has held with respect to similar SEC proceedings, when an administrative agency seeks legal relief for an alleged statutory violation, the Seventh Amendment prohibits it from substituting an ALJ hearing for a trial by jury. *See Jarkesy*, 34 F.4th at 451–55.

23.     Finally, the NLRB is also unconstitutionally structured because its Members exercise all three constitutional powers—legislative, executive, and judicial—in the same administrative proceedings.

24.     This case brings the problem into clear focus: the NLRB's Regional Office for Region 31 (the "Region") has conveyed to SpaceX that it plans to ask for the NLRB Members' approval to go to federal district court to request injunctive relief against SpaceX—a quintessentially prosecutorial act of the Executive—even though the same NLRB Members would

later preside in a quasi-legislative, quasi-judicial capacity in the unfair labor practice proceeding involving the same alleged violations of the NLRA.

25.     Even after acting as prosecutor by charging SpaceX with violations of federal labor law before an Article III tribunal, the same NLRB Members would then issue the agency's ultimate order on whether SpaceX has violated federal labor law.

26.     In that adjudication, the NLRB Members would have significant leeway to adopt new interpretations of the NLRA as a policy matter and adjudicate whether the evidence supports a determination that SpaceX violated the statute as they interpret it.

27.     On top of that, the agency would then insist that subsequent judicial review before an Article III court must give significant deference to the NLRB Members' interpretations of the NLRA and findings of fact.

28.     The NLRB's current way of functioning is miles away from the traditional understanding of the separation of powers, which views "[t]he accumulation of all powers legislative, executive and judiciary in the same hands" as "the very definition of tyranny." THE FEDERALIST NO. 47 (James Madison).

29.     And although the Supreme Court upheld aspects of the NLRB's basic structure nearly a century ago, *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 47 (1937), the Court has subsequently clarified that the Constitution's due process guarantee precludes an individual from serving as prosecutor and adjudicator in the same case, *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016).

30.     If the current Members of the NLRB are asked to make a prosecutorial determination about whether SpaceX is in violation of the NLRA, there is an objectively high risk that they would not later be able to provide the neutral adjudicative forum that the Constitution

demands, and so would need to recuse from further participation in any agency adjudication against SpaceX.

31.     For this reason, too, SpaceX is entitled to declaratory and injunctive relief to ensure that it is not subjected to unlawful proceedings before an unconstitutionally structured agency.

## JURISDICTION AND VENUE

32.     This action arises under the Constitution and laws of the United States. This Court has federal question jurisdiction under 28 U.S.C. § 1331 over SpaceX's claims that fundamental aspects of the NLRB's structure violate the Constitution. *See, e.g.*, *Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 900 (2023).

33.     The Court has authority to grant declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, under the Administrative Procedure Act, 5 U.S.C. §§ 701–706, and under the Court's inherent equitable powers.

34.     Venue is proper in this district under 28 U.S.C. § 1391(e)(1)(B). Defendants are officers of an agency of the United States acting in their official capacity; and a substantial part of the events or omissions giving rise to the claim occurred in Boca Chica, Texas, where SpaceX maintains its Starbase rocket development and launch facility, its fastest-growing facility and a key component to its operations and overall success. The NLRB's administrative proceeding targets a variety of SpaceX actions and policies that allegedly occurred across its many U.S. facilities, including in response to an "Open Letter" that was broadly distributed to employees at all SpaceX facilities across the country. For example, the administrative complaint alleges unfair labor practices based on the company President's June 15 and June 16, 2022 emails to all employees companywide, and seeks certain remedies that would affect all of SpaceX's facilities. Moreover, a significant portion of the employees who interacted with the Open Letter were based

at Starbase (in addition to employees who interacted with the Open Letter while based at SpaceX's Houston facility, which is also located in this judicial district).

## PARTIES

35.     Plaintiff SpaceX, a privately held Delaware corporation, is a pioneer in the aerospace industry, employing more than 13,000 employees in Texas, California, Florida, Washington, and Washington, D.C. SpaceX has facilities and employees in several cities in Texas, including the Starbase rocket development and launch facility in Boca Chica.

36.     Defendant NLRB is an administrative agency of the United States, headquartered in Washington, D.C. The National Labor Relations Act ("NLRA") empowers the NLRB to initiate administrative proceedings to prevent unfair labor practices. *See* 29 U.S.C. § 160.

37.     Defendant Jennifer A. Abruzzo is General Counsel of the NLRB. She is sued in her official capacity.

38.     Defendant Lauren M. McFerran is Chairman of the NLRB. She is sued in her official capacity.

39.     Defendant Marvin E. Kaplan is a Member of the NLRB. He is sued in his official capacity.

40.     Defendant Gwynne A. Wilcox is a Member of the NLRB. She is sued in her official capacity.

41.     Defendant David M. Prouty is a Member of the NLRB. He is sued in his official capacity.

42.     Defendant John Doe is an Administrative Law Judge of the NLRB assigned to preside over the NLRB proceedings against SpaceX, whose identity has not yet been disclosed to SpaceX. He is sued in his official capacity.

**FACTS**

43.    On June 15, 2022, a small group of SpaceX employees using the company's internal communications platforms sent an Open Letter to thousands of SpaceX employees, during working hours.

44.    The Open Letter demanded that SpaceX take certain actions addressing perceived shortcomings, and solicited the thousands of recipient-employees to support the Open Letter's demands and fill out a linked survey hosted externally.

45.    The Open Letter caused significant distraction to SpaceX employees around the country.

46.    SpaceX discharged several employees involved with the Open Letter for violating numerous company policies.

47.    On November 16, 2022, former SpaceX employees (collectively, the "Charging Parties") filed charges with the NLRB alleging that SpaceX committed unfair labor practices in violation of the NLRA when it terminated their employment (the "Charges").

48.    On March 16, 2023, the NLRB sought SpaceX's response to the Charges. SpaceX submitted its position statement and supporting evidence refuting the Charging Parties' allegations on April 28, 2023.

49.    On December 14, 2023, the Region informed SpaceX that it had made determinations on all eight Charges and authorized a complaint against SpaceX.

50.    On January 3, 2024, the Regional Director for Region 31 issued an order consolidating the administrative cases, together with a consolidated administrative complaint and notice that an administrative hearing would occur on March 5, 2024 before an ALJ.

## COUNT I – THE NLRB'S ALJS ARE UNCONSTITUTIONALLY INSULATED FROM REMOVAL

51.     SpaceX restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

52.     NLRB ALJs are "Officers of the United States" under the Constitution's Appointments Clause—not mere employees—because among other things, they hold continuing offices through which they preside over adversarial hearings, receive testimony, shape the administrative record, and prepare proposed findings and opinions. *See Lucia v. SEC*, 138 S. Ct. 2044, 2053–55 (2018); *Jarkesy*, 34 F.4th at 464; *Westrock Servs.*, 366 N.L.R.B. No. 157, slip op. at 1.

53.     At the same time, the NLRB may attempt to remove its ALJs "only for good cause established and determined by the Merit Systems Protection Board [("MSPB")] on the record after opportunity for hearing before the [MSPB]." 5 U.S.C. § 7521(a). In turn, by statute, Members of the MSPB are removable only for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). And under the NLRA, Board Members are removable only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a).

54.     Given NLRB ALJs' status as "officers" of an executive agency, "they are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy*, 34 F.4th at 464.

55.     The statutes' provision of at least two layers of removal protection prevents that exercise of presidential authority and thus violates Article II of the Constitution. *See Free Enter. Fund*, 561 U.S. at 492–508; *Jarkesy*, 34 F.4th at 463–65.

56.     But for these unlawful removal restrictions, either the ALJ assigned to SpaceX's administrative case or the NLRB Members who bear responsibility to supervise and exercise

control over the ALJ would face the prospect of removal by the President based on their conduct during the proceedings.

57.    Being subject to unconstitutional agency authority—including proceedings before unconstitutionally insulated agency officials—qualifies as a "here-and-now injury" under well-settled precedent. *Axon Enter.*, 143 S. Ct. at 903 (citation omitted); *see also, e.g.*, *Cochran v. SEC*, 20 F.4th 194, 210 n.16, 212–13 (5th Cir. 2021) (en banc), *aff'd and remanded sub nom. Axon Enter.*, 143 S. Ct. 890.

58.    Accordingly, SpaceX is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [SpaceX is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

59.    Moreover, without interim injunctive relief from this Court, SpaceX will be required to undergo an unconstitutional proceeding before an insufficiently accountable agency official.

60.    SpaceX bears a strong likelihood of success on this claim for the reasons detailed above.

61.    Yet, unless the NLRB is enjoined from proceeding against SpaceX before an ALJ unconstitutionally insulated from presidential oversight, SpaceX will be irreparably harmed.

62.    Further, if the NLRB Members, on recommendation from the ALJ, issue a final order against SpaceX, the constitutional injury will likely be irremediable. The Supreme Court has stated that those subject to an unconstitutional proceeding by improperly insulated administrative agency officials often have no retrospective redress after the fact. *See Collins*, 141 S. Ct. at 1787–89.

63.     The harm to SpaceX, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted. In contrast to the NLRB, which did not file the adjudicative proceedings until 18 months after the allegedly unlawful conduct, SpaceX has filed this action as quickly as possible—as soon as the NLRB gave notice of an ALJ hearing.

64.     The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting Americans' constitutional rights.

## COUNT II – THE NLRB'S MEMBERS ARE UNCONSTITUTIONALLY INSULATED FROM REMOVAL

65.     SpaceX restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

66.     The NLRB's Members may be removed by the President only "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a).

67.     Yet the NLRB's Members exercise substantial executive power under the Constitution in administering and enforcing the provisions of the NLRA.

68.     For example, Section 10(j) of the NLRA, 29 U.S.C. § 160(j), gives the Board authority to exercise quintessentially prosecutorial power in federal district courts: "The Board shall have the power, upon issuance of [an administrative] complaint as provided in [29 U.S.C. § 160(b)] charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order." 29 U.S.C. § 160(j); *see, e.g.*, *Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 852 (5th Cir. 2010) ("Petition power under § 10(j) is prosecutorial in nature[.]").

69.     More generally, the NLRB also enforces and implements the NLRA in many ways, including by determining appropriate units for the purpose of collective bargaining, directing representation elections, deciding unfair labor practice charges, and seeking enforcement of its unfair labor practice orders in federal court. 29 U.S.C. §§ 159, 160.

70.     In these and other ways, the NLRB wields substantial prosecutorial, rulemaking, policymaking, and adjudicative authority.

71.     The Supreme Court has made clear, moreover, that even when "the activities of administrative agencies 'take "legislative" and "judicial" forms,' 'they are exercises of—indeed, under our constitutional structure they *must be* exercises of—the "executive Power."' *Seila L.*, 140 S. Ct. at 2198 n.2 (citation omitted).

72.     Also, the removal protections for NLRB Members are unusually strict. In contrast to more common provisions that permit removal "for inefficiency, neglect of duty, or malfeasance in office," *Humphrey's Ex'r*, 295 U.S. at 620 (quoting 15 U.S.C. § 41), the NLRA permits removal only "for neglect of duty or malfeasance in office," and explicitly prohibits removal for any other cause, like inefficiency, 29 U.S.C. § 153(a).

73.     The combination of the NLRB Members' strict removal protections and exercise of substantial executive power violates Article II of the Constitution.

74.     But for these unlawful removal restrictions, the NLRB Members would face the prospect of removal by the President—including based on their conduct during the proceedings against SpaceX.

75.     Being subject to proceedings before unconstitutionally insulated agency officials is a "here-and-now injury" justifying pre-enforcement judicial intervention. *Axon Enter.*, 143 S. Ct. at 903 (citation omitted); *Cochran*, 20 F.4th at 210 n.16, 212–13.

76.     So, here too, SpaceX is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [SpaceX is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

77.     Moreover, without interim injunctive relief from this Court, SpaceX will be required to undergo an unconstitutional proceeding before an insufficiently accountable agency official.

78.     SpaceX bears a strong likelihood of success on this claim for the reasons detailed above.

79.     Yet, unless the NLRB is enjoined from proceeding against SpaceX before an NLRB whose Members are unconstitutionally insulated from presidential oversight, SpaceX will be irreparably harmed.

80.     Further, if the NLRB Members, on recommendation from the ALJ, issue a final order against SpaceX, the harm will likely be irremediable because of the difficulty of obtaining retrospective redress for an unconstitutional proceeding by improperly insulated administrative agency officials. *See Collins*, 141 S. Ct. at 1787–89.

81.     The harm to SpaceX, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted. Unlike the NLRB, which did not file the adjudicative proceedings until 18 months after the allegedly unlawful conduct, SpaceX has filed this action as quickly as possible—as soon as the NLRB gave notice of an ALJ hearing.

82.     The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting Americans' constitutional rights.

**COUNT III – THE NLRB ALJ'S ADJUDICATION OF PRIVATE RIGHTS
WITHOUT A JURY TRIAL VIOLATES THE SEVENTH AMENDMENT**

83.     SpaceX restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

84.     The Seventh Amendment to the Constitution of the United States provides that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."  U.S. CONST. amend. VII.

85.     The term "Suits at common law" "include[s] all actions akin to those brought at common law as those actions were understood at the time of the Seventh Amendment's adoption." *Jarkesy*, 34 F.4th at 452.

86.     "The term can include suits brought under a statute as long as the suit seeks common-law-like legal remedies." *Id.*

87.     The NLRA authorizes the Board to remedy unfair labor practices through an "order requiring [the] person to cease and desist from such unfair labor practice, and to take . . . affirmative action including reinstatement of employees with or without back pay." 29 U.S.C. § 160(c).

88.     Although the statute thus permits backpay as "an incident to equitable relief," *Jones & Laughlin*, 301 U.S. at 48, today's NLRB currently asserts much broader authority to award monetary damages.

89.     For example, Defendant Jennifer Abruzzo, General Counsel of the NLRB, has ordered Regional Directors to "request from the Board the full panoply of remedies available to ensure that victims of unlawful conduct are made whole for losses suffered as a result of unfair labor practices." Nat'l Lab. Rels. Bd., Office of the Gen. Counsel, Memorandum 21-06 at 1 (Sept. 8, 2021).

90.     Ms. Abruzzo later elaborated on the "full panoply of remedies" that Regions should seek. *See* Nat'l Lab. Rels. Bd., Office of the Gen. Counsel, Memorandum 21-07 at 1 (Sept. 15, 2021). She contended that "[a] monetary remedy comprised only of backpay and lost benefits often fails to truly make whole victims of an unfair labor practice," and urged that "Regions should always make sure to seek compensation for any and all damages, direct and consequential, attributable to an unfair labor practice," including housing, medical, or training expenses relating to the allegedly unlawful employment practice. *See id.* at 2–4 (listing examples).

91.     Recently, in *Thryv*, a divided Board determined that it has authority to issue monetary awards "to compensate affected employees for all direct or foreseeable pecuniary harms that these employees suffer as a result of the [employer's] unfair labor practice."  372 N.L.R.B. No. 22, slip op. at 1.

92.     Such compensation goes far beyond the statutory category of backpay. According to the Board, it encompasses such items as "interest and late fees on credit cards" and other "credit card debt," "penalties" based on "early withdrawals" from a "retirement account" to cover living expenses, compensation for loss of a "car" or "home" based on an inability "to make loan or mortgage payments" or "rent," and new or increased "transportation or childcare costs," among other things. *Id.* at 9–10 (citation omitted).

93.     In substance, this expanded remedy permits a broad range of consequential damages, although the *Thryv* majority sought to avoid that label on the ground that it "refer[s] to a specific type of legal damages." *Id.* at 8.

94.     Even the *Thryv* majority, however, acknowledged that the expanded remedy provides monetary relief for compensatory purposes. *See id.* ("[M]aking employees whole should

include, at least, compensating them for direct or foreseeable pecuniary harms resulting from the respondent's unfair labor practice.").

95.     Although restitutionary backpay (through which an employer disgorges money that it wrongfully holds and that rightfully belongs to the employee) is categorized as a form of equitable relief, *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 570 (1990), nonrestitutionary compensatory damages are not.

96.     On the contrary, "compensatory damages," or "monetary relief for all losses . . . sustained as a result of the alleged breach of . . . duties," are "the classic form of *legal* relief." *Mertens*, 508 U.S. at 255 (some emphasis omitted).

97.     The Board's newly expanded remedy goes beyond the vindication of public rights, "the public interest in effecting federal labor policy," and instead focuses on "the wrong done the individual employee." *Terry*, 494 U.S. at 573 (citation omitted).

98.     Indeed, the *Thryv* majority expanded the Board's traditional remedy precisely because it determined that backpay is not enough, on its own, "to restore the wronged to the position he would have occupied but for the action of the wrongdoer." *Id.* at 10 (citation omitted); *see also id.* at 12.

99.     In accordance with *Thryv* and Ms. Abruzzo's directives, the NLRB's administrative complaint against SpaceX specifies that the General Counsel seeks all relief as may be just and proper to remedy the unfair labor practices alleged.

100.    The fact that the administrative complaint also seeks equitable relief does not strip SpaceX of its jury-trial right. *Jarkesy*, 34 F.4th at 454 ("the Seventh Amendment applies to proceedings that involve a mix of legal and equitable claims").

101.    Nor does the fact that NLRB proceedings are administrative in nature. "Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency" like the NLRB. *Granfinanciera*, 492 U.S. at 61.

102.    Without interim injunctive relief from this Court, SpaceX's claims will be improperly adjudicated by an administrator instead of a jury.

103.    SpaceX bears a strong likelihood of success on this claim for the reasons detailed above.

104.    Yet unless the NLRB is enjoined from proceeding against SpaceX before an NLRB ALJ rather than a jury, SpaceX will be irreparably harmed.

105.    As the Supreme Court has recognized, "being subjected to an illegitimate proceeding, led by an illegitimate decisionmaker," qualifies as a "here-and-now injury." *Axon Enter.*, 143 S. Ct. at 893.

106.    The harm to SpaceX, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted. Unlike the NLRB, which did not file the adjudicative proceedings until 18 months after the allegedly unlawful conduct, SpaceX has filed this action as early in the proceedings as possible—as soon as the NLRB gave notice of an ALJ hearing.

107.    The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting Americans' constitutional rights.

**COUNT IV – THE NLRB'S EXERCISE OF PROSECUTORIAL,
LEGISLATIVE, AND ADJUDICATORY AUTHORITY
IN THE SAME PROCEEDINGS VIOLATES
THE SEPARATION OF POWERS AND DUE PROCESS**

108.    SpaceX restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

109.    Under Section 10(j) of the NLRA, "The Board shall have power, upon issuance of a complaint as provided in [29 U.S.C. § 160(b)] charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order." 29 U.S.C. § 160(j).

110.    Under the NLRB's current procedures, Members of the NLRB approve the determination whether to petition for injunctive relief under Section 10(j). *See* Office of the General Counsel, *Section 10(j) Manual* §§ 5.2–5.5, at 13–16 (Feb. 2014), https://www.nlrb.gov/sites/default/files/attachments/basic-page/node-1727/MASTER%20REVISED%202013%2010(J)%20MANUAL.pdf.

111.    This approval process includes the NLRB Members' evaluation of the NLRB Regional Director's presentation of the "merits" of the alleged legal violations, including a presentation of "the relevant facts and legal arguments and authorities establishing the violations" and of the charged party's asserted "defenses." *Id.* § 5.2.1, at 13.

112.    Because a Section 10(j) proceeding seeks preliminary injunctive relief, the decision also considers whether the alleged violations threaten "irreparable harm." *Id.* §§ 4.0, 5.2.1, at 10, 13.

113.    To secure Section 10(j) relief, the NLRB's litigators must ultimately make a sufficient showing on both their likelihood of success on the merits of the alleged violations and on the balance of equities, such as the likelihood of irreparable harm. *See, e.g.*, *McKinney ex rel. NLRB v. Creative Vision Res., L.L.C.*, 783 F.3d 293, 296–99 (5th Cir. 2015).

114.    In these ways, NLRB Members who grant their approval to request Section 10(j) relief in a given case exercise prosecutorial authority based on their assessment of the charged parties' responsibility for the alleged unfair labor practices and for ensuing irreparable harm.

115.    This approval process is not a neutral adjudication of an adversarial proceeding. By design, the NLRB's Section 10(j) approval process relies primarily on the presentation in the "Go 10(j)" memorandum prepared by one side: the NLRB officials who wish to litigate the alleged statutory violations.

116.    This memorandum provides the NLRB officials' views about "the relevant facts and legal arguments and authorities establishing the violations," the NLRB officials' "responses to defenses raised by the [charged party]," and the NLRB officials' "responses [to the charged party's] arguments against 10(j)" relief. *Section 10(j) Manual*, *supra*, § 5.2.1, at 13.

117.    Even after relying on this one-sided presentation of the facts and law as their primary basis for authorizing Section 10(j) proceedings, the same NLRB Members often judge whether the same charged parties have engaged in the alleged unfair labor practices, and issue findings of fact, orders, and remedies that are then subject to deferential judicial review. 29 U.S.C. § 160(c), (e)–(f).

118.    The Supreme Court has held, however, that "an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Williams*, 579 U.S. at 8.

119.    "The due process guarantee that 'no man can be a judge in his own case' would have little substance if it did not disqualify a former prosecutor from sitting in judgment of a prosecution in which he or she had made a critical decision." *Id.* at 9.

120.    Such circumstances present the risk that "the judge's 'own personal knowledge and impression' of the case, acquired through his or her role in the prosecution, may carry far more weight with the judge than the parties' arguments to the court." *Id.* at 9–10.

121.    The same risks are inherent in NLRB adjudications before Members of the Board that previously authorized pursuit of Section 10(j) relief based on the "Go 10(j)" Memorandum's presentation of facts and law.

122.    After having placed their imprimatur on a federal-court filing that alleges, on behalf of the NLRB itself, that a specific party has likely violated the NLRA in ways that cause irreparable harm to third parties, there is a substantial risk that such NLRB Members will be psychologically wedded to that position when they adjudicate the administrative complaint.

123.    That risk is even greater if, in the meantime, the agency's bid for Section 10(j) relief has succeeded, because the Members might "be influenced by an improper, if inadvertent, motive to validate and preserve the result obtained through the adversary process" in federal court. *Williams*, 579 U.S. at 11.

124.    In addition to making factual determinations, the NLRB adjudicative process often involves significant quasi-legislative authority under which the NLRB Members can decide to adopt new interpretations of the NLRA's requirements.

125.    "The National Labor Relations Board, uniquely among major federal administrative agencies, has chosen to promulgate virtually all the legal rules in its field through

adjudication rather than rulemaking." *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998).

126.    Then, in an eventual appeal by an aggrieved person, the NLRB claims deference from U.S. Courts of Appeals to both its interpretations of the NLRA and its findings of fact.

127.    But it is well settled that "[e]ven appeal and a trial de novo will not cure a failure to provide a neutral and detached adjudicator." *Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 618 (1993).

128.    On December 19, 2023, an NLRB attorney communicated that the Region will be making a submission to the General Counsel's Injunction Litigation Branch about the appropriateness of Section 10(j) relief in this dispute.

129.    That communication suggests that a recommendation that Defendants McFerran, Kaplan, Wilcox, and Prouty (the "NLRB Member Defendants") approve Section 10(j) proceedings is imminent.

130.    The NLRB Member Defendants' exercise of prosecutorial authority in making the significant decision of approving a Section 10(j) proceeding against SpaceX leaves those Members unable to participate as adjudicators on the same underlying charges against SpaceX consistent with the Fifth Amendment's due process guarantee.

131.    SpaceX is therefore entitled to declaratory relief sufficient to ensure that its due process rights are not violated.

132.    Moreover, without interim injunctive relief from this Court, SpaceX will be required to undergo an unconstitutional proceeding before agency officials who are obligated to recuse from participation.

133.    SpaceX bears a strong likelihood of success on this claim for the reasons detailed above.

134.    Yet, unless the NLRB is enjoined from proceeding against SpaceX before NLRB Members who are constitutionally obligated to recuse themselves, SpaceX will be irreparably harmed.

135.    As the Supreme Court has recognized, "being subjected to an illegitimate proceeding, led by an illegitimate decisionmaker," qualifies as a "here-and-now injury." *Axon Enter.*, 143 S. Ct. at 893.

136.    If the current NLRB Members authorize the Section 10(j) litigation against SpaceX and fail to recuse from the agency adjudication and participate in a decision, "ordering a rehearing . . . may not provide complete relief." *Williams*, 579 U.S. at 16; *see also, e.g.*, *Ward v. Vill. of Monroeville, Ohio*, 409 U.S. 57, 61–62 (1972) (A party "is entitled to a neutral and detached judge in the first instance.").

137.    The harm to SpaceX, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted. Unlike the NLRB, which did not file the adjudicative proceedings until 18 months after the allegedly unlawful conduct, SpaceX has filed this action as quickly as possible—as soon as the NLRB gave notice of an ALJ hearing.

138.    The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting Americans' constitutional rights.

## **PRAYER FOR RELIEF**

**WHEREFORE**, SpaceX hereby requests that the Court order the following relief and enter a judgment:

1. Declaring that:

   a. The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB ALJs, including 5 U.S.C. § 7521(a), are unconstitutional;

   b. The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB Members, including 29 U.S.C. § 153(a), are unconstitutional;

   c. The NLRB proceedings against SpaceX deprive it of its constitutional right to trial by jury; and

   d. Members of the NLRB who participate in the decision to authorize Section 10(j) litigation against SpaceX are constitutionally obligated to recuse from further NLRB proceedings on the same unfair labor practice allegations.

2. Preliminarily enjoining Defendants from subjecting SpaceX to unconstitutionally structured administrative proceedings pending the final resolution of this action;

3. Permanently enjoining Defendants from implementing or carrying out the unconstitutional removal-protection provisions identified above;

4. Permanently enjoining the NLRB Member Defendants from adjudicating allegations relating to the same underlying set of events as any Section 10(j) action against SpaceX that they authorize;

5. Awarding SpaceX its costs and expenses incurred in bringing this action, including, but not limited to, reasonable attorney's fees; and

6. Awarding such other and further relief, whether at law or in equity, as the Court deems just and proper.

Dated: January 4, 2024

Respectfully submitted,

By:     */s/ Catherine L. Eschbach*               

**MORGAN LEWIS & BOCKIUS LLP**
Catherine L. Eschbach
Attorney-in-Charge
Texas Bar No. 24097665
Southern District of Texas Bar No. 3846447
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5006
catherine.eschbach@morganlewis.com
Tel: (713) 890-5719
Fax: (713) 890-5001

Harry I. Johnson, III (*pro hac vice* forthcoming)
Of Counsel
2049 Century Park East, Suite 700
Los Angeles, CA 90067-3109
Tel: (310) 907-1000

Michael E. Kenneally (*pro hac vice* forthcoming)
Amanda L. Salz (*pro hac vice* forthcoming)
Of Counsel
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004-2541
michael.kenneally@morganlewis.com
amanda.salz@morganlewis.com
Tel: (202) 739-3000

*Attorneys for Space Exploration Technologies Corporation*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| **SPACE EXPLORATION TECHNOLOGIES CORP.,**<br><br>      **Plaintiff,**<br><br>                    **v.**<br><br>**NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,**<br><br>      **Defendants.** | Civil Action No. 1:24-cv-00001 |

**PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................4

ARGUMENT .....................................................................................................................6

I.    SpaceX is likely to succeed on the merits of its constitutional claims. ...........................7

    A.    NLRB ALJs are unconstitutionally insulated from removal. ..................................7

    B.    The NLRB's Board Members are unconstitutionally insulated from removal. ....................................................................................................8

    C.    The NLRB's adjudication of private rights and legal relief violates the Seventh Amendment. ..........................................................................10

    D.    The NLRB Members' blending of functions violates the separation of powers and due process. ....................................................................14

II.   SpaceX will suffer irreparable harm without a preliminary injunction. ..........................17

    A.    The unconstitutionality of the NLRB proceedings inflicts irreparable harm. ...............................................................................................18

    B.    The unconstitutional NLRB proceedings inflict irreparable economic harm. ...............................................................................................20

III.  The balance of harms and public interest favor a preliminary injunction. .......................21

IV.   Severability arguments cannot defeat SpaceX's right to a preliminary injunction. ..........22

CONCLUSION................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alpine Sec. Corp. v. FINRA,*
   No. 23-5129, 2023 WL 4703307 (D.C. Cir. July 5, 2023) .....................................................19

*Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.,*
   309 U.S. 261 (1940)..............................................................................................................13

*Assoc. Builders & Contractors of Tex. Gulf Coast, Inc. v. U.S. Dep't of Energy,*
   451 F. Supp. 281 (S.D. Tex. 1978) ......................................................................................20

*Atlas Roofing Co., Inc. v. OSHRC,*
   430 U.S. 442 (1977).........................................................................................................13, 14

*Axon Enter., Inc. v. FTC,*
   598 U.S. 175 (2023) ...................................................................................................... *passim*

*Ayotte v. Planned Parenthood of N. New England,*
   546 U.S. 320 (2006)..........................................................................................................22, 25

*BST Holdings, L.L.C. v. OSHA,*
   17 F.4th 604 (5th Cir. 2021) .................................................................................................21

*Burgess v. FDIC,*
   639 F. Supp. 3d 732 (N.D. Tex. 2022) .................................................................................19

*Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry,*
   494 U.S. 558 (1990)...............................................................................................................13

*Cochran v. SEC,*
   20 F.4th 194 (5th Cir. 2021) .................................................................................................19

*Collins v. Dep't of the Treasury,*
   No. 22-20632, 2023 WL 6630307 (5th Cir. Oct. 12, 2023) .................................................18

*Collins v. Yellen,*
   141 S. Ct. 1761 (2021)...........................................................................................................10

*Community Fin. Servs. Ass'n of Am. Ltd. v. CFPB,*
   51 F.4th 616, 625 (5th Cir. 2022) .........................................................................................18

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.,*
   710 F.3d 579 (5th Cir. 2013) ...........................................................................................17, 21

*Deerfield Med. Ctr. v. City of Deerfield Beach*,
    661 F.2d 328 (5th Cir. 1981) ................................................................................ 18

*Doran v. Salem Inn, Inc.*,
    422 U.S. 922 (1975) ........................................................................................... 22

*Fortune v. Nat'l Cash Reg. Co.*
    364 N.E.2d 1251 (Mass. 1977) .......................................................................... 12

*Free Enter. Fund v. PCAOB*,
    561 U.S. 477 (2010) ..................................................................................... *passim*

*Granfinanciera, S.A. v. Nordberg*,
    492 U.S. 33 (1989) ..................................................................................... 13, 14

*Horne v. Polk*,
    394 P.3d 651 (Ariz. 2017) .......................................................................... 15, 16

*Humphrey's Ex'r v. United States*,
    295 U.S. 602 (1935) ...................................................................................... 9, 10

*Jarkesy v. SEC*,
    34 F.4th 446 (5th Cir. 2022) ...................................................................... *passim*

*League of Women Voters of U.S. v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ............................................................................. 21

*Louisiana v. Biden*,
    55 F.4th 1017 (5th Cir. 2022) ..................................................................... 6, 21

*Lucia v. SEC*,
    138 S. Ct. 2044 (2018) ................................................................................ 8, 24

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993) ........................................................................................ 12

*Myers v. United States*,
    272 U.S. 52 (1926) ............................................................................................ 7

*Nken v. Holder*,
    556 U.S. 418 (2009) ........................................................................................ 21

*NLRB v. Jones & Laughlin Steel Corp.*,
    301 U.S. 1 (1937) ...................................................................................... 13, 14

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
    138 S. Ct. 1365 (2018) .............................................................................. 13, 14

*Overstreet v. El Paso Disposal, L.P.*,
    625 F.3d 844 (5th Cir. 2010) ........................................................................2, 9

*Petermann v. Teamsters Loc. 396*,
    344 P.2d 25 (Cal. Ct. App. 1959) ......................................................................12

*Ramspeck v. Federal Trial Exam'rs Conf.*,
    345 U.S. 128 (1953)..........................................................................................24

*Seila L. LLC v. CFPB*,
    140 S. Ct. 2138 (2020).............................................................................. *passim*

*SpaceX v. Bell*,
    No. 1:23-cv-00137, 2023 WL 8885128 (S.D. Tex. Nov. 8, 2023) ................. *passim*

*Stern v. Marshall*,
    564 U.S. 462 (2011).....................................................................................14, 21

*Thryv, Inc.*,
    372 N.L.R.B. No. 22 (Dec. 13, 2022) ....................................................... *passim*

*Tull v. United States*,
    481 U.S. 412 (1987).....................................................................................11, 12

*United States v. Nat'l Treas. Emps. Union*,
    513 U.S. 454 (1995)..........................................................................................25

*United States v. Texas*,
    599 U.S. 670 (2023).............................................................................................9

*Ward v. Vill. of Monroeville*,
    409 U.S. 57 (1972).............................................................................................19

*Westrock Servs., Inc.*,
    366 N.L.R.B. No. 157 (Aug. 6, 2018) .................................................................8

*Williams v. Pennsylvania*,
    579 U.S. 1 (2016)...................................................................................... *passim*

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)............................................................................................1, 6

**Statutes**

5 U.S.C. § 1202(d) ...............................................................................................2, 7, 8

5 U.S.C. § 7521(a) ...............................................................................................2, 7, 8

8 U.S.C. § 1324b.........................................................................................................14

29 U.S.C. § 153(a) .................................................................................................2, 8, 10

29 U.S.C. § 154 ............................................................................................................9

29 U.S.C. § 159 ............................................................................................................9

29 U.S.C. § 160 ............................................................................................................9

29 U.S.C. § 160(c) ................................................................................................11, 17

29 U.S.C. § 160(e) ....................................................................................................17

29 U.S.C. § 160(f) .....................................................................................................17

29 U.S.C. § 160(j) ............................................................................................... *passim*

Civil Service Act of 1978, Pub. L. No. 95-454, § 1202(d), 92 Stat. 1111 ...................24

National Labor Relations Act ............................................................................. *passim*

**Other Authorities**

5 C.F.R. § 1200.1 .......................................................................................................24

11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND
     PROCEDURE § 2948.1 (3d ed. 2023) ....................................................................18

Civil Service Reform: Hearings on H.R. 11280 Before the H. Comm. on Post Off.
     & Civ. Serv., 95th Cong. 824 (1978) ....................................................................24

Daniel P. O'Gorman, *Construing the National Labor Relations Act: The NLRB
     and Methods of Statutory Construction*, 81 TEMP. L. REV. 177 (2008)..................24

FED. R. CIV. P. 65(a) .....................................................................................................1

General Counsel, *Section 10(j) Manual* (Feb. 2014), https://www.nlrb.gov/sites/
     default/files/attachments/basic-page/node-1727/MASTER%20REVISED%20
     2013%2010(J)%20MANUAL.pdf.........................................................15, 16, 17

Michael J. Heilman, *The National Labor Relations Act at Fifty: Roots Revisited,
     Heart Rediscovered*, 23 DUQ. L. REV. 1059, 1069 (1985)........................................25

NAT'L LABOR RELATIONS BD., LEGISLATIVE HISTORY OF THE NATIONAL LABOR
     RELATIONS ACT OF 1935 (1949)............................................................................25

U.S. CONST. amend. VII ................................................................................... *passim*

U.S. CONST. amend XIV ...........................................................................................15

U.S. CONST. art. II ............................................................................................ *passim*

U.S. CONST. art. III............................................................................................ *passim*

Space Exploration Technologies Corp. ("SpaceX") respectfully moves for an order preliminarily enjoining ongoing administrative proceedings against SpaceX, to be entered against Defendants the National Labor Relations Board ("NLRB"), Jennifer Abruzzo, Lauren M. McFerran, Marvin E. Kaplan, Gwynne A. Wilcox, and David M. Prouty, and the Administrative Law Judge ("ALJ") who will soon be assigned to preside over the administrative hearing. FED. R. CIV. P. 65(a). The administrative hearing is currently scheduled to begin on March 5, 2024, and without the requested relief, SpaceX will suffer irreparable harm as described below.

## INTRODUCTION

SpaceX has filed this action to avoid serious and irreparable injuries that it will otherwise suffer from being subjected to an unconstitutional administrative proceeding. Defendants are currently prosecuting and presiding over such a proceeding accusing SpaceX of violating federal law. Because the structure of that proceeding violates the United States Constitution under Supreme Court and Fifth Circuit precedent, SpaceX respectfully requests an order halting the NLRB proceedings unless and until the constitutional defects are remedied.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). SpaceX satisfies each of these requirements.

SpaceX is likely to succeed in establishing that the structure of the NLRB proceedings violates the Constitution four times over:

*First*, the administrative proceeding is being heard by an ALJ who is unconstitutionally exercising substantial executive functions while being insulated from presidential control in violation of Article II of the Constitution. *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023). Indeed, three different layers of removal protections impede the

President's ability to remove the NLRB's ALJs: (1) while an agency—here the NLRB—may take steps to remove an ALJ, it may do so "only for good cause established and determined by the Merit Systems Protection Board [("MSPB")]," 5 U.S.C. § 7521(a); (2) the President may remove members of the MSPB only for "inefficiency, neglect of duty, or malfeasance in office," 5 U.S.C. § 1202(d); and (3) the President may remove NLRB board members only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a). In *Jarkesy*, the Fifth Circuit held that a matching set of removal restrictions was unconstitutional as applied to ALJs of the Securities Exchange Commission ("SEC"). 34 F.4th at 463–64. The same conclusion follows here.

*Second*, the Members who lead the NLRB are also unconstitutionally insulated from removal by the President. Article II requires that the President maintain "unrestricted removal power" over all federal officials "who wield executive power," subject to only two exceptions. *Seila Law LLC v. CFPB*, 140 S. Ct. 2138, 2191–92 (2020). The potentially relevant exception here—"for multimember expert agencies that do not wield substantial executive power," *id.* at 2199-200—is inapplicable because the NLRB *does* wield substantial executive power. As just one example, Section 10(j) of the National Labor Relations Act ("NLRA") gives Board Members "the power, upon issuance of [an administrative] complaint . . . charging that any person has engaged in or is engaging in an unfair labor practice, to petition [a] United States district court . . . for appropriate temporary relief or restraining order." 29 U.S.C. § 160(j). This "[p]etition power under § 10(j) is prosecutorial in nature" and thus a quintessential form of executive power. *Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 852 (5th Cir. 2010).

*Third*, the NLRB proceeding violates SpaceX's Seventh Amendment jury-trial right by adjudicating private rights outside the confines of an Article III court. The Board's General Counsel alleges that SpaceX wrongfully terminated certain employees and seeks a broad range of

compensatory monetary damages for those employees. *See generally Thryv, Inc.*, 372 N.L.R.B. No. 22 (Dec. 13, 2022) (holding that the Board will provide expansive monetary compensation for wrongfully terminated employees). The Board thus seeks to vindicate private rights for the benefit of private parties. But because the Constitution only permits the Board to adjudicate public rights through its non-jury, administrative proceedings, such proceedings violate the Seventh Amendment. *See Jarkesy*, 34 F.4th at 451–55 (holding that SEC administrative adjudications violate the Seventh Amendment "because such claims do not concern public rights alone").

*Fourth*, by exercising prosecutorial, legislative, and adjudicatory authority within the same proceeding, the NLRB transgresses the separation of powers and violates SpaceX's due-process rights. The Supreme Court has held that "an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016). Yet that is exactly what Board Members do when they authorize Section 10(j) injunctive relief (a prosecutorial function) and then adjudicate and announce new legal rules during an administrative appeal of an ALJ ruling (judicial and legislative functions). The General Counsel's attorneys have conveyed that they plan to seek the Board Members' authorization for Section 10(j) proceedings against SpaceX, while ultimately relying on the Board Members to resolve the administrative proceeding as a whole. In this way, too, the Board's structure violates the Constitution's guarantees and SpaceX's constitutional rights.

SpaceX will be irreparably harmed by these violations of its constitutional rights unless the Court preliminarily enjoins the NLRB proceedings pending a final decision on the merits. Even if the Court can ultimately cure some of these structural defects in its final judgment, it cannot undo the injury SpaceX will suffer in the meantime through "subjection to an illegitimate proceeding, led by an illegitimate decisionmaker" in "proceedings [that] violate the separation of powers."

3

*Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023). Under binding Supreme Court precedent, such harm is "a here-and-now injury" that "is impossible to remedy once the proceeding is over." *Id.* (citation omitted); *accord SpaceX v. Bell*, No. 1:23-cv-00137, 2023 WL 8885128, at *4 (S.D. Tex. Nov. 8, 2023) (Olvera, J.). And on top of its constitutional injury, SpaceX will suffer the practical harms of undergoing an extensive administrative proceeding that distracts from its important missions, including launching satellites critical to U.S. defense and intelligence agencies and flying NASA astronauts to space. These harms also will be irreparable even if the Court ultimately finds that the NLRB's structural flaws can be corrected prospectively. The balance of equities and public interest weigh strongly in SpaceX's favor for similar reasons. *See id.* at *4.

Because SpaceX satisfies the preliminary injunction factors for its four claims, this Court should grant SpaceX's motion and preliminarily enjoin the NLRB proceedings against it.

## BACKGROUND

SpaceX was founded in 2002 with the audacious goal of making life multiplanetary. Gallman Decl. (attached as Exhibit A), ¶ 4. Today, SpaceX operates a space launch business and a global satellite-based internet service known as Starlink. *Id.* ¶ 5. It employs over 14,000 people in facilities around the country, including in its Starbase facility in Boca Chica, Texas where it is developing, manufacturing, and launching Starship, the most powerful rocket ever built; its rocket development facility in McGregor, Texas; its human spaceflight mission operations and integration facility in Houston, Texas; its Starlink manufacturing facility in Bastrop, Texas; and its facilities in Florida, Washington State, California, and Washington, D.C. *Id.* ¶ 9.

SpaceX's missions serve, among others, NASA, various U.S. government defense and intelligence agencies, commercial customers from around the world, and international space agencies *Id.* ¶ 67. Starship—the largest rocket ever built—has been selected by NASA to return American astronauts to the Moon. *Id.* ¶ 7. Sending crewed spacecraft to the Moon, the International

Space Station, and beyond requires the utmost vigilance, discipline, technical excellence, and teamwork of SpaceX personnel across all its facilities—as does building and maintaining its constellation of thousands of Starlink satellites and serving millions of Starlink customers in more than 70 countries around the world. *See id.* ¶ 20.

On June 15, 2022, a small group of SpaceX employees sent an open letter (the "Open Letter") to almost all SpaceX employees across all of SpaceX's locations, in many cases flooding multiple channels of communication, and demanding that SpaceX take certain actions addressing perceived shortcomings and soliciting employees to fill out a hyperlinked survey to indicate support for the Open Letter's demands and provide feedback. Compl. ¶¶ 43–44, ECF No. 1. The Open Letter overwhelmed many of SpaceX's communication channels and caused significant disruption to SpaceX operations around the country, including at Starbase and the other Texas facilities. It was a blatant and gross violation of company policies. *Id.* ¶¶ 34, 45. SpaceX discharged a few of the employees involved with the Open Letter for these policy violations. *Id.* ¶ 46.

In November 2022, former SpaceX employees (the "Charging Parties") filed charges with the NLRB alleging that SpaceX committed unfair labor practices when it terminated their employment (the "Charges"). *Id.* ¶ 47. SpaceX submitted to the NLRB a position statement refuting the Charging Parties' allegations, along with supporting evidence. *Id.* ¶ 48. The position statement and evidence spanned 700 pages, and its preparation was a burdensome effort.

On December 14, 2023, the investigating NLRB Region informed SpaceX that it had made determinations on the Charges and had authorized an administrative complaint against SpaceX on nearly every single charge, breaking with established legal precedent to avoid narrowing the issues at all. The NLRB, in its eagerness to subject SpaceX to its burdensome hearing process, seemed to ignore even basic information provided by SpaceX, such as the supervisory status of one

charging party (making them exempt from the NLRA's protections) and clear evidence that another charging party was actually terminated for a well-documented history of substandard performance. *Id.* ¶ 48. On January 3, 2024, the Regional Director for Region 31 issued an order consolidating the administrative cases, with a consolidated administrative complaint and notice that an ALJ hearing would occur just two months later, on March 5, 2024. *Id.* ¶ 49.

The next day, SpaceX filed this suit seeking preliminary and permanent injunctive relief and declaratory relief, based on four distinct constitutional problems with the NLRB proceedings. *See generally* Compl., ECF No. 1. SpaceX inquired whether the NLRB would agree to stay its proceedings to give this Court time to adjudicate these issues. Eschbach Decl. (attached as Exhibit B), ¶¶ 4, 6. The NLRB's counsel instructed SpaceX to file any request for postponement with the Regional Office. *Id.* ¶ 7. SpaceX has now filed such a request with the Regional Office, but the General Counsel opposes a postponement until after this Court has decided the claims in this action. *Id.* ¶ 8 & Ex. B-2. Because SpaceX currently faces a January 17, 2024 deadline to answer the administrative complaint and is already gearing up for a March 5, 2024 hearing, and because the General Counsel opposes postponing the administrative proceedings pending this litigation, time is of the essence. In the ways described above, and others, the administrative proceeding is causing ongoing harm by requiring SpaceX to devote significant resources preparing for the unconstitutional administrative proceedings. Gallman Decl. ¶¶ 13–20.

## ARGUMENT

Preliminary injunctive relief is proper when a movant establishes (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20; *see also, e.g.*, *Louisiana v. Biden*, 55 F.4th 1017, 1022 (5th Cir. 2022). SpaceX satisfies all four factors.

I.      **SpaceX is likely to succeed on the merits of its constitutional claims.**

   A.      **NLRB ALJs are unconstitutionally insulated from removal.**

Article II vests all executive power in the President, "who must 'take Care that the Laws be faithfully executed.'" *Seila L.*, 140 S. Ct. at 2191. The president does not execute federal law "alone and unaided." *Myers v. United States*, 272 U.S. 52, 117 (1926). "He must execute them by the assistance of subordinates." *Id.* But because the executive responsibility remains vested in the President, the officers of every administrative agency—including "independent" ones—must be subject to presidential oversight. *See Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513–14 (2010). The Constitution thus requires that the President have the "power to remove—and thus supervise— those who wield executive power on his behalf." *Seila L.*, 140 S. Ct. at 2191.

SpaceX is likely to succeed on the merits of its constitutional challenge to the NLRB ALJs' removal protections. Indeed, that conclusion is required by existing Fifth Circuit precedent. In *Jarkesy*, the Fifth Circuit held that an indistinguishable "statutory removal restrictions" for SEC ALJs "are unconstitutional." 34 F.4th at 465. Under 5 U.S.C. § 7521(a), "SEC ALJs may be removed by the Commission 'only for good cause established and determined by the [MSPB] on the record after opportunity for hearing.'" 34 F.4th at 464. And the Fifth Circuit determined that SEC Commissioners and MSPB members themselves "can only be removed by the President for cause." *Id.*; *see* 5 U.S.C. § 1202(d) (MSPB members). The SEC ALJs were "sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy*, 34 F.4th at 464. But these multiple "layers of for-cause protection"—for the SEC Commissioners and the MSPB members—unconstitutionally "stand in the President's way." *Id.* at 465.

*Jarkesy* is dispositive. There is no relevant difference between SEC ALJs and NLRB ALJs. Both are "inferior officers" who "have substantial authority" in agency investigations and

enforcement actions. *Jarkesy*, 34 F.4th at 464; *see Westrock Servs., Inc.*, 366 N.L.R.B. No. 157, slip op. at 1 (Aug. 6, 2018) ("Board judges, like SEC judges, are inferior officers[.]"). And like SEC ALJs, NLRB ALJs are covered by "at least two layers of for-cause protection" that "stand in the President's way." *Jarkesy*, 34 F.4th at 465. Indeed, 5 U.S.C. § 7521(a), which allows an employing agency to remove its ALJs only when the MSPB finds good cause, applies equally to both sets of ALJs; and 5 U.S.C. § 1202(d) applies equally to the MSPB members in both cases as well. And the NLRA explicitly creates removal protection for Board Members: they are removable only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a). So, like the SEC ALJs, NLRB ALJs are unconstitutionally insulated from the President's oversight. *See Jarkesy*, 34 F.4th at 464.

The *Jarkesy* holding on SEC ALJs is binding on this Court and flows straightforwardly from prior Supreme Court precedent. *See id.* at 464–65 (applying *Free Enter.*, 561 U.S. at 495–508, and *Lucia v. SEC*, 138 S. Ct. 2044, 2053–54 (2018)). Supreme Court precedent establishes that multi-layer removal-protection violates Article II because it "not only protects [the inferior officers] from removal except for good cause, but withdraws from the President any decision on whether that good cause exists." *Free Enter.*, 561 U.S. at 495. Under this binding precedent, SpaceX is likely to—indeed must—prevail on the merits of this claim.

**B.    The NLRB's Board Members are unconstitutionally insulated from removal.**

The removal protections of the NLRB's Board Members are unconstitutional as well. Unlike ALJs, the NLRB Members are not merely inferior officers; they are *principal* officers who exercise substantial executive power in administering and enforcing the NLRA. Though they are appointed by the President and confirmed by the Senate as principal officers, the President is deprived of his constitutional power to oversee their work because the President can remove them only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a).

Recent Supreme Court precedent strongly suggests that this strict removal protection violates Article II of the Constitution given the substantial executive power that the Board wields.

As noted, removal restrictions for executive branch officials are generally unconstitutional. For principal officers, the Supreme Court has recognized only one narrow exception "for multimember expert agencies that do not wield substantial executive power." *Seila L.*, 140 S. Ct. at 2199–200. This exception originated in *Humphrey's Executor v. United States*, 295 U.S. 602, 628 (1935), which determined that the Commissioners of the Federal Trade Commission ("FTC") did not at the time exercise "executive power in the constitutional sense." *Id.* at 628.

Whatever might have been true of FTC Commissioners in 1935, NLRB Members exercise substantial executive power through their administrative, policymaking, and prosecutorial authority. They enforce the NLRA in many ways, including, for example, determining appropriate units for the purpose of collective bargaining, directing representation elections, deciding unfair labor practice charges, and seeking enforcement of unfair labor practice orders in federal court. 29 U.S.C. §§ 159, 160. They also have authority to appoint inferior officers including the executive secretary, attorneys, examiners, regional directors, ALJs, and others. *Id.* § 154.

The Board Members' executive functions are clearly seen in NLRA Section 10(j), which gives the Board quintessentially prosecutorial power: "[t]he Board shall have power . . . to petition [a] United States district court . . . for appropriate temporary relief or restraining order" in response to an alleged unfair labor practice. *Id.* § 160(j). As the Fifth Circuit has found, this petition power "is prosecutorial in nature." *Overstreet*, 625 F.3d at 852. And prosecuting someone for alleged violations of federal law lies at the heart of the Constitution's concept of Executive Power. *See, e.g.*, *United States v. Texas*, 599 U.S. 670, 678–79 (2023); *Seila L.*, 140 S. Ct. at 2200.

Additionally, the removal protections for NLRB Members are also stricter than those that

insulated the FTC Commissioners in 1935 (and still do). The latter are removable "for inefficiency, neglect of duty, or malfeasance in office," *Humphrey's Ex'r*, 295 U.S. at 620 (quoting 15 U.S.C. § 41). NLRB Members, in contrast, are removably only "for neglect of duty or malfeasance in office," but not for other causes like inefficiency, 29 U.S.C. § 153(a). Allowing Congress to eliminate the President's ability to remove principal officers for inefficiency would be an unjustified expansion of *Humphrey's Executor*. *See Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021) ("The President must be able to remove not just officers who disobey his commands but also those he finds 'negligent and inefficient[.]'" (quoting *Myers*, 272 U.S. at 135)).

The Supreme Court has repeatedly declined to expand *Humphrey's Executor*. For example, in *Free Enterprise*, the Court held that *Humphrey's Executor* does not apply when inferior officers are shielded by two layers of removal protections. *Free Enter.*, 461 U.S. at 493. In *Seila Law* and *Collins*, the Court confirmed that *Humphrey's Executor* does not apply when an independent agency is led by a single director. *Seila L.*, 140 S. Ct. at 2192; *Collins*, 141 S. Ct. at 1783–84. Indeed, *Humphrey's Executor* has recently been called into serious question. *See, e.g.*, *Seila L.*, 140 S. Ct. at 2198 n.2; *id.* at 2217 (Thomas, J., concurring in part and dissenting in part). While recognizing that only the Supreme Court has the prerogative to overrule its own decisions, SpaceX expressly preserves the argument that *Humphrey's Executor* should be overturned, particularly given more recent precedent. *Id.* But the key point here is that there is no basis to expand *Humphrey's Executor* to NLRB Members, who wield greater executive power than the 1935 FTC yet are more protected from presidential oversight. SpaceX is likely to prevail on this claim, too.

### C.   The NLRB's adjudication of private rights and legal relief violates the Seventh Amendment.

The NLRB proceeding against SpaceX also violates the Seventh Amendment, which preserves the right to trial by jury "[i]n Suits at common law." U.S. CONST. amend. VII. Today's

Board claims authority to award extensive compensatory damages to make employees whole for alleged violations of their legal rights. This effort to adjudicate private rights and afford legal relief without the safeguards of juries and an impartial judiciary, as Article III requires, far exceeds the constitutional bounds for administrative adjudications.

The Fifth Circuit has recently reaffirmed that the right to trial by jury "is a 'fundamental' component" of the American legal system and "one of our most vital barriers to governmental arbitrariness." *Jarkesy*, 34 F.4th at 452 (citation omitted). In applying the Seventh Amendment, a court must determine (1) "whether [the] action's claims arise 'at common law' under the Seventh Amendment" and, if so, (2) "whether the Supreme Court's public-rights cases nonetheless permit Congress to assign it to agency adjudication without a jury trial." *Id.* at 453 (citation omitted). "This analysis applies not only to common-law forms of action, but also to causes of action created by congressional enactment." *Tull v. United States*, 481 U.S. 412, 417 (1987).

The NLRB proceeding against SpaceX involves claims that arise at common law within the meaning of *Jarkesy* and *Tull*. The Board has lately taken the view that it may, and should, award broad monetary relief "to compensate affected employees for all direct or foreseeable pecuniary harms that these employees suffer as a result of the [employer's] unfair labor practice." *See Thryv*, 372 N.L.R.B. No. 22, slip op. at 1. This compensation includes not just backpay, *see* 29 U.S.C. § 160(c), but also such items as "interest and late fees on credit cards" and other "credit card debt," "penalties" based on "early withdrawals" from a "retirement account" to cover living expenses, compensation for loss of a "car" or "home" based on an inability "to make loan or mortgage payments" or "rent," and new or increased "transportation or childcare costs," among other things. *Thryv*, 372 N.L.R.B. No. 22, slip op. at 9–10 (citation omitted). Other than backpay, these categories of monetary relief are not found in the statute. But the Board has nonetheless

11

authorized them to "mak[e] employees whole" and "to restore the wronged to the position he would have occupied but for the action of the wrongdoer." *Id.* at 8, 10 (citation omitted); *see also id.* at 12.

In accordance with *Thryv*, the NLRB's administrative complaint against SpaceX specifies that the General Counsel seeks all relief as may be just and proper to remedy the unfair labor practices alleged. *See* Eschbach Decl., Ex. B-1 at 9. Under current Board precedent, this relief would include the newly authorized damages "to compensate [unlawfully terminated] employees for all direct or foreseeable pecuniary harms that these employees suffer as a result of" the unlawful termination. *Thryv*, 372 N.L.R.B. No. 22, slip op. at 1.

The Supreme Court has recognized that "compensatory damages," or "monetary relief for all losses . . . sustained as a result of the alleged breach of . . . duties," are "the classic form of *legal* relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (some emphasis omitted). And an action by an employee against an employer seeking full compensation arising from an alleged wrongful discharge is akin to a proceeding seeking compensatory and consequential damages for a breach of contract or for a tort. *Cf. Fortune v. Nat'l Cash Reg. Co.* 364 N.E.2d 1251, 1257 (Mass. 1977) (treating bad-faith discharge of an at-will employee as a breach of contract); *Petermann v. Teamsters Loc. 396*, 344 P.2d 25, 27–28 (Cal. Ct. App. 1959) (recognizing cause of action for discharge in violation of public policy). For this reason, the Board's administrative proceeding against SpaceX is "more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty." *Tull*, 481 U.S. at 417.[1]

The public-rights doctrine does not authorize Congress to assign these claims to

---

[1] SpaceX believes backpay is compensatory relief and thus legal in nature, but even if backpay were considered equitable, the other forms or relief recently authorized by the NLRB in *Thryv* and sought in the administrative proceedings are clearly compensatory and thus legal in nature.

administrative agencies. Again, the Board's admitted purpose is "making employees whole" and remedying the private wrong. *Thryv*, 372 N.L.R.B. No. 22, slip op. at 8, 10, 12. In this way, the Board is explicitly aiming beyond the vindication of public rights—"the public interest in effecting federal labor policy"—and instead focusing on "the wrong done the individual employee." *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 573 (1990) (citation omitted). Denying the Board the ability to award this form of compensation would not "dismantle the statutory scheme." *Jarkesy*, 34 F.4th at 455. "Common-law courts have [awarded compensatory damages] for centuries," *id.*, yet the Board's latest claim of authority to do so is a novelty, not something expressly authorized by the statute itself.

The fact that the original design of the NLRB may have passed constitutional scrutiny under the Seventh Amendment, *see NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 47 (1937); *Atlas Roofing Co., Inc. v. OSHRC*, 430 U.S. 442, 453 (1977), does not mean that the agency's current operations do. Nor, in any event, would Congress have carte blanche to ignore the Seventh Amendment and Article III, even if it had wanted to do so, simply by creating a new statutory framework and administrative agency. Congress cannot "conjure away the Seventh Amendment by mandating that traditional legal claims" proceed before "an administrative tribunal." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989); *see also Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1372–73 (2018) ("Congress cannot 'confer the Government's "judicial Power" on entities outside Article III.'"). As originally conceived, the NLRB was limited to awarding the narrow relief enumerated in the statute, consistent with the Board's mandate to act as "as a public agent" rather than a provider of a "private administrative remedy." *Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.*, 309 U.S. 261, 265, 269 (1940) (citation omitted). Now, however, the Board aims to provide full compensatory relief to make

private individuals whole—*i.e.*, private legal remedies—violating the Seventh Amendment and thus Article III as well. *See Oil States*, 138 S. Ct. at 1379 (noting the connection between the Seventh Amendment right and Article III).

The *Thryv* majority's decision to become a source of compensatory damages to remedy private wrongs readily differentiates this case from *Bell*, where this Court preliminarily found, pending further summary judgment briefing, that 8 U.S.C. § 1324b administrative proceedings, which enforce "immigration and employment laws" through a set of enumerated remedies that include specific monetary penalties, "protect[ed] public rights and are thus excepted from the Seventh Amendment." 2023 WL 8885128, at *5. The broad compensatory monetary damages at issue in the Board's administrative proceeding is not a vindication of public rights but an effort to adjudicate private rights focused on the alleged wrong done to the individual employees identified in the charge. *See, e.g.*, *Stern v. Marshall*, 564 U.S. 462, 489 (2011) (observing that "the liability of one individual to another under the law" is a matter "of private right" (citation omitted)). Under *Jarkesy* and the Supreme Court precedent that it implements, SpaceX is likely to succeed on the merits of this claim.[2]

### D.   The NLRB Members' blending of functions violates the separation of powers and due process.

The final structural constitutional defect in the NLRB's proceedings against SpaceX is the combination of both prosecutorial and adjudicative functions by the Board Members. The Regional

---

[2] SpaceX expressly preserves the argument that the Supreme Court should revisit *Jones & Laughlin* and *Atlas Roofing* to the extent that they could be read more broadly as allowing the NLRB to adjudicate disputes between employers and employees. *See, e.g.*, *Granfinanciera*, 492 U.S. at 66 (Scalia, J., concurring in part and concurring in the judgment) ("The notion that the power to adjudicate a legal controversy between two private parties may be assigned to a non-Article III, yet federal, tribunal is entirely inconsistent with the origins of the public rights doctrine.").

Director has indicated that it has submitted or will soon submit to the NLRB's Injunction Litigation Branch a recommendation on whether the Board Members should petition a federal court for injunctive relief under Section 10(j) of the NLRA. *See* Compl. ¶ 128; ECF No. 29 at 4, 11 n.59. Under the Board's procedures, the Board Members themselves authorize decisions to seek Section 10(j) relief,[3] but then also preside over administrative appeals from NLRB ALJs' unfair labor practice decisions involving the same subject matter. In other words, when Board Members accept a recommendation to file a Section 10(j) petition, they act both as prosecutors and adjudicators.

The Constitution does not permit the same agency officials to be both prosecutors and judges. Even for *state* officials, the Supreme Court has held that "an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Williams*, 579 U.S. at 8. In *Williams*, the Supreme Court held that a state supreme court justice violated the Fourteenth Amendment Due Process Clause by participating in postconviction review proceedings in a death-penalty case whose prosecution he had authorized decades earlier. 579 U.S. at 4–7. The Court concluded that the justice's dual prosecutorial and adjudicative roles violated "[t]he due process guarantee that 'no man can be a judge in his own case.'" *Id.* at 9. The Constitution therefore mandated that the prior prosecutor recuse from serving as an adjudicator. *Id.* at 16.

This constitutional principle applies equally in the agency context, as the Arizona Supreme Court explained in *Horne v. Polk*, 394 P.3d 651 (Ariz. 2017). There, the court reviewed a due-process challenge to the dual roles a "Special Arizona Attorney General" played when both prosecuting a violation of the Arizona campaign finance laws and reviewing (and rejecting in part) the ALJ's recommendation. In analyzing the constitutional challenge, the Arizona Supreme Court

---

[3] *See* Office of the General Counsel, *Section 10(j) Manual* §§ 5.2–5.5, at 13–16 (Feb. 2014), https://www.nlrb.gov/sites/default/files/attachments/basic-page/node-1727/MASTER%20 REVISED%202013%2010(J)%20MANUAL.pdf.

concluded that both federal and state law (including *Williams*) dictated "that due process does not allow the same person to serve as an accuser, advocate, and final decisionmaker in an agency adjudication." *Id.* at 659. While "[t]he agency head may supervise personnel involved in such functions . . . if she makes the final agency decision, she must be isolated from advocacy functions and strategic prosecutorial decisionmaking and must supervise personnel involved in those functions in an arms-length fashion." *Id.* Because the Special Arizona Attorney General "assumed an advocacy role during the ALJ proceedings," the court concluded that "the due process guarantee prohibited her from then serving as the final adjudicator" on appeal. *Id.*

The Section 10(j) approval process that is evidently already underway against SpaceX[4] violates not just due process principles but also the separation of powers rules that apply within the federal government.  Because a Section 10(j) proceeding seeks preliminary injunctive relief, the decision also rests on whether the alleged violations threaten "irreparable harm" to the Board or the Charging Parties. *Section 10(j) Manual*, *supra*, §§ 4.0, 5.2.1, at 10, 13. In these ways, NLRB Members who grant their approval to request Section 10(j) relief express their assessment that (1) the subject of the enforcement proceeding is likely to lose on the merits of the case and (2) the NLRB's interests outweigh the subject's interests.

This approval process is far from neutral. By design, the NLRB's Section 10(j) approval process relies primarily on the presentation in the "Go 10(j)" memorandum prepared by one side— the NLRB inferior officers who wish to litigate the alleged statutory violations. This memorandum provides the administrators' views about "the relevant facts and legal arguments and authorities establishing the violations," the NLRB officials' "responses to defenses raised by the [charged

---

[4] In its Motion to Transfer (ECF No. 29 at 11 n.59), the NLRB admits that a Section 10(j) proceeding against SpaceX "is being considered."

party]," and the administrators' "responses [to the charged party's] arguments against 10(j)" relief. *Section 10(j) Manual*, *supra*, § 5.2.1, at 13. Even after relying on this one-sided presentation of the facts and law as their primary basis for authorizing Section 10(j) proceedings, the same NLRB Members often judge whether the same charged parties have engaged in the alleged unfair labor practices, and issue findings of fact, orders, and remedies that are then subject to deferential judicial review. 29 U.S.C. § 160(c), (e)–(f).

After having placed their imprimatur on a federal-court filing that alleges, on behalf of the NLRB itself, that a specific party has likely violated the NLRA in ways that cause irreparable harm to the Board or third parties, there is a substantial risk that such NLRB Members will be "psychologically wedded" to that position when they adjudicate the administrative complaint. *Williams*, 579 U.S. at 11 (citation omitted). If, in the meantime, the agency's bid for Section 10(j) relief has succeeded, that risk is even greater. For Board Members might "be influenced by an improper, if inadvertent, motive to validate and preserve the result obtained through the adversary process" in federal court. *Id.* The Constitution prohibits adjudicative proceedings that are tainted in this way, and SpaceX is likely to succeed on this claim also.

## II.   SpaceX will suffer irreparable harm without a preliminary injunction.

SpaceX also meets the second requirement for a preliminary injunction: irreparable harm. Without preliminary relief from this Court, SpaceX will be required to undergo an unconstitutional proceeding before an insufficiently accountable agency official, without the jury it is entitled to, and without the basic due process of an unbiased decisionmaker consistent with the separation of powers. None of these constitutional injuries would be remediable after the administrative process. Unless this Court grants a preliminary injunction blocking the NLRB proceedings, SpaceX will suffer "harm for which there is no adequate remedy at law." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013).

A.      **The unconstitutionality of the NLRB proceedings inflicts irreparable harm.**

In general, deprivations of constitutional rights are irreparable injuries, as this Court has recognized. *Bell*, 2023 WL 8885128, at *4 ("Deprivation of a constitutional right unquestionably constitutes irreparable injury." (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Other authorities are in accord. *See, e.g.*, *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (denial of constitutional rights "for even minimal periods of time constitutes irreparable injury"); 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (3d ed. 2023) (Where "deprivation of a constitutional right is involved, . . . most courts hold that no further showing of irreparable injury is necessary.").

And the Supreme Court recently held that a party that is subject to a proceeding before a decisionmaker who is unconstitutionally insulated from presidential oversight suffers irreparable harm. *Axon*, 598 U.S. at 191. The Court recognized that "being subjected to unconstitutional agency authority . . . by an unaccountable ALJ . . . is a here-and-now injury" that is "impossible to remedy once the proceeding is over." *Id*. An appellate court "could of course vacate the [agency]'s order," but a "separation-of-powers claim" challenging unconstitutional removal protections "is not about that order." *Id*. Such a claim "is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker." *Id.* And once the proceeding has concluded, a court is unable to remedy that harm: "[a] proceeding that has already happened cannot be undone," and so "[j]udicial review . . . would come too late to be meaningful." *Id*. at 191–92. This reasoning is directly applicable to both of SpaceX's removal-protection claims.

The NLRB may point to inapposite cases where courts have refused to invalidate agency action taken by unconstitutionally insulated Executive Branch officials. *See, e.g., Community Fin. Servs. Ass'n of Am. Ltd. v. CFPB*, 51 F.4th 616, 625 (5th Cir. 2022) (plaintiffs sought to enjoin enforcement of already-promulgated regulation); *Collins v. Dep't of the Treasury*, No. 22-20632,

2023 WL 6630307, at *7 (5th Cir. Oct. 12, 2023). Such cases are not on-point because they did not reject the availability of relief from the continuing burdens of ongoing unconstitutional proceedings. The Supreme Court has made clear that a challenge to an agency's "power to proceed at all" differs from a challenge to "action[s] [already] taken in the agency proceedings." *Axon*, 598 U.S. at 192. Being subjected "to an illegitimate proceeding, led by an illegitimate decisionmaker," again, is a constitutional injury that "cannot be undone" after the fact. *Id*. at 191; *see also Cochran v. SEC*, 20 F.4th 194, 212-213 (5th Cir. 2021), *aff'd and remanded sub nom.*, *Axon*, 598 U.S. 175 (if removal claim is "meritorious," plaintiff should not be "forc[ed] to litigate before an ALJ who is unconstitutionally insulated from presidential control"); *Alpine Sec. Corp. v. FINRA*, No. 23-5129, 2023 WL 4703307, at *3 (D.C. Cir. July 5, 2023) (Walker, J., concurring) (finding an injunction of an administrative adjudication pending appeal appropriate based on *Axon* because the plaintiff was likely to prevail on claim that officers were unlawfully "shielded from removal").

The deprivation of SpaceX's right to a jury during the NLRB proceedings will also create irreparable harm. Because SpaceX is "entitled under the Seventh Amendment to a jury trial, the irreparable injury requirement is automatically satisfied without the need to consider Plaintiff's particular showings." *Burgess v. FDIC*, 639 F. Supp. 3d 732, 749 (N.D. Tex. 2022). As with having to proceed before unaccountable executive officials, having to proceed without a jury outside an Article III court cannot be remedied after the proceeding has already run its course. *Cf. Ward v. Vill. of Monroeville*, 409 U.S. 57, 61–62 (1972) (A flawed adjudicative process cannot "be deemed constitutionally acceptable simply because the State eventually offers a defendant an impartial adjudication. Petitioner is entitled to a neutral and detached judge in the first instance.").

Proceeding before biased adjudicators is an irreparable injury as well. Even if a court eventually orders a rehearing without participation by any Board Members who authorized the

Section 10(j) petition, this may not "guarantee complete relief." *Williams*, 579 U.S. at 16. For example, any newer Board Members appointed after the Section 10(j) petition who preside over the eventual administrative appeal and are "exposed to a disqualified [Member]" who did authorize the petition, may be "influenced by their colleague's views when they rehear the case." *Id.* And, more broadly, being "deprived of procedural due process . . . is in itself irreparable injury." *Assoc. Builders & Contractors of Tex. Gulf Coast, Inc. v. U.S. Dep't of Energy*, 451 F. Supp. 281, 286 (S.D. Tex. 1978). In short, each constitutional claim poses its own irreparable harm.

### B.   The unconstitutional NLRB proceedings inflict irreparable economic harm.

While the unconstitutional nature of the proceeding is enough to establish irreparable harm, the record reflects that the real-world burdens of that proceeding constitute additional irreparable harm. Responding to the charges and preparing for the upcoming hearing has involved and will continue to involve extensive preparation by SpaceX and its counsel. Gallman Decl. ¶¶ 13-17. This comes at a time when SpaceX is preparing for numerous challenging missions, including national security missions for U.S. defense/intelligence agencies and flying astronauts for NASA and civilian spaceflight participants. *Id.* ¶¶ 18-19. Having to prepare for and participate in the NLRB proceedings imposes significant burdens on employee time and company resources. *Id.* ¶¶ 17, 20. In addition, the existence of the NLRB's complaint and media coverage of the proceedings are likely to hurt SpaceX's reputation and thus its ability to compete for and retrain talent, as SpaceX values its reputation as a leading engineering employer while the government publicly (and falsely) portrays SpaceX as having engaged in unfair labor practices. *Id.* ¶¶ 21-23. The federal government often uses these financial and reputational harms to its advantage. *Cf. Axon*, 598 U.S. at 216 (Gorsuch, J., concurring) ("Aware, too, that few can outlast or outspend the federal government, agencies sometimes use this as leverage to extract settlement terms they could not lawfully obtain any other way."). But there is no way to recover the lost time, money, or talent caused by these

proceedings, even if SpaceX is eventually successful in getting an administrative rehearing that avoids the constitutional defects identified above. Without a stay of these proceedings until the Court can award a constitutionally adequate remedy, SpaceX will suffer concrete harm that will not be recoverable.

## III.    The balance of harms and public interest favor a preliminary injunction.

SpaceX satisfies the two remaining preliminary injunctive factors as well. Where, as here, the government is a defendant, the balance of harms and the public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Both factors tilt strongly in favor of SpaceX. Given its likelihood of success on the merits, an injunction would not harm Defendants because the government suffers no cognizable harm from stopping "the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); *see also, e.g.*, *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021). Nor would an injunction "disserve the public interest." *Louisiana*, 55 F.4th at 1022; *see also BST Holdings*, 17 F.4th at 618; *Daniels Health Scis.*, 710 F.3d at 585 ("[T]he public is served when the law is followed."); *League of Women Voters*, 838 F.3d at 12. It is not in the public interest to have an increasingly expansive Executive Branch that nonetheless "slip[s] from the Executive's control, and thus from that of the people," *Free Enter.*, 561 U.S. at 499, or that infringes the constitutional imperative that "the judiciary remain[] truly distinct from . . . the executive," *Stern*, 564 U.S. at 483 (alteration in original) (quoting THE FEDERALIST No. 78, at 466 (Alexander Hamilton) (C. Rossiter ed. 1961)). And even if the Court grants the injunction but ultimately determines the proceedings are constitutional (or fixes the constitutional defects), Defendants could then proceed with the NLRB proceedings at that time. The NLRB took from November 16, 2022 until January 3, 2024 to file a complaint on the employees' charges. Compl. ¶¶ 47-50. A brief additional delay would not work any meaningful harm.

IV.   **Severability arguments cannot defeat SpaceX's right to a preliminary injunction.**

SpaceX anticipates that Defendants may argue against a preliminary injunction on the premise that any constitutional defects that may exist within the NLRA are severable from the statute as a whole. In *Bell*, this Court declined to issue a preliminary injunction on the removal-protection claims there based on a finding of severability. 2023 WL 8885128, at *5. SpaceX respectfully submits that the possibility of ultimately severing unconstitutional provisions from the NLRA does not detract from SpaceX's entitlement to a preliminary injunction now.

The question of severability is relevant to the scope of the remedy at final judgment, not whether SpaceX is entitled to preliminary relief pending the Court's final decision. *See Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328, (2006) (describing severability as "a question of remedy"). Courts may issue a preliminary injunction to preserve parties' rights even if the ultimate relief they could receive differs from the requested preliminary injunctive relief.  *See e.g., Doran v. Salem Inn, Inc*., 422 U.S. 922, 931 (1975) (noting that a party seeking only declaratory relief was still entitled to a preliminary injunction because "prior to final judgment there is no established declaratory remedy comparable to a preliminary injunction; unless preliminary relief is available upon a proper showing, plaintiffs in some situations may suffer unnecessary and substantial irreparable harm"). So even if the unconstitutional statutory provisions here could all ultimately be severed at final judgment without impeding other aspects of the NLRB's functions, such a possibility neither undermines SpaceX's likelihood of success on the merits of its constitutional claims nor its demonstration of irreparable harm in the meantime.

As to likelihood of success, the severability of an unconstitutional provision would not mean that SpaceX's claim fails. Just the opposite: SpaceX seeks declaratory relief as well as injunctive relief. For example, in *Free Enterprise*, the Supreme Court severed an unconstitutional removal protection, but still ruled in the challengers' favor: even though the challengers were "not

entitled to broad injunctive relief against the [PCAOB's] continued operations," they were still "entitled to declaratory relief sufficient to ensure that the [legal] standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive." 561 U.S. at 513. SpaceX seeks and is entitled that same relief here, even if the Court ultimately determines not to permanently enjoin the NLRB's operations.

And as to irreparable harm, once again, the Supreme Court has recognized the "here-and-now injury" that exists when a party is subject to an unconstitutional administrative proceeding. *Axon*, 598 U.S. at 191. SpaceX "will lose [its] rights not to undergo the complained-of agency proceedings if they cannot assert those rights until the proceedings are over." *Id.* at 192. Without a stay or other postponement of the NLRB proceedings, much of those proceedings will have already happened by the time the Court issues a final decision on the merits of SpaceX's claims. At that point, a declaratory remedy would no longer be able to fully repair the constitutional harm.

In any event, this case is a particularly bad candidate to make the availability of preliminary injunctive relief turn on the possibility of severing unconstitutional provisions. The severability questions here are much more daunting than in *Bell*. The removal-protection problems here are markedly worse than in *Bell*, where ALJ in the Office of the Chief Administrative Hearing Officer ("OCAHO") was subject to for-cause removal by the Attorney General, an official who is already removable at will. So severing the removal protections for the ALJ and the MSPB members "make the OCAHO ALJs accountable to the President." *Bell*, 2023 WL 8885128, at *5. In this case, by contrast, severing those same provisions would not necessarily fix the problems, because the ALJs are subject to for-cause removal by the NLRB Members, who are *not* removable at will. Even if the President can remove MSPB Members without cause, and even if the NLRB can remove its ALJs without cause, such ALJs still are not directly accountable to the President because the NLRB

23

Members' removal protection would remain a barrier. Put differently, while the ALJs in *Bell* had two layers of removal protection, the ALJs here have three. And it is not at all clear which of the removal protections, if any, Congress would have been willing to give up.

On the one hand, the removal protections that the APA gives to ALJs are "a central part of the Act's overall scheme." *Lucia*, 138 S. Ct. at 2060 (Breyer, J., concurring in the judgment in part) (explaining that the APA's creation of independent ALJs was, in part, a response to complaints about "the perceived 'evils' of commingling adjudicative and prosecutorial functions in agencies" (quoting *Wong Yang Sung v. McGrath*, 339 U.S. 33, 41–46 (1950)). Congress enacted and, over time, refined these protections so ALJs would not be perceived as "mere tools of the agency concerned and subservient to the agency heads." *Ramspeck v. Federal Trial Exam'rs Conf.*, 345 U.S. 128, 130 (1953). To that end, Congress eventually created the MSPB in the Civil Service Act of 1978, Pub. L. No. 95-454, § 1202(d), 92 Stat. 1111, and provisions designed to "confer upon [MSPB] members a tenure akin to that of the Federal judiciary." Civil Service Reform: Hearings on H.R. 11280 Before the H. Comm. on Post Off. & Civ. Serv., 95th Cong. 824 (1978); *see* 5 C.F.R. § 1200.1 ("The [MSPB] is an independent Government agency that operates like a court."). Severing the ALJ and MSPB removal protections would override Congress's choices.

At the same time, Congress also designed the NLRB to be an independent agency insulated from presidential, and thus political, control. Both the text of the provision creating the Board and the legislative history make clear that "Congress wanted the Board to be independent of the executive branch." Daniel P. O'Gorman, *Construing the National Labor Relations Act: The NLRB and Methods of Statutory Construction*, 81 TEMP. L. REV. 177, 183 (2008). Senator Wagner, the key architect of the original NLRA (often called the "Wagner Act"), stated that the creation of the NLRB was a response to pleas "for a dignified administrative tribunal, detached from any

24

particular administration that happens to be in power, and entitled to deal quasi-judicially with issues with which the courts have neither the time nor the special facilities to cope." NAT'L LABOR RELATIONS BD., LEGISLATIVE HISTORY OF THE NATIONAL LABOR RELATIONS ACT OF 1935, at 1428 (1949). The NLRB was designed against the backdrop of a prior labor board, the National Labor Board, which was seen as ineffective because of its reliance on the Justice Department to enforce its orders and which answered directly to the President. *See* Michael J. Heilman, *The National Labor Relations Act at Fifty: Roots Revisited, Heart Rediscovered*, 23 DUQ. L. REV. 1059, 1069 (1985). This history is very different from that which the Court considered in addressing severability in *Seila Law*, where the petitioners failed to show that the independence of the Consumer Financial Protection Board ("CFPB") was a driving factor for establishing the agency. *Seila Law* 140 S. Ct. at 2210.

Given the interrelationship between these statutes, deciding which removal restrictions to sever is a difficult question better suited to full briefing on the merits rather than a preliminary injunction decision, or better yet to Congress. Each of the three removal protections reflects Congress's conscious decision to instill administrative proceedings with political independence (rather than political accountability). And deciding at this juncture to sever one, two, or three of these deliberately adopted provisions risks "circumvent[ing] the intent of the legislature," *Ayotte*, 546 U.S. at 330, and violating the "obligation to avoid judicial legislation," *United States v. Nat'l Treas. Emps. Union*, 513 U.S. 454, 479 (1995). Severability should be addressed a later stage and/or in a different branch, and SpaceX's right to avoid unconstitutional administrative proceedings should be protected in the meantime.

## CONCLUSION

For all these reasons, the Court should enter a preliminary injunction against the NLRB's administrative proceedings against SpaceX.

Dated: January 12, 2024                    Respectfully submitted,

                                           By:      *s/ Catherine L. Eschbach*

                                           **MORGAN LEWIS & BOCKIUS LLP**
                                           Catherine L. Eschbach
                                           Attorney-In-Charge
                                           1000 Louisiana Street, Suite 4000
                                           Houston, TX 77002-5006
                                           catherine.eschbach@morganlewis.com
                                           (713) 890-5719

                                           Harry I. Johnson, III (*pro hac vice*)
                                           2049 Century Park East, Suite 700
                                           Los Angeles, CA 90067-3109
                                           (310) 907-1000

                                           Michael E. Kenneally (*pro hac vice*)
                                           Amanda L. Salz (*pro hac vice*)
                                           1111 Pennsylvania Avenue, N.W.
                                           Washington, DC  20004-2541
                                           michael.kenneally@morganlewis.com
                                           amanda.salz@morganlewis.com
                                           (202) 739-3000

                                           *Attorneys for Plaintiff*
                                           *Space Exploration Technologies Corp.*

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule 7.1(d), I hereby certify that on January 12, 2024, I conferred with counsel for the Defendants via email, who represented that Defendants oppose the foregoing motion.

<u>s/ <i>Catherine L. Eschbach</i></u><br>
Catherine L. Eschbach

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 12, 2024, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification to all parties of record.

<u>s/ <i>Catherine L. Eschbach</i></u><br>
Catherine L. Eschbach

# Exhibit A

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | |
|---|---|
| **SPACE EXPLORATION TECHNOLOGIES CORP.,**<br><br>      **Plaintiff,**<br><br>      **v.**<br><br>**NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,**<br><br>      **Defendants.** | Civil Action No. 1:24-cv-00001 |

## DECLARATION OF JAMIN GALLMAN IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Pursuant to 28 U.S.C. § 1746, I, Jamin Gallman, declare as follows:

1.　　　I am Director of Human Resources, Diversity, and Learning at Space Exploration Technologies Corp. (SpaceX).

2.　　　In this role, I manage SpaceX's Diversity & Inclusion, new employee onboarding, and learning development teams. I also manage the Human Resources team at SpaceX's Starbase facility in Boca Chica, Texas.

3.　　　I am currently based at the Starbase facility. Previously, I worked at SpaceX's facility in Hawthorne, California.

4.　　　SpaceX was founded in 2002 in a small warehouse in El Segundo, California with the audacious goal of making life multiplanetary.

5.　　　Today the company operates two primary businesses in furtherance of that objective: a space launch business and a global satellite-based internet service, known as Starlink.

6.　　　SpaceX's space launch business designs, manufactures, and launches advanced rockets and spacecraft to take customer payloads to space, including satellites, cargo for the International Space Station, astronauts for NASA and its international partners, and other human spaceflight participants. Customers of SpaceX's launch business include NASA and various U.S. government defense and intelligence agencies, foreign governments, domestic and international satellite operators and telecommunications companies, scientific and educational institutions, and others. As of today, SpaceX is the world's leading launch-services provider. In 2023, SpaceX completed 96 Falcon missions, including missions for a variety of U.S. government and commercial customers as well as Starlink missions to rapidly deploy that constellation, as well as 2 test launches of the company's new Starship launch system.

7.      Starship, the most powerful rocket ever built, is fully reusable and will enable humans to travel to the Moon, Mars, and other destinations in the solar system. NASA has selected Starship to deliver the next American astronauts to and from the surface of the Moon as part of the Artemis program.

8.      SpaceX's satellite business designs, manufactures, launches, and operates advanced communications satellites. This business includes Starlink, the world's most advanced satellite-based internet service. Starlink uses a low-Earth-orbit satellite constellation—already the world's largest at more than 5,000 satellites and counting—and ground infrastructure around the globe to deliver low-latency, high-speed internet capable of supporting streaming, video calls, and more. It also includes Starshield, a separate, highly secure satellite network for U.S. government entities, including the defense and intelligence communities.

9.      SpaceX's accomplishments have enabled the company to grow rapidly, especially in recent years. The company currently employs more than 14,000 people in facilities around the country, including in its Starbase manufacturing and launch facility in Boca Chica, Texas, its rocket development facility in McGregor, Texas; human spaceflight mission operations and integration facility Houston, Texas; Starlink manufacturing facility in Bastrop, Texas; and its facilities in Florida, Washington State, California, and Washington, D.C.

10.     SpaceX's Starbase facility in Boca Chica, Texas, is SpaceX's fastest-growing facility and employs eighteen human resources professionals and more than 2,225 employees generally.

11.     SpaceX's management and senior decisionmakers are based at different facilities around the country, including Starbase and SpaceX's McGregor, Texas facility. For example, six of SpaceX's twenty-four Vice Presidents are based in Texas. Three are based at Starbase and

3

three at the McGregor, Texas facility. Additionally, Gwynne Shotwell, SpaceX's President and Chief Operating Officer, is based at the McGregor, Texas facility and lives nearby.

12.     I understand that the National Labor Relations Board has accused SpaceX of alleged unfair labor practices in connection with SpaceX's response to a June 15, 2022 "open letter" circulated company-wide by certain SpaceX employees and that the Board is requiring SpaceX to participate in a hearing starting March 5, 2024.

13.     I understand that participating in this administrative proceeding—whether SpaceX wins or loses—will result in very significant litigation costs, including attorney's fees, that will never be recovered from the National Labor Relations Board or the United States. I also understand that SpaceX has already incurred significant expenses defending itself against the NLRB's charges.

14.     I understand that preparing for this hearing will require the time and attention of many SpaceX personnel and officers, including, among many others, myself and other members of the SpaceX Human Resources team who were involved in the events leading up to and after the dissemination of the open letter.

15.     I understand that some SpaceX personnel and officers are likely to participate at the hearing as witnesses.

16.     For example, I understand that it is likely that Gwynne Shotwell, John Edwards (VP for Falcon launch vehicles), and Brian Bjelde (VP for Human Resources), among other senior business leaders, would likely be called to testify in these proceedings.

17.     The employee time required for preparation and participation in the Board's hearing will impose major burdens on SpaceX's resources and will distract its personnel from

4

their usual work for the company, including upcoming missions that are tremendously important to both SpaceX and the goals the United States.

18.     The next two to three months include some three dozen Falcon 9 missions, such as on January 17, 2024, when SpaceX is scheduled to take a group of private citizens to the International Space Station ("ISS"), and in February, when SpaceX is scheduled to take a crew of NASA astronauts to the ISS. There are also currently scheduled missions in February when SpaceX will be part of launching a spacecraft to the Moon. Then in April, SpaceX plans to launch a crew of private astronauts on a mission to orbit the Earth, which is expected to include a spacewalk.

19.     In addition, during this same period, SpaceX personnel are intensely focused on the Starship development effort, with the third test flight scheduled for mid-February and fourth scheduled for mid-March, both from its launch site in Boca Chica, Texas.

20.     These and other missions over the next several months will require the utmost attention from SpaceX personnel at its facilities across the country, including personnel who are likely to help the company prepare for or to testify at the hearing scheduled for March 5

21.     Beyond the cost and diversion of employee time, the administrative proceedings are likely to impact SpaceX's business reputation and goodwill. The accusations by the Board and its prosecutors falsely brand SpaceX as a violator of federal labor law. This accusation has drawn significant public and media attention, which I expect to renew with each new major development in the proceedings until they are stayed or dismissed.

22.     This public and media attention is likely harming SpaceX in the competition for talent, employee retention, and customer confidence in SpaceX's ability to accomplish its mission. Competition for engineering talent is fierce in the aerospace industry. SpaceX's

5

competitors include scores of companies, including multiple "traditional" (e.g., United Launch Alliance, a joint venture between Boeing and Lockheed Martin) and "new space" (e.g., Rocket Lab) launch services providers, satellite manufacturers, telecommunications companies, and many more. The Board prosecution's public claim that SpaceX is a violator of federal labor law likely disadvantages the company relative to its competitors in its continued efforts to attract and hire the most talented people on Earth.

23.     I understand that the NLRB is seeking administrative remedies that would have an impact at all facilities across the country, including by requiring meetings, trainings, and communications involving SpaceX management. These remedies would further cause disruption and a diversion of resources.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January _12_, 2024, in _BOCA CHICA, TX_

Jamin Gallman

6

# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| **SPACE EXPLORATION TECHNOLOGIES CORP.,** | |
| **Plaintiff,** | Civil Action No. 1:24-cv-00001 |
| **v.** | |
| **NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,** | |
| **Defendants.** | |

### DECLARATION OF CATHERINE L. ESCHBACH IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Pursuant to 28 U.S.C. § 1746, I, Catherine L. Eschbach, declare as follows:

1.      I am an attorney in Morgan, Lewis, and Bockius LLP's Houston, Texas office and represent Plaintiff Space Exploration Technologies Corp. ("SpaceX") in this matter.  I am the Attorney-in-Charge under the local rules for this matter.

2.      On Wednesday, January 3, 2024, the National Labor Relations Board ("NLRB") filed an administrative complaint alleging SpaceX committed unfair labor practices, which set a date of March 5, 2024 for a hearing before an Administrative Law Judge on the matter. A true and correct copy of the redacted version of that administrative complaint, as the NLRB has made it available on its official website, is attached to this Declaration as Exhibit 1.[1]

3.      On Thursday, January 4, 2024, SpaceX filed this action in the United States District Court for the Southern District of Texas, Brownsville Division.

4.      On Friday, January 5, 2024 at 5:08 p.m. CST, I emailed David Boehm, who had appeared on the docket in this matter as counsel for the NLRB, to ask: "[W]ould the NLRB be willing to agree to a stay of the currently scheduled administrative proceedings—including SpaceX's upcoming answer obligation—until the court can resolve our anticipated motion for a preliminary injunction and your potential motion to transfer[.]"

5.      Mr. Boehm responded by email later that evening regarding another matter raised in the email but did not respond to this inquiry.

6.      On Monday, January 8, 2024 at 3:41 p.m. CST, I emailed Mr. Boehm to "follow up on the possibility of staying the NLRB proceedings, given the fast-approaching answer

---

[1] Several of the charging parties before the NLRB have reportedly made a request to proceed anonymously, and the NLRB has moved to file the administrative complaint in this Court under seal. ECF No. 35; *see* ECF No. 31 (sealed exhibit). Accordingly, SpaceX submits the publicly available, redacted version of the administrative complaint to support its preliminary injunction motion until the Court rules on the motion to seal.

deadline and the relatively quick timing for the hearing, which will not leave much time for the district court to timely address the transfer motion and our forthcoming preliminary injunction motion."

7.     On Tuesday, January 9, 2024 at 11:36 a.m. CST, Mr. Boehm responded: "In response to your inquiry, the Regional Office will consider requests for postponing your client's time for filing an answer. Please direct your request in writing to the Regional Director and provide the reasons for your request."

8.     On Friday, January 12, 2024, SpaceX filed a Motion to Extend Time for Filing Its Answer to the Complaint and Motion to Postpone the Hearing on the docket in the NLRB administrative matter. A true and correct copy of the version of that Motion for Postponement is attached to this Declaration as Exhibit 2. My understanding is that the General Counsel opposes postponing the NLRB hearing until after this Court rules on SpaceX's claims in this action. .

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 12, 2024, in Houston, Texas.

_____
Catherine Lynn Eschbach

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

SPACE EXPLORATION
TECHNOLOGIES CORP.,

               Plaintiff,

    v.

NATIONAL LABOR RELATIONS
BOARD, a federal administrative agency,
JENNIFER ABRUZZO, in her official
capacity as the General Counsel of the
National Labor Relations Board, LAUREN
M. McFERRAN, in her official capacity as
the Chairman of the National Labor
Relations Board, MARVIN E. KAPLAN,
GWYNNE A. WILCOX, and DAVID M.
PROUTY, in their official capacities as
Board Members of the National Labor
Relations Board, and JOHN DOE in his
official capacity as an Administrative Law
Judge of the National Labor Relations
Board,

               Defendants.

Case No. 24-cv-0001

**DEFENDANTS' RESPONSE IN OPPOSITION**
**TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Background ........................................................................................................... 1

   I. Statutory and regulatory background ........................................................... 1

   II. Procedural history .................................................................................... 4

Legal Standard .................................................................................................. 6

Argument .......................................................................................................... 7

   I. SpaceX cannot establish irreparable harm, the lack of which is fatal to its injunction bid. .... 7

      A.   There is no irreparable harm as to ALJ or Board member removability (Counts I and II) ................................................................................................... 8

      B.   SpaceX's Seventh Amendment claim is too speculative to constitute irreparable harm (Count III). ............................................................................... 15

      C.   SpaceX's combination-of-functions claim is also too speculative to constitute irreparable harm (Count IV). ............................................................... 16

      D.   Harms incident to litigation do not constitute irreparable injury. .............................. 18

   II. SpaceX is not likely to succeed on any of its claims. .......................................... 19

      A.   Because venue in the Southern District of Texas is improper, the case should be dismissed or transferred; declaratory relief is unavailable to SpaceX. ................................. 19

      B.   SpaceX fails to show that any ALJ would have been removed but for removal protections (Count I); in addition, ALJ tenure protections are constitutional...................... 20

      C.   Board members' removal protections (Count II) are constitutional under Humphrey's Executor and Fifth Circuit law. .......................................................... 24

      D.   SpaceX's Seventh Amendment claim (Count III) is beyond this Court's subject-matter jurisdiction and contrary to controlling law. .......................................... 28

      E.   Not only is jurisdiction lacking to hear SpaceX's combined-functions claim (Count IV), the Fifth Circuit recently rejected an indistinguishable argument. .............................. 32

   III. The balance of the equities and the public interest factors counsel against granting a preliminary injunction.............................................................................. 33

Conclusion ...................................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aerojet Gen. Corp.*,
   144 NLRB 368 (1963) ...................................................................................... 34

*Agwilines, Inc. v. NLRB*,
   87 F.2d 146 (5th Cir. 1936) .................................................................. 16, 26, 30

*Air Prods. & Chems., Inc. v. FERC*,
   650 F.2d 687 (5th Cir. 1981) ........................................................................... 32

*Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*,
   No. 23-5129, 2023 WL 4703307 (D.C. Cir. July 5, 2023) ............................... 10

*Anibowei v. Morgan*,
   70 F.4th 898 (5th Cir. 2023) .............................................................................. 6

*Anniston Yarn Mills*,
   103 NLRB 1495 (1953) ................................................................................... 21

*Ashcroft v. Mattis*,
   431 U.S. 171 (1977) ........................................................................................ 15

*Associated Builders & Contractors of Texas Gulf Coast, Inc. v. U.S. Dep't of Energy.*,
   451 F. Supp. 281 (S.D. Tex. 1978) ................................................................. 17

*Atlas Roofing Co. v. OSHRC*,
   430 U.S. 442 (1977) ................................................................................. 29, 30

*Axon Enter., Inc. v. FTC*,
   598 U.S. 175 (2023) ................................................................................. passim

*Ayotte v. Planned Parenthood of Northern New England*,
   546 U.S. 320 (2006) ........................................................................................ 14

*Baldwin Metals Co., Inc. v. Donovan*,
   642 F.2d 768 (5th Cir. 1981) ........................................................................... 17

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
   140 S. Ct. 2335 (2020) .................................................................................... 11

*Barrera-Montenegro v. United States*,
   74 F.3d 657 (5th Cir. 1996) ............................................................................. 17

*Benisek v. Lamone*,
   138 S. Ct. 1942 (2018) (per curiam) ................................................................. 7

*Bill Johnson's Rests., Inc. v. NLRB*,
   461 U.S. 731 (1983) ........................................................................................ 34

*Boire v. Pilot Freight Carriers, Inc.*,
   515 F.2d 1185 (5th Cir. 1975) ................................................................... 4, 32

*Bokat v. Tidewater Equip. Co.*,
   363 F.2d 667 (5th Cir. 1966) ................................................... 4, 16, 31, 32

*Bradley Lumber Co. of Ark. v. NLRB*,
   84 F.2d 97 (5th Cir. 1936) ............................................................................... 18

*Burgess v. FDIC*,
   639 F. Supp. 3d 732 (N.D. Tex. 2022) ............................................................ 10

*Burnley v. Thompson*,
 524 F.2d 1233 (5th Cir. 1975) ................................................................................. 17

*Byrum v. Landreth*,
 566 F.3d 442 (5th Cir. 2009) ..................................................................................... 7

*Calcutt v. FDIC*,
 37 F.4th 293 (6th Cir. 2022) ............................................................................. 10, 11

*Care One, LLC v. NLRB*,
 No. 3:23-cv-00831 (RNC), 2023 WL 6457641 (D. Conn. Oct. 4, 2023) .................. 10

*Carpenters Loc. 370 (E. Contractors Ass'n)*,
 332 NLRB 174 (2000) ............................................................................................. 21

*CashCall, Inc.*,
 35 F.4th 734 (9th Cir. 2022) ................................................................................... 10

*Chacon v. Granata*,
 515 F.2d 922 (5th Cir. 1975) ................................................................................... 15

*City of Los Angeles v. Lyons*,
 461 U.S. 95 (1983) ................................................................................................... 15

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
 51 F.4th 616 (5th Cir. 2022) ......................................................................... 9, 10, 11

*Collins v. Dep't of the Treasury*,
 83 F.4th (5th Cir. 2023) ...................................................................................... 9, 10

*Collins v. Yellen*,
 141 S. Ct. 1761 (2021) ................................................................................... 9, 10, 11

*Consumers' Rsch. v. Consumer Prod. Safety Comm'n*,
 No. 22-40328, 2024 WL 177326 (5th Cir. Jan. 17, 2024) ................................. passim

*Curtis v. Loether*,
 415 U.S. 189 (1974) ................................................................................................. 30

*Decker Coal Co. v. Pehringer*,
 8 F.4th 1123 (9th Cir. 2021) ................................................................................... 23

*Deerfield Med. Ctr. v. City of Deerfield Beach*,
 661 F.2d 328 (5th Cir. 1981) ..................................................................................... 7

*Dish Network Corp. v. NLRB*,
 953 F.3d 370 (5th Cir. 2020) ....................................................................... 3, 21, 27

*Distributed v. U.S. Dep't of State*,
 838 F.3d 451 (5th Cir. 2016) ................................................................................... 34

*Doran v. Salem Inn*,
 422 U.S. 922 (1975) ................................................................................................. 14

*Eisenberg v. Holland Rantos Co.*,
 583 F.2d 100 (3d Cir. 1978) ................................................................................... 33

*Elrod v. Burns*,
 427 U.S. 347 (1976) ................................................................................................... 7

*Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*,
 762 F.2d 464 (5th Cir. 1985) ................................................................................... 19

*ESI, Inc.*,
 296 NLRB 1319  (1989) ........................................................................................... 21

*Exela Enter. Sols. v. NLRB*,
 32 F.4th 436 (5th Cir. 2022) ............................................................................. 23, 27

*Fiberboard Paper Products v. NLRB*,
    379 U.S. 203 (1964).................................................................................. 29

*Flamingo Hilton-Laughlin v. NLRB*,
    148 F.3d 1166 (D.C. Cir. 1998)................................................................ 33

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010)........................................................................... passim

*FTC v. Standard Oil Co. of Cal.*,
    449 U.S. 232 (1980).................................................................................. 18

*Garner v. Team,
    sters, Chauffeurs & Helpers Loc. Union No. 776*, 346 U.S. 485 (1953)................................ 23

*Gibson v. Tex. Dep't of Ins.–Div. of Workers Comp.*,
    700 F.3d 227 (5th Cir. 2012).................................................................... 33

*Glazier Grp., Inc. v. Mandalay Corp.*,
    No. CIV.A. H-06-2752, 2007 WL 2021762 (S.D. Tex. July 11, 2007)..................... 19

*Gonzalez-Droz v. Gonzalez-Colon*,
    573 F.3d 75 (1st Cir. 2009)...................................................................... 17

*Hartz Mountain Corp. v. Dotson*,
    727 F.2d 1308 (D.C. Cir. 1984) ................................................................ 4

*Hendricks v. Bank of Am., N.A.*,
    408 F.3d 1127 (9th Cir. 2005)................................................................... 19

*HHS v. Jarboe*,
    2023 MSPB 22 (Aug. 2, 2023) .................................................................. 3

*Horne v. Polk*,
    394 P.3d 651 (Ariz. 2017) ........................................................................ 33

*Humphrey's Ex'r*,
    295 U.S. ...................................................................................... 22, 27

*Illumina, Inc. v. FTC*,
    88 F.4th 1036 (5th Cir. 2023) ....................................................... 24, 25, 33

*In re NLRB*,
    304 U.S. 486 (1938)................................................................................. 3

*Integrity Advance, LLC v. CFPB*,
    48 F.4th 1161 (10th Cir. 2022) ................................................................ 10

*Jarkesy v. SEC*,
    34 F.4th 446 (5th Cir. 2022)...................................................... 10, 20, 21, 29

*Jarkesy v. SEC*,
    51 F.4th 644 (5th Cir. 2022) .................................................................... 20

*K & R Contractors, LLC v. Keene*,
    86 F.4th 135 (4th Cir. 2023)..................................................................... 10

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
    335 F.3d 357 (5th Cir. 2003) ..................................................................... 6

*Kessel Food Mkts., Inc. v. NLRB*,
    868 F.2d 881 (6th Cir. 1989) .................................................................... 33

*Kim v. Fin. Indus. Regul. Auth., Inc.*,
    1:23-CV-02420 (ACR), 2023 WL 6538544 & n.19 (D.D.C. Oct. 6, 2023)......................... 8, 10

*Law Offs. of Crystal Moroney, P.C.*,
    63 F.4th 174 (2d Cir. 2023) ................................................................. 10, 11

iv

*Leachco, Inc. v. Consumer Prod. Safety Commission,*
  No. CIV-22-232-RAW, 2023 WL 4934989 (E.D. Okla. Aug. 2, 2023) ............................... 8, 10

*League of United Latin Am. Citizens v. Abbott,*
  601 F. Supp. 3d 147 (W.D. Tex. 2022) ........................................................................ 35

*Lebus v. Manning, Maxwell & Moore, Inc.,*
  218 F. Supp. 702 (W.D. La. 1963) ............................................................................... 4

*Leedom v. Kyne,*
  358 U.S. 184 (1958) ..................................................................................................... 4

*Lewis v. Casey,*
  518 U.S. 343 (1996) ................................................................................................... 14

*Lucia v. SEC,*
  585 U.S. ___, 138 S. Ct. 2044 (2018) ................................................................... 10, 21

*M. D. ex rel. Stukenberg v. Abbott,*
  907 F.3d 237 (5th Cir. 2018) ..................................................................................... 16

*Miss. Power & Light Co. v. United Gas Pipe Line Co.,*
  760 F.2d 618 (5th Cir. 1985) ....................................................................................... 8

*Morrison v. Olson,*
  487 U.S. 654 (1988) ............................................................................................ 22, 24

*Munaf v. Geren,*
  553 U.S. 674 (2008) ..................................................................................................... 6

*Myers v. Bethlehem Shipbuilding Corp.,*
  303 U.S. 41 (1938) ............................................................................................. passim

*Myers v. United States,*
  272 U.S. 52 (1926) ..................................................................................................... 22

*Nathanson v. NLRB,*
  344 U.S. 25 (1953) ..................................................................................................... 34

*Nat'l Licorice Co. v. NLRB,*
  309 U.S. 350 (1940) ................................................................................................... 34

*Nken v. Holder,*
  556 U.S. 418 (2009) ..................................................................................................... 7

*NLRB v. Aakash, Inc.,*
  58 F.4th 1099 (9th Cir. 2023) .................................................................................... 23

*NLRB v. Jones & Laughlin Steel Corp.,*
  301 U.S. 1 (1937) ............................................................................................... passim

*NLRB v. Mia. Coca-Cola Bottling Co.,*
  360 F.2d 569 (5th Cir. 1966) ..................................................................................... 31

*NLRB v. Sanford Home for Adults,*
  669 F.2d 35 (2d Cir. 1981) ........................................................................................ 33

*NLRB v. Strong,*
  393 U.S. 357 (1969) ................................................................................................... 31

*NLRB v. Washington Aluminum Co.,*
  370 U.S. 9 (1962) ......................................................................................................... 1

*Oil States Energy Servs. LLC v. Greene's Energy Grp. LLC,*
  138 S. Ct. 1365 (2018) ............................................................................................... 29

*Overstreet v. El Paso Disposal, L.P.,*
  668 F. Supp. 2d 988 (W.D. Tex. 2009) ........................................................................ 4

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
   734 F.3d 406 (5th Cir. 2013) ........................................................................................ 35

*Pom Wonderful LLC v. FTC*,
   894 F. Supp. 2d 40 (D.D.C. 2012) ............................................................................... 20

*Pub. Serv. Co. of N.H. v. Town of W. Newbury*,
   835 F.2d 380 (1st Cir. 1987) .......................................................................................... 7

*Raley's*,
   337 NLRB 719 (2002) ................................................................................................... 23

*Republic Steel Corp. v. NLRB*,
   311 U.S. 7 (1940) .......................................................................................................... 26

*Half Price Books, Recs., Mags., Inc. v. Riepe*,
   No. CIV.A.3:98-CV-0585-P, 1998 WL 329383 (N.D. Tex. June 12, 1998) ................. 19

*S. Tours, Inc. v. NLRB*,
   401 F.2d 629 (5th Cir. 1968) ........................................................................................ 31

*Schlesinger v. Reservists Comm. to Stop the War*,
   418 U.S. 208 (1974) ...................................................................................................... 14

*SEC v. Jarkesy*,
   143 S. Ct. 2688 (2023) .................................................................................................. 21

*Sheffield v. Bush*,
   604 F. Supp. 3d 586 (S.D. Tex. 2022) ........................................................................... 7

*Siegel v. Lepore*,
   234 F.3d 1163 (11th Cir. 2000) ...................................................................................... 7

*Seila L. LLC v. Consumer Fin. Prot. Bureau*,
   591 U.S. ---, 140 S. Ct. 2183, 207 L. Ed. 2d 494 (2020) ................................... passim

*Sierra Club v. Atlanta Reg'l Comm'n*,
   171 F. Supp. 2d 1349 (N.D. Ga. 2001) ........................................................................ 15

*Space Expl. Techs., Corp. v. Bell*,
   --- F. Supp. 3d ---, No. 1:23-cv-00137, 2023 WL 8885128 (S.D. Tex. Nov. 8, 2023) .. 10, 21, 29

*SSA v. Anyel*,
   58 MSPR 261 (1993) ....................................................................................................... 3

*SSA v. Burris*,
   39 MSPR 51 (1988) ......................................................................................................... 3

*SSA v. Goodman*,
   19 MSPR 321 (1984) ....................................................................................................... 3

*St. Paul Ins. Co. v. Trejo*,
   39 F.3d 585 (5th Cir. 1994) .......................................................................................... 19

*Swish Mktg., Inc. v. FTC*,
   669 F. Supp. 2d 72 (D.D.C. 2009) ............................................................................... 20

*Tex. All. for Ret. Ams. v. Hughes*,
   976 F.3d 564 (5th Cir. 2020) ........................................................................................ 35

*Total Gas & Power N. Am., Inc. v. FERC*,
   2016 WL 3855865 (S.D. Tex. July 15, 2016) ............................................................... 20

*Transwestern Pipeline Co. v. FERC*,
   626 F.2d 1266 (5th Cir. 1980) ...................................................................................... 17

*UAW Loc. 283 v. Scofield*,
   382 U.S. 205 (1965) ...................................................................................................... 34

*United States v. Benitez-Villafuerte,*
   186 F.3d 651 (5th Cir. 1999) ................................................................ 33

*United States v. Perkins,*
   116 U.S. 483 (1886) ................................................................ 22, 24

*Util. Workers v. Consol. Edison Co. of N.Y.,*
   309 U.S. 261 (1940) ................................................................ 34

*Va. Elec. & Power Co. v. NLRB,*
   319 U.S. 533 (1943) ................................................................ 29

*Vaca v. Sipes,*
   386 U.S. 171 (1967) ................................................................ 34

*Valentine v. Collier,*
   956 F.3d 797 (5th Cir. 2020) ................................................................ 35

*WestRock Services, Inc.,*
   366 NLRB No. 157, slip op. at 3 (2018) ................................................................ 2

*Wheeler v. Wexford Health Sources, Inc.,*
   689 F.3d 680 (7th Cir. 2012) ................................................................ 7

*White v. Carlucci,*
   862 F.2d 1209 (5th Cir. 1989) ................................................................ 7

*Wiener v. United States,*
   357 U.S. 349 (1958) ................................................................ 22

*Williams v. Pennsylvania,*
   579 U.S. 1 (2016) ................................................................ 33

*Wilson v. Off. of Violent Sex Offender Mgmt.,*
   584 F. App'x 210 (5th Cir. 2014) ................................................................ 7

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) ................................................................ 6, 7, 16

*Withrow v. Larkin,*
   421 U.S. 35 (1975) ................................................................ 33

**Statutes**

5 U.S.C. § 1202(d) ................................................................ 4, 12
5 U.S.C. § 3105 ................................................................ 2, 20
5 U.S.C. § 7521 ................................................................ 21
5 U.S.C. § 7521(a) ................................................................ 3, 11, 12
8  U.S.C. § 1324b ................................................................ 29
15 U.S.C. § 41 ................................................................ 27
15 U.S.C. § 2053(a) ................................................................ 28
15 U.S.C. §§ 2056(a), 2057, 2064, 2076, 2069(a)–(b), 2071(a) ................................................................ 26
28 U.S.C. § 1406 ................................................................ 19
29 U.S.C. §160(e), (f) ................................................................ 26, 29
29 U.S.C. § 153(a) ................................................................ 2, 12, 27, 28
29 U.S.C. § 153(d) ................................................................ 20, 23, 27
29 U.S.C. § 154(a) ................................................................ 2
29 U.S.C. § 156 ................................................................ 20
29 U.S.C. § 157 ................................................................ 1
29 U.S.C. § 159(c) ................................................................ 26

29 U.S.C. § 160(b) ............................................................................... 2, 14, 26
29 U.S.C. § 160(c) ........................................................................................ passim
29 U.S.C. § 160(j) ........................................................................... 4, 25, 32
29 U.S.C. §§ 151, 160 ............................................................................. 34
29 U.S.C. §§ 154, 159, and 160 ............................................................ 25
Pub. L. 89-554 ......................................................................................... 21
Pub. L. 92–573 ......................................................................................... 27
Pub. L. 95-454, 92 Stat. 1137 (1978) .................................................... 21

Regulations

29 C.F.R. § 101.37 ............................................................................... 4, 32
29 C.F.R. § 102.46(a) .......................................................................... 2, 20

Plaintiff Space Exploration Technologies Corp. ("SpaceX") demonstrates no likelihood of irreparable harm arising from Defendant National Labor Relations Board's administrative proceeding because it makes no showing of causal harm as to its officer-removability claims, for which severance—not an injunction—would be the only proper remedy even if harm were actually shown, and because its Seventh Amendment and combination-of-functions claims pose purely speculative harms. Nor is SpaceX likely to succeed on the merits because this Court is an improper venue, jurisdiction is lacking to hear SpaceX's Seventh Amendment and combination-of-function claims, and all four of its claims are foreclosed by binding precedent. Finally, SpaceX also fails to show that the balance of hardships and public interest favor injunctive relief. For these reasons, SpaceX's motion for a preliminary injunction should be denied.

## BACKGROUND

### I. Statutory and regulatory background

The National Labor Relations Board ("NLRB") is the principal federal agency protecting the rights of employees under the National Labor Relations Act ("NLRA") to form and join unions and engage in concerted activity for mutual aid and protection.[1] One of the key functions of the Agency—and the function directly at issue in this case—is its role in adjudicating allegations that an employer or union has committed an "unfair labor practice" ("ULP").[2] Such allegations arise out of charges filed by members of the public, and formal proceedings do not commence unless and until the NLRB's General Counsel, or her delegate, finds merit to the

---

[1] 29 U.S.C. § 157 (specifying that employees also have the right to refrain from such activity). The NLRB also protects these rights whether or not employees are unionized or seek or oppose union representation. *See, e.g.*, *NLRB v. Washington Aluminum Co.*, 370 U.S. 9, 14-15 (1962).

[2] *Id.* § 160.

charge and issues a complaint.[3] In most cases where a complaint is issued, it will be issued

concurrently with a notice of hearing before an administrative law judge ("ALJ").[4]

The NLRB's ALJs are appointed in accordance with the Civil Service Reform Act[5] and

the NLRA.[6] Once an ALJ issues a recommended decision, parties may file "exceptions" on any

contested issue, asking the Board itself to rule upon the matter.[7] In so deciding, the Board is not

bound to accept either the ALJ's findings of fact or conclusions of law.[8] Indeed, the Board has

explicit statutory authorization to take additional evidence upon notice to the parties.[9]

The Board is comprised of five members who are appointed by the President with the

advice and consent of the Senate.[10] Board members serve five-year, staggered terms, and may

only be removed "for neglect of duty or malfeasance in office."[11] The Board issues  final

decisions in ULP cases, and upon finding a violation orders "such person to cease and desist

from such unfair labor practice, and to take such affirmative action including reinstatement of

employees with or without back pay, as will effectuate the policies" of the Act.[12] The Board also

---

[3] *Id.* § 160(b).

[4] A hearing may instead be held "before the Board or a member thereof." 29 U.S.C. § 160(b).

[5] 5 U.S.C. § 3105.

[6] 29 U.S.C. § 154(a); *see WestRock Services, Inc.*, 366 NLRB No. 157, slip op. at 3 (2018).

[7] 29 C.F.R. § 102.46(a).

[8] 29 U.S.C. § 160(c).

[9] *Id.*

[10] 29 U.S.C. § 153(a).

[11] *Id.* Traditionally, the five seats on the Board are split between three members from the President's party and two from the opposition party. 2 The Developing Labor Law: The Board, the Courts, and the National Labor Relations Act ch. 31.I.B (John E. Higgins, Jr., et al., eds., 7th ed. 2017).

[12] 29 U.S.C. § 160(c).

conducts and certifies the outcome of representation elections,[13] and promulgates rules and regulations implementing the NLRA.[14]

Orders of the Board are not self-enforcing. Section 10(e) of the NLRA provides that the Board must seek enforcement of its orders from an appropriate court of appeals for such orders to become enforceable as judicial injunctions.[15] Conversely, any "aggrieved person" may seek to set aside a final Board order in a court of appeals under Section 10(f) of the NLRA.[16] Upon enforcement by a court of appeals, a Board order becomes fully effective against a respondent.[17]

ALJ removal proceedings are defined by statute. With a handful of listed exceptions, "[a]n action may be taken against an [ALJ] . . . by the agency in which the [ALJ] is employed only for good cause established and determined by the Merit Systems Protection Board [("MSPB")] on the record after opportunity for hearing before the [MSPB]."[18] Accordingly, removal of an NLRB ALJ is a two-step process: (1) the Board must bring an action to remove an ALJ; and (2) the MSPB must determine that good cause for removal has been established. The MSPB has applied "good cause" to remove or suspend ALJs for a variety of reasons.[19] MSPB

---

[13] *Id.* § 159.

[14] *Id.* § 156.

[15] *Id.* § 160(e).

[16] *Id.* § 160(f).

[17] *Dish Network Corp. v. NLRB*, 953 F.3d 370, 375 n.2 (5th Cir. 2020) ("The Board is given no power of enforcement. Compliance is not obligatory until the court, on petition of the Board or any party aggrieved, shall have entered a decree enforcing the order as made, or as modified by the court.") (quoting *In re NLRB*, 304 U.S. 486, 495 (1938)).

[18] 5 U.S.C. § 7521(a).

[19] *See, e.g.*, *HHS v. Jarboe*, 2023 MSPB 22, ¶ 3 (Aug. 2, 2023) ("failure to follow instructions"); *SSA v. Anyel*, 58 MSPR 261, 269 (1993) ("ignor[ing] binding agency interpretations of law"); *SSA v. Burris*, 39 MSPR 51, 57 (1988) ("disrespectful conduct"); *SSA v. Goodman*, 19 MSPR 321, 328 (1984) ("poor performance").

members also can only be removed for cause.[20] Thus, ALJs, Board members, and MSPB

members receive for-cause removal protection.

District courts generally lack jurisdiction to review or supervise the conduct of NLRB

proceedings.[21] But when a final Board order in a ULP case may be rendered ineffective by the

time it takes for the Agency's usual processes to unfold, the Board may authorize an action in

district court for temporary injunctive relief under Section 10(j) of the NLRA. Any such

injunction expires when the Board issues its final order in the underlying case.[22] Longstanding

Agency practice is to seek such relief in the venue where the ULPs were allegedly committed.[23]

## II. Procedural history

This case stems from eight ULP charges, all filed on November 16, 2022, by or on behalf

of individual discharged employees who reported to or were supervised by managers at the

SpaceX facility located in Hawthorne, California (the "Hawthorne Facility").[24] SpaceX

maintains its principal place of business at the Hawthorne Facility.[25]

---

[20] *See* 5 U.S.C. § 1202(d) ("Any member of the Board may be removed by the President, upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause.").

[21] *Bokat v. Tidewater Equip. Co.*, 363 F.2d 667, 673 (5th Cir. 1966) (district courts "have a very very minor role to play in this statutory structure"); *see also Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 48 (1938) ("The District Court is without jurisdiction to enjoin [ULP] hearings . . . .") (cited in *Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023)); *Hartz Mountain Corp. v. Dotson*, 727 F.2d 1308, 1311 (D.C. Cir. 1984) ("it hornbook law that, except in the rarest of circumstances, district courts are without jurisdiction to entertain direct appeals of Board actions in representation or unfair labor practice cases;" characterizing *Leedom v. Kyne*, 358 U.S. 184 (1958), as an "extremely narrow exception to [that] general rule.").

[22] *See* 29 C.F.R. § 101.37; 29 U.S.C. § 160(j); *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1188 (5th Cir. 1975).

[23] *See, e.g., Lebus v. Manning, Maxwell & Moore, Inc.,* 218 F. Supp. 702, 703 (W.D. La. 1963); *Overstreet v. El Paso Disposal, L.P.*, 668 F. Supp. 2d 988, 991 (W.D. Tex. 2009).

[24] Doc. 29 at 3 n.16.

[25] *Id*. at 3-4 n.17.

On December 19, 2023, Region 31 of the NLRB, in Los Angeles, advised SpaceX that the Agency was considering Section 10(j) injunction proceedings, which would be filed in the Central District of California.[26] Following an investigation, the Regional Director found merit to the ULP charges and issued an administrative complaint ("ULP Complaint"), on behalf of the General Counsel, on January 3, 2024.[27] That complaint alleges a course of unlawful conduct by SpaceX supervisors and agents taking place nearly entirely at the Hawthorne Facility,[28] including the allegation that SpaceX fired eight employees in response to their NLRA-protected conduct in organizing an Open Letter related to working conditions.[29] The ULP Complaint contains no reference to Texas; it includes a notice setting a hearing on March 5, 2024 in Los Angeles.[30]

On January 4, 2024, SpaceX filed the instant Complaint in the Southern District of Texas.[31] It contains four Counts, which respectively allege that: the NLRB's ALJs (Count I) and Board members (Count II) are unconstitutionally insulated from removal, the NLRB's adjudicative process violates the Seventh Amendment (Count III), and the Board's authorization of proceedings under Section 10(j) results in a combination of functions that violates the separation of powers and due process (Count IV).[32]

---

[26] *Id*. at 4 n.20.

[27] *Id*. at 4 n.21.

[28] *Id*. at 4-5 n.22-25; *see also* Doc. 31 (sealed exhibit to Doc. 29, "ULP Compl.") ¶¶ 6, 8-10, 12-13, 19-20, 24-28 (concerning conduct alleged to have occurred at the Hawthorne Facility over several days); ULP Compl. ¶¶ 21-23 (regarding conduct affecting one employee that was alleged to have occurred in Redmond, Washington on a single day).

[29] Doc. 29 at 4 n.23.

[30] *Id*. at 5 n.26, n.27.

[31] Doc. 1 ("Compl.).

[32] *Id*. at 10, 12, 15, and 19.

On January 11, 2024, Defendant NLRB[33] filed a motion to transfer venue pursuant to 28

U.S.C. § 1406(a) and § 1404(a),[34] which remains pending. The next day, SpaceX filed the instant

motion for a preliminary injunction.[35] Since then, SpaceX has filed two pre-hearing motions with

the Board as to the ULP complaint: a request for special permission to appeal the Regional

Director's denial of SpaceX's motion to postpone the hearing until the resolution of the instant

court proceeding, as well as a motion to dismiss.[36]

## LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy" that should "never [be]

awarded as of right."[37] The "decision to grant a preliminary injunction is to be treated as the

exception rather than the rule."[38] A plaintiff must make "a clear showing" that it is "entitled to

such relief."[39] A plaintiff must establish "(1) a substantial likelihood that plaintiff will prevail on

the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is

not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the

injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve

the public interest."[40] A plaintiff must satisfy all four requirements to obtain a preliminary

---

[33] The Complaint also names various NLRB officials as co-Defendants. Hereinafter, references to "Defendant" or "NLRB" should be understood to encompass all Defendants.

[34] Doc. 29.

[35] Doc. 37 ("PI Mot.").

[36] These motions, respectively filed on January 24, 2024 and January 30, 2024, are available on the Board's website at https://www.nlrb.gov/case/31-CA-307446.

[37] *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citation omitted).

[38] *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363–64 (5th Cir. 2003).

[39] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

[40] *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023), *cert. denied*, No. 23-199 (U.S. Jan. 8, 2024).

injunction.[41] Irreparable harm, the second factor, must "without question…be satisfied by independent proof, or no injunction may issue."[42] The Supreme Court clarified in *Winter v. Natural Resources Defense Council, Inc.* that harm to the movant must be "likely" and not a mere possibility.[43] And the third and fourth factors of the preliminary injunction analysis—harm to others and the public interest—"merge when the Government is the opposing party."[44]

ARGUMENT

**I. SpaceX cannot establish irreparable harm, the lack of which is fatal to its injunction bid.**

SpaceX fails to offer "independent proof" of irreparable harm, let alone establish that such harm is likely to occur.[45] This fundamental defect applies to all four of SpaceX's counts. And SpaceX does not allege the kind of constitutional injury that warrants injunctive relief.[46] Instead, SpaceX primarily asserts that the Supreme Court's decision in *Axon* makes such proof

---

[41] *See Wilson v. Off. of Violent Sex Offender Mgmt.*, 584 F. App'x 210, 212 (5th Cir. 2014) (mem.) (citing *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)).

[42] *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989).

[43] 555 U.S. 7, 20 (2008).

[44] *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see also Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (per curiam) (explaining that balance of equities and public interest factors may overcome other two factors even in cases involving constitutional claims).

[45] *See White*, 862 F.2d at 1211.

[46] *Contra* PI Mot. at 18 (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976), and *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981)). Courts have "expressly declined to find that the irreparable harm requirement for injunctive relief is automatically satisfied by a plaintiff's allegation that his constitutional rights have been violated." *Sheffield v. Bush*, 604 F. Supp. 3d 586, 609 (S.D. Tex. 2022); *see, e.g., Siegel v. Lepore*, 234 F.3d 1163, 1178 (11th Cir. 2000) (en banc) (the "only areas of constitutional jurisprudence where we have said that an ongoing violation may be presumed to cause irreparable injury" involve privacy, certain First Amendment claims); *Pub. Serv. Co. of N.H. v. Town of W. Newbury*, 835 F.2d 380, 382 (1st Cir. 1987) (no irreparable harm where plaintiff only "alleg[ed] a deprivation of a constitutional right" to procedural due process); *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 682 (7th Cir. 2012) ("equitable relief depends on irreparable harm, even when constitutional rights are at stake").

7

unnecessary.[47] But *Axon* did not address injunctive relief and does not bear on the question of

irreparable harm. Rather, the narrow question decided in that case was whether a district court

had jurisdiction to hear structural constitutional challenges to ongoing agency proceedings.[48]

Reading *Axon* to require a preliminary injunction any time a party challenges administrative

proceedings on constitutional grounds would not only disrupt timely law-enforcement efforts by

federal agencies across the government, but also overwhelm the courts with preliminary

injunction requests amounting to a judicial preclearance process. That would contravene the

baseline principle that a "preliminary injunction is an extraordinary remedy" and "[t]he decision

to grant [one] is to be treated as the exception rather than the rule."[49]

### A. There is no irreparable harm as to ALJ or Board member removability (Counts I and II)

1. SpaceX fails to allege causal harm, which is a prerequisite to prevailing on its irreparable-harm claim.

In Counts I and II, SpaceX alleges that a yet-to-be-named ALJ and the NLRB's members

are unconstitutionally insulated from removal by the President.[50] But SpaceX cannot show

---

[47] PI Mot. at 18-20 (citing *Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023)). In *Axon*, the Supreme Court recognized a "here-and-now" injury stemming from "subjection to an unconstitutionally structured decisionmaking process," concluding this would effectively foreclose all meaningful judicial review, absent district court jurisdiction. 598 U.S. at 192. The parties there "object[ed to an agency's] power generally, not to anything particular about how that power was wielded," which meant that the constitutional challenge was wholly collateral. *Id.* at 193. Moreover, the claims there as to separation of powers effectively fell outside of the area of agency expertise and further justified district court jurisdiction rather than judicial review occurring only at the appellate level. *Id.* at 194-95.

[48] *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, No. CIV-22-232-RAW, 2023 WL 4934989, at *2 (E.D. Okla. Aug. 2, 2023) ("*Axon* simply answered a jurisdictional question; it did not include an injunction analysis" and "a violation of a constitutional right alone constitutes irreparable harm [only in] cases involving individual rights, not the allocation of powers among the branches of government."); *accord Kim v. FINRA*, No. 1:23-CV-02420 (ACR), 2023 WL 6538544, at *13 & n.19 (D.D.C. Oct. 6, 2023).

[49] *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

[50] Compl. ¶¶ 51-82; PI Mot. at 1-2, 7-10.

irreparable harm on these claims. Despite insisting that the alleged harm would be "impossible to remedy once the proceeding is over," it has not alleged any of the facts necessary to establish a right to relief.[51] Nowhere does *Axon* say that any assertion of a separation-of-powers violation, by itself, establishes irreparable harm. Indeed, in *Collins v. Yellen*, the Supreme Court held that invalid removal restrictions do not necessarily show entitlement to a remedy.[52] Rather, a plaintiff must show that the removal restriction actually "cause[d] harm" to the plaintiff.[53] The Fifth Circuit subsequently explained that there are "three requisites for proving harm" for a removal claim: "(1) a substantiated desire by the President to remove the unconstitutionally insulated actor; (2) a perceived inability to remove the actor due to the infirm provision; and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor."[54]

Here, SpaceX has not established that the President has sought to remove the yet-to-be-named ALJ or the yet-to-act Board members, or that, but for the removal restrictions, "the challenged actions taken by" these individuals would not have occurred.[55] And SpaceX has failed to state which actions by the ALJ or Board members it is challenging.[56] Indeed, to date, no ALJ or Board members have acted on any matter related to the Region's administrative complaint.

Unlike challenges to an improper appointment, abstract removability challenges affect "the conditions under which those officers might someday be removed [rather than] the validity

---

[51] PI Mot. at 18 (quoting *Axon,* 598 U.S. at 191).

[52] *Collins v. Yellen*, 141 S. Ct. 1761, 1788-89 (2021).

[53] *Id.* at 1789.

[54] *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022) ("*CFSA*"), *cert. granted on other grounds*, No. 22-448 (argued Oct. 3, 2023); *see also Collins v. Dep't of the Treasury*, 83 F.4th at 970, 982 (5th Cir. 2023).

[55] *CFSA*, 51 F.4th at 632; *see Collins v. Yellen*, 141 S. Ct. at 1789.

[56] *See, e.g.,* Compl. ¶¶ 10-11, 51-56, 61, 65-74, 79 (no challenge to actual ALJ or Board actions).

of any officer's continuance in office."[57] Every reported case on this issue thus requires a

challenger to specifically show that a removal protection actually harmed that very challenger.[58]

And every court faced with the question—including this Court, in a case recently brought by this

very Plaintiff—has denied a preliminary injunction sought on ALJ removability grounds.[59] The

authorities relied upon by SpaceX are not to the contrary.[60]

 The Fifth Circuit also rejected the argument that *Collins v. Yellen*'s causal-harm rule

should be limited to requests for retrospective relief, rather than prospective relief, explaining

that *Collins v. Yellen*'s "remedial inquiry focused on whether a harm occurred that would create

an entitlement to a remedy, rather than the nature of the remedy, and [the] determination as to

---

[57] *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd*., 561 U.S. 477, 508 (2010); *cf. Lucia v. SEC*, 585 U.S. ___, 138 S. Ct. 2044, 2055 (2018) (remedy for Appointments Clause violation is "hearing before a properly appointed" official).

[58] *Collins v. Dep't of the Treasury*, 83 F.4th at 982-84; *CFSA*, 51 F.4th at 632-33; *see also K & R Contractors, LLC v. Keene*, 86 F.4th 135, 149 (4th Cir. 2023); *CFPB v. Law Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023), *petition for cert. filed*, No. 22-1233 (U.S. June 21, 2023); *Integrity Advance, LLC v. CFPB*, 48 F.4th 1161, 1170 (10th Cir. 2022); *CFPB v. CashCall, Inc.*, 35 F.4th 734, 742-43 (9th Cir. 2022); *Calcutt v. FDIC*, 37 F.4th 293, 318-20 (6th Cir. 2022), *rev'd per curiam on other grounds*, 143 S. Ct. 1317 (2023).

[59] *See Space Expl. Techs. Corp. v. Bell*, --- F. Supp. 3d ----, No. 1:23-cv-00137, 2023 WL 8885128, at *4-5 (S.D. Tex. Nov. 8, 2023); *Care One, LLC v. NLRB*, No. 3:23-cv-00831 (RNC), 2023 WL 6457641, at *3-4 (D. Conn. Oct. 4, 2023), *appeal docketed*, No. 23-7475 (2d Cir. Oct. 20, 2023); *Leachco*, 2023 WL 4934989, at *2; *Burgess v. FDIC*, 639 F. Supp. 3d 732, 747 (N.D. Tex. 2022), *appeal docketed sub nom. Burgess v. Whang*, No. 22-11172 (5th Cir. Dec. 5, 2022).

[60] In *Jarkesy v. SEC*, upon which SpaceX relies, the Fifth Circuit held that SEC ALJs' removal protections were unconstitutional, but it avoided the *Collins v. Yellen* causal-harm issue by granting relief based on other constitutional violations in that case and declining to decide whether that relief would be appropriate based on the removal issue alone. 34 F.4th 446, 463 n.17 (5th Cir. 2022), *cert. granted*, No. 22-859 (argued Nov. 29, 2023). In addition, SpaceX relies on Judge Walker's statement concurring in a per curiam order granting a motion for injunction pending appeal in *Alpine Securities Corp. v. FINRA*, No. 23-5129, 2023 WL 4703307 (D.C. Cir. July 5, 2023) (Pl. Mot. at 19). But the company in *Alpine* faced the "corporate death penalty," *id.* at *1, and raised several issues not present here. And since neither of the other judges on the panel joined Judge Walker's concurrence, the rationale for the D.C. Circuit's order is unclear. Thus, Judge Walker's statement is not binding even within the D.C. Circuit. *See Kim*, 2023 WL 6538544, at *9 (disagreeing with Judge Walker's analysis).

whether an unconstitutional removal protection inflicted harm remains the same whether the petitioner seeks retrospective or prospective relief."[61] SpaceX cannot evade *Collins v. Yellen's* clear holding by distinguishing between ongoing and past administrative proceedings.[62] Rather, it must demonstrate actual prejudice from removal restrictions; SpaceX has not even alleged such prejudice, let alone demonstrated that it is suffering irreparable harm.

2. Preliminary injunctive relief is unavailable where severance can resolve the threat of appearing before an unconstitutionally insulated adjudicator.

Beyond SpaceX's failure to allege causal harm, its claim of irreparable harm must fail because, under Supreme Court precedent, severing any statutory removal restrictions found to be unconstitutional would be the appropriate remedy, not enjoining the Agency's operations. There is "a strong presumption of severability," under which courts "invalidate[] and sever[] unconstitutional provisions from the remainder of the law rather than raz[e] whole statutes or Acts of Congress."[63] Generally, statutes are severable if "the remainder of the law is capable of functioning independently and thus would be fully operative as a law."[64] And "it is fairly unusual for the remainder of a law not to be operative."[65]

The procedure for removing ALJs, which SpaceX challenges, specifies that ALJs are removable "by the agency in which the [ALJ] is employed only for good cause established and determined by the [MSPB] on the record after opportunity for hearing before the Board."[66] MSPB members "may be removed by the President only for inefficiency, neglect of duty, or

---

[61] *CFSA*, 51 F.4th at 631 (internal quotations and citations omitted); *accord Crystal Moroney*, 63 F.4th at 180-81; *Calcutt*, 37 F.4th at 316.

[62] PI Mot. 18-19.

[63] *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2350 (2020).

[64] *Id.* at 2353.

[65] *Id.* at 2352.

[66] 5 U.S.C. § 7521(a).

malfeasance in office."[67] Should this Court find ALJs' removal protections to be unconstitutional

at final judgment, it could sever the second half of the sentence in § 7521(a) after "good cause,"

as to the ALJ presiding over SpaceX's case. The same principle applies as to NLRB members'

removability. If this Court finds their removal protections unconstitutional, rather than render the

NLRA inoperable, it could sever the "for cause" provision in 29 U.S.C. § 153(a).[68] The

administrative proceedings could thus proceed without the alleged constitutional defects.

Severance would be consistent with how the Supreme Court dealt with unlawful removal

protections in recent cases. In *Free Enterprise Fund*, the plaintiffs sued to stop an ongoing

investigation by the Public Company Accounting Oversight Board ("PCAOB"). The Court found

the PCAOB's removal protections unconstitutional, but it rejected plaintiffs' attempt to enjoin

the PCAOB's operations and granted declaratory relief only, severing the offending statutory

provisions, and leaving the members of the PCAOB freely subject to removal by the Securities

and Exchange Commission.[69] Likewise, in *Seila Law LLC v. Consumer Finance Protection

Bureau*, the Court found the removal protections for the Consumer Financial Protection Bureau's

("CFPB's") Director unconstitutional.[70] But it did not limit any of the CFPB's operations.

Instead, it again severed the Director's removal protection, noting that "[t]he provisions of the

[statute] bearing on the CFPB's structure and duties remain fully operative without the offending

tenure restriction" and that "[t]hose provisions are capable of functioning independently."[71]

---

[67] 5 U.S.C. § 1202(d).

[68] *See* 29 U.S.C. §§ 153(a) ("Any member of the Board may be removed by the President, upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause."); *id.* § 166 (NLRA severability clause).

[69] *Free Enter. Fund*, 561 U.S. at 508, 513.

[70] 140 S. Ct. 2183, 2207-08 (2020).

[71] *Id.* at 2209.

SpaceX argues that because Congress enacted the removal protections in question to protect the independence of ALJs and the Board, such provisions are not severable, and thus injunctive relief is necessary for Counts I and II.[72] Defendants agree that Congress's goal of ALJ and Board independence is a consideration in the severance analysis here. But it makes no sense to further assume that Congress would have preferred no ALJ proceedings at all, much less no Board proceedings, in order to resolve a removability problem.[73]

The Supreme Court rejected a similar argument in *Seila Law*, where the petitioner argued that Congress' desire to protect an agency's independence foreclosed severance. The petitioner "highlight[ed] . . . references to the CFPB's independence in the statutory text and legislative history," to show that Congress would have wanted to disband the CFPB if the removal restrictions were found unconstitutional.[74] The Court was unpersuaded. Although petitioner's "observations certainly confirm[ed] that Congress preferred an independent CFPB to a dependent one," they "shed little light on the critical question whether Congress would have preferred a dependent CFPB to *no agency at all*."[75] The Court stressed that disbanding the CFPB "would trigger a major regulatory disruption and would leave appreciable damage to Congress's work in the consumer-finance industry," as other agencies lack the resources to take over its work and none have the authority to administer the new prohibitions in the Dodd-Frank Act, which created the CFPB.[76] Therefore, it was "far from evident that Congress would have preferred no CFPB to a CFPB led by a Director removable at will by the President."[77]

---

[72] *See* PI Mot. at 22-25.

[73] *Free Enter. Fund*, 561 U.S. at 509.

[74] 140 S. Ct. at 2210.

[75] *Id.*

[76] *Id.*

[77] *Id.*

The same reasoning applies even more so here. The fact that the NLRA does not require the use of ALJs at all suggests that Congress would prefer severance of ALJs' removal protections over nonenforcement of the NLRA.[78] To halt resolution of these claims altogether, as SpaceX suggests, would do more violence to congressional intent than simply severing removal protections.

Accordingly, even if the Court were to find the ALJs' or Board members' removal protections unconstitutional, SpaceX would not be entitled to an injunction (preliminary or otherwise) of the administrative proceedings.[79] Rather, the most SpaceX could potentially obtain, at the end of the instant case, would be a declaratory judgment invalidating the offending removal provisions, with any "invalidation" being no broader than necessary to remedy SpaceX's alleged injuries.[80] But this Court need not decide now precisely how it would sever the statute or how broad a declaratory judgment would be, in order to find that SpaceX is not entitled to its requested injunction regarding its Board member and ALJ removability allegations.

---

[78] *See* 29 U.S.C. § 160(b) (ULP hearings can be held "before the Board or a member thereof").

[79] SpaceX's reference to *Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320, 328 (2006) is unavailing. PI Mot. at 22. That case emphasized judicial restraint and the need "to limit the solution to the problem" when confronting a statute's constitutional flaw. *Id.* It warned courts not to "nullify more of a legislature's work than necessary" and identified declaratory judgments, injunctive relief, and severance as examples of judicial restraint. 546 U.S. at 329-31. Here, where severance would fully remedy the asserted injury, that remedy would do less harm to legislative intent than the declaratory and injunctive relief sought by SpaceX. *Doran v. Salem Inn*, 422 U.S. 922, 931 (1975) is inapposite because there, the defendant conceded that absent preliminary relief, plaintiffs would suffer a substantial loss of business, even bankruptcy. *Id.* at 932. That type of irreparable harm is absent from the instant case.

[80] *See*, *e.g.*, *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 222 (1974) (when "the relief sought produces a confrontation with one of the coordinate branches of the Government," the "framing of relief" may be "no broader than required" to address any "concrete injury").

### B. SpaceX's Seventh Amendment claim is too speculative to constitute irreparable harm (Count III).

In Count III, SpaceX alleges that the NLRB's proceeding, and particularly a subset of potential make-whole remedies referenced in *Thryv, Inc*., 372 NLRB No. 22 (Dec. 13, 2022), *petition for review filed*, No. 23-60132 (5th Cir. Mar. 17, 2023), violates a "Seventh Amendment jury-trial right by adjudicating private rights outside the confines of an Article III Court."[81] But SpaceX cannot demonstrate that it will suffer irreparable harm from proceeding without a jury.[82]

First, the potential injury SpaceX alleges remains entirely speculative. No ALJ has recommended, nor has the Board ordered, any remedy, let alone the *Thryv*-type remedies on which SpaceX hangs its Seventh Amendment claims.[83] Such speculation "is insufficient" for SpaceX to obtain the relief it seeks.[84] Moreover, the Board's rulings on SpaceX's pending motions to postpone the administrative hearing until the resolution of this lawsuit and to dismiss the ULP Complaint may dispose of the ULP case entirely or eliminate the hearing's imminency.

More importantly, even if this Court concludes that the Board lacks authority to order *Thryv*-type remedies, this purported defect would not taint the Agency's entire proceeding.[85] This is because such a finding by this Court would not bear on the Board's power to seek other

---

[81] PI Mot. at 2-3, 10-14.

[82] PI Mot. at 19.

[83] PI Mot. at 10-14. *See, e.g., Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975) ("An injunction is appropriate only if the anticipated injury is imminent and irreparable.") (internal citations omitted); *Sierra Club v. Atlanta Reg'l Comm'n*, 171 F. Supp. 2d 1349, 1358 (N.D. Ga. 2001) (irreparable injury "must be neither remote nor speculative, but actual and imminent.").

[84] *Ashcroft v. Mattis*, 431 U.S. 171, 172 n.2 (1977); *see City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) ("The speculative nature of future injury requires a finding that this prerequisite [to Article III standing for injunctive relief] has not been fulfilled").

[85] Under *Axon*, the plaintiff must challenge the decisionmakers' constitutional power generally, not the particulars of how that power would be wielded. 598 U.S. at 192-193.

statutory remedies such as back pay, long deemed outside the Seventh Amendment's reach.[86]

Instead, the appropriate relief would be *at most* to enjoin the agency from seeking those remedies

in its administrative proceedings, not the "extraordinary remedy" of a preliminary injunction

enjoining the entire administrative process.[87] And even if the Board orders remedies under *Thryv*,

SpaceX can seek review of such remedies in the court of appeals, just as Thryv itself is doing.

### C. *SpaceX's combination-of-functions claim is also too speculative to constitute irreparable harm (Count IV).*

In Count IV, SpaceX claims that the combination of prosecutorial and adjudicative

functions by Board members creates a structural constitutional defect by violating separation of

powers and due process considerations.[88] Assuming, *arguendo*, the merits of that claim, SpaceX

fails to establish irreparable harm from proceeding before allegedly biased adjudicators.

Its theory of harm rests on a series of hypothetical occurrences. *If* (1) the General Counsel

seeks authorization from the Board to file a suit for temporary injunctive relief against SpaceX

under Section 10(j), and (2) the Board authorizes a Section 10(j) petition to be filed, and (3) the

Board later determines the merits of the ULP case in a final Board order and rules against

SpaceX, and (4) upon Section 10 review of that final Board order, a circuit court orders the

administrative case remanded to the Board, to be re-decided without participation by any

member who authorized the Section 10(j) petition, and (5) the members who ultimately preside

---

[86] *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48 (1937) (holding, on review of a Board order providing for backpay, that that the Seventh Amendment "has no application to cases where recovery of money damages is an incident to equitable relief"); *Agwilines, Inc. v. NLRB,* 87 F.2d 146, 150-51 (5th Cir. 1936); *see also* below at 29-31 (discussing *Thryv* remedies).

[87] *Winter v. NRDC*, 555 U.S. at 24; *see M. D. ex rel. Stukenberg v. Abbott*, 907 F.3d 237, 272 (5th Cir. 2018) ("[I]njunctions must be narrowly tailored to remedy the specific action which gives rise to the order.") (internal modifications and quotation marks omitted). *But see* below at 28-29, 31 (discussing *Myers v. Bethlehem Shipbuilding Corp.* 303 U.S. 48, 51 (1938), *Bokat*, 363 F.2d at 673, and *Axon*, 598 U.S. at 189, 192).

[88] PI Mot. at 14-17; Compl. ¶¶108-138.

over the remanded ULP case were exposed to the Board members who originally authorized a

Section 10(j) petition; *then*, SpaceX protests, (6) those new members "*may* be influenced by their

colleague's views."[89]

   This lengthy chain of speculation does not constitute the type of imminent, irreparable

harm requiring injunctive relief.[90] Board members authorizing Section 10(j) litigation act to

preserve the Board's ability to later order an effective remedy, not to prosecute the case on the

merits.[91] And because judicial review of SpaceX's constitutional claim is "guaranteed by the

right to appeal" adverse Board decisions to a federal court of appeals, SpaceX will "suffer no

irreparable injury by being required to exhaust administrative remedies before bringing [its]

claims to federal court."[92]Although SpaceX claims deprivation of procedural due process is

irreparable,[93] it is properly remedied by more process rather than an injunction.[94]

---

[89] PI Mot. at 20 (cleaned up) (emphasis added).

[90] *Cf. Chacon*, above n.83. Notably, because the Fifth Circuit has found combined-functions arguments unavailing in analogous contexts, *Burnley v. Thompson*, 524 F.2d 1233, 1241 (5th Cir. 1975), SpaceX is at no risk of the downstream consequences of such a decision.

[91] *See* below n.194 (citing multiple courts holding that no due process violation is created by the Section 10(j) process).

[92] *Baldwin Metals Co., Inc. v. Donovan*, 642 F.2d 768, 773 (5th Cir. 1981); *see also Transwestern Pipeline Co. v. FERC*, 626 F.2d 1266, 1270-71 (5th Cir. 1980). SpaceX's reliance on *Associated Builders & Contractors of Texas Gulf Coast, Inc. v. United States Department of Energy* is unavailing. Courts had no jurisdiction to review final agency decisions there, foreclosing plaintiffs' opportunity to raise constitutional claims in the appropriate judicial forum. 451 F. Supp. 281, 283 (S.D. Tex. 1978).

[93] PI Mot. at 20.

[94] *Barrera-Montenegro v. United States*, 74 F.3d 657, 661 (5th Cir. 1996); *see Gonzalez-Droz v. Gonzalez-Colon*, 573 F.3d 75, 81 n.7 (1st Cir. 2009).

### D. *Harms incident to litigation do not constitute irreparable injury.*

SpaceX's final irreparable harm argument concerns the burdens of litigation,[95] which

even *Axon* itself did not find sufficient to justify immediate court intervention.[96] Neither the

"expense and annoyance of litigation" nor "litigation expense, even substantial and unrecoupable

cost . . . constitute irreparable injury."[97] The Fifth Circuit has long recognized that these

supposed harms are part of the social burden of living under government.[98] SpaceX also

speculates that NLRB proceedings will tarnish its reputation and will give the government

"settlement leverage." But these are simply burdens incident to litigation:

> Obviously, the rule requiring exhaustion of the administrative remedy cannot be
> circumvented by asserting that . . . the mere holding of the prescribed
> administrative hearing would result in irreparable damage. Lawsuits [] often
> prove to have been groundless; but no way has been discovered of relieving a
> defendant from the necessity of a trial to establish the fact.[99]

Regardless, SpaceX's concern over reputational harm rings hollow, as filing this lawsuit

has only drawn further attention to the ULP charges pending against it.[100] And its fear of

governmental bulldozing similarly falls flat given that SpaceX has sufficient resources to file a

federal court complaint just one day after the ULP complaint issued. SpaceX cites to no case

indicating that such burdens warrant emergency relief.

---

[95] Pl Mot. at 20-21

[96] 598 U.S. at 192.

[97] *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) (cleaned up).

[98] *See Bradley Lumber Co. of Ark. v. NLRB*, 84 F.2d 97, 100 (5th Cir. 1936) (distraction of NLRB proceeding was "not the irreparable damage which equity will interfere to prevent"). Accordingly, SpaceX's assertion that the Board's administrative proceeding "distracts from its important missions," including those as a federal contractor, PI Mot. at 4-5, is unavailing.

[99] *Myers*, 303 U.S. at 51-52.

[100] *See, e.g.*, Micah Maidenberg, *SpaceX Sues Labor Board over Employee Firings*, Wall Street Journal (Jan. 4, 2024), https://www.wsj.com/tech/spacex-sues-labor-board-over-employee-firings-0a41e3ef; Nick Niedzwiadek & Olivia Olander, *Musk's SpaceX Seeks to Blow Up Federal Labor Enforcer*, Politico (Jan. 4, 2024), https://www.politico.com/news/2024/01/04/musks-spacex-seeks-to-blow-up-nlrb-00133919.

**II. SpaceX is not likely to succeed on any of its claims.**

    *A. Because venue in the Southern District of Texas is improper, the case should be dismissed or transferred; declaratory relief is unavailable to SpaceX.*

      For the reasons asserted in Defendants' Motion to Transfer Venue,[101] venue is improper in this Court. A venue defense "bear[s] on the district court's power to issue [an] injunction because the court would lack authority to grant relief if…venue was improper."[102] The typical and appropriate practice of district courts is to decide venue before resolving a preliminary injunction motion. Should a court find venue improper, it can either dismiss or transfer the action, and leave resolution of the motion for preliminary relief to the proper court.[103] This Court should follow that approach and transfer the action pursuant to Defendant's motion.

      In addition, because SpaceX has engaged in forum shopping, this Court can rightfully withhold declaratory relief from SpaceX. Declaratory relief is discretionary, and courts must balance such factors as "whether there is a pending [alternative] action in which all of the matters in controversy may be fully litigated," "whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant," and "whether the plaintiff engaged in forum shopping in bringing the suit."[104] Notably, courts have repeatedly denied declaratory judgments plaintiffs have sought

---

[101] Doc. 29.

[102] *Hendricks v. Bank of Am., N.A.*, 408 F.3d 1127, 1135 (9th Cir. 2005) (addressing, but rejecting, threshold argument that venue was improper prior to reaching merits of preliminary injunction); *cf. Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470-71 (5th Cir. 1985) (subject-matter jurisdiction is a prerequisite to a district court's exercise of discretion in ordering preliminary injunctive relief).

[103] *See, e.g., Glazier Grp., Inc. v. Mandalay Corp.*, No. CIV.A. H-06-2752, 2007 WL 2021762, at *1 (S.D. Tex. July 11, 2007) (granting motion to transfer under 28 U.S.C. § 1406 and declining to resolve motion for preliminary injunction); *Half Price Books, Recs., Mags., Inc. v. Riepe*, No. CIV.A.3:98-CV-0585-P, 1998 WL 329383, at *7 (N.D. Tex. June 12, 1998) (granting motion to transfer venue and denying without prejudice request to set preliminary injunction hearing).

[104] *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994).

against pending or imminent agency proceedings.[105] The Board previously argued in its Motion to Transfer that it appears that SpaceX filed the instant Complaint in this Court to obtain the perceived benefit of certain Fifth Circuit precedent.[106]

**B. SpaceX fails to show that any ALJ would have been removed but for removal protections (Count I); in addition, ALJ tenure protections are constitutional.**

This Court need not reach the legal merits of Count I of SpaceX's complaint because SpaceX has not pled facts showing prejudice traceable to the challenged ALJ removal protections; for example, SpaceX has not alleged that an ALJ would have been removed but not for those protections.[107] In any event, the NLRB ALJs' removal protections are constitutional.

In *Jarkesy*,[108] a split Fifth Circuit panel found removal protections for SEC ALJs unconstitutional.[109] But Board ALJs are unlike those in *Jarkesy*. Board ALJs have no role in enforcement,[110] and no capacity for final decision-making authority.[111] Critically, they cannot

---

[105] *See*, *e.g.*, *Total Gas & Power N. Am., Inc. v. FERC*, 2016 WL 3855865, at *22-25 (S.D. Tex. July 15, 2016) (dismissing declaratory action filed shortly after FERC staff announced intent to recommend enforcement proceedings), *aff'd on other grounds*, 859 F.3d 325 (5th Cir. 2017); *Pom Wonderful LLC v. FTC*, 894 F. Supp. 2d 40, 44-45 (D.D.C. 2012); *Swish Mktg., Inc. v. FTC*, 669 F. Supp. 2d 72, 76-80 (D.D.C. 2009). A plaintiff who files a declaratory action in those circumstances is engaging in "forum shopping" because "[t]he essence of [the] claims is that a district court forum would be more favorable than the agency process." *Total Gas*, 2016 WL 3855865, at *24.

[106] *See* Doc. 29 at 1, 8, 10-12, 17, 19-20.

[107] *See* above at 8-11 (discussing SpaceX's failure to show irreparable harm as to Board and ALJ removability counts, due to lack of showing of causal harm).

[108] 34 F.4th at 463-65.

[109] *See also* 51 F.4th 644, 646-47 (5th Cir. 2022) (Haynes, J., dissenting from denial of petition for rehearing en banc).

[110] 29 U.S.C. § 153(d) (the General Counsel has final authority to investigate charges, issue complaints, and prosecute claims before the Board."); 5 U.S.C. § 3105 (ALJs "may not perform duties inconsistent with their duties and responsibilities as [ALJs]"). Nor do Board ALJs have rulemaking authority. 29 U.S.C. § 156 (vesting the agency's rulemaking authority in the Board).

[111] 29 U.S.C. § 160(c). In ULP adjudications, parties may file exceptions to an ALJ's decision on any contested issue. 29 C.F.R. §§ 102.46(a), 102.69(c)(2).

20

bind the agency.[112] Even if the Board were to adopt an ALJ decision, that order does not come with *any* legal consequences unless it is enforced by a circuit court of appeals.[113] In contrast, the Fifth Circuit in *Jarkesy* concluded that "SEC ALJs exercise considerable power," finding *inter alia* that they "may punish contemptuous conduct[,] and often their decisions are final and binding."[114] Thus, the powers exercised by Board ALJs are distinguishable from those discussed in *Jarkesy*, or even those at issue in *Space Exploration Technologies, Corp. v. Bell*.[115] But to the extent this Court thinks *Jarkesy* applies here, Defendants respectfully note their disagreement with the Fifth Circuit's decision, which remains pending before the Supreme Court,[116] and respectfully preserve this argument for appeal.

SpaceX claims that the removal protections granted to ALJs—in place for over 50 years[117]—are unconstitutional.[118] They are not. Courts have long recognized Congress's ability to constrain the President's removal powers as to adjudicators. Article II grants the President the power to appoint "lesser officers," "includ[ing] the ability to remove" them.[119] However, "the power of Congress to regulate removals" is "incidental to the exercise of its constitutional power

---

[112] The Board has no authority to decline a procedurally proper request to review an ALJ's decision and not even an unreviewed ALJ decision has precedential effect. *Carpenters Loc. 370 (E. Contractors Ass'n)*, 332 NLRB 174, 175 n.2 (2000) (citing *ESI, Inc.*, 296 NLRB 1319 n.3 (1989), *Anniston Yarn Mills*, 103 NLRB 1495 (1953)).

[113] *Dish Network Corp.*, 953 F.3d at 375 n.2.

[114] *Jarkesy*, 34 F.4th at 464 (citing *Lucia v. SEC*, 138 S. Ct. 2044, 2053-54 (2018)).

[115] 2023 WL 8885128, at *1 (finding that decisions by ALJs within the Office of the Chief Administrative Hearing Officer are "final" and "may be appealed only to a U.S. court of appeals").

[116] *See SEC v. Jarkesy*, 143 S. Ct. 2688 (2023).

[117] The Civil Service Reform Act was enacted in 1978. *See* Pub. L. 95-454, 92 Stat. 1137 (1978) (codified at 5 U.S.C. § 7521). An editorial note appended to Section 7521 traces ALJ removal protections back to at least 1966. *See* Pub. L. 89-554, 80 Stat. 528 (1966).

[118] Compl. ¶¶ 1-6, 51-56; Doc. 37 at 1-2, 7-8.

[119] *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2197 (2020).

to vest appointments."[120] The key inquiry in removal cases like this one is whether Congress has "interfere[d] with the President's exercise of the 'executive power' and his ...duty to 'take care that the laws be faithfully executed' under Article II."[121]

Here, Congress has not violated presidential authority under Article II. The Supreme Court has repeatedly recognized that Congress may regulate removals of inferior officers.[122] The Court has also recognized that the scope of the President's constitutional power to remove and control adjudicators differs from the scope of his power to remove and control other executive officers. For example, in *Morrison*, the Court observed that tenure protection may be "necessary to the proper functioning" of "an official performing 'quasijudicial' functions."[123]

The limited restriction announced in *Free Enterprise Fund* as to removal does not change this.[124] SpaceX misreads that case, asserting that it establishes a categorical rule that multiple levels of removal protection are always unconstitutional.[125] Not so.[126] *Free Enterprise Fund* held unconstitutional the "highly unusual" and "sharply circumscribed" dual-layer removal

---

[120] *Myers v. United States*, 272 U.S. 52, 161 (1926); *see United States v. Perkins*, 116 U.S. 483, 485 (1886).

[121] *Morrison v. Olson*, 487 U.S. 654, 689 (1988).

[122] In *Perkins v. United States*, 116 U.S. at 484-85, the Court upheld a restriction on the Secretary of the Navy's power to remove a naval officer. In *Morrison v. Olsen*, 487 U.S. at 685-96, the Court upheld a restriction on the Attorney General's power to remove an independent counsel.

[123] *Morrison*, 487 U.S. at 691 n.30; *see also Wiener v. United States*, 357 U.S. 349, 355-56 (1958) (holding that Congress could limit the President's power to remove members of the War Claims Commission, an "adjudicatory body," because of "the intrinsic judicial character of the task with which the Commission was charged"); *Humphrey's Ex'r*, 295 U.S. at 629 (finding it "plain under the Constitution that illimitable power of removal is not possessed by the President in respect of officers" charged with "quasi-judicial" duties).

[124] 561 U.S. 477 (2010).

[125] PI Mot. at 8.

[126] *Free Enter. Fund*, 561 U.S. at 505-07, 507 n.10.

protections of the leadership of a particular agency.[127] It "did not broadly declare all two-level for-cause protections for inferior officers unconstitutional."[128] Nor did it rule on the constitutionality of ALJ or other civil service protections.[129] As the Court observed, ALJs "perform adjudicative rather than enforcement or policymaking functions."[130]

Further, unlike the "novel" and "rigorous" removal limitations in *Free Enterprise Fund*,[131] the removal protection scheme for NLRB's ALJs does nothing to strip the President of executive power. As noted above, at page 20, note 110, ALJs' duties do not overlap with the NLRB's "enforcement or policymaking functions."[132] Only the NLRB's General Counsel possesses the "final authority" to allege ULPs and advance legal theories in support of those allegations,[133] and she *is* removable at will by the President.[134] As for policymaking, that is ultimately left to the Board, which may reverse or vacate any ALJ finding it disagrees with as an exercise of its plenary power to issue final decisions.[135]

Nor do the removal protections afforded to MSPB and NLRB members change this analysis. The Supreme Court has repeatedly upheld statutory removal restrictions that provide

---

[127] 561 U.S. at 505.

[128] *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1132 (9th Cir. 2021).

[129] *Free Enter. Fund*, 561 U.S. at 506-07 & n.10.

[130] 561 U.S. at 507 n.10.

[131] *Id.* at 496, 503 (PCAOB members were removable only under "an unusually high standard" that would preclude removal for violations of all but a handful of laws).

[132] *Id.* at 507 n.10.

[133] 29 U.S.C. § 153(d); *see Raley's*, 337 NLRB 719, 719 (2002).

[134] *Exela Enter. Sols. v. NLRB*, 32 F.4th 436, 441-45 (5th Cir. 2022); *NLRB v. Aakash, Inc.*, 58 F.4th 1099, 1103-05 (9th Cir. 2023).

[135] 29 U.S.C. §§ 153(d), 156, 160(a), (c); *Myers*, 303 U.S. at 48; *Garner v. Teamsters, Chauffeurs & Helpers Loc. Union No. 776*, 346 U.S. 485, 490 (1953).

for review by the federal courts, whose judges are not removable by the President *at all*.[136] If review by Article III judges—who are clearly less accountable to the President than MSPB or NLRB members—is constitutionally permissible, it strains the imagination to think that removal protections for MSPB or NLRB members would be unconstitutional.

For these reasons, Congress's longstanding grant of qualified decisional independence to ALJs through for-cause removal protections does not violate the Constitution. In addition, for the reasons set forth in section I(A)(1), above, SpaceX cannot obtain relief in this case because it cannot show that the mere presence, without more, of removal restrictions for ALJs inflicts any causal harm. For that reason as well, SpaceX fails to state a claim upon which relief can be granted and thus is unlikely to succeed on the merits.

### C. Board members' removal protections (Count II) are constitutional under Humphrey's Executor *and Fifth Circuit law.*

SpaceX's Article II challenge to Board member removability in Count II fares even worse on the merits than its challenge to ALJ removability in Count I. Here, Plaintiff argues that *Humphrey's Executor* should be overturned,[137] a point that the Fifth Circuit has rejected twice in the last two months.[138] SpaceX also seeks to distinguish this case from *Humphrey's Executor* on two grounds.[139] First, Plaintiff alleges that Board members are unconstitutionally insulated from removal because they "wield substantial executive power."[140] As a "quintessential" example of such executive power, SpaceX points to how a majority of the Board, as a body, can authorize

---

[136] *See Morrison*, 487 U.S. at 663-64; *Perkins*, 116 U.S. at 484-85.

[137] PI Mot. at 10.

[138] *Consumers' Rsch. v. Consumer Prod. Safety Comm'n,* No. 22-40328, 2024 WL 177326, at *2 (5th Cir. Jan. 17, 2024); *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1046-47 (5th Cir. 2023).

[139] Compl. ¶ 73; PI Mot. at 8-10.

[140] PI Mot. at 2; *see also id*. at 8-10; Compl. ¶¶ 7-13, 65-71, 73-74.

the General Counsel to petition a district court for injunctive relief under Section 10(j) of the NLRA.[141] SpaceX also seeks to distinguish the NLRA from *Humphrey's Executor* by claiming that the removal protections NLRB members enjoy are stricter than those insulating commissioners of the Federal Trade Commission ("FTC"), since unlike those commissioners, Board members cannot be removed for "inefficiency."[142]

But the Fifth Circuit's recent decision in *Consumers' Research v. Consumer Prod. Safety Commission* easily disposes of Count II.[143] There, the Fifth Circuit held that *Humphrey's Executor* not only remains good law, it broadly "protects *any* 'traditional independent agency headed by a multimember board.'"[144] *Humphrey's Executor* "permitted Congress to give for-cause removal protection to a multimember body of experts who were balanced along partisan lines, appointed to staggered terms, performed only quasi-legislative and quasi-judicial functions, and were said not to exercise any executive power."[145] Indeed, the Fifth Circuit was clear that *Humphrey's Executor* extends further still and even shields what today would be deemed *substantial* executive power by a multimember expert agency.[146]

In reviewing a challenge to the Consumer Product Safety Commission ("CPSC"), the Fifth Circuit considered that the CPSC possesses the power "to promulgate safety standards and

---

[141] PI Mot. at 2, 9. Aside from 29 U.S.C. § 160(j), SpaceX points broadly to 29 U.S.C. §§ 154, 159, and 160 to claim that Board members "exercise substantial executive power through their administrative, policymaking, and prosecutorial authority," without noting how these functions are distinct from those of traditional independent agencies headed by a multimember board.

[142] Compl. ¶ 72; PI Mot. at 2, 9-10.

[143] 2024 WL 177326, at *6.

[144] *Id.* (quoting *Seila Law*, 140 S. Ct. at 2198) (emphasis added); *see also Illumina*, 88 F.4th at 1047.

[145] *Consumers' Rsch,* 2024 WL 177326, at *6 (quoting *Seila Law*, 140 S.Ct. at 2187).

[146] *Id.* at *7-8; *see also Illumina,* 88 F.4th at 1047 (although the FTC's powers may have changed since *Humphrey's Executor* was decided, it does not run afoul of Article II because it is not vested with "*purely* executive authority") (emphasis added).

ban hazardous products, … to launch administrative proceedings, issue legal and equitable relief, and [to] commence civil actions in federal courts," including actions seeking injunctive relief and even those seeking civil monetary penalties.[147] Such powers are no less than those SpaceX allege here to be so substantial as to exceed the scope of *Humphrey's Executor*.[148] Indeed, beyond the Board's quasi-legislative power to promulgate rules, the Board cannot initiate administrative proceedings,[149] seek civil monetary penalties,[150] or order legal relief.[151] Nor are its orders self-enforcing.[152]

In comparison, in *Consumers' Research*, the Fifth Circuit found that although the CPSC "exercises substantial executive power (in the modern sense)," there are three reasons that *Humphrey's Executor* shields the CPSC from constitutional infirmity.[153] "First, [p]erhaps the most telling indication of a severe constitutional problem with an executive entity is a lack of historical precedent to support it."[154] "In other words, historical pedigree matters," and unlike the agencies in *Seila Law* and *Free Enterprise Fund*, the Fifth Circuit concluded CPSC "has history

---

[147] *Consumers' Rsch,* 2024 WL 177326, at *2 (citing 15 U.S.C. §§ 2056(a), 2057, 2064, 2076, 2069(a)–(b), 2071(a)); *see also id*. at *10 (Jones, J., concurring in part and dissenting in part) (noting that the CPSC "imposes heavy penalties for violations of its charging statutes, and commences civil actions in federal court seeking injunctive relief and monetary penalties.").

[148] PI Mot. at 9.

[149] 29 U.S.C. § 160(b) (individuals may file ULP charges, but formal Board action depends on the General Counsel or her delegate first finding merit to a charge and issuing a complaint); 29 U.S.C. § 159(c) (individuals must file an election petition to initiate the Board's representation election proceedings).

[150] *See, e.g.*, *Republic Steel Corp. v. NLRB*, 311 U.S. 7, 10 (1940) ("The [NLRA] is essentially remedial. It … does not prescribe penalties or fines.").

[151] *Jones & Laughlin Steel*, 301 U.S. at 48 (Board seeks only equitable relief, its proceedings are "not in the nature of a suit at common law"); *Agwilines*, 87 F.2d at 150-51 (Board proceedings are "equitable in their nature").

[152] 29 U.S.C. §160(e), (f).

[153] 2024 WL 177326, at *8.

[154] *Id*. (quoting *Seila Law*, 140 S.Ct. at 2201) (cleaned up).

on its side."[155] If that is true of an agency founded in 1972,[156] there can be no question as to the NLRB's historic pedigree, which was founded in 1935 and modeled after the FTC, and then survived an immediate constitutional challenge in 1937.[157]

"Second, the [CPSC] does not share the defining feature that the Supreme Court in *Seila Law* relied on to hold the CFPB unconstitutional."[158] It is not a *single-Director* agency vesting significant power in the hands of a *single individual* accountable to no one.[159] Nor is the NLRB.

"Third, [CPSC] does not have any of the features that combined to make the CFPB's structure 'even more problematic' in *Seila Law*." As with the NLRB, CPSC's "staggered appointment schedule means that each President *does* have an opportunity to shape [its] leadership and thereby influence its activities."[160] Nor does the NLRB or CPSC "receive funds outside the appropriations process" such that the President would be denied influence over their activities "via the budgetary process."[161] Thus, the Board lacks any of the features that the Fifth Circuit deems potentially outside the scope of *Humphrey's Executor.*

SpaceX also claims that *Humphrey's Executor* does not apply because NLRB members "are removable only 'for neglect of duty or malfeasance in office,' but not for other causes like inefficiency."[162] But this very proposition was just rejected by the Fifth Circuit in *Consumers'*

---

[155] *Id.*

[156] Pub. L. 92–573, § 4, Oct. 27, 1972.

[157] *Jones & Laughlin Steel.*, 301 U.S. at 1; *Dish Network*, 953 F.3d at 375 n.2.

[158] *Consumers' Rsch,* 2024 WL 177326, at *8.

[159] *Id.* Moreover, the single officer with "final authority" over investigations and prosecutions at the NLRB is independent of the Board and removable by the President at will. *See* 29 U.S.C. § 153(d); *Exela Enter. Sols.*, 32 F.4th at 445.

[160] *Id.*

[161] *Id.*

[162] PI Mot. at 9-10 (quoting 29 U.S.C. § 153(a) and contrasting that with *Humphry's Ex'r*, 295 U.S. at 620, which quotes 15 U.S.C. § 41).

*Research*, as CPSC commissioners have precisely the same tenure protections as the NLRB Members: "[t]he President may remove [CPSC members] *only* for 'neglect of duty or malfeasance in office'—that is, only for cause." [163] Thus, under Fifth Circuit law, it makes no difference that NLRB members are not removable for inefficiency under 29 U.S.C. § 153(a).

### D. SpaceX's Seventh Amendment claim (Count III) is beyond this Court's subject-matter jurisdiction and contrary to controlling law.

As a threshold matter, SpaceX's Seventh Amendment claim related to potential NLRA remedies is jurisdictionally barred under the applicable legal standard. [164] Here, SpaceX seeks to assert jurisdiction by pointing to a possible future order that might require SpaceX to pay its discharged employees for items such as "interest and late fees on credit cards" as part of a make-whole remedy under *Thryv*. [165] First, contesting particular remedies does not amount to a "structural" challenge to agency decisionmaking, such that meaningful review would be foreclosed. [166] Second, rather than question the Board's "power generally," as required by *Axon*, SpaceX's challenge goes only to "how that power [would be] wielded,"[167] and thus, this challenge is not collateral. And under the third *Axon* factor, the Board's power to fashion remedies as "affirmative action" under 29 U.S.C.§ 160(c) is one the Supreme Court has long

---

[163] *Consumers' Rsch.,* 2024 WL 177326, at *2 (emphasis added) (quoting 15 U.S.C. § 2053(a), which states, "Any member of the Commission may be removed by the President for neglect of duty or malfeasance in office but for no other cause.").

[164] *Axon*, 598 U.S. at 189, 191-95 (discussing whether (1) precluding district court jurisdiction would foreclose all meaningful judicial review of the claim, (2) the claim was wholly collateral, and (3) the claim is outside of the area of agency expertise); *see* above n.47.

[165] PI Mot. at 11 (claiming this to be among the subset of make-whole remedies in *Thryv,* 372 NLRB No. 22, that would run afoul of the Seventh Amendment).

[166] *Id.* at 191. Indeed, in *Jones & Laughlin Steel*, 301 U.S. at 22, 48-49, the Supreme Court rejected a similar Seventh Amendment challenge in the normal course of review of final Board orders under Section 10(f) of the Act.

[167] *Id.* at 193.

recognized as within a core area of Board expertise.[168] Accordingly, SpaceX's Seventh Amendment allegation falls outside this Court's subject-matter jurisdiction; it may only be considered on review of a final Board order by a circuit court.[169]

Moreover, the Seventh Amendment claim fails on its merits. The Supreme Court has made clear that the Seventh Amendment is "no bar" to the power of Congress to create new rights, "and remedies therefor," and to place the enforcement of such rights in an administrative agency.[170] The dispositive inquiry is whether the proceeding in question involves "public rights" versus "private rights."[171] The Board's proceedings involve quintessential public rights: the Act's prohibitions against interference with employees' concerted activities for mutual aid or protection are purely statutory creations designed to advance broader governmental policies.[172]

---

[168] "The Board's [remedial] power is a broad discretionary one, subject to limited judicial review . . . . The Board's order will not be disturbed unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *Fiberboard Paper Products v. NLRB*, 379 U.S. 203, 216 (1964) (quoting *Va. Elec. & Power Co. v. NLRB*, 319 U.S. 533, 539 (1943) (internal quotations omitted)).

[169] 29 U.S.C. § 160(e), (f); *see also Myers*, 303 U.S. at 48, 49 (at the conclusion of NLRB ULP cases: "*all questions of the jurisdiction of the Board* and the regularity of its proceedings, *all questions of constitutional right or statutory authority* are open to examination by the court") (emphasis added), and 51.

[170] *Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 461 (1977). This Court recently refused to issue a preliminary injunction on a similar Seventh Amendment claim raised by SpaceX in a different employment-discrimination case: *Space Exploration Technologies, Corp. v. Bell*. No. 1:23-CV-00137, 2023 WL 8885128, at *5–6 (S.D. Tex. Nov. 8, 2023). In that administrative enforcement case, which involved a broad range of remedies including civil penalties, this Court found that the relevant statute—8 U.S.C. § 1324b—protects public rights and that the Seventh Amendment therefore did not apply. *Id.* at *1, *5–6. Here, SpaceX seeks to enjoin proceedings that do not even concern the civil monetary penalties that the Fifth Circuit took issue with in *Jarkesy*. 34 F.4th at 454 ("actions seeking civil penalties are akin to special types of actions in debt from early in our nation's history which were distinctly legal claims").

[171] *Oil States Energy Servs. LLC v. Greene's Energy Grp. LLC*, 138 S. Ct. 1365, 1373 (2018).

[172] *See Va. Elec.*, 319 U.S. at 543 (the Board's orders "vindicate public, not private rights").

Over eighty years ago, the Supreme Court held an indistinguishable "contention under the Seventh Amendment [to be] without merit" in *NLRB v. Jones & Laughlin Steel Corp.*[173] The right to a jury trial does not extend to cases under the NLRA.[174] The Fifth Circuit reached this same conclusion even earlier. In *Agwilines, Inc. v. NLRB*, it held that the NLRA "does not [confer] private rights. It is only to rights and remedies as they were generally known and enforced at common law by jury trial that the amendment applies."[175] Indeed, the NLRA's substantive rights "were not only unknown, they were *obnoxious* to the common law."[176]

SpaceX quarrels with certain make-whole remedies available under *Thryv*. But the Supreme Court explained that *Jones & Laughlin* provided two "separate ground[s]" for rejecting the Seventh Amendment argument: first, the right to a jury trial simply does not apply to the Board's administrative enforcement of the public rights created in the Act; and second, the Board's award of "monetary relief" is often intertwined with reinstatement such that the Seventh Amendment is not even implicated.[177] SpaceX's argument ignores the first holding, which does not turn on the type of relief at issue.

But even considering the nature of the relief, make-whole remedies are the type of "affirmative action" the Board may require to effectuate labor policy under Section 10(c) of the

---

[173] 301 U.S. 1, 48-49 (1937). As the Court held, the unique statutory rights enforced by the Board are "unknown to the common law," and a Board proceeding "is not a suit at common law or in the nature of such a suit." *Id.* The Board's orders are "imposed for violation[s] of the statute" and are not like "money judgment[s] . . . under the common law." *Id; accord Atlas Roofing*, 430 U.S. at 453 (1977).

[174] 301 U.S. at 48; *see also Curtis v. Loether*, 415 U.S. 189, 194-95 (1974) (explaining that *Jones & Laughlin* held jury-trial right inapplicable to NLRB administrative adjudications).

[175] 87 F.2d at 150.

[176] *Id*. (emphasis added).

[177] *Atlas Roofing*, 430 U.S. at 453-54 & n.10; *see Jones & Laughlin*, 301 U.S. at 22 (Seventh Amendment has no application where monetary remedies are "incident to equitable relief").

NLRA, as noted above.[178] Even if the Board eventually orders backpay along with any of the other make-whole remedies from *Thryv* that SpaceX protests,[179] they would be remedies "incident to equitable relief."[180] And SpaceX cannot distinguish *Thryv* from the remedies that the Supreme Court and the Fifth Circuit have long found proper.[181]

In short, not only has the Supreme Court deemed SpaceX's Seventh Amendment claim to be "without merit,"[182] this claim is wholly outside this Court's subject-matter jurisdiction.[183] Equally clear is the Fifth Circuit's jurisdictional warning for district courts to avoid "over-the-shoulder supervision of" Board proceedings.[184] As such, this Court cannot take up SpaceX's invitation to use this forum to ask the Supreme Court to revisit *Jones & Laughlin*.[185] In any event, there is no likelihood of success on the merits as to this Seventh Amendment claim.

---

[178] 29 U.S.C. § 160(c).

[179] PI Mot. at 1-2, 11-14 (citing repeatedly to *Thryv, Inc.*, 372 NLRB No. 22 (Dec. 13, 2022)). SpaceX refers to *Thryv* remedies as akin to "consequential damages." PI Mot. at 12. But as the Board noted in *Thryv*, terms of art like "consequential damages," as used in other areas of the law, are inapt descriptions of make-whole relief designed to undo the effects of an unfair labor practice and advance the policies of the Act. 372 NLRB No. 22, slip op. at 13.

[180] *Jones & Laughlin*, 301 U.S. at 22.

[181] *See, e.g., NLRB v. Strong*, 393 U.S. 357, 359 (1969) (as to payment of fringe benefits, "making the workers whole for losses suffered on account of an unfair labor practice is part of the vindication of the public policy which the Board enforces."); *see also NLRB v. Mia. Coca-Cola Bottling Co.*, 360 F.2d 569, 575 (5th Cir. 1966) (interim employment expenses indirectly attributable to discharge is properly factored into the Board's make-whole relief); *S. Tours, Inc. v. NLRB*, 401 F.2d 629, 633 (5th Cir. 1968) ("[T]he Board is empowered to effectuate the broad policies of the Act by restoring the situation as nearly as possible to that which would have obtained but for the illegal conduct.").

[182] *Jones & Laughlin Steel*, 301 U.S. at 49.

[183] *Myers*, 303 U.S. at 48-51.

[184] *Bokat*, 363 F.2d at 673 (district courts play "a very very minor role" under the NLRA).

[185] PI Mot. at 14 n.2.

**E.  Not only is jurisdiction lacking to hear SpaceX's combined-functions claim (Count IV), the Fifth Circuit recently rejected an indistinguishable argument.**

Because Count IV's combined-functions claim is exclusively focused on the NLRA's

Section 10(j),[186] it fails to meet the *Axon* standard for subject-matter jurisdiction in this Court,[187]

as Section 10(j)'s injunctive relief is not sought as part of the Board's regular proceedings.[188]

And even if the Board were to authorize the General Counsel to initiate such a proceeding as to

SpaceX, that would hardly be evidence that the Board was "wielding authority unconstitutionally

in all or a broad swath of its work."[189] Indeed, even Article III jurisdiction over this claim is

questionable, considering that the instant Complaint preceded any action or any request for

action by the five-seat Board as to the ULP case against SpaceX.[190]

Aside from these jurisdictional considerations, case law, including that of the Fifth

Circuit, universally rejects the proposition that the mere combination of prosecutorial and

adjudicative functions in a single agency violates due process.[191] As the Fifth Circuit recently

---

[186] PI Mot. at 14-17; Compl. ¶¶ 108-138.

[187] 598 U.S. at 189, 191-93 ("here-and-now injury" providing for jurisdiction requires structural constitutional challenge objecting to an agency's "power generally, not to anything particular about how that power was wielded"); *see also Myers*, 303 U.S. at 48, 51; *Bokat*, 363 F.2d at 673.

[188] The Board may seek injunctive relief under Section 10(j) only if its usual processes may be rendered ineffective due to the passage of time. *See* 29 U.S.C. § 160(j); 29 C.F.R. § 101.37; *Boire*, 515 F.2d at 1188. It is quite rare for the Board to institute such proceedings. In fiscal year 2023, out of 19,869 unfair-labor-practice charges filed by the public, Regional Offices submitted 156 cases for consideration of such relief; of these, the General Counsel submitted only 15 for Board authorization, which was granted 14 times, resulting in 7 Section 10(j) petitions that were filed in court. *NLRB Performance and Accountability Report, FY 2023*, NLRB, at 27 and 86, available at https://www.nlrb.gov/reports/agency-performance/performance-and-accountability (last visited on Jan. 31, 2024).

[189] *Axon*, 598 U.S. at 189.

[190] Compl. at 25; PI Mot. at 26.

[191] *See, e.g.*, *Air Prods. & Chems., Inc. v. FERC*, 650 F.2d 687, 709-10 (5th Cir. 1981) (courts have "uniformly held" that combining investigative, prosecutorial, and judicial functions does not establish a due process violation).

found in a case rejecting a challenge alleging that the FTC improperly serves as both prosecutor and judge, "the Supreme Court has held that administrative agencies can, and often do, investigate, prosecute, and adjudicate rights without violating due process."[192] It explained that, "courts cannot 'presume bias' merely from the institutional structure of an agency."[193] The Fifth Circuit's rationale fully encompasses SpaceX's argument here, where an adjudicatory agency may merely authorize court litigation seeking temporary relief while an independent officer initiates and prosecutes the administrative action. And as various circuit courts have concluded, seeking injunctive relief under Section 10(j) does not violate the Board's obligation to avoid prejudging the facts of a labor dispute.[194] SpaceX's reliance on *Williams v. Pennsylvania*, a death-penalty case, is easily distinguishable, given the nature of the case and the far more substantive involvement of the prosecutor.[195]

### III. The balance of the equities and the public interest factors counsel against granting a preliminary injunction.

As shown above, SpaceX has failed to meet its burden as to irreparable harm and likelihood of success. But even if SpaceX could establish these required elements, it cannot show that its alleged harm outweighs the harm an injunction would inflict on the public and those not

---

[192] *Illumina*, 88 F.4th at 1047 (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975))

[193] *Id*. (quoting *United States v. Benitez-Villafuerte*, 186 F.3d 651, 660 (5th Cir. 1999)).

[194] *Flamingo Hilton-Laughlin v. NLRB*, 148 F.3d 1166, 1174 (D.C. Cir. 1998); *Kessel Food Mkts., Inc. v. NLRB*, 868 F.2d 881, 887 (6th Cir. 1989); *Eisenberg v. Holland Rantos Co.*, 583 F.2d 100, 104 n.8 (3d Cir. 1978); *NLRB v. Sanford Home for Adults*, 669 F.2d 35, 37 (2d Cir. 1981).

[195] 579 U.S. 1, 8 (2016), cited in PI Mot., at 15. The stakes here cannot compare. *See Gibson v. Tex. Dep't of Ins.–Div. of Workers Comp.*, 700 F.3d 227, 239 (5th Cir. 2012) (requirements of due process are "flexible and call for such procedural protections as particular situation demands" (cleaned up)). Further afield is SpaceX's citation to *Horne v. Polk*, 394 P.3d 651 (Ariz. 2017), a *state* court decision. PI Mot. at 15-16. In *Horne*, a special attorney general made the final agency decision to affirm her own order over an ALJ's recommendation, without a board or commission reviewing that decision. 394 P.3d at 653–55. SpaceX cannot show such due process concerns here, where the harm is at best speculative.

before the Court.[196] The standard burdens of administrative litigation cannot justify an injunction that would preclude the public's "strong interest in enforcing the federal labor laws."[197]

The NLRB was created and empowered by Congress to initially adjudicate and, where appropriate, remedy unlawful labor practices to "safeguard[] commerce from injury."[198] Congress's intent was to protect the public interest rather than to vindicate private rights.[199] Here, the requested injunction would frustrate Congress's intent to protect the Act's "public rights."[200] That frustration would be especially severe here given that the Act's procedures are the sole mechanism for enforcing the NLRA.[201] The peaceful resolution of industrial disputes depends on an effective means to vindicate those rights. The fact that SpaceX's work is important to the national interest only heightens the public interest in effectuating Congress's policy of ensuring labor peace by protecting employee rights. Even in the midst of the Space Race in the 1960s, such policy questions were properly determined by the Board.[202]

Moreover, granting an injunction on ALJ or Board removability grounds would not only frustrate the NLRB's enforcement efforts, but would burden the already busy federal courts, as it would inevitably encourage any employer or labor union unhappy with scrutiny of their labor

---

[196] *See Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451, 457 (5th Cir. 2016).

[197] *See Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 747 n.14 (1983).

[198] 29 U.S.C. §§ 151, 160; *see UAW Loc. 283 v. Scofield*, 382 U.S. 205, 220 (1965).

[199] *See, e.g., Vaca v. Sipes*, 386 U.S. 171, 182-83 n.8 (1967).

[200] *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 366 (1940).

[201] *Nathanson v. NLRB*, 344 U.S. 25, 27 (1953) ("The Board is the public agent chosen by Congress to enforce the [NLRA]."); *Amal. Util. Workers v. Consol. Edison Co. of N.Y.*, 309 U.S. 261, 270 (1940) (Board is the "sole authority to secure" the prevention of ULPs).

[202] *Aerojet Gen. Corp.*, 144 NLRB 368, 371 (1963) (barring petition to unseat incumbent union as bargaining representative at missile and rocket manufacturer where union had agreed to suspend strike at request of President and Secretary of Labor during contract dispute).

practices to seek preliminary injunctions against NLRB proceeding.[203] It is axiomatic that "the public has a powerful interest in the enforcement of duly enacted laws."[204] As the Fifth Circuit has repeatedly held, interfering with the enforcement of "statutes enacted by representatives of [the] people" is a "form of irreparable injury" to the government.[205] Depriving employees of the sole mechanism to vindicate their NLRA rights cannot serve the public interest, especially when SpaceX may obtain an adequate legal remedy if the Board ultimately issues an adverse decision.[206] Likewise, the public interest is not served by enabling a federal contractor's ability to violate federal labor policy, merely because it asserts that the Board's administrative proceeding "distracts from its important missions."[207] But it is not for a federal contractor to choose which federal laws are most in the public interest or warrant prioritizing.

## CONCLUSION

For the forgoing reasons, SpaceX's motion for a preliminary injunction should be denied, if this matter is not transferred as previously requested by the NLRB.

Respectfully submitted,

---

[203] Indeed, for FY 2023, the Regions found merit in 41.1 percent of the 19,869 ULP charges filed, which means that in a typical year, 8,166 respondents could file in district court seeking to enjoin the proceeding. *See* above, n.188, Performance and Accountability Report at 27.

[204] *League of United Latin Am. Citizens v. Abbott*, 601 F. Supp. 3d 147, 184 (W.D. Tex. 2022) (internal punctuation and citations omitted).

[205] *See, e.g., Tex. All. for Ret. Ams. v. Hughs*, 976 F.3d 564, 569 (5th Cir. 2020); *Valentine v. Collier*, 956 F.3d 797, 803 (5th Cir. 2020); *accord Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013).

[206] *See* above, n.169, discussing the comprehensive nature of appellate court review available at the conclusion of NLRB proceedings.

[207] PI Mot. at 4-5.

ALAMDAR S. HAMDANI
*United States Attorney*
*Southern District of Texas*

By: <u>Bejamin S. Lyles</u>
BENJAMIN S. LYLES
*Assistant United States Attorney*
S.D. Tex. ID No. 3062156
State Bar No. 24094808
1701 W. Bus. Highway 83, Suite 600
McAllen, TX 78501
Telephone: (956) 618-8010
Facsimile: (956) 618-8016
E-mail: Benjamin.Lyles@usdoj.gov
*Attorney-in-Charge for Defendants*

Dated this 2nd day of February, 2024.

NATIONAL LABOR RELATIONS BOARD
*Contempt, Compliance, and*
  *Special Litigation Branch*

KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*

DANIEL BRASIL BECKER
*Trial Attorney*

GRACE L. PEZZELLA
*Trial Attorney*

<u>s/*David P. Boehm*</u>
DAVID P. BOEHM
*Trial Attorney*
D.C. Bar No. 1033755 – *pro hac vice*
1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
Telephone: (202) 273-4202
Email: David.boehm@nlrb.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

<u>s/*David P. Boehm*</u>
DAVID P. BOEHM
*Trial Attorney*
D.C. Bar No. 1033755 – *pro hac vice*
1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
Telephone: (202) 273-4202
Email: David.boehm@nlrb.gov

Dated this 2nd day of February, 2024.

36

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | |
|---|---|
| **SPACE EXPLORATION TECHNOLOGIES CORP.,** | |
| **Plaintiff,** | Civil Action No. 1:24-cv-00001 |
| **v.** | |
| **NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,** | |
| **Defendants.** | |

## PLAINTIFF'S REPLY IN SUPPORT OF ITS
## MOTION FOR A PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................4

I.   Most important to the Court's preliminary injunction analysis, SpaceX is likely to succeed on the merits of its constitutional claims.................................................4

    A.   *Jarkesy* ensures SpaceX will prevail on its ALJ removal-protection claim. ..........4

    B.   *Humphrey's Executor* does not foreclose SpaceX's Board Member removal-protection claim...........................................................................7

    C.   The NLRB's provision of legal relief adjudicating private rights violates the Seventh Amendment. .........................................................................9

    D.   The NLRB Members' combination of prosecutorial and adjudicative roles against SpaceX violates the separation of powers and due process.....................15

II.  SpaceX will suffer irreparable harm without a preliminary injunction. ...........................18

    A.   The unconstitutionality of the NLRB proceedings inflicts irreparable harm. .......................................................................................................18

        1.   SpaceX is irreparably harmed by being subject to ongoing proceedings before unconstitutionally insulated decisionmakers............19

        2.   SpaceX will be irreparably harmed if it is deprived of it Seventh Amendment jury right..................................................................23

        3.   The NLRB Members' combination of prosecutorial and adjudicative roles irreparably harms SpaceX. ...........................................24

    B.   The unconstitutional NLRB proceedings inflict irreparable economic and reputational harm. ...................................................................................25

III. The balance of harms and public interest favor a preliminary injunction. .......................26

IV.  Severability arguments cannot defeat SpaceX's right to a preliminary injunction. ..........28

CONCLUSION.....................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpine Sec. Corp. v. FINRA*,
  No. 23-5129, 2023 WL 4703307 (D.C. Cir. July 5, 2023) ....................................................20

*Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.*,
  309 U.S. 261 (1940) ...............................................................................................................13

*Axon Enter., Inc. v. FTC*,
  598 U.S. 175 (2023) .................................................................................................... *passim*

*Braidwood Mgmt., Inc. v. EEOC*,
  70 F.4th 914 (5th Cir. 2023) .................................................................................................16

*BST Holdings, L.L.C. v. OSHA*,
  17 F.4th 604 (5th Cir. 2021) ...........................................................................................26, 27

*Burgess v. FDIC*,
  639 F. Supp. 3d 732 (N.D. Tex. 2022) ............................................................................11, 23

*Burgess v. FDIC*,
  871 F.3d 297 (5th Cir. 2017) ................................................................................................26

*Care One, LLC v. NLRB*,
  2023 WL 6457641 (D. Conn. Oct. 4, 2023) .........................................................................22

*Carr v. Saul*,
  141 S. Ct. 1352 (2021) ..........................................................................................................28

*Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*,
  494 U.S. 558 (1990) .........................................................................................................13, 14

*City of Arlington v. FCC*,
  569 U.S. 290 (2013) .................................................................................................................7

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
  51 F.4th 616 (5th Cir. 2022) .................................................................................................21

*Cochran v. SEC*,
  20 F.4th 194 (5th Cir. 2021) (en banc) ......................................................................19, 21, 25

*Collins v. Yellen*,
  141 S. Ct. 1761 (2021) .....................................................................................................21, 23

*Consumers' Research v. CPSC*,
   91 F.4th 342 (5th Cir. 2024) ........................................................................ *passim*

*Consumers' Research v. CPSC*,
   592 F. Supp. 3d 568 (E.D. Tex. 2022) ........................................................8, 21, 22

*Curtis v. Loether*,
   415 U.S. 189 (1974) ..........................................................................................13

*Deerfield Med. Ctr. v. City of Deerfield Beach*,
   661 F.2d 328 (5th Cir. 1981) ............................................................................18

*Def. Distributed v. U.S. Dep't of State*,
   838 F.3d 451 (5th Cir. 2016) ............................................................................27

*Doran v. Salem Inn, Inc.*,
   422 U.S. 922 (1975) ....................................................................................22, 28

*Free Enter. Fund v. PCAOB*,
   561 U.S. 477 (2010) .................................................................................. *passim*

*Granfinanciera, S.A. v. Nordberg*,
   492 U.S. 33 (1989) ...........................................................................................14

*Humphrey's Executor v. United States*,
   296 U.S. 602 (1935) ..............................................................................1, 7, 8, 9

*Illumina, Inc. v. FTC*,
   88 F.4th 1036 (5th Cir. 2023) .......................................................................8, 17

*Int'l Union, United Auto., Aircraft & Agric. Implement Workers of Am. (UAW-CIO) v. Russell*,
   356 U.S. 634 (1958) ..........................................................................................14

*Jarkesy v. SEC*,
   34 F.4th 446 (5th Cir. 2022) ..................................................................... *passim*

*Leachco, Inc. v. CPSC*,
   No. 22-cv-232, 2023 WL 4934989 (E.D. Okla. Aug. 2, 2023) ...........................23

*League of United Latin Am. Citizens v. Abbott*,
   601 F. Supp. 3d 147 (W.D. Tex. 2022)..............................................................27

*League of Women Voters of U.S. v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016) .............................................................................26

*Lefebure v. D'Aquilla*,
   15 F.4th 650 (5th Cir. 2021) ..............................................................................8

*Louisiana v. Biden*,
    55 F.4th 1017 (5th Cir. 2022) ............................................................................... 27

*Lucia v. SEC*,
    138 S. Ct. 2044 (2018) ........................................................................................... 5

*Miss. Power & Light Co. v. United Gas Pipe Line Co.*,
    760 F.2d 618 (5th Cir. 1985) .......................................................................... 22, 28

*Missouri v. Biden*,
    83 F.4th 350 (5th Cir. 2023) ................................................................................ 18

*Mock v. Garland*,
    75 F.4th 563 (5th Cir. 2023) ............................................................................... 1, 4

*Morrison v. Olson*,
    487 U.S. 654 (1988) ............................................................................................... 6

*NLRB v. Jones & Laughlin Steel Corp.*,
    301 U.S. 1 (1937) ..................................................................................... 2, 13, 14

*NLRB v. Miami Coca-Cola Bottling Co.*,
    360 F.2d 569 (5th Cir. 1966) ............................................................................... 15

*NLRB v. Strong*,
    393 U.S. 357 (1969) ............................................................................................. 15

*Overstreet v. El Paso Disposal, L.P.*,
    625 F.3d 844 (5th Cir. 2010) ............................................................................... 24

*S. Tours, Inc. v. NLRB*,
    401 F.2d 629 (5th Cir. 1968) ............................................................................... 15

*Seila Law LLC v. CFPB*,
    140 S. Ct. 2183 (2020) .................................................................................. *passim*

*Solugen Inc. v. M3 Chem. Grp. LLC*,
    529 F. Supp. 3d 685 (S.D. Tex. 2021) ................................................................. 11

*SpaceX v. Bell*,
    — F. Supp. 3d —, 2023 WL 8885128 (S.D. Tex. Nov. 8, 2023) .................... *passim*

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ............................................................................................. 16

*Tex. All. for Retired Ams. v. Hughes*,
    976 F.3d 564 (5th Cir. 2020) ............................................................................... 27

*Thomas v. Tex. Dep't of Crim. Just.*,
    297 F.3d 361 (5th Cir. 2002) ............................................................................8

*Thryv*,
    372 N.L.R.B. No. 22 (Dec. 13, 2022) ...................................................... *passim*

*Tull v. United States*,
    481 U.S. 412 (1987)........................................................................................10

*United States v. Nat'l Treas. Emps. Union*,
    513 U.S. 454 (1995)........................................................................................30

*United States v. Seale*,
    577 F.3d 566 (5th Cir. 2009) ...........................................................................7

*Ward v. Village of Monroeville*,
    409 U.S. 57 (1972)....................................................................................11, 23

*Webster v. Fall*,
    266 U.S. 507 (1925)..........................................................................................8

*Wenner v. Tex. Lottery Comm'n*,
    123 F.3d 321 (5th Cir. 1997) .....................................................................22, 28

*WestRock Servs., Inc.*,
    366 N.L.R.B. No. 157 (Aug. 6, 2018) .............................................................5, 6

*Williams v. Pennsylvania*,
    579 U.S. 1 (2016)...................................................................................... *passim*

*Withrow v. Larkin*,
    421 U.S. 35 (1975)..........................................................................................17

**Statutes**

5 U.S.C. § 1202(d) .....................................................................................................4

5 U.S.C. § 7521(a) .................................................................................................4, 29

15 U.S.C. § 78d(a) .....................................................................................................5

29 U.S.C. § 153(a) .....................................................................................................5

29 U.S.C. § 160(c) ...................................................................................................12

29 U.S.C. § 160(j).............................................................................................2, 16, 24

**Other Authorities**

11A Charles Alan Wright et al., Federal Practice and Procedure
§ 2948.1 (3d ed. 2023) ..........................................................................................................18

Fed. R. Civ. P. 38 ...................................................................................................................11

Fed. R. Civ. P. 39 ...................................................................................................................11

Michael J. Heilman, *The National Labor Relations Act at Fifty: Roots Revisited,
Heart Rediscovered*, 23 Duq. L. Rev. 1059, 1069 (1985).......................................................30

*NLRB Bench Book* § 2-300,
https://www.nlrb.gov/sites/default/files/attachments/pages/node-174/april-
2023-bench-book.pdf................................................................................................................6

U.S. Const. amend V ..............................................................................................................1

U.S. Const. amend. VII ................................................................................................ *passim*

U.S. Const. art. II ...........................................................................................................1, 2, 4, 5

U.S. Const. art. III ....................................................................................................... *passim*

## INTRODUCTION

Facing serious claims that the NLRB's structure violates Article II, the Fifth Amendment, and the Seventh Amendment and Article III, Defendants try to change the subject. Likelihood of success on the merits is the "most important of the preliminary injunction factors." *Mock v. Garland*, 75 F.4th 563, 587 n.60 (5th Cir. 2023). Yet Defendants do not turn to the merits until the back half of their brief, and instead fixate on irreparable harm. They ask, even if SpaceX shows it is being subjected to an administrative proceeding that violates the Constitution several times over, where's the harm in that? Their view is that this Court has no power to protect SpaceX from these constitutional violations before they take place. Defendants' position is contrary to common sense and, not surprisingly, Supreme Court and Fifth Circuit precedent. The injuries that Defendants all but concede SpaceX is suffering because of the unconstitutionally structured NLRB proceeding can and should be remedied before they happen. The Court should issue a preliminary injunction immediately, and certainly before the currently scheduled March 5, 2024 start date for the administrative hearing, because all four factors are met.

***First***, SpaceX's constitutional claims are meritorious and likely to succeed. Defendants may be deemphasizing this most important factor because binding Fifth Circuit precedent assures SpaceX of success on at least one of its claims. The Fifth Circuit's opinion in *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023), is dispositive of Count I. Existing NLRB precedent recognizes that NLRB ALJs are like the SEC ALJs in *Jarkesy*, so Defendants' strained efforts to distinguish the two types of ALJs can only fail. The Fifth Circuit's conclusions about SEC ALJs are equally applicable here and establish that NLRB ALJs are unconstitutionally insulated from presidential control.

In contrast, this Court is not bound by any precedent on the NLRB Members' removal protections in Count II. Nothing in *Humphrey's Executor v. United States*, 296 U.S. 602 (1935),

1

or recent Fifth Circuit applications of that decision, analyzes removal protections as strict as those at issue here. The Court should therefore give a fresh look to this claim and recognize that the Board Members' insulation from presidential control violates Article II under *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020).

Count III is also likely to succeed. Under *Thryv*, 372 N.L.R.B. No. 22 (Dec. 13, 2022), the General Counsel seeks compensatory damages to provide relief to private individuals for the unfair labor practices charged in the administrative complaint. These legal damages for alleged private injuries are fundamentally different than the remedies the Board claimed at the time of *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937). *Jones & Laughlin* does not resolve whether the Seventh Amendment requires a jury in these circumstances. Under more recent precedent, it does.

As for Count IV: under *Williams v. Pennsylvania*, 579 U.S. 1 (2016), which Defendants brush off in one sentence, NLRB Members' prosecutorial act of authorizing injunctive relief under Section 10(j) precludes them from acting as adjudicators of the same allegations. For this reason, too, SpaceX is likely to prevail on the merits of its constitutional claims.

**Second**, SpaceX will be irreparably harmed if this Court permits the NLRB proceedings to continue despite these constitutional defects. As this Court has recognized, applying recent Supreme Court precedent, "being subjected 'to unconstitutional agency authority,' which 'is impossible to remedy once the proceeding is over,'" is sufficient to show a likelihood of "irreparable harm absent an injunction." *SpaceX v. Bell*, — F. Supp. 3d —, 2023 WL 8885128, at *4 (S.D. Tex. Nov. 8, 2023) (quoting *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023)). That should end the matter because the type of impossible-to-remedy harm that *Axon* addresses is **exactly** the type at issue here: "harm from 'having to appear in proceedings' before an unconstitutionally insulated ALJ." *Axon*, 598 U.S. at 191 (citation omitted). The irreparable-injury

2

question is that straightforward. And in any event, SpaceX has more than sufficiently established other tangible harms that cannot be remedied after the NLRB's administrative proceedings conclude—including the time and resources SpaceX must divert to the NLRB proceedings, as well as the ongoing harm they threaten to SpaceX's reputation.

*Third*, the balance of harms and public interest favor a preliminary injunction. SpaceX has much to lose if this Court denies its request for a preliminary injunction. Defendants have little (if anything) to lose if the Court grants it. There is no indication that Defendants will be prejudiced by a delay of the NLRB proceeding against SpaceX—particularly when the Region took over a year to file its administrative complaint. And if SpaceX is right that the NLRB's adjudication is unconstitutional, Defendants suffer no harm in not proceeding further. Nor does the public interest in enforcing the federal labor laws extend to enforcing them in an unconstitutional way.

The potential severing of some (or all) of the offending removal protections does not detract from SpaceX's need for a preliminary injunction now to preserve the status quo. Again, "'having to appear in proceedings' before an unconstitutionally insulated ALJ" is "a here-and-now injury" that "is impossible to remedy once the proceeding is over." *Axon*, 598 U.S. at 191 (citations omitted). The time to remedy this injury is now. Even if the Court can sever the offending removal protections when issuing final declaratory relief, the whole point of that declaratory relief is "to ensure that the [labor-law] requirements and … standards to which [SpaceX is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513 (2010). Such relief is of little use once the unaccountable agency official has handed off the administrative proceeding to others.

Because Defendants cannot refute SpaceX's satisfaction of all four preliminary injunction factors, this Court should enjoin Defendants from carrying out their administrative proceedings

against SpaceX pending full review of the merits of its constitutional claims.[1]

## ARGUMENT

**I.    Most important to the Court's preliminary injunction analysis, SpaceX is likely to succeed on the merits of its constitutional claims.**

In ignoring the merits until page 19 of their PI Opposition (Dkt. No. 69), Defendants give short shrift to the "most important of the preliminary injunction factors": the merits of SpaceX's claims. *Mock*, 75 F.4th at 587 n.60. And when Defendants finally do get to the merits, they miss their target. SpaceX is likely to succeed on the merits on at least one, if not all, of its claims.

**A.    *Jarkesy* ensures SpaceX will prevail on its ALJ removal-protection claim.**

Under the Fifth Circuit's binding decision in *Jarkesy*, NLRB ALJs are unconstitutionally insulated from presidential control in violation of Article II. *See* PI Mot. 7–8. Defendants do not contest that if *Jarkesy*'s holding applies, SpaceX will succeed on the merits of Count I. Instead, they try to distinguish *Jarkesy* as being applicable only to SEC ALJs. But *Jarkesy* itself refutes Defendants' arguments, particularly given what the Board has already held about its own ALJs.

*Jarkesy*'s reasoning about SEC ALJs was "straightforward":

> SEC ALJs are inferior officers; they can only be removed by the SEC Commissioners if good cause is found by the Merits Systems Protection Board; SEC Commissioners and MSPB members can only be removed by the President for cause; so, SEC ALJs are insulated from the President by at least two layers of for-cause protection from removal, which is unconstitutional under *Free Enterprise Fund*.

34 F.4th at 464. Each step in this straightforward reasoning applies here. Defendants do not contest that NLRB ALJs are protected from without-cause removal by the same statute as the SEC ALJs. 5 U.S.C. § 7521(a). They do not contest that 5 U.S.C. § 1202(d) protects MSPB members from

---

[1] On February 7, 2024, SpaceX learned Judge Sharon L. Steckler will serve as ALJ for the hearing. Declaration of Harry I. Johnson III ("Johnson Decl.") (attached as Exhibit A), ¶ 11. SpaceX requests the preliminary injunction issue against both Judge Steckler and her co-Defendants.

without-cause removal in both cases. And they do not contest that NLRB Members have removal

protection like the SEC Commissioners. *See* 29 U.S.C. § 153(a); 15 U.S.C. § 78d(a).

The only point of disagreement is whether NLRB ALJs and SEC ALJs are sufficiently

similar kinds of officers. But *Jarkesy* and Board precedent decisively resolve that point against

Defendants. In *Jarkesy*, the Fifth Circuit's assessment of SEC ALJs followed the Supreme Court's

assessment of SEC ALJs in *Lucia v. SEC*, 138 S. Ct. 2044 (2018), which was a case applying

Article II's Appointments Clause. *See Jarkesy*, 34 F.4th at 464 ("The Supreme Court decided in

*Lucia* that SEC ALJs are 'inferior officers' under the Appointments Clause because they have

substantial authority within SEC enforcement actions."). The *Lucia* Appointments Clause analysis

was enough, for the Fifth Circuit, to resolve the removability issue as well: "if SEC ALJs are

'inferior officers' of an executive agency, as the Supreme Court in *Lucia* indicated was the case at

least for the purposes of the Appointments Clause, they are sufficiently important to executing the

laws that the Constitution requires that the President be able to exercise authority over their

functions." *Id.* That reasoning makes the question here an easy one because the Board has already

determined that NLRB ALJs are indistinguishable from SEC ALJs as "inferior officers" under the

*Lucia* Appointments Clause analysis: "Although the Court's holding in *Lucia* was specific to SEC

administrative law judges, its reasoning supports a determination that Board judges, like SEC

judges, are inferior officers, and as such we agree that they must be appointed pursuant to the

Appointments Clause." *WestRock Servs., Inc.*, 366 N.L.R.B. No. 157, slip op. at 1 (Aug. 6, 2018).

Defendants nonetheless try to manufacture some distinction by highlighting *Jarkesy*'s

statement that SEC ALJs "may punish contemptuous conduct; and often their decisions are final

and binding." 34 F.4th at 464 (citing *Lucia*, 138 S. Ct. at 2053–54). There are at least two problems.

First, *Jarkesy*'s statement drew from *Lucia*—which, by the Board's own determination in

*WestRock*, applies equally to NLRB ALJs. Second, Defendants omit the crucial first part of *Jarkesy*'s statement, which stresses that "SEC ALJs exercise considerable power over administrative case records by controlling the presentation and admission of evidence." *Id.* No one can deny that NLRB ALJs perform the same adjudicative function. *See, e.g.*, *NLRB Bench Book* § 2-300,   https://www.nlrb.gov/sites/default/files/attachments/pages/node-174/april-2023-bench-book.pdf. That is enough under *Jarkesy*, which explained that "quasi-judicial executive officers must be removable by the President." 34 F.4th at 464 (cleaned up). "So even if ALJs' functions are more adjudicative … , the fact remains that two layers of insulation impedes the President's power to remove ALJs based on their exercise of the discretion granted to them." *Id.* at 465. For this reason, Defendants get nowhere arguing that "the scope of the President's power to remove and control adjudicators differs from the scope of his power to remove and control other executive officers." PI Opp. 22 (invoking *Morrison v. Olson*, 487 U.S. 654, 689 (1988)). *Jarkesy* rejects the argument that administrative adjudicators can be shielded by multiple layers of for-cause removal protections. 34 F.4th at 464–65. That was the position of the *Jarkesy* dissent. *Id.* at 477 (Davis, J., dissenting) ("The ALJs' role is similar to that of a federal judge[.]").

In a last-ditch effort to escape this binding Fifth Circuit precedent, Defendants try the following argument: "[i]f review by Article III judges—who are clearly less accountable to the President than MSPB or NLRB members—is constitutionally permissible, it strains the imagination to think that removal protections for MSPB or NLRB members would be unconstitutional." PI Opp. 24. Apparently, the NLRB lacks imagination—or at least understanding of the separation of powers. It is a feature, not a bug, of Article III judges that they are independent of the President. *See* THE FEDERALIST NO. 78 (Alexander Hamilton). Executive branch officials are the opposite: they must be *dependent* on the President. *See Seila L.*, 140 S. Ct. at 2191–92.

That includes officials within the NLRB. The NLRB's ALJs are not Article III judges. They "are not mere neutral arbiters of federal [labor] law; they are integral pieces within the [NLRB's] powerful enforcement apparatus." *Jarkesy*, 34 F.4th at 465 n.20. Even if they "have some of the same 'tools of federal trial judges,' they use those tools at the direction of and with the power delegated to them by the [NLRB]." *Id.* (citation omitted). So NLRB ALJs must be accountable to the Executive, as *Jarkesy* instructs. *See also City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013) (explaining that, although administrative adjudications "take 'legislative' and 'judicial' forms, … they are exercises of—indeed, under our constitutional structure they *must be* exercises of—the 'executive Power'" (quoting Art. II, § 1, cl. 1)).

Defendants may not like *Jarkesy*. *See* PI Opp. 21. But they cannot avoid it. *Jarkesy* is binding precedent and shows SpaceX's likelihood of success on its ALJ removal-protection claim.

**B.** ***Humphrey's Executor* does not foreclose SpaceX's Board Member removal-protection claim.**

NLRB Members are also unconstitutionally insulated from removal. *See* PI Mot. 8–10. Regardless of whether the Supreme Court should overrule *Humphrey's Executor* (as some Justices have suggested and SpaceX agrees), SpaceX's argument is that this Court should not extend *Humphrey's Executor* to circumstances that differ from the Federal Trade Commission ("FTC") as it was structured in 1935. Neither the Supreme Court nor the Fifth Circuit has ever applied *Humphrey's Executor* to NLRB ALJs, and neither should this Court.

Defendants' rebuttal relies almost entirely on *Consumers' Research v. CPSC*, 91 F.4th 342 (5th Cir. 2024). *Consumers' Research* is subject to a petition for en banc rehearing, and the Fifth Circuit promptly called for a response to the petition.[2] *See* Dkt Nos. 142 & 148, No. 22-40328 (5th

---

[2] Of course, if the Fifth Circuit grants rehearing, the grant will have the immediate effect of "vacating the … panel opinion and rendering it non-precedential." *United States v. Seale*, 577 F.3d 566, 570 (5th Cir. 2009) (per curiam).

Cir.). But even on its own terms, *Consumers' Research* does not support expanding *Humphrey's Executor* to NLRB Members. Contrary to Defendants' claim, PI Opp. 27–28, *Consumers' Research* does not address SpaceX's argument that *Humphrey's Executor* does not permit removal restrictions as strict as those that apply to the NLRB Members. A review of the Fifth Circuit briefing reveals that the parties in *Consumers' Research* did not address the difference in breadth between the removal restrictions for CPSC Commissioners and FTC Commissioners. *See* Response Brief for Appellees, *Consumers' Research*, 2022 WL 6164656. The panel opinion likewise did not address that difference. *See Consumers' Rsch.*, 91 F.4th at 346. The decision therefore does not foreclose that argument here. *Thomas v. Tex. Dep't of Crim. Just.*, 297 F.3d 361, 370 n.11 (5th Cir. 2002) ("Where an opinion fails to address a question squarely, we will not treat it as binding precedent."); *Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

SpaceX does not ask this Court, and will not ask the Fifth Circuit, to "overturn[]" *Humphrey's Executor*. *Contra* PI Opp. 24. Although SpaceX has preserved that argument in case the Supreme Court decides to reconsider *Humphrey's Executor*, PI Mot. 10, SpaceX recognizes that no district or circuit court has authority to overturn, or even pare back, Supreme Court precedent. *See Lefebure v. D'Aquilla*, 15 F.4th 650, 660 (5th Cir. 2021). But that does not mean courts should extend *Humphrey's Executor*—particularly when the Supreme Court has repeatedly limited the doctrine, and certain Justices have expressly questioned it. *See, e.g.*, *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1046–47 (5th Cir. 2023) (recognizing *Seila Law*, 140 S. Ct. at 2206, as limiting *Humphrey's Executor*); *Seila L.*, 140 S. Ct. at 2198 ("*Rightly or wrongly*, the Court viewed the FTC (as it existed in 1935) as exercising 'no part of the executive power.'" (emphasis added)

(quoting *Humphrey's Ex'r*, 295 U.S. at 628)); *id.* at 2217 (Thomas, J., concurring in part and dissenting in part) ("After [*Seila Law*], the foundation for *Humphrey's Executor* is not just shaky. It is nonexistent.").

When read alongside recent Supreme Court precedent, neither *Humphrey's Executor* nor the Fifth Circuit's decision in *Consumers' Research* applies to NLRB Members. SpaceX is likely to succeed on its Board Member removal-protection claim.

**C.     The NLRB's provision of legal relief adjudicating private rights violates the Seventh Amendment.**

Defendants do not deny that under the Board's *Thryv* decision—which is binding on the ALJ—the Board's "standard remedy" for the allegations in this case requires broad monetary relief "to compensate affected employees for all direct or foreseeable pecuniary harms that these employees suffer as a result of the [employer's] unfair labor practice." 372 N.L.R.B. No. 22, slip op. at 1; *see* PI Mot. 11–12. Yet they argue that any injury from the absence of a jury trial is "entirely speculative" because "no ALJ has recommended, nor has the Board ordered, any remedy, let alone the *Thryv*-type remedies on which SpaceX hangs its Seventh Amendment claims." PI Opp. 15. But there is nothing speculative about this claim.

SpaceX and Defendants know full well what remedies the General Counsel is seeking because the administrative complaint says: "all … relief as may be just and proper to remedy the unfair labor practices alleged." Dkt. No. 37-3, at 9. In unlawful-discharge cases, including the case against SpaceX, the Board's "standard remedy" now includes *Thryv* damages. 372 N.L.R.B. No. 22, slip op. at 6. The ALJ has no power to ignore *Thryv*, nor do Defendants claim otherwise.

The only possible question is whether the General Counsel's pursuit of compensatory monetary relief for employees' purported private injury likely constitutes a Seventh Amendment violation. The answer is yes. The Seventh Amendment guarantees that "[i]n Suits at common law,

where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. CONST. amend. VII. Defendants do not address, and therefore do not expressly contest, SpaceX's argument that "the NLRB proceeding against SpaceX involves claims that arise at common law within the meaning of *Jarkesy*[, 34 F.4th at 452,] and *Tull* [*v. United States*, 481 U.S. 412, 417 (1987)]." *See* PI Mot. 11; *see also* Dkt. No. 62-1 (PLF Amicus Br. 10–11) (explaining unfair labor practices sound in tort). Instead, Defendants make three claims: (1) this Court lacks jurisdiction to review the Seventh Amendment claim prior to the agency proceedings; (2) the Seventh Amendment is not a bar because the Board seeks to vindicate public rights; and (3) the *Thryv* remedies are incident to any equitable relief and permissible. None of these is correct.

**1. Jurisdiction.** Defendants make a cursory argument about *Axon*'s test for judicial review before the conclusion of agency adjudicatory proceedings, spending no more than one sentence on each *Axon* factor. Under *Axon*, in examining whether it can exercise jurisdiction, a court must evaluate (1) whether failing to consider the claim would foreclose "meaningful judicial review"; (2) whether the claim is "wholly collateral to the statute's review provisions"; and (3) whether the claim is "outside the agency's expertise." 598 U.S. at 185 (citing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212–13 (1994)). Here, all three factors establish this Court has jurisdiction over SpaceX's Seventh Amendment claim.

Failing to consider the Seventh Amendment claim now would deprive SpaceX of meaningful judicial review. SpaceX suffers a "here-and-now" injury from being "subject[ed] to an unconstitutionally structured decisionmaking process," and that injury arises from "subjection to that process irrespective of its outcome, or of other decisions made within it." *Id.* at 191–92; *see also* PI Mot. 19. Contrary to Defendants' contention, SpaceX is mounting a structural challenge to the NLRB's procedures, not a statutory challenge to the NLRB's remedies. A Seventh Amendment

jury-trial right attaches before the start of a proceeding and regardless of whether any compensatory damages are in fact awarded through that trial. *See* U.S. CONST. amend. VII; FED. R. CIV. P. 38, 39 (setting forth procedures for preserving Seventh Amendment jury right before trial); *Solugen Inc. v. M3 Chem. Grp. LLC*, 529 F. Supp. 3d 685, 690 (S.D. Tex. 2021) (Eskridge, J.) (explaining the purpose of these rules is to protect the "fundamental right" to a jury). In this type of challenge, the question is who should sit as factfinder, regardless of the outcome or other decisions made in the case. *See Jarkesy*, 34 F.4th at 452 (the right is centered on the "jury [acting] as a fact-finding body" (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)).

The possibility that SpaceX could raise a Seventh Amendment complaint on a petition for review—were compensatory damages to be awarded—cannot remedy the Seventh Amendment injury now. This is the same scenario as *Axon*: if there is a right not to undergo the proceeding in the first place, regardless of the outcome, advance judicial review is appropriate because at least part of the right would be "effectively lost" if deferred until after trial. 598 U.S. at 191 ("Suppose a court of appeals agrees with Axon, on review of an adverse FTC decision, that ALJ-led proceedings violate the separation of powers. The court could of course vacate the FTC's order. But Axon's separation-of-powers claim is not about that order; indeed, Axon would have the same claim had it *won* before the agency."). With an ALJ, not a jury, as the factfinder, SpaceX would have the same Seventh Amendment claim—even if the NLRB finds no violation or awards no compensatory damages. SpaceX is entitled to a jury regardless of what the agency rules.

Defendants ignore SpaceX's authorities holding that loss of a jury right in administrative proceeding is a "here-and-now" injury warranting an injunction. *See* PI Mot. 19. For example, *Burgess v. FDIC*, 639 F. Supp. 3d 732, 749 (N.D. Tex. 2022), squarely held that a preliminary injunction should issue because loss of a jury trial right inflicts irreparable harm. And *Ward v.*

*Village of Monroeville*, 409 U.S. 57, 61–62 (1972), explained that when a party is entitled to a certain adjudicatory process in the first instance, a constitutionally infirm adjudicatory process cannot "be deemed constitutionally acceptable" simply because the government eventually offers that party a belated do-over that meets the constitutional requirements.

The second *Axon* factor—whether this claim is "wholly collateral" to the NLRB's review provisions, 598 U.S. at 186—also supports jurisdiction over SpaceX's Seventh Amendment claim. Defendants are wrong that SpaceX's "challenge goes only to how [the Board's] power would be wielded." PI Opp. 28. At this juncture, SpaceX is challenging the power of the Board "to proceed at all" when it offers no jury trial right or Article III decisionmaker. *Axon*, 598 U.S. at 192. SpaceX is not challenging a specific damages award. So, as in *Axon*, the collateralism factor favors review. *See id.* at 192–93.

Finally, SpaceX also meets the third factor, which is whether the claim is outside the agency's expertise. Much as in *Axon*, the Board here knows "nothing special about the [Seventh Amendment]." *Id.* at 194. Who sits as the factfinder in this case is an issue of "here-and-now harm" that "would remain no matter how much expertise could be 'brought to bear' on the other issues," *Id.* at 195. Whatever expertise the Board might have in fashioning remedies under 29 U.S.C. § 160(c), *see* PI Opp. 28–29, does not extend to the Constitution.

All three *Axon* factors favor review here. And even if not all three did, the factors on balance do. Thus, there is no question that this Court has jurisdiction to consider the Seventh Amendment claim.

**2. Public Rights.** Defendants contend that there is no Seventh Amendment problem because the NLRB proceeding involves "public rights" and they are acting to advance broader governmental policies. PI Opp. 29–30. Once again, Defendants' arguments conflict with the Fifth

Circuit's ruling in *Jarkesy*: the government cannot define public rights as any statutory rights enforced by an agency in an administrative proceeding. 34 F.4th at 457 ("Congress cannot change the nature of a right, thereby circumventing the Seventh Amendment, by simply giving the keys to the SEC to do the vindicating.").

Defendants rely heavily on *Jones & Laughlin*, 301 U.S. at 48–49. But that case does not address whether Board efforts to recover full compensatory damages for a private individual without a jury trial pass constitutional scrutiny. Defendants do not dispute that, when *Jones & Laughlin* was decided in 1937, the Board did not claim this power. In fact, just three years after *Jones & Laughlin*, the Supreme Court characterized the Board as a "public agent" precisely because the Board did not seek to give effect to a "private administrative remedy." *Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.*, 309 U.S. 261, 269 (1940). That is no longer true.

Defendants also cite *Curtis v. Loether*, 415 U.S. 189, 194–95 (1974). But that case likewise does not explain how this new assertion of power comports with the Seventh Amendment. Rather, *Curtis* says that "the Seventh Amendment is *generally* inapplicable in administrative proceedings." *Id.* at 194 (emphasis added). As *Jarkesy* explained, however, "Congress cannot convert any sort of action into a 'public right' simply by finding a public purpose for it and codifying it in federal statutory law." 34 F.4th at 456–57. Defendants do not explain how "making employees whole" through the monetary relief prescribed in *Thryv*, 372 N.L.R.B. No. 22, slip op. at 8, 10, 12, is a vindication of a public right. Nor can they, as this relief explicitly aims to remedy a private wrong. *See Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 573 (1990) (where the focus on the "wrong done the individual employee" and not the "public interest in effecting federal labor policy," a jury trial is required for the claim (citation omitted)).

Defendants therefore err in asserting (without support) that enforcing public rights "does

13

not turn on the type of relief at issue" and that SpaceX thus ignored the public rights doctrine from *Jones & Laughlin*. PI Opp. 30. SpaceX expressly argued that the Board is seeking to vindicate private rights rather than public rights. PI Mot. 1–2, 13–14. Defendants simply ignore—and never even discuss—the authorities SpaceX cited, including *Terry* and *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989).

Nor do Defendants address SpaceX's contention that compensatory damages are classic forms of "legal relief" that ordinarily require a jury trial. PI Mot. 12 (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993)). They offer no explanation how such monetary relief can remain on the "public rights" side of the line. They make no headway discussing the bygone era in which the NLRB did not claim this power. Logically, newly asserted agency powers require fresh constitutional analysis. *See* PI Mot. 13. Whether the Board acts to vindicate public rights when it seeks a classic form of legal relief—in the form of compensatory damages as a remedy for private individuals—is an open question for this Court. And Defendants have no answers.[3]

**3. Incidental to equitable relief.** *Thryv*'s monetary remedies are not simply incidental to equitable relief, as Defendants claim. Rather, they transgress the Supreme Court's observation that "Congress did not establish a general scheme authorizing the Board to award full compensatory damages for injuries caused by wrongful conduct." *Int'l Union, United Auto., Aircraft & Agric. Implement Workers of Am. (UAW-CIO) v. Russell*, 356 U.S. 634, 643 (1958). If "interest and late fees on credit cards" and "credit card debt," "penalties" based on early "retirement account" withdrawals, compensation for loss of a car or home, new or increased "transportation or childcare costs," and still other expenses can be classified as merely incidental to equitable relief, nothing

---

[3] This Court's decision in *Bell*, 2023 WL 8885128, at *5–6, does not assist Defendants. They do not disagree that *Bell* did not involve compensation sought for alleged pecuniary harms to the individual workers. *See* PI Opp. 29 n.170 (discussing *Bell*).

remains of the Constitution's limits on the NLRB's ability to adjudicate outside of Article III and without observing the Seventh Amendment. PI Mot. 11 (citing *Thryv*, 372 N.L.R.B. No. 22, slip op. at 9–10).

Defendants' cases do not support a contrary view. In *NLRB v. Strong*, 393 U.S. 357, 362 (1969), the Court did not address the Seventh Amendment at all. It merely upheld an award of fringe benefits that the employer would have paid under a contract had the employer not engaged in an unfair labor practice. Such a payment was akin to disgorging money unlawfully retained and thus a form of restitution. In *NLRB v. Miami Coca-Cola Bottling Co.*, 360 F.2d 569, 573, 575 (5th Cir. 1966), the court did not consider the Seventh Amendment either. It merely provided guidance on how to accurately calculate backpay. And finally, the statement in *Southern Tours, Inc. v. NLRB*, 401 F.2d 629, 633 (5th Cir. 1968), that the Board has the power to "restor[e] the situation as nearly as possible to that which would have obtained but for the illegal conduct" was made in the context of an order of reinstatement. Once again, there was no Seventh Amendment discussion. None of these cases suggests that the sweeping compensatory damages in *Thryv* are merely incidental to equitable relief.

In sum, the General Counsel is asking an ALJ, not a jury, to adjudicate a claim for *Thryv* compensatory damages to remedy private wrongs. The Board has crossed the line from public rights and equitable relief to private rights and legal relief. SpaceX has shown a likelihood of success that it is entitled to a jury trial in an Article III court.

### D. The NLRB Members' combination of prosecutorial and adjudicative roles against SpaceX violates the separation of powers and due process.

Based on the principles in *Williams v. Pennsylvania*, 579 U.S. 1 (2016), SpaceX argues that "[t]he Constitution does not permit the same agency officials to be both prosecutors and judges." PI Mot. 15. Defendants ignore this argument and instead address a different one: that "the

mere combination of prosecutorial and adjudicative functions in a *single agency* violates due process." PI Opp. 32 (emphasis added). The Court could address that broader argument but need not go so far. Here, Board Members' dual roles as prosecutors and adjudicators suffice to render the NLRB's proceedings structurally unconstitutional under existing Supreme Court doctrine.

Before they (briefly) address the merits, Defendants again assert that this Court lacks subject-matter jurisdiction. This assertion incorrectly presumes that it matters under *Axon* whether the constitutional violation occurs as "part of the Board's regular proceedings." PI Opp. 32. But what matters, instead, is that SpaceX "protest[s] the 'here-and-now' injury of subjection to an unconstitutionally structured decisionmaking process" and that a court of appeals' eventual review "would come too late to be meaningful." *Axon*, 589 U.S. at 191–92. This claim ripened when the NLRB Region indicated that it would "mak[e] a submission to the General Counsel's Injunction Litigation Branch about the appropriateness of Section 10(j) relief in this dispute." Dkt. No. 1 (Compl.) ¶ 128; *see, e.g.*, *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 932 (5th Cir. 2023) ("One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985)). Defendants' self-serving assertion that Section 10(j) proceedings are "quite rare" in general, PI Opp. 32 n.188, is irrelevant because they admit that such proceedings are already "being considered" against SpaceX *in this case*, Dkt. No. 29 (Mot. to Transfer), at 4, 11 n.59. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) (holding petitioners' pre-enforcement constitutional challenges were ripe where there was a history of past enforcement and a threat of future enforcement). And, notably, even in their PI Opposition they do not disclaim the possibility that a 10(j) proceeding may be authorized against SpaceX here.

On the merits, Defendants offer only a single sentence on the Supreme Court's decision in

*Williams*. They assert that the case "is easily distinguishable, given the nature of the facts and the far more substantive involvement of the prosecutor." PI Opp. 33. But the Court's ruling is a statement of general principle, not a narrow response to a particular set of facts: "The Court now holds that under the Due Process Clause there is an impermissible risk of actual bias when a judge earlier had significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case." *Williams*, 579 U.S. at 8. The rationale for this rule, which the Supreme Court articulated at length, applies with full force to Board Members who have previously authorized litigation seeking extraordinary, immediate injunctive relief against a charged party. And Defendants do not meaningfully argue otherwise. Just like the district-attorney-turned-judge in *Williams*, the Board Members cannot pivot from prosecutor to adjudicator in such a case. *See id.* at 9 ("The due process guarantee that 'no man can be a judge in his own case' would have little substance if it did not disqualify a former prosecutor from sitting in judgment of a prosecution in which he or she had made a critical decision.").

Defendants cite a series of off-point cases. For example, in *Illumina*, the plaintiff broadly claimed that an administrative agency—not any specific agency official—"violated [its] due process rights by serving as both prosecutor and judge." 88 F.4th at 1047. To be sure, several circuits have previously addressed due-process claims challenging the Board Members' dual roles. But no case considers the NLRB's 10(j) proceedings in light of the Supreme Court's recent guidance in *Williams*. *See* PI Opp. 33 (collecting cases issued between 1978 and 1998); *see also id.* at 17 n.90 (citing *Burnley v. Thompson*, 524 F.2d 1233 (5th Cir. 1975)). *Williams* provides authoritative guidance on how to apply *Withrow v. Larkin*, 421 U.S. 35 (1975)—the case on which Defendants' cited cases rely—in the scenario here. An adjudicator's "significant, personal involvement in a critical decision in [a defendant's] case [gives] rise to an unacceptable risk of

actual bias" that "so endanger[s] the appearance of neutrality that his participation in the case 'must be forbidden if the guarantee of due process is to be adequately implemented.'" *Williams*, 579 U.S. at 14 (quoting *Withrow*, 421 U.S. at 47). Surely Defendants can agree that it is important for the Board to have an appearance of neutrality as well.

## II.   SpaceX will suffer irreparable harm without a preliminary injunction.

### A.   The unconstitutionality of the NLRB proceedings inflicts irreparable harm.

This Court has already recognized that "[d]eprivation of a constitutional right 'unquestionably constitutes irreparable injury.'" *Bell*, 2023 WL 8885128, at *4 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Under Fifth Circuit precedent, that is enough for SpaceX to meet its burden. *See, e.g., Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (denial of constitutional rights "for even minimal periods of time constitutes irreparable injury"); *Missouri v. Biden*, 83 F.4th 350, 393 (5th Cir. 2023) (holding that deprivation of constitutional rights is sufficient to constitute irreparable harm), *cert. granted sub nom. Murthy v. Missouri*, 144 S. Ct. 7 (2023); 11A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2948.1 (3d ed. 2023) (noting that where "deprivation of a constitutional right is involved, … most courts hold that no further showing of irreparable injury is necessary").

Defendants disregard this precedent and assert that "SpaceX does not allege the kind of constitutional injury that warrants injunctive relief." PI Opp. 7. They invoke a few out-of-circuit cases, but none involved challenges to ongoing unconstitutional agency proceedings. *See* PI Opp. 7 (citing *Siegel v. Lepore*, 234 F.3d 1163, 1178 (11th Cir. 2000) (en banc); *Pub. Serv. Co. of N.H. v. Town of W. Newbury*, 835 F.2d 380, 382 (1st Cir. 1987); *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 682 (7th Cir. 2012)). On the contrary, the injuries SpaceX asserts fall squarely within the sorts of constitutional injuries that support a claim for preliminary injunctive relief.

1.      **SpaceX is irreparably harmed by being subject to ongoing proceedings before unconstitutionally insulated decisionmakers.**

For SpaceX's removal-protection claim, the irreparable injury question is far simpler than Defendants make it seem. As this Court has recognized, *Axon* is clear that "[p]roceeding before 'an unaccountable ALJ' 'is a here-and-now injury' 'that is impossible to remedy once the proceeding is over.'" *Bell*, 2023 WL 8885128, at *2 (quoting *Axon*, 598 U.S. at 191). An appellate court "could of course vacate the [agency]'s order," but a "separation-of-powers claim" challenging unconstitutional removal protections "is not about that order." *Axon*, 598 U.S. at 191. Here, as in *Axon*, unless a preliminary injunction is granted, SpaceX will be subject to a proceeding before an unaccountable ALJ and unaccountable Board Members.

Defendants attempt to distinguish *Axon* as a case that dealt only with subject-matter jurisdiction and not the requirements for an injunction, and they cite out-of-circuit district court rulings distinguishing *Axon* on this basis. PI Opp. 8 (citing *Leachco, Inc. v. CPSC*, No. 22-cv-232, 2023 WL 4934989, at *2 (E.D. Okla. Aug. 2, 2023); *Kim v. FINRA*, No. 23-cv-2420, 2023 WL 6538544, at *13 & n.19 (D.D.C. Oct. 6, 2023)). But this attempt to narrow *Axon* makes no sense. *Axon* states that for jurisdictional purposes, the exact injury alleged here counts as a legally cognizable injury that is impossible to remedy later. What more could be needed to identify an irreparable injury?

This Court has already rejected that narrow reading of *Axon*, consistent with Fifth Circuit precedent on irreparable harm in constitutional cases. *Bell*, 2023 WL 8885128, at *2 (citing *Axon* and stating that "if Plaintiff can show that OCAHO ALJs are unconstitutionally insulated from removal, Plaintiff will be harmed by having to proceed before an unaccountable ALJ"); *see also Cochran v. SEC*, 20 F.4th 194, 212–13 (5th Cir. 2021) (en banc) (if removal claim is "meritorious," plaintiff should not be "forc[ed] to litigate before an ALJ who is unconstitutionally insulated from

19

presidential control"), *aff'd and remanded sub nom. Axon*, 598 U.S. at 175; *Alpine Sec. Corp. v. FINRA*, No. 23-5129, 2023 WL 4703307, at *3 (D.C. Cir. July 5, 2023) (Walker, J., concurring) (finding an injunction of an administrative adjudication pending appeal appropriate under *Axon* because the plaintiff was likely to prevail on claim that officers were unlawfully "shielded from removal").[4] Indeed, *Bell*'s discussion of irreparable harm draws directly from *Axon*'s discussion of jurisdiction over an ALJ removal-protection claim—precisely the sort of claim at issue in Count I here. *Bell*, 2023 WL 8885128, at *4 ("Plaintiff is being subjected 'to unconstitutional agency authority,' which 'is impossible to remedy once the proceeding is over.'" (quoting *Axon*, 598 U.S. at 191)); *see Axon*, 598 U.S. at 191 (endorsing challengers' theory that "'being subjected' to 'unconstitutional agency authority'—a 'proceeding by an unaccountable ALJ' and "unconstitutionally insulated ALJ"—"is impossible to remedy once the proceeding is over" (citations omitted)).

Defendants protest that "[r]eading *Axon* to require a preliminary injunction any time a party challenges administrative proceedings on constitutional grounds would not only disrupt timely law-enforcement efforts by federal agencies across the government, but also overwhelm the courts with preliminary injunction requests." PI Opp. 8. This concern is misplaced, because a litigant must also show a likelihood of success on the merits of its constitutional challenge. And if the litigant can do that, the government has no legitimate objection. The fact that *many* litigants may be able to establish that an arm of the government is subjecting them to unconstitutional agency proceedings is hardly a reason to let the government get away with it. On the contrary, *Axon* recognizes that a party in administrative proceedings before an unconstitutionally insulated

---

[4] Defendants brush aside Judge Walker's statement in *Alpine* as a solo opinion confined to the facts of that case. PI Opp. 10 n.60. But Judge Walker's concurrence is one of the only opinions on *Axon* by a circuit judge, and the statement applies just as well here.

decisionmaker will experience injury that cannot be repaired later and that it is within the particular expertise of the courts to redress such claims. *Axon*, 598 U.S. at 194–95.

Next, Defendants attempt to add to SpaceX's burden by demanding proof of: "(1) a substantiated desire by the President to remove the unconstitutionally insulated actor; (2) a perceived inability to remove the actor due to the infirm provision; and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor." PI Opp. 9 (quoting *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022) ("*CFSA*")). But *CFSA* is inapplicable. It addresses the requirements for invalidating or enjoining enforcement of an agency rule issued by officials who were unconstitutionally shielded from presidential oversight. *See CFSA*, 51 F.4th at 631–32. As the en banc Fifth Circuit has explained, the case on which *CFSA* relied—*Collins v. Yellen*, 141 S. Ct. 1761 (2021)—does not apply where the constitutional claimant "does not seek to 'void' the acts of any [administrative] official" but instead "seeks an administrative adjudication untainted by separation-of-powers violations." *Cochran*, 20 F.4th at 210 n.16. None of the appellate cases Defendants cite on this point require such a heightened showing under *Collins* to obtain relief from ongoing unconstitutionally structured proceedings.

Defendants' failure to identify applicable precedent is not surprising. The Supreme Court has clearly explained that litigants subjected to proceedings before unconstitutionally insulated agency officers "are entitled to declaratory relief sufficient to ensure that the [administrative] requirements and … standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513. The Fifth Circuit recently reiterated the propriety of such relief, without the heightened showing that Defendants demand. *Consumers' Rsch.*, 91 F.4th at 351 ("In a suit seeking to vindicate the President's removal power … , the plaintiff is entitled to declaratory relief sufficient to ensure that the requirements

and standards to which it is subject will be enforced only by a constitutional agency accountable to the Executive." (citation and alterations omitted)); *see also Consumers' Rsch. v. CPSC*, 592 F. Supp. 3d 568, 587 (E.D. Tex. 2022) (finding that *Free Enterprise Fund*, not *Collins*, controls removal-protection claims in declaratory judgment action), *rev'd on other grounds*, 91 F.4th 342.

The same reasoning extends to preliminary injunctive relief, at least until the Court can issue a final judgment. Defendants do not contest that a preliminary injunction is the only tool available at this juncture because there is no such thing as a preliminary declaration. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) ("prior to final judgment there is no established declaratory remedy comparable to a preliminary injunction; unless preliminary relief is available upon a proper showing, plaintiffs in some situations may suffer unnecessary and substantial irreparable harm"). A preliminary injunction is necessary to preserve the status quo and protect the Court's ability to later provide meaningful permanent relief. *Id.*; *see also Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997) ("Preliminary injunctions commonly favor the status quo and seek to maintain things in their initial condition so far as possible until after a full hearing permits final relief to be fashioned."); *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 627 (5th Cir. 1985) ("The purpose of a preliminary injunction is to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits.").

Rather than grapple with the overwhelming Supreme Court and Fifth Circuit precedent, Defendants rely on several out-of-circuit cases. *See* PI Opp. 10 (citing *Care One, LLC v. NLRB*, 2023 WL 6457641, at *3–4 (D. Conn. Oct. 4, 2023); *Leachco*, 2023 WL 4934989, at *2; *Burgess*, 639 F. Supp. 3d at 747). *Care One* denied the preliminary injunction out of express disagreement with the Fifth Circuit's holding in *Jarkesy*. 2023 WL 6457641, at *3–4. Obviously, this Court cannot decline to follow that Fifth Circuit precedent. *Leachco*'s analysis of ALJs' removal

protections is similarly incompatible with *Jarkesy*'s, 2023 WL 4934989, at \*2 & n.2, and as already discussed its attempt to confine *Axon* to questions of jurisdiction is unpersuasive and contrary to this Court's opinion in *Bell*. Finally, *Burgess*'s discussion of the removal-protection claim hinged on likelihood of success, and it overlooked *Free Enterprise Fund*'s holding that litigants raising this sort of claim are entitled to declaratory relief (without *Collins*'s heightened showing). *See* 639 F. Supp. 3d at 749. As noted, the Fifth Circuit just reaffirmed that conclusion in *Consumers' Research*. So *Burgess* cannot help Defendants here.

Without injunctive relief, SpaceX will be required to go through an unconstitutionally structured proceeding and will have no way to remedy that here-and-now constitutional injury in later proceedings. Accordingly, it has demonstrated irreparable injury.

## 2. SpaceX will be irreparably harmed if it is deprived of it Seventh Amendment jury right.

As addressed above, Defendants entirely neglect SpaceX's authority explaining why the harm of having to undergo trial before an unconstitutional factfinder is not reparable after-the-fact. *See Burgess*, 639 F. Supp. 3d at 749 ("Since the Court has determined that Plaintiff was entitled under the Seventh Amendment to a jury trial, the irreparable injury requirement is automatically satisfied without the need to consider Plaintiff's particular showings of irreparable harm."); *Ward*, 409 U.S. at 61–62 ("Petitioner is entitled to a neutral and detached judge in the first instance.").

Perhaps recognizing this, Defendants suggest that the scope of an injunction should only limit the Board and General Counsel from pursuing *Thryv* compensatory remedies. PI Opp. 16. But like the question of severability, PI Mot. 22–23, the scope of available ultimate relief is not the same question as what relief should issue preliminarily. Where SpaceX has shown a likelihood of success on the merits and irreparable harm, a preliminary injunction should issue while the parties litigate the scope of any permanent injunctive or declaratory relief.

### 3. The NLRB Members' combination of prosecutorial and adjudicative roles irreparably harms SpaceX.

Defendants do not dispute that a violation of SpaceX's due-process rights, if shown, would harm SpaceX. Nor do they dispute that SpaceX would be entitled to relief for such an ongoing due-process violation. Instead, they primarily argue that SpaceX is not entitled to relief because "[i]ts theory of harm rests on a series of hypothetical occurrences." PI Opp. 16. But as SpaceX has explained, those occurrences are not purely hypothetical. The NLRB has already begun the process of seeking the Board's Section 10(j) approval. *See* Compl. ¶ 128; Mot. to Transfer 4, 11 n.59. Defendants make three additional arguments, but none undermines the irreparable harm SpaceX will suffer if the NLRB continues to pursue the threatened Section 10(j) injunctive relief.

First, Defendants assert that "Board members authorizing Section 10(j) litigation act to preserve the Board's ability to later order an effective remedy, not to prosecute the case on the merits." PI Opp. 17. The Board's motives are irrelevant; the standard for this claim is purely objective. *See Williams*, 579 U.S. at 4, 8–9. The Fifth Circuit has squarely held, moreover, that "the decision whether to pursue § 10(j) relief" is "prosecutorial in nature," not "adjudicatory." *Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 852 (5th Cir. 2010).

Second, Defendants suggest that SpaceX should be "required to exhaust administrative remedies before bringing its claims to federal court." PI Opp. 17. That argument is a nonstarter when, as here, all three *Axon* requirements are satisfied. *See* 598 S. Ct. at 190–96.

Finally, Defendants contend that the deprivation of SpaceX's due-process rights can be "properly remedied by more process rather than an injunction." PI Opp. 17. But they fail to say how. Once the Board Members engage in prosecutorial decisionmaking that requires their recusal from adjudication, more process before those actors would compound the injury, not relieve it.

**B.      The unconstitutional NLRB proceedings inflict irreparable economic and reputational harm.**

SpaceX has also demonstrated several concrete harms that the ongoing NLRB proceedings have, and will, cause it to suffer. *See* PI Mot. 20–21 (citing Dkt. No. 37-1 (Gallman Decl.) ¶¶ 13–23). These harms are ongoing. SpaceX and its personnel are currently involved in preparation for the upcoming administrative hearing. Dkt. No. 64-8 (Harper Decl.) ¶ 14. SpaceX is actively engaged in motion practice before the Board as to its jurisdiction over the matter and the timing of any eventual hearing. SpaceX has answered the administrative complaint. On February 1 and February 7, 2024, mere weeks before the hearing's scheduled start, the Charging Parties and NLRB General Counsel each served a subpoena duces tecum, which together cover over 145 document requests and seek extraordinarily broad and largely irrelevant discovery to be conducted over a three-week window before the hearing. Johnson Decl., ¶¶ 6, 8. SpaceX has filed a petition to revoke the Charging Parties' subpoena and has another petition regarding the General Counsel's subpoena forthcoming; but complying would impose heavy burdens and costs on SpaceX. Johnson Decl., ¶¶ 7, 9-10; *see also* Gallman Decl., ¶¶ 13–14, 17; Harper Decl., ¶¶ 10–14.

Defendants claim that the Court should disregard these harms because they are the "burdens of litigation." PI Opp. 18. But this is not ordinary litigation. It is an administrative proceeding before an unconstitutionally insulated ALJ and Board Members, where SpaceX will also be denied its right to a jury trial and be prosecuted by the same entity that will ultimately adjudicate its case. SpaceX "challenges the entire legitimacy of [the] proceedings, not simply the cost and annoyance." *Cochran*, 20 F.4th at 209–10 (disagreeing with the government that plaintiff complained only about "mere litigation expense[s]"). The additional harms SpaceX has identified merely underscore the concrete ways that this illegitimate proceeding has and will continue to injure SpaceX absent an injunction. *See* Gallman Decl., ¶¶ 17, 20 (describing burdens the NLRB

proceeding is having on SpaceX's time and resources); Harper Decl., ¶¶ 12–14. This case is unlike the cases Defendants cite, where plaintiffs were not challenging the litigation itself as illegitimate.[5]

Defendants' attempt to rebut SpaceX's demonstration of reputational harm also fails. The Fifth Circuit has held that where the harm to reputation stems from constitutionally infirm proceedings, reputational harm from those proceedings is irreparable. *See Burgess v. FDIC*, 871 F.3d 297, 304 (5th Cir. 2017) (holding that a "decision pursuant to a constitutionally infirm hearing that injured petitioner's reputation" was "sufficient to satisfy irreparable injury" (quoting *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997)). The ongoing NLRB proceedings do just that, falsely accusing SpaceX of unfair labor practices and making it more difficult for SpaceX to compete in the competitive market for talent. Gallman Decl., ¶¶ 21–23. The fact that Defendants have left SpaceX no choice but "filing this lawsuit" (PI Opp. 18) merely adds to the injury. It does not make the injury one that SpaceX inflicted on itself. The constitutional, monetary, and reputational harms that SpaceX has identified are more than enough to show irreparable harm.

**III.    The balance of harms and public interest favor a preliminary injunction.**

The final two preliminary injunction factors tilt strongly in favor of SpaceX. Contrary to Defendants' contentions, Fifth Circuit precedent is clear that the government will suffer "no harm whatsoever" by being unable to continue unconstitutional proceedings. *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (government does not suffer any harm from inability to enforce an "an unlawful (and likely unconstitutional)" regulation); *see also League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (government suffers no cognizable harm

---

[5] Contrary to Defendants' assertion (at 18), *Axon* did not reject the idea that these harms constitute irreparable injury. The Supreme Court simply held that litigation costs, standing alone, were not enough to demonstrate the harm required for jurisdiction. 598 U.S. at 192. Where, as here, those costs were coupled with the unconstitutionality of the ongoing proceeding, *Axon* demonstrates that irreparable harm exists. *Id*.

from stopping "the perpetuation of unlawful agency action"). And an injunction would not "disserve the public interest," *Louisiana v. Biden*, 55 F.4th 1017, 1022 (5th Cir. 2022), because it is not in the public interest to allow the NLRB to resort to unconstitutional proceedings.

Defendants claim that "[t]he standard burdens of administrative litigation cannot justify an injunction that would preclude the public's strong interest in enforcing the federal labor laws." PI Opp. 34 (citation omitted). But that claim ignores that SpaceX has demonstrated harm beyond burdens of administrative litigation. And it ignores that there is no governmental interest in continuing unlawful agency action. *BST Holdings*, 17 F.4th at 61.[6]

Moreover, the request before the Court is for a preliminary injunction. The Court could (but should not) eventually rule that the enforcement proceedings may continue. Defendants have pointed to no prejudice that it would suffer were that to happen. The NLRB waited over a year—November 16, 2022 until January 3, 2024—to file a complaint on charges related to June 2022 events. Dkt. No. 1, Compl. ¶¶ 47–50. If Defendants' general "enforcement" concerns were enough to outweigh SpaceX's ability to vindicate its constitutional rights, no aggrieved party could ever obtain a preliminary injunction, because the government always has this abstract interest.

Defendants also suggest that granting the injunction "would burden the already busy federal courts." PI Opp. 34. Once again, Defendants are fighting *Axon*. The Supreme Court recognized that structural constitutional claims like SpaceX's are within federal courts' particular expertise, as they are "standard questions of administrative and constitutional law, detached from

---

[6] The cases Defendants cite involve markedly different circumstances. Some involve heightened national interests in voting and national security, which are not present here. *See Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451, 459 (5th Cir. 2016) (national defense); *League of United Latin Am. Citizens v. Abbott*, 601 F. Supp. 3d 147, 184 (W.D. Tex. 2022) (voting), *appeal dismissed sub nom. Brooks v. Abbott*, 143 S. Ct. 441 (2022). Others involve government requests to stay an injunction against a law's operation. *See Tex. All. for Retired Ams. v. Hughs,* 976 F.3d 564, 569 (5th Cir. 2020).

considerations of agency policy." 598 U.S. at 194 (citation omitted). Contrary to the NLRB's contention, "agency adjudications are generally ill suited to address structural constitutional challenges." *Carr v. Saul*, 141 S. Ct. 1352, 1360 (2021). If others wish to bring valid constitutional claims against the NLRB, the public interest is served by the courts providing all appropriate relief.

Because Defendants cannot show harms that come close to outweighing SpaceX's interest in vindicating its constitutional rights, and because the public interest supports preserving the separation of powers, SpaceX satisfies the final two requirements for a preliminary injunction.

## IV.    Severability arguments cannot defeat SpaceX's right to a preliminary injunction.

As anticipated, Defendants argue that SpaceX is not entitled to a preliminary injunction on its removal-protection claims on the theory that "severing any statutory removal restrictions found to be unconstitutional would be the appropriate remedy, not enjoining the Agency's operations." PI Opp. 11. But as SpaceX showed in its opening brief, this argument conflates preliminary and permanent relief. Even if it were proper at final judgment to sever one or more unconstitutional removal protections, that does not undermine SpaceX's entitlement to a preliminary injunction now. Both the Fifth Circuit and the Supreme Court have recognized that a preliminary injunction can be appropriate to preserve the status quo until the merits of a constitutional challenge are resolved. *See Doran*, 422 U.S. at 931; *Wenner*, 123 F.3d at 326. Defendants barely touch on this argument, except for trying to dismiss *Doran* as a case where the plaintiffs showed irreparable harm. PI Opp. 14 n.79. For the reasons discussed above in Section II, SpaceX has shown that, too.

Moreover, Defendants offer no response to SpaceX's observation that a future declaratory judgment in SpaceX's favor does nothing to alleviate SpaceX's current irreparable harm. Because the Court can only grant this declaratory relief at final judgment, in the interim SpaceX will continue to be subject to the "here-and-now injury" stemming from an unconstitutional administrative proceeding. *Axon*, 598 U.S. at 191. Defendants' argument threatens "the court's

ability to render a meaningful decision on the merits." *Miss. Power*, 760 F.2d at 627.

And even if severability were relevant at this juncture, this case presents a more much difficult severability issue than those in *Free Enterprise Fund*, *Seila Law*, and *Bell*. Indeed, Defendants' own severance proposal would not fix the constitutional problems. Defendants suggest the court could solve the ALJs' removal-protection problem by "sever[ing] the second half of the sentence in § 7521(a) after 'good cause,' as to the ALJ presiding over SpaceX's case." PI Opp. 12. But that would still leave the ALJ with two layers of removal protection, because they would still be removable "by the agency in which the [ALJ] is employed [*i.e.*, the NLRB] only for good cause." 5 U.S.C. § 7521(a). All this severing would do is remove the MSPB from the decision-making process, still leaving two layers of for-cause removal protection. That is one way this case differs markedly from *Bell*. There, it was clear that severing the ALJ's removal protection would leave the ALJ subject to oversight by an officer, the Attorney General, who was removable at will. *Bell*, 2023 WL 8885128, at *5. Here, there are three layers of removal protection, and it is far from clear which one(s) Congress would have wanted a court to sacrifice.

On this question of congressional intent, SpaceX presented substantial evidence that Congress was substantially concerned about the independence of both ALJs and the Board. PI Mot. 24–25. Without directly addressing this evidence, Defendants acknowledge "that Congress's goal of ALJ and Board independence is a consideration in the severance analysis here." PI Opp. 13. But they say "[t]he fact that the NLRA does not require the use of ALJs at all suggests that Congress would prefer severance of ALJs' removal protections over nonenforcement of the NLRA." *Id.* at 14. Defendants present a false dichotomy. Another live possibility—and potentially necessary additional step—is severing the NLRB Members' removal protections. And Defendants give no reason to think that Congress would have wanted the NLRA to remain enforceable by an

agency that is wholly accountable to the President. Congress established the Board to replace a precursor, the National Labor Board, which was directly accountable to the President. *See* Michael J. Heilman, *The National Labor Relations Act at Fifty: Roots Revisited, Heart Rediscovered*, 23 Duq. L. Rev. 1059, 1069 (1985). Were the Court to sever the Board Members' removal protections, it would make the current Board much more similar in this respect to the National Labor Board that Congress specifically established the NLRB to replace. This statutory backdrop differs significantly from *Seila Law*, where there was no similar history of a prior version of the CFPB that had been replaced by the newer version being challenged. *See* 140 S. Ct. at 2210.

Ultimately, the complex severance issues in this case demonstrate that the decision on how to address them should be left to Congress. *United States v. Nat'l Treas. Emps. Union*, 513 U.S. 454, 479 (1995) (acknowledging the "obligation to avoid judicial legislation"). At a minimum, those issues should be considered after the Court has had a full opportunity for briefing on severability as part of the final remedy at the end of this case. They present no obstacle to granting preliminary relief now to maintain the status quo and preserve the Court's ability to provide a meaningful final remedy. Preliminary relief is necessary to prevent the constitutional injury SpaceX faces in having to undergo unconstitutionally structured proceedings. The Court can, and should, enter that preliminary relief here.

## CONCLUSION

For all these reasons, the Court should enter a preliminary injunction against the NLRB's administrative proceedings against SpaceX.

Dated: February 12, 2024                Respectfully submitted,

                                   By:    *s/ Catherine L. Eschbach*

**ROERIG, OLIVEIRA & FISHER, L.L.P.**    **MORGAN, LEWIS & BOCKIUS LLP**
David G. Oliveira                      Catherine L. Eschbach
10225 N. Tenth Street               Attorney-In-Charge
McAllen, TX 78504                  Texas Bar No. 24097665
doliveira@rofllp.com              Southern District of Texas Bar No. 3846447
(956) 393-6300                    1000 Louisiana Street, Suite 4000
                                   Houston, TX 77002-5006
                                   catherine.eschbach@morganlewis.com
                                   (713) 890-5719

                                   Harry I. Johnson, III (*pro hac vice*)
                                   2049 Century Park East, Suite 700
                                   Los Angeles, CA 90067-3109
                                   harry.johnson@morganlewis.com
                                   (310) 907-1000

                                   Michael E. Kenneally (*pro hac vice*)
                                   Amanda L. Salz (*pro hac vice*)
                                   1111 Pennsylvania Avenue, N.W.
                                   Washington, DC  20004-2541
                                   michael.kenneally@morganlewis.com
                                   amanda.salz@morganlewis.com
                                   (202) 739-3000

                                   *Attorneys for Plaintiff*
                                   *Space Exploration Technologies Corp.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 12, 2024, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification to all parties of record.


*<u>s/ Catherine L. Eschbach</u>*
Catherine L. Eschbach

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

SPACE EXPLORATION
TECHNOLOGIES CORP.,

      **Plaintiff,**

      v.

NATIONAL LABOR RELATIONS
BOARD, a federal administrative agency,
JENNIFER ABRUZZO, in her official
capacity as the General Counsel of the
National Labor Relations Board, LAUREN
M. McFERRAN, in her official capacity as
the Chairman of the National Labor
Relations Board, MARVIN E. KAPLAN,
GWYNNE A. WILCOX, and DAVID M.
PROUTY, in their official capacities as
Board Members of the National Labor
Relations Board, and JOHN DOE in his
official capacity as an Administrative Law
Judge of the National Labor Relations
Board,

      **Defendants.**

Civil Action No. 1:24-cv-00001

## PLAINTIFF SPACEX'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, A RULING ON ITS PRELIMINARY INJUNCTION MOTION

This Court gave timely consideration to complex issues in a fast-moving case. And as part

of those efforts, on February 15, 2024, this Court issued an order to transfer this case to the Central

District to California pursuant to 28 U.S.C. § 1406(a), based on its finding that more conduct

giving rise to this action occurred in Hawthorne, California than conduct and events occurring in

the Southern District of Texas. Dkt. No. 82. The Court concluded that the Southern District of

Texas, Brownsville Division is not a proper venue for SpaceX's constitutional claims. Because

this Court immediately initiated an electronic transfer, SpaceX had no opportunity to move for

reconsideration (or even a stay), and instead immediately petitioned the Fifth Circuit for a writ of

mandamus, *In re Space Expl. Techs., Corp.*, No. 24-40103, Dkt. No. 2 (5th Cir. Feb. 16, 2024). On March 5, 2024, a three-judge panel issued a one-sentence order denying SpaceX's mandamus petition over a lengthy dissent by Judge Elrod, which explained that the Section 1406(a) inquiry asks whether a substantial portion of the facts—not the most significant portion of the facts— giving rise to the case occurred in the plaintiff's choice of forum.  Dkt. No. 59 (5th Cir. Mar. 5, 2024).  SpaceX filed a petition for en banc rehearing, Dkt. No. 66 (5th Cir. Mar. 7, 2024).  The Fifth Circuit denied en banc rehearing, with eight judges voting in favor of en banc rehearing and eight voting against, with Judge Jones authoring a dissent.  Dkt. No. 111 (5th Cir. Apr. 17, 2024); see also Dkt. No. 111-1.

For the reasons stated in Judge Elrod's and Judge's Jones's dissents (attached as Exhibit A), SpaceX respectfully requests that this Court reconsider its decision to transfer the case under Section 1406(a).  SpaceX continues to believe that it filed this action in a lawful forum under 28 U.S. § 1391(e) and that resolution of the pending motions in this Court is the most expeditious path to halting the ongoing constitutional injury it is incurring from the unconstitutional administrative proceedings.  Because of the procedural posture of a mandamus petition, the denial of the petition does not mean the Fifth Circuit approved this Court's approach in the transfer order. On the contrary, the panel majority provided no reasoning for the denial and the en banc vote reveals that at least half the Fifth Circuit's participating judges were troubled by this Court's reasoning in the transfer order.  With the return of the case record to this Court on March 5, 2024, this Court still has jurisdiction over this case and is free to revisit its prior decision.

Alternatively, if the Court is not inclined to reconsider its decision to transfer the case, SpaceX respectfully requests that the Court grant SpaceX's motion for a preliminary injunction before retransferring the case to the Central District of California.  The administrative hearing

opened on March 5, 2024, and SpaceX is incurring ongoing constitutional injuries with each development in those proceedings.  Moreover, if the Court retransfers the case to the Central District of California before ruling on the preliminary injunction, the transferee court would likely need time to get up to speed on the issues and may also seek additional briefing.  Here, in contrast, the preliminary injunction motion is fully briefed and ripe for decision.  And retransferring the case without addressing the preliminary injunction motion would deny SpaceX the benefit of its requested preliminary injunction, as the proceedings remain ongoing and each new development adds to the constitutional injury.[1]  The propriety of venue is not a jurisdictional issue, and the Court has authority to enter a preliminary injunction regardless of whether venue in this Court is proper. *See, e.g.*, *Polymer80, Inc. v. Garland*, No. 23-cv-29, 2023 WL 3605430, at *5 (N.D. Tex. Mar. 19, 2023).  The Court should therefore resolve these important issues without delay.

## **CONCLUSION**

For the foregoing reasons, SpaceX respectfully requests that this Court reconsider its order transferring the case to the Central District of California or, in the alternative, grant SpaceX's motion for a preliminary injunction before transferring the case out of this district.

---

[1] On April 16, 2024, Administrative Law Judge Steckler issued an indefinite stay of the in-person hearing in the administrative proceeding, which was scheduled to resume on May 13, 2024. Nonetheless, other aspects of the administrative proceeding continue, including the ongoing resolution of discovery issues between the parties.  In fact, the reason for the postponement was to allow resolution of the parties' substantial discovery issues.  Each ruling on a discovery issue by an unconstitutionally insulated ALJ is a new constitutional injury which could imminently occur at any time, necessitating expeditious review of the preliminary injunction motion.

Dated: April 17, 2024                    Respectfully submitted,

                                         By:      _s/ Catherine L. Eschbach_____

                                         **MORGAN LEWIS & BOCKIUS LLP**
                                         Catherine L. Eschbach
                                         Attorney-in-Charge
                                         1000 Louisiana Street, Suite 4000
                                         Houston, TX 77002-50006
                                         catherine.eschbach@morganlewis.com
                                         (713) 890-5719

                                         Harry I. Johnson, III (*pro hac vice*)
                                         2049 Century Park East, Suite 700
                                         Los Angeles, CA 90067-3109
                                         (310) 907-1000

                                         Michael E. Kenneally (*pro hac vice*)
                                         Amanda L. Salz (*pro hac vice*)
                                         1111 Pennsylvania Avenue, N.W.
                                         Washington, DC  20004-2541
                                         michael.kenneally@morganlewis.com
                                         amanda.salz@morganlewis.com
                                         (202) 739-3000

                                         *Attorneys for Space Exploration Technologies Corp.*

4

## CERTIFICATE OF CONFERENCE

On April 17, 2024, the Fifth Circuit dissolved the administrative stay of the transfer. Because of the need to quickly move for reconsideration before this Court initiated the transfer, I hereby certify that the undersigned counsel for SpaceX placed a call to Defendants' counsel, Mr. Boehm, at about 6:20 p.m. central time to confer before filing this motion.  Mr. Boehm informed me that he would need to make additional inquiries as to the Defendants' position given it was after hours, and I informed him that in order to get this motion on file before the initiation of any re-transfer by this Court we would need to file tonight.  As of this filing, I have not yet received a response back on Defendants' position.

s/ *Catherine L. Eschbach*
Catherine L. Eschbach

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2024, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification to all parties of record.

s/ *Catherine L. Eschbach*
Catherine L. Eschbach

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

SPACE EXPLORATION
TECHNOLOGIES CORP.,

               Plaintiff,

     v.

NATIONAL LABOR RELATIONS
BOARD, a federal administrative agency,
JENNIFER ABRUZZO, in her official
capacity as the General Counsel of the
National Labor Relations Board, LAUREN
M. McFERRAN, in her official capacity as
the Chairman of the National Labor
Relations Board, MARVIN E. KAPLAN,
GWYNNE A. WILCOX, and DAVID M.
PROUTY, in their official capacities as
Board Members of the National Labor
Relations Board, and JOHN DOE in his
official capacity as an Administrative Law
Judge of the National Labor Relations
Board,

               Defendants.

Case No. 24-cv-0001

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
## RECONSIDERATION, OR IN THE ALTERNATIVE, A RULING ON ITS
## PRELIMINARY INJUNCTION MOTION

## INTRODUCTION

Plaintiff Space Exploration Technologies Corp. ("SpaceX") asks this Court to revisit arguments already rejected once by this Court, again by a panel of the Fifth Circuit, and a third time by that Circuit in denying a petition for rehearing en banc. SpaceX alternatively requests that this Court impose a preliminary injunction with broad implications for parties and nonparties, even though this Court has already determined that venue is improper. This Court's transfer order is correct and, in any event, does not warrant reconsideration. And because Plaintiff's requests would further delay justice, the Court should reject SpaceX's last-ditch attempt to obtain the benefit of its improper venue-shopping.

## ISSUES IN DISPUTE

1.  Has SpaceX met the demanding standard for the extraordinary relief of reconsideration of the Court's transfer determination, in the absence of either a manifest error of law or fact, or newly discovered evidence?

2.  Should the Court preliminarily enjoin an administrative proceeding even though this Court has determined that venue is improper?

## PROCEDURAL BACKGROUND

This case was transferred to the Central District of California pursuant to 28 U.S.C. § 1406(a), because no "substantial part of the events" giving rise to SpaceX's claims occurred in this District [Dkt. 82 at 4], within the meaning of 28 U.S.C. § 1391. After transfer occurred, SpaceX sought an emergency petition for writ of mandamus from the Fifth Circuit. In accordance with interim directions from the Fifth Circuit, this Court requested retransfer in the interests of comity to decide the mandamus petition, and the Central District of California obliged. Thereafter, a panel of the Fifth Circuit denied SpaceX's petition, with one judge

1

dissenting. Undeterred, SpaceX sought rehearing from the en banc Fifth Circuit. But once again, SpaceX's request was denied over a six-judge dissent. [Cir. ECF 111.][1] Although the Fifth Circuit had administratively stayed this Court's prior transfer order [Cir. ECF 28], that stay was removed on April 17 ([Cir. ECF 113] "IT IS ORDERED that the administrative stay of the district court's order is removed"), leaving this Court free to proceed with transfer of the instant case.

Separately, the administrative NLRB hearing SpaceX seeks to enjoin formally commenced before an administrative law judge via Zoom videoconference on March 5, 2024 for attorneys to enter appearances, but was immediately adjourned to mid-May.[2] That proceeding has now been postponed indefinitely while the parties to that proceeding and a different administrative law judge—acting as a special master—attempt to resolve disputes relating to production of documents.[3]

SpaceX now asks this Court to reconsider its transfer decision, or failing that, to enjoin the NLRB's administrative proceedings in Los Angeles prior to transferring the case to the court where venue is proper. [Dkt. 112.] While counsel for SpaceX did telephone counsel for the NLRB on the evening of April 17, 2024 regarding SpaceX's intention to seek reconsideration of the transfer order, counsel failed to mention SpaceX's alternative—and far more consequential— request that this Court preliminarily enjoin the agency proceedings prior to transfer. And perhaps sensing that it may fail to persuade this Court to take up its challenges, SpaceX is now trying its luck in another Texas district court, initiating substantially duplicative litigation in relation to a

---

[1] Two circuit judges who voted in favor of rehearing en banc did not join the dissenting opinion.
[2] Administrative Law Judges Order ("Order Postponing Hearing Dates"), Apr. 16, 2024, https://www.nlrb.gov/case/31-CA-307446.
[3] *Id.*

separate NLRB proceeding in Seattle, Washington. *See Space Expl. Techs. Corp. v. NLRB*, 24-cv-00421 (W.D. Tex. filed Apr. 19, 2024).

## ARGUMENT

### I.     This Court properly transferred this action and SpaceX presents no new facts or law supporting the extraordinary remedy of reconsideration.

SpaceX's reconsideration bid fails to meet the exacting requirements of such a request, and rests on fundamental mischaracterizations of the reasoning of this Court's transfer decision. Its straw-man attacks provide no basis for disturbing this Court's faithful interpretation and application of federal venue requirements.

"A court's reconsideration of an earlier order is an extraordinary remedy, which should be granted sparingly." *Moran v. Ceiling Fans Direct, Inc.*, No. CIV.A. H-06-0813, 2008 WL 110429, at *1 (S.D. Tex. Jan. 8, 2008). This serves the "interest of finality and conservation of judicial resources." *Adams v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus., Loc. 198*, 495 F. Supp. 3d 392, 396 (M.D. La. 2020). A motion for reconsideration "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Moran*, 2008 WL 110429, at *1. Such a motion may be appropriate to bring an intervening change in the controlling law to the Court's attention. *See Schiller v. Physicians Res. Group, Inc.*, 342 F.3d 563, 567-68 (5th Cir. 2003). But it may not be used to rehash rejected arguments or introduce new arguments. *See LeClerc v. Webb*, 419 F.3d 405, 412 n.13 (5th Cir. 2005); *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 478 (5th Cir. 2004).

Here, SpaceX asks this Court to treat the *dissenting* opinion of an appellate court as if it were controlling. [Dkt. 112 at 2.] Unsurprisingly, it cites no case premising the extraordinary remedy of reconsideration upon a dissent. Worse, SpaceX asks for the extraordinary relief of reconsideration without making specific, substantive, argumentation that meets the above

3

reconsideration criteria. Rather, it seeks to incorporate, *in toto*, arguments made elsewhere, *i.e.* "for the reasons stated in Judge Elrod's and Judge's Jones's dissents." [Dkt. 122 at 2.] This will not do—"failure to brief an argument in the district court waives that argument in that court." *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003); *see, e.g., U.S. ex rel. Wuestenhoefer v. Jefferson*, 105 F. Supp. 3d 641, 672 (N.D. Miss. 2015) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones.").

Moreover, SpaceX's reconsideration argument proceeds from a false premise. SpaceX claims that the Court's decision was "based on its finding that more conduct giving rise to this action occurred in Hawthorne, California than conduct and events occurring in the Southern District of Texas." [Dkt. 112 at 1.] This Court, of course, did no such thing.[4] Instead, it analyzed the facts SpaceX relied on to support Texas venue and found them "incidental," "insubstantial in number," "far less significant than those occurring in California," and failing to "comprise a substantial part of the events giving rise" to SpaceX's claims. [Dkt. 82 at 2-4.] This Court's prior decision speaks—as it must—in qualitative, not quantitative, terms.

Ultimately, SpaceX presents no new information or argument that this Court (and the Fifth Circuit) has not already rejected. Its request for reconsideration should accordingly be denied.

---

[4] SpaceX's mischaracterization of this Court's transfer decision is no isolated occurrence. Before the Fifth Circuit, SpaceX submitted a supplemental-authority letter in which it misused quotation marks to ascribe a "most substantial" venue standard to this Court. [Cir. ECF 106 at 2.]

**II.     Because SpaceX's alternative request that this Court peremptorily rule on its injunction motion seeks yet another bite at the appellate apple, this Court's prior transfer order should be given immediate effect.**

SpaceX bootstraps to its motion for reconsideration a request that this Court grant its pending motion for a preliminary injunction, prior to transferring this case to the Central District of California. [Dkt. 122 at 3.] This is an apparent attempt to take advantage of the Fifth Circuit's recent decision in *In re Fort Worth Chamber of Commerce*, --- F.4th  ---, No. 24-10266, 2024 WL 1483817 (5th Cir. Apr. 5, 2024), and derail this case into a procedural quagmire. There, the Fifth Circuit held that the district court had effectively denied a pending request for a preliminary injunction by failing to rule on it before transferring a case pursuant to a later-filed transfer motion, and therefore, the case could not be transferred at the Court's discretion under 28 U.S.C. § 1404(a). *Id.* at *1-2. SpaceX thus seeks to (again) delay justice in this case by ginning up an appeal so as to block timely requested transfer to the proper court. This Court should reject this gambit and leave any decision regarding preliminary injunctive relief to the court where venue is proper.

**A.   *No authority supports entry of a preliminary injunction by a court which has conclusively determined that venue is improper.***

Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." As previously argued by Defendants and as found by this Court, venue is improper in this district. [Dkt. 82 at 3-5.] Because venue is improper under § 1406, "the transferee court is the proper forum to decide whether to issue a preliminary injunction." *Bel Canto Design, Ltd. v. MSS HiFi*, 813 F. Supp. 2d 1119, 1123 (D. Minn. 2011); *accord Half Price Books v. Riepe*, No. CIV.A.3:98-CV-0585-P, 1998 WL 329383, at *7 (N.D. Tex. June 12, 1998); *see Holloway v. Montgomery Cnty.*, No. 3:21-

CV-179-K-BN, 2021 WL 3832833, at *8 (N.D. Tex. Jan. 28, 2021), *report and recommendation adopted,* No. 3:21-CV-179-K, 2021 WL 3832935 (N.D. Tex. Feb. 11, 2021) (finding, where preliminary injunction motion was pending, "the case must be dismissed or transferred" if venue is improper).[5]

Venue is not some insubstantial procedural nicety; it is a threshold prerequisite for a court to do anything other than transfer (or dismiss) a case. Courts faced with an argument that venue is improper under § 1406(a) "must resolve that issue prior to addressing the merits of any claim, including a preliminary injunction." *Proctor & Gamble Co. v. Ranir, LLC*, No. 1:17-cv-185, 2017 WL 3537197, at *4 (S.D. Ohio Aug. 17, 2017); *cf. Fintech Fund, FLP v. Horne*, 327 F. Supp. 3d 1007, 1028 (S.D. Tex. 2018), *aff'd,* 836 F. App'x 215 (5th Cir. 2020) (dismissing for improper venue despite pending preliminary injunction motion); *see also Hendricks v. Bank of Am., N.A.*, 408 F.3d 1127, 1135 (9th Cir. 2005) (court "had to consider [venue and like] defenses as 'a logical predicate to' its preliminary injunction order") (quoting *Wong v. United States*, 373 F.3d 952, 961 (9th Cir. 2004)); *Larson v. Galliher*, No. 2:06-cv-1471, 2007 WL 81930 at *1 (D. Nev. Jan. 5, 2007) (court "must first decide threshold issue" of jurisdiction and venue before reaching merits and corresponding request for injunctive relief). Indeed, the court in *Ranir* found "it is

---

[5] For the reasons already presented in opposition to Plaintiff's motion for a preliminary injunction, Plaintiff's claims of an "ongoing constitutional injury" [Dkt. 112 at 2] are unavailing. *See* Dkt. 69 at 7-8. We also take issue with SpaceX's claims that the preliminary injunction motion is "fully briefed and ripe for decision." [Dkt. 112 at 3.] Under this Court's procedures, Defendants were due a sur-reply on the preliminary injunction motion at the time this Court first transferred this case. And as previously argued [Dkt. 78 at 16, n. 84], this Court should not enter any injunction without a factfinding hearing to consider the equities. This is a jurisdictional requirement, *see* 29 U.S.C. § 107, and would be warranted in any event, given the significant implications of the relief sought for the government and the terminated SpaceX employees. Under these circumstances, SpaceX cannot show that the short time that would be required for supplemental briefing to address Ninth Circuit law following transfer would meaningfully prejudice it.

*reversible error* to address injunctive relief prior to a claim of improper venue." 2017 WL 3537197, at \*4-5 (emphasis in original); *see also U.S. Golf Ass'n v. U.S. Amateur Golf Ass'n*, 690 F. Supp. 317, 319 (D.N.J. 1988) (collecting cases in which preliminary injunctions were vacated because district courts failed to first address venue).

As previously found by this Court, venue is improper—not merely inconvenient—in this district. [Dkt. 82.] This proceeding is thus distinguishable from cases in which courts granted preliminary injunctive relief on claims that were subsequently transferred pursuant to 28 U.S.C. § 1404(a), where venue was proper in the first court but later transferred based on convenience and the interests of justice. *See, e.g., Lou v. Belzberg*, 834 F.2d 730, 733 (9th Cir. 1987); *C & A Plus, Inc. v. Pride Sols., LLC*, No. CIV-A3-02-118, 2003 WL 25278133, at \*9 (D.N.D. Feb. 7, 2003) (granting discretionary transfer in patent case despite venue being proper in original district, but granting motion for preliminary injunction).

The unpublished decision in *Polymer80, Inc. v. Garland*, No. 4:23-CV-00029-O, 2023 WL 3605430, at \*1, \*5 (N.D. Tex. Mar. 19, 2023), *notice of dismissal filed*, No. 23-10527 (N.D. Tex. Feb. 14, 2024) (cited in Dkt. 112 at 3), is not to the contrary. At most, that case stands for the proposition—itself contrary to the weight of authority—that district courts possess the bare authority to resolve a preliminary injunction motion prior to *deciding* a motion to transfer for improper venue. But that ship has sailed here—this Court *has already determined* that this case was filed in an improper venue, rendering *Polymer80* inapposite.

### B. This Court should transfer the case before deciding anything else.

Initially, SpaceX's instant motion laments that transferring this case to the proper venue now would "deny [it] the benefit of its requested preliminary injunction" because the agency proceedings it seeks to enjoin are ongoing. SpaceX's disputed premise is that it is entitled to extraordinary injunctive relief. As noted above, those agency proceedings are now indefinitely

postponed (save for resolving document-production issues). And it is unclear at best [*see* Dkt. 29 at 18-19] that this Court would decide the injunction question in a meaningfully more expeditious timeframe than the Central District of California would. Any additional briefing in the transferee court could be expedited and limited to addressing differences in controlling Ninth Circuit precedent. But more importantly, SpaceX ignores that the delays in the adjudication of its preliminary-injunction motion are largely the result of its own procedural maneuvering.

Moreover, declining to reopen the venue issue (and leaving jurisdictional and merits arguments for the proper court) avoids procedural complications SpaceX seems eager to invite. For example, if this Court were to address the merits of a motion by SpaceX for a preliminary injunction before transfer, any order granting or denying that request would be appealable to the Fifth Circuit. *See* 28 U.S.C. § 1292(a)(1); *cf. Lou*, 834 F.2d at 733 (appellate court possessed jurisdiction to review injunction where a notice of appeal was filed before the transfer was complete). But if this Court also effectuates transfer, any final orders or interlocutory appeals would be heard by the Ninth Circuit—creating the potential for conflicting orders and potentially allowing SpaceX to split its single cause of action into appeals in two separate courts. Preventing these potential outcomes serves as further reason to deny SpaceX's alternative request.

### C. General Order No. 2024-2 does not apply to the relief requested by SpaceX's motion; the February 15 transfer order should be effectuated without delay.

After this Court's February 15 transfer order, this Court adopted a new General Order directing that "an order that transfers a civil case . . .  to a district court outside the Fifth Circuit is stayed for 21 days from the date the order is entered on the docket." Gen. Or. 2024-2 (S.D. Tex. Feb. 28, 2024). Order 2024-2 does not apply to a decision on the instant motion because this Court's prior transfer order remains in effect and has never been vacated. By Order 2024-2's terms, the 21-day period expired on March 8, but transfer was stayed until April 17 by the Fifth

Circuit, when the administrative stay was removed. [Cir. ECF 28, 113.]  Accordingly, this Court

should direct the clerk to forthwith effectuate this Court's February 15 order by immediately

transmitting the record of this proceeding to the Central District of California concurrent with its

denial of reconsideration.

## CONCLUSION

Because venue here is improper and this Court has correctly determined that the interest

of justice requires this case to proceed in the Central District of California, the record of this

proceeding should be transferred forthwith to that court.

Respectfully submitted,

NATIONAL LABOR RELATIONS BOARD
*Contempt, Compliance, and*
 *Special Litigation Branch*

KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*

GRACE L. PEZZELLA
*Trial Attorney*

<u>*s/ David Boehm*</u>
DAVID P. BOEHM
*Trial Attorney*
D.C. Bar No. 1033755 – *pro hac vice*
Telephone: (202) 273-4202
Email: David.Boehm@nlrb.gov

<u>*s/ Dalford D. Owens Jr.*</u>
DALFORD D. OWENS JR.
S.D. Tex. ID No. 1132540
State Bar No. 24060907
Telephone: (202) 273-2934
Email: Dean.Owens@nlrb.gov
*Attorney-in-Charge for Defendants*

1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
Telephone: (202) 273-4202


Dated this 23d day of April, 2024.



**CERTIFICATE OF SERVICE**

I hereby certify that on April 23, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

s/ *Dalford D. Owens*
DALFORD D. OWENS

Dated this 23d day of April, 2024.

10

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., <br><br> **Plaintiff,** <br><br> v. <br><br> NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board, <br><br> **Defendants.** | Civil Action No. 1:24-cv-00001 |

**PLAINTIFF SPACEX'S REPLY IN SUPPORT OF MOTION FOR
RECONSIDERATION OR, IN THE ALTERNATIVE, A RULING ON ITS
PRELIMINARY INJUNCTION MOTION**

SpaceX respectfully requests this Court reconsider its transfer decision altogether, but if

not, it requests that this Court rule on the preliminary injunction before transfer and before **May**

**2, 2024**. Two days ago, on April 24, SpaceX received notice that a conference is scheduled before

the Administrative Law Judge ("ALJ") who is acting as the discovery special master in the NLRB

proceeding. *See* Exhibit A, April 24, 2024 Email Notice of May 2, 2024 Teleconference. On that

date, SpaceX will incur a new constitutional injury from appearing before a second

1

unconstitutionally insulated ALJ in the administrative proceeding.[1] SpaceX's motion for a preliminary injunction has been pending since January 12 (nine days after the administrative complaint was filed), and Defendants moved forward with opening the hearing and ALJ proceedings on March 5. SpaceX has been incurring ongoing harm by being subject to an unconstitutional administrative proceeding since that date and is set to incur yet another injury on May 2.

Contrary to Defendants' suggestion (Dkt. 116 at 5), SpaceX has consistently requested that this Court "issue an injunction either before or in tandem with a ruling on the venue motion." Dkt. 64 at 20; *see also* Dkts. 49, 49-1, 56. This is not a new argument. But the passage of time and continuing progress of the administrative proceeding has required SpaceX to renew its request with increased urgency. Transferring the case now, without addressing SpaceX's motion for a preliminary injunction, will almost surely add many weeks, and perhaps months, of delay before SpaceX can obtain a ruling that addresses its ongoing irreparable constitutional injuries. The Court should either grant reconsideration and promptly grant the preliminary injunction or should grant the preliminary injunction before transferring to the Central District of California.

### A. Defendants argue against reconsideration using the wrong legal standard.

Defendants erroneously rely (Dkt. 116 at 3) on several cases that discuss a demanding legal standard with no application here. For example, *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004), discusses the Rule 59(e) standard for reconsideration after judgment, noting that "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used

---

[1] Though ALJ Anzalone is acting as special master, an April 24, 2024 order from ALJ Steckler (the presiding ALJ for the hearing) confirms that ALJ Anzalone is exercising full and independent authority as an ALJ in adjudicating the parties' discovery issues. *See* Exhibit B, April 24, 2024 ALJ Order. Both ALJs are exercising executive power in the administrative proceeding and are unconstitutionally insulated from presidential control.

sparingly." The same post-judgment standard was addressed in *LeClerc v. Webb*, 419 F.3d 405, 412 n.13 (5th Cir. 2005), *Schiller v. Physicians Res. Group Inc.*, 342 F.3d 563, 566 (5th Cir. 2003); and *Moran v. Ceiling Fans Direct, Inc.*, No. CIV.A. H-06-0813, 2008 WL 110429, at *1 (S.D. Tex. Jan. 8, 2008). Here, there is no final judgment and Rule 59(e) does not apply.

Instead, the applicable standard is made clear in a case cited by Defendants: This Court may reconsider its rulings for any reason it deems sufficient. *See* Dkt. 116 at 3 (citing *Adams v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the United States & Canada, AFL-CIO, Local 198*, 495 F. Supp. 3d 392, 395 (M.D. La. 2020)). In *Adams*, the party sought reconsideration of an interlocutory summary judgment ruling, and the court relied on its "broad discretion" to reconsider its interlocutory judgment. The court further explained the "standard imposed [at the interlocutory stage] is less exacting" than Rule 59 or 60. *Id.* Before final judgment, "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Id.* (cleaned up). And in *Adams*, the court did so, granting reconsideration because it had made an error in law by not dismissing certain claims. This Court should likewise grant reconsideration here.

Defendants are wrong to suggest that SpaceX forfeited any arguments by referring in its motion to the reasoning of Judge Elrod's and Judge Jones's opinions. Those opinions voice support for arguments that SpaceX presented to this Court, using case law that SpaceX presented to this Court. *See* Dkt. 64 at 2-8. The relevant new development is that multiple Fifth Circuit judges have now endorsed those arguments and concluded that SpaceX filed this action in a lawful venue. That the Fifth Circuit declined, by a sharply divided vote, to exercise mandamus discretion to correct an erroneous transfer does mean that this Court should not do so now.

**B.      Present circumstances warrant ruling on SpaceX's preliminary injunction motion before transfer.**

Because of the time-sensitive need for a ruling on the preliminary injunction, SpaceX has consistently requested that the Court either rule on the preliminary injunction and transfer motions in tandem, or rule on the preliminary injunction motion before transfer. Dkt. 64 at 20; *see also* Dkts. 49, 49-1, 56. The need for this sequence has only grown now that the administrative proceedings have opened as of March 5, 2024, and remain ongoing. *See* Exs. A & B. While one portion of it has been postponed—the portion of the hearing with live witness testimony—that has happened only to make time for the newly assigned ALJ to resolve the parties' significant discovery disputes. Defendants downplay the scope of those discovery disputes as simple "document-production issues." Dkt. 116 at 9. That characterization is inaccurate. Indeed, the Charging Parties have filed new unfair labor practice charges against SpaceX based on SpaceX's attempts to secure discovery in the administrative proceeding, and the disputes go far beyond document production. And the Charging Parties and NLRB have issued a combined 165 subpoena requests of SpaceX, most of which are the subject of disputes that must be addressed by the ALJ prior to any document production.

But even if Defendants' characterization were accurate, it would not matter. Any act by an unconstitutionally insulated ALJ inflicts new constitutional harm, even if only addressing minor issues (and the document-production issues are far from minor). This ongoing injury is sure to continue on May 2 when the newly assigned ALJ holds a preliminary conference proceeding on the discovery issues. ALJ proceedings are open to the public, the ALJ has requested and obtained a court reporter, and thus the ALJ may issue rulings in the administrative proceeding. *See* Ex. A. To prevent that injury, SpaceX needs a preliminary injunction before then. Delay from the transfer, further court proceedings in the transferee venue, and perhaps new briefing would ensure the

4

preliminary injunction would not be resolved in time to prevent this harm.

SpaceX's has been consistently arguing for an expeditious resolution of the preliminary injunction from the inception of this suit. SpaceX filed the motion on January 12 because the administrative hearing was set to begin on March 5, 2024. *See* Dkt. 37, at 1. Even SpaceX's mandamus petition requested a ruling in a timeframe that permitted this Court to rule on the preliminary injunction motion before March 5. *See* No. 24-40103 (5th Cir.), Dkt. 1 at 1. SpaceX's petition for expedited rehearing en banc again requested the need for prompt relief given the hearing had opened and each new development would incur a new injury. *See* No. 24-40103 (5th Cir.), Dkt. 71 at 3-4. Meanwhile, as SpaceX previously explained to this Court, Defendants had total control to stay the administrative proceedings before the March 5 hearing date to create sufficient time for the judiciary to decide the preliminary injunction request. Even as recently as April 18, 2024, the Defendants joined the Charging Parties in their effort to request the ALJ expedite resolving the discovery matters and reconsider its decision to indefinitely postpone the May 13 hearing date, even knowing this preliminary injunction request is pending. Having chosen to not allow the judiciary sufficient time to hear the pending injunction request, they cannot credibly suggest that there is no need for this Court to immediately enjoin a proceeding that is now **already open and ongoing**. Nor can they deny that transferring the case without first addressing the preliminary injunction would have the effect of denying SpaceX's preliminary injunction in these special circumstances.[2]

---

[2] The motion has been fully briefed since February 12, 2024, when the parties respectively filed replies to the transfer motion and preliminary injunction motion, as shown by this Court's ruling on the transfer motion without waiting for a surreply. Defendants never suggested the need for a hearing under 29 U.S.C. § 107 of the Norris-LaGuardia Act in opposing the preliminary injunction, *see* Dkt. 69, perhaps because that statutory provision is obviously inapplicable. It regulates injunctions against strikes, picketing, and boycotts, "express[ing] a basic policy against the injunction of activities of labor unions." *Chi. & N. W. Ry. Co. v. United Transp. Union*, 402 U.S.

The reasoning of *Polymer80, Inc. v. Garland*, No. 23-cv-29, 2023 WL 3605430, at *5 (N.D. Tex. Mar. 19, 2023) applies in full. Venue here is not a jurisdictional issue, and SpaceX's alternative request for relief is no different than deciding to transfer but also resolve a preliminary injunction in the same order. Until this Court initiates the transfer and the record is both received and docketed in the transferee forum, this Court is the only forum which SpaceX has in which to make its preliminary injunction request.

As for the cases Defendants cite (at 6) in arguing it would be somehow improper to address the preliminary injunction motion before transfer here, all involve questions addressing whether dismissal for improper venue was warranted—and say nothing about a case like here where defendants have affirmatively argued that the interests of justice necessitate transfer rather than dismissal. *See Proctor & Gamble Co. v. Ranir, LLC*, No. 1:17-CV-185, 2017 WL 3537197, at *5 (S.D. Ohio Aug. 17, 2017) (granting motion to dismiss for lack of venue and denying preliminary injunction motion as moot); *Hendricks v. Bank of Am., N.A.*, 408 F.3d 1127, 1136 (9th Cir. 2005) (reviewing on appeal of a preliminary injunction whether the claim should have been dismissed for improper venue because it went to the district court's authority to issue the injunction)[3]; *Larson v. Galliher*, No. 2:06 CV 1471 RCJ GWF, 2007 WL 81930, at *4 (D. Nev. Jan. 5, 2007) (defendant moved to dismiss based on improper venue); *U.S. Golf Ass'n v. U.S. Amateur Golf Ass'n*, 690 F. Supp. 317, 319 (D.N.J. 1988) (seeking dismissal for venue and discussing cases involving dismissal for improper venue). *Fintech Fund, FLP v. Horne*, 327 F. Supp. 3d 1007, 1027 (S.D. Tex. 2018), is even less help to Defendants. The court there determined that venue was proper, but

---

570, 581-82 (1971) (citation omitted). There is no labor union here, and the statute does not purport to regulate injunctions against unconstitutionally structured proceedings by the NLRB. *See* 29 U.S.C. § 113 (defining the Norris-LaGuardia Act's scope).

[3] *Wong v. United States*, 373 F.3d 952 (9th Cir. 2004), does not even involve venue but instead whether immunity in a *Bivens* case must first be addressed as a logical predicate. *Id.* at 961.

dismissed on forum non conveniens grounds. *Id.* at 1026-28. Of course, if a case is dismissed, the court should not grant a preliminary injunction motion.

But these cases do not hold that when a court determines that transfer is warranted, it is somehow precluded from promptly addressing other pressing matters before transferring the case—much less that it is reversible error to do so. Defendants even acknowledge that there are cases where courts have properly issued preliminary injunctions before transfer. Dkt. 116, at 7. And here, the equities require first addressing the preliminary injunction motion, particularly when Defendants concede that improper venue does not undermine this Court's jurisdiction. *See* Dkt. 54 at 2.

## **CONCLUSION**

For the foregoing reasons, SpaceX respectfully requests that this Court reconsider its order transferring the case to the Central District of California or, in the alternative, grant SpaceX's motion for a preliminary injunction before transferring the case out of this District and no later than **May 2, 2024.**

Dated: April 26, 2024                 Respectfully submitted,

By:      *s/ Catherine L. Eschbach*

**MORGAN LEWIS & BOCKIUS LLP**
Catherine L. Eschbach
Attorney-in-Charge
1000 Louisiana Street, Suite 4000
Houston, TX 77002-50006
catherine.eschbach@morganlewis.com
(713) 890-5719

Harry I. Johnson, III (*pro hac vice*)
2049 Century Park East, Suite 700
Los Angeles, CA 90067-3109
(310) 907-1000

Michael E. Kenneally (*pro hac vice*)
Amanda L. Salz (*pro hac vice*)
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004-2541
michael.kenneally@morganlewis.com
amanda.salz@morganlewis.com
(202) 739-3000

*Attorneys for Space Exploration Technologies Corp.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2024, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification to all parties of record.

s/ *Catherine L. Eschbach*
Catherine L. Eschbach

# Exhibit A

| | |
|---|---|
| **From:** | Lee, Vanise J. <Vanise.Lee@nlrb.gov> |
| **Sent:** | Wednesday, April 24, 2024 5:30 PM |
| **To:** | lburgess@burgess-laborlaw.com; Ta, Lynn; Van Horn, Julia; Dagdagan, Marissa; Harper, Matthew A.; Johnson, III, Harry I.; Ring, John F.; Emery, Lauren M.; Moll, Stefanie R.; ashaver@lchb.com |
| **Cc:** | DiCrocco, Brian |
| **Subject:** | Re: Special Master's teleconference 5/2 at 12 p.m. PDT in Space Exploration Tech. Corp., 31-CA-307446, et al. |
| **Importance:** | High |

[EXTERNAL EMAIL]

> **CAUTION:** This email and any attachments may contain Controlled Unclassified Information (CUI). National Archives and Records Administration (NARA) regulations at 32 CFR Part 2002 apply to all executive branch agencies that designate or handle information that meets the standards for CUI.

Good afternoon, Counsel,
Judge Anzalone as Special Master will conduct the preliminary teleconference, Thursday, May 2, 2024 at 12 p.m., Pacific.  The Region will secure a Court Reporter for the teleconference proceedings. You will receive an Outlook Calendar event to accept with the teleconference link/information.
Thank you.
*Vanise J. Lee, Administrative Officer*
*NLRB Division of Judges*
*1301 Clay Street, Ste., 1550 South*
*Oakland, California*
*Direct – 628.221.8826*
*"Knowledge will forever govern ignorance: And a people who mean to be their own Governors, must arm themselves with the power which knowledge gives." – James Madison.*

# Exhibit B

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**DIVISION OF JUDGES**

| | |
|---|---|
| Space Exploration Technologies Corp. | Cases  31-CA-307446 |
| | 31-CA-307532 |
| and | 31-CA-307539 |
| | 31-CA-307546 |
| | 31-CA-307551 |
| | 31-CA-307555 |
| Anne Shaver | |
| and | Case    31-CA-307514 |
| Tom Moline, an Individual | |
| and | |
| Paige Hollan-Thielen, an Individual | Case    31-CA-307525 |

**ALJ ORDER DENYING CHARGING PARTIES'**
**MOTION FOR RECONSIDERATION OF ORDER POSTPONING HEARING DATES**

1. On April 10, 2024, I issued an Order requesting that the Chief Administrative Law Judge appoint a special master to deal with the multitude of subpoena issues.
2. On April 11, 2024, Chief Administrative Law Judge Giannasi issued an Order appointing Judge Mara-Louise Anzalone as Special Master.
3. On April 16, 2024, I issued an Order Postponing Hearing Dates.
4. On April 18, 2024, Charging Parties filed their Motion for Reconsideration of Order Postponing Hearing Dates.
5. On April 22, 2024, Respondent filed its Opposition to Charging Parties' Motion for Reconsideration of Order Postponing Hearing Dates.

After careful review, I DENY Charging Parties' Motion for Reconsideration of Order Postponing Hearing Dates. Although Charging Party maintains that some document production should take place today, as originally scheduled, many subpoena matters are before the Special Master. As such any dates for production are within the purview of the Special Master, not the presiding Administrative Law Judge, I will not usurp the Special Master's authority here. Further, as written in the Order Requesting a Special Master, the issues to be resolved affect the judicial economy and efficiency to proceed with the hearing. Once these issues are resolved, the plan is to proceed as expeditiously as possible.

Dated, April 24, 2024, Oakland, California.

_Sharon Levinson Steckler_
_____
Sharon Levinson Steckler
Administrative Law Judge
National Labor Relations Board

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

<table>
<tr><td>
SPACE EXPLORATION<br>
TECHNOLOGIES CORP.,<br><br>
        Plaintiff,<br>
   v.<br><br>
NATIONAL LABOR RELATIONS<br>
BOARD, a federal administrative agency,<br>
JENNIFER ABRUZZO, in her official<br>
capacity as the General Counsel of the<br>
National Labor Relations Board, LAUREN<br>
M. McFERRAN, in her official capacity as<br>
the Chairman of the National Labor<br>
Relations Board, MARVIN E. KAPLAN,<br>
GWYNNE A. WILCOX, and DAVID M.<br>
PROUTY, in their official capacities as<br>
Board Members of the National Labor<br>
Relations Board, and JOHN DOE in his<br>
official capacity as an Administrative Law<br>
Judge of the National Labor Relations<br>
Board,<br><br>
        Defendants.
</td><td>
Case No. 24-cv-0001
</td></tr>
</table>

**DEFENDANTS' SURREPLY TO PLAINTIFF'S MOTION FOR RECONSIDERATION, OR IN THE ALTERNATIVE, A RULING ON ITS PRELIMINARY INJUNCTION MOTION**

Plaintiff Space Exploration Technologies Corp. ("SpaceX") persists in its demand to have

an improper forum summarily adjudicate important rights of parties and nonparties—and now,

SpaceX says in its reply [Dkt. 116] that it wants the Court to honor an arbitrary decisional

deadline that SpaceX has selected. This latest maneuver comes after weeks of unsuccessful

wrangling before this Court and the Fifth Circuit by SpaceX to maintain its action here even

though no substantial part of the events giving rise to its claims occurred in this district. At long

last, SpaceX must accept the decision of this Court that this case—including the question of preliminary relief—be decided in the Central District of California. Because SpaceX presents no grounds for this Court to either reconsider its transfer decision or hurriedly decide consequential issues that should be left to the proper court, SpaceX's motion should be denied.

### A.   Reconsideration is not warranted.

SpaceX attacks the standard for reconsideration cited by Defendants as inapplicable because some of the cases cited involved reconsideration of final judgments under Federal Rule of Civil Procedure 59 or 60. [Dkt. 117 at 2-3.] According to SpaceX, a lesser standard applies for reconsideration of interlocutory orders. *Id.* But, in exercising their discretion, district courts in this circuit are regularly informed by practice under those Federal Rules when deciding motions for reconsideration of an interlocutory order. *See Adams v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus., Loc. 198*, 495 F. Supp. 3d 392, 395 (M.D. La. 2020) (explaining that while the Federal Rules of Civil Procedure do not formally recognize motions for reconsideration of nonfinal orders, "courts customarily consider such motions under Rule 60(b) or Rule 59(e)"); *Chauvin v. State Farm Mut. Auto. Ins. Co.*, No. CIV.A. 06-7145 R(5), 2007 WL 4365387, at *1 (E.D. La. Dec. 11, 2007) (using Rule 59 and 60 caselaw to evaluate propriety of reconsideration).

The bottom line is that "rulings should only be reconsidered where the moving party has presented substantial reasons for reconsideration" because "litigants are expected to present their strongest case when the matter is first considered [and a] motion to reconsider based on recycled arguments only serves to waste the resources of the court." *Louisiana v. Sprint Commc'ns Co.*, 899 F. Supp. 282, 284 (M.D. La. 1995) (citation omitted). This is in accord with other circuits' understanding of the appropriate standard. *See, e.g., Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (reconsideration of interlocutory order should be denied "unless the moving

party can point to controlling decisions or data that the court overlooked"). Here, the premise for reconsideration is the notion that this Court did not mean what it said when it found that SpaceX's bases for venue were insubstantial, as opposed to simply less significant than events occurring elsewhere. While this misconception swayed some dissenting appellate judges, it is without merit.

### B. This court may manage its own docket notwithstanding SpaceX's arbitrary scheduling demands.

SpaceX again suggests that this Court's transfer of the case to the proper venue "would have the effect of denying SpaceX's preliminary injunction in these special circumstances." [Dkt. 117, at 5.][1] No evidence supports this position. At the time of this filing, SpaceX is scheduled to appear in "a preliminary teleconference" on May 2 before a special master in the NLRB proceeding. [Dkt 117-1.] SpaceX would have the Court believe that this development is worthy of immediate invocation of its equitable powers. But precedents both longstanding and recent undermine this assertion. Mere participation in a proceeding—even one that a challenger asserts is constitutionally infirm—is not irreparable harm. *See Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."); *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980); *see also Meta Platforms, Inc. v. FTC*, No. 1:23-cv-03562-RDM, 2024 WL 1121424, at *9 (D.D.C. Mar. 15, 2024) (rejecting similar challenge to ongoing agency proceeding and explaining that "not every such 'here-and-now injury' rises to the level of gravity required to

---

[1] SpaceX erroneously claims that Defendants have not "suggested the need for a hearing under 29 U.S.C. § 107 of the Norris-LaGuardia Act." *Id.* In their Reply in Support of Transfer, Defendants contested SpaceX's claim that no testimony would be needed by specifically citing to 29 U.S.C. §§ 107 and 113, which require testimony "in open court" to support an injunction in matters involving or growing out of labor disputes. [Dkt. 78, at 16.].

3

satisfy the irreparable injury prong of the preliminary injunction standard"). This has been

recognized since the earliest cases under the National Labor Relations Act (NLRA):

> No doubt an investigation may, as the bill asserts, stir up some feeling among employees
> and cause some inconvenience by taking witnesses from their work, but these things are
> incident to every sort of trial and are part of the social burden of living under
> government. They are not the irreparable damage which equity will interfere to prevent;
> and a suit in equity would not wholly obviate them.

*Bradley Lumber Co. of Ark. v. NLRB*, 84 F.2d 97, 100 (5th Cir. 1936); *accord Elliott v. El Paso*

*Elec. Co.*, 88 F.2d 505, 506 (5th Cir. 1937).

Thus, SpaceX's depiction of May 2 as some point of no return by which this Court must

rule on the preliminary injunction motion is arbitrary at best. Attending the May 2 teleconference

requires no more from SpaceX than the conference calls it attended with Administrative Law

Judge Steckler earlier this year on February 12 and 23. SpaceX is not expected to produce any

evidence before or during the May 2 call and, of course, no attorneys will be required to travel to

appear in the teleconference. Because the agency proceedings that are taking place at this time

require very little from Plaintiff, SpaceX cannot point to any harm it faces in waiting for the

Central District of California to rule on the preliminary injunction motion. Indeed, the unfair-

labor-practice hearing which SpaceX filed this lawsuit to enjoin is now postponed indefinitely.

As a result, any delay from deferring resolution of SpaceX's preliminary injunction motion to the

Central District of California would be marginal.

SpaceX also fails to confront its own role in the increasingly prolonged resolution of its

preliminary injunction motion, which began with SpaceX's opposition to Defendants' Motion to

Expedite Briefing on the Motion to Transfer Venue. [Dkt. 49.] This Court's decision to transfer

the case to California was decided correctly well over two months ago. [Dkt. 82.] SpaceX

repeatedly pursued extraordinary relief, deploying unavailing procedural tactics before the Fifth

Circuit, after this Court granted Defendants' transfer motion. "The self-inflicted nature of any

harm suffered" by SpaceX weighs heavily against it here. *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 806 (3d Cir. 1998).[2]

> ### C.  Because this Court has determined that venue is improper under Section 1406, the transferee court should decide SpaceX's preliminary injunction motion.

In again asking this Court to resolve the pending preliminary injunction motion before transferring this case to the Central District of California [Dkt. 117 at 1], SpaceX seemingly ignores that this Court has already determined that venue is improper in this district. [Dkt. 82 at 3-5.] Where, as here, venue is improper, the Court "shall dismiss, or if it be in the interest of justice, transfer" the case to a proper venue. 28 U.S.C. § 1406(a).

As Defendants have repeatedly argued [Dkt. 54 at 1; Dkt. 116 at 6-7], a finding of improper venue severely limits a court's ability to act: its options are to dismiss or transfer the case. *See Baldwin Hardware Corp. v. Harden Indus., Inc.*, 663 F. Supp. 82, 85-86 (S.D.N.Y. 1987) (finding venue improper, granting defendant's cross-motion to transfer, and declining to reach merits of injunction motion in deference to transferee court), *overruled in part on other grounds*, 918 F.2d 1039 (2d Cir. 1990). There is no third option to nonetheless grant extraordinary injunctive relief at a party's behest.

The clear majority rule is that in "measuring an application for a preliminary injunction, the Court must first determine if a plaintiff has adequately set forth . . . venue when it is challenged." *U.S. Golf Ass'n v. U.S. Amateur Golf Ass'n*, 690 F. Supp. 317, 319 (D.N.J. 1988);[3]

---

[2] In particular, SpaceX's lament that it currently lacks access to a California docket in which it can file papers [Dkt. 117 at 6] ignores the inconvenient fact that it had access to that very forum after the case was initially transferred, and insisted instead on pursuing mandamus relief which, although unsuccessful, caused this case to be retransferred in the interim.

[3] SpaceX argues [Dkt. 117 at 6-7] that when a defendant challenges venue, the propriety of considering the plaintiff's request for injunctive relief turns on whether the defendant seeks dismissal rather than transfer. Notably, SpaceX cites no case as standing for this proposition.

*cf. Glazier Group, Inc. v. Mandalay Corp.*, No. H-06-2752, 2007 WL 2021762, at *1, n.1 (S.D. Tex. Jul. 11, 2007) (transferring case under § 1406 and "not resolv[ing]" the preliminary injunction motion "[b]ecause the case is transferred"). This Court has already found that SpaceX failed to meet its burden to demonstrate that venue is proper in this district. [Dkt. 82.] And the Fifth Circuit has removed the administrative stay of this Court's transfer order.[4] All that is left for this Court to do is deny the instant motion for reconsideration, defer any ruling on SpaceX's preliminary injunction motion to the transferee court, and effectuate transfer of this case to the Central District of California, where venue is proper.

### D.  This Court should not derail this case into procedural chaos.

SpaceX now explicitly signals [Dkt. 177 at 5] its intent to bring this case within the ambit of *In re Fort Worth Chamber of Commerce*, 98 F.4th 265 (5th Cir. 2024), a case where a transfer was undone because it occurred after a notice of appeal had been filed from the district court's effective denial of a preliminary injunction motion by the date the plaintiffs to that case had requested. As the NLRB stated in its opposition to the instant motion [Dkt. 116 at 7-8], this Court should put an end to SpaceX's latest gambit and immediately give effect to its prior decision transferring this case, leaving the preliminary injunction motion for the transferee court to

---

SpaceX then tries to distinguish the authorities cited in Defendants' opposition on this ground. But *United States Golf Ass'n*, which Defendants previously raised [Dkt. 116 at 7], undercuts SpaceX's novel theory. There, the defendant moved to dismiss the case or transfer it for improper venue. The court determined that venue was improper and granted the defendant's motion to transfer without considering the merits of the pending preliminary injunction motion. 690 F. Supp. at 319, 322. In any event, a court does not somehow gain the ability to review the merits of a case when venue is improper simply because the defendant moved for transfer rather than dismissal; a finding that venue is improper bars a court from reaching the merits of other pending motions regardless of the case's posture. *See, e.g., Baldwin Hardware*, 663 F. Supp. at 86 (granting motion to transfer and referring injunction motion to transferee court).

[4] Furthermore, although it was not necessary for this Court to wait for mandate to issue in SpaceX's mandamus proceeding before effectuating its transfer decision, Defendants note that mandate formally issued on April 25. [5th Cir. Dkt. 116.]

6

resolve. Accordingly, the Court should explicitly instruct appropriate staff to immediately transmit the record of this case concurrent with the Court's denial of reconsideration. This would best ensure that a decision on the preliminary injunction motion (and any appeals of that decision) are timely considered by the proper courts.

## CONCLUSION

This Court should not reward SpaceX's repeated attempts to obtain still more appellate review of interlocutory matters in a case that notionally requires expedited treatment. Because there is one proper court to adjudicate the rights of the parties in the public interest here, this Court should deny reconsideration and forthwith effectuate transfer of this action to the Central District of California.

Respectfully submitted,

NATIONAL LABOR RELATIONS BOARD
*Contempt, Compliance, and
  Special Litigation Branch*

KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*

MATHEUS TEIXEIRA
*Trial Attorney*

GRACE L. PEZZELLA
*Trial Attorney*

*s/ David Boehm*
DAVID P. BOEHM
*Trial Attorney*
D.C. Bar No. 1033755 – *pro hac vice*
Telephone: (202) 273-4202
Email: David.Boehm@nlrb.gov

*s/ Dalford D. Owens Jr.*
DALFORD D. OWENS JR.
S.D. Tex. ID No. 1132540
State Bar No. 24060907
Telephone: (202) 273-2934
Email: Dean.Owens@nlrb.gov
*Attorney-in-Charge for Defendants*

1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
Telephone: (202) 273-4202


Dated this 29th day of April, 2024.

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

|  |  |
|---|---|
| **SPACE EXPLORATION TECHNOLOGIES CORP.,** | |
| **Plaintiff,** | Civil Action No. 1:24-cv-00001 |
| **v.** | |
| **NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,** | |
| **Defendants.** | |

**PLAINTIFF SPACEX'S NOTICE OF APPEAL**

Please take notice that Plaintiff Space Exploration Technologies Corp. ("SpaceX") hereby appeals to the United States Court of Appeals for the Fifth Circuit from this Court's effective denial of the Motion for Preliminary Injunction (Dkt. No. 37) that Plaintiff filed on January 12, 2024.

The Fifth Circuit has appellate jurisdiction over interlocutory orders of this Court that deny injunctions. 28 U.S.C. § 1292(a)(1). It is well settled that an action or inaction that has the practical effect of denying preliminary injunctive relief is immediately appealable under this provision. *See, e.g.*, *In re Fort Worth Chamber of Commerce*, 98 F.4th 265, 270 (5th Cir. 2024). This rule applies even when the district court does not "explicitly deny a preliminary injunction" if the inaction on the motion "has the practical effect of doing so and might cause irreparable harm absent immediate

1

appeal." *Clarke v. CFTC*, 74 F.4th 627, 635 (5th Cir. 2023) (cleaned up). "It's generally understood that a motion for preliminary injunctive relief generally 'must be granted *promptly* to be effective,' so if a district court does not timely rule on a preliminary-injunction motion, it can effectively deny the motion." *Fort Worth Chamber*, 98 F.4th at 271 (citation omitted).

The context of the case determines whether there has been an effective denial of the preliminary injunction. *See id.* Here, the context demonstrates there was an effective denial of SpaceX's request for preliminary injunctive relief. The National Labor Relations Board ("NLRB") authorized a consolidated administrative complaint on January 3, 2024, which set a hearing date just two short months later, on March 5. SpaceX promptly filed this action in the Southern District of Texas, Brownsville Division, on January 4, *see* Dkt. No. 1; and then, after the NLRB defendants refused to stay the administrative hearing to allow adjudication of the constitutionality of those proceedings in court, SpaceX moved for a preliminary injunction on January 12. Dkt. No. 37 & Dkt. No. 37-2. SpaceX requested relief on the preliminary injunction motion expeditiously because of the March 5 hearing date. Defendants, however, moved to transfer this case to the Central District of California, and briefing on the two issues proceeded simultaneously. SpaceX urged that this Court decide the preliminary injunction motion before the transfer motion because of the need for expeditious resolution of the preliminary injunction motion and because transferring the case would likely result in significant delay of the resolution of that motion—emphasizing that Defendants entirely controlled the timing of the hearing and the need for relief. Dkt. Nos. 49, 49-1, 56, & 64 at 20.

On February 15, the Court granted Defendants' motion to transfer under 28 U.S.C. § 1406, finding that venue was improper in this District under 28 U.S.C. § 1391(e). SpaceX sought an emergency writ of mandamus from the Fifth Circuit, requesting relief in time for the preliminary

injunction to be resolved before the March 5 hearing. *In re SpaceX*, No. 24-40103, Dkt. No. 2 (5th Cir. Feb. 16, 2024). The Fifth Circuit administratively stayed the transfer, but at Defendants' urging, the Central District of California docketed the case despite the Fifth Circuit's stay. No. 24-40103, Dkt. No. 110-1. On February 26, the Fifth Circuit directed this Court to "immediately" request the Central District of California return the case since a docket had been opened for procedural clarity and comity. No. 24-40103, Dkt. No. 46. On March 1, this Court requested the case back. Upon the return of the record to this Court, the Fifth Circuit issued a one-line order on March 5, denying the writ petition over Judge Elrod's dissent. No. 24-40103, Dkt. No. 59. Procedural confusion apparently delayed a ruling on the mandamus petition. *See* No. 24-40103, Dkt. No. 46.

That same day, March 5, the administrative hearing opened. A judge of the Fifth Circuit withheld the mandate, No. 24-40103, Dkt. No. 66, keeping the administrative stay of the transfer in effect. SpaceX then quickly filed an expedited petition for en banc rehearing on March 7, again noting the need for prompt relief given SpaceX's irreparable constitutional injury from the already opened hearing and each new development in that proceeding. No. 24-40103, Dkt. No. 71. An evenly divided court denied the en banc petition by an 8-to-8 vote, with Judge Jones authoring a dissent, on April 17. No. 24-40103, Dkt. No. 111. The administrative stay was lifted the same day.

Because this Court still had jurisdiction over this action, SpaceX immediately asked this Court to reconsider its transfer order based on the additional input from judges of the Fifth Circuit. Dkt. No. 112. In the alternative, SpaceX requested that this Court resolve the preliminary injunction motion before transfer given the already delayed adjudication of the preliminary injunction motion and the continued need for expeditious resolution of the motion to stop ongoing constitutional harm given the administrative proceeding has been ongoing since on March 5. *Id.*

3

On April 26, SpaceX filed its reply in support of the motion for reconsideration informing the Court that a ruling on the preliminary injunction motion was needed to halt the administrative proceedings given a conference was scheduled before an ALJ for May 2, during which rulings might issue as the ALJ had requested a court reporter for the conference. Dkt. No. 117. That conference was scheduled on April 24—a week after SpaceX had filed the initial motion for reconsideration—and was a new development accelerating the need for the preliminary injunction. *Id.* at 1-2. SpaceX's reply explained that, as of May 2, SpaceX would be certain to incur a new constitutional injury and thus there was an accelerated need for a preliminary injunction ruling before that date given the mere act of an unconstitutional ALJ presiding over a hearing (as well as the possibility that an unconstitutionally insulated ALJ would be issuing significant discovery rulings) would be a new irreparable constitutional injury. *Id.* at 1-2, 4-5.

As of 10 p.m. Central Time on April 30, this Court had not yet ruled on the motion for reconsideration or the alternative request for a ruling on the preliminary injunction motion in time to halt the ALJ hearing on May 2 at 12 p.m. Pacific Time. This amounts to an effective denial of the preliminary injunction motion. The ongoing harm that SpaceX is incurring from the administrative proceeding (including, at present, fights over discovery before a second ALJ) necessitates an immediate resolution of the preliminary injunction motion.

For all these reasons, the Court's inaction on SpaceX's motion for a preliminary injunction and motion for reconsideration or, in the alternative, a ruling on their preliminary injunction motion before transfer has effectively denied SpaceX's request for meaningful preliminary injunctive relief. SpaceX gives this notice of appeal.[1]

---

[1] To obtain timely appellate review before the May 2 ALJ hearing when it will incur new irreparable harm, SpaceX did not believe it could wait any longer before seeking relief from the Fifth Circuit. The Fifth Circuit has a 2 p.m. deadline for filings seeking emergency relief. So, to

Dated: April 30, 2024                 Respectfully submitted,

                                      By:      _s/ Catherine L. Eschbach_____

                                      **MORGAN LEWIS & BOCKIUS LLP**
                                      Catherine L. Eschbach
                                      Attorney-in-Charge
                                      1000 Louisiana Street, Suite 4000
                                      Houston, TX 77002-50006
                                      catherine.eschbach@morganlewis.com
                                      (713) 890-5719

                                      Harry I. Johnson, III (*pro hac vice*)
                                      2049 Century Park East, Suite 700
                                      Los Angeles, CA 90067-3109
                                      (310) 907-1000

                                      Michael E. Kenneally (*pro hac vice*)
                                      Amanda L. Salz (*pro hac vice*)
                                      1111 Pennsylvania Avenue, N.W.
                                      Washington, DC  20004-2541
                                      michael.kenneally@morganlewis.com
                                      amanda.salz@morganlewis.com
                                      (202) 739-3000

                                      *Attorneys for Space Exploration Technologies Corp.*

---

ensure the Fifth Circuit's clerk's office can open a docket on May 1 in time for SpaceX to file a motion for emergency relief, SpaceX is filing this Notice after the close of business on April 30. The filing of this notice vests jurisdiction over this action with the Court of Appeals for the Fifth Circuit. *See Fort Worth Chamber*, 98 F.4th at 273.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 30, 2024, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification to all parties of record.

<u>s/ *Catherine L. Eschbach*</u>
Catherine L. Eschbach

# *United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

February 16, 2024

Mr. Michael E. Kenneally
Morgan, Lewis & Bockius, L.L.P.
1111 Pennsylvania Avenue, N.W.
Suite 411
Washington, DC 20004

          No. 24-40103    In re: Space Exploration Technologies
                          USDC No. 1:24-CV-1

Dear Mr. Kenneally,

We have docketed the petition for writ of mandamus, and ask you to
use the case number above in future inquiries.

Filings in this court are governed strictly by the Federal Rules
of **Appellate** Procedure.  We cannot accept motions submitted under
the Federal Rules of **Civil** Procedure.  We can address only those
documents the court directs you to file, or proper motions filed
in support of the appeal.  See Fed. R. App. P. and 5th Cir. R. 27
for guidance. We will not acknowledge or act upon documents not
authorized by these rules.

All counsel who desire to appear in this case must electronically
file a "Form for Appearance of Counsel" naming all parties
represented within 14 days from this date, see Fed. R. App. P.
12(b) and 5th Cir. R. 12.  This form is available on our website
www.ca5.uscourts.gov.  Failure to electronically file this form
will result in removing your name from our docket.

ATTENTION ATTORNEYS: Attorneys are required to be a member of the
Fifth Circuit Bar and to register for Electronic Case Filing.  The
"Application and Oath for Admission" form can be printed or
downloaded from the Fifth Circuit's website, www.ca5.uscourts.gov.
Information on Electronic Case Filing is available at
www.ca5.uscourts.gov/cmecf/.

ATTENTION ATTORNEYS:  Direct access to the electronic record on
appeal (EROA) for pending appeals will be enabled by the U S
District Court on a per case basis.  Counsel can expect to receive
notice once access to the EROA is available.  Counsel must be
approved for electronic filing and must be listed in the case as
attorney of record before access will be authorized.  Instructions
for accessing and downloading the EROA can be found on our website
at                       http://www.ca5.uscourts.gov/docs/default-
source/forms/instructions-for-electronic-record-download-

feature-of-cm.   Additionally, a link to the instructions will be included in the notice you receive from the district court.

Sealed documents, except for the presentence investigation report in criminal appeals, will not be included in the EROA.  Access to sealed documents will continue to be provided by the district court only upon the filing and granting of a motion to view same in this court.

We recommend that you visit the Fifth Circuit's website, www.ca5.uscourts.gov and review material that will assist you during the appeal process.  We especially call to your attention the Practitioner's Guide and the 5th Circuit Appeal Flow Chart, located in the Forms, Fees, and Guides tab.

ATTENTION:  If you are filing Pro Se (without a lawyer) you can request to receive correspondence from the court and other parties by email and can also request to file pleadings through the court's electronic filing systems.  Details explaining how you can request this are available on the Fifth Circuit website at http://www.ca5.uscourts.gov/docs/default-source/forms/pro-se-filer-instructions. This is not available for any pro se serving in confinement.

**Special guidance regarding filing certain documents:**

General Order No. 2021-1, dated January 15, 2021, requires parties to file in paper highly sensitive documents (HSD) that would ordinarily be filed under seal in CM/ECF.  This includes documents likely to be of interest to the intelligence service of a foreign government and whose use or disclosure by a hostile foreign government would likely cause significant harm to the United States or its interests.  Before uploading any matter as a sealed filing, ensure it has not been designated as HSD by a district court and does not qualify as HSD under General Order No. 2021-1.

A party seeking to designate a document as highly sensitive in the first instance or to change its designation as HSD must do so by motion. Parties are required to contact the Clerk's office for guidance before filing such motions.

**<u>Sealing Documents on Appeal:</u>**  Our court has a strong presumption of public access to our court's records, and the court scrutinizes any request by a party to seal pleadings, record excerpts, or other documents on our court docket.  Counsel moving to seal matters must explain in particularity the necessity for sealing in our court.  Counsel do not satisfy this burden by simply stating that the originating court sealed the matter, as the circumstances that justified sealing in the originating court may have changed or may not apply in an appellate proceeding.  It is the obligation of counsel to justify a request to file under seal, just as it is their obligation to notify the court whenever sealing is no longer necessary.  An unopposed motion to seal does not obviate a counsel's obligation to justify the motion to seal.

Sincerely,

LYLE W. CAYCE, Clerk

By: _____
Dantrell L. Johnson, Deputy Clerk
504-310-7689

cc:
    Mr. David P. Boehm
    Mr. Benjamin Storey Lyles
    Mr. Nathan Ochsner

Provided below is the court's official caption.  Please review the
parties  listed  and  advise  the  court  immediately  of  any
discrepancies.  If you are required to file an appearance form, a
complete list of the parties should be listed on the form exactly
as they are listed on the caption.

———————

Case No. 24-40103

———————

In re:  Space Exploration Technologies, Corporation,

             Petitioner

# No. 24-_____

## In the United States Court of Appeals
### FOR THE FIFTH CIRCUIT

IN RE: SPACE EXPLORATION TECHNOLOGIES CORP.

On Petition for Writ of Mandamus from an Order Granting Defendants' Motion to Transfer Venue, Entered February 15, 2024 from United States District Court, Southern District of Texas, Brownsville Division, No. 24-cv-1 (Olvera, J.)

## EMERGENCY PETITION FOR WRIT OF MANDAMUS

HARRY I. JOHNSON, III*
MORGAN, LEWIS & BOCKIUS LLP
2049 Century Park East, Suite 700
Los Angeles, CA  90067
(310) 255-9005

CATHERINE L. ESCHBACH
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX  77002
(713) 890-5719

MICHAEL E. KENNEALLY
AMANDA L. SALZ
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 739-3000

*Application for admission forthcoming

*Counsel for Space Exploration Technologies Corp.*

## CERTIFICATE OF INTERESTED PERSONS

### No. 24-_____, In re: Space Exploration Technologies Corp.

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1.     Space Exploration Technologies Corp. ("SpaceX"), Plaintiff and Petitioner.  SpaceX has no parent corporation and no publicly held corporation owns 10% or more of its stock.

2.     National Labor Relations Board, a federal administrative agency, Defendant and Respondent

3.     Jennifer Abruzzo, in her official capacity as the General Counsel of the National Labor Relations Board, Defendant and Respondent

4.     Lauren M. McFerran, in her official capacity as Chairman of the National Labor Relations Board, Defendant and Respondent

5.     Marvin E. Kaplan, in his official capacity as Board Member of the National Labor Relations Board, Defendant and Respondent

i

6. Gwynne A. Wilcox, in her official capacity as Board Member of the National Labor Relations Board, Defendant and Respondent

7. David M. Prouty, in his official capacity as Board member of the National Labor Relations Board, Defendant and Respondent

8. Tom Moline, *Amicus Curiae* in the underlying proceedings

9. Deborah Lawrence, *Amicus Curiae* in the underlying proceedings

10. Scott Beck, *Amicus Curiae* in the underlying proceedings

11. Paige Holland-Thielen, *Amicus Curiae* in the underlying proceedings

12. Pacific Legal Foundation, *Amicus Curiae* in the underlying proceedings

13. Rolando Olvera, in his official capacity as United States District Judge of United States District Court for the Southern District of Texas, Brownsville Division

14. John Doe, in his official capacity as an Administrative Law Judge of the National Labor Relations Board, Defendant[1]

---

[1] Judge Sharon L. Steckler was recently named as the ALJ in the underlying matter but had not been officially substituted by the time of the ruling giving rise to this petition.

15.    United States of America, appropriates funds for and assumes debts of Defendants and Respondents

The undersigned counsel for SpaceX, separately lists the following persons as attorneys of record:

16.    Harry I. Johnson, III, Attorney for SpaceX

17.    Michael E. Kenneally, Attorney for SpaceX

18.    Catherine L. Eschbach, Attorney for SpaceX

19.    Amanda L. Salz, Attorney for SpaceX

20.    David G. Oliveira, Attorney for SpaceX

21.    Alamdar S. Hamdani, Attorney for Defendants

22.    Daniel David Hu, Attorney for Defendants

23.    Benjamin S. Lyles, Attorney for Defendants

24.    Kevin P. Flanagan, Attorney for Defendants

25.    David P. Boehm, Attorney for Defendants

26.    Daniel Brasil Becker, Attorney for Defendants

27.    Grace L. Pezzella, Attorney for Defendants

28.    Laurie Burgess, Attorney for *Amicus Curiae*

29.    Anne Shaver, Attorney for *Amicus Curiae*

30.    Nimish Desai, Attorney for *Amicus Curiae*

31.    Joshua M. Robbins, Attorney for *Amicus Curiae*

32.    Oliver J. Dunford, Attorney for *Amicus Curiae*

Dated:  February 16, 2024          s/ Michael E. Kenneally
                                   MICHAEL E. KENNEALLY

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS .........................................i

TABLE OF AUTHORITIES..............................................................vii

STATEMENT OF RELIEF SOUGHT ......................................................1

ISSUE PRESENTED ................................................................................1

INTRODUCTION...................................................................................1

FACTS NECESSARY TO UNDERSTAND THE ISSUE PRESENTED.........................................................................................7

REASONS FOR GRANTING THE WRIT ............................................11

I.    SpaceX has no other adequate means of relief. ...........................11

II.   SpaceX has shown a writ is appropriate under the circumstances. ..............................................................................14

III.   SpaceX has a clear and indisputable right to the writ..................16

    A.    The district court applied the wrong legal standard in finding venue improper.............................................17

          1.    The district court applied the wrong "most substantial" venue standard in determining that venue was not proper in the Southern District of Texas. ........................................................17

          2.    The district court committed clear legal error in holding that in-venue events giving rise to SpaceX's claims are insubstantial. .............................21

    B.    Transfer to the Central District of California would not be proper under Section 1404(a) either. ...............................31

# TABLE OF CONTENTS
(continued)

**Page**

CONCLUSION ....................................................................... 35

CERTIFICATE OF SERVICE.................................................. 37

CERTIFICATE OF COMPLIANCE........................................ 39

ATTACHMENT .................................................................... 40

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Axon Enter., Inc. v. FTC,*
    598 U.S. 175 (2023).............................................................................13

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.,*
    2023 WL 2975164 (N.D. Tex. Apr. 17, 2023)................................19, 22

*Carteret Sav. Bank, F.A. v. Shushan,*
    919 F.2d 225 (3d Cir. 1990) ..............................................................12

*Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry,*
    494 U.S. 558 (1990)..........................................................................27

*Cheney v. U.S. Dist. Court,*
    542 U.S. 367 (2004)....................................................................11, 13

*Def. Distributed v. Bruck,*
    30 F.4th 414 (5th Cir. 2022) ..................................................... *passim*

*Elrod v. Burns,*
    427 U.S. 347 (1976)..........................................................................13

*FC Inv. Grp. LC v. Lichtenstein,*
    441 F. Supp. 2d 3 (D.D.C. 2006) .......................................................19

*First of Mich. Corp. v. Bramlet,*
    141 F.3d 260 (6th Cir. 1998)..............................................................18

*Hawbecker v. Hall,*
    88 F. Supp. 3d 723 (W.D. Tex. 2015) ......................................18, 19, 22

*In re Horseshoe Entm't,*
    337 F.3d 429 (5th Cir. 2003)..............................................................33

*In re Stingray IP Sols., LLC,*
    56 F.4th 1379 (Fed. Cir. 2023)...........................................................12

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008)...................................................... *passim*

*Jarkesy v. SEC*,
   34 F.4th 446 (5th Cir. 2022) ..................................................... 3, 15, 16

*Long v. Grafton Exec. Search, LLC*,
   263 F. Supp. 2d 1085 (N.D. Tex. 2003)................................................ 24

*Mitrano v. Hawes*,
   377 F.3d 402 (4th Cir. 2004)............................................................ 19

*NLRB v. Jones & Laughlin Steel Corp.*,
   301 U.S. 1 (1937)........................................................................ 27

*Old Rep. Ins. Co. v. Admiral Ins. Co.*,
   2016 WL 10788990 (S.D. Tex. Aug. 8, 2016)...................................... 18

*Ray v. Lynass*,
   2021 WL 8443684 (W.D. Tex. Nov. 9, 2021).......................... 19, 22, 26

*Safety Nat'l Cas. Corp. v. U.S. Dep't of Treas.*,
   2007 WL 7238943 (S.D. Tex. Aug. 20, 2007)............................... 19, 26

*Space Exploration Techs. Corp. v. Bell*,
   No. 1:23-cv-00137 (S.D. Tex. 2023)................................................. 34

*Texas v. United States*,
   95 F. Supp. 3d 965 (N.D. Tex. 2015)............................................... 7, 22

*Uffner v. La Reunion Francaise, SA*,
   244 F.3d 38 (1st Cir. 2001) ......................................................... 19, 28

*Umphress v. Hall*,
   479 F. Supp. 3d 344 (N.D. Tex. 2020).......................................... 19, 22

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*WestRock Servs., Inc.*,
  366 N.L.R.B. No. 157 (Aug. 6, 2018) .................................................. 16

*Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*,
  982 F. Supp. 2d 714 (W.D. Tex. 2013) ......................................... 18, 26

**STATUTES**

5 U.S.C.
  § 1202 ................................................................................................. 15
  § 7521 ................................................................................................. 15

15 U.S.C. § 78d ...................................................................................... 15

28 U.S.C.
  § 1391 ..................................................................................... *passim*
  § 1404 ......................................................................................... 12, 31
  § 1406 ............................................................................. 1, 12, 31, 35

29 U.S.C.
  § 153 ................................................................................................... 15
  § 160 ..................................................................................................... 3

**OTHER AUTHORITIES**

14D CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. § 3806 (4th ed. 2023) .................................................................................... 5, 18

16 CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. § 3935.4 (3d ed.) ... 12

17 JAMES WILLIAM MOORE ET AL., MOORE'S FEDERAL PRACTICE § 110.04 (3d ed. 2023) ..................................................................................... 5

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Musk shuttles SpaceX out of Delaware amid plans to construct a $100 million compound in Texas region he wants to rename Starbase*, FORTUNE (Feb. 14, 2024), https://fortune.com/2024/02/14/musk-shuttles-spacex-out-of-delaware-amid-plans-to-construct-a-100-million-compound-in-texas-region-he-wants-to-rename-starbase/ .... 34

Space Exploration Technologies Corp. Certificate of Conversion (Feb. 14, 2024), https://sosdirectws.sos.state.tx.us/PDFonDemand/RetrievePDF.aspx?document_number=1332565570002&session_code=2bM5wUarPDdFdd1HNfKsQgf018PAgzAR2LTkIeGxdz WuaI1&element=3 .............................................................................. 8

## STATEMENT OF RELIEF SOUGHT

Petitioner Space Exploration Technologies Corp. ("SpaceX") seeks an emergency writ of mandamus ordering the district court to immediately request this case back from the Central District of California so the district court can timely rule on the preliminary injunction motion before the March 5, 2024 start of the unconstitutionally structured NLRB hearing that SpaceX seeks to enjoin through this action.

## ISSUE PRESENTED

Whether the district court applied an erroneous legal standard in determining that venue was improper in the Southern District of Texas under 28 U.S.C. § 1391(e)(1) and in transferring the case to the Central District of California under 28 U.S.C. § 1406(a)?

## INTRODUCTION

SpaceX petitions for emergency mandamus relief ordering the district court to request this case back from the Central District of California, where the district court erroneously transferred this matter. Time is of the essence: SpaceX seeks preliminary injunctive relief before the commencement of an unconstitutionally structured National Labor Relations Board ("NLRB") administrative hearing before an Administrative Law Judge ("ALJ") that is currently scheduled to start on March 5, 2024.

1

Because the district court effected the transfer at the same time that it granted Defendants'[2] transfer motion, SpaceX had no opportunity to ask the district court for a stay, and a quick mandamus ruling is necessary to avoid any further procedural complications.

This case challenges the constitutionality of the NLRB's structure, including the administrative hearing scheduled to start March 5, 2024. Through those proceedings, the NLRB seeks to regulate SpaceX's operations companywide, including at two SpaceX facilities in the Southern District of Texas (and two facilities in the Western District of Texas). And through equally unconstitutional proceedings, the NLRB regulates employers nationwide.

SpaceX moved for a preliminary injunction on the grounds that the administrative proceeding violates the Constitution in at least four respects, and SpaceX showed a clear entitlement to a preliminary injunction. Most pressing, given the imminent start of the ALJ hearing, is

---

[2] The Real Parties-in-Interest are Defendants NLRB, Jennifer Abruzzo in her official capacity as the General Counsel of the NLRB; Lauren M. McFerran in her official capacity as the Chairman of the NLRB; Marvin E. Kaplan, Gwynne E. Wilcox, and David M. Prouty, in their official capacities as Board Members of the NLRB; and John Doe, in his official capacity as an ALJ of the NLRB. Judge Sharon L. Steckler was recently identified as the ALJ assigned to SpaceX's case.

SpaceX's first claim: under *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023), NLRB ALJs are unconstitutionally insulated from presidential control under Article II.[3]  In *Jarkesy*, this Court held that ALJs of the Securities and Exchange Commission ("SEC") are unconstitutionally insulated from presidential control.  The same removal protections apply to NLRB ALJs, and the NLRB itself has already ruled that NLRB ALJs are inferior officers like SEC ALJs in the relevant respect.  Defendants plainly lose under this Court's decision in *Jarkesy*.  So they sought transfer out of this Circuit, with the admitted purpose of preventing SpaceX from "obtain[ing] the advantage of that case's holdings."  Dkt. 29 at 12 (Mot. to Transfer).

Allowing a federal agency to dodge unfavorable precedent is bad enough.  But the district court's erroneous transfer decision also jeopardizes SpaceX's hopes of a prompt resolution of its preliminary injunction

---

[3]  SpaceX also contends that NLRB Board Members' are unconstitutionally insulated from presidential control under Article II; that the NLRB's administrative adjudication of private rights and legal relief, such as compensatory damages, requires a jury trial in an Article III court under the Seventh Amendment; and that the Board Members' powers under 29 U.S.C. § 160(j) violate Due Process by having the Board Members exercise both prosecutorial and adjudicative functions in the same proceeding.

3

motion and avoidance of the impending constitutional injury.  The ALJ hearing is set to start in just two and a half weeks.  And now a new court will need to get up to speed on constitutional issues that all parties agree are complex.  This Court should quickly order mandamus relief to return this case to the Southern District of Texas so the district court can expeditiously rule on the preliminary injunction motion before the ALJ hearing begins.

SpaceX satisfies all the criteria for mandamus relief on the erroneous transfer order.  This Circuit has squarely held that the criteria for mandamus relief are satisfied when a case is erroneously transferred or the district court applies the wrong legal standard in transferring the case.

Here, the district court erroneously transferred the case and applied the wrong legal standard under 28 U.S.C. § 1391(e)(1).  That provision requires SpaceX to establish only that a substantial part of events occurred in the Southern District of Texas—not that the *most substantial* events occurred there.  SpaceX established that by showing, among other things, that the NLRB's challenged administrative proceedings have expressed an objective of regulating SpaceX's operations at two facilities in

the Southern District of Texas and are already affecting operations at those facilities.

Defendants do not contest these facts. They do not deny that the NLRB will adjudicate whether SpaceX has engaged in unfair labor practices on a company-wide basis. Nor could they. The NLRB's own administrative complaint alleges an unfair labor practice partly occurred in the Southern District of Texas when SpaceX's Texas-based President and COO sent an allegedly unlawful email to "all employees," including those at the two SpaceX facilities in the Southern District of Texas. The NLRB's complaint also undisputedly seeks remedies that would make demands at SpaceX's facilities in the Southern District of Texas.

But the district court held that none of this mattered because "the Central District of California is the venue in which the most events giving rise to this case occurred." Dkt. 82 at 4-5 (Order). It is hornbook law, however, that transactional venue under Section 1391 is not limited to the venue in which the *most substantial* events occurred. *See* 14D CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. § 3806 n.10 (4th ed. 2023); 17 JAMES WILLIAM MOORE ET AL., MOORE'S FEDERAL PRACTICE § 110.04[2] & n.4 (3d ed. 2023). By the plain terms of the statute, all that

is necessary is that "*a* substantial part of the events or omissions giving rise to the claim occurred" in the relevant district.  28 U.S.C. § 1391(b)(2), (e)(1) (emphasis added).

Here, the NLRB decided to pursue charges and remedies extending beyond a single SpaceX facility in California.  The NLRB proceedings do not concern a purely local dispute.  The administrative complaint implicates all SpaceX facility in Texas (and nationwide) and explicitly requests an order requiring every SpaceX manager and supervisor to undergo labor-law reeducation by an NLRB agent.  The district court erred in discounting those companywide remedies and allegations that an unfair labor practice took place in the Southern District of Texas when SpaceX's Texas-based President and COO sent a purportedly unlawful email to employees at the Starbase and Houston facilities.  The NLRB could have commenced an administrative proceeding based on this alleged unfair labor practice alone.  And there would have been no question in that case that venue for SpaceX's lawsuit is proper.  The fact that the NLRB brought additional charges does not diminish the substantiality of these Texas-based events to SpaceX's claims that the NLRB proceedings violate the Constitution.  Had the district court not applied the wrong legal

standard—focusing on the "most" substantial events rather than "a" sub-
stantial part of the events—it would have recognized that Defendants'
attempts to regulate SpaceX's employment practices in the Southern Dis-
trict of Texas satisfies the test for transactional venue. *See Texas v.*
*United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015) (holding venue
was proper where a challenged administrative rule would regulate em-
ployers' operations in the district).

SpaceX properly brought suit in the Southern District of Texas and
this case should be heard here. Defendants are not entitled to escape to
a venue they perceive as more favorable and thwart prompt resolution of
SpaceX's request for preliminary relief to halt a fast-approaching uncon-
stitutional administrative proceeding. Mandamus relief is warranted.

## FACTS NECESSARY TO UNDERSTAND
## THE ISSUE PRESENTED

SpaceX operates a space launch business and a global satellite-
based internet service known as Starlink. Dkt. 37-1 ¶¶ 5-8 (Gallman
Decl.). It employs over 14,000 people in facilities around the country,
including in its Starbase facility in Boca Chica, Texas where it is devel-
oping, manufacturing, and launching Starship, the most powerful rocket
ever built; its rocket development facility in McGregor, Texas; its human

spaceflight mission operations and integration facility in Houston, Texas;
its Starlink manufacturing facility in Bastrop, Texas; and its facilities in
Florida, Washington State, California, and Washington, D.C. *Id.* ¶ 9.
Although SpaceX was incorporated in Delaware when it filed this law-
suit, Dkt. 1 ¶ 35 (Compl.), SpaceX reincorporated in Texas on February
14, 2024.[4]

On June 15, 2022, a small group of SpaceX employees sent an open
letter (the "Open Letter") to SpaceX employees across all of SpaceX's lo-
cations, in many cases flooding multiple channels of communication, and
demanding that SpaceX take certain actions addressing perceived short-
comings and soliciting employees to fill out a hyperlinked survey to indi-
cate support for the Open Letter's demands and provide feedback. *Id.*
¶¶ 43–44. The Open Letter overwhelmed many of SpaceX's communica-
tion channels and caused significant disruption to SpaceX operations
around the country, including at Starbase and the other Texas facilities.
The Open Letter was a blatant and gross violation of company policies.

---

[4]  *See* Space Exploration Technologies Corp. Certificate of Conversion
    (Feb. 14, 2024), https://sosdirectws.sos.state.tx.us/PDFonDemand/
    RetrievePDF.aspx?document_number=1332565570002&session_
    code=2bM5wUarPDdFdd1HNfKsQgf018PAgzAR2LTkIeGxdzWuaI1
    &element=3.

*Id.* ¶¶ 43–46.  SpaceX did not discharge employees who indicated support for the letter, but discharged a few employees involved with the mass-distribution of it in violation of company policy.  *Id.* ¶ 46.

In November 2022, several discharged former employees (the "Charging Parties") filed NLRB charges alleging that SpaceX committed unfair labor practices (the "Charges").  *Id.* ¶ 47.  SpaceX submitted to the NLRB a position statement refuting the Charging Parties' allegations, along with supporting evidence.  *Id.* ¶ 48.  The position statement and evidence spanned 700 pages, and its preparation was a burdensome effort.

On December 14, 2023, the investigating NLRB Region informed SpaceX that it had made determinations on the Charges and had authorized an administrative complaint against SpaceX on nearly every single charge, breaking with established legal precedent to avoid narrowing the issues at all.  The NLRB, in its eagerness to subject SpaceX to its burdensome hearing process, seemed to ignore even basic information provided by SpaceX, such as the supervisory status of one charging party (exempting that charging party from the NLRA's protections) and clear evidence that another charging party was actually terminated long after

the others for a well-documented history of substandard performance. *Id.*
¶ 48. On January 3, 2024, the Regional Director for Region 31 issued an
order consolidating the administrative cases, with a consolidated admin-
istrative complaint and notice that an ALJ hearing would occur just two
months later, on March 5, 2024. *Id.* ¶ 49.

The next day, SpaceX filed this suit in the Southern District of
Texas, Brownsville Division, seeking preliminary and permanent injunc-
tive relief and declaratory relief, based on four distinct constitutional
problems with the NLRB proceedings. SpaceX has requested and contin-
ues to request that the NLRB agree to stay the agency proceedings to
give the courts time to adjudicate these issues, but the NLRB and its
prosecutors—despite waiting more than a year to file their complaint—
have refused these requests. Dkt. 37-2 ¶¶ 4–8 (Eschbach Decl.). SpaceX
was forced to file a motion for preliminary injunction on January 12 (Dkt.
37), which Defendants opposed on February 2 (Dkt. 69). SpaceX filed its
preliminary injunction reply on February 12 (Dkt. 79), and the motion is
ripe for decision.

Meanwhile, Defendants moved on January 11 to transfer the case to the Central District of California.  Dkt. 29.  On February 15, the district court granted Defendants' motion, ruling that venue was improper in the Southern District of Texas.  Dkt. 82.  The transfer was effected immediately after the order was entered.

## REASONS FOR GRANTING THE WRIT

While SpaceX recognizes that a writ of mandamus is an extraordinary remedy, the writ is nonetheless warranted if the petitioner satisfies three conditions.  First, the petitioner must show that there are "no other adequate means to attain the relief he desires." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004).  Second, the court "must be satisfied that the writ is appropriate under the circumstances." *Id.* at 381.  And third, the petitioner must show a "clear and indisputable right to the writ." *Id.*

SpaceX satisfies all three conditions, and writ relief should issue immediately.

## I.    SpaceX has no other adequate means of relief.

It is well established that mandamus is the appropriate vehicle to obtain appellate relief from an erroneous transfer decision.  *See Def. Distributed v. Bruck*, 30 F.4th 414, 426 (5th Cir. 2022) (mandamus is the

appropriate vehicle for review "whether the district courts granted or denied transfer"); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008) (en banc).[5]

As this Court explained in *Defense Distributed*, the circuit court that entertains appeals from the transferee court (here, the Ninth Circuit) "cannot, under normal appellate standards, exercise appellate review over . . . transfer orders." 30 F.4th at 426. If a petitioner were forced to wait until *after* receiving an adverse final judgment in the transferee court, the petitioner "would not have an adequate remedy . . . because the petitioner would not be able to show that it would have won the case had

---

[5] Mandamus is the appropriate vehicle for reviewing Section 1404 and Section 1406 transfers alike. *See* 16 CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. § 3935.4 (3d ed.) (analyzing the "relatively uncontroversial use of mandamus to control decisions that go beyond the limits of transfer power or that rely on wrong legal criteria" in the context of Section 1404 and Section 1406 transfers); *see, e.g.*, *In re Stingray IP Sols., LLC*, 56 F.4th 1379, 1383 (Fed. Cir. 2023) (stating that mandamus can be "available for rulings on motions under 28 U.S.C. § 1406(a)" when "important to proper judicial administration, including in connection with venue-related issues"); *Carteret Sav. Bank, F.A. v. Shushan*, 919 F.2d 225, 231 (3d Cir. 1990) (holding that, "regardless of the scope of section 1406(a) the district court committed a clear error of law when it transferred the case over Carteret's objection and we further conclude that we should exercise our discretion to grant the writ of mandamus to direct the district court to vacate its order for transfer").

it been tried in [the original] venue." *Volkswagen*, 545 F.3d at 310 (citation and alterations omitted). Even if one could make that showing, it would be futile: the harm would "already have been done by the time the case is tried and appealed, and the prejudice suffered cannot be put back in the bottle." *Id.*

Here, the harm is increased by the delay that transfer may cause in the adjudication of SpaceX's request for preliminary injunctive relief. As SpaceX has detailed in its preliminary injunction papers, it is already experiencing and will continue to experience irreparable harm from an administrative proceeding that violates the Constitution four times over. *See, e.g.*, *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023) (explaining that "having to appear in proceedings before an unconstitutionally insulated ALJ . . . is a here-and-now injury." (citation and quotation marks omitted)); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (holding that the deprivation of a constitutional right, "for even minimal periods of time, unquestionably constitutes irreparable injury"). If this Court does not issue mandamus relief, SpaceX will have no "adequate means to attain the relief [it] desires." *Cheney*, 542 U.S. at 380.

**II.   SpaceX has shown a writ is appropriate under the circumstances.**

Mandamus is "especially appropriate" when, as here, "the issues implicated have importance beyond the immediate case." *Def. Distributed*, 30 F.4th at 426.  Here, those important issues include the erroneous legal standard that the district court applied in granting transfer.  *See Volkswagen*, 545 F.3d at 319 ("[V]enue transfer decisions are rarely reviewed, the district courts have developed their own tests, and they have applied these tests with too little regard for consistency of outcome.").  But the important issues also include SpaceX's underlying constitutional claims.  *See Def. Distributed*, 30 F.4th at 426 (holding that "the abridgment of the Plaintiffs' [constitutional] rights" and "tactics suggesting the abusive manipulation of federal court procedures in order to delay or altogether avoid meaningful merits consideration of Plaintiffs' claims" were "issues that implicate not only the parties' interests but those of the judicial system itself").

The constitutional issues SpaceX raises extend well beyond this case.  SpaceX challenges the structural integrity of the administrative proceedings the NLRB uses nationwide:  the removal protections shield-

ing both the NLRB's ALJs and its Board Members from presidential oversight, its failure to provide a jury trial in a case involving private rights and claims for legal relief, and the Board Members' exercises of prosecutorial and adjudicative authority in the same proceeding. These issues are important across countless NLRB adjudications.

Another relevant consideration is the NLRB's open desire to avoid Fifth Circuit precedent on these constitutional issues. The agency sees the writing on the wall: under Fifth Circuit precedent, it is sure to lose on at least one claim because the NLRB's ALJs' removal protections are indistinguishable from the SEC ALJs' removal protections, which this Court held unconstitutional in *Jarkesy*, 34 F.4th 446. NLRB ALJs are protected from without-cause removal by the same statute as the SEC ALJs. 5 U.S.C. § 7521(a). Merit Systems Protection Board members are protected from without-cause removal by the same statute in both contexts. 5 U.S.C. § 1202(d). And NLRB Members have removal protections just like the SEC Commissioners'. *See* 29 U.S.C. § 153(a); 15 U.S.C. § 78d(a). Defendants have tried to argue that NLRB ALJs and SEC ALJs are not sufficiently similar kinds of officers. But the Board's own precedent decisively resolves this point against the agency by conceding that

15

NLRB ALJs are inferior officers under Article II in the same way that SEC ALJs are. *WestRock Servs., Inc.*, 366 N.L.R.B. No. 157, slip op. at 1 (Aug. 6, 2018) ("Although the Court's holding in *Lucia* was specific to SEC administrative law judges, its reasoning supports a determination that Board judges, like SEC judges, are inferior officers, and as such we agree that they must be appointed pursuant to the Appointments Clause."); *see also Jarkesy*, 34 F.4th at 464 ("The Supreme Court decided in *Lucia* that SEC ALJs are 'inferior officers' under the Appointments Clause because they have substantial authority within SEC enforcement actions."). Defendants admit they want to deny SpaceX the ability "to leverage the Fifth Circuit's 2022 decision in *Jarkesy*" and have "the advantage of that case's holdings." Dkt. 78 (Defs.' Transfer Reply); *accord* Dkt. 29 at 12.

Transfer to the Ninth Circuit is the NLRB's escape hatch for avoiding this Court's precedent. The Court should not allow the NLRB to secure an erroneous transfer "to delay or altogether avoid meaningful merits consideration of Plaintiffs' claims." *Def. Distributed*, 30 F.4th at 426.

## III.  SpaceX has a clear and indisputable right to the writ.

The district court's application of the wrong legal standard for improper venue justifies writ relief. Applying the wrong legal standard

shows a "clear and indisputable right to the writ or a clear abuse of discretion by the district court." *Def. Distributed*, 30 F.4th at 427.

**A.    The district court applied the wrong legal standard in finding venue improper.**

SpaceX alleged that venue was proper in the Southern District of Texas because "a substantial part of the events or omissions giving rise to the claim occurred."   28 U.S.C. § 1391(e)(1)(B); Compl. ¶ 34.   In its Order, the district court incorrectly applied a "most substantial" venue standard that fixated on the labor-law controversy between SpaceX and the Charging Parties rather than the constitutional controversy between SpaceX and Defendants.   Under the correct legal standards, a substantial part of the events giving rise to *this* litigation occurred within the Southern District of Texas.

**1.    The district court applied the wrong "most substantial" venue standard in determining that venue was not proper in the Southern District of Texas.**

The district court applied the wrong legal standard when it concluded that the effects of the administrative proceeding "have far more relevance to [SpaceX's] Hawthorne facility" and that "the Central District of California is the venue in which the most events giving rise to this case

17

occurred." Dkt. 82 at 4–5. As courts throughout this Circuit and else-where have observed, the fact that the "most relevant events took place elsewhere" does not render the plaintiff's chosen venue improper. *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 722 (W.D. Tex. 2013). The standard for transactional venue is not a "best venue" standard. *Old Rep. Ins. Co. v. Admiral Ins. Co.*, 2016 WL 10788990, at *4 (S.D. Tex. Aug. 8, 2016) (quotation omitted).

Indeed, it is widely recognized that the 1990 amendments to Sec-tion 1391 broadened the transactional venue test to establish that venue "may be proper in multiple locations." *Hawbecker v. Hall*, 88 F. Supp. 3d 723, 731 (W.D. Tex. 2015) (citing 14D WRIGHT ET AL., *supra*, § 3806 n.10). A district court therefore applies "an incorrect, obsolete standard" when it confines venue to the location of "the most substantial event giving rise to the complaint." *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 262–64 (6th Cir. 1998) (citations and quotation marks omitted)); *accord* MOORE ET AL., *supra*, § 110.04[2] ("It is no longer necessary to find 'the' district where the most activity occurred, but rather any district in which a sub-stantial part of the case arose.").

In determining what counts as "a substantial part of the events . . . giving rise to the claim," courts "look not to a single triggering event prompting the action, but to the entire sequence of events underlying the claim." *Safety Nat'l Cas. Corp. v. U.S. Dep't of Treas.*, 2007 WL 7238943, at *3 (S.D. Tex. Aug. 20, 2007) (citing *Uffner v. La Reunion Francaise, SA*, 244 F.3d 38 (1st Cir. 2001)); *accord FC Inv. Grp. LC v. Lichtenstein*, 441 F. Supp. 2d 3, 11 (D.D.C. 2006); *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004). As a result, the transactional-venue test is met where the plaintiff is "present in the district or division in some real capacity and burdened" in that location. *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 2023 WL 2975164, at *3 (N.D. Tex. Apr. 17, 2023); *see also, e.g.*, *Ray v. Lynass*, 2021 WL 8443684, at *6 (W.D. Tex. Nov. 9, 2021) ("Courts may now consider the location of the effects of the alleged conduct, which can include a consideration of a plaintiff's activities."); *Umphress v. Hall*, 479 F. Supp. 3d 344, 352 (N.D. Tex. 2020) (same); *Hawbecker*, 88 F. Supp. 3d at 731 ("[T]he Court may consider . . . the venue of where the harm was felt to determine the location of 'a substantial part of the events[.]' ").

In reciting the applicable legal standard, the district court correctly noted that it "need not determine the 'best' venue." Dkt. 82 at 2. But

that is precisely what it did. It classified the "principal events giving rise to this action" as the Charging Parties' drafting the Open Letter and the commencement of the NLRB proceeding in California, stating that the "nexus of facts is heavily focused in the Central District of California." *Id.* at 3. It dismissed the NLRB's efforts to establish an unfair labor practice and require remedies in SpaceX's facilities in the Southern District of Texas because "these effects would be expected to have far more relevance to the Hawthorne facility, where most of the employees were fired and where the proceeding is being held." *Id.* at 4. And it stated that this "case derived directly from the administrative proceeding which itself derived directly from [SpaceX]'s response to an open letter, which reached the Southern District of Texas not directly but incidentally as one of six total SpaceX facilities." *Id.*

But the question under Section 1391's transactional venue standard is not whether events in Texas are comparatively more important than the events in California. SpaceX needed to show only that events in the Southern District of Texas were substantial. By comparing the

20

events occurring in Texas and California, the district court wrongly applied a comparative, "most substantial" events standard instead of the statutory "substantial part of the events" standard.

> **2.    The district court committed clear legal error in holding that in-venue events giving rise to SpaceX's claims are insubstantial.**

Defendants do not deny that through the administrative proceeding they are seeking to regulate SpaceX's operations and policies at the two facilities, Starbase and Houston, located in the Southern District of Texas.  This is not administrative action confined to California employees and their conduct at SpaceX's Hawthorne, California facility.  It is an administrative proceeding that alleges that SpaceX violated the NLRA at all its facilities and that aims to impose remedies that would alter SpaceX's operations at four facilities in this Circuit as well as its facilities elsewhere.

SpaceX satisfied the correctly articulated transactional venue standard by showing that the challenged NLRB proceedings have interfered with its operations in the Southern District of Texas.  SpaceX is "present in the district or division in some real capacity and burdened"

in the Southern District of Texas by Defendants' challenged conduct. *Career Colls.*, 2023 WL 2975164, at *3; *see also Ray*, 2021 WL 8443684, at *6; *Umphress*, 479 F. Supp. 3d at 352; *Hawbecker*, 88 F. Supp. 3d at 731. Where a challenged action by an administrative agency burdens an entity with a real presence in the district, including an entity with employees located in the district, venue is proper to challenge that agency action. *See Career Colls.*, 2023 WL 2975164, at *3; *Texas*, 95 F. Supp. 3d at 973 ("Because Plaintiff Texas and its agencies are employers in Wichita Falls, a substantial part of the events or omissions giving rise to Plaintiffs' claims would occur in the Northern District of Texas were the Final Rule to become effective."). Defendants do not deny that the NLRB is seeking to adjudicate conduct and policies and impose remedies at the SpaceX facilities in Texas.

That the NLRB is choosing to act through an adjudicatory proceeding to set labor policy and specifically to restrict SpaceX's operations and change its current policies, rather than through rulemaking, makes no difference. The form of the challenged administrative action does not change the impact that it would have, if successful, on SpaceX's Southern District of Texas facilities.

The district court did not address the *Career Colleges* and *Texas* cases or explain why the NLRB's efforts to regulate SpaceX's Southern District of Texas operations is not substantial in its own right. It relied on its legally erroneous view that the relevant question is comparative: which SpaceX facilities will be regulated the most heavily by the challenged proceedings?

For example, the district court dismissed the fact the NLRB complaint itself alleges that one of the unfair labor practices occurred in the Southern District of Texas. Order 3-4. Specifically, the NLRB complaint alleges an unfair labor practice based on the sending of a June 16 email, which Gwynne Shotwell, SpaceX's President and COO, sent from McGregor, Texas, and which the NLRB complaint alleges was sent "to *all employees.*" Dkt. 31 ¶ 11 (NLRB Compl.) (emphasis added). For this reason, one of the matters to be resolved in the administrative proceeding that SpaceX is challenging happened not just in Hawthorne but in the Southern District of Texas, when Ms. Shotwell sent the email to Starbase and Houston employees among others. *Id.*; Dkt. 64-2 ¶¶ 11–12 (Schmitz Decl.). The district court was wrong to characterize this contact with the Southern District of Texas as merely incidental. The NLRB is charging

SpaceX with an unfair labor practice based on its communication—sent from Texas—with employees in the Southern District of Texas. *See Long v. Grafton Exec. Search, LLC*, 263 F. Supp. 2d 1085, 1090 (N.D. Tex. 2003) (categorizing an email to Texas recipients as a substantial Texas-based event).

If that were an insubstantial part of the NLRB's case, the NLRB should have limited its charge to communications with the Hawthorne employees. The fact that it chose not to do so reveals that the company-wide aspect of the communication is important to the NLRB—as it is to SpaceX. The NLRB could have authorized a complaint based on this charge alone and the fact that other charges were also authorized does not render the alleged unlawful activities in the Southern District of Texas giving rise to the challenged NLRB proceeding "incidental," as the district court erroneously determined.

The district court also erred in determining that the remedies the NLRB seeks lack an "inherent connection to the Southern District of Texas." Dkt. 82 at 4. Defendants do not dispute that they are seeking remedies through the proceeding that will apply to the SpaceX facilities and personnel in the Southern District of Texas. Among other things,

24

the NLRB complaint requests that: SpaceX be ordered to "[p]ost" a corrective "notice . . . including electronically" on employee communication platforms; "[h]old . . . meetings scheduled to ensure the widest possible attendance," with Ms. Shotwell reading the NLRB's notice; and permit a Board agent to "conduct a training on the National Labor Relations Act and unfair labor practices for *all management officials and supervisors employed by [SpaceX]*." Dkt. 31 at 8–9 (emphasis added). By their terms, these remedies expressly involve employees, management, and supervisory personnel based in the Southern District of Texas. Again, the NLRB did not have to pursue remedies beyond Hawthorne. But having chosen to do so, the NLRB cannot now dismiss its own request for such relief as insubstantial. SpaceX submitted evidence showing that several senior VPs are in the Southern District of Texas (in addition to other executives located in the Western District of Texas). *See* Dkt. 37-1 ¶ 11. And the NLRB complaint specifically names Ms. Shotwell who resides not in California but in Texas. Dkt. 31 ¶ 4. This confirms the NLRB is seeking to restrict SpaceX's operations and change its policies companywide—including in the Southern District of Texas—and is not merely seeking to

resolve a "local" dispute involving Hawthorne management and Hawthorne employees.

As a result of the companywide scope of the NLRB's allegations, it is not surprising that the NLRB proceedings are already making companywide demands on SpaceX personnel and executives, including those located in the Southern District of Texas.  The NLRB proceeding is making demands of senior leadership's time leading up to and during the administrative hearing, including of the Texas-based President and COO, at a time SpaceX has Starship test flights scheduled in Boca Chica.  Dkt. 37-1 ¶¶ 7, 16, 19.  Personnel across many SpaceX facilities, including Starbase, are assisting in preparing for and in some cases making arrangements to testify at the NLRB hearing.  Dkt. 64-8 ¶¶ 12–14 (Harper Decl.).  The fact that the NLRB proceeding has made demands of SpaceX personnel in the Southern District of Texas further shows substantial events in that venue that give rise to SpaceX's constitutional challenge. *See, e.g.*, *Ray*, 2021 WL 8443684, at *6; *Zurich Am. Ins.*, 982 F. Supp. 2d at 722; *Safety Nat'l Cas. Corp.*, 2007 WL 7238943, at *5.

Finally, the district court erred in giving inordinate weight to the location of the Charging Parties.  Dkt. 82 at 3.  They are not parties in

SpaceX's litigation.  Although they filed the charges that gave rise to the NLRB proceeding, that proceeding is *supposed* to be an adjudication of public rights, not an adjudication of private remedies for individual employees.  *See NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937); *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 573 (1990).  And, again, the NLRB is not seeking remedies exclusively for the Charging Parties' experiences at Hawthorne.

But if it were appropriate to consider the events that gave rise to the Charging Parties' charges, here too there were substantial events in the Southern District of Texas.  It is uncontested that the Charging Parties purposefully reached into the Southern District of Texas and solicited feedback and responses from employees in the Southern District of Texas—in violation of SpaceX's companywide policies—when they sent the Open Letter across multiple company channels of communications. The Charging Parties did not limit their communications to only California employees but instead purposefully sought to reach and receive responses from Texas-based employees (the Open Letter reaching the Southern District of Texas facilities was purposefully not "incidental").

27

And the undisputed facts show that the Open Letter was digitally interacted with by over 210 employees at two facilities in the Southern District of Texas, many of whom had multiple digital interactions with the letter, including individuals with upwards of 30 or more interactions. Dkt. 64-1 ¶¶ 9, 11–12 (Cramer Decl.).  These recorded digital interactions reflected in SpaceX's records significantly underestimate the interactions with and disruption caused by the Open Letter.  *Id.* ¶ 14.  SpaceX submitted declarations establishing that discussion around the Open Letter derailed technical conversations for a week at Starbase, during a critical phase in meeting targets for Starship (which will return American astronauts to the moon), and required multiple unscheduled meetings to address disruption and concern resulting from the Open Letter.  Dkts. 64-2, 64-7 (Chacon Decl.).  This included a physical visit to Starbase by SpaceX's President and COO to address the concerns and disruption caused by the Open Letter.  Dkt. 64-7 ¶¶ 6–8.

All of this was uncontested and was enough standing alone to establish that a substantial part of the events occurred in the Southern District of Texas, as these were events that led to the NLRB proceedings that SpaceX seeks to enjoin.  *See Uffner*, 244 F.3d at 43 ("an event need

not be a point of dispute between the parties in order to constitute a sub-stantial event giving rise to the claim"). But the district court discounted this uncontested disruption because it determined that SpaceX had six facilities and "even if the effects on facilities were equal, only about one sixth of those events" occurred in the Southern District of Texas. Dkt. 82 at 3. The district court also reasoned that "these resulting events in this district are insubstantial in number compared to the totality of those giv-ing rise to [SpaceX's] claim and far less significant than those occurring in California." *Id*. But again, this is not a finding that the events in this district were insubstantial; it is finding that those events were less sub-stantial than events that occurred elsewhere. That comparative ap-proach is impermissible under the 1990 amendments to Section 1391, as detailed above. If an employee sent letters with defamatory contents to SpaceX facilities in California and facilities in Texas, venue would not turn on whether more recipients were in California than in Texas. The sending of defamatory information to each facility would alone be a sub-stantial event. Here, similarly, the sending of the Open Letter alone to the Texas facilities and the resulting disruption should also have been sufficient to satisfy the "substantial part of the events" standard.

The district court also mischaracterizes the record in stating that SpaceX "gives no reason why such effects [from disruption from the Open Letter] would be especially significant in [the Southern District of Texas.]" Dkt. 82 at 3. SpaceX submitted evidence showing the email by President and COO Gwynne Shotwell (that is the basis for an unfair labor practice charge) specifically mentioned that the Charging Parties' disruption was particularly harmful at Starbase, where the company was "on the cusp of the first orbital launch attempt of Starship." Dkt. 64-5 (Shotwell email). The evidence also showed that Starship development efforts were located at Starbase and the disruption from the Open Letter occurred at a time the Starship team was working towards key targets and derailed technical conversations. Dkt. 64-2 ¶¶ 4, 6, 10. The disruption at Starbase was so significant that the President and COO specifically travelled to Starbase to address the Open Letter. Dkt. 64-7 ¶¶ 6–8. That would not have happened if the effects from the Open Letter at Starbase were "insignificant," as the district court suggested.

Thus, in failing to find venue was proper in the Southern District of Texas, the district court applied a legally erroneous standard and mischaracterized the nature of the NLRB proceedings and their effect on the SpaceX facilities in the district.

### B.    Transfer to the Central District of California would not be proper under Section 1404(a) either.

Defendants may attempt to argue against mandamus by reraising their alternative argument for transfer, under 28 U.S.C. § 1404(a).  Such arguments are no basis to overlook the district court's erroneous transfer under Section 1406(a).  Defendants failed to show that transfer would be proper on those grounds under this Circuit's standards (which is likely why the district court did not reach the Section 1404(a) grounds as an alternative holding in ordering transfer).  The district court did not grant Defendants' motion under Section 1404(a), and it would have been a clear abuse of discretion to do so.

To establish "good cause," a movant must show that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *Volkswagen*, 545 F.3d at 315.  When "jurisdiction exists and venue is proper, the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer."  *Def. Distributed*, 30

F.4th at 433 (reversing transfer as an abuse of discretion). "[T]he stand-ard is not met by showing one forum is more likely than not to be more convenient, but instead the party must adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice." *Id.*

Defendants fell well short of meeting their burden. This action ex-clusively involves constitutional claims that are pure issues of law not requiring live witness testimony or a trial, and there is no reason why litigating these issues of constitutional law would be more convenient in California.

None of the private interest factors set forth in *Volkswagen* favor transfer—they were all either neutral or favored the Southern District of Texas. **(1)** Defendants failed to identify any evidence necessary to resolve this case, much less evidence located outside the Southern District of Texas. And to the extent it existed, they conceded it was digitally avail-able. *See Def. Distributed*, 30 F.4th at 434. **(2)** Defendants failed to iden-tify any witnesses necessary to resolve the constitutional issues, much less ones who refused to testify making compulsory process irrelevant. *Id.* **(3)** The only witness identified by any party as relevant to resolution

32

of SpaceX's constitutional claims was a SpaceX employee who submitted a declaration in support of the preliminary injunction motion and who is located at Starbase. Although Defendants tried to improperly conflate the merits of the underlying NLRB proceeding with SpaceX's constitutional challenge and speculated the Charging Parties might be relevant witnesses, Defendants proved that speculation incorrect when they failed to submit any declarations from these alleged potential witnesses in opposition to the preliminary injunction motion. The convenience of witnesses weighed in favor of venue in the Southern District of Texas. **(4)** As to the final catch-all factor, the delay that would result from transfer in resolving the preliminary injunction motion rises above garden variety delay from transfer, *see In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003), and favored retaining venue in the Southern District of Texas.

As to the public interest factors, they all were also either neutral or favored retaining venue in the Southern District of Texas. **(1)** The district court's civil docket statistics show no signs of congestion, the statistics reflect that the Southern District of Texas's "weighted filings" were lower than the Central District of California, and the district court has a track record of expeditiously resolving preliminary injunction motions.

This factor favored the Southern District of Texas retaining venue. **(2)** SpaceX has a strong presence in the Southern District of Texas, and the employees located in the Southern District of Texas who would be affected by the Defendants' actions have an interest in the case being heard there. In fact, SpaceX just announced that it is changing its state of incorporation to Texas and building a $100 million facility in the Southern District of Texas.[6] Nor does the administrative proceeding involve any sort of localized dispute, but instead broadly seeks to restrict SpaceX operations and change policies at all facilities. The local interest factor is neutral or weighs in favor of retaining venue in Brownsville. **(3)** Given the federal issues, this is the rare case where the familiarity with the case law factor is relevant. The district court recently decided similar complex constitutional issues in *Space Exploration Technologies Corp. v. Bell*, No. 1:23-cv-00137 (S.D. Tex. 2023) (Olvera, J.), which will create efficiencies in deciding these complex constitutional issues. **(4)** The conflict of laws factor is irrelevant.

---

[6] https://fortune.com/2024/02/14/musk-shuttles-spacex-out-of-delaware-amid-plans-to-construct-a-100-million-compound-in-texas-region-he-wants-to-rename-starbase/.

In sum, neither the private nor public interest factors support transfer here.  On the contrary, they show that convenience and the interests of justice are better served by adjudicating the case in the Southern District of Texas.  Defendants came nowhere close to showing the "good cause" needed to overrule SpaceX's venue choice through proof that the Central District of California is "clearly more convenient," and it would have been error under this Circuit's test for Section 1404(a) to transfer the case on those grounds.  Thus, the district court's erroneous Section 1406(a) transfer cannot be saved by reimagining it as a Section 1404(a) transfer.  The writ should issue and make clear that transfer under either statute would be improper.

## CONCLUSION

For these reasons, this Court should grant the writ of mandamus and order the district court to immediately request back the case from the Southern District of California, so that the district court can promptly rule on SpaceX's motion for a preliminary injunction before the scheduled start of the unconstitutional March 5, 2024 NLRB administrative hearing.

Dated:  February 16, 2024          Respectfully submitted,

                                   s/ Michael E. Kenneally

HARRY I. JOHNSON, III*             MICHAEL E. KENNEALLY
MORGAN, LEWIS & BOCKIUS LLP        AMANDA L. SALZ
2049 Century Park East, Suite 700  MORGAN, LEWIS & BOCKIUS LLP
Los Angeles, CA  90067             1111 Pennsylvania Avenue, N.W.
(310) 255-9005                     Washington, DC  20004
                                   (202) 739-3000
CATHERINE L. ESCHBACH
MORGAN, LEWIS & BOCKIUS
1000 Louisiana Street, Suite 4000
Houston, TX  77002
(713) 890-5719


*Application for admission forth-  *Counsel for Space Exploration
coming                             Technologies Corp.*

## CERTIFICATE OF SERVICE

I certify that on this 16th day of February, 2024, I electronically filed the foregoing Emergency Petition for Writ of Mandamus with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system

I further certify that I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following case participants:

ALAMDAR S. HAMDANI
*United States Attorney Southern District of Texas*

BENJAMIN S. LYLES
*Assistant United States Attorney*
1701 W. Bus. Highway 83
Suite 600
McAllen, TX 78501
(956) 618-8010
benjamin.lyles@usdoj.gov

*Attorney-in-Charge for Defendants*

NATIONAL LABOR RELATIONS BOARD
 *Contempt, Compliance, and
  Special Litigation Branch*
KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*
DANIEL BRASIL BECKER
*Trial Attorney*
GRACE L. PEZZELLA
*Trial Attorney*

DAVID P. BOEHM
*Trial Attorney*
1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
(202) 273-4202
david.boehm@nlrb.gov

HONORABLE ROLANDO OLVERA
*United States District Judge*
UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS,
BROWNSVILLE DIVISION
Reynaldo G. Garza-Filemon B. Vela
United States Courthouse
600 E. Harrison St.
Brownsville, TX 78520

JOSHUA M. ROBBINS
PACIFIC LEGAL FOUNDATION
*Attorney-in-Charge*
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
 (202) 888-6881
jrobbins@pacificlegal.org

OLIVER J. DUNFORD
PACIFIC LEGAL FOUNDATION
4400 PGA Blvd., Suite 307
Palm Beach Gardens, FL 33410
 (561) 691-5000
odunford@pacificlegal.org

*Counsel for Amicus Curiae Pacific
Legal Foundation*

ANNE B. SHAVER
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
(415) 956-1000
ashaver@lchb.com

LAURIE M. BURGESS
BURGESS LAW OFFICES, P.C.
498 Utah Street
San Francisco, CA 94110
(312) 320-1718
lburgess@burgess-laborlaw.com

Nimish Ramesh Desai
LIEFF CABRASER ET AL
275 Battery St
29th Floor
San Francisco, CA 94111
(415) 956-1000
ndesai@lchb.com

*Counsel for Amici Curiae Tom
Moline, Scott Beck, Deborah
Lawrence, and Paige Holland-
Thielen*


s/ Michael E. Kenneally
MICHAEL E. KENNEALLY

*Counsel for Space Exploration
Technologies Corp.*

38

## CERTIFICATE OF COMPLIANCE

1.     This petition complies with the type-volume limitations of Fed. R. App. P. 21(d)(1) because this petition contains 7,029 words.

2.     This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century School-book font.


Dated:  February 16, 2024          s/ Michael E. Kenneally
                                   MICHAEL E. KENNEALLY

                                   *Counsel for Space Exploration
                                   Technologies Corp.*

39

**ATTACHMENT**

United States District Court
Southern District of Texas
**ENTERED**
February 15, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| SPACE EXPLORATION | § | |
| TECHNOLOGIES CORP., | § | |
| "Plaintiff", | § | |
| | § | |
| v. | § | Civil Action No. 1:24-cv-00001 |
| | § | |
| NATIONAL LABOR RELATIONS | § | |
| BOARD ET AL., | § | |
| "Defendants." | § | |

**ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE**

Before the Court is the "Motion of Defendants to Transfer Venue Pursuant to 28 U.S.C. § 1406(a) and § 1404(a)" (Dkt. No. 29) ("Motion"), Plaintiff's "Response in Opposition to Defendants' Motion to Transfer Venue Pursuant to 1406(a) and § 1404(a)" (Dkt. No. 64) ("Response"), Defendants' "Reply in Support of Motion to Transfer Venue Pursuant to 28 U.S.C. § 1406(a) and § 1404(a)" ("Reply"), and the "Brief of Charging Parties as *Amici Curiae* in Support of Defendants' Motion to Transfer Venue" (Dkt. No. 73) ("Brief").

For the reasons below, Defendants' Motion (Dkt. No. 29) is **GRANTED**.

## I.    BACKGROUND

This action pertains to an administrative proceeding before Defendant National Labor Relations Board ("NLRB") involving alleged unfair labor practices ("ULP") by Plaintiff. Dkt. No. 1 at 9. On January 3, 2024, Region 31 of the NLRB, located in Los Angeles, California, issued an administrative complaint in the Central District of California alleging that Plaintiff unlawfully interrogated and fired eight employees ("Charging Parties") in response to their organization and distribution of an open letter regarding working conditions. Dkt. No. 29 at 3–5. Plaintiff sued Defendants, claiming that the proceeding and the structure of the NLRB are unconstitutional. *See id.* at 10–23.

Plaintiff, Space Exploration Technologies Corp. ("SpaceX"), is a Delaware corporation and maintains its principal place of business in Hawthorne, California. Dkt. No. 29 at 3, n.17. Defendant NLRB has its headquarters in Washington D.C., and all other Defendants are involved only in their official capacities within the NLRB. *Id.* at 6.

1

Seven of the eight Charging Parties lived in California and worked in Plaintiff's headquarters in Hawthorne, California. Dkt. No. 18 at ¶4; Dkt. No. 29 at 3. The other employee lived in Washington but was supervised by management in Hawthorne. *Id.* The Charging Parties moved to Intervene (Dkt. No. 17).

Defendants' Motion alleges that venue is improper in this district and that the case should be transferred under 28 U.S.C. § 1406(a), or that it should be transferred in the interest of justice and convenience under 28 U.S.C. § 1404(a). *See* Dkt. No. 29. Plaintiff claims that venue is proper because the events in Hawthorne and the later NLRB proceeding affect its facilities nationwide. *See* Dkt. No. 64 at 1.

## II.    LEGAL STANDARD

"Once a defendant challenges venue, the plaintiff has the burden of demonstrating that the chosen venue is proper." *Graham v. Dyncorp Intl, Inc.*, 973 F. Supp. 2d 698, 700 (S.D. Tex. 2013) (citing *Am. Gen. Life Ins. Co. v. Rasche*, 273 F.R.D. 391, 396 (S.D. Tex. 2011)).

A civil action against an agency of the United States may be brought in a judicial district where "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, [...] or (C) the plaintiff resides if no real property is involved in the action [...]." 28 U.S.C. § 1391(e)(1). When a case is filed in an improper venue, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

The Court should determine whether venue is proper but need not determine the "best" venue. *Safety Nat'l Cas. Corp. v. United States Dep't of the Treasury*, No. H-07-643, 2007 U.S. Dist. LEXIS 99225, *17 (S.D. Tex. Aug. 20, 2007). But "a district court should not accept venue if the activities that transpired in the forum district were insubstantial in relation to the totality of events giving rise to Plaintiffs' claims." *Andrade v. Chojnacki*, 934 F. Supp. 817, n.18 (S.D. Tex. 1996) (citing *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3rd Cir. 1994)).

## III.    DISCUSSION

It is undisputed that no party resides in the Southern District of Texas. Dkt. No. 29 at 6. Thus, the issue in dispute is whether a "substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of Texas. 28 U.S.C. § 1391(e)(1)(B). This condition is not satisfied.

2

Plaintiff references four facts in support of its position: (1) the open letter caused disruption at all its facilities, (2) the administrative complaint identifies an email sent "to all employees" from the president and chief operating officer of Plaintiff, Gwynne Shotwell ("Ms. Shotwell"), as one of the alleged ULPs, (3) Defendants seek remedies with company-wide effect, and (4) the NLRB proceeding is "making demands of personnel across many facilities, including Starbase." *Id.* at 5–6.

The principal events giving rise to this action are the drafting of the open letter by the Charging Parties and commencement of the NLRB proceeding in the Central District of California. Thus, the nexus of facts is heavily focused in the Central District of California. The Charging Parties were all connected to Plaintiff's Hawthorne facility, and none had connections to Texas. Dkt. No. 29 at 3, n.16. Nearly all the alleged ULP in the administrative complaint occurred in the Hawthorne facility. *Id.* at 4, n.22. Even the administrative proceeding itself will take place in California. Dkt. No. 29 at 3–5.

Plaintiff thus focuses on the resulting effects of these events that have touched or may eventually touch Plaintiff's other facilities. Thus, even if the effects on all the facilities were equal, only about one sixth of those events on which Plaintiff rests its argument occurred or would occur in this district.[1] Moreover, these resulting events in this district are insubstantial in number compared to the totality of those giving rise to Plaintiff's claim and far less significant than those occurring in California.

The open letter may have caused disruption across Plaintiff's facilities, but most related events such as the conditions precipitating the letter, its drafting, and the immediate consequences for the Charging Parties occurred at and in relation to the Hawthorne facility. As a result, an even larger disruption should be expected to have occurred in Hawthorne than in an unrelated facility. The incidental effects reaching Texas are thus only a small part of the occurrence itself, and Plaintiff gives no reason why such effects would be especially significant in this district.

The emails at issue directly addressed a member of the California-based Charging Parties in one case and in all others, addressed the open letter, which was drafted and proliferated from California. Dkt. No. 78 at 11; Dkt. No. 64-3 at 2. While Plaintiff emphasizes that the message

---

[1] *See* Mission: SpaceX Facilities, SPACEX, https://www.spacex.com/mission/ (last visited Feb 13, 2024) (listing the six SpaceX facilities, only one of which is in the Southern District of Texas).

was sent to all employees, this message is merely another incidental contact with the Southern District of Texas.

Similarly, even if the Court agreed that it is proper to consider Defendants' proposed remedies in the administrative proceeding as events giving rise to the action, such remedies and any demands the proceeding may make of Plaintiff's personnel do not show any inherent connection to the Southern District of Texas. On the contrary, these effects would be expected to have far more relevance to the Hawthorne facility, where most of the employees were fired and where the proceeding is being held.

Plaintiff's cited authority is unavailing. Plaintiff cites *Long v. Grafton Exec. Search, LLC* for the proposition that contact to Texas can constitute a substantial part of the events giving rise to the suit. 263 F. Supp. 2d 1085, 1090 (N.D. Tex. 2003); Dkt. No. 64 at 6. But in *Long* there was a direct communication to Texas; the content caused the claim, and the injury was experienced in Texas. *Long*, 263 F. Supp. 2d at 1090. The Southern District of Texas is only one of the many locations that the open letter reached, and the consequences are not that relevant to Texas.

The Fifth Circuit held that "[C]ommunications to [Texas] can constitute a substantial part of the events giving rise to a plaintiff's claims, if the claims derive directly from those communications. *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 493 (5th Cir. 2018) (citing *Siragusa v. Arnold*, No. 3:12-CV-04497-M, 2013 U.S. Dist. LEXIS 131740, *3 (N.D. Tex. Sep. 16, 2013)). In any event, it would not be accurate to say that this claim derived directly from any communications to Texas. Rather, the case derived directly from the administrative proceeding which itself derived directly from Plaintiff's response to an open letter, which reached the Southern District of Texas not directly but incidentally as one of six total SpaceX facilities.

Thus, these effects do not comprise a substantial part of the events giving rise to this claim. The events touching this district are incidental to the principal events occurring elsewhere and constitute a relatively small portion of the total body of events. This action concerns a California administrative proceeding regarding the actions of a California company and its California employees in California. This action should be transferred.

Plaintiff alternatively requests that the action be transferred to the Western District of Texas, where Ms. Shotwell sent her emails to one of the Charging Parties and all SpaceX employees. Dkt. No. 64 at 8, n.3. As has been made clear, the Central District of California is the

4

venue in which the most events giving rise to this case occurred. In the interest of justice, this action should be transferred to the Central District of California.

**IV.     CONCLUSION**

For these reasons, Defendant's Motion (Dkt. No. 29) is **GRANTED**. It is **ORDERED** that this case be transferred to the Central District of California pursuant to 28 U.S.C. 1406(a).

Signed on this 15th day of February 2024.

Rolando Olvera
United States District Judge

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 26, 2024

Lyle W. Cayce
Clerk

No. 24-40103

IN RE SPACE EXPLORATION TECHNOLOGIES, CORPORATION,

*Petitioner.*

---

Petition for a Writ of Mandamus
to the United States District Court
for the Southern District of Texas
USDC No. 1:24-CV-1

---

UNPUBLISHED ORDER

Before ELROD, HAYNES, and DOUGLAS, *Circuit Judges*.

PER CURIAM:

     This case comes before us in a unique procedural posture. The district court ordered that Space Exploration Technologies's lawsuit against NLRB be transferred to the Central District of California. Because SpaceX petitioned for a writ of mandamus and because we stayed that transfer order prior to the case being docketed in the Central District of California, the Southern District of Texas is DIRECTED to REQUEST that the Central District of California return the transferred case.

     The Southern District of Texas ordered that this case be transferred on February 15, 2024. Order, *Space Expl. Techs. Corp. v. NLRB*, No. 1:24-cv-1 (S.D. Tex. Feb. 15, 2024), ECF No. 82. That court immediately sent the case electronically, giving SpaceX no opportunity to request a stay of the

transfer order either in that court or this one. SpaceX petitioned this court for a writ of mandamus on February 16, 2024, requesting that we direct the district court to vacate its transfer order. *See Defense Distributed v. Bruck*, 30 F.45h 414, 425 (5th Cir. 2022) (noting the diligence of the party contesting transfer "immediately"). Our court stayed the Southern District of Texas's transfer order on February 19, 2024. Nevertheless, the Central District of California docketed the case four days later, on February 23, 2024, as case number 2:24-cv-1352-CBM-AGR.[1]

This leads to potential ambiguity over which court has jurisdiction over the case. Our court has not been stripped of its jurisdiction until transfer has been completed. Transfer is not complete the moment a case is electronically sent to an out-of-circuit court. Rather, the case must be both sent and *docketed* for a transfer to be complete. *See Lou v. Belzberg*, 834 F.2d 730, 733 (9th Cir. 1987) ("We adopt the docketing date as the time of effective transfer. . . . Once jurisdiction is properly obtained by the appellate court it is not terminated by the subsequent completion of a section 1404 transfer."); 17 James William Moore et al., Moore's Federal Practice § 111.64(2)(a) (3d ed. 1999) ("[G]enerally the transferor court, including the circuit court, loses jurisdiction as soon as the files in the case are transferred *and docketed* in the transferee court." (emphasis added)).

---

[1] We note that NLRB filed a notice with the Central District of California stating that "the transferee court is not obliged to honor the request if it determines that retransfer is not appropriate or warranted." *Space Expl. Techs. Corp. v. NLRB*, No. 2:24-cv-1352-CBM-AGR (C.D. Cal. Feb. 23, 2024), ECF No. 96 at 2. We are skeptical about the wisdom of docketing a case when the transfer order has already been stayed. Nevertheless, retransfer will maintain procedural clarity, reduce inter-circuit friction, and foster comity. *See Defense Distributed v. Platkin*, 55 F.4th 486, 494 (5th Cir. 2022) ("Courts 'prophylactically refuse[e] to hear a case raising issues that might substantially duplicate those raised by a case *pending* in another court.' The rule is intended to 'maximize' 'the values of economy, consistency, and comity.'" (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999)) (internal citation omitted) (alteration in original)).

We, along with many of our sister circuits have directed district courts to request retransfer from an out-of-circuit court in the past. *See Bruck*, 30 F.4th at 424–25 (stating that "the balance of circuit authority" favors jurisdiction); *In re Warrick,* 70 F.3d 736, 740 (2d Cir. 1995) ("[W]hen the transferred case has been docketed in the transferee court despite the petitioner's diligence, this Court can order a district court in this circuit to request the transferee court to return the case.") (internal citation and quotations omitted); *Town of N. Bonneville, Wash. v. U.S. Dist. Court, W. Dist. of Wash.,* 732 F.2d 747, 752 (9th Cir. 1984); *In re Sosa,* 712 F.2d 1479, 1480, n.1 (D.C. Cir. 1983); *In re Nine Mile Ltd.,* 673 F.2d 242, 244 (8th Cir. 1982).

In *Bruck*, Defense Distributed appealed the transfer order the day after it was entered, and the case was not docketed in the out-of-circuit court until the day after that. *Bruck*, 30 F.4th at 425. Here, SpaceX petitioned for a writ of mandamus the day after the transfer order, we stayed that order three days later, and the receiving district court did not docket the case until four days after that. Accordingly, this court still has jurisdiction over the case.

\*     \*     \*

We make no comment on the merits of SpaceX's pending petition for a writ of mandamus and nothing in this opinion should be construed to preview any decision on the merits of that petition. In the interest of procedural consistency and comity, the Southern District of Texas is DIRECTED to immediately REQUEST that the Central District of California return the transferred case to the Southern District of Texas, Brownsville Division.

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 5, 2024

Lyle W. Cayce
Clerk

No. 24-40103

IN RE SPACE EXPLORATION TECHNOLOGIES, CORPORATION,

*Petitioner.*

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:24-CV-1

## PUBLISHED ORDER

Before ELROD, HAYNES, and DOUGLAS, *Circuit Judges.*

PER CURIAM:[*]

The petition for a writ of mandamus is DENIED.

---

[*] Judge Elrod dissents from the denial of a writ of mandamus.

No. 24-40103

Jennifer Walker Elrod, *Circuit Judge*, dissenting:

Space Exploration Technologies seeks a writ of mandamus in order to keep the lawsuit it filed against NLRB in the Southern District of Texas. Today, in a one-line order, the panel denies that relief. In doing so, the panel permits an erroneous view of the requirements for filing claims in our circuit, risks confusion amongst the district courts of our circuit, and deprives plaintiffs of the opportunity to seek justice in a lawful venue. Because the district court committed legal error by asking where the "*most* significant part of the events" took place and because the other mandamus factors are satisfied, I would conclude that mandamus relief is appropriate and direct the district court to: (1) vacate its transfer order dated February 15, 2024; and (2) rule expeditiously on the pending motion for a preliminary injunction.

SpaceX originally filed suit in the Southern District of Texas, seeking preliminary injunctive relief from administrative hearings before the NLRB. SpaceX contends that the structure of the hearings violates Article II, the Fifth Amendment, and the Seventh Amendment of the Constitution of the United States. The district court granted NLRB's motion to transfer the case to the Central District of California, reasoning that the Central District is where most of the events giving rise to the case occurred. SpaceX petitioned for a writ of mandamus, and we administratively stayed the transfer order so that we could review SpaceX's petition. Because the stay was entered before transfer of the case was complete,[1] we confirmed that we retained jurisdiction over the case. The Central District of California stated that it would return the case upon request from the Southern District of

---

[1] Transfer was not complete because although the case had been sent electronically, it had not been docketed in the transferee court. *In re Space Exploration Technologies, Corp.*, No. 24-40103, Order (Feb. 26, 2024) (citing *Lou v. Belzberg*, 834 F.2d 730, 733 (9th Cir. 1987)).

No. 24-40103

Texas. On March 1, 2024, the Southern District of Texas requested that the case be returned, and the Central District of California ordered that the case be returned on March 4, 2024. The Southern District of Texas docketed the case on March 5, 2024.

Mandamus is an "extraordinary remedy reserved for really extraordinary cases." *Defense Distributed v. Bruck*, 30 F.4th 414, 427 (5th Cir. 2022). Our circuit has held that mandamus is the "appropriate means to test a district court's ruling on a venue transfer motion." *In re Volkswagen of America, Inc.*, 545 F.3d 304, 308 (5th Cir. 2008). Indeed, NLRB does not contest this point. The Supreme Court has laid out three requirements that must be met before a reviewing court can grant mandamus relief: (1) the party seeking a writ of mandamus must have no other adequate means to attain the relief he desires"; (2) the petitioner must demonstrate that his "right to issuance of the writ is clear and indisputable"; and (3) even if the first two requirements are met, "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *In re Volkswagen*, 545 F.3d at 311 (quoting *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 452 U.S. 367, 380–81 (2004)).

I

In the motion to transfer context, "this circuit has established that the first 'mandamus requirement [of no other adequate means of relief] is satisfied.'" *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 287 n.2 (5th Cir. 2013) (per curiam)).[2] NLRB admits as much. The fact that this case involves an out-of-circuit transfer

---

[2] These holdings arose in the context of transfers under 28 U.S.C. § 1404(a). Because 1406(a) is an "analogous" provision, "which shares the same statutory context" as § 1404(a), the same logic applies to 28 U.S.C. § 1406(a). *Van Dusen v. Barrack*, 376 U.S. 612, 621 n.11 (1964).

only strengthens the case for mandamus. *See* 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3935.4 (4th ed.) (noting that "completion of proceedings in the receiving court is likely to exert a strong pressure to affirm rather than set aside a completed trial solely because it would better have been held in the transferring court").

## II

In this case, the second prong is the one "most strenuously debate[d]." *Bruck*, 30 F.4th at 427. It requires SpaceX to demonstrate a "clear and indisputable right to the writ or a clear abuse of discretion by the district court." *Id.* (citing *Cheney*, 452 U.S. at 381). "A district court by definition abuses its discretion when it makes an error of law." *Id.* (citing *Koon v. United States*, 518 U.S. 81, 100 (1996)); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("[A] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law.").

Here, the district court's abuse of discretion concerns its determination that venue in the Southern District of Texas was improper. A civil action against an agency of the United States may be brought in a judicial district where "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). The parties did not and do not dispute that because no party resides in the Southern District of Texas, § 1391(e)(1)(B) is the only potential path to venue in the Southern District of Texas.

Section 1391(e)(1)(B) does not ask the district court to determine whether the current venue is the *best* venue. *Safety Nat. Cas. Corp. v. U.S. Dep't of Treasury*, No. CIV.A H-07-643, 2007 WL 7238943, at *5 (S.D. Tex. Aug. 20, 2007). The plain text of the statute permits a plaintiff to bring an action against the United States in any district where "a substantial part of

No. 24-40103

the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(e)(1)(B). The statute requires that the events (or omissions) in the Southern District were "*a* substantial part," not the *most* substantial part, of the events giving rise to the claim. *See* 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3806 (4th ed.) ("It has always been clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred.").

The language in 28 U.S.C. § 1391(e)(1) is identical to that found in the general venue statute. 28 U.S.C. § 1391(b)(2) (permitting venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"). [3] This language is generally referred to as "transactional venue."

But in conducting its § 1391(e)(1)(B) analysis, the district court employed a "most substantial part of the events" test. The basis for the district court's approach seems to be *Andrade v. Chojnacki*, a 1996 district court opinion that, in a footnote, determined venue was improper if the activities transpiring in the forum district were insubstantial compared to the totality of events giving rise to the case. 934 F. Supp. 817, 827 n.18 (S.D. Tex. 1996). The *Andrade* test is, of course, not binding.

The larger issue is that *Andrade* takes its test from *Thornwell v. United States*, a 1979 case that predates the 1990 amendments to § 1391. 471 F. Supp. 344 (D.D.C. 1979); *see also* 15 Charles Alan Wright, Arthur R.

---

[3] Because §§ 1391 and 1392 use identical language, cases construing § 1391(b)(2) are particularly helpful in construing § 1391(e)(1)(B). *E.V. v. Robinson*, 200 F. Supp. 3d 108, 113 n.2 (D.D.C. 2016) ("Because § 1391(e)(1)(B) is identical to 28 U.S.C. § 1391(b)(2), cases construing that general venue provision are 'helpful in construing this provision.'" (quoting 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3815 (4th ed.))).

No. 24-40103

Miller & Edward H. Cooper, Federal Practice and Procedure § 3815 (4th ed.) ("Originally, the statute permitted venue where the 'cause of action' arose. This ambiguous language was jettisoned in favor of the current version in 1990."). *Thornwell*'s interpretation could not have survived the 1990 amendments because those amendments made clear that venue can be proper in multiple districts. "If the selected district's contacts are 'substantial,' it should make no difference that another's are more so, or the most so." *Crowe & Dunlevy, P.C. v. Stidham*, 609 F. Supp. 2d 1211, 1221 (N.D. Okla. 2009), aff'd, 640 F.3d 1140 (10th Cir. 2011); *see also Zurich Am. Ins. Co. v. Tejas Concrete & Materials. Inc.*, 982 F. Supp. 2d 714, 722–23 (W.D. Tex. 2013).

Further, it creates the possibility that venue would be improper everywhere. Suppose the activity giving rise to an action is equally distributed across ten districts, so each district contains 1/10 of the activity. Each district would conclude that the activity in its district, constituting 10% of the total activity, was insubstantial compared to the totality of the activity underlying the case. That result is plainly inconsistent with the text of § 1391, which does not contemplate lack of venue everywhere. Because *Andrade*'s footnote is inconsistent with the amended version of § 1391, the district court erred by relying on it.

The district court may have properly recited the distinction between proper venue and best venue, *see* District Court Order at 2 ("The Court should determine whether venue is proper but need not determine the 'best' venue." (citation omitted)), but the opinion repeatedly uses comparative language when evaluating the events taking place in the Southern District of Texas as opposed to the Central District of California. We have previously granted mandamus relief in venue transfer cases where the district court, despite reciting the legal rule, "misperceived and thus misapplied" the standard the law demands. *Bruck*, 30 F.4th at 429.

No. 24-40103

The most obvious example of this misapplication occurs in the district court's conclusion: "As has been made clear, the Central District of California is the venue in which the *most events* giving rise to this case occurred." District Court Order at 4–5 (emphasis added); *see also id.* at 3 (stating that events in this district are "far less significant than those occurring in California"); *id.* at 3 (stating that "an even larger disruption should be expected to have occurred in Hawthorne"); *id.* at 4 (stating that "these effects would be expected to have far more relevance to the Hawthorne facility"); *id.* at 3 (stating that "most related events . . . occurred at and in relation to the Hawthorne facility").

Here application of an erroneous legal standard was dispositive because "a substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of Texas." 28 U.S.C. § 1391(e)(1). There are three distinct buckets under which the Southern District of Texas satisfies this standard: (1) NLRB's action seeks to regulate SpaceX's conduct in the Southern District of Texas; (2) the allegedly unfair labor practices took place, at least in substantial part, in the Southern District of Texas; and (3) the open letter was intentionally sent to SpaceX's facilities in the Southern District of Texas and the Charging Parties purposefully solicited responses from employees in that district. Any one of these buckets is sufficient to satisfy the transactional venue test on its own. Taken together, the test is clearly satisfied.

A

Venue is proper in the Southern District of Texas because NLRB seeks to regulate SpaceX's conduct in that district. SpaceX is challenging the constitutionality of NLRB proceedings that seek to regulate SpaceX in the Southern District of Texas where it has a substantial presence through its Starbase and Houston facilities. Although scheduled to take place in

No. 24-40103

California, the administrative proceedings initiated by NLRB would regulate SpaceX's operations and policies everywhere, including the Southern District of Texas. The administrative action is not limited in geographic scope to California employees and facilities. In fact, the very allegations in the administrative proceeding assert that SpaceX violated the NLRA at all of its facilities, including the ones in the Southern District of Texas.

District courts within our circuit have held that under 28 U.S.C. § 1391(e)(1), venue "is proper where an unlawful rule imposes its burdens." *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, No. 23-cv-206, 2023 WL 2975164, at *2 (N.D. Tex. Apr. 17, 2023) (internal quotations omitted); *see also Umphress v. Hall*, 479 F. Supp. 3d 344, 351–52 (N.D. Tex. 2020); *Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015) (injunction terminated on other grounds). In these cases, transactional venue was held to be proper where: (1) the plaintiff has a significant presence in the forum; and (2) the plaintiff was subject to actual or imminent burden within the forum should the contested agency action take effect. *See Career Colls.*, 2023 WL 2975164, at *2.

SpaceX easily satisfies both requirements. It has a significant presence in the Southern District of Texas through its Starbase facility. The district court's order suggests that there are six total SpaceX facilities, one of which is in the Southern District of Texas. SpaceX has consistently represented that it also has two facilities in the Southern District of Texas (the Starbase facility and a "human spaceflight mission operations and integration facility in Houston"). For purposes of this analysis, the exact number of facilities does not matter. Starbase is a substantial part of SpaceX's operations. Even

No. 24-40103

if the district court's factual assertions are correct[4] and Starbase is the only facility in the Southern District of Texas, that would still constitute a substantial presence in the Southern District of Texas. Under the district court's factual determination, Starbase alone accounts for one sixth of SpaceX facilities which are spread out across Texas, Florida, and California. Further, Starbase is where SpaceX is "developing, manufacturing, and launching Starship, the most powerful rocket ever built."

SpaceX also satisfies the second transactional venue requirement because it is subject to substantial burdens imposed by government action on its operations and policies in the Southern District of Texas. NLRB has initiated proceedings against SpaceX for unlawful employment practices in violation of the NLRA. It is undisputed that the remedy NLRB seeks to implement would burden SpaceX employees and facilities in the Southern District of Texas by requiring them to post notices and conduct mandatory training.

NLRB argues that the substantial burden requirement can only be met by the sort of notice-and-comment rulemaking found in *Career Colleges* and *Texas v. United States*.[5] This distinction cannot be grounded in the statutory language or in caselaw. Section 1391's unambiguous text makes no subject matter distinctions. It does not distinguish between an administrative adjudication and notice-and-comment rulemaking. Both can burden potential plaintiffs in numerous districts and those burdens, wherever they occur, can constitute a "substantial part of the events" giving rise to the claim. *See* 28

---

[4] The district court did not make any mention of judicial notice and seems to have gone outside briefing as it cited SpaceX's website to determine the total number of facilities.

[5] NLRB does not address the fact that *Umphress* did not involve notice-and-comment rulemaking. That case involved efforts to regulate the actions of an individual plaintiff within the forum in which he filed suit. *Umphress*, 479 F. Supp. 3d at 347–48.

U.S.C. § 1391(e)(1). NLRB could have limited the effect of its adjudication to the California facilities. *See Seariver Maritime Financial Holdings, Inc. v. Pena*, 952 F. Supp. 455 (S.D. Tex. 1996) (holding that venue was improper in Texas because the challenged statute only regulated activities in Alaska). Having decided to target all SpaceX facilities and employees, NLRB cannot now escape the implications of that decision.

B

SpaceX can also satisfy the transactional venue standard because the alleged unfair labor practices in the administrative complaint took place, in substantial part, in the Southern District of Texas. The alleged unfair labor practice is an e-mail sent from SpaceX's President and COO, Gwynne Shotwell, from McGregor, Texas to *all* SpaceX employees, including those located at the Starbase and Houston facilities.

The district court considered this event to be mere "incidental" contact with the Southern District of Texas. This misunderstands the nature of the event. NLRB is charging SpaceX with unfair labor practices based on a communication that was sent to all employees. Far from being merely incidental, this e-mail was a purposeful choice, and one that NLRB contends was unlawful as to all of SpaceX's employees in the Southern District of Texas. That is a substantial part of the events. We have held that communications sent to Texas can constitute a substantial part of the events giving rise to the plaintiff's claims so long as those claims derive directly from those communications. *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 493 (5th Cir. 2018); *see also Long v. Grafton Executive Search, LLC*, 263 F. Supp. 2d 1085, 1090 (N.D. Tex. 2003) (categorizing an e-mail sent to Texas recipients as a substantial Texas-based event for purposes of transactional venue).

Despite recognizing this binding precedent, the district court distinguished *Trois* by stating that this case derived directly from the administrative

No. 24-40103

proceeding that stemmed from Shotwell's e-mail. It claimed that Shotwell's e-mail and the letter to which it was responding only reached the Starbase and Houston facilities "incidentally." The district court similarly distinguished *Long* by stating that the e-mail in that case was a "direct communication to Texas; the content caused the claim, and the injury was experienced in Texas." This distinction is nearly impossible to grasp.

First, the district court never explains what constitutes a "direct" as opposed to "indirect" or "incidental" communication. As I see it, any communication purposefully sent to a person or persons within a district is a direct communication.[6] It seems the district court may be using "indirect" or "incidental" to refer to the fact that "Texas is only one of the many locations that the open letter reached." To the extent that is the case, this constitutes clear legal error. Merely sending a message to persons in multiple forums cannot render the contact resulting from that decision as "incidental."

As has been made clear, transactional venue contemplates multiple legally permissible venues. *See Umphress*, 479 F. Supp. 3d at 351 ("Under the amended statute it is now absolutely clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred."); *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165-1166 (10th Cir. 2010); *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004); *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003) (determining whether venue was proper requires "ask[ing] whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts"). The district court's purported rule could create cases with no proper venue because a message sent to multiple districts

---

[6] An indirect communication might be at play when someone who received an initial message forwarded that message to another district.

No. 24-40103

would be "incidental" as to all of those districts.

Second, the content of the email sent by Shotwell is the very act alleged to be an unfair labor practice, leading to the administrative proceedings against SpaceX.

Third, and as discussed in Part I.A., SpaceX is subject to burdensome and binding regulation as a result of the administrative proceedings resulting from this letter.

C

The facts that gave rise to NLRB's proceedings against SpaceX also have substantial ties to the Southern District of Texas, providing a third basis for satisfying § 1391(e)(1)(B). The Charging Parties, (former employees who filed NLRB charges against SpaceX), wrote an Open Letter to all SpaceX employees, including those located in the Southern District of Texas. This letter linked to surveys soliciting feedback and support for their letter. In other words, the Charging Parties reached into the Southern District and specifically involved SpaceX employees in that district. The open letter led to numerous meetings, discussions, and decreased productivity by employees in the Southern District of Texas. SpaceX has stated in declarations that the Open Letter "derailed technical conversations for a week at Starbase, during a critical phase in meeting targets for Starship" and that as a result, numerous unplanned meetings were required "to address disruption and concern resulting from the Open Letter."

The Open Letter, which was intentionally distributed to SpaceX employees in the Southern District of Texas, explicitly sought their support. Thus, the events giving rise to the administrative complaint itself have substantial involvement with and impact on the Southern District of Texas. Just because this e-mail was sent to employees in additional districts—possibly leading to substantial involvement or even more involvement with those

districts—does not mean the Southern District of Texas fails to satisfy § 1391. *See Umphress*, 479 F. Supp. 3d at 351 ("Under the amended statute it is now absolutely clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred."); 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3806 (4th ed.) ("It has always been clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred."). The district court's contrary holding was clear error.

## D

Any one of these three buckets would be enough to satisfy the transactional venue standard. The district court's error is made all the more egregious by failing to consider whether all of these connections to the Southern District taken together amount to a substantial part of the events giving rise to SpaceX's claim. Section 1391 nowhere in its text requires courts to disaggregate the various types of events and determine whether each bucket can individually account for a "substantial part" of the events. Instead, it simply asks whether a "substantial part of the events or omissions giving rise to the claim" occurred in the chosen venue.

NLRB's desire to bind SpaceX in the Southern District of Texas through administrative proceedings; the allegedly unfair labor practice that took place—in substantial part—in the Southern District of Texas; and the purposeful solicitation of SpaceX employees in the Southern District of Texas by the Charging Parties, combined with the resulting disruption, clearly amount to a substantial part of the events underlying SpaceX's claims against NLRB.

Because the district court in practice applied a "most substantial events" test, it committed a clear legal error that, by definition, amounts to a clear abuse of discretion. *Bruck*, 30 F.4th at 427 (citing *Koon*, 518 U.S. at

100). Therefore, prong two of the mandamus requirements is satisfied.

## III

The third prong of mandamus relief requires exercise of our discretion. We have made clear that mandamus relief is "particularly appropriate" where the issues presented "have an importance beyond the immediate case." *In re Volkswagen*, 545 F.3d at 319 (citing *United States v. Bertoli*, 994 F.2d 1002, 1014 (3d Cir. 1993)). We further noted that "venue transfer decisions are rarely reviewed" and that this can lead to the undesirable result of inconsistent outcomes. *Id.* District courts in our circuit need guidance on venue standards. Permitting an erroneous application of § 1391(e)(1)(B) to stand without correction provokes uncertainty in the law and may lead to further use of the erroneous "most substantial events" test.

Mandamus relief is especially appropriate in the context of a § 1406(a) transfer of venue. 28 U.S.C. § 1406 permits a case to be transferred only when the case was filed "laying venue in the *wrong* division or district." 28 U.S.C. § 1406(a) (emphasis added). This is different from change of venue under 28 U.S.C. § 1404(a). That statute permits transfer of a case "[f]or the convenience of parties and witnesses, in the interest of justice" to any district or division where the case might have been brought.[7] *In re Volkswagen* and

---

[7] NLRB, in its motion to transfer the case, argued for transfer under both § 1406 and § 1404. The district court did not address § 1404. Instead, the district court transferred the case under § 1406. In its response opposing a writ of mandamus, NLRB did not present the merits of its § 1404 argument. This is likely because the argument for transfer under § 1404 is a weak one. It is NLRB's burden to demonstrate that the transferee venue is "clearly more convenient." *Volkswagen*, 454 F.3d at 313–15 (explaining that the underlying premise of § 1404(a) is that defendants should not be subject to inconvenient venues). Because SpaceX seeks a preliminary injunction based on purely constitutional arguments, the need for witnesses unique to California is nearly non-existent, and the convenience concern underlying § 1404(a) does not favor transfer. Nor do the rest of the equitable factors under our caselaw clearly favor the Central District of California.

No. 24-40103

*Bruck* both dealt with transfers under § 1404.  *In re Volkswagen*, 545 F.3d at 319; *Bruck*, 30 F.4th at 423 ("[I]n this circuit, mandamus is the prescribed vehicle for reviewing rulings on transfers of cases pursuant to 28 U.S.C. § 1404(a).").  Despite § 1404 involving much more discretion than § 1406, those cases still granted mandamus relief.

A transfer under 1406(a) does not permit consideration of the same sort of equitable principles ("convenience" or the "interest of justice") as § 1404(a).  This makes the legal error in determining where a case is permitted to be brought all the more significant.  Because § 1406 only permits transfer of a case when the chosen venue is legally impermissible, a legal error under § 1406 is much more significant than a legal error under § 1404.  Error under § 1406 artificially restricts the right of plaintiffs to bring their claims in our circuit.

Last, the underlying merits of this claim weigh in favor of granting mandamus relief.  Before us are "issues that implicate not only the parties' interests but those of the judicial system itself."  *Bruck*, 30 F.4th at 426–27 (quoting *Bertoli*, 994 F.2d at 1014).  SpaceX is challenging the constitutionality of NLRB's very structure.  This case implicates the methods and procedures permitted under our constitution when the federal government regulates employer conduct.

NLRB does not deny that it seeks to avoid our court's precedent in *SEC v. Jarkesy*, a fact that the district court did not cite or address.  34 F.4th 446 (5th Cir. 2022) (holding that "[t]wo layers of for-cause protection" for inferior officers is forbidden under "Supreme Court Precedent"), *cert. granted*, 143 S. Ct. 2688 (argued Nov. 29, 2023).  I do not make any assessment of whether *Jarkesy* would control this case, but NLRB's desire to avoid our circuit's precedent is further justification for exercising our discretion in granting mandamus relief.

No. 24-40103

\*      \*      \*

In the federal court system, plaintiffs can prefer favorable caselaw and sue in any appropriate venue.  NLRB cannot seek to condemn SpaceX's past labor practices in the Southern District of Texas, bind SpaceX's future practices in the Southern District of Texas, and at the same time avoid proper venue in the Southern District of Texas.  Failure to follow the plain text of the venue statutes and settled Fifth Circuit caselaw is disappointing and should have been corrected.

For the foregoing reasons, I would conclude that mandamus relief is appropriate to remedy the erroneous transfer of this case.  *See In re Volkswagen*, 545 F.3d at 319; *Bruck*, 30 F.4th at 423.  We should have exercised our discretion to grant mandamus relief and directed the district court to: (1) vacate its transfer order dated February 15, 2024; and (2) rule expeditiously on the pending motion for a preliminary injunction.

I respectfully dissent.

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 5, 2024

Lyle W. Cayce
Clerk

————————

No. 24-40103

————————

IN RE SPACE EXPLORATION TECHNOLOGIES, CORPORATION,

*Petitioner.*

————————————————————

Petition for a Writ of Mandamus
to the United States District Court
for the Southern District of Texas
USDC No. 1:24-CV-1

————————————————————

ORDER:

A judge of this Court withholds issuance of the mandate in this matter.


LYLE W. CAYCE, CLERK
United States Court of Appeals
for the Fifth Circuit
/s/ Lyle W. Cayce

ENTERED AT THE DIRECTION OF THE COURT

# No. 24-40103

## In the United States Court of Appeals
### FOR THE FIFTH CIRCUIT

IN RE: SPACE EXPLORATION TECHNOLOGIES CORP.

On Petition for Writ of Mandamus from an Order Granting
Defendants' Motion to Transfer Venue, Entered February 15, 2024
from United States District Court, Southern District of Texas,
Brownsville Division, No. 24-cv-1 (Olvera, J.)

## PETITION FOR EXPEDITED REHEARING EN BANC OF SPACE EXPLORATION TECHNOLOGIES CORP.

HARRY I. JOHNSON, III
MORGAN, LEWIS & BOCKIUS LLP
2049 Century Park East, Suite 700
Los Angeles, CA  90067
(310) 255-9005

CATHERINE ESCHBACH
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX  77002
(713) 890-5719

MICHAEL E. KENNEALLY
AMANDA L. SALZ
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 739-3000

*Counsel for Space Exploration
Technologies Corp.*

## CERTIFICATE OF INTERESTED PERSONS

### *No. 24-40103, In re: Space Exploration Technologies Corp.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1.      Space Exploration Technologies Corp. ("SpaceX"), Plaintiff and Petitioner. SpaceX has no parent corporation and no publicly held corporation owns 10% or more of its stock.

2.      National Labor Relations Board, a federal administrative agency, Defendant and Respondent

3.      Jennifer Abruzzo, in her official capacity as the General Counsel of the National Labor Relations Board, Defendant and Respondent

4.      Lauren M. McFerran, in her official capacity as Chairman of the National Labor Relations Board, Defendant and Respondent

5.      Marvin E. Kaplan, in his official capacity as Board Member of the National Labor Relations Board, Defendant and Respondent

6.    Gwynne A. Wilcox, in her official capacity as Board Member of the National Labor Relations Board, Defendant and Respondent

7.    David M. Prouty, in his official capacity as Board member of the National Labor Relations Board, Defendant and Respondent

8.    Tom Moline, *Amicus Curiae* in the underlying proceedings

9.    Deborah Lawrence, *Amicus Curiae* in the underlying proceedings

10.    Scott Beck, *Amicus Curiae* in the underlying proceedings

11.    Paige Holland-Thielen, *Amicus Curiae* in the underlying proceedings

12.    Pacific Legal Foundation, *Amicus Curiae* in the underlying proceedings

13.    Rolando Olvera, in his official capacity as United States District Judge of United States District Court for the Southern District of Texas, Brownsville Division

14.    John Doe, in his official capacity as an Administrative Law Judge of the National Labor Relations Board, Defendant[1]

---

[1]    Judge Sharon L. Steckler was recently named as the ALJ in the underlying matter but had not been officially substituted by the time of the ruling giving rise to this petition.

15.    United States of America, appropriates funds for and assumes debts of Defendants and Respondents

The undersigned counsel for SpaceX, separately lists the following persons as attorneys of record:

16.    Harry I. Johnson, III, Attorney for SpaceX

17.    Michael E. Kenneally, Attorney for SpaceX

18.    Catherine L. Eschbach, Attorney for SpaceX

19.    Amanda L. Salz, Attorney for SpaceX

20.    David G. Oliveira, Attorney for SpaceX

21.    Alamdar S. Hamdani, Attorney for Defendants

22.    Daniel David Hu, Attorney for Defendants

23.    Benjamin S. Lyles, Attorney for Defendants

24.    Kevin P. Flanagan, Attorney for Defendants

25.    David P. Boehm, Attorney for Defendants

26.    Paul A. Thomas, Attorney for Defendants

27.    Daniel Brasil Becker, Attorney for Defendants

28.    Grace L. Pezzella, Attorney for Defendants

29.    Laurie Burgess, Attorney for *Amicus Curiae*

30.    Anne Shaver, Attorney for *Amicus Curiae*

31.    Nimish Desai, Attorney for *Amicus Curiae*

32.    Joshua M. Robbins, Attorney for *Amicus Curiae*

33.    Oliver J. Dunford, Attorney for *Amicus Curiae*

Dated:  March 7, 2024          s/ Michael E. Kenneally
                               MICHAEL E. KENNEALLY

iv

## RULE 35(b) STATEMENT

Over Judge Elrod's dissent, the majority denied SpaceX's emergency petition for mandamus relief and allowed the district court to deprive SpaceX "of the opportunity to seek justice in a lawful venue." Dissent 2. En banc review is warranted for two reasons.

First, the proper statutory standard for transactional venue is an exceptionally important issue that this Court rarely has the opportunity to address. Because the district court's approach to that standard conflicts with the decisions of other circuits and of district courts in this Circuit, as well as the plain statutory text, the en banc Court should correct it.

Second, the panel's refusal to afford mandamus relief conflicts with other decisions of this Court finding mandamus warranted in similar (or less compelling) circumstances. Mandamus is the sole avenue of relief from an erroneous transfer decision. Just last week, the Court reaffirmed that the writ is appropriate to correct improper transfers. And this Court has previously granted en banc review to correct such errors. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 309 (5th Cir. 2008) (en banc). It should do so again here.

## TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................i

RULE 35(b) STATEMENT....................................................... v

TABLE OF AUTHORITIES................................................viii

STATEMENT OF THE ISSUE................................................ 1

STATEMENT OF THE COURSE OF PROCEEDINGS AND
    DISPOSITION OF THE CASE...................................... 1

STATEMENT OF FACTS ...................................................... 4

I.    The Charging Parties send the Open Letter to all SpaceX
    employees. ....................................................... 4

II.    The NLRB authorizes unfair labor practice charges
    implicating all SpaceX facilities....................................5

III.    The district court erroneously transfers this case.......................... 6

ARGUMENT ....................................................... 7

I.    Rehearing is warranted to guide district courts applying
    Section 1391's transactional-venue standard................................. 7

    A.    The district court's "most substantial part of the events"
        standard is inconsistent with the text of Section 1391. ......... 9

    B.    A substantial part of the events giving rise to this case
        occurred in the Southern District of Texas. ....................... 12

        1.    The NLRB seeks to regulate SpaceX's conduct in
            the Southern District of Texas.................................... 13

**TABLE OF CONTENTS**
(continued)

Page

      2.     The alleged unfair labor practices took place, at least in substantial part, in the Southern District of Texas..........................................................................14

      3.     The Charging Parties intentionally sent the Open Letter to SpaceX facilities and solicited responses from SpaceX employees in the Southern District of Texas..........................................................................16

II.    Rehearing is warranted to maintain uniformity in this Court's transfer mandamus decisions. ........................................................17

CONCLUSION ..........................................................................19

CERTIFICATE OF SERVICE..................................................21

CERTIFICATE OF COMPLIANCE........................................23

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Andrade v. Chojnacki*,
  934 F. Supp. 817 (S.D. Tex. 1996) ................................................. 10, 11

*Axon Enter., Inc. v. FTC*,
  598 U.S. 175 (2023) .................................................................................. 3

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*,
  2023 WL 2975164 (N.D. Tex. Apr. 17, 2023)...................................... 13

*Cheney v. U.S. Dist. Court*,
  542 U.S. 367 (2004) ............................................................................... 17

*Crowe & Dunlevy, P.C. v. Stidham*,
  609 F. Supp. 2d 1211 (N.D. Okla. 2009) ............................................. 12

*Def. Distributed v. Bruck*,
  30 F.4th 414 (5th Cir. 2022) ..................................................... *passim*

*Def. Distributed v. Platkin*,
  55 F.4th 486 (5th Cir. 2022) .................................................................. 8

*First of Mich. Corp. v. Bramlet*,
  141 F.3d 260 (6th Cir. 1998) ............................................................... 10

*In re Clarke*,
  — F.4th —, 2024 WL 886953 (5th Cir. 2024)........................... 8, 17, 19

*In re Radmax, Ltd.*,
  720 F.3d 285 (5th Cir. 2013) ............................................................... 19

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008)...................................................... 8, 9, 17

*Jarkesy v. SEC*,
  34 F.4th 446 (5th Cir. 2022) ......................................................... 2, 18

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Texas v. United States*,
   95 F. Supp. 3d 965 (N.D. Tex. 2015)...................................................13

*Thornwell v. United States*,
   471 F. Supp. 344 (D.D.C. 1979) ..........................................................11

*Trois v. Apple Tree Auction Ctr., Inc.*,
   882 F.3d 485 (5th Cir. 2018)..........................................................14, 15

*Uffner v. La Reunion Francaise, S.A.*,
   244 F.3d 38 (1st Cir. 2001) ..........................................................10, 12

*Umphress v. Hall*,
   479 F. Supp. 3d 344 (N.D. Tex. 2020)................................................13

**STATUTES**

28 U.S.C. § 1391 ............................................................................... *passim*

28 U.S.C. § 1406 ...................................................................... 1, 2, 7, 17

**OTHER AUTHORITIES**

14D CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. § 3806
   (4th ed. 2023) .........................................................................................9

17 JAMES WILLIAM MOORE ET AL., MOORE'S FEDERAL PRACTICE
   § 110.04 (3d ed. 2023) ..........................................................................9

**STATEMENT OF THE ISSUE**

Whether the Court should issue a writ of mandamus to vacate the district court's transfer order, which erroneously transferred the case under 28 U.S.C. § 1406(a) based on a misapplication of 28 U.S.C. § 1391's transactional-venue standard.

**STATEMENT OF THE COURSE OF PROCEEDINGS
AND DISPOSITION OF THE CASE**

In June 2022, a small group of disgruntled SpaceX employees flooded company communication channels across all SpaceX facilities—including two located in the Southern District of Texas—with an "Open Letter." Their conduct was a blatant and gross violation of SpaceX's policies. Eight employees terminated for their involvement (the "Charging Parties") filed unfair labor practice charges with the National Labor Relations Board ("NLRB" or "Board"). The NLRB's General Counsel authorized an administrative complaint that expressly seeks to regulate SpaceX's actions and policies at all its facilities, including Starbase in Boca Chica and SpaceX's Houston facility. The Board has never denied that the administrative proceeding has this companywide objective.

SpaceX immediately filed this action in the Southern District of Texas, Brownsville Division (where Starbase is located), asserting four

challenges to the constitutionality of the Board's structure—including that NLRB Administrative Law Judges ("ALJs") are unconstitutionally insulated from presidential control under *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023). The parties briefed SpaceX's preliminary injunction motion while Defendants sought transfer to the Central District of California. Without resolving the preliminary injunction motion, the district court held that SpaceX had not satisfied the transactional-venue standard in Section 1391 and transferred the case under Section 1406(a).

The next day, SpaceX petitioned for an emergency writ of mandamus. The motions panel stayed the transfer but later denied relief in a one-line order, over Judge Elrod's dissent. As she explained, the district court committed a clear abuse of discretion by "[f]ail[ing] to follow the plain text of the venue statutes and settled Fifth Circuit caselaw" and transferring the case. Dissent 16. The "NLRB cannot seek to condemn SpaceX's past labor practices in the Southern District of Texas, bind SpaceX's future practices in the Southern District of Texas, and at the same time avoid proper venue in the Southern District of Texas." *Id.*

Judge Elrod rightly found that "mandamus relief is appropriate to remedy the erroneous transfer." *Id.*

The parties were notified that the mandate was withheld at the request of a Judge of this Court, leaving the stay in effect. SpaceX now petitions for en banc review on an expedited basis. The administrative proceedings before the ALJ—which SpaceX contends are unconstitutionally structured in multiple ways—officially opened on March 5, despite SpaceX's repeated requests that the NLRB postpone the hearing to afford time for this constitutional litigation. The administrative discovery process is now underway, and live testimony now seems likely to begin in May and continue well into the summer. The NLRB recently informed SpaceX that it has also opened a *new* unfair-labor-practice investigation based solely on SpaceX's attempt to secure discovery from the Charging Parties.

The ongoing, unconstitutionally structured administrative proceedings are already inflicting a "here-and-now injury" on SpaceX, *see Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023), which will be irreparable after the administrative proceedings have run their course. Although the current lengthy schedule for the administrative proceedings ensures that

SpaceX's claims and request for preliminary injunctive relief will not become moot anytime soon, SpaceX's constitutional injury grows with every new event in the administrative proceeding. Given this urgency, SpaceX respectfully requests that if this Court grants rehearing and believes oral argument is appropriate, oral argument be heard in the May en banc sitting or as soon as practicable.

## STATEMENT OF FACTS

I.     **The Charging Parties send the Open Letter to all SpaceX employees.**

SpaceX operates a space launch business and a global satellite-based internet service known as Starlink. Dkt. 37-1 ¶¶ 5–8. It employs over 14,000 people in facilities around the country, including Starbase in Boca Chica, where it is developing, manufacturing, and launching the Starship rocket. *Id.* ¶ 9. Although SpaceX was incorporated in Delaware when it filed this lawsuit, Dkt. 1 ¶ 35, SpaceX reincorporated in Texas on February 14, 2024.

On June 15, 2022, a small group of employees purposefully sent the Open Letter to coworkers across all SpaceX locations (including those in Texas), demanding that SpaceX take certain actions addressing per-

ceived shortcomings and soliciting those employees to fill out a hyper-linked survey to indicate support for the Open Letter's demands and provide feedback. *Id.* ¶¶ 43–44. The Open Letter caused significant disruption to SpaceX operations around the country, including at Starbase and other Texas facilities.

The undisputed facts show that over 210 employees at SpaceX's two facilities in the Southern District of Texas interacted with the Open Letter. Dkt. 64-1 ¶¶ 9, 11–12. Discussion around the Open Letter derailed technical conversations for a week at Starbase, during a critical phase in meeting targets for Starship (which will send American astronauts to the Moon and to Mars), and required multiple unscheduled meetings to address disruption and concern resulting from the Open Letter. Dkts. 64-2, 64-7. This included a visit to Starbase by SpaceX's President and COO. Dkt. 64-7 ¶¶ 6–8.

## II.     The NLRB authorizes unfair labor practice charges implicating all SpaceX facilities.

In November 2022, the Charging Parties alleged that SpaceX's responses to the Open Letter constituted unfair labor practices. Dkt. 1 ¶ 47. SpaceX submitted a position statement and evidence refuting the Charging Parties' allegations. *Id.* ¶ 48. The NLRB investigators informed

SpaceX, however, that they had authorized an administrative complaint against SpaceX. In January 2024, the NLRB issued a consolidated administrative complaint and notice that an ALJ hearing would occur just two months later, on March 5, 2024. *Id.* ¶¶ 49–50.

Among the complaint's accusations is an alleged unfair labor practice based on a June 16 email that SpaceX's President and COO sent from McGregor, Texas "to *all employees*." Dkt. 31 ¶ 11 (emphasis added). The administrative complaint expressly seeks companywide remedies, such as forcing SpaceX executives and supervisors at all SpaceX facilities, including those located in the Southern District of Texas, to undergo NLRB-directed labor law re-education. *See id.* The NLRB has never denied it is seeking to adjudicate an unfair labor practice occurring, in part, in the Southern District of Texas or that the remedies it seeks would apply to company facilities and personnel in the Southern District of Texas.

## III. The district court erroneously transfers this case.

SpaceX sought injunctive and declaratory relief in the Southern District of Texas. Defendants moved to transfer the case to the Central District of California, arguing the ALJ hearing will occur there and most Charging Parties were located there when discharged. The district court

transferred the case under Section 1406(a). In doing so, the district court compared the Texas and California venues based on where "most events" occurred, Dkt. 82 at 5—rather than simply assess whether "a substantial part of the events" occurred in the Southern District of Texas, 28 U.S.C. § 1391(e)(1)(B). *See* Dkt. 82 at 3–5.

The next day, SpaceX filed an emergency petition for a writ of mandamus. The motions panel promptly stayed the transfer to preserve this Court's jurisdiction while it considered the petition.

## ARGUMENT

## I.   Rehearing is warranted to guide district courts applying Section 1391's transactional-venue standard.

As Judge Elrod noted, the panel decision "permits an erroneous view of the requirements for filing claims in [this] circuit" and "risks confusion amongst [its] district courts." Dissent 2. This error and confusion will not impair this case alone. The transactional-venue standard that the district court misapplied governs not just in suits against the federal government, but across general federal litigation. *See* 28 U.S.C. § 1391(b)(2). Allowing the district court's error to stand uncorrected threatens any case in this Circuit where transactional venue is contested.

En banc review is vital to maintain uniformity and ensure that this Circuit's trial courts do not follow the district court's lead and oust litigants from lawful venues based on a misunderstanding of the legal standard.

Erroneous transfer decisions pose a special threat to like cases' being treated alike given the difficulties in gaining review of such decisions. *See In re Clarke*, — F.4th —, 2024 WL 886953 (5th Cir. 2024) ("[V]enue transfer decisions are rarely reviewed, and district courts have applied [Fifth Circuit] tests with too little regard for consistency of outcomes." (citation omitted)). In an electronic age, transfer can be initiated immediately—leaving a plaintiff wrongfully deprived of a chosen forum little opportunity to seek reconsideration or a stay from any court pending review. Then, even if mandamus relief is eventually granted, the transferee venue may refuse to give the case back. *See Def. Distributed v. Platkin*, 55 F.4th 486, 496 (5th Cir. 2022). Where, as here, a trial court ruling muddles the rule for transactional venue and only the full Court can correct it, en banc rehearing is warranted. *See Volkswagen*, 545 F.3d at 308.

### A. The district court's "most substantial part of the events" standard is inconsistent with the text of Section 1391.

The district court committed a "clear abuse of discretion" in misinterpreting the transactional-venue standard. *Def. Distributed v. Bruck*, 30 F.4th 414, 427 (5th Cir. 2022); *Volkswagen*, 545 F.3d at 309. But the panel majority's one-line order fails to correct—or even acknowledge—that clear legal error.

As Judge Elrod detailed, the transactional-venue statute "does not ask the district court to determine whether the current venue is the *best* venue." Dissent 4. It asks whether the current venue is one where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(e)(1)(B). Since Section 1391 was amended to codify this standard in 1990, it has "been clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred." 14D CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. § 3806 (4th ed. 2023); *accord* 17 JAMES WILLIAM MOORE ET AL., MOORE'S FEDERAL PRACTICE § 110.04[2] & n.4 (3d ed. 2023). Because of the possibility of multiple proper venues, district courts should not merely compare themselves to other potential venues to decide whether venue is proper. *See,*

*e.g.*, *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001) (collecting cases).

The district court did not apply this standard, even if it partially recited it. *See* Dissent 6. Instead, the district court repeatedly compared the case's connections to Texas and California. *See, e.g.*, Dkt. 82 at 3 ("resulting events in this district are … far less significant that those occurring in California"); *id.* at 3 ("most related events … occurred at and in relation to the Hawthorne facility"); *id.* at 4–5 ("the Central District of California is the venue in which the most events giving rise to this case occurred"). The district court's application of this "most substantial events" standard violates the text of Section 1391 as amended and resulted in a "clear abuse of discretion" warranting mandamus. *Bruck*, 30 F.4th at 427; *see* Dissent 7.

As Judge Elrod explained, the district court's error seemed to stem from an outlier district court case from nearly twenty years ago, which mistakenly applied an "incorrect, obsolete standard" that did not survive the 1990 amendments to Section 1391. *See* Dissent 5 (noting the district court's reliance on *Andrade v. Chojnacki*, 934 F. Supp. 817 (S.D. Tex. 1996)); *see also First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 262 (6th

Cir. 1998). The *Andrade* court in turn invoked an out-of-circuit case pre-dating the amendments. 934 F. Supp. at 827 n.18 (applying *Thornwell v. United States*, 471 F. Supp. 344 (D.D.C. 1979)). But under the amended statutory text, district courts must consider whether "*a* substantial part of the events"—not the *most* substantial part—occurred in the plaintiff's chosen venue. 28 U.S.C. § 1391(e)(1)(B) (emphasis added). So, contrary to *Thornwell*, 471 F. Supp. at 356, courts may not disregard events in a particular forum because they are less substantial than other events in "the totality of events giving rise to plaintiff's grievance." *See* Dissent 5–6.

The comparative totality-of-events standard is not just atextual but nonsensical. Indeed, "it creates the possibility that venue would be improper everywhere." Dissent 6. If, for example, "the activity giving rise to an action is equally distributed across ten districts, so each district contains 1/10 of the activity," then "[e]ach district would conclude that the activity is in its district, constituting 10% of the total activity, was insubstantial compared to the totality of the activity underlying the case." *Id.* Returning to such a standard would bring back the "plethora of tests,"

"wasteful litigation," and inconsistent outcomes that the 1990 amendments were expressly enacted to avoid. *Uffner*, 244 F.3d at 42.

As discussed next, courts applying the correct standard would easily have found venue proper here. The district court's clear legal error warrants correction from the en banc Court. No one else can correct it.

**B.    A substantial part of the events giving rise to this case occurred in the Southern District of Texas.**

"If the selected district court's contacts are 'substantial,' it should make no difference that another's are more so, or the most so." Dissent 6 (quoting *Crowe & Dunlevy, P.C. v. Stidham*, 609 F. Supp. 2d 1211, 1221 (N.D. Okla. 2009), *aff'd*, 640 F.3d 1140 (10th Cir. 2011)). Here, three sets of substantial events lay venue in the Southern District of Texas: (1) the NLRB attempts to regulate SpaceX in the Southern District of Texas; (2) the alleged unfair labor practices occurred in the Southern District of Texas; and (3) the Charging Parties intentionally reached into SpaceX's facilities and out to its employees in the Southern District of Texas. Considering all these events, the Southern District of Texas is clearly a proper venue, and other courts would have recognized it as such.

**1. The NLRB seeks to regulate SpaceX's conduct in the Southern District of Texas.**

Venue is proper in the Southern District of Texas because "the administrative proceedings initiated by NLRB would regulate SpaceX's operations and policies everywhere, including the Southern District of Texas." Dissent 8. In cases challenging government action, courts in this Circuit widely hold that transactional venue is "proper where: (1) the plaintiff has a significant presence in the forum; and (2) the plaintiff was subject to actual or imminent burden within the forum should the contested agency action take effect." *Id.*; *see, e.g.*, *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 2023 WL 2975164, at *2 (N.D. Tex. Apr. 17, 2023); *Umphress v. Hall*, 479 F. Supp. 3d 344, 351–52 (N.D. Tex. 2020); *Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015).

SpaceX has a significant presence in the Southern District of Texas, where its Starbase facility (the largest private employer in the Brownsville area) and Houston facility are located. SpaceX is also substantially burdened there, as the NLRB alleges SpaceX violated labor law within the district and requests remedies that would burden SpaceX within the district. For example, the NLRB seeks to require both SpaceX facilities in the Southern District of Texas to post notices for all employees at those

13

facilities and to require all SpaceX managers at those facilities to participate in personnel trainings. As Judge Elrod explained, "SpaceX easily satisfies both requirements." Dissent 8. And "[h]aving decided to target all SpaceX facilities and employees, NLRB cannot now escape the implications of that decision." Dissent 10.

> **2.    The alleged unfair labor practices took place, at least in substantial part, in the Southern District of Texas.**

"SpaceX can also satisfy the transactional venue standard because the alleged unfair labor practices in the administrative complaint took place, in substantial part, in the Southern District of Texas." Dissent 10. The NLRB complaint alleges an unfair labor practice based on an e-mail SpaceX's President and COO, Gwynne Shotwell, sent from McGregor, Texas to all SpaceX employees, including those at Starbase and in Houston.

This Court's precedent holds "that communications sent to Texas can constitute a substantial part of the events giving rise to the plaintiff's claim so long as those claims derive directly from those communications." *Id.* (citing *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 493 (5th Cir. 2018)). The alleged unfair-labor-practice email is a substantial event

giving rise to SpaceX's challenge to the NLRB proceedings and is sufficient to lay venue in the Southern District of Texas. After all, "the content of the email sent by Shotwell is the very act alleged to be an unfair labor practice, leading to the administrative proceedings" SpaceX challenges as unconstitutional. Dissent 12.

This district court tried to distinguish *Trois* by describing the email reaching Texas employees as "incidental." Dkt. 82 at 3. But as Judge Elrod explained, that characterization is "nearly impossible to grasp" because "any communication purposefully sent to a person or persons within a district is a direct communication." Dissent 11. "Merely sending a message to persons in multiple forums cannot render the contact resulting from that decision as 'incidental.'" *Id.* Were the district court correct, there would be "cases with no proper venue because a message sent to multiple districts would be 'incidental' as to all of those districts." Dissent 11–12.

### 3. The Charging Parties intentionally sent the Open Letter to SpaceX facilities and solicited responses from SpaceX employees in the Southern District of Texas.

Finally, "[t]he facts that gave rise to NLRB's proceedings against SpaceX also have substantial ties to the Southern District of Texas." Dissent 12. By purposefully distributing the Open Letter to and seeking feedback from employees in the Southern District of Texas, "the Charging Parties reached into the Southern District and specifically involved SpaceX employees in that district." *Id.* SpaceX introduced undisputed evidence establishing that the Open Letter caused significant disruption at the facilities in the Southern District of Texas and led to numerous meetings, discussions, and decreased productivity by employees in the district. The district court committed clear legal error by discounting these substantial events in the Southern District of Texas simply because the Open Letter was also sent to employees in additional districts. Dissent 12–13.

*****

Any of these three categories independently suffices to lay venue. And when one considers in combination, "the district court's error is made all the more egregious." Dissent 13.

**II.  Rehearing is warranted to maintain uniformity in this Court's transfer mandamus decisions.**

The panel's refusal to grant mandamus relief departs from the Court's actions in other recent cases. Mandamus is the "appropriate means to test a district court's ruling on a venue transfer motion." *Volkswagen*, 545 F.3d at 308. Just last week, the Court granted the writ to correct an improper out-of-circuit transfer. *Clarke*, 2024 WL 886953. And when a panel has improperly denied the writ, the full Court has recognized the importance of the matter and reheard the case en banc. *Volkswagen*, 545 F.3d at 308. An erroneous transfer under Section 1406 is especially problematic and worthy of correction because such an error "artificially restricts the right of plaintiffs to bring their claims in [this] circuit." Dissent 15.

This Court has clearly held that the writ is warranted in this context if: (1) there are "no other adequate means to attain the relief [the petitioner] desires," (2) "the writ is appropriate under the circumstances," and (3) the petitioner shows "a clear and indisputable right to the writ." *Bruck*, 30 F.4th at 426 (quoting *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380–81 (2004)). SpaceX satisfies all three conditions. Indeed, not even Defendants dispute the first. Mandamus Resp. 10. The majority's refusal

to grant mandamus relief despite SpaceX's satisfaction of all three conditions departs from this Circuit's normal standard for issuing the writ in the transfer setting.

As for condition two, the writ is appropriate here because this case involves "issues that implicate not only the parties' interest but those of the judicial system itself." *Bruck*, 30 F.4th at 426 (citation omitted). SpaceX challenges the structure of the administrative proceedings the NLRB uses nationwide: the removal protections shielding NLRB ALJs and Board Members from presidential oversight, the NLRB's failure to provide a jury trial in a case involving private rights and claims for legal relief, and the NLRB Members' exercises of prosecutorial and adjudicative authority in the same proceeding.

Defendants have not hidden their desire to avoid adverse Fifth Circuit precedent on these issues—particularly *Jarkesy*, 34 F.4th 446. They went so far as to try thwart this Court's mandamus review—even after the motions panel stayed transfer and ruled that the Court retained jurisdiction—by encouraging the transferee court not to send the case back. *See* Dkts. 42, 47, 51, 53; *cf. Bruck*, 30 F.4th at 427 (finding mandamus appropriate given defense "tactics suggesting the abusive manipulation

18

of federal court procedures in order to delay or altogether avoid meaningful merits consideration of Plaintiffs' claims"). Judge Elrod properly recognized that the "NLRB's desire to avoid [this] circuit's precedent is further justification" for granting mandamus relief. Dissent 15.

Finally, SpaceX is clearly and indisputably entitled to relief. The district court "clear[ly] abuse[d] its discretion" by applying the wrong transfer standard. *Bruck*, 30 F.4th at 427; *see supra* Section I.A. This Court has acted to "grant[] mandamus for less egregiously erroneous transfers." *Clarke*, 2024 WL 886953, at *9 (citing *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013)). Under these cases and as described above, SpaceX satisfies the third condition.

Given the "supervisory" nature of the writ, this is a textbook case for mandamus relief. *Id.* at *10 (citation omitted). The split panel's decision to deny relief cannot be squared with other grants of mandamus relief in the transfer context. The panel's unexplained failure to follow Fifth Circuit mandamus precedent to correct a patently erroneous transfer decision necessitates en banc review.

## CONCLUSION

The petition for expedited rehearing en banc should be granted.

Dated:  March 7, 2024                 Respectfully submitted,

                                      s/ Michael E. Kenneally

HARRY I. JOHNSON, III                 MICHAEL E. KENNEALLY
MORGAN, LEWIS & BOCKIUS LLP           AMANDA L. SALZ
2049 Century Park East, Suite 700     MORGAN, LEWIS & BOCKIUS LLP
Los Angeles, CA  90067                1111 Pennsylvania Avenue, N.W.
(310) 255-9005                        Washington, DC  20004
                                      (202) 739-3000
CATHERINE ESCHBACH
MORGAN, LEWIS & BOCKIUS
1000 Louisiana Street, Suite 4000
Houston, TX  77002                    *Counsel for Space Exploration*
(713) 890-5719                        *Technologies Corp.*

## CERTIFICATE OF SERVICE

I certify that on this 7th day of March, 2024, I electronically filed the foregoing Petition for Expedited Rehearing En Banc of Space Exploration Technologies Corp. with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that the 8th day of March, 2024, I will mail the foregoing document by First-Class Mail, postage prepaid, or have it dispatched to a third-party commercial carrier for delivery within 3 calendar days, to the following case participants:

ALAMDAR S. HAMDANI
*United States Attorney Southern District of Texas*

BENJAMIN S. LYLES
*Assistant United States Attorney*
1701 W. Bus. Highway 83
Suite 600
McAllen, TX 78501
(956) 618-8010
benjamin.lyles@usdoj.gov

*Attorney-in-Charge for Defendants*

NATIONAL LABOR RELATIONS BOARD
*Contempt, Compliance, and Special Litigation Branch*
KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*
DANIEL BRASIL BECKER
*Trial Attorney*
GRACE L. PEZZELLA
*Trial Attorney*

DAVID P. BOEHM
*Trial Attorney*
1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
(202) 273-4202
david.boehm@nlrb.gov

HONORABLE ROLANDO OLVERA
*United States District Judge*
UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS,
BROWNSVILLE DIVISION
Reynaldo G. Garza-Filemon B. Vela
United States Courthouse
600 E. Harrison St.
Brownsville, TX 78520

s/ Michael E. Kenneally
MICHAEL E. KENNEALLY

*Counsel for Space Exploration
Technologies Corp.*

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limit of Federal Rule of Appellate Procedure 35(b)(2)(A) and 5th Cir. Rule 35.5 because, excluding the items exempted by Federal Rule of Appellate Procedure 32(f), this document contains 3,844 words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and 5th Cir. Rule 32.1, and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document was prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font.


Dated:  March 7, 2024                   s/ Michael E. Kenneally
                                        MICHAEL E. KENNEALLY

                                        *Counsel for Space Exploration*
                                        *Technologies Corp.*

# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 5, 2024

Lyle W. Cayce
Clerk

No. 24-40103

In re Space Exploration Technologies, Corporation,

*Petitioner.*

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:24-CV-1

PUBLISHED ORDER

Before Elrod, Haynes, and Douglas, *Circuit Judges.*

Per Curiam:[*]

The petition for a writ of mandamus is DENIED.

---

[*] Judge Elrod dissents from the denial of a writ of mandamus.

No. 24-40103

Jennifer Walker Elrod, *Circuit Judge*, dissenting:

Space Exploration Technologies seeks a writ of mandamus in order to
keep the lawsuit it filed against NLRB in the Southern District of Texas. To-
day, in a one-line order, the panel denies that relief. In doing so, the panel
permits an erroneous view of the requirements for filing claims in our circuit,
risks confusion amongst the district courts of our circuit, and deprives plain-
tiffs of the opportunity to seek justice in a lawful venue. Because the district
court committed legal error by asking where the "*most* significant part of the
events" took place and because the other mandamus factors are satisfied, I
would conclude that mandamus relief is appropriate and direct the district
court to: (1) vacate its transfer order dated February 15, 2024; and (2) rule
expeditiously on the pending motion for a preliminary injunction.

SpaceX originally filed suit in the Southern District of Texas, seeking
preliminary injunctive relief from administrative hearings before the NLRB.
SpaceX contends that the structure of the hearings violates Article II, the
Fifth Amendment, and the Seventh Amendment of the Constitution of the
United States. The district court granted NLRB's motion to transfer the
case to the Central District of California, reasoning that the Central District
is where most of the events giving rise to the case occurred. SpaceX peti-
tioned for a writ of mandamus, and we administratively stayed the transfer
order so that we could review SpaceX's petition. Because the stay was en-
tered before transfer of the case was complete,[1] we confirmed that we re-
tained jurisdiction over the case. The Central District of California stated
that it would return the case upon request from the Southern District of

---

[1] Transfer was not complete because although the case had been sent electronically,
it had not been docketed in the transferee court. *In re Space Exploration Technologies, Corp.*,
No. 24-40103, Order (Feb. 26, 2024) (citing *Lou v. Belzberg*, 834 F.2d 730, 733 (9th Cir.
1987)).

No. 24-40103

Texas. On March 1, 2024, the Southern District of Texas requested that the case be returned, and the Central District of California ordered that the case be returned on March 4, 2024. The Southern District of Texas docketed the case on March 5, 2024.

Mandamus is an "extraordinary remedy reserved for really extraordinary cases." *Defense Distributed v. Bruck*, 30 F.4th 414, 427 (5th Cir. 2022). Our circuit has held that mandamus is the "appropriate means to test a district court's ruling on a venue transfer motion." *In re Volkswagen of America, Inc.*, 545 F.3d 304, 308 (5th Cir. 2008). Indeed, NLRB does not contest this point. The Supreme Court has laid out three requirements that must be met before a reviewing court can grant mandamus relief: (1) the party seeking a writ of mandamus must have no other adequate means to attain the relief he desires"; (2) the petitioner must demonstrate that his "right to issuance of the writ is clear and indisputable"; and (3) even if the first two requirements are met, "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *In re Volkswagen*, 545 F.3d at 311 (quoting *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 452 U.S. 367, 380–81 (2004)).

## I

In the motion to transfer context, "this circuit has established that the first 'mandamus requirement [of no other adequate means of relief] is satisfied.'" *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 287 n.2 (5th Cir. 2013) (per curiam)).[2] NLRB admits as much. The fact that this case involves an out-of-circuit transfer

---

[2] These holdings arose in the context of transfers under 28 U.S.C. § 1404(a). Because 1406(a) is an "analogous" provision, "which shares the same statutory context" as § 1404(a), the same logic applies to 28 U.S.C. § 1406(a). *Van Dusen v. Barrack*, 376 U.S. 612, 621 n.11 (1964).

No. 24-40103

only strengthens the case for mandamus. *See* 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3935.4 (4th ed.) (noting that "completion of proceedings in the receiving court is likely to exert a strong pressure to affirm rather than set aside a completed trial solely because it would better have been held in the transferring court").

## II

In this case, the second prong is the one "most strenuously debate[d]." *Bruck*, 30 F.4th at 427. It requires SpaceX to demonstrate a "clear and indisputable right to the writ or a clear abuse of discretion by the district court." *Id.* (citing *Cheney*, 452 U.S. at 381). "A district court by definition abuses its discretion when it makes an error of law." *Id.* (citing *Koon v. United States*, 518 U.S. 81, 100 (1996)); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("[A] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law.").

Here, the district court's abuse of discretion concerns its determination that venue in the Southern District of Texas was improper. A civil action against an agency of the United States may be brought in a judicial district where "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). The parties did not and do not dispute that because no party resides in the Southern District of Texas, § 1391(e)(1)(B) is the only potential path to venue in the Southern District of Texas.

Section 1391(e)(1)(B) does not ask the district court to determine whether the current venue is the *best* venue. *Safety Nat. Cas. Corp. v. U.S. Dep't of Treasury*, No. CIV.A H-07-643, 2007 WL 7238943, at *5 (S.D. Tex. Aug. 20, 2007). The plain text of the statute permits a plaintiff to bring an action against the United States in any district where "a substantial part of

No. 24-40103

the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(e)(1)(B). The statute requires that the events (or omissions) in the Southern District were "*a substantial part*," not the *most* substantial part, of the events giving rise to the claim. *See* 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3806 (4th ed.) ("It has always been clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred.").

The language in 28 U.S.C. § 1391(e)(1) is identical to that found in the general venue statute. 28 U.S.C. § 1391(b)(2) (permitting venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").[3] This language is generally referred to as "transactional venue."

But in conducting its § 1391(e)(1)(B) analysis, the district court employed a "most substantial part of the events" test. The basis for the district court's approach seems to be *Andrade v. Chojnacki*, a 1996 district court opinion that, in a footnote, determined venue was improper if the activities transpiring in the forum district were insubstantial compared to the totality of events giving rise to the case. 934 F. Supp. 817, 827 n.18 (S.D. Tex. 1996). The *Andrade* test is, of course, not binding.

The larger issue is that *Andrade* takes its test from *Thornwell v. United States*, a 1979 case that predates the 1990 amendments to § 1391. 471 F. Supp. 344 (D.D.C. 1979); *see also* 15 Charles Alan Wright, Arthur R.

---

[3] Because §§ 1391 and 1392 use identical language, cases construing § 1391(b)(2) are particularly helpful in construing § 1391(e)(1)(B). *E.V. v. Robinson*, 200 F. Supp. 3d 108, 113 n.2 (D.D.C. 2016) ("Because § 1391(e)(1)(B) is identical to 28 U.S.C. § 1391(b)(2), cases construing that general venue provision are 'helpful in construing this provision.'" (quoting 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3815 (4th ed.))).

No. 24-40103

Miller & Edward H. Cooper, Federal Practice and Procedure § 3815 (4th ed.) ("Originally, the statute permitted venue where the 'cause of action' arose. This ambiguous language was jettisoned in favor of the current version in 1990."). *Thornwell*'s interpretation could not have survived the 1990 amendments because those amendments made clear that venue can be proper in multiple districts. "If the selected district's contacts are 'substantial,' it should make no difference that another's are more so, or the most so." *Crowe & Dunlevy, P.C. v. Stidham*, 609 F. Supp. 2d 1211, 1221 (N.D. Okla. 2009), aff'd, 640 F.3d 1140 (10th Cir. 2011); *see also Zurich Am. Ins. Co. v. Tejas Concrete & Materials. Inc.*, 982 F. Supp. 2d 714, 722–23 (W.D. Tex. 2013).

Further, it creates the possibility that venue would be improper everywhere. Suppose the activity giving rise to an action is equally distributed across ten districts, so each district contains 1/10 of the activity. Each district would conclude that the activity in its district, constituting 10% of the total activity, was insubstantial compared to the totality of the activity underlying the case. That result is plainly inconsistent with the text of § 1391, which does not contemplate lack of venue everywhere. Because *Andrade*'s footnote is inconsistent with the amended version of § 1391, the district court erred by relying on it.

The district court may have properly recited the distinction between proper venue and best venue, *see* District Court Order at 2 ("The Court should determine whether venue is proper but need not determine the 'best' venue." (citation omitted)), but the opinion repeatedly uses comparative language when evaluating the events taking place in the Southern District of Texas as opposed to the Central District of California. We have previously granted mandamus relief in venue transfer cases where the district court, despite reciting the legal rule, "misperceived and thus misapplied" the standard the law demands. *Bruck*, 30 F.4th at 429.

6

No. 24-40103

The most obvious example of this misapplication occurs in the district court's conclusion: "As has been made clear, the Central District of California is the venue in which the *most events* giving rise to this case occurred." District Court Order at 4–5 (emphasis added); *see also id.* at 3 (stating that events in this district are "far less significant than those occurring in California"); *id.* at 3 (stating that "an even larger disruption should be expected to have occurred in Hawthorne"); *id.* at 4 (stating that "these effects would be expected to have far more relevance to the Hawthorne facility"); *id.* at 3 (stating that "most related events . . . occurred at and in relation to the Hawthorne facility").

Here application of an erroneous legal standard was dispositive because "a substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of Texas." 28 U.S.C. § 1391(e)(1). There are three distinct buckets under which the Southern District of Texas satisfies this standard: (1) NLRB's action seeks to regulate SpaceX's conduct in the Southern District of Texas; (2) the allegedly unfair labor practices took place, at least in substantial part, in the Southern District of Texas; and (3) the open letter was intentionally sent to SpaceX's facilities in the Southern District of Texas and the Charging Parties purposefully solicited responses from employees in that district. Any one of these buckets is sufficient to satisfy the transactional venue test on its own. Taken together, the test is clearly satisfied.

A

Venue is proper in the Southern District of Texas because NLRB seeks to regulate SpaceX's conduct in that district. SpaceX is challenging the constitutionality of NLRB proceedings that seek to regulate SpaceX in the Southern District of Texas where it has a substantial presence through its Starbase and Houston facilities. Although scheduled to take place in

No. 24-40103

California, the administrative proceedings initiated by NLRB would regulate
SpaceX's operations and policies everywhere, including the Southern Dis-
trict of Texas. The administrative action is not limited in geographic scope
to California employees and facilities. In fact, the very allegations in the ad-
ministrative proceeding assert that SpaceX violated the NLRA at all of its
facilities, including the ones in the Southern District of Texas.

District courts within our circuit have held that under 28 U.S.C.
§ 1391(e)(1), venue "is proper where an unlawful rule imposes its burdens."
*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, No. 23-cv-206, 2023 WL
2975164, at *2 (N.D. Tex. Apr. 17, 2023) (internal quotations omitted); *see
also Umphress v. Hall*, 479 F. Supp. 3d 344, 351–52 (N.D. Tex. 2020); *Texas
v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015) (injunction termi-
nated on other grounds). In these cases, transactional venue was held to be
proper where: (1) the plaintiff has a significant presence in the forum; and
(2) the plaintiff was subject to actual or imminent burden within the forum
should the contested agency action take effect. *See Career Colls.*, 2023 WL
2975164, at *2.

SpaceX easily satisfies both requirements. It has a significant presence
in the Southern District of Texas through its Starbase facility. The district
court's order suggests that there are six total SpaceX facilities, one of which
is in the Southern District of Texas. SpaceX has consistently represented
that it also has two facilities in the Southern District of Texas (the Starbase
facility and a "human spaceflight mission operations and integration facility
in Houston"). For purposes of this analysis, the exact number of facilities
does not matter. Starbase is a substantial part of SpaceX's operations. Even

No. 24-40103

if the district court's factual assertions are correct[4] and Starbase is the only facility in the Southern District of Texas, that would still constitute a substantial presence in the Southern District of Texas. Under the district court's factual determination, Starbase alone accounts for one sixth of SpaceX facilities which are spread out across Texas, Florida, and California. Further, Starbase is where SpaceX is "developing, manufacturing, and launching Starship, the most powerful rocket ever built."

SpaceX also satisfies the second transactional venue requirement because it is subject to substantial burdens imposed by government action on its operations and policies in the Southern District of Texas. NLRB has initiated proceedings against SpaceX for unlawful employment practices in violation of the NLRA. It is undisputed that the remedy NLRB seeks to implement would burden SpaceX employees and facilities in the Southern District of Texas by requiring them to post notices and conduct mandatory training.

NLRB argues that the substantial burden requirement can only be met by the sort of notice-and-comment rulemaking found in *Career Colleges* and *Texas v. United States*.[5] This distinction cannot be grounded in the statutory language or in caselaw. Section 1391's unambiguous text makes no subject matter distinctions. It does not distinguish between an administrative adjudication and notice-and-comment rulemaking. Both can burden potential plaintiffs in numerous districts and those burdens, wherever they occur, can constitute a "substantial part of the events" giving rise to the claim. *See* 28

---

[4] The district court did not make any mention of judicial notice and seems to have gone outside briefing as it cited SpaceX's website to determine the total number of facilities.

[5] NLRB does not address the fact that *Umphress* did not involve notice-and-comment rulemaking. That case involved efforts to regulate the actions of an individual plaintiff within the forum in which he filed suit. *Umphress*, 479 F. Supp. 3d at 347–48.

No. 24-40103

U.S.C. § 1391(e)(1). NLRB could have limited the effect of its adjudication to the California facilities. *See Seariver Maritime Financial Holdings, Inc. v. Pena*, 952 F. Supp. 455 (S.D. Tex. 1996) (holding that venue was improper in Texas because the challenged statute only regulated activities in Alaska). Having decided to target all SpaceX facilities and employees, NLRB cannot now escape the implications of that decision.

B

SpaceX can also satisfy the transactional venue standard because the alleged unfair labor practices in the administrative complaint took place, in substantial part, in the Southern District of Texas. The alleged unfair labor practice is an e-mail sent from SpaceX's President and COO, Gwynne Shotwell, from McGregor, Texas to *all* SpaceX employees, including those located at the Starbase and Houston facilities.

The district court considered this event to be mere "incidental" contact with the Southern District of Texas. This misunderstands the nature of the event. NLRB is charging SpaceX with unfair labor practices based on a communication that was sent to all employees. Far from being merely incidental, this e-mail was a purposeful choice, and one that NLRB contends was unlawful as to all of SpaceX's employees in the Southern District of Texas. That is a substantial part of the events. We have held that communications sent to Texas can constitute a substantial part of the events giving rise to the plaintiff's claims so long as those claims derive directly from those communications. *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 493 (5th Cir. 2018); *see also Long v. Grafton Executive Search, LLC*, 263 F. Supp. 2d 1085, 1090 (N.D. Tex. 2003) (categorizing an e-mail sent to Texas recipients as a substantial Texas-based event for purposes of transactional venue).

Despite recognizing this binding precedent, the district court distinguished *Trois* by stating that this case derived directly from the administrative

No. 24-40103

proceeding that stemmed from Shotwell's e-mail. It claimed that Shotwell's e-mail and the letter to which it was responding only reached the Starbase and Houston facilities "incidentally." The district court similarly distinguished *Long* by stating that the e-mail in that case was a "direct communication to Texas; the content caused the claim, and the injury was experienced in Texas." This distinction is nearly impossible to grasp.

First, the district court never explains what constitutes a "direct" as opposed to "indirect" or "incidental" communication. As I see it, any communication purposefully sent to a person or persons within a district is a direct communication.[6] It seems the district court may be using "indirect" or "incidental" to refer to the fact that "Texas is only one of the many locations that the open letter reached." To the extent that is the case, this constitutes clear legal error. Merely sending a message to persons in multiple forums cannot render the contact resulting from that decision as "incidental."

As has been made clear, transactional venue contemplates multiple legally permissible venues. *See Umphress*, 479 F. Supp. 3d at 351 ("Under the amended statute it is now absolutely clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred."); *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165-1166 (10th Cir. 2010); *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004); *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003) (determining whether venue was proper requires "ask[ing] whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts"). The district court's purported rule could create cases with no proper venue because a message sent to multiple districts

---

[6] An indirect communication might be at play when someone who received an initial message forwarded that message to another district.

No. 24-40103

would be "incidental" as to all of those districts.

Second, the content of the email sent by Shotwell is the very act alleged to be an unfair labor practice, leading to the administrative proceedings against SpaceX.

Third, and as discussed in Part I.A., SpaceX is subject to burdensome and binding regulation as a result of the administrative proceedings resulting from this letter.

C

The facts that gave rise to NLRB's proceedings against SpaceX also have substantial ties to the Southern District of Texas, providing a third basis for satisfying § 1391(e)(1)(B). The Charging Parties, (former employees who filed NLRB charges against SpaceX), wrote an Open Letter to all SpaceX employees, including those located in the Southern District of Texas. This letter linked to surveys soliciting feedback and support for their letter. In other words, the Charging Parties reached into the Southern District and specifically involved SpaceX employees in that district. The open letter led to numerous meetings, discussions, and decreased productivity by employees in the Southern District of Texas. SpaceX has stated in declarations that the Open Letter "derailed technical conversations for a week at Starbase, during a critical phase in meeting targets for Starship" and that as a result, numerous unplanned meetings were required "to address disruption and concern resulting from the Open Letter."

The Open Letter, which was intentionally distributed to SpaceX employees in the Southern District of Texas, explicitly sought their support. Thus, the events giving rise to the administrative complaint itself have substantial involvement with and impact on the Southern District of Texas. Just because this e-mail was sent to employees in additional districts—possibly leading to substantial involvement or even more involvement with those

No. 24-40103

districts—does not mean the Southern District of Texas fails to satisfy § 1391. *See Umphress*, 479 F. Supp. 3d at 351 ("Under the amended statute it is now absolutely clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred."); 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3806 (4th ed.) ("It has always been clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred."). The district court's contrary holding was clear error.

## D

Any one of these three buckets would be enough to satisfy the transactional venue standard. The district court's error is made all the more egregious by failing to consider whether all of these connections to the Southern District taken together amount to a substantial part of the events giving rise to SpaceX's claim. Section 1391 nowhere in its text requires courts to disaggregate the various types of events and determine whether each bucket can individually account for a "substantial part" of the events. Instead, it simply asks whether a "substantial part of the events or omissions giving rise to the claim" occurred in the chosen venue.

NLRB's desire to bind SpaceX in the Southern District of Texas through administrative proceedings; the allegedly unfair labor practice that took place—in substantial part—in the Southern District of Texas; and the purposeful solicitation of SpaceX employees in the Southern District of Texas by the Charging Parties, combined with the resulting disruption, clearly amount to a substantial part of the events underlying SpaceX's claims against NLRB.

Because the district court in practice applied a "most substantial events" test, it committed a clear legal error that, by definition, amounts to a clear abuse of discretion. *Bruck*, 30 F.4th at 427 (citing *Koon*, 518 U.S. at

No. 24-40103

100). Therefore, prong two of the mandamus requirements is satisfied.

### III

The third prong of mandamus relief requires exercise of our discretion. We have made clear that mandamus relief is "particularly appropriate" where the issues presented "have an importance beyond the immediate case." *In re Volkswagen*, 545 F.3d at 319 (citing *United States v. Bertoli*, 994 F.2d 1002, 1014 (3d Cir. 1993)). We further noted that "venue transfer decisions are rarely reviewed" and that this can lead to the undesirable result of inconsistent outcomes. *Id.* District courts in our circuit need guidance on venue standards. Permitting an erroneous application of § 1391(e)(1)(B) to stand without correction provokes uncertainty in the law and may lead to further use of the erroneous "most substantial events" test.

Mandamus relief is especially appropriate in the context of a § 1406(a) transfer of venue. 28 U.S.C. § 1406 permits a case to be transferred only when the case was filed "laying venue in the *wrong* division or district." 28 U.S.C. § 1406(a) (emphasis added). This is different from change of venue under 28 U.S.C. § 1404(a). That statute permits transfer of a case "[f]or the convenience of parties and witnesses, in the interest of justice" to any district or division where the case might have been brought.[7] *In re Volkswagen* and

---

[7] NLRB, in its motion to transfer the case, argued for transfer under both § 1406 and § 1404. The district court did not address § 1404. Instead, the district court transferred the case under § 1406. In its response opposing a writ of mandamus, NLRB did not present the merits of its § 1404 argument. This is likely because the argument for transfer under § 1404 is a weak one. It is NLRB's burden to demonstrate that the transferee venue is "clearly more convenient." *Volkswagen*, 454 F.3d at 313–15 (explaining that the underlying premise of § 1404(a) is that defendants should not be subject to inconvenient venues). Because SpaceX seeks a preliminary injunction based on purely constitutional arguments, the need for witnesses unique to California is nearly non-existent, and the convenience concern underlying § 1404(a) does not favor transfer. Nor do the rest of the equitable factors under our caselaw clearly favor the Central District of California.

No. 24-40103

*Bruck* both dealt with transfers under § 1404. *In re Volkswagen*, 545 F.3d at 319; *Bruck*, 30 F.4th at 423 ("[I]n this circuit, mandamus is the prescribed vehicle for reviewing rulings on transfers of cases pursuant to 28 U.S.C. § 1404(a)."). Despite § 1404 involving much more discretion than § 1406, those cases still granted mandamus relief.

A transfer under 1406(a) does not permit consideration of the same sort of equitable principles ("convenience" or the "interest of justice") as § 1404(a). This makes the legal error in determining where a case is permitted to be brought all the more significant. Because § 1406 only permits transfer of a case when the chosen venue is legally impermissible, a legal error under § 1406 is much more significant than a legal error under § 1404. Error under § 1406 artificially restricts the right of plaintiffs to bring their claims in our circuit.

Last, the underlying merits of this claim weigh in favor of granting mandamus relief. Before us are "issues that implicate not only the parties' interests but those of the judicial system itself." *Bruck*, 30 F.4th at 426–27 (quoting *Bertoli*, 994 F.2d at 1014). SpaceX is challenging the constitutionality of NLRB's very structure. This case implicates the methods and procedures permitted under our constitution when the federal government regulates employer conduct.

NLRB does not deny that it seeks to avoid our court's precedent in *SEC v. Jarkesy*, a fact that the district court did not cite or address. 34 F.4th 446 (5th Cir. 2022) (holding that "[t]wo layers of for-cause protection" for inferior officers is forbidden under "Supreme Court Precedent"), *cert. granted*, 143 S. Ct. 2688 (argued Nov. 29, 2023). I do not make any assessment of whether *Jarkesy* would control this case, but NLRB's desire to avoid our circuit's precedent is further justification for exercising our discretion in granting mandamus relief.

No. 24-40103

\*     \*     \*

In the federal court system, plaintiffs can prefer favorable caselaw and sue in any appropriate venue. NLRB cannot seek to condemn SpaceX's past labor practices in the Southern District of Texas, bind SpaceX's future practices in the Southern District of Texas, and at the same time avoid proper venue in the Southern District of Texas. Failure to follow the plain text of the venue statutes and settled Fifth Circuit caselaw is disappointing and should have been corrected.

For the foregoing reasons, I would conclude that mandamus relief is appropriate to remedy the erroneous transfer of this case. *See In re Volkswagen*, 545 F.3d at 319; *Bruck*, 30 F.4th at 423. We should have exercised our discretion to grant mandamus relief and directed the district court to: (1) vacate its transfer order dated February 15, 2024; and (2) rule expeditiously on the pending motion for a preliminary injunction.

I respectfully dissent.

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 17, 2024

Lyle W. Cayce
Clerk

————————

No. 24-40103

————————

In re Space Exploration Technologies, Corporation,

*Petitioner.*

————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:24-CV-1

————————————

<u>UNPUBLISHED ORDER</u>

Before Elrod, Haynes, and Douglas, *Circuit Judges.*

Per Curiam:

This case involved venue issues that led to a mandamus proceeding, during which NLRB attorneys David Boehm and Lynn Ta made some errors that generated a series of questions from our court. In reviewing the answers, we conclude that Boehm and Ta were not intending to violate the law and the rules.[1] We also conclude that some advice as to what is proper would be helpful to these attorneys.

It is important to remember that once an attorney becomes aware of a mistake in a filing, it must advise the court of that error. *See* ABA Model Rule 3.3 (stating that "[a] lawyer shall not knowingly . . . make a false statement of

————————————

[1] NLRB began its response that it appreciated "this opportunity to clarify any misconceptions it may have inadvertently caused . . . ."

fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer"); *Domain Prot., L.L.C. v. Sea Wasp, L.L.C.*, 23 F.4th 529, 543 (5th Cir. 2022) ("The duty of candor extends beyond not making false statements.  An omission may also violate the duty."); *United States v. Price*, No. 3:08-CR-0268-B, 2008 WL 5049295, at *3 (N.D. Tex. Nov. 25, 2008) (sanctioning attorney for, inter alia, making numerous misrepresentations to the court and failing to correct them).

Also important to note is that when an attorney concludes that the court in which events are occurring lacks jurisdiction, the proper remedy, as the Supreme Court has explained, is to challenge that court's orders for lack of jurisdiction, not ignore them.  "[A]ll orders and judgments of courts must be complied with promptly.  If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal.  Persons who make private determinations of the law and refuse to obey an order generally risk [sanctions] even if the order is ultimately ruled incorrect." *Maness v. Meyers,* 419 U.S. 449, 458 (1975); *Seven Arts Filmed Ent. Ltd. v. Jonesfilm*, 538 F. App'x 444, 446 (5th Cir. 2013) (quoting *Maness*, 419 U.S. at 458).

This principle is well recognized.  *Id.*; *In re Establishment Inspection of Hern Iron Works, Inc.*, 881 F.2d 722, 726 (9th Cir. 1989) ("[A]lthough both counsel and litigant may exercise their right to object to a court ruling and may vigorously advocate their positions before the appropriate tribunal, both the dignity of the court and the orderly functioning of the judicial system necessitate prompt adherence to the writ of the court."); *In re Novak*, 932 F.2d 1397, 1400 (11th Cir. 1991); Canon 7-22 of ABA Model Rules ("Respect for judicial rulings is essential to the proper administration of justice; however a litigant or his lawyer may, in good faith and within the framework of the law, take steps to test the correctness of a ruling of a tribunal.");

*F.M.D. Holdings, LLC v. Regent Fin. Corp.*, No. 5:20-CV-269-H, 2021 WL 5883136 at *16 (N.D. Tex. Dec. 10, 2021) (stating that "no matter how fervently" a party believes they can "avoid this Court's jurisdiction . . . a party cannot ignore a Court order in good faith"); *In re Guidry*, 354 B.R. 824, 834 (Bankr. S.D. Tex. 2006) ("The law prescribes the correct manner to challenge rules and orders of court. To ignore a Court's order is not an option."). It is important that attorneys respect the courts of this country regardless of whether they agree with them.

We recognize that this case presented unusual circumstances that developed rapidly, and that Boehm and Ta may have been following the direction of their supervisors. However, it is always important that each individual attorney be mindful and adhere to their ethical obligations. Accordingly,

IT IS ORDERED that Boehm and Ta review this order and remember to respect court rulings even as they challenge them.

D‍ANA M. D‍OUGLAS, *Circuit Judge*, dissenting:

With deepest respect to my esteemed colleagues, I fail to see the necessity of today's order. I agree with the majority that the NLRB did not intend to violate any law or rules, but I would go one step further. In my view, the NLRB unequivocally did not violate any law or rules throughout this complicated proceeding, and its conduct amounted to nothing more than zealous advocacy. *See* ABA Model Rule 1.3 (stating that "[a] lawyer must . . . act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf").

The Southern District of Texas issued the transfer order in this case on February 15, 2024, along with an accompanying paperless entry, stating: "Interdistrict transfer to Central District of California. Case transferred electronically. Case terminated on 2/15/2024, filed." We entered a stay order on February 19, 2024, after jurisdiction of the case had already been transferred to the Central District of California. *See In re Red Barn Motors, Inc.*, 794 F.3d 481, 484 (5th Cir. 2015) ("It seems uncontroversial . . . that a transfer to another circuit removes the case from our jurisdiction, and numerous circuits have stated that rule plainly.") (collecting cases); *see also Wilson v. City of San Jose*, 111 F.3d 688, 693 (9th Cir. 1997) ("[D]uring the time between entry of the transfer order and the receipt of the case file in the transferee court, the transferor court remains the forum in which pleadings may be filed.") (emphasis omitted). It was only natural for the NLRB to expeditiously seek answers regarding in which court it could and should file a response to SpaceX's expedited motion for a preliminary injunction.

Contrary to the majority's suggestion, the NLRB did not ignore this court's orders. As noted, we issued a stay, not an injunction. And as the Supreme Court has explained, a stay "operates upon the judicial proceeding itself," while an injunction "is directed at someone, and governs that party's

conduct." *Nken v. Holder*, 556 U.S. 418, 428 (2009).  In other words, the stay did not prohibit the NLRB from taking the actions taken in this case.

The NLRB took responsibility in apprising both the California district court and this circuit of all the actions occurring in this case.  In fact, within about two hours of learning which judge the California district court case was properly docketed with, the NLRB informed our panel of the change in docket numbers.  Nothing required the NLRB to do more.  Therefore, I must dissent.

# 𝔘nited 𝔖tates 𝔠ourt of 𝔄ppeals
# for the 𝔉ifth 𝔠ircuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 17, 2024

Lyle W. Cayce
Clerk

No. 24-40103

In re Space Exploration Technologies, Corporation,

*Petitioner.*

---

Petition for a Writ of Mandamus
to the United States District Court
for the Southern District of Texas
USDC No. 1:24-CV-1

---

ON PETITION FOR REHEARING EN BANC

<u>UNPUBLISHED ORDER</u>

Before Elrod, Haynes, and Douglas, *Circuit Judges.*

Per Curiam:[*]

 Treating the petition for rehearing en banc as a motion for reconsideration (5th Cir. R. 35 I.O.P.), the motion for reconsideration is DENIED. The petition for rehearing en banc is DENIED because, at the request of one of its members, the court was polled, and a majority did not vote in favor of rehearing (Fed. R. App. P. 35 and 5th Cir. R. 35).

 In the en banc poll, eight judges voted in favor of rehearing (Chief Judge Richman and Judges Jones, Smith, Elrod, Willett, Duncan, Engelhardt, and Oldham), and eight judges voted against rehearing (Judges Stewart, Southwick, Haynes, Graves, Higginson, Wilson, Douglas, and Ramirez).

---

[*] Judge James C. Ho did not participate in the consideration of the rehearing en banc.

No. 24-40103

By Edith Hollan Jones, Smith, Elrod, Duncan, Engelhardt, and Oldham, dissenting from denial of rehearing en banc:

It is hard to improve on Judge Elrod's dissent from the single-line panel order transferring this case to the Central District of California. For all the reasons stated therein, mandamus ought to have been granted by the panel. Therefore, I attach her opinion and add a few points.

## I.

28 U.S.C. § 1391(b)(2) authorizes a plaintiff to sue in any federal judicial district where a "substantial part of the events or omissions giving rise to the claim occurred." *Id.* In identical language, 28 U.S.C. § 1391(e)(1)(B) authorizes a plaintiff to sue an agency of the federal government in any federal judicial district where "a substantial part of the events or omissions giving rise to the claim occurred." This language is identical for at least two reasons. First, it provides plaintiffs with a broad range of venue choices in federal court.[1] Second, it places suits against the federal government, a defendant with limitless litigating resources, on a par with those against private defendants.

Unfortunately, the district court's transfer order, based on the theory that venue in the Southern District of Texas was improper,[2] contravenes both rationales. First, it erroneously denied SpaceX as plaintiff its choice of forum to litigate about alleged unfair labor practices that, if sanctioned, will govern its relations with hundreds of Texas and thousands of nationwide employees. Second, it misapplied the term "substantial part," crafting a

---

[1] As Judge Elrod's dissent explains, Congress amended Section 1391 in 1990 to substitute this broader language for the former limitation of venue to where "the cause of action arose." *In re Space Expl. Techs., Corp.*, 96 F.4th 733 (5th Cir. 2024) (Elrod, J., dissenting).

[2] 28 U.S.C. § 1406(a).

No. 24-40103

comparative test that no federal court would use were this a case against private defendants. A simple hypothetical suffices. If a California airline passenger claimed injury from a plane crash over Nevada and sued five defendants (the airline, the plane manufacturer, two component manufacturers, and a maintenance facility) in another venue distinguishable from all others solely because one of the defendants manufactured rivets in that venue, would *any* court find that allegedly defective rivets could not be "a substantial part" of the claim?

That is the problem with this case that justified the "extraordinary" writ of mandamus to overturn the district court's erroneous transfer decision. The decision's comparative approach to "substantiality" either grossly privileges federal defendants over civil defendants or, equally troubling, provides fodder for endless jockeying in cases where private defendants will try to use a comparative "substantial part" analysis to assert improper venue or just prolong the litigation.

Either way, "*a substantial part*" cannot be construed textually to mean "*more*" or "*most* substantial," as the district court's analysis repeatedly suggests. "Substantial" is a qualitative, not a comparative term. One dictionary definition uses the terms "of real importance," "of considerable amount," "having substance, not illusory." *Substantial*, Little Oxford Dictionary (6th ed. 1990). For further exegesis, antonyms for "substantial" include "insubstantial" (of course), "little," "minor," "slight," "negligible," "insignificant." *Substantial*, Merriam-Webster Thesaurus, https://www.merriam-webster.com/thesaurus/substantial (last visited Apr. 11, 2024). Not to be "substantial," therefore, means to be a little, minor, slight, etc. part of "the events or omissions giving rise to the claim."

No. 24-40103

Based on the text of Sections 1391(b)(2) and 1391(e)(1)(B), the district court's comparative, even quantitative approach to venue was plainly incorrect.[3]  As Judge Elrod's dissent explains, SpaceX has large and important operations in the Southern District of Texas.  The remedy sought by NLRB would regulate all SpaceX's Texas employees.  The conduct forming the basis of NLRB's complaint intentionally included employees in this district.  And the Charging Parties' Open Letter that generated the complaint was received by all and responded to by some 200 Texas employees, and it disrupted SpaceX's operations in the Southern District.  These operative facts are "substantial" under the statute.  Returning to the comparison with litigation against private defendants, what court would hold venue "improper" by finding the rivets to be "small" or "few in number" compared with the allegations that other components contributed to the crash, or "not enough on their own compared with other alleged factors"?  A comparative analysis like that employed by the district court is at odds with the proposition that "[i]t has always been clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred."  14D C. Wright, A. Miller, & R. Freer, FEDERAL PRACTICE AND PROCEDURE § 3806 (4th ed. 2023).

This comparative interpretation will inevitably affect ordinary civil litigation by incentivizing otherwise unlikely 1406(a) motions and some erroneous transfer orders.  However, its detriment in litigation against federal agencies is hard to underestimate.  Where companies with geographically widespread operations seek to challenge regulations or agency actions, an agency may now compare the "substantiality" of the regulations' or actions' effect in the company's chosen venue against effects

---

[3] The court calculated that "one sixth" of the relevant events allegedly occurred in Texas, and this was "insubstantial in number."  Even if this were an accurate calculation, which is dubious, "one sixth" is not "insubstantial" as explained by other antonyms of "substantial" according to the above authorities.

No. 24-40103

in other venues.    In many cases, the default venue, from the agency's perspective, would be the District of Columbia.    To the extent such maneuvers succeeded, they would wholly undercut the expansive text—and purpose—of Section 1391(e)(1)(B).[4]    That the government's litigation resources are virtually limitless compared with those of private citizens and entities adds to the problematic nature of a decision that facilitates government motions for changes of venue under this provision.

## II.

That mandamus is warranted under this court's precedents is well demonstrated in Judge Elrod's dissent.    Legally, this court is bound to correct manifest errors of law regarding venue transfers.    *See In re Clarke*, 94 F.4th 502, 516 (5th Cir. 2024); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 319 (5th Cir. 2008) (en banc).    Indeed, our court has consistently held that mandamus relief in venue transfer cases is "particularly appropriate when the issues also have an importance beyond the immediate case." *In re Volkswagen*, 545 F.3d at 319; *see also In re Clarke*, 94 F.4th at 516 (same); *In re TikTok, Inc.*, 85 F.4th 352, 367 (5th Cir. 2023) (same); *Defense Distributed v. Bruck*, 30 F.4th 414, 426 (5th Cir. 2022) (same).    For instance, in *Clarke*, we exercised discretion to grant mandamus because venue transfer decisions "often have importance beyond the immediate case because [they] are rarely reviewed, and district courts have applied our tests with too little regard for consistency of outcomes."    94 F.4th at 516 (citation and quotations omitted).

The present controversy represents a scenario likely to have significant consequences in this circuit.    The district court's decision, for instance, conflicts with cases in which courts in this circuit have held that

---

[4] Indeed, Congress enacted § 1391(e) "to broaden the venue of civil actions" against government agencies, officers, and employees. *Schlanger v. Seamans*, 401 U.S. 487, 490 n.4, 91 S. Ct. 995, 997 n.4 (1971); *see also* 14D C. Wright, A. Miller, & R. Freer, FEDERAL PRACTICE AND PROCEDURE § 3815 (4th ed. 2023).

No. 24-40103

venue is proper against a federal agency where (1) the plaintiff has a significant presence in the forum; and (2) the plaintiff is subject to an actual or imminent burden should the challenged action take effect. *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, No. 23-cv-206, 2023 WL 2975164, at *2 (N.D. Tex. Apr. 17, 2023); *see also Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015) (injunction terminated on other grounds). Because venue transfer decisions, and petitions for writs of mandamus based thereon, have been fraught with uncertainty, it behooves this court to ensure that venue law is clarified both legally and procedurally.[5]

### III.

The necessity for en banc rehearing is enhanced because of improper conduct on the part of NLRB attorneys. In their zeal to deprive this court of mandamus jurisdiction and nullify the stay of the transfer order issued by the panel, NLRB lawyers misrepresented facts to this court and have failed to acknowledge error. A transfer order takes effect only when the transferred case is actually docketed in the transferee court. *Lou v. Belzberg,* 834 F.2d 730, 733 (9th Cir. 1987). When questions arose whether the case had actually been transferred to the Central District of California, the attorneys attempted to persuade the Central District of California to ignore this court's correct determination that it had retained jurisdiction.

---

[5] Indeed, in the wake of this controversy, the Southern District of Texas adopted a local rule that requires a 21-day waiting period for transfers to another district to allow an opportunity for stay or appellate review. *See* S.D. Tex. General Order No. 2024-2. Many other courts have adopted similar rules. *See, e.g., In re Warrick*, 70 F.3d 736, 739 (2d Cir. 1995) ("The court rules of the District of Connecticut provide that, '[i]n a case ordered transferred to another District Court . . . the Clerk shall,' absent filing of a motion for reconsideration, mail the papers on file in the case 'on the eleventh day following the order of transfer . . . . '" (quoting D. CONN. L. CIV. R. 18)); *see also* 15 C. Wright, A. Miller, & R. Freer, FEDERAL PRACTICE AND PROCEDURE § 3846 (4th ed. 2023) ("[T]he better practice, codified in some local district court rules, is to stay the effect of transfer orders for a sufficient period to enable appellate review to be sought.").

No. 24-40103

Fortunately, the Central District of California followed this court's directive rather than government counsel's signed notice to ignore this court's jurisdictional determination.[6]

By filing suit in the Southern District of Texas, SpaceX selected what it perceived as a statutorily permissible venue for its challenge to the constitutional setup of NLRB adjudication procedures.  It did not misrepresent facts to the courts or attempt to manipulate filing procedures.  That federal attorneys, who are paid by the people, responsible to the people, and acting for the people, engaged in shabby tactics to accomplish their own forum shopping result is abhorrent.  This court could thwart future abuses by clarifying the venue law applicable here.  Sadly, in recent years, Justice Jackson's famous admonition that the prosecutor may strike hard blows but not foul ones has too often been ignored.  Courts must deal with such unethical tactics, lest they destroy the evenhandedness of the courts in resolving naturally uneven contests between private citizens and the federal government.

I respectfully dissent from the denial of rehearing en banc.

ATTACHMENT—Elrod dissent

---

[6] Notably, counsel for the U.S. Attorney for the Southern District of Texas stated that it took no part in these actions.

No. 24-40103

Jᴇɴɴɪꜰᴇʀ Wᴀʟᴋᴇʀ Eʟʀᴏᴅ, *Circuit Judge*, dissenting:

Space Exploration Technologies seeks a writ of mandamus in order to keep the lawsuit it filed against NLRB in the Southern District of Texas. Today, in a one-line order, the panel denies that relief. In doing so, the panel permits an erroneous view of the requirements for filing claims in our circuit, risks confusion amongst the district courts of our circuit, and deprives plaintiffs of the opportunity to seek justice in a lawful venue. Because the district court committed legal error by asking where the "*most* significant part of the events" took place and because the other mandamus factors are satisfied, I would conclude that mandamus relief is appropriate and direct the district court to: (1) vacate its transfer order dated February 15, 2024; and (2) rule expeditiously on the pending motion for a preliminary injunction.

SpaceX originally filed suit in the Southern District of Texas, seeking preliminary injunctive relief from administrative hearings before the NLRB. SpaceX contends that the structure of the hearings violates Article II, the Fifth Amendment, and the Seventh Amendment of the Constitution of the United States. The district court granted NLRB's motion to transfer the case to the Central District of California, reasoning that the Central District is where most of the events giving rise to the case occurred. SpaceX petitioned for a writ of mandamus, and we administratively stayed the transfer order so that we could review SpaceX's petition. Because the stay was entered before transfer of the case was complete,[1] we confirmed that we retained jurisdiction over the case. The Central District of California stated that it would return the case upon request from the Southern District of

---

[1] Transfer was not complete because although the case had been sent electronically, it had not been docketed in the transferee court. *In re Space Exploration Technologies, Corp.*, No. 24-40103, Order (Feb. 26, 2024) (citing *Lou v. Belzberg*, 834 F.2d 730, 733 (9th Cir. 1987)).

No. 24-40103

Texas.  On March 1, 2024, the Southern District of Texas requested that the case be returned, and the Central District of California ordered that the case be returned on March 4, 2024.  The Southern District of Texas docketed the case on March 5, 2024.

Mandamus is an "extraordinary remedy reserved for really extraordinary cases."  *Defense Distributed v. Bruck*, 30 F.4th 414, 427 (5th Cir. 2022).  Our circuit has held that mandamus is the "appropriate means to test a district court's ruling on a venue transfer motion."  *In re Volkswagen of America, Inc.*, 545 F.3d 304, 308 (5th Cir. 2008).  Indeed, NLRB does not contest this point.  The Supreme Court has laid out three requirements that must be met before a reviewing court can grant mandamus relief:  (1) the party seeking a writ of mandamus must have no other adequate means to attain the relief he desires"; (2) the petitioner must demonstrate that his "right to issuance of the writ is clear and indisputable"; and (3) even if the first two requirements are met, "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances."  *In re Volkswagen*, 545 F.3d at 311 (quoting *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 452 U.S. 367, 380–81 (2004)).

I

In the motion to transfer context, "this circuit has established that the first 'mandamus requirement [of no other adequate means of relief] is satisfied.'"  *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 287 n.2 (5th Cir. 2013) (per curiam)).[2]  NLRB admits as much.  The fact that this case involves an out-of-circuit transfer

---

[2] These holdings arose in the context of transfers under 28 U.S.C. § 1404(a). Because 1406(a) is an "analogous" provision, "which shares the same statutory context" as § 1404(a), the same logic applies to 28 U.S.C. § 1406(a).  *Van Dusen v. Barrack*, 376 U.S. 612, 621 n.11 (1964).

No. 24-40103

only strengthens the case for mandamus. *See* 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3935.4 (4th ed.) (noting that "completion of proceedings in the receiving court is likely to exert a strong pressure to affirm rather than set aside a completed trial solely because it would better have been held in the transferring court").

## II

In this case, the second prong is the one "most strenuously debate[d]." *Bruck*, 30 F.4th at 427. It requires SpaceX to demonstrate a "clear and indisputable right to the writ or a clear abuse of discretion by the district court." *Id.* (citing *Cheney*, 452 U.S. at 381). "A district court by definition abuses its discretion when it makes an error of law." *Id.* (citing *Koon v. United States*, 518 U.S. 81, 100 (1996)); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("[A] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law.").

Here, the district court's abuse of discretion concerns its determination that venue in the Southern District of Texas was improper. A civil action against an agency of the United States may be brought in a judicial district where "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). The parties did not and do not dispute that because no party resides in the Southern District of Texas, § 1391(e)(1)(B) is the only potential path to venue in the Southern District of Texas.

Section 1391(e)(1)(B) does not ask the district court to determine whether the current venue is the *best* venue. *Safety Nat. Cas. Corp. v. U.S. Dep't of Treasury*, No. CIV.A H-07-643, 2007 WL 7238943, at *5 (S.D. Tex. Aug. 20, 2007). The plain text of the statute permits a plaintiff to bring an action against the United States in any district where "a substantial part of

No. 24-40103

the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(e)(1)(B). The statute requires that the events (or omissions) in the Southern District were "*a* substantial part," not the *most* substantial part, of the events giving rise to the claim. *See* 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3806 (4th ed.) ("It has always been clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred.").

The language in 28 U.S.C. § 1391(e)(1) is identical to that found in the general venue statute. 28 U.S.C. § 1391(b)(2) (permitting venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"). [3] This language is generally referred to as "transactional venue."

But in conducting its § 1391(e)(1)(B) analysis, the district court employed a "most substantial part of the events" test. The basis for the district court's approach seems to be *Andrade v. Chojnacki*, a 1996 district court opinion that, in a footnote, determined venue was improper if the activities transpiring in the forum district were insubstantial compared to the totality of events giving rise to the case. 934 F. Supp. 817, 827 n.18 (S.D. Tex. 1996). The *Andrade* test is, of course, not binding.

The larger issue is that *Andrade* takes its test from *Thornwell v. United States*, a 1979 case that predates the 1990 amendments to § 1391. 471 F. Supp. 344 (D.D.C. 1979); *see also* 15 Charles Alan Wright, Arthur R.

―――――――――――

[3] Because §§ 1391 and 1392 use identical language, cases construing § 1391(b)(2) are particularly helpful in construing § 1391(e)(1)(B). *E.V. v. Robinson*, 200 F. Supp. 3d 108, 113 n.2 (D.D.C. 2016) ("Because § 1391(e)(1)(B) is identical to 28 U.S.C. § 1391(b)(2), cases construing that general venue provision are 'helpful in construing this provision.'" (quoting 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3815 (4th ed.))).

No. 24-40103

Miller & Edward H. Cooper, Federal Practice and Procedure § 3815 (4th ed.) ("Originally, the statute permitted venue where the 'cause of action' arose. This ambiguous language was jettisoned in favor of the current version in 1990."). *Thornwell*'s interpretation could not have survived the 1990 amendments because those amendments made clear that venue can be proper in multiple districts. "If the selected district's contacts are 'substantial,' it should make no difference that another's are more so, or the most so." *Crowe & Dunlevy, P.C. v. Stidham*, 609 F. Supp. 2d 1211, 1221 (N.D. Okla. 2009), aff'd, 640 F.3d 1140 (10th Cir. 2011); *see also Zurich Am. Ins. Co. v. Tejas Concrete & Materials. Inc.*, 982 F. Supp. 2d 714, 722–23 (W.D. Tex. 2013).

Further, it creates the possibility that venue would be improper everywhere. Suppose the activity giving rise to an action is equally distributed across ten districts, so each district contains 1/10 of the activity. Each district would conclude that the activity in its district, constituting 10% of the total activity, was insubstantial compared to the totality of the activity underlying the case. That result is plainly inconsistent with the text of § 1391, which does not contemplate lack of venue everywhere. Because *Andrade*'s footnote is inconsistent with the amended version of § 1391, the district court erred by relying on it.

The district court may have properly recited the distinction between proper venue and best venue, *see* District Court Order at 2 ("The Court should determine whether venue is proper but need not determine the 'best' venue." (citation omitted)), but the opinion repeatedly uses comparative language when evaluating the events taking place in the Southern District of Texas as opposed to the Central District of California. We have previously granted mandamus relief in venue transfer cases where the district court, despite reciting the legal rule, "misperceived and thus misapplied" the standard the law demands. *Bruck*, 30 F.4th at 429.

No. 24-40103

The most obvious example of this misapplication occurs in the district court's conclusion: "As has been made clear, the Central District of California is the venue in which the *most events* giving rise to this case occurred." District Court Order at 4–5 (emphasis added); *see also id.* at 3 (stating that events in this district are "far less significant than those occurring in California"); *id.* at 3 (stating that "an even larger disruption should be expected to have occurred in Hawthorne"); *id.* at 4 (stating that "these effects would be expected to have far more relevance to the Hawthorne facility"); *id.* at 3 (stating that "most related events . . . occurred at and in relation to the Hawthorne facility").

Here application of an erroneous legal standard was dispositive because "a substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of Texas." 28 U.S.C. § 1391(e)(1). There are three distinct buckets under which the Southern District of Texas satisfies this standard: (1) NLRB's action seeks to regulate SpaceX's conduct in the Southern District of Texas; (2) the allegedly unfair labor practices took place, at least in substantial part, in the Southern District of Texas; and (3) the open letter was intentionally sent to SpaceX's facilities in the Southern District of Texas and the Charging Parties purposefully solicited responses from employees in that district. Any one of these buckets is sufficient to satisfy the transactional venue test on its own. Taken together, the test is clearly satisfied.

A

Venue is proper in the Southern District of Texas because NLRB seeks to regulate SpaceX's conduct in that district. SpaceX is challenging the constitutionality of NLRB proceedings that seek to regulate SpaceX in the Southern District of Texas where it has a substantial presence through its Starbase and Houston facilities. Although scheduled to take place in

No. 24-40103

California, the administrative proceedings initiated by NLRB would regulate SpaceX's operations and policies everywhere, including the Southern District of Texas. The administrative action is not limited in geographic scope to California employees and facilities. In fact, the very allegations in the administrative proceeding assert that SpaceX violated the NLRA at all of its facilities, including the ones in the Southern District of Texas.

District courts within our circuit have held that under 28 U.S.C. § 1391(e)(1), venue "is proper where an unlawful rule imposes its burdens." *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, No. 23-cv-206, 2023 WL 2975164, at *2 (N.D. Tex. Apr. 17, 2023) (internal quotations omitted); *see also Umphress v. Hall*, 479 F. Supp. 3d 344, 351–52 (N.D. Tex. 2020); *Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015) (injunction terminated on other grounds). In these cases, transactional venue was held to be proper where: (1) the plaintiff has a significant presence in the forum; and (2) the plaintiff was subject to actual or imminent burden within the forum should the contested agency action take effect. *See Career Colls.*, 2023 WL 2975164, at *2.

SpaceX easily satisfies both requirements. It has a significant presence in the Southern District of Texas through its Starbase facility. The district court's order suggests that there are six total SpaceX facilities, one of which is in the Southern District of Texas. SpaceX has consistently represented that it also has two facilities in the Southern District of Texas (the Starbase facility and a "human spaceflight mission operations and integration facility in Houston"). For purposes of this analysis, the exact number of facilities does not matter. Starbase is a substantial part of SpaceX's operations. Even

No. 24-40103

if the district court's factual assertions are correct[4] and Starbase is the only facility in the Southern District of Texas, that would still constitute a substantial presence in the Southern District of Texas. Under the district court's factual determination, Starbase alone accounts for one sixth of SpaceX facilities which are spread out across Texas, Florida, and California. Further, Starbase is where SpaceX is "developing, manufacturing, and launching Starship, the most powerful rocket ever built."

SpaceX also satisfies the second transactional venue requirement because it is subject to substantial burdens imposed by government action on its operations and policies in the Southern District of Texas. NLRB has initiated proceedings against SpaceX for unlawful employment practices in violation of the NLRA. It is undisputed that the remedy NLRB seeks to implement would burden SpaceX employees and facilities in the Southern District of Texas by requiring them to post notices and conduct mandatory training.

NLRB argues that the substantial burden requirement can only be met by the sort of notice-and-comment rulemaking found in *Career Colleges* and *Texas v. United States*.[5] This distinction cannot be grounded in the statutory language or in caselaw. Section 1391's unambiguous text makes no subject matter distinctions. It does not distinguish between an administrative adjudication and notice-and-comment rulemaking. Both can burden potential plaintiffs in numerous districts and those burdens, wherever they occur, can constitute a "substantial part of the events" giving rise to the claim. *See* 28

---

[4] The district court did not make any mention of judicial notice and seems to have gone outside briefing as it cited SpaceX's website to determine the total number of facilities.

[5] NLRB does not address the fact that *Umphress* did not involve notice-and-comment rulemaking. That case involved efforts to regulate the actions of an individual plaintiff within the forum in which he filed suit. *Umphress*, 479 F. Supp. 3d at 347–48.

No. 24-40103

U.S.C. § 1391(e)(1). NLRB could have limited the effect of its adjudication to the California facilities. *See Seariver Maritime Financial Holdings, Inc. v. Pena*, 952 F. Supp. 455 (S.D. Tex. 1996) (holding that venue was improper in Texas because the challenged statute only regulated activities in Alaska). Having decided to target all SpaceX facilities and employees, NLRB cannot now escape the implications of that decision.

B

SpaceX can also satisfy the transactional venue standard because the alleged unfair labor practices in the administrative complaint took place, in substantial part, in the Southern District of Texas. The alleged unfair labor practice is an e-mail sent from SpaceX's President and COO, Gwynne Shotwell, from McGregor, Texas to *all* SpaceX employees, including those located at the Starbase and Houston facilities.

The district court considered this event to be mere "incidental" contact with the Southern District of Texas. This misunderstands the nature of the event. NLRB is charging SpaceX with unfair labor practices based on a communication that was sent to all employees. Far from being merely incidental, this e-mail was a purposeful choice, and one that NLRB contends was unlawful as to all of SpaceX's employees in the Southern District of Texas. That is a substantial part of the events. We have held that communications sent to Texas can constitute a substantial part of the events giving rise to the plaintiff's claims so long as those claims derive directly from those communications. *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 493 (5th Cir. 2018); *see also Long v. Grafton Executive Search, LLC*, 263 F. Supp. 2d 1085, 1090 (N.D. Tex. 2003) (categorizing an e-mail sent to Texas recipients as a substantial Texas-based event for purposes of transactional venue).

Despite recognizing this binding precedent, the district court distinguished *Trois* by stating that this case derived directly from the administrative

No. 24-40103

proceeding that stemmed from Shotwell's e-mail.  It claimed that Shotwell's e-mail and the letter to which it was responding only reached the Starbase and Houston facilities "incidentally."  The district court similarly distinguished *Long* by stating that the e-mail in that case was a "direct communication to Texas; the content caused the claim, and the injury was experienced in Texas."  This distinction is nearly impossible to grasp.

First, the district court never explains what constitutes a "direct" as opposed to "indirect" or "incidental" communication.  As I see it, any communication purposefully sent to a person or persons within a district is a direct communication.[6]  It seems the district court may be using "indirect" or "incidental" to refer to the fact that "Texas is only one of the many locations that the open letter reached."  To the extent that is the case, this constitutes clear legal error.  Merely sending a message to persons in multiple forums cannot render the contact resulting from that decision as "incidental."

As has been made clear, transactional venue contemplates multiple legally permissible venues.  *See Umphress*, 479 F. Supp. 3d at 351 ("Under the amended statute it is now absolutely clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred."); *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165-1166 (10th Cir. 2010); *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004); *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003) (determining whether venue was proper requires "ask[ing] whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts").  The district court's purported rule could create cases with no proper venue because a message sent to multiple districts

---

[6] An indirect communication might be at play when someone who received an initial message forwarded that message to another district.

No. 24-40103

would be "incidental" as to all of those districts.

Second, the content of the email sent by Shotwell is the very act alleged to be an unfair labor practice, leading to the administrative proceedings against SpaceX.

Third, and as discussed in Part I.A., SpaceX is subject to burdensome and binding regulation as a result of the administrative proceedings resulting from this letter.

C

The facts that gave rise to NLRB's proceedings against SpaceX also have substantial ties to the Southern District of Texas, providing a third basis for satisfying § 1391(e)(1)(B). The Charging Parties, (former employees who filed NLRB charges against SpaceX), wrote an Open Letter to all SpaceX employees, including those located in the Southern District of Texas. This letter linked to surveys soliciting feedback and support for their letter. In other words, the Charging Parties reached into the Southern District and specifically involved SpaceX employees in that district. The open letter led to numerous meetings, discussions, and decreased productivity by employees in the Southern District of Texas. SpaceX has stated in declarations that the Open Letter "derailed technical conversations for a week at Starbase, during a critical phase in meeting targets for Starship" and that as a result, numerous unplanned meetings were required "to address disruption and concern resulting from the Open Letter."

The Open Letter, which was intentionally distributed to SpaceX employees in the Southern District of Texas, explicitly sought their support. Thus, the events giving rise to the administrative complaint itself have substantial involvement with and impact on the Southern District of Texas. Just because this e-mail was sent to employees in additional districts—possibly leading to substantial involvement or even more involvement with those

No. 24-40103

districts—does not mean the Southern District of Texas fails to satisfy § 1391. *See Umphress*, 479 F. Supp. 3d at 351 ("Under the amended statute it is now absolutely clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred."); 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3806 (4th ed.) ("It has always been clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred."). The district court's contrary holding was clear error.

## D

Any one of these three buckets would be enough to satisfy the transactional venue standard. The district court's error is made all the more egregious by failing to consider whether all of these connections to the Southern District taken together amount to a substantial part of the events giving rise to SpaceX's claim. Section 1391 nowhere in its text requires courts to disaggregate the various types of events and determine whether each bucket can individually account for a "substantial part" of the events. Instead, it simply asks whether a "substantial part of the events or omissions giving rise to the claim" occurred in the chosen venue.

NLRB's desire to bind SpaceX in the Southern District of Texas through administrative proceedings; the allegedly unfair labor practice that took place—in substantial part—in the Southern District of Texas; and the purposeful solicitation of SpaceX employees in the Southern District of Texas by the Charging Parties, combined with the resulting disruption, clearly amount to a substantial part of the events underlying SpaceX's claims against NLRB.

Because the district court in practice applied a "most substantial events" test, it committed a clear legal error that, by definition, amounts to a clear abuse of discretion. *Bruck*, 30 F.4th at 427 (citing *Koon*, 518 U.S. at

No. 24-40103

100). Therefore, prong two of the mandamus requirements is satisfied.

III

The third prong of mandamus relief requires exercise of our discretion. We have made clear that mandamus relief is "particularly appropriate" where the issues presented "have an importance beyond the immediate case." *In re Volkswagen*, 545 F.3d at 319 (citing *United States v. Bertoli*, 994 F.2d 1002, 1014 (3d Cir. 1993)). We further noted that "venue transfer decisions are rarely reviewed" and that this can lead to the undesirable result of inconsistent outcomes. *Id.* District courts in our circuit need guidance on venue standards. Permitting an erroneous application of § 1391(e)(1)(B) to stand without correction provokes uncertainty in the law and may lead to further use of the erroneous "most substantial events" test.

Mandamus relief is especially appropriate in the context of a § 1406(a) transfer of venue. 28 U.S.C. § 1406 permits a case to be transferred only when the case was filed "laying venue in the *wrong* division or district." 28 U.S.C. § 1406(a) (emphasis added). This is different from change of venue under 28 U.S.C. § 1404(a). That statute permits transfer of a case "[f]or the convenience of parties and witnesses, in the interest of justice" to any district or division where the case might have been brought.[7] *In re Volkswagen* and

---

[7] NLRB, in its motion to transfer the case, argued for transfer under both § 1406 and § 1404. The district court did not address § 1404. Instead, the district court transferred the case under § 1406. In its response opposing a writ of mandamus, NLRB did not present the merits of its § 1404 argument. This is likely because the argument for transfer under § 1404 is a weak one. It is NLRB's burden to demonstrate that the transferee venue is "clearly more convenient." *Volkswagen*, 454 F.3d at 313–15 (explaining that the underlying premise of § 1404(a) is that defendants should not be subject to inconvenient venues). Because SpaceX seeks a preliminary injunction based on purely constitutional arguments, the need for witnesses unique to California is nearly non-existent, and the convenience concern underlying § 1404(a) does not favor transfer. Nor do the rest of the equitable factors under our caselaw clearly favor the Central District of California.

No. 24-40103

*Bruck* both dealt with transfers under § 1404. *In re Volkswagen*, 545 F.3d at 319; *Bruck*, 30 F.4th at 423 ("[I]n this circuit, mandamus is the prescribed vehicle for reviewing rulings on transfers of cases pursuant to 28 U.S.C. § 1404(a)."). Despite § 1404 involving much more discretion than § 1406, those cases still granted mandamus relief.

A transfer under 1406(a) does not permit consideration of the same sort of equitable principles ("convenience" or the "interest of justice") as § 1404(a). This makes the legal error in determining where a case is permitted to be brought all the more significant. Because § 1406 only permits transfer of a case when the chosen venue is legally impermissible, a legal error under § 1406 is much more significant than a legal error under § 1404. Error under § 1406 artificially restricts the right of plaintiffs to bring their claims in our circuit.

Last, the underlying merits of this claim weigh in favor of granting mandamus relief. Before us are "issues that implicate not only the parties' interests but those of the judicial system itself." *Bruck*, 30 F.4th at 426–27 (quoting *Bertoli*, 994 F.2d at 1014). SpaceX is challenging the constitutionality of NLRB's very structure. This case implicates the methods and procedures permitted under our constitution when the federal government regulates employer conduct.

NLRB does not deny that it seeks to avoid our court's precedent in *SEC v. Jarkesy*, a fact that the district court did not cite or address. 34 F.4th 446 (5th Cir. 2022) (holding that "[t]wo layers of for-cause protection" for inferior officers is forbidden under "Supreme Court Precedent"), *cert. granted*, 143 S. Ct. 2688 (argued Nov. 29, 2023). I do not make any assessment of whether *Jarkesy* would control this case, but NLRB's desire to avoid our circuit's precedent is further justification for exercising our discretion in granting mandamus relief.

No. 24-40103

\*     \*     \*

In the federal court system, plaintiffs can prefer favorable caselaw and sue in any appropriate venue.  NLRB cannot seek to condemn SpaceX's past labor practices in the Southern District of Texas, bind SpaceX's future practices in the Southern District of Texas, and at the same time avoid proper venue in the Southern District of Texas.  Failure to follow the plain text of the venue statutes and settled Fifth Circuit caselaw is disappointing and should have been corrected.

For the foregoing reasons, I would conclude that mandamus relief is appropriate to remedy the erroneous transfer of this case.  *See In re Volkswagen*, 545 F.3d at 319; *Bruck*, 30 F.4th at 423.  We should have exercised our discretion to grant mandamus relief and directed the district court to: (1) vacate its transfer order dated February 15, 2024; and (2) rule expeditiously on the pending motion for a preliminary injunction.

I respectfully dissent.

# CERTIFICATE OF SERVICE

I certify that on this May 1, 2024, I electronically filed the foregoing Exhibits in Support of Emergency Motion for Injunction Pending Appeal with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system.

I further certify that I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following case participants:

HONORABLE ROLANDO OLVERA
*United States District Judge*
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF
TEXAS, BROWNSVILLE DIVISION
Reynaldo G. Garza-Filemon B.
Vela United States Courthouse
600 E. Harrison St.
Brownsville, TX 78520

NATIONAL LABOR RELATIONS
BOARD
 *Contempt, Compliance, and*
  *Special Litigation Branch*
KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*
DANIEL BRASIL BECKER
*Trial Attorney*
GRACE L. PEZZELLA
*Trial Attorney*
DAVID P. BOEHM
*Trial Attorney*

Dalford D. Owens, Jr.
*Attorney-in-Charge for Defendants*
1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
(202) 273-4202
david.boehm@nlrb.gov

JOSHUA M. ROBBINS
PACIFIC LEGAL FOUNDATION
*Attorney-in-Charge*
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
(202) 888-6881
jrobbins@pacificlegal.org

OLIVER J. DUNFORD
PACIFIC LEGAL FOUNDATION
4400 PGA Blvd., Suite 307
Palm Beach Gardens, FL 33410
(561) 691-5000
odunford@pacificlegal.org

*Counsel for Amicus Curiae Pacific Legal Foundation*

ANNE B. SHAVER
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
(415) 956-1000
ashaver@lchb.com

LAURIE M. BURGESS
BURGESS LAW OFFICES, P.C.
498 Utah Street
San Francisco, CA 94110
(312) 320-1718
lburgess@burgess-laborlaw.com

Nimish Ramesh Desai
LIEFF CABRASER ET AL
275 Battery Street
29th Floor
San Francisco, CA 94111
(415) 956-1000
ndesai@lchb.com

*Counsel for Amici Curiae Tom Moline, Scott Beck, Deborah Lawrence, and Paige Holland-Thielen*

s/ Michael E. Kenneally
MICHAEL E. KENNEALLY

*Counsel for Space Exploration Technologies Corp.*