# No. 24-40315

# In the United States Court of Appeals
## FOR THE FIFTH CIRCUIT

SPACE EXPLORATION TECHNOLOGIES, CORPORATION,
*Plaintiff - Appellant*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency;
JENNIFER ABRUZZO, in her official capacity as the General Counsel of the
National Labor Relations Board; LAUREN M. MCFERRAN, in her official
capacity as the Chairman of the National Labor Relations Board;
MARVIN E. KAPLAN, in his official capacity as a Board Member of the
National Labor Relations Board; GWYNNE A. WILCOX, in her official ca-
pacity as a Board Member of the National Labor Relations Board; DA-
VID M. PROUTY, in his official capacity as a Board Member of the Na-
tional Labor Relations Board; JOHN DOE, in his official capacity as an
Administrative Law Judge of the National Labor Relations Board,
*Defendants - Appellees*

On Appeal from the U.S. District Court for the Southern District of Texas,
No. 1:24-cv-00001, Judge Rolando Olvera

## APPELLANT'S OPENING BRIEF

HARRY I. JOHNSON, III
MORGAN, LEWIS & BOCKIUS LLP
2049 Century Park East, Suite 700
Los Angeles, CA 90067
(310) 255-9005

MICHAEL E. KENNEALLY
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-3000

CATHERINE L. ESCHBACH
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
(713) 890-5719

*Counsel for Space Exploration
Technologies Corp.*

## CERTIFICATE OF INTERESTED PERSONS

### *No. 24-40315, Space Exploration Tech v. NLRB*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1.     Space Exploration Technologies Corp. ("SpaceX"), Plaintiff and Petitioner. SpaceX has no parent corporation and no publicly held corporation owns 10% or more of its stock.

2.     National Labor Relations Board, a federal administrative agency, Defendant and Respondent

3.     Jennifer Abruzzo, in her official capacity as the General Counsel of the National Labor Relations Board, Defendant and Respondent

4.     Lauren M. McFerran, in her official capacity as Chairman of the National Labor Relations Board, Defendant and Respondent

5.     Marvin E. Kaplan, in his official capacity as Board Member of the National Labor Relations Board, Defendant and Respondent

6.     Gwynne A. Wilcox, in her official capacity as Board Member of the National Labor Relations Board, Defendant and Respondent

7.     David M. Prouty, in his official capacity as Board member of the National Labor Relations Board, Defendant and Respondent

8.     Tom Moline, *Amicus Curiae* in the underlying proceedings

9.     Deborah Lawrence, *Amicus Curiae* in the underlying proceedings

10.     Scott Beck, *Amicus Curiae* in the underlying proceedings

11.     Paige Holland-Thielen, *Amicus Curiae* in the underlying proceedings

12.     Pacific Legal Foundation, *Amicus Curiae* in the underlying proceedings

13.     Rolando Olvera, in his official capacity as United States District Judge of United States District Court for the Southern District of Texas, Brownsville Division

14.     John Doe, in his official capacity as an Administrative Law Judge of the National Labor Relations Board, Defendant[1]

---

[1] Judge Sharon L. Steckler was named as the ALJ in the underlying matter but has not been officially substituted by the time of notice of

15.     United States of America, appropriates funds for and assumes debts of Defendants and Respondents

The undersigned counsel for SpaceX, separately lists the following persons as attorneys of record:

16.     Harry I. Johnson, III, Attorney for SpaceX

17.     Michael E. Kenneally, Attorney for SpaceX

18.     Catherine L. Eschbach, Attorney for SpaceX

19.     David G. Oliveira, Attorney for SpaceX

20.     Alamdar S. Hamdani, Attorney for Defendants

21.     Daniel David Hu, Attorney for Defendants

22.     Benjamin S. Lyles, Attorney for Defendants

23.     Kevin P. Flanagan, Attorney for Defendants

24.     David P. Boehm, Attorney for Defendants

25.     Paul A. Thomas, Attorney for Defendants

26.     Daniel Brasil Becker, Attorney for Defendants

27.     Grace L. Pezzella, Attorney for Defendants

28.     Matheus Teixeira, Attorney for Defendants

---

appeal. Judge Mara-Louis Anzalone, a second ALJ, was also named to act as Special Master.

29.     Dalford Dean Owens, Jr, Attorney for Defendants

30.     Laurie Burgess, Attorney for *Amicus Curiae*

31.     Anne Shaver, Attorney for *Amicus Curiae*

32.     Nimish Desai, Attorney for *Amicus Curiae*

33.     Joshua M. Robbins, Attorney for *Amicus Curiae*

34.     Oliver J. Dunford, Attorney for *Amicus Curiae*


Dated:  July 17, 2024              s/ Michael E. Kenneally
                                   MICHAEL E. KENNEALLY

## STATEMENT REGARDING ORAL ARGUMENT

Although SpaceX has a clear entitlement to preliminary injunctive relief under binding Supreme Court and Fifth Circuit precedent, SpaceX respectfully requests the opportunity to present oral argument given the importance of the issues presented.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................i

STATEMENT REGARDING ORAL ARGUMENT ................................. v

TABLE OF AUTHORITIES...................................................................ix

INTRODUCTION.................................................................................. 1

STATEMENT OF JURISDICTION....................................................... 2

STATEMENT OF THE ISSUE.............................................................. 3

STATEMENT OF THE CASE ............................................................... 3

I.   The NLRB authorizes an administrative complaint against
     SpaceX after employees violated multiple company policies. ......... 3

II.  SpaceX files suit to enjoin an administrative proceeding that
     is unconstitutional in multiple respects. ......................................... 5

III. The district court effectively denies the preliminary
     injunction motion. ........................................................................... 9

SUMMARY OF THE ARGUMENT ...................................................... 10

STANDARD OF REVIEW.................................................................... 12

ARGUMENT ........................................................................................ 13

I.   SpaceX is entitled to a preliminary injunction.............................. 13

     A.   SpaceX is likely to succeed on its claims. .............................. 13

          1.   NLRB ALJs are unconstitutionally insulated
               from removal. .................................................................. 13

          2.   NLRB Members are unconstitutionally insulated
               from removal. .................................................................. 18

          3.   NLRB adjudications violate the Seventh
               Amendment. .................................................................... 24

               a.   The NLRB seeks traditionally legal
                    remedies. ................................................................. 25

               b.   The public-rights exception is inapplicable.......... 31

# TABLE OF CONTENTS
## (continued)

  c. There is jurisdiction to consider this claim. ........ 35

 4. The NLRB Members' blending of functions violates the separation of powers and due process. .... 37

  a. NLRB Members' combination of functions violates due process. ........................................... 38

  b. There is jurisdiction to consider this claim. ....... 42

B. SpaceX will suffer irreparable harm without a preliminary injunction. ......................................... 44

 1. The unconstitutionality of the NLRB proceedings inflicts irreparable harm............................................. 45

  a. Removal protection claims................................. 45

  b. Seventh Amendment claim................................ 48

  c. Due process claim ............................................. 49

 2. The NLRB proceedings also inflict irreparable economic and reputational harm. ................................ 50

C. The balance of harms and public interest favor a preliminary injunction. ......................................... 51

II. The NLRB's procedural objections to the injunction are meritless. ................................................................. 52

A. The district court's erroneous transfer order did not strip it of authority to enter a preliminary injunction. ........ 52

B. In all circumstances, venue was proper in the Southern District of Texas. .................................................. 54

C. Severability is a final remedies question. ............................ 59

D. The Norris-LaGuardia Act does not apply. .......................... 61

III. There was an effective denial of the preliminary injunction. ....... 63

CONCLUSION ........................................................................ 67

# TABLE OF CONTENTS
## (continued)

**Page**

CERTIFICATE OF SERVICE.................................................................. 69

CERTIFICATE OF COMPLIANCE....................................................... 70

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Alpine Sec. Corp. v. FINRA*,
No. 23-5129, 2023 WL 4703307 (D.C. Cir. July 5, 2023) .................. 46

*Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.*,
309 U.S. 261 (1940) ............................................................... 34

*Associated Builders & Contractors of Tex. Gulf Coast, Inc. v. U.S. Dep't of Energy*,
451 F. Supp. 281 (S.D. Tex. 1978) ....................................... 49

*Atlas Roofing Co. v. OSHRC*,
430 U.S. 442 (1977) ......................................................... 32, 33

*Axon Enter., Inc. v. FTC*,
598 U.S. 175 (2023) .................................................... *passim*

*Braidwood Mgmt., Inc. v. EEOC*,
70 F.4th 914 (5th Cir. 2023) ............................................. 43

*BST Holdings, L.L.C. v. OSHA*,
17 F.4th 604 (5th Cir. 2021) ......................................... 12, 51

*Burgess v. FDIC*,
639 F. Supp. 3d 732 (N.D. Tex. 2022).............................. 36, 48

*Burlington N. & Santa Fe Ry. Co. v. Bhd. of Maint. of Way Employees*,
143 F. Supp. 2d 672 (N.D. Tex. 2001)................................. 62

*C & A Plus, Inc. v. Pride Sols., LLC*,
No. 02-cv-118, 2003 WL 25278133 (D.N.D. Feb. 7, 2003)................. 53

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*,
2023 WL 2975164 (N.D. Tex. Apr. 17, 2023)....................... 57

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*,
  98 F.4th 220 (5th Cir. 2024) ................................................ 12, 13, 67

*Chamber of Com. of U.S. v. CFPB*,
  No. 24-cv-213, 2024 WL 2310515 (N.D. Tex. May 10, 2024) ............ 66

*Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*,
  494 U.S. 558 (1990) ........................................................ 31, 33

*Chi. & N. W. Ry. Co. v. United Transp. Union*,
  402 U.S. 570 (1971) .............................................................. 62

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
  526 U.S. 687 (1999) ........................................................ 28, 29

*Clarke v. CFTC*,
  74 F.4th 627 (5th Cir. 2023) .................................................. 65

*Cmty. Fin. Servs. Ass'n of Am. Ltd. v. CFPB*,
  51 F.4th 616 (5th Cir. 2022) .................................................. 46

*Cochran v. SEC*,
  20 F.4th 194 (5th Cir. 2021) ........................................... 17, 46, 47

*Collins v. Dep't of the Treasury*,
  83 F.4th 970 (5th Cir. 2023) .................................................. 47

*Collins v. Yellen*,
  594 U.S. 220 (2021) .............................................................. 17

*Consumers' Research v. CPSC*,
  91 F.4th 342 (5th Cir. 2024) .............................................. 22, 23

*Crowe & Dunlevy, P.C. v. Stidham*,
  609 F. Supp. 2d 1211 (N.D. Okla. 2009) .................................... 56

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*,
   710 F.3d 579 (5th Cir. 2013) ....................................................... 44, 51

*Deerfield Med. Ctr. v. City of Deerfield Beach*,
   661 F.2d 328 (5th Cir. 1981) ....................................................... 45, 63

*Def. Distributed v. Bruck*,
   30 F.4th 414 (5th Cir. 2022) ............................................................. 13

*Denton Cnty. Elec. Coop., Inc. v. NLRB*,
   962 F.3d 161 (5th Cir. 2020) ............................................................. 31

*Dimick v. Schiedt*,
   293 U.S. 474 (1935) ........................................................................... 36

*Doran v. Salem Inn, Inc.*,
   422 U.S. 922 (1975) ............................................................... 48, 59, 60

*Elrod v. Burns*,
   427 U.S. 347 (1976) ........................................................................... 45

*Exela Enter. Sols., Inc. v. NLRB*,
   32 F.4th 436 (5th Cir. 2022) ....................................................... 20, 21

*Feltner v. Columbia Pictures Television, Inc.*,
   523 U.S. 340 (1998) ........................................................................... 28

*Fintech Fund, FLP v. Horne*,
   327 F. Supp. 3d 1007 (S.D. Tex. 2018) ............................................. 53

*Fortune v. Nat'l Cash Reg. Co.*
   364 N.E.2d 1251 (Mass. 1977) .......................................................... 30

*Free Enter. Fund v. PCAOB*,
   561 U.S. 477 (2010) ..................................................... 14, 17, 47, 51

TABLE OF AUTHORITIES
(continued)

*Granfinanciera, S. A. v. Nordberg*,
  492 U.S. 33 (1989)......................................................... 24, 33

*Heartland Plymouth Ct. MI, LLC v. NLRB*,
  838 F.3d 16 (D.C. Cir. 2016) ............................................ 26

*Hendricks v. Bank of Am., N.A.*,
  408 F.3d 1127 (9th Cir. 2005) ........................................... 53

*Horne v. Polk*,
  394 P.3d 651 (Ariz. 2017).............................................. 39, 40

*HTH Corp. v. NLRB*,
  823 F.3d 668 (D.C. Cir. 2016) ........................................... 31

*Humphrey's Executor v. United States*,
  295 U.S. 602 (1935)................................................... *passim*

*Illumina, Inc. v. FTC*,
  88 F.4th 1036 (5th Cir. 2023) ........................................... 40

*In re Clarke*,
  94 F.4th 502 (5th Cir. 2024) ............................................ 65

*In re Fort Worth Chamber of Com.*,
  100 F.4th 528 (5th Cir. 2024) ........................... 3, 64, 65, 66

*In re SpaceX*,
  96 F.4th 733 (5th Cir. 2024) ......................................... *passim*

*In re SpaceX*,
  99 F.4th 233 (5th Cir. 2024) ........................... 55, 56, 57, 58

*Jarkesy v. SEC*,
  34 F.4th 446 (5th Cir. 2022) ......................................... *passim*

*Kan. City S. Transp. Co. v. Teamsters Loc. Union #41*,
126 F.3d 1059 (8th Cir. 1997) .............................................................. 63

*Kirshner v. Uniden Corp. of Am.*,
842 F.2d 1074 (9th Cir. 1988) .............................................................. 54

*Larson v. Galliher*,
No. 06-cv-1471, 2007 WL 81930 (D. Nev. Jan. 5, 2007) ..................... 53

*League of Women Voters of U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ................................................................... 51

*Liu v. SEC*,
591 U.S. 71 (2020) ................................................................................. 31

*Lou v. Belzberg*,
834 F.2d 730 (9th Cir. 1987) ................................................................. 53

*Louisiana v. Biden*,
55 F.4th 1017 (5th Cir. 2022) ......................................................... 13, 51

*Lucia v. SEC*,
585 U.S. 237 (2018) ......................................................... 15, 17, 60

*Marshall v. Vicksburg*,
15 Wall. 146 (1873) ............................................................................... 31

*Maverick Fulfillment, LLC*,
373 N.L.R.B. No. 57 (June 20, 2024) .................................................... 26

*Mertens v. Hewitt Assocs.*,
508 U.S. 248 (1993) ............................................................................... 28

*Miss. Power & Light Co*,
760 F.2d (5th Cir. 1985) ........................................................................ 60

# TABLE OF AUTHORITIES

(continued)

*Myers v. United States*,
  272 U.S. 52 (1926) ................................................................ 14

*NAACP v. Tindell*,
  90 F.4th 419 (5th Cir. 2024) ............................................... 64

*Nken v. Holder*,
  556 U.S. 418 (2009) ............................................................. 51

*NLRB v. Jones & Laughlin Steel Corp.*,
  301 U.S. 1 (1937) ........................................................... 32, 33

*NLRB v. United Food & Com. Workers Union*,
  484 U.S. 112 (1987) ............................................................. 21

*NP Red Rock LLC*,
  373 N.L.R.B. No. 67 (June 17, 2024) ................................. 26

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
  584 U.S. 325 (2018) ....................................................... 33, 34

*Overstreet v. El Paso Disposal*,
  625 F.3d 844 (5th Cir. 2010) ......................................... 20, 21

*Petermann v. Teamsters Loc. 396*,
  344 P.2d 25 (Cal. Ct. App. 1959) ....................................... 30

*Polymer80, Inc. v. Garland*,
  No. 23-cv-29, 2023 WL 3605430 (N.D. Tex. Mar. 19, 2023) ............... 52

*Proctor & Gamble Co. v. Ranir, LLC*,
  No. 17-cv-185, 2017 WL 3537197 (S.D. Ohio Aug. 17, 2017) ............ 53

*SEC v. Jarkesy*,
  144 S. Ct. 2117 (2024) ............................................... *passim*

*Seila Law LLC v. CFPB*,
591 U.S. 197 (2020) ........................................................... 10, 14, 18, 20

*Solugen Inc. v. M3 Chem. Grp. LLC*,
529 F. Supp. 3d 685 (S.D. Tex. 2021) ................................................ 35

*Starbucks Corp. v. McKinney*,
144 S. Ct. 1570 (2024) ........................................................... 20, 38, 41

*Stern v. Marshall*,
564 U.S. 462 (2011) ................................................................... 51

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ................................................................... 43

*Texas v. United States*,
95 F. Supp. 3d 965 (N.D. Tex. 2015) ................................................. 57

*Thomas v. Tex. Dep't of Crim. Just.*,
297 F.3d 361 (5th Cir. 2002) ........................................................... 23

*Thomas v. Union Carbide Agric. Prods. Co.*,
473 U.S. 568 (1985) ................................................................... 43

*Thryv, Inc.*,
372 N.L.R.B. No. 22 (Dec. 13, 2022) .......................................... *passim*

*Thryv, Inc. v. NLRB*,
102 F.4th 727 (5th Cir. 2024) ........................................................ 25

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994) ................................................................... 35

*Trader Joes*,
373 N.L.R.B. No. 73 (July 9, 2024) ................................................... 26

*Trois v. Apple Tree Auction Ctr., Inc.*,
  882 F.3d 485 (5th Cir. 2018) ............................................................. 58

*Tull v. United States*,
  481 U.S. 412 (1987) ......................................................... 25, 28, 30

*U.S. Golf Ass'n v. U.S. Amateur Golf Ass'n*,
  690 F. Supp. 317 (D.N.J. 1988) ....................................................... 53

*UAW v. Russell*,
  356 U.S. 634 (1958) ....................................................................... 27

*Umphress v. Hall*,
  479 F. Supp. 3d 344 (N.D. Tex. 2020) ............................................ 57

*United States v. Petras*,
  879 F.3d 155 (5th Cir. 2018) ............................................................ 15

*United States v. Texas*,
  599 U.S. 670 (2023) ......................................................................... 20

*Ward v. Village of Monroeville*,
  409 U.S. 57 (1972) .................................................................. 36, 48

*Wenner v. Tex. Lottery Comm'n*,
  123 F.3d 321 (5th Cir. 1997) ...................................................... 48, 60

*WestRock Servs., Inc.*,
  366 N.L.R.B. No. 157 (Aug. 6, 2018) .............................................. 15

*Williams v. Pennsylvania*,
  579 U.S. 1 (2016) ................................................................... *passim*

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ............................................................................ 13

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Withrow v. Larkin*,
   421 U.S. 35 (1975)...........................................................................41

**CONSTITUTIONAL PROVISIONS & STATUTES**

5 U.S.C. § 1202 ..............................................................................16

5 U.S.C. § 7521 .........................................................................14, 16

15 U.S.C. § 2053 ............................................................................23

28 U.S.C.
   § 1292 ...........................................................................................2
   § 1331 ...........................................................................................2
   § 1391 ....................................................................6, 55, 56, 59
   § 1406 ..............................................................................6, 56

Federal Trade Commission Act
   15 U.S.C. § 41.............................................................................19
   15 U.S.C. § 49.............................................................................20
   15 U.S.C. § 53.............................................................................20

Federal Trade Commission Act of Mar. 21, 1938, ch. 49, § 4, 52
   Stat. 111......................................................................................20

Federal Trade Commission Act of Sept. 26, 1914, ch. 311, § 9, 38
   Stat. 717......................................................................................20

Labor Management Relations Act of 1947, Pub. L. No. 80-101, 61
   Stat. 136......................................................................................22

National Labor Relations Act
   29 U.S.C. § 153............................................................... *passim*
   29 U.S.C. § 154.............................................................................19
   29 U.S.C. § 159.............................................................................19
   29 U.S.C. § 160............................................................... *passim*

**Page(s)**

Norris-LaGuardia Act
   29 U.S.C. § 107...................................................................62
   29 U.S.C. § 113...................................................................62

U.S. CONST.
   amend. VII ................................................................ *passim*
   amend. XIV ........................................................................39
   art. II.............................................................. 10, 13, 15, 18
   art. III........................................................................ *passim*

**RULES & REGULATIONS**

5 C.F.R. § 1200.1 ......................................................................60

29 C.F.R.
   § 101.10 ...........................................................................15
   § 101.11 ...........................................................................15
   § 101.12 ...........................................................................15
   § 102.35 ...........................................................................15
   § 102.45 ...........................................................................15
   § 102.48 ...........................................................................15

FED. R. CIV. P. 38 ....................................................................35

FED. R. CIV. P. 39 ....................................................................35

**OTHER AUTHORITIES**

1 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND
   (8th ed. 1778) ...................................................................30

14D C. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE (4th ed. 2023)...............................................................................55

DAN B. DOBBS & CAPRICE L. ROBERTS, LAW OF REMEDIES......................29

DAN B. DOBBS ET AL., THE LAW OF TORTS (2d ed. 2011)............................30

JOSEPH CHITTY, A PRACTICAL TREATISE ON THE LAW OF CONTRACTS
(3d ed. 1841) ........................................................................ 30

Michael J. Heilman, *The National Labor Relations Act at Fifty:
Roots Revisited, Heart Rediscovered*, 23 DUQ. L. REV. 1059
(1985) .................................................................................. 60

Nat'l Lab. Rels. Bd., Office of the Gen. Counsel, Memorandum 21-
06 (Sept. 8, 2021) ............................................................... 27

Nat'l Lab. Rels. Bd., Office of the Gen. Counsel, Memorandum 21-
07 (Sept. 15, 2021) ............................................................. 27

Office of the General Counsel, *Section 10(j) Manual* (Feb. 2014) .... 38, 41

THE FEDERALIST No. 47 (Madison) ............................................ 1

THE FEDERALIST No. 78 (Hamilton) ........................................ 52

## INTRODUCTION

The U.S. Constitution protects against the concentration of legislative, executive, and judicial powers in a single set of hands. *See* THE FEDERALIST NO. 47 (Madison). But today's National Labor Relations Board ("NLRB") does not sit well within that framework. The NLRB routinely exercises authority to prosecute alleged violators of federal labor law, define the legal standards that govern the prosecutions, and weigh the facts necessary to find a violation—with only limited judicial review by Article III courts. Congress has tried to partly remediate the separation-of-powers problems by making it hard for NLRB Members and administrative law judges ("ALJs") to be removed from office. But that has only created further problems by making these powerful executive officers unaccountable to the President in their execution of federal law.

SpaceX filed this action to avoid serious and irreparable injuries that it would otherwise suffer through an unconstitutionally structured administrative proceeding before the NLRB. The NLRB Defendants were aggressively moving forward with a proceeding against SpaceX until this Court enjoined the proceeding pending this appeal from the district court's effective denial of SpaceX's motion for a preliminary injunction.

*See* Dkt. 40-2. This Court should now reverse the denial of SpaceX's motion and order the district court to enter preliminary injunctive relief.

Under binding precedent, SpaceX is entitled to a preliminary injunction because there are four separate constitutional flaws in the NLRB's proceeding against it. The agency officers presiding over the proceeding are unconstitutionally protected from presidential oversight, threaten to adjudicate claims based on private rights without any of the protections of a jury or Article III court, and blur the line between prosecutor and judge. SpaceX is entitled to temporary relief from those proceedings, and this Court should order the district court to halt the NLRB proceedings until the constitutional defects are conclusively addressed.

## STATEMENT OF JURISDICTION

The district court had federal question jurisdiction under 28 U.S.C. § 1331 because SpaceX claims that the NLRB's proceedings against it are structured in ways that violate the Constitution of the United States. *See, e.g.*, *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 180 (2023).

As the motions panel necessarily determined when it denied the NLRB's motion to dismiss, Dkt. 47-2, this Court has jurisdiction over the effective denial of SpaceX's motion for a preliminary injunction under 28

U.S.C. § 1292(a)(1). SpaceX's motion for a preliminary injunction was pending for three-and-a-half months when SpaceX appealed the effective denial with only one day remaining before a May 2 ALJ hearing. "An effective denial of a preliminary injunction is an appealable order." *In re Fort Worth Chamber of Com.*, 100 F.4th 528, 532 (5th Cir. 2024).

## STATEMENT OF THE ISSUE

Whether the NLRB's administrative proceeding against SpaceX should be preliminarily enjoined pending the final adjudication of this action.

## STATEMENT OF THE CASE

### I.    The NLRB authorizes an administrative complaint against SpaceX after employees violated multiple company policies.

SpaceX operates a space launch business and a global satellite-based internet service known as Starlink. ROA.335-36. It has facilities around the country, including four in Texas: its Starbase facility in Boca Chica, where SpaceX is developing, manufacturing, and launching Starship, the most powerful rocket ever built; its rocket testing and development facility in McGregor; its human spaceflight mission operations and integration facility in Houston; and its Starlink manufacturing facility in Bastrop. ROA.336.

In June 2022, a small group of employees sent an open letter to employees across all of SpaceX's locations, flooding multiple channels of communication. ROA.27. They demanded that SpaceX take certain actions and solicited other employees to fill out a hyperlinked survey to express support for their demands. ROA.27. Distributing the Open Letter and mass solicitations blatantly violated company policies and caused significant disruption during a critical time. ROA.27. SpaceX discharged four employees involved with its mass distribution, discharged a few additional employees for lying during a subsequent leak investigation, and discharged one employee for completely unrelated performance issues. *See* ROA.27.

In November 2022, these eight discharged former employees filed NLRB charges alleging that SpaceX committed unfair labor practices. ROA.27. On January 3, 2024, the Regional Director for Region 31 issued an order consolidating the administrative cases, with a consolidated administrative complaint and notice that a trial before an ALJ would occur just two months later, on March 5, 2024. ROA.27.

**II.    SpaceX files suit to enjoin an administrative proceeding that is unconstitutional in multiple respects.**

The next day, January 4, SpaceX filed this action seeking injunctive and declaratory relief based on four constitutional problems with the NLRB proceedings. ROA.19-41. SpaceX alleged that the NLRB's ALJs are unconstitutionally insulated from removal (Count I), that the NLRB's Members are likewise unconstitutionally insulated from removal (Count II), that the NLRB's adjudication of private rights without a jury trial violates the Seventh Amendment (Count III), and that the NLRB Members' exercise of prosecutorial, legislative, and adjudicatory authority in the same proceedings violates the separation of powers and due process (Count IV).  ROA.28-41.

SpaceX asked the NLRB to stay the agency proceedings to give the court time to adjudicate these issues. ROA.342-43. But the NLRB refused (despite having waited over a year to issue their complaint). ROA.343; ROA.310. SpaceX quickly moved for a preliminary injunction to leave enough time for a ruling before the scheduled start of the administrative trial on March 5. ROA.306; ROA.311. SpaceX filed its reply in support of its motion for a preliminary injunction on February 12, reiterating its need for a ruling before March 5. ROA.955.

Meanwhile, on January 11, Defendants moved to transfer the case to the Central District of California. SpaceX urged the district court to decide the preliminary injunction motion before, or at the same time as, the transfer motion because of its need for expeditious resolution before the start of the trial. ROA.463-71; ROA.476-77; ROA.496-500; ROA.609. SpaceX emphasized that Defendants entirely controlled the timing of the trial and need for relief. ROA.463; ROA.496.

On February 15, the district court granted Defendants' motion to transfer under 28 U.S.C. § 1406. ROA.1025-29. It found that venue was improper in the Southern District of Texas under 28 U.S.C. § 1391(e) and initiated the electronic transfer. ROA.15; ROA.1026. The next day, SpaceX sought an emergency writ of mandamus from this Court, requesting expedited relief to permit a preliminary injunction before the March 5 hearing. *In re SpaceX*, No. 24-40103, Dkt. 2-2, at 1 (5th Cir. Feb. 16, 2024).

On February 19, this Court administratively stayed the transfer before it was completed. No. 24-40103, Dkt. 28-1 (Feb. 19, 2024). The Central District of California nonetheless docketed the case a few days later, prompting this Court to direct the district court to request the case

back. ROA.1030-32. Once the case was back in the Southern District, a divided panel issued a one-line order on March 5, denying mandamus over Judge Elrod's dissent. No. 24-40103, Dkt. 59 (Mar. 5, 2024). The procedural confusion caused by the docketing and return of the case seems to have delayed a ruling on the mandamus petition. *See* No. 24-40103, Dkt. 56 (Mar. 1, 2024).

On March 5, the administrative hearing formally opened. A judge of this Court withheld the mandate, ROA.1127, keeping the administrative stay of the transfer in effect. SpaceX quickly filed an expedited petition for en banc rehearing, again noting the need for prompt relief given the irreparable constitutional injury from the ongoing administrative proceeding. No. 24-40103, Dkt. 71 (Mar. 7, 2024). An evenly divided court denied the en banc petition on April 17, with Judges Jones, Smith, Elrod, Duncan, Engelhardt, and Oldham joining a dissent from the denial. ROA.1136-57. The administrative stay of the transfer was dissolved that same day. ROA.1128.

Because the Southern District of Texas still had jurisdiction over this action, SpaceX immediately asked the district court to reconsider its transfer order based on the additional input from judges of this Court.

ROA.1130-32. In the alternative, SpaceX requested that the district court resolve the preliminary injunction motion before transfer given the already delayed adjudication, the harm accumulating since March 5, and the likelihood that transfer would increase the delay. ROA.1130-32.

SpaceX learned on April 24 that an NLRB ALJ had scheduled a May 2 hearing to address discovery issues. ROA.1182. The parties had significant and voluminous discovery disputes, so much so that a second ALJ (also unconstitutionally insulated from removal) was assigned to oversee those disputes, and that ALJ's rulings on discovery would have a large impact on the administrative proceeding. On April 26, SpaceX filed its reply in support of reconsideration. ROA.1172-78. SpaceX informed the district court of the need for an accelerated ruling on the preliminary injunction motion, as the May 2 hearing was likely to include significant rulings on discovery. ROA.1172-78. Because these imminent, unconstitutionally structured proceedings would continue to inflict harm on SpaceX, SpaceX requested a ruling before the May 2 hearing. ROA.1172-73, ROA.1175-76.

### III. The district court effectively denies the preliminary injunction motion.

As of 10 p.m. Central Time on April 30, 2024, the district court had not ruled on SpaceX's January 12 motion for a preliminary injunction or SpaceX's April 17 motion for reconsideration. Nor had it given any indication of when it might rule. This inaction constituted an effective denial of the preliminary injunction, especially given the need for relief before the 2 p.m. Central Time ALJ hearing on May 2. SpaceX appealed. ROA.1193-96.

SpaceX immediately moved in this Court for an injunction pending appeal on May 1.[2] The NLRB moved to dismiss the appeal asserting there was no effective denial of SpaceX's preliminary injunction motion, and therefore, no jurisdiction. On May 2, shortly before the ALJ hearing was scheduled to begin, this Court granted SpaceX's request for an injunction pending appeal. Dkt. 40. The next day this Court denied the NLRB's motion to dismiss the appeal. Dkt. 47.

---

[2] Given the extremely short timeframe for review, SpaceX's emergency motion for injunction pending appeal presented only the ALJ removal and Seventh Amendment claims.

## SUMMARY OF THE ARGUMENT

The district court erred by effectively denying a preliminary injunction to halt the NLRB's proceeding against SpaceX and preserve the status quo. SpaceX satisfies all four preliminary injunction requirements, so this Court should reverse the district court's effective denial and order the district court to enter the injunction.

As to the most important injunction factor—likelihood of success—SpaceX carried its burden on all four claims.

*First*, this Court's decision in *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), *aff'd*, 144 S. Ct. 2117 (2024), is dispositive of Count I. Just like the SEC ALJs in *Jarkesy*, NLRB ALJs are inferior officers under the Constitution who are unconstitutionally insulated from presidential oversight by three layers of removal protection. The Supreme Court's affirmance of *Jarkesy* left this Court's removal-protection holding undisturbed.

*Second*, the NLRB Members' insulation from presidential control violates Article II under *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020). *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), does not ex-

tend to the NLRB's unique structure, which splits executive powers be-
tween the Members and the politically accountable General Counsel, or
to the NLRA's unusually strict removal protections.

*Third*, the NLRB unconstitutionally seeks to adjudicate legal
claims in in-house administrative proceedings. In particular, the General
Counsel seeks compensatory damages for former employees. Under
*Jarkesy*, this claim arises at common law, seeks legal relief, and does not
involve public rights. The Constitution entitles SpaceX to a jury in an
Article III court.

*Fourth*, the NLRB Members' prosecutorial act of approving civil lit-
igation under 29 U.S.C. § 160(j) precludes them from serving as neutral
adjudicators of the same allegations. Under *Williams v. Pennsylvania*,
579 U.S. 1 (2016), the NLRB Members' combination of functions violates
due process.

SpaceX has also shown irreparable harm. "[B]eing subjected to un-
constitutional agency authority . . . is impossible to remedy once the pro-
ceeding is over.'" *Axon*, 598 U.S. at 191 (cleaned up). SpaceX's constitu-
tional injuries cannot be remedied after the NLRB's administrative pro-
ceedings conclude. Nor can its tangible harms be cured—like the time

and resources SpaceX must divert to the NLRB proceedings and the damage they pose to SpaceX's reputation.

The final two injunction factors merge where the government is the defendant. There is no governmental or public interest in conducting an unconstitutional agency proceeding. *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021).

Defendants have raised a variety of procedural objections to entry of an injunction—including alleged improper venue, the availability of severance as a final remedy, and jurisdictional objections under the Norris-LaGuardia Act. These objections are all meritless and cannot justify denial of a preliminary injunction. The Court should reverse the district court's effective denial of SpaceX's motion and remand for entry of a preliminary injunction.

## STANDARD OF REVIEW

A denial of a preliminary injunction is reviewed "for abuse of discretion; underlying legal determinations are reviewed *de novo* and factual findings for clear error." *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 233 (5th Cir. 2024) (reversing denial of preliminary injunction). "A district court by definition abuses its discretion when it

makes an error of law." *Id.* (quoting *Def. Distributed v. Bruck*, 30 F.4th 414, 427 (5th Cir. 2022)).

## ARGUMENT

## I. SpaceX is entitled to a preliminary injunction.

Preliminary injunctive relief is proper when a movant establishes that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Louisiana v. Biden*, 55 F.4th 1017, 1022 (5th Cir. 2022). SpaceX meets all four factors.[3]

### A. SpaceX is likely to succeed on its claims.

#### 1. NLRB ALJs are unconstitutionally insulated from removal.

The first structural defect in the NLRB's proceeding against SpaceX arises from ALJs' protection from removal by the President. Article II vests all executive power in the President, "who must 'take Care that the

---

[3] In a separate case arising from a different NLRB administrative complaint against SpaceX—which presents claims challenging the removal protections of NLRB ALJs and Members—a district court determined that SpaceX was entitled to a preliminary injunction. *See SpaceX v. NLRB*, No. 24-cv-203, Dkt. 41 (W.D. Tex. July 10, 2024). A written order is forthcoming. *See id.*

Laws be faithfully executed.'" *Seila L.*, 591 U.S. at 203. The president does not execute federal law "alone and unaided." *Myers v. United States*, 272 U.S. 52, 117 (1926). "He must execute them by the assistance of subordinates." *Id.* Because executive responsibility remains vested in the President, the officers of every administrative agency—including "independent" ones—must be subject to presidential oversight. *See Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513-14 (2010). The Constitution requires that the President have the "power to remove—and thus supervise—those who wield executive power on his behalf." *Seila L.*, 591 U.S. at 204.

Fifth Circuit precedent clearly establishes that SpaceX's claim that NLRB ALJs are unconstitutionally protected from removal will succeed. In *Jarkesy*, this Court held that indistinguishable "statutory removal restrictions" for SEC ALJs "are unconstitutional." 34 F.4th at 465. Under 5 U.S.C. § 7521(a), "SEC ALJs may be removed by the Commission 'only for good cause established and determined by the [Merit System Protection Board] on the record after opportunity for hearing.'" *Id.* at 464. Similarly, SEC Commissioners and MSPB Members "can only be removed by the President for cause." *Id.* Because SEC ALJs are "inferior officers" un-

der Article II "sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Id.* (citing *Lucia v. SEC*, 585 U.S. 237, 248-49 (2018)). But multiple "layers of for-cause protection" unconstitutionally "stand in the President's way." *Id.* at 465.[4]

NLRB ALJs' removal protections are indistinguishable from SEC ALJs'. NLRB precedent itself forecloses any distinction. *WestRock Servs., Inc.*, 366 N.L.R.B. No. 157, slip op. at 1 (Aug. 6, 2018) (finding that *Lucia*'s reasoning on SEC ALJs extends to NLRB ALJs). "Board judges, like SEC judges, are inferior officers." *Id.* Like SEC ALJs, they "exercise considerable power over administrative case records" and "may punish contemptuous conduct." *Jarkesy*, 34 F.4th at 464; *see* 29 C.F.R. §§ 101.10, 102.35. They also issue decisions and, if no party files exceptions, those decisions become the decision of the NLRB. 29 C.F.R. §§ 101.11, 101.12(b), 102.45, 102.48(a).

---

[4] The Supreme Court's affirmance of *Jarkesy*'s Seventh Amendment holding did not disturb this Court's removal-protection holding. 144 S. Ct. at 2128. It remains binding precedent. *See, e.g.*, *United States v. Petras*, 879 F.3d 155, 164 (5th Cir. 2018) ("[F]or a Supreme Court decision to override a Fifth Circuit case, the decision must unequivocally overrule prior precedent[.]").

And like SEC ALJs, NLRB ALJs are covered by "at least two layers of for-cause protection" that "stand in the President's way." *Jarkesy*, 34 F.4th at 465. Indeed, 5 U.S.C. § 7521(a), which allows an employing agency to remove its ALJs only when the MSPB finds good cause, applies equally to both sets of ALJs. Likewise, MSPB Members have the same removal protection under 5 U.S.C. § 1202(d) regardless of whether they are considering SEC ALJs or NLRB ALJs. Finally, the NLRB Members also have explicit removal protection: they are removable only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a). So, like SEC ALJs, NLRB ALJs are unconstitutionally insulated from the President's oversight by multiple layers of removal protections. *See Jarkesy*, 34 F.4th at 464. Thus, there is no question about SpaceX's likelihood of success on the merits.

Contrary to Defendants' arguments, SpaceX's success on this claim does not require a showing that one of SpaceX's assigned ALJs would have been removed but for the removal protections. There is no such requirement to obtain relief. Rather, plaintiffs challenging removal protections are "entitled to declaratory relief sufficient to ensure that the [administrative] requirements and . . . standards to which they are subject

will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513. Both in *Free Enterprise Fund* and *Jarkesy*, the courts held statutory removal restrictions unconstitutional without inquiring into whether any particular ALJ would actually have been removed. 34 F.4th at 465. Defendants have argued that *Collins v. Yellen*, 594 U.S. 220 (2021), requires such an inquiry. But this Court, sitting en banc, has explained that the *Collins* requirement does not apply when, as here, the plaintiff "seeks an administrative adjudication untainted by separation-of-powers violations" but "does not seek to 'void' the acts of any [agency] official." *Cochran v. SEC*, 20 F.4th 194, 210 n.16 (5th Cir. 2021) (en banc).

That distinction makes sense. A structural problem affects the entirety of a proceeding, regardless of the particular actors' identities. And even if a President does not actively desire to remove a particular ALJ, the potential for removal influences how rational ALJs carry out their duties. After all, Congress sought to make NLRB ALJs politically independent for a reason: it wanted to insulate them from political pressures. *See, e.g.*, *Lucia*, 585 U.S. at 260 (Breyer, J., concurring in the judgment in part and dissenting in part). A showing of particularized cause-and-

effect is not necessary to declare that such insulation from Presidential oversight is unconstitutional.

### 2. NLRB Members are unconstitutionally insulated from removal.

The second structural defect is that NLRB Members' removal protections are unconstitutional as well. Unlike ALJs, the NLRB Members are not inferior officers; they are *principal* officers who exercise substantial executive power. The President cannot oversee their work because they are removable only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a). This strict removal protection violates Article II of the Constitution given the substantial executive power that the Board wields.

Removal restrictions for the executive branch are generally unconstitutional. For principal officers, the Supreme Court has recognized a narrow exception "for multimember expert agencies that do not wield substantial executive power." *Seila L.*, 591 U.S. at 218. This exception originated in *Humphrey's Executor*, which determined that Federal Trade Commission ("FTC") Commissioners did not (at the time) exercise "executive power in the constitutional sense." 295 U.S. at 628. The Su-

preme Court upheld the provision authorizing the Commissioners' removal "for inefficiency, neglect of duty, or malfeasance in office," *Humphrey's Executor*, 295 U.S. at 620 (quoting 15 U.S.C. § 41). NLRB Members enjoy stricter removal protection: they are removable only "for neglect of duty or malfeasance in office," but not inefficiency, 29 U.S.C. § 153(a).

Unlike FTC Commissioners in 1935, NLRB Members do exercise substantial executive power in the constitutional sense through their administrative, policymaking, and prosecutorial authority. They enforce the NLRA in many ways, including, for example, determining appropriate units for the purpose of collective bargaining, directing representation elections, deciding unfair labor practice charges, and seeking enforcement of unfair labor practice orders in federal court. 29 U.S.C. §§ 159, 160. They also have authority to appoint inferior officers including the executive secretary, attorneys, regional directors, ALJs, and others. *Id.* § 154.

Board Members' substantial executive power is clearly seen in NLRA Section 10(j), which gives the Board quintessentially prosecutorial power: "[t]he Board shall have power . . . to petition [a] United States district court . . . for appropriate temporary relief or restraining order" in

response to an alleged unfair labor practice. *Id.* § 160(j). As this Court has found, this power belongs to the Board Members themselves and "is prosecutorial in nature." *Overstreet v. El Paso Disposal*, 625 F.3d 844, 852 (5th Cir. 2010); *see also Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1583 (2024) (Jackson, J., concurring in judgment). And prosecuting a party for alleged violations of federal law lies at the heart of the Constitution's concept of executive power. *See, e.g., United States v. Texas*, 599 U.S. 670, 678-79 (2023); *Seila L.*, 591 U.S. at 218-19. The FTC Commissioners that *Humphrey's Executor* examined in 1935 did not exercise similar prosecutorial powers.[5]

Unlike other federal agencies, the NLRB has a distinctive structure that bestows executive power on both its Members and its General Counsel, who is a politically accountable agency official responsible for deciding which cases to prosecute with the NLRB and that enforces NLRB decisions in the courts of appeals. *See* 29 U.S.C. § 153(d); *Exela Enter.*

---

[5] Under the original FTC Act, the FTC relied on the Attorney General of the United States to seek mandamus relief in federal court. Act of Sept. 26, 1914, ch. 311, § 9, 38 Stat. 717, 722 (codified as amended at 15 U.S.C. § 49). After *Humphrey's Executor*, Congress amended the statute to authorize the FTC's own attorneys to seek injunctive relief in federal court in false advertising cases. Act of Mar. 21, 1938, ch. 49, § 4, 52 Stat. 111, 115 (codified as amended at 15 U.S.C. § 53).

*Sols., Inc. v. NLRB*, 32 F.4th 436, 441 (5th Cir. 2022); *NLRB v. United Food & Com. Workers Union*, 484 U.S. 112, 128-29 (1987). This novel agency structure confirms the NLRB Members wield substantial executive power.

For example, in *Exela*, the Fifth Circuit held that the General Counsel exercises substantial executive power. *Id.* at 444. The *Exela* petitioner attempted to thwart the President's right to remove by arguing that the General Counsel wields power similar to and delegated by the Members, and thus needed the same removal protections. 32 F.4th at 441-46. Because the General Counsel "perform[s] quintessentially prosecutorial functions," the logic of *Humphrey's Executor* did not extend to the General Counsel. *Id.* at 443. Like the General Counsel, NLRB Members also exercise quintessentially prosecutorial functions, through Section 10(j). *See Overstreet*, 625 F.3d at 852. *Exela* discussed the Board Members' quasi-legislative and quasi-judicial functions but did not discuss their Section 10(j) prosecutorial power. As *Exela* held that the General Counsel's exercise of prosecutorial authority is "core to the executive function," 32 F.4th at 444, it follows that the Members' exercise of Section 10(j) prosecutorial authority must also be core to the executive function.

This Court's fractured decision in *Consumers' Research v. CPSC*, 91 F.4th 342 (5th Cir. 2024), does not warrant a contrary conclusion. The majority acknowledged that "the logic of *Humphrey's* may have been overtaken," but nonetheless applied that logic to the CPSC. *Id.* at 346. The Court determined that merely exercising "substantial executive power" is not enough for a multimember-headed agency to fall outside the *Humphrey's Executor* exception. *Id.* at 353-54.

The Court's analysis of CPSC Commissioners does not extend to the removal protections here. Unlike the CPSC structure, the NLRB wields executive powers through both a multimember Board and a General Counsel, who serves at the pleasure of the President. Importantly, both the Board and the General Counsel wield not just substantial executive power but *core* executive power by authorizing their respective prosecutions. This unusual arrangement, which traces to Congress's creation of the position of General Counsel in 1947, lacks the historical pedigree that the Court considered in *Consumers' Research*. *See* Labor Management Relations Act of 1947, Pub. L. No. 80-101, § 101, 61 Stat. 136, 139 (codified as amended at 29 U.S.C. § 153(d)).

Moreover, the *Consumers' Research* majority never reached the issue of whether the CPSC Commissioners' especially restrictive removal restrictions counseled against extending *Humphrey's Executor*. CPSC Commissioners, like NLRB Members but unlike FTC Commissioners, may not be removed for inefficiency; they may be removed only for neglect of duty or malfeasance in office. 15 U.S.C. § 2053(a). The *Consumers' Research* majority quoted that provision but did not address the difference between that provision and the one upheld in *Humphrey's Executor*—probably because the parties did not raise that argument as SpaceX has here. *See* 91 F.4th at 346; Resp. Br., *Consumers' Research*, 2022 WL 6164656. *Consumers' Research* thus does not foreclose SpaceX's argument that this difference in removability is material. *Thomas v. Tex. Dep't of Crim. Just.*, 297 F.3d 361, 370 n.11 (5th Cir. 2002) ("Where an opinion fails to address a question squarely, we will not treat it as binding precedent.").

The Court need not, and should not, further extend *Humphrey's Executor* to the NLRB's unique circumstances. SpaceX is likely to prevail on this claim, too.[6]

### 3.   NLRB   adjudications   violate   the   Seventh Amendment.

The third structural defect is that the NLRB proceeding violates the Seventh Amendment, which preserves the right to trial by jury "[i]n Suits at common law." U.S. CONST. amend. VII. Today's Board claims authority to award extensive compensatory damages for alleged violations of employees' legal rights. This effort to adjudicate private rights and afford legal relief, without the safeguards of juries and impartial Article III judges, exceeds constitutional bounds. *SEC v. Jarkesy*, 144 S. Ct. 2117, 2139 (2024).

To assess this claim, the Court must determine whether (1) the underlying controversy "implicates the Seventh Amendment," and (2) "whether the 'public rights' exception to Article III jurisdiction applies." *Id.* at 2127. "The Seventh Amendment extends to a particular statutory claim if the claim is 'legal in nature.'" *Id.* at 2128 (*Granfinanciera,*

---

[6]   Should the Court disagree, SpaceX expressly preserves its argument that the Supreme Court should revisit *Humphrey's Executor*.

*S. A. v. Nordberg*, 492 U.S. 33, 53 (1989); *Tull v. United States*, 481 U.S. 412, 417 (1987)). Whether a claim is "legal in nature" depends on the nature of the cause of action and the nature of the remedy, but the nature of the remedy is more important. *Id.* at 2129. The NLRB proceeding against SpaceX involves claims that are legal in nature under *Jarkesy*.

### a. The NLRB seeks traditionally legal remedies.

The NLRB's remedies are clearly legal in nature. The NLRB has long had statutory discretion to order backpay wrongfully withheld from discharged or suspended employees. *See* 29 U.S.C. § 160(c) (authorizing "reinstatement of employees with or without back pay"). Lately, however, the Board has decided to go much further in awarding a wide range of compensatory monetary relief to employees. In its recent *Thryv* decision, the Board claimed authority for "a novel, consequential-damages-like labor law remedy." *Thryv, Inc. v. NLRB*, 102 F.4th 727, 737 (5th Cir. 2024). The Board now orders employers "to compensate affected employees for all direct or foreseeable pecuniary harms that these employees suffer as

a result of the [employer's] unfair labor practice." *See Thryv, Inc.*, 372 N.L.R.B. No. 22, slip op. at 1 (Dec. 13, 2022).[7]

According to the Board, such compensation may include monies for:

- "interest and late fees on credit cards" and other "credit card debt,"

- "penalties" based on "early withdrawals" from a "retirement account" to cover living expenses,

- compensation for loss of a "car" or "home" based on an inability "to make loan or mortgage payments" or "rent," and

- new or increased "transportation or childcare costs," among other things.

*Id.* at 9-10 (citation omitted).[8]

---

[7] Although this Court vacated the *Thryv* decision on other grounds, that has not kept the NLRB from continuing to order *Thryv* damages. *See, e.g.*, *Trader Joes*, 373 N.L.R.B. No. 73, slip op. at 1 n.2 (July 9, 2024); *Maverick Fulfillment, LLC*, 373 N.L.R.B. No. 57, slip op. at 2 (June 20, 2024); *NP Red Rock LLC*, 373 N.L.R.B. No. 67, slip op. at 12 (June 17, 2024).

The NLRB maintains a "nonacquiescence" policy under which the NLRB reserves the right to adhere to its decisions even after circuit courts have rejected them. *See, e.g.*, *Heartland Plymouth Ct. MI, LLC v. NLRB*, 838 F.3d 16, 21 (D.C. Cir. 2016).

[8] The NLRB argued below it could award these damages as incidental to equitable relief. ROA.760. But this argument cannot be squared

The administrative complaint against SpaceX seeks all relief as the NLRB determines may be just and proper to remedy the unfair labor practices alleged. *See* ROA.353. Under *Thryv*, such relief includes the newly authorized damages "to compensate [unlawfully terminated] employees for all direct or foreseeable pecuniary harms that these employees suffer as a result of" the unlawful termination. *Thryv*, 372 N.L.R.B. No. 22, slip op. at 1.[9]

The Supreme Court recognizes, however, that "money damages are the prototypical common law remedy." *Jarkesy*, 144 S. Ct. at 2129; *see*

---

with the Supreme Court's longstanding recognition that "Congress did not establish a general scheme authorizing the Board to award full compensatory damages for injuries caused by wrongful conduct." *UAW v. Russell*, 356 U.S. 634, 643 (1958).

[9]  The NLRB General Counsel has ordered Regional Directors to seek full compensation "for losses suffered as a result of unfair labor practices." Nat'l Lab. Rels. Bd., Office of the Gen. Counsel, Memorandum 21-06 at 1 (Sept. 8, 2021). In her view, "[a] monetary remedy comprised only of backpay and lost benefits" is insufficient, so she has instructed that "Regions should always make sure to seek compensation for any and all damages, direct and consequential, attributable to an unfair labor practice," including housing, medical, or training expenses relating to the allegedly unlawful employment practice." Nat'l Lab. Rels. Bd., Office of the Gen. Counsel, Memorandum 21-07 at 2-3 (Sept. 15, 2021).

*also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (describing "compensatory *damages*—monetary relief for all losses . . . sustained as a result of the alleged breach of fiduciary duties" as "the classic form of *legal* relief"); *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998) ("We have recognized the 'general rule' that monetary relief is legal[.]" (citation omitted)). In the context of statutory penalties, the Supreme Court distinguishes between monetary remedies "designed to punish or deter the wrongdoer" and those seeking "solely to 'restore the status quo.'" *Jarkesy*, 114 S. Ct. at 2129 (quoting *Tull*, 481 U.S. at 422). Restoring the status quo in a court of equity can mean ordering restitution—the "return [of] unjustly obtained funds"—but "monetary penalties to punish culpable individuals" arise only in actions at law. *Id.* (quoting *Tull*, 481 U.S. at 422).

Earlier precedent explicates the distinction between equitable and legal monetary relief. The "general rule," again, is "that monetary relief is legal." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 710 (1999) (citation omitted). And "compensation is a purpose 'traditionally associated with legal relief.'" *Id.* at 710-11 (citation omitted). What distinguishes compensatory damages from equitable restitution is

that, for compensatory damages, "the question is what has the owner lost, not what has the taker gained." *Id.*; *see also* DAN B. DOBBS & CAPRICE L. ROBERTS, LAW OF REMEDIES § 4.1, at 374 (distinguishing restitution from damages).

*Thryv* damages do not focus on what the alleged "taker" (the employer) has "gained." They focus on what the purported "owner" (the employee) has "lost." Such damages go far beyond backpay and benefits that the employer otherwise would have paid. They attempt to compensate employees for "all direct or foreseeable pecuniary harms that these employees suffer as a result of the [employer's] unfair labor practice." *See Thryv*, 372 N.L.R.B. No. 22, slip op. at 1. The monetary remedy sought, which seeks both direct and indirect damages, is thus legal in nature and the SpaceX's jury trial right attaches. *See* DOBBS & ROBERTS, *supra*, § 1.2, at 9 ("Damages was historically a legal remedy.").

The nature of the action also is legal in nature, as the unfair labor practice charges based on unlawful discharge the NLRB seeks to adjudicate carry "common law soil" with them. *Jarkesy*, 144 S. Ct. at 2137. The common law regulated the relationship between employer and employee (or master and servant) and wages owed, typically as a matter of contract.

*See* 1 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 425-28 (8th ed. 1778); JOSEPH CHITTY, A PRACTICAL TREATISE ON THE LAW OF CONTRACTS 575-81 (3d ed. 1841). Thus, an employee could bring an action to recover wages that sounded in contract. CHITTY, *supra*, at 580, 841, 846. More recently, an action by an employee against an employer seeking full compensation arising from an alleged wrongful discharge is akin to a proceeding seeking damages for a breach of contract or for a tort. *See* DAN B. DOBBS ET AL., THE LAW OF TORTS § 703, at 774-79 (2d ed. 2011) (describing common law wrongful discharge); *cf. Fortune v. Nat'l Cash Reg. Co.* 364 N.E.2d 1251, 1257 (Mass. 1977) (treating bad-faith discharge of an at-will employee as a breach of contract); *Petermann v. Teamsters Loc. 396*, 344 P.2d 25, 27-28 (Cal. Ct. App. 1959) (recognizing cause of action for discharge in violation of public policy). For this reason, the NLRB's pursuit of compensatory damages from SpaceX is "more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty." *Tull*, 481 U.S. at 417.

The NLRB is also seeking nonmonetary remedies that are punitive in nature. That includes a notice reading by SpaceX's Chief Operating

Officer in the presence of a Board agent with the widest possible employee attendance, posting notices for 120 days, and personal apology letters to the Charging Parties. ROA.352-53. This sort of forced "'confession of sins' by the employer 'conjure[s] up the system of "criticism-self-criticism" devised by Stalin and adopted by Mao,'" and is "incompatible with the democratic principles of the dignity of man." *Denton Cnty. Elec. Coop., Inc. v. NLRB*, 962 F.3d 161, 174 (5th Cir. 2020) (quoting *HTH Corp. v. NLRB*, 823 F.3d 668, 675-77 (D.C. Cir. 2016)). The punitive nature of these remedies confirms that the NLRB proceedings go beyond mere equitable relief. Equity never "lends its aid to enforce a forfeiture or penalty." *Liu v. SEC*, 591 U.S. 71, 77 (2020) (quoting *Marshall v. Vicksburg*, 15 Wall. 146, 149 (1873)).

### b.   The public-rights exception is inapplicable.

The public-rights doctrine does not authorize Congress to assign these claims to administrative agencies. The NLRB's remedy goes beyond vindicating public rights—"the public interest in effecting federal labor policy"—and targets "the wrong done the individual employee." *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 573

(1990) (citation omitted). Indeed, the NLRB's admitted purpose is reme-dying a private wrong. *Thryv*, 372 N.L.R.B. No. 22, slip op. at 8, 10, 12.

The *Jarkesy* opinion took care to emphasize the public rights excep-tion is "an *exception*." 144 S. Ct. at 2134. "It has no textual basis in the Constitution and must therefore derive instead from background legal principles." *Id*. When this exception applies, it often flows from "from cen-turies-old rules." *Id.* at 2133-34 (discussing sovereign collection of debts, Indian tribes, immigration penalties, tariffs, and administration of cer-tain public benefits). And "[e]ven with respect to matters that arguably fall within the scope of the 'public rights' doctrine, the presumption is in favor of Article III courts." *Id.* (cleaned up). Seeking compensatory dam-ages for private employment grievances is not among the examples of long-recognized public rights cases that the Supreme Court discussed.

The NLRB may argue that the Supreme Court has already upheld its proceedings against a Seventh Amendment challenge. *See NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48 (1937); *Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 453 (1977). In *Jones & Laughlin*, however, the Court considered only the remedy of backpay, which is expressly author-ized by the statute and which the Court has said sometimes takes the

form of restitution. *See Terry*, 494 U.S. at 571-72. As *Thryv* illustrates, the modern NLRB claims much greater remedial authority. So the fact that the original design of the NLRB passed the Supreme Court's scrutiny does not mean its current operations can.[10]

Congress does not have carte blanche to sidestep the Seventh Amendment and Article III by simply creating a new statutory framework and administrative agency. Congress cannot "conjure away the Seventh Amendment by mandating that traditional legal claims" proceed before "an administrative tribunal." *Granfinanciera*, 492 U.S. at 52; *see also Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 334 (2018) ("Congress cannot 'confer the Government's "judicial Power" on entities outside Article III.'"). As originally conceived, the NLRB was

---

[10] SpaceX expressly preserves its argument that both these cases should be overruled as they were wrongly decided. Notably both these cases are missing from the Supreme Court's litany of historic public rights cases in *Jarkesy* at 2131-34. And the Court leaves open that *Atlas Roofing* has been overruled in footnotes 3 and 4. Moreover, the Court notes *Atlas Roofing* adopts a problematic "circular" definition of public rights. *Id.* at 2138-39. And the dissent expressly recognizes that "it is unclear how OSHA, or the National Labor Relations Act at issue in *Jones & Laughlin*, would fit the majority's view of the public-rights doctrine." *Id.* at 2165 (Sotomayor, J., dissenting).

confined to awarding the narrow relief enumerated in the statute, consistent with the NLRB's mandate to act as "as a public agent" rather than a provider of a "private administrative remedy." *Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.*, 309 U.S. 261, 265, 269 (1940) (citation omitted). Now, the NLRB wants to provide private legal remedies in the form of full compensatory relief and inflict punishment on the employer, violating the Seventh Amendment and intruding into the domain of Article III. *See Oil States*, 584 U.S. at 344 (noting the connection between the Seventh Amendment right and Article III). The Court in *Jarkesy* cautioned against this very thing, warning that the "Seventh Amendment would become nothing more than a game, where the Government need only identify some slight advantage to the public from agency adjudication to strip its target of the protections of the Seventh Amendment." 144 S. Ct. at 2139.

Under *Jarkesy* and other Supreme Court precedents, SpaceX is likely to succeed on the merits of this claim too.

### c.    There is jurisdiction to consider this claim.

In response to SpaceX's preliminary injunction motion, the NLRB briefly argued that *Axon*'s allowance of judicial review before the conclusion of agency adjudicatory proceedings is not satisfied for this claim. ROA.757-58. The NLRB is wrong. The jury trial right attaches before a proceeding begins and not just upon a finding of liability.

*Axon* holds there is jurisdiction (1) if failing to consider the claim would foreclose "meaningful judicial review"; (2) if the claim is "wholly collateral to the statute's review provisions"; and (3) if the claim is "outside the agency's expertise." 598 U.S. at 185 (citing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212-13 (1994)). All three factors are met for SpaceX's Seventh Amendment claim.

Failing to consider the Seventh Amendment claim now would deprive SpaceX of meaningful judicial review. A Seventh Amendment jury-trial right attaches before the start of a proceeding. *See* U.S. Const. amend. VII; Fed. R. Civ. P. 38, 39 (procedures for preserving Seventh Amendment jury right before trial); *Solugen Inc. v. M3 Chem. Grp. LLC*, 529 F. Supp. 3d 685, 690 (S.D. Tex. 2021) (explaining these rules protect the "fundamental right" to a jury). In this type of challenge, the question

is who should sit as factfinder, regardless of the outcome, other decisions made in the case, or whether damages are in fact awarded. *See Jarkesy*, 34 F.4th at 452 (the right is centered on the "jury [acting] as a fact-finding body" (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)); *see also Axon*, 598 U.S. at 191-92. This is the same scenario as *Axon*: at least part of the right would be "effectively lost" if review was deferred until after trial. 598 U.S. at 191; *see also Burgess v. FDIC*, 639 F. Supp. 3d 732, 744-45, 749 (N.D. Tex. 2022) (a Seventh Amendment claim is structural challenge subject to review); *Ward v. Village of Monroeville*, 409 U.S. 57, 61-62 (1972), (a party is entitled to a constitutionally acceptable adjudicatory process in the first instance).

The second *Axon* factor—whether this claim is "wholly collateral" to the NLRB's review provisions, 598 U.S. at 186—also supports jurisdiction over SpaceX's Seventh Amendment claim. SpaceX is challenging the power of the Board "to proceed at all" when it offers no jury trial right or Article III decisionmaker. *Axon*, 598 U.S. at 192. SpaceX is not challenging a specific damages award. So, as in *Axon*, the collateralism factor favors review. *See id.* at 192-93.

Finally, SpaceX also meets the third factor, which is whether the claim is outside the agency's expertise. Much as in *Axon*, the Board here knows "nothing special about the [Seventh Amendment]." *Id.* at 194. Who sits as the factfinder in this case is an issue of "here-and-now harm" that "would remain no matter how much expertise could be 'brought to bear' on the other issues," *id.* at 195.

All three *Axon* factors favor review here. And even if not all three did, the factors on balance do. There is jurisdiction to consider the Seventh Amendment claim.

### 4. The NLRB Members' blending of functions violates the separation of powers and due process.

The final structural defect in the NLRB's proceedings against SpaceX is the combination of both prosecutorial and adjudicative functions by the NLRB Members. Just before issuing the complaint against SpaceX, the Regional Director indicated an intent to submit a recommendation to the NLRB's Injunction Litigation Branch on whether the Board should petition a federal court for injunctive relief under Section 10(j) of

the NLRA. *See* ROA.40; ROA.263. After receiving such a recommenda-

tion, NLRB Members decide whether to file a Section 10(j) petition.[11] *See*

*Starbucks*, 144 S. Ct. at 1584 (Jackson, J., concurring in part and dissent-

ing in part) (outlining the NLRB's "extensive, and strikingly deliberative,

standard operating procedure" for authorizing a Section 10(j) petition).

Then the same Members preside over any administrative appeal from the

ALJ's unfair labor practice decision on the same charges. 29 U.S.C.

§ 160(c). NLRB Members who authorize filing of a Section 10(j) petition

act as prosecutors and adjudicators in the same proceeding.

### a. NLRB Members' combination of functions violates due process.

The Constitution does not permit any individual to play both those

roles. Even for state officials, the Supreme Court has held that "an un-

constitutional potential for bias exists when the same person serves as

both accuser and adjudicator in a case." *Williams v. Pennsylvania*, 579

U.S. 1, 8 (2016). In *Williams*, the Court held that a state supreme court

---

[11] *See* Office of the General Counsel, *Section 10(j) Manual* §§ 5.2-5.5, at 13-16 (Feb. 2014). Until recently the NLRB 10(j) manual was available on the NLRB website. SpaceX can provide a copy upon the Court's request.

justice violated the Fourteenth Amendment Due Process Clause by participating in postconviction review proceedings in a death-penalty case whose prosecution he had authorized decades earlier. *Id.* at 7. The Court concluded that the justice's dual roles violated "[t]he due process guarantee that 'no man can be a judge in his own case.'" *Id.* at 9. The Constitution therefore mandated that the prior prosecutor recuse from serving as an adjudicator. *Id.* at 16.

*Williams* sets forth a statement of general principle: "The Court now holds that under the Due Process Clause there is an impermissible risk of actual bias when a judge earlier had significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case." *Id.* at 8.

The Arizona Supreme Court explained in *Horne v. Polk*, 394 P.3d 651 (Ariz. 2017), that this principle equally applies in the agency context. *Horne* involved a "Special Arizona Attorney General" who played dual roles prosecuting a violation of the Arizona campaign finance laws and reviewing (and rejecting in part) the ALJ's recommendation. The court explained that under both federal and state law (including *Williams*),

"due process does not allow the same person to serve as an accuser, advocate, and final decisionmaker in an agency adjudication." *Id.* at 659. While "[t]he agency head may supervise personnel involved in such functions . . . if she makes the final agency decision, she must be isolated from advocacy functions and strategic prosecutorial decisionmaking and must supervise personnel involved in those functions in an arms-length fashion." *Id.*

Neither this Court nor any other circuit court has held otherwise. Although this Court has held that due process permits an administrative agency as a whole to "serv[e] as both prosecutor and judge," *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1047 (5th Cir. 2023), that does not imply that a single agency *officer* may serve as both prosecutor and judge. And while a series of decades-old out-of-circuit cases have addressed due-process claims challenging NLRB Members' dual roles, *see* ROA.746 n.90; ROA.762 (collecting cases issued between 1975 and 1998), none of those cases address the issue since *Williams*. That case directly held that an adjudicator's "significant, personal involvement in a critical decision in [a defendant's] case [gives] rise to an unacceptable risk of actual bias" that "so endanger[s] the appearance of neutrality that his participation

in the case 'must be forbidden if the guarantee of due process is to be adequately implemented.'" 579 U.S. at 14 (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).

The same criticism applies to NLRB Members in their Section 10(j) approval process. Like any request for preliminary injunctive relief, a Section 10(j) proceeding hinges on a likelihood of success on the merits and irreparable harm. *See Starbucks*, 144 S. Ct. at 1576. NLRB Members who approve requesting Section 10(j) relief thus express their assessment that (1) the subject of the enforcement proceeding is likely to lose on the merits of the case and (2) the NLRB's interests outweigh the subject's interests. *Section 10(j) Manual*, *supra*, §§ 4.0, 5.2.1, at 10, 13.

This approval process is far from neutral. By design, the process relies primarily on the presentation in the "Go 10(j)" memorandum prepared by one side—the NLRB officials who wish to litigate the alleged statutory violations. This memorandum provides their views about "the relevant facts and legal arguments and authorities establishing the violations," their "responses to defenses raised by the [charged party]," and their "responses [to the charged party's] arguments against 10(j)" relief. *Section 10(j) Manual*, *supra*, § 5.2.1, at 13. Even after relying on this one-

sided presentation as their primary basis to authorize Section 10(j) proceedings, the same NLRB Members judge whether the same charged parties have engaged in the alleged unfair labor practices, and issue findings of fact, orders, and remedies that are then subject to deferential judicial review. 29 U.S.C. § 160(c), (e)-(f).

### b.     There is jurisdiction to consider this claim.

The NLRB could—but has elected not to—disavow its threat of filing a Section 10(j) petition against SpaceX. After SpaceX filed its district court complaint and injunction motion, the NLRB admitted that Section 10(j) relief was still "being considered." ROA.270 n.59. And later, in response to SpaceX's injunction motion, the NLRB did not disavow any further consideration of Section 10(j) proceedings; it challenged the district court's jurisdiction to review this claim. ROA.761.

The NLRB's jurisdictional objection is meritless. *See* ROA.761. Under *Axon*, this claim "protest[s] the 'here-and-now' injury of subjection to an unconstitutionally structured decisionmaking process" and a court of appeals' eventual review "would come too late to be meaningful." 598 U.S. at 191-92. The claim ripened when the NLRB Region indicated that it

would "mak[e] a submission to the General Counsel's Injunction Litigation Branch about the appropriateness of Section 10(j) relief in this dispute." ROA.40; *see, e.g.*, *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 932 (5th Cir. 2023) ("One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985)). And it was reinforced by the NLRB's admission that such proceedings are already "being considered" against SpaceX *in this case.* ROA.263; ROA.270 n.59; *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) (holding petitioners' pre-enforcement constitutional challenges were ripe where there was a history of past enforcement and a threat of future enforcement).

After approving a federal-court filing that alleges, on behalf of the NLRB, that a specific party has likely violated the NLRA in ways that cause irreparable harm to the Board or third parties, there is a substantial risk that such NLRB Members will be "psychologically wedded" to that position when they adjudicate the administrative complaint. *Williams*, 579 U.S. at 9 (citation omitted). If, in the meantime, the agency's bid for Section 10(j) relief succeeds, that risk grows even greater. NLRB

Members might "be influenced by an improper, if inadvertent, motive to validate and preserve the result obtained through the adversary process" in federal court. *Id.* at 11. The Constitution prohibits adjudicative proceedings that are tainted in this way, and SpaceX is likely to succeed on this claim.

### B. SpaceX will suffer irreparable harm without a preliminary injunction.

SpaceX also meets the second requirement for a preliminary injunction: irreparable harm. Without preliminary relief, SpaceX must undergo unconstitutional proceedings before insufficiently accountable agency officials and without a jury or judge. These constitutional injuries cannot be remedied after the administrative process. Unless this Court reverses the district court's decision denying SpaceX a preliminary injunction to block the NLRB proceedings, SpaceX will suffer "harm for which there is no adequate remedy at law." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013).

### 1. The unconstitutionality of the NLRB proceedings inflicts irreparable harm.

#### a. Removal protection claims

Deprivation of a constitutional right "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *accord Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). In *Axon*, the Supreme Court held that being subjected to unconstitutionally structured agency proceedings is an irreparable constitutional injury.

As for SpaceX's ALJ removal claim, "being subjected to unconstitutional agency authority . . . by an unaccountable ALJ . . . is a here-and-now injury" that is "impossible to remedy once the proceeding is over." *Axon*, 598 U.S. at 191. An appellate court "could of course vacate the [agency]'s order," but a "separation-of-powers claim" challenging unconstitutional removal protections "is not about that order." *Id.* Such a claim "is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker." *Id.* Once the proceeding has concluded, a court cannot remedy *that* harm: "[a] proceeding that has already happened cannot be undone," and "[j]udicial review . . . would come too late to be meaningful." *Id.* at 191-92. This reasoning directly applies here.

The en banc Fifth Circuit has likewise recognized that if a removal claim is "meritorious," the plaintiff should not be "forc[ed] to litigate before an ALJ who is unconstitutionally insulated from presidential control." *Cochran*, 20 F.4th at 212-13; *see also Alpine Sec. Corp. v. FINRA*, No. 23-5129, 2023 WL 4703307, at *3 (D.C. Cir. July 5, 2023) (Walker, J., concurring) (finding an injunction of an administrative adjudication pending appeal appropriate based on *Axon* because the plaintiff was likely to prevail on its claim that officers were unlawfully "shielded from removal").

The same reasoning applies to the irreparable harm from proceedings before unaccountable NLRB Members. Like the ALJs, NLRB Members are overseeing an illegitimate proceeding (including before the ALJ proceedings start), so *Axon* and *Cochran*'s reasoning is equally on point.

Before the district court, the NLRB cited inapposite cases where courts refused to invalidate, or enjoin the prospective effect of, *past* agency action taken by unconstitutionally insulated Executive Branch officials—as opposed to the situation here, where SpaceX is seeking to prevent a constitutionally tainted proceeding from occurring in the first place. *See* ROA.738 (citing *Cmty. Fin. Servs. Ass'n of Am. Ltd. v. CFPB*,

51 F.4th 616, 625 (5th Cir. 2022); *Collins v. Dep't of the Treasury*, 83 F.4th 970, 982 (5th Cir. 2023)). These cases did not question the availability of relief from ongoing unconstitutional proceedings but instead sought to void past agency actions and deny them of any further effect. The Supreme Court has made clear that a challenge to an agency's "power to proceed at all" differs from a challenge to "action[s] [already] taken in the agency proceedings." *Axon*, 598 U.S. at 192. Being subjected "to an illegitimate proceeding, led by an illegitimate decisionmaker," "cannot be undone" after the fact. *Id.* at 191. And as noted above, the en banc Fifth Circuit has already recognized that *Collins*'s analysis does not apply to litigants seeking an "administrative adjudication untainted by separation-of-powers violations"; it applies to litigants seeking to "'void' the acts of any [agency] official." *Cochran*, 20 F.4th at 210 n.16.

In this action SpaceX is "entitled," at a minimum, "to declaratory relief sufficient to ensure that the [labor law] requirements and . . . standards to which [it is] subject will be enforced only by a constitutional agency accountable to the Executive."[12] *Free Enter. Fund*, 561 U.S. at

---

[12] For the reasons discussed below in Section II.C, given the severance complexities, a declaration severing the unconstitutional provisions

513. Because there is no mechanism for such declaratory relief before final judgment, a preliminary injunction is necessary to prevent the irreparable injury and preserve the status quo so the judiciary can provide meaningful final relief. *See, e.g.*, *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975); *Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997).

### b.    Seventh Amendment claim

The deprivation of SpaceX's right to a jury in the NLRB proceedings is also a "here-and-now" injury inflicting irreparable harm. Because SpaceX is "entitled under the Seventh Amendment to a jury trial, the irreparable injury requirement is automatically satisfied without the need to consider Plaintiff's particular showings." *Burgess*, 639 F. Supp. 3d at 749. As with having to proceed before unaccountable executive officials, having to proceed without a jury outside an Article III court cannot be remedied after the proceeding has already run its course. *Cf. Ward*, 409 U.S. at 61-62 (a flawed adjudicative process cannot "be deemed con-

---

may not be an appropriate remedy here. But the Court need not resolve that question at this juncture.

stitutionally acceptable simply because the State eventually offers a defendant an impartial adjudication. Petitioner is entitled to a neutral and detached judge in the first instance.").

### c.    Due process claim

Proceeding before biased adjudicators is an irreparable injury as well. Even if a court eventually orders a rehearing without participation by any NLRB Members who authorized the Section 10(j) petition, this may not "guarantee complete relief." *Williams*, 579 U.S. at 16. For example, any newer NLRB Members appointed after the Section 10(j) petition who preside over the eventual administrative appeal and are "exposed to a disqualified [Member]" who did authorize the petition, may be "influenced by their colleague's views when they rehear the case." *Id.* And, more broadly, being "deprived of procedural due process . . . is in itself irreparable injury." *Associated Builders & Contractors of Tex. Gulf Coast, Inc. v. U.S. Dep't of Energy*, 451 F. Supp. 281, 286 (S.D. Tex. 1978). In short, each constitutional claim poses its own irreparable harm.

## 2. The NLRB proceedings also inflict irreparable economic and reputational harm.

While the unconstitutional nature of the NLRB proceeding is enough to establish irreparable harm, the real-world burdens of the proceedings also inflict irreparable harm. SpaceX showed below that it was suffering real world harm in the form of costs and time by its personnel preparing for the unconstitutional agency proceedings, as well as reputational injury arising from the proceedings. ROA.334-39.

The federal government often uses these financial and reputational harms to its advantage. *Cf. Axon*, 598 U.S. at 216 (Gorsuch, J., concurring) ("Aware, too, that few can outlast or outspend the federal government, agencies sometimes use this as leverage to extract settlement terms they could not lawfully obtain any other way."). And there is no way to recover the lost time, money, or focus caused by these agency proceedings, even if SpaceX eventually succeeds in getting an administrative hearing that avoids the constitutional defects identified above. Without a stay of these proceedings until the Court can award a constitutionally adequate remedy, SpaceX will suffer concrete harm that is unrecoverable.

### C. The balance of harms and public interest favor a preliminary injunction.

SpaceX satisfies the two remaining preliminary injunctive factors as well. Where, as here, the government is a defendant, the balance of harms and the public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Both factors strongly favor SpaceX. Given its likelihood of success on the merits, an injunction would not harm Defendants because the government suffers no cognizable harm from stopping "the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); *see also, e.g.*, *BST Holdings,* 17 F.4th at 618. Nor would an injunction "disserve the public interest." *Louisiana v. Biden*, 55 F.4th 1017, 1022 (5th Cir. 2022); *see also BST Holdings*, 17 F.4th at 618; *Daniels Health Scis.*, 710 F.3d at 585 ("[T]he public is served when the law is followed."); *League of Women Voters*, 838 F.3d at 12. It is not in the public interest to have an increasingly expansive Executive Branch that nonetheless "slip[s] from the Executive's control, and thus from that of the people," *Free Enter.*, 561 U.S. at 499, or that infringes the constitutional imperative that "the judiciary remain[] truly distinct from . . . the executive," *Stern v. Marshall*, 564 U.S. 462, 483

(2011) (alteration in original) (quoting THE FEDERALIST No. 78, at 466 (Hamilton)).

## II. The NLRB's procedural objections to the injunction are meritless.

### A. The district court's erroneous transfer order did not strip it of authority to enter a preliminary injunction.

In the district court and in opposing SpaceX's motion in this Court for an injunction pending appeal, the NLRB argued the district court lacked authority to grant injunctive relief after it entered the transfer order. ROA.1189 ("[A] finding of improper venue severely limits a court's ability to act: its options are to dismiss or transfer the case. . . . There is no third option to nonetheless grant extraordinary injunctive relief at a party's behest."); *see also* Dkt. 30, at 17-18.

Venue is not a jurisdictional issue. Until the case record was both received and docketed in the transferee forum, the district court was the only forum which SpaceX had in which to make its preliminary injunction motion. There is no basis to conclude that the district court had anything less than full authority to issue an injunction, even having granted a transfer order. *Cf. Polymer80, Inc. v. Garland*, No. 23-cv-29, 2023 WL 3605430, at *5 (N.D. Tex. Mar. 19, 2023).

The NLRB's cases are not to the contrary. They all involve a defendant seeking dismissal for improper venue, as opposed to here where the NLRB affirmatively argued, ROA.266-67, the interests of justice necessitated transfer instead of a dismissal. ROA.1166-67; *see Proctor & Gamble Co. v. Ranir, LLC*, No. 17-cv-185, 2017 WL 3537197, at *5 (S.D. Ohio Aug. 17, 2017) (dismissal for lack of venue moots preliminary injunction motion); *Hendricks v. Bank of Am., N.A.*, 408 F.3d 1127, 1136 (9th Cir. 2005) (if improper venue required dismissal there would be no authority to issue the injunction); *Larson v. Galliher*, No. 06-cv-1471, 2007 WL 81930, at *4 (D. Nev. Jan. 5, 2007) (seeking dismissal); *U.S. Golf Ass'n v. U.S. Amateur Golf Ass'n*, 690 F. Supp. 317, 319 (D.N.J. 1988) (seeking dismissal); *Fintech Fund, FLP v. Horne*, 327 F. Supp. 3d 1007, 1027 (S.D. Tex. 2018) (no injunction where dismissed on other grounds other than venue).

These cases do not hold that where a court determines that transfer is warranted it is precluded from promptly addressing other pressing matters before transfer. The NLRB acknowledges that courts have properly issued preliminary injunctions before transfer. ROA.1167 (*Lou v. Belzberg*, 834 F.2d 730, 733 (9th Cir. 1987); *C & A Plus, Inc. v. Pride*

*Sols., LLC*, No. 02-cv-118, 2003 WL 25278133, at *9 (D.N.D. Feb. 7, 2003)). Thus, to the extent the district court denied the preliminary injunction because it believed it lacked the authority to do so, that was error.

**B.    In all circumstances, venue was proper in the Southern District of Texas.**

The district court's venue ruling (ROA.1025-29) is erroneous, so lack of venue is no basis to deny the injunction.[13] SpaceX correctly filed suit in the Southern District of Texas because the NLRB alleged that unlawful acts occurred there and sought to impose regulatory burdens there through the challenged administrative proceeding.

For the reasons stated in the dissenting opinions during the mandamus proceeding, the district court erred in finding that SpaceX failed to lay venue in the Southern District of Texas. *See In re SpaceX*, 96 F.4th

---

[13] Even if this Court agrees the district court had authority to issue an injunction after granting a transfer order, Defendants argued more broadly in opposing the motion for an injunction pending appeal that improper venue precludes injunctive relief. Dkt. 30, at 17-18. Defendants thus put venue at issue in this appeal, and it has not yet been resolved by this Court. During the mandamus proceedings, neither the panel majority nor the evenly divided en banc Court expressed any view on the substance, so this issue is still open for the panel. *Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1078 (9th Cir. 1988) (summary denial of mandamus does not establish the law of the case).

733 (5th Cir. 2024) (Elrod, J., dissenting); *In re SpaceX*, 99 F.4th 233 (5th Cir. 2024) (Jones, J., dissenting).

The transactional-venue statute "does not ask the district court to determine whether the current venue is the best venue." *In re SpaceX*, 96 F.4th at 735 (Elrod, J., dissenting). It asks whether the current venue is one where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(e)(1)(B).

The district court employed an erroneous standard comparing the case's connections to Texas and California. *See, e.g.*, ROA.1027 ("resulting events in this district are . . . far less significant that those occurring in California"); ROA.1027 ("most related events . . . occurred at and in relation to the Hawthorne facility"); ROA.1028-29 ("the Central District of California is the venue in which the most events giving rise to this case occurred"). As Judge Jones explained, the district court's comparative analysis is at odds with the proposition that "[i]t has always been clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred." *In re SpaceX*, 99 F.4th at 238 (quoting 14D C. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3806 (4th ed. 2023)).

The statutory phrase "'a substantial part' cannot be construed textually to mean 'more' or 'most substantial,' as the district court's analysis repeatedly suggests," because "'[s]ubstantial' is a qualitative, not a comparative term." *Id.* (determining whether more than "a little, minor, slight," part of the events occurred in district is a qualitative not comparative analysis). In contrast, the district court's comparative totality-of-events standard "creates the possibility that venue would be improper everywhere." *In re SpaceX*, 96 F.4th at 736 (Elrod, J., dissenting).

This Court should clarify that the qualitative interpretation for Section 1391(e)'s transactional standard set forth in Judge Elrod's and Judge Jones's dissents accurately states the law of this Circuit.

Under the correct standard, SpaceX proved venue was proper and the 28 U.S.C. § 1406 transfer order was erroneous. "If the selected district court's contacts are 'substantial,' it should make no difference that another's are more so, or the most so." *Id.* (quoting *Crowe & Dunlevy, P.C. v. Stidham*, 609 F. Supp. 2d 1211, 1221 (N.D. Okla. 2009), *aff'd*, 640 F.3d 1140 (10th Cir. 2011)).

Three sets of substantial events lay venue in the Southern District of Texas: (1) the NLRB is attempting to regulate SpaceX in the Southern

District of Texas; (2) an alleged unfair labor practice occurred in the Southern District of Texas; and (3) the Charging Parties intentionally targeted SpaceX's facilities and employees in the Southern District of Texas. ROA.592-97; ROA.613-17; ROA.619-22; ROA.624-25; ROA.627-28; ROA.630; ROA.632-34; ROA.636-67; ROA.631-49. Considering all these events, the Southern District of Texas is clearly a proper venue.

Courts in this Circuit widely hold that transactional venue is "proper where: (1) the plaintiff has a significant presence in the forum; and (2) the plaintiff was subject to actual or imminent burden within the forum should the contested agency action take effect." *In SpaceX*, 96 F.4th at 737 (Elrod, J., dissenting); *see, e.g.*, *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 2023 WL 2975164, at *2 (N.D. Tex. Apr. 17, 2023); *Umphress v. Hall*, 479 F. Supp. 3d 344, 351-52 (N.D. Tex. 2020); *Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015). SpaceX would be substantially burdened in the Southern District of Texas, as the NLRB alleges SpaceX violated labor law within the district and requests remedies that would burden SpaceX within the district at its Starbase and Houston facilities. *In re SpaceX*, 99 F.4th at 235 (Jones, J., dissenting)

("The remedy sought by NLRB would regulate all SpaceX's Texas employees."); *see also In re SpaceX*, 96 F.4th at 736-38 (Elrod, J., dissenting).

The NLRB complaint also alleges an unfair labor practice occurred in the district as it includes a charge based on an e-mail SpaceX's President and COO, Gwynne Shotwell, sent to all SpaceX employees, including those at Starbase and in Houston. This Court's precedent holds "that communications sent to Texas can constitute a substantial part of the events giving rise to the plaintiff's claim so long as those claims derive directly from those communications." *In re SpaceX*, 96 F.4th at 738-39 (Elrod, J., dissenting) (citing *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 493 (5th Cir. 2018)).

The challenged administrative proceeding giving rise to this action also arose from events occurring in the district. *In re SpaceX*, 99 F.4th at 235 (Jones, J., dissenting). "The conduct forming the basis of NLRB's complaint intentionally included employees in this district. And the Charging Parties' Open Letter that generated the complaint was received by all and responded to by some 200 Texas employees, and it disrupted SpaceX's operations in the Southern District." *Id.*

Any of these three categories independently suffices to lay venue. This Court should correct the district court's determination that venue was improper under Section 1391(e).

## C.    Severability is a final remedies question.

The NLRB argued below that an injunction is improper because the constitutional defects may be severed from the statute. ROA.740-43. The possibility of severance is no basis to deny a preliminary injunction.

Severance is appropriate to consider only when determining how to craft the final remedy. *See Doran*, 422 U.S. at 931 ("prior to final judgment there is no established declaratory remedy comparable to a preliminary injunction; unless preliminary relief is available upon a proper showing, plaintiffs in some situations may suffer unnecessary and substantial irreparable harm"). SpaceX needed a preliminary injunction to stop the ongoing constitutional harm. A preliminary injunction was the only tool available at this juncture before any final merits determination because there is no such thing as a preliminary declaration.

The district court should have issued a preliminary injunction to preserve the status quo and protect its ability to later provide meaningful

permanent relief. *Id.*; *see also Wenner*, 123 F.3d at 326 ("Preliminary injunctions commonly favor the status quo and seek to maintain things in their initial condition so far as possible until after a full hearing permits final relief to be fashioned."); *Miss. Power & Light Co*, 760 F.2d at 627 (5th Cir. 1985) ("The purpose of a preliminary injunction is to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits.").

In any event, it is far from clear that severance would be appropriate even as a final remedy. Take the removal protection claims. Severance would be difficult because there are three different layers of removal protections and it is not at all clear which, if any, Congress would be willing to give up. All three (ALJ, MSPB, and NLRB members) reflect measured legislative choices to create political independence. *Lucia*, 585 U.S. at 260 (Breyer, J., concurring in the judgment in part) (ALJ removal protections prevent comingling of agency prosecutorial and adjudicatory functions); 5 C.F.R. § 1200.1 ("The [MSPB] is an independent Government agency that operates like a court"); Michael J. Heilman, *The National Labor Relations Act at Fifty: Roots Revisited, Heart Rediscovered*, 23 Duq. L. Rev. 1059, 1069 (1985) (against failure of prior labor board

due to reliance on Department of Justice and accountability to President, the NLRB was created to be independent of political control). To make matters worse, severing only one layer of protection would still leave two layers of removal protection, which is still unconstitutional under *Free Enterprise Fund*. It is difficult, and perhaps impossible, to figure out which removal protection Congress would have sought to preserve in fixing the constitutional problems SpaceX has identified. Given the risk of usurping the legislature's judgment, severance may be an inappropriate final remedy here.

Without determining whether and how severance could be implemented, a court cannot assume that the mere possibility of severance eliminates the likelihood of irreparable harm. Particularly given the complexities of the severance question, a preliminary injunction is warranted to preserve the status quo until the appropriate final remedy can be determined.

### D. The Norris-LaGuardia Act does not apply.

The NLRB also suggested for the first time in the reconsideration briefing that the district court could not issue an injunction without holding a hearing on the motion with witnesses. Notably, the NLRB did not

raise the supposed need for a hearing under 29 U.S.C. § 107 of the Norris-LaGuardia Act when it initially opposed the preliminary injunction and forfeited the argument. *See* ROA.721-66.

The Norris-LaGuardia Act is obviously inapplicable. It regulates injunctions against strikes, picketing, and boycotts, "express[ing] a basic policy against the injunction of activities of labor unions." *Chi. & N. W. Ry. Co. v. United Transp. Union*, 402 U.S. 570, 581-82 (1971) (citation omitted). The statute does not purport to regulate injunctions against unconstitutionally structured proceedings by the NLRB. By its terms, the statute is limited to cases that "involve[] persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees." 29 U.S.C. § 113. None of those possibilities plausibly encompasses this lawsuit between SpaceX and NLRB officials.

And even if the statute did apply, no hearing would have been necessary to grant injunctive relief. A hearing is not required where, as here, the evidence is undisputed. *Burlington N. & Santa Fe Ry. Co. v. Bhd. of Maint. of Way Employees*, 143 F. Supp. 2d 672, 691 (N.D. Tex. 2001), *aff'd*,

286 F.3d 803 (5th Cir. 2002); *Kan. City S. Transp. Co. v. Teamsters Loc. Union #41*, 126 F.3d 1059, 1067-68 (8th Cir. 1997). Thus, the Norris-LaGuardia Act is no impediment to a preliminary injunction and cannot support the district court's denial of the motion.

## III.   There was an effective denial of the preliminary injunction.

The motions panel correctly determined, in denying the NLRB's motion to dismiss the appeal, that the district court effectively denied SpaceX's preliminary injunction motion. Dkt. 47. In the three-and-a-half months preceding the notice of appeal, SpaceX asked at every turn for a ruling on its preliminary injunction motion in time to prevent the constitutional injuries created by the same Defendants who sought to stymie quick adjudication of SpaceX's claims.

At the time of appeal on April 30, the hearing had *already opened* March 5. SpaceX consistently argued its "constitutional injury grows with every new event in the administrative proceeding." No. 24-40103, Dkt. 71, at 14. It is undisputed further proceedings before an ALJ would have occurred on May 2 absent this Court's intervention. The denial of constitutional rights "for even minimal periods of time constitutes irreparable injury." *Deerfield Med. Ctr.*, 661 F.2d at 338.

SpaceX waited as long as it could for the district court to rule before seeking relief from this Court, waiting until after 10 p.m. Central Time on April 30 to file the notice of appeal. After docketing the next day, SpaceX quickly filed its motion for an injunction pending appeal. Dkt. 10-1. SpaceX received an injunction pending appeal from this Court just minutes before the ALJ hearing was scheduled to start. Dkt. 40-2.

In nearly identical circumstances, this Court has recognized that after a district court's failure to rule by close of business two days before the requested ruling date creates an effective denial of the preliminary injunction. *See NAACP v. Tindell*, 90 F.4th 419, 421-22 (5th Cir. 2024) (recognizing where ruling requested by January 1 and court did not act by December 30 there was an effective denial creating appellate jurisdiction where relief sought on December 31), *withdrawn and superseded on other grounds*, 95 F.4th 212 (5th Cir. 2024). SpaceX's motion had been pending in the district court since January 12 and fully briefed since February 12—there can be no question that the district court had time to act. *See Fort Worth Chamber*, 100 F.4th at 534 (holding given the circumstances there was an effective denial after one month). SpaceX appealed when—after three-and-a-half months without a ruling—it was certain to

incur new, additional constitutional injuries absent appellate intervention. Appellate jurisdiction is even more clear-cut than it was in *Fort Worth Chamber* or *Clarke*. *See id*; *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) ("The district court, by failing to rule on the preliminary injunction for three months, effectively denied it.").

In a filing with this Court, *see* Dkt. 70, at 4, the NLRB has suggested that the only question on appeal is whether the district court effectively denied the preliminary injunction. The NLRB argues that this Court should not address SpaceX's ultimate entitlement to the injunction. That argument ignores the Court's common practice. The Court has no difficulty addressing the merits of the preliminary injunction on effective denial appeals—including reversing the denial and ordering entry of a preliminary injunction. *E.g.*, *Clarke v. CFTC*, 74 F.4th 627, 644 (5th Cir. 2023) (ordering district court to enter a preliminary injunction in effective-denial appeal).

It is particularly appropriate for the Court to address the merits here because the key issues are questions of law which the Court reviews *de novo*. This case is procedurally distinct from *Fort Worth Chamber*,

which the NLRB has cited for this argument. Here, the facts are undisputed and a motions panel (Judges Smith, Stewart, and Oldham) has already ruled that SpaceX is entitled to an injunction pending appeal and has already denied Defendants' motion to dismiss for lack of jurisdiction—without noted dissent. The *Fort Worth Chamber* panel, in contrast, disagreed over whether there was an effective denial of the preliminary injunction and never issued an injunction pending appeal. They also involve different irreparable harm analyses. Here, based on the undisputed facts, SpaceX would suffer irreparable harm from participating in an unconstitutionally-structured proceedings and the harm stems from appearing in the proceedings themselves. In contrast, in *Fort Worth Chamber*, the irreparable harm was not a question of participating in an illegitimate proceeding but instead whether the plaintiffs' damages stemming from complying with an unconstitutional rule could be computed. *See Chamber of Com. of U.S. v. CFPB*, No. 24-cv-213, 2024 WL 2310515, at *3 (N.D. Tex. May 10, 2024) ("The issue isn't so much that Plaintiffs' injury could never be repaired by damages, but that damages for their injury could not practicably be measured.").

There is no reason to delay appellate review of the important legal issues in this case. Given the procedural complexities in this case, the undisputed factual record, the resources already devoted by this Court, and the district court's failure to timely rule on SpaceX's request for a preliminary injunction, the Court should conclusively resolve SpaceX's entitlement to a preliminary injunction.

## CONCLUSION

For all these reasons, the Court should reverse the district court's effective denial of the preliminary injunction and remand with instructions to enter a preliminary injunction. This Court's injunction pending appeal should continue until the district court enters a preliminary injunction compliant with this Court's instructions. *See Career Colls.*, 98 F.4th at 256 ("The stay pending appeal remains in effect until the district court enters the preliminary injunction.").

Dated:  July 17, 2024

Respectfully submitted,

s/ Michael E. Kenneally

HARRY I. JOHNSON, III
MORGAN, LEWIS & BOCKIUS LLP
2049 Century Park East, Suite 700
Los Angeles, CA  90067
(310) 255-9005

MICHAEL E. KENNEALLY
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 739-3000

CATHERINE L. ESCHBACH
MORGAN, LEWIS & BOCKIUS
1000 Louisiana Street, Suite 4000
Houston, TX  77002
(713) 890-5719

*Counsel for Space Exploration Technologies Corp.*

## CERTIFICATE OF SERVICE

I certify that on this day, July 17, 2024, I served a true and correct copy of the foregoing Appellant's Opening Brief on counsel of record for all other parties through this Court's CM/ECF system:

DAVID P. BOEHM
NATIONAL LABOR RELATIONS BOARD
1015 Half Street, S.E., Fourth Floor
Washington, D.C. 20003
David.Boehm@NLRB.gov
T: (202) 273-4202
F: (202) 273-4244

*Counsel for Respondent*
  *National Labor Relations Board*

s/ Michael E. Kenneally
MICHAEL E. KENNEALLY

*Counsel for Space Exploration Technologies Corp.*

# CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), this document contains 12,999 words.

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and 5th Cir. R. 32.1, and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document was prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font.


Dated:  July 17, 2024                                  s/ Michael E. Kenneally

                                                                MICHAEL E. KENNEALLY

                                                                *Counsel for Space Exploration Technologies Corp.*