# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

SPACE EXPLORATION TECHNOLOGIES, CORPORATION,
*Plaintiff-Appellant*,

vs.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency; JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board; LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board; MARVIN E. KAPLAN, in his official capacity as a Board Member of the National Labor Relations Board; GWYNNE A. WILCOX, in her official capacity as a Board Member of the National Labor Relations Board; DAVID M. PROUTY, in his official capacity as a Board Member of the National Labor Relations Board; JOHN DOE, in his official capacity as an Administrative Law Judge of the National Labor Relations Board,
*Defendants-Appellees*.

On Appeal from the United States District Court for the Southern District of Texas, No. 1:24-cv-00001, Hon. Jose Rolando Olvera

## BRIEF OF *AMICUS CURIAE* THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA IN SUPPORT OF PLAINTIFF-APPELLANT

BRIAN A. KULP
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104

KEVIN R. PALMER
MARIA C. MONAGHAN
MARIEL A. BROOKINS
U.S. CHAMBER LITIGATION
CENTER
1615 H Street, NW
Washington, DC 20062

STEVEN A. ENGEL
 *Counsel of Record*
MICHAEL H. MCGINLEY
JUSTIN W. AIMONETTI
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
(202) 261-3369
steven.engel@dechert.com

*Counsel for the Chamber of Commerce of the United States of America*

**SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS**

***No. 24-40315, Space Exploration Technologies, Corp. v. NLRB, et al.***

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 also have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

1. **The Chamber of Commerce of the United States of America** ("Chamber"), *Amicus Curiae*, represented by:

> **Steven A. Engel**
> **Michael H. McGinley**
> **Justin W. Aimonetti**
> **Brian A. Kulp**
> **DECHERT LLP**
>
> **Kevin R. Palmer**
> **Maria C. Monaghan**
> **Mariel A. Brookins**
> **U.S. CHAMBER LITIGATION CENTER**

2. The Chamber is a nonprofit, tax-exempt organization incorporated in the District of Columbia. The Chamber has no parent corporation, and no publicly held company has 10% or greater ownership in the Chamber.

Dated: July 24, 2024

         */s/ Steven A. Engel*
         Steven A. Engel
         DECHERT LLP
         1900 K Street, NW
         Washington, DC 20006
         (202) 261-3369
         steven.engel@dechert.com

INTEREST OF *AMICUS CURIAE*...........................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .....................................3

ARGUMENT ........................................................................................................5

I.     Compelled Adjudication in the NLRB's Juryless Administrative Tribunals Violates the Seventh Amendment...................................................5

      A.     The Right to a Civil Jury at Common Law has Long Served as an Essential Check on Government Overreach...................................6

      B.     *Jarkesy* Confirmed the Seventh Amendment's Reach........................9

      C.     The Seventh Amendment Prohibits the NLRB from Conducting this Proceeding in a Juryless Administrative Tribunal. ....................10

           1.     The Remedy Sought by the NLRB Is "All But Dispositive" of SpaceX's Right to a Jury Trial. ......................11

           2.     The Nature of the Cause of Action Only Confirms that the Seventh Amendment Applies. ..........................................17

II.     The NLRB Cannot Rely on the Public Rights Exception Where SpaceX's Private Rights Are at Stake. .........................................................21

CONCLUSION ...................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3484, Inc.*,
    373 NLRB No. 28 (Mar. 7, 2024) ....................................................15

*Acumen Cap. Partners, LLC*,
    372 NLRB No. 129 (Aug. 24, 2023) .................................................16

*Atl. Veal & Lamb, LLC*,
    373 NLRB No. 19 (Feb. 22, 2024) ...................................................15

*Axon Enter., Inc. v. FTC*,
    598 U.S. 175 (2023).......................................................................22

*Bos. Chamber of Com. v. City of Bos.*,
    217 U.S. 189 (1910).......................................................................14

*Bowsher v. Synar*,
    478 U.S. 714 (1986).........................................................................3

*Capstone Logistics LLC*,
    372 NLRB No. 124 (Aug. 22, 2023) .................................................16

*Cemex Constr. Materials Pac., LLC*,
    372 NLRB No. 130 (Aug. 25, 2023) .................................................16

*Cemex Constr. Materials Pac., LLC*,
    372 NLRB No. 157 (Nov. 13, 2023) .................................................15

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
    526 U.S. 687 (1999)...........................................................14, 17, 18

*Compañia Cervecera de P.R., Inc.*,
    373 NLRB No. 47 (Apr. 30, 2024)...................................................15

*Curtis v. Loether*,
    415 U.S. 189 (1974).......................................................................18

*Dimick v. Schiedt*,
293 U.S. 474 (1935)......................................................................6

*Dist. Hosp. Partners, L.P.*,
373 NLRB No. 55 (May 8, 2024)................................................15

*Drs. Mesh, P.C.*,
372 NLRB No. 106 (July 25, 2023) ............................................16

*East Freight Logistics, LLC*,
373 NLRB No. 7 (Dec. 22, 2023)...............................................15

*Erlinger v. United States*,
144 S. Ct. 1840 (2024)..............................................................3, 7

*Feltner v. Columbia Pictures Television, Inc.*,
523 U.S. 340 (1998).............................................................12, 17

*Flatline Constr., LLC*,
373 NLRB No. 35 (Mar. 13, 2024) ......................................15, 16

*Granfinanciera, S.A. v. Nordberg*,
492 U.S. 33 (1989).........................................................10, 11, 21

*Home Depot USA, Inc.*,
373 NLRB No. 25 (Feb. 21, 2024) .............................................15

*Hood River Distillers, Inc.*,
372 NLRB No. 126 (Aug. 24, 2023) ...........................................16

*HSA Cleaning Inc.*,
373 NLRB No. 46 (Apr. 19, 2024) ..............................................15

*Instituto de Educacion Popular del Sur de Cal.*,
372 NLRB No. 146 (Sept. 28, 2023) ...........................................16

*Int'l Longshoremen's Ass'n, Local 1294 (Fed. Marine Terminals,
Inc.)*, 372 NLRB No. 132 (Aug. 24, 2023).................................16

*Int'l Longshoremen's Ass'n, Local 1294 (Fed. Marine Terminals,
Inc.)*, 372 NLRB No. 160 (Dec. 6, 2023) ...................................15

iv

*Int'l Longshoremen's Ass'n, Local 1526*
  *(Fla. Int'l Terminal, LLC)*, 373 NLRB No. 22 (Feb. 14, 2024) ........................15

*Int'l Union, United Auto., Aircraft & Agric. Implement Workers of*
  *Am. (UAW-CIO) v. Russell*,
  356 U.S. 634 (1958).............................................................................24

*Integrity Def. Servs., Inc.*,
  372 NLRB No. 151 (Sept. 30, 2023) ...................................................16

*Intertape Polymer Corp.*,
  373 NLRB No. 68 (June 17, 2024)........................................................15

*Jarkesy v. SEC*,
  34 F.4th 446 (5th Cir. 2022) ...................................................9, 10, 14

*In re Jensen*,
  946 F.2d 369 (5th Cir. 1991) ...............................................................20

*Lebow v. Am. Trans Air, Inc.*,
  86 F.3d 661 (7th Cir. 1996) .........................................................19, 20

*Lion Elastomers, L.L.C. v. NLRB*,
  ___ F.4th ___, 2024 WL 3342430 (5th Cir. 2024).............................24

*Lion Elastomers LLC*,
  372 NLRB No. 83 (May 1, 2023)........................................................24

*Lord Townshend v. Hughes*,
  2 Mod. 150, 86 Eng. Rep. 994 (C. P. 1677) ......................................17

*Los Robles Regional Med. Ctr.*,
  372 NLRB No. 120 (Aug. 10, 2023) ...................................................16

*Maverick Fulfillment, LLC*,
  373 NLRB No. 57 (June 20, 2024).................................................15, 16

*Maywood SNF Operations LLC*,
  372 NLRB No. 152 (Oct. 13, 2023) ....................................................16

*McLaren Macomb*,
  372 NLRB No. 58 (Feb. 21, 2023) ......................................................23

*Mertens v. Hewitt Assocs.*,
508 U.S. 248 (1993) ...........................................................................4, 11, 12, 13

*Metrohealth, Inc.*,
372 NLRB No. 149 (Sept. 30, 2023) .................................................................16

*Miller Plastic Prods., Inc.*,
372 NLRB No. 134 (Aug. 25, 2023) .................................................................16

*MPStar Pros., LLC*,
373 NLRB No. 42 (Apr. 2, 2024) .....................................................................15

*Murray's Lessee v. Hoboken Land & Improvement Co.*,
59 U.S. (18 How.) 272 (1855) ......................................................................5, 22

*NLRB v. Jones & Laughlin Steel Corp.*,
301 U.S. 1 (1937) ......................................................................................22, 23

*North Mtn. Foothills Apts., LLC*,
373 NLRB No. 26 (Feb. 21, 2024) ...................................................................15

*NP Red Rock LLC*,
373 NLRB No. 67 (June 17, 2024) ..............................................................15, 16

*Parsons v. Bedford*,
28 U.S. (3 Pet.) 433 (1830) ........................................................................4, 9, 10

*Phillips 66 Co.*,
373 NLRB No. 1 (Dec. 6, 2023) .......................................................................15

*Quickway Transp., Inc.*,
372 NLRB No. 127 (Aug. 25, 2023) .................................................................16

*Radnet Mgmt. Inc.*,
373 NLRB No. 58 (May 10, 2024) ....................................................................15

*Regional Ready Mix, LLC*,
373 NLRB No. 56 (May 14, 2024) ....................................................................15

*RFO808, LLC*,
373 NLRB No. 60 (May 16, 2024) ....................................................................15

*Ross v. Bernhard*,
  396 U.S. 531 (1970)......................................................................13

*SEC v. Jarkesy*,
  144 S. Ct. 2117 (2024)..........................................................*passim*

*Serta Simmons Bedding, LLC*,
  372 NLRB No. 115 (Aug. 4, 2023) .................................................16

*Solution One Indus., Inc.*,
  372 NLRB No. 141 (Sept. 22, 2023) ..............................................16

*Spike Enter., Inc.*,
  373 NLRB No. 41 (Apr. 10, 2024) ...........................................15, 16

*Starbucks Corp.*,
  372 NLRB No. 122 (Aug. 9, 2023) .................................................16

*Stericycle, Inc.*,
  372 NLRB No. 113 (Aug. 2, 2023) .................................................23

*Stericycle, Inc.*,
  372 NLRB No. 131 (Aug. 25, 2023) ...............................................16

*Success Village Apts, Inc.*,
  372 NLRB No. 140 (Sept. 19, 2023) ..............................................16

*Tackl-It, LLC*,
  372 NLRB No. 118 (Aug. 1, 2023) .................................................16

*Tecnocap LLC*,
  372 NLRB No. 136 (Aug. 26, 2023) ...............................................16

*Thryv, Inc.*,
  372 NLRB No. 22 (Dec. 13, 2022)..........................................*passim*

*Thryv, Inc. v. NLRB*,
  102 F.4th 727 (5th Cir. 2024) .......................................................12

*Trader Joe's*,
  373 NLRB No. 73 (July 9, 2024) .............................................15, 16

*Tull v. United States*,
481 U.S. 412 (1987).............................................................10, 11, 17

*Twinbrook OpCo, LLC*,
373 NLRB No. 6 (Dec. 28, 2023).......................................................15

*U.S. Postal Serv.*,
372 NLRB No. 119 (Aug. 15, 2023) ...................................................16

*United Parcel Serv., Inc.*,
372 NLRB No. 158 (Nov. 21, 2023) ...................................................15

*United States v. ERR, LLC*,
35 F.4th 405 (5th Cir. 2022) ......................................................14, 19

*Vesta VFO, LLC*,
373 NLRB No. 10 (Jan. 10, 2024).....................................................15

*Waldrop v. S. Co. Servs., Inc.*,
24 F.3d 152 (11th Cir. 1994) .............................................................20

*Wendt Corp.*,
372 NLRB No. 135 (Aug. 26, 2023) .................................................16

**Constitutional Provisions**

U.S. Const. amend. VII ...........................................................................4, 9

U.S. Const. art. III, § 2, cl. 3 .....................................................................7

**Statutes**

29 U.S.C. § 157 .......................................................................................18

29 U.S.C. § 158(a)(1)...............................................................................18

29 U.S.C. § 160(c) ...................................................................................18

33 U.S.C. § 2702(a) .................................................................................19

## Other Authorities

3 William Blackstone, *Commentaries on the Laws of England* (1768) ..........3, 6, 10

*Cincinnatus II: To James Wilson, Esquire* (Nov. 8, 1787),
    bit.ly/3Glv74b ...................................................................................8

*The Declaration of Independence* (U.S. 1776) ........................................7

*A Democratic Federalist*, Pennsylvania Herald, Oct. 17, 1787,
    bit.ly/46idnBc....................................................................................8

*Essays by a Farmer, No. 4* (Mar. 21, 1788), reprinted in 5 *The
    Complete Anti-Federalist* (Herbert J. Storing ed., 1981) ...................8

The Federalist No. 83 (Alexander Hamilton) (Clinton Rossiter ed.,
    1961) ....................................................................................................8

Philip Hamburger, *Is Administrative Law Unlawful?* (2014)...............6, 22

11 William Holdsworth, *A History of English Law* (1938) ......................7

1 *Journals of the Continental Congress 1774–1789* .................................7

2 *Journals of the Continental Congress 1774–1789* .................................7

*Letter from John Adams to Ebenezer Thayer* (Sept. 24, 1765),
    bit.ly/3zl0Ezn ....................................................................................7

*Letter from the Federal Farmer, No. 4* (Oct. 12, 1787), bit.ly/40rtjP0 ....................8

Luther Martin, *Genuine Information* (1787), reprinted in 3 *The
    Records of the Federal Convention of 1787* (Max Farrand ed.,
    1911) ....................................................................................................8

Memorandum GC 24-04 from Jennifer A. Abruzzo to All Regional
    Directors, Officers-in-Charge, and Resident Officers (Apr. 8,
    2024), bit.ly/4680ESS..................................................................13, 17

James Oldham, *Trial by Jury: The Seventh Amendment and Anglo-
    American Special Juries* (2006)...........................................................6

Press Release, NLRB Office of Public Affairs, Board Rules Remedies Must Compensate Employees for All Direct or Foreseeable Financial Harms (Dec. 13, 2022), bit.ly/3WmDVPF .........................................15

1 John Phillip Reid, *Constitutional History of the American Revolution: The Authority of Rights* (1986) .........................................................7

*Resolutions of the Stamp Act Congress* (Oct. 19, 1765), bit.ly/3YdhAFo .................................................................................7

U.S. Chamber of Commerce, *The Biden Administration's "Whole of Government" Approach to Promoting Labor Unions* (2023), bit.ly/4d3RuZK ..............................................................................23

Carl Ubbelohde, *The Vice-Admiralty Courts and the American Revolution* (1960) ...............................................................................6

# INTEREST OF *AMICUS CURIAE*[1]

The Chamber of Commerce of the United States of America ("Chamber") is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than 3 million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the nation's business community.

The Chamber's members are frequent respondents in administrative enforcement actions brought by the National Labor Relations Board ("NLRB" or "Board") and by other federal agencies who regulate their day-to-day activities nationwide. The Chamber has a significant interest in ensuring that those proceedings respect the Constitution's structural limitations and therefore submits this brief to explain why compelled adjudication in the NLRB's juryless tribunals violates the Seventh Amendment. The Chamber also possesses extensive expertise on this matter. It submitted a brief explaining the original understanding of the

---

[1] No counsel for any party authored this brief in whole or in part, and no entity or person, aside from *amicus curiae*, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief. Counsel for all parties have consented to the filing of this brief.

Seventh Amendment and its application to administrative proceedings in *Jarkesy v. SEC*.  *See Amici Curiae* Br. of Chamber of Com. of U.S. et al., No. 22-859 (U.S. Oct. 18, 2023), bit.ly/4d02CXE.  And it has submitted multiple briefs challenging the NLRB's overreach in making compensatory damages a standard remedy in unfair-labor-practice proceedings.  *See Amici Curiae* Br. of Chamber of Com. of U.S. et al., *NLRB v. Starbucks Corp.*, Nos. 23-1953, 23-2241 (3d Cir. Dec. 8, 2023), bit.ly/4daEOQM ("Chamber *Starbucks* Br."); *Amicus Curiae* Br. of Chamber of Com. of U.S., *Thryv, Inc.*, Nos. 20-CA-250250, 20-CA-251105 (NLRB Jan. 10, 2022), bit.ly/3YcJeT4.

## INTRODUCTION AND SUMMARY OF ARGUMENT

This appeal presents yet another case of an administrative agency exceeding constitutional limits. The Framers recognized that "structural protections against abuse of power [are] critical to preserving liberty." *Bowsher v. Synar*, 478 U.S. 714, 730 (1986). And key among those structural protections was the right to trial by jury. That "most excellent method of decision" had long been hailed as "the glory of the English law." 3 William Blackstone, *Commentaries on the Laws of England* *391 (1768). And, as the Supreme Court recognized just last month, the jury trial right "was prized by the American colonists" in both criminal and civil cases alike. *SEC v. Jarkesy*, 144 S. Ct. 2117, 2128 (2024).

The Seventh Amendment arose out of the English effort to "siphon[]" civil cases that had traditionally been tried before juries to "juryless admiralty" tribunals. *Id.* "[A]s tensions grew between the British Empire and its American Colonies, imperial authorities responded by stripping away that ancient right" on this side of the Atlantic. *Erlinger v. United States*, 144 S. Ct. 1840, 1848 (2024). In the 1760s, the Crown expanded admiralty jurisdiction to enforce unpopular Acts of Parliament without the involvement of juries. And those juryless tribunals fueled the fires of revolution. The Declaration of Independence identified the deprivation of the jury right among its grievances against the Crown, and the Constitution secured that right in criminal cases. But the American people demanded more. They were well-aware

of British abuses of the common law right and so refused to tolerate the risk that the new federal government might similarly enforce its laws before juryless tribunals.

The founding generation thus quickly adopted the Seventh Amendment to "preserve[]" the civil jury trial right in "Suits at common law." U.S. Const. amend. VII. The people understood this language to "embrace[] all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume." *Jarkesy*, 144 S. Ct. at 2128 (quoting *Parsons v. Bedford*, 28 U.S. (3 Pet.) 433, 447 (1830)). For centuries, the Seventh Amendment was lauded as a crucial bulwark against governmental abuses of power.

The growth of the administrative state has eroded that fundamental safeguard. And the recent practice of the NLRB provides a particularly egregious case in point. Without congressional authorization, and without juries to check its overreach, the NLRB has seized for itself the authority to issue "[m]ake-whole relief" that "compensates affected employees for all direct or foreseeable pecuniary harms that result" from allegedly unfair labor practices. *Thryv, Inc.*, 372 NLRB No. 22, 2022 WL 17974951, at *14 (Dec. 13, 2022).

That contortion of the National Labor Relations Act ("NLRA") has constitutional consequences. The "compensatory damages" the NLRB seeks through in-house adjudication are "the classic form of *legal* relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (some emphasis omitted); *see Jarkesy*, 144

S. Ct. at 2129. And its pursuit of such legal relief against SpaceX is "all but dispositive" in finding a violation of the company's Seventh Amendment right. *Jarkesy*, 144 S. Ct. at 2129. The "close relationship" between the claim in this case and several traditional common law causes of action "confirms that conclusion." *Id.* at 2130.

At the same time, the Board cannot justify its constitutional deprivation by proclaiming that it is vindicating "public rights." As *Jarkesy* made clear, the "public rights" exception to the Seventh Amendment is narrow and inapplicable absent a specific showing that "'withdraw[al] from judicial cognizance'" has firm roots in "background legal principles." *Id.* at 2134 (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 284 (1855)). The Board cannot point to any historical understanding that would support removing this garden-variety legal claim from the Article III courts—and the jury review that the Constitution requires.

This Court should therefore enjoin the NLRB's administrative proceeding against SpaceX.

## ARGUMENT

### I.  Compelled Adjudication in the NLRB's Juryless Administrative Tribunals Violates the Seventh Amendment.

"The right to trial by jury is 'of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right' has always

been and 'should be scrutinized with the utmost care.'" *Jarkesy*, 144 S. Ct. at 2128 (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)). The NLRB's attempt to subject SpaceX to a juryless, in-house adjudication is foreclosed by that history and precedent, and this Court should reject it.

A. **The Right to a Civil Jury at Common Law has Long Served as an Essential Check on Government Overreach.**

The "modern model of trial by jury" developed in the English common law courts by the sixteenth century, where it was widely recognized as a crucial check against government abuses. James Oldham, *Trial by Jury: The Seventh Amendment and Anglo-American Special Juries* 3 (2006). As William Blackstone explained, the right to a jury trial ranked sacrosanct because a person's rights and property hinged on "the unanimous consent of twelve of his neighbours and equals," not just the will of bureaucratic functionaries. 3 Blackstone, *Commentaries* at *379.

Like their British brethren, the American colonists viewed civil juries as essential to safeguard their fundamental rights. *See Jarkesy*, 144 S. at 2128. But as the Thirteen Colonies approached independence, Parliament responded to adverse verdicts by expanding the jurisdiction of the juryless admiralty courts to a range of cases traditionally tried in common law courts. *See* Carl Ubbelohde, *The Vice-Admiralty Courts and the American Revolution* 12–13, 63, 145–46, 206–08 (1960). Most notably, the Stamp Act of 1765 authorized the Crown to prosecute violations in the juryless admiralty courts. *See* Philip Hamburger, *Is Administrative Law*

*Unlawful?* 150 (2014). And, "[j]ust as authorities hoped, the tactic proved 'most effective' at securing the verdicts they wished." *Erlinger*, 144 S. Ct. at 1848 (citation omitted); *see* 11 William Holdsworth, *A History of English Law* 110 (1938).

In response, the voters of Boston ranked "the Jurisdiction of the Admiralty"— along with taxation without representation—as their "greatest Grievance." 1 John Phillip Reid, *Constitutional History of the American Revolution: The Authority of Rights* 177 (1986) (citation omitted); *see also Letter from John Adams to Ebenezer Thayer* (Sept. 24, 1765), bit.ly/3zl0Ezn. The Stamp Act Congress of 1765 similarly protested that, "by extending the jurisdiction of the courts of Admiralty beyond its ancient limits," the Stamp Act and similar acts "ha[d] a manifest tendency to subvert the rights and liberties of the colonists." *Resolutions of the Stamp Act Congress* (Oct. 19, 1765), bit.ly/3YdhAFo. Both the First and Second Continental Congresses continued those protests, most famously in the Declaration of Independence, which identified "depriving [the colonists] in many cases, of the benefits of Trial by Jury," among its list of grievances against the King. *The Declaration of Independence* para. 20 (U.S. 1776); *see* 1 *Journals of the Continental Congress 1774–1789*, at 69 (Oct. 14, 1774); 2 *Journals of the Continental Congress 1774–1789*, at 145 (July 6, 1775).

"After securing their independence, the founding generation sought to ensure what happened before would not happen again." *Erlinger*, 144 S. Ct. at 1848. They quickly enshrined the jury trial right in criminal cases. *See* U.S. Const. art. III, § 2,

cl. 3.  But the Constitution's omission of the civil jury right proved a stumbling block for ratification.  As Alexander Hamilton admitted, "[t]he objection to the plan of the convention" that was "met with [the] most success" was "that relative to the want of a constitutional provision for the trial by jury in civil cases."  The Federalist No. 83, at 494 (Alexander Hamilton) (Clinton Rossiter ed., 1961) (emphasis omitted).[2]

To quell those concerns, the Framers "promptly adopted the Seventh Amendment" to secure the civil jury right for future generations "against the passing demands of expediency or convenience."  *Jarkesy*, 144 S. Ct. at 2128 (quotation marks omitted).  The Amendment prescribes that, "[i]n Suits at common law, where

---

[2]  Concern over the lack of civil jury protections rang loud in the Anti-Federalist charge.  For instance, Luther Martin explained that jury trials had "long been considered the surest barrier against arbitrary power, and the palladium of liberty." Luther Martin, *Genuine Information* (1787), reprinted in 3 *The Records of the Federal Convention of 1787*, at 172, 221 (Max Farrand ed., 1911) (italics omitted). He thus faulted the proposed Constitution for stripping the citizenry of that right in cases "arising under the laws of the United States, or the execution of those laws," which were the "very cases, where, of all others, [the jury trial] is most essential for [the people's] liberty."  *Id.* at 222 (italics omitted); *see also Cincinnatus II: To James Wilson, Esquire* (Nov. 8, 1787), bit.ly/3Glv74b (lamenting that "the trial by jury" had ostensibly been "taken away in civil cases"); *Essays by a Farmer, No. 4* (Mar. 21, 1788), reprinted in 5 *The Complete Anti-Federalist* 36, 38 (Herbert J. Storing ed., 1981) (describing "trial by jury" as "the democratic branch of the judiciary power—more necessary than representatives in the legislature" (emphasis omitted)); *A Democratic Federalist*, Pennsylvania Herald, Oct. 17, 1787, bit.ly/46idnBc (recognizing that the jury trial helped "shelter [the people] from the iron hand of arbitrary power"); *Letter from the Federal Farmer, No. 4* (Oct. 12, 1787), bit.ly/40rtjP0 (explaining that trial by jury helped ensure "that common people should have a part and share of influence, in the judicial as well as in the legislative department").

the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. And since its ratification, "every encroachment upon [the civil jury right] has been watched with great jealousy." *Jarkesy*, 144 S. Ct. at 2128 (quoting *Parsons*, 28 U.S. (3 Pet.) at 446).

## B. *Jarkesy* Confirmed the Seventh Amendment's Reach.

Consistent with the Constitution's text and longstanding history, the Supreme Court and this Court recently reaffirmed the limits that the Seventh Amendment places on juryless administrative tribunals. In *Jarkesy v. SEC*, "[t]he SEC brought an enforcement action within the agency against [Jarkesy and his firm] for securities fraud" and ordered them to "pay a civil penalty of $300,000." 34 F.4th 446, 449–50 (5th Cir. 2022). The petitioners argued that this in-house proceeding deprived them of their civil jury rights, and this Court agreed. *See id.* at 449.

After recounting the history that led to the Seventh Amendment's ratification, this Court emphasized that the phrase "Suits at common law" "include[s] all actions akin to those brought at common law," as those actions were understood at the time of the Founding. *Id.* at 452. That is, the civil jury right extends to "suits brought under a statute as long as the suit seeks common-law-like legal remedies." *Id.*

This Court thus held that "[t]he Seventh Amendment guarantee[d] Petitioners a jury trial because the SEC's enforcement action [was] akin to traditional actions at law to which the jury-trial right attaches." *Id.* at 451. After all, "[f]raud prosecutions

were regularly brought in English courts at common law." *Id.* at 453 (citing 3 Blackstone, *Commentaries* at *42). And, even more importantly, "actions seeking civil penalties are akin to special types of actions in debt from early in our nation's history which were distinctly legal claims." *Id.* at 454 (citing *Tull v. United States*, 481 U.S. 412, 418–19 (1987)). Together, these historical considerations demonstrated that the petitioners "had the right for a jury to adjudicate the facts underlying any potential fraud liability that justifies penalties." *Id.* at 457.

The Supreme Court affirmed, holding that the Seventh Amendment "embrace[s] all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume." *Jarkesy*, 144 S. Ct. at 2128 (alteration in original) (quoting *Parsons*, 28 U.S. (3 Pet.) at 447). The Court stressed that "whether [a] claim is statutory is immaterial" to the Seventh Amendment analysis. *Id.* Rather, "[t]he Seventh Amendment extends to a particular statutory claim if the claim is 'legal in nature.'" *Id.* (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989)). That squarely encompassed the SEC's securities fraud claim for civil penalties, and so the petitioners' Seventh Amendment rights barred the SEC's in-house adjudication. *See id.* at 2129–31.

### C. The Seventh Amendment Prohibits the NLRB from Conducting this Proceeding in a Juryless Administrative Tribunal.

Just as the Seventh Amendment prohibited the SEC from imposing civil penalties on George Jarkesy and his firm in a juryless administrative tribunal, it

prohibits the NLRB from ordering SpaceX to pay compensatory damages in its in-house proceeding.  That claim, too, is distinctly "legal in nature." *Jarkesy*, 144 S. Ct. at 2131 (citation omitted).

In determining whether a claim is legal in nature, courts must consider (1) the nature of the cause of action and (2) the nature of the remedy.  *See id.* at 2129; *Granfinanciera*, 492 U.S. at 42; *Tull*, 481 U.S. at 417–418.  Of these two, "the remedy [is] the 'more important' consideration."  *Jarkesy*, 144 S. Ct. at 2129 (citation omitted).  And, in this case, both factors point decidedly in favor of a jury trial right.

## 1. The Remedy Sought by the NLRB Is "All But Dispositive" of SpaceX's Right to a Jury Trial.

As in *Jarkesy*, "the remedy is all but dispositive" of the Seventh Amendment inquiry here.  144 S. Ct. at 2129.  SpaceX correctly observes that "[t]oday's Board claims authority to award extensive compensatory damages for alleged violations of employees' legal rights."  Opening Br. at 24.  Such damages constitute the most "classic form of *legal* relief."  *Mertens*, 508 U.S. at 255.

Indeed, the Board announced in *Thryv* that it will seek full compensatory damages "in all cases in which [its] standard remedy would include an order for make-whole relief."  2022 WL 17974951, at * 9.  That is, the Board "shall expressly order that the respondent *compensate* affected employees for *all direct or foreseeable pecuniary harms* suffered as a result of the respondent's unfair labor

practice." *Id.* at *21 (emphasis added). The Board further specified that it was "standardizing this remedy in *all* cases . . . to provide meaningful, make-whole relief for losses incurred" from an employer's unlawful conduct and "to more fully effectuate the make-whole purposes of the [NLRA]." *Id.* at *10 (emphasis added; quotation marks omitted).[3]

As the Court recognized in *Jarkesy*, however, such "money damages are the prototypical common law remedy." 144 S. Ct. at 2129. The Supreme Court has long "recognized the general rule that monetary relief is legal, and an award of statutory damages may serve purposes traditionally associated with legal relief, such as compensation." *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998) (internal citation and quotation marks omitted). For instance, in *Mertens*, a group of retirees sought lost pension benefits because the retirement plan's actuary had botched the calculations necessary for the plan's maintenance. *See* 508 U.S. at 250. The Court rejected the group's claim that the recovery of lost pension benefits was an equitable remedy, because "what petitioners in fact [sought was] nothing other than compensatory damages—monetary relief for all losses their plan

---

[3] The Board disclaims any "policy or practice of awarding consequential damages," *Thryv*, 2022 WL 17974951, at *14, but the compensatory damages it has made part of its standard remedy are indistinguishable in substance from consequential damages. *See Thryv, Inc. v. NLRB*, 102 F.4th 727, 737 (5th Cir. 2024) (noting that the Board ordered "a novel, consequential-damages-like labor law remedy"); *see also* Chamber *Starbucks* Br., *supra*, at 23–30.

sustained as a result of [an] alleged breach." *Id.* at 255 (emphasis omitted). Those damages arose because "the plan's assets became insufficient to satisfy the benefit obligations," leaving a gap in anticipated income that led to the plan's termination. *Id.* at 250.

Just as in *Mertens*, the NLRB here claims the power to award damages that include "loss of contributions already made to a retirement fund due to failure to complete a vesting period" and "anticipated earnings from . . . fund accounts" that did not materialize due to an early termination—among many other purported losses. Memorandum GC 24-04 from Jennifer A. Abruzzo to All Regional Directors, Officers-in-Charge, and Resident Officers (Apr. 8, 2024), bit.ly/4680ESS. The NLRB's effort to require compensation for losses incurred thus goes well beyond requiring "a defendant to return unjustly obtained funds," as might be available in equity. *Jarkesy*, 144 S. Ct. at 2129. It amounts to "[m]oney damages," which "are, of course, the classic form of *legal* relief." *Mertens*, 508 U.S. at 250.[4]

---

[4] For this reason, the NLRB would be quite mistaken to suggest that it seeks to impose damages only that "restore the status quo." *Cf.* Supp. Letter Br. of NLRB at 1, *Space Expl. Techs. Corp. v. NLRB*, No. 6:24-cv-00203-ADA (W.D. Tex. July 9, 2024) (quoting *Jarkesy*, 144 S. Ct. at 2129). The NLRB seeks here an order that goes well beyond the return of property wrongfully withheld, and instead seeks to make employees whole for any and all losses, *i.e.*, compensatory damages. Moreover, to the extent the NLRB seeks additional, equitable remedies beyond compensatory damages, that does not deprive SpaceX of its right to a jury trial with respect to facts relevant to the claims against it for legal relief. *See Ross v. Bernhard*, 396 U.S. 531, 537–38 (1970). "[A] jury trial is required on the overlapping issues

Similarly, in *City of Monterey v. Del Monte Dunes at Monterey, Ltd*., the Court explained that "[j]ust compensation . . . differs from equitable restitution and other monetary remedies available in equity, for in determining just compensation, 'the question is what has the *owner lost*, not what has the taker gained.'" 526 U.S. 687, 710 (1999) (emphasis added) (quoting *Bos. Chamber of Com. v. City of Bos.*, 217 U.S. 189, 195 (1910)). Thus, when a developer sought compensation for a regulatory taking, the Court reasoned that "just compensation is, like ordinary money damages, a compensatory remedy." *Id.* "The Court has recognized that compensation is a purpose traditionally associated with legal relief," which made clear that the suit "was an action at law" that required a jury. *Id.* at 710–11 (quotation marks omitted).

The Board's effort to award compensation for "losses," which were a "consequence of a respondent's unfair labor practice," thus clearly sounds in the common law. *Thryv*, 2022 WL 17974951, at *11. By the Board's own description, this includes compensation for "interest and late fees on credit cards," "penalties if [an employee] must make early withdrawals from her retirement account in order to cover her living expenses," compensation for loss of a "car" or "home, if she is unable to make loan or mortgage payments," new or increased "transportation or

to preserve the Seventh Amendment right." *United States v. ERR, LLC*, 35 F.4th 405, 414 (5th Cir. 2022); *see Jarkesy*, 34 F.4th at 454–55.

childcare costs," as well as increases in healthcare premiums, copays, out-of-pocket expenses, or outstanding medical bills. *Id.* at *13, 15. Indeed, in the press release that accompanied the *Thryv* decision, the Board's Chairman described this course of action as a tact to "comprehensively address the effects of unfair labor practices." Press Release, NLRB Office of Public Affairs, Board Rules Remedies Must Compensate Employees for All Direct or Foreseeable Financial Harms (Dec. 13, 2022), bit.ly/3WmDVPF.

And the Board consistently imposes and applies such relief in its pending cases.[5] In several recent cases the Board ordered, "in accordance with [its] decision

---

[5] In just the past year, the Board has imposed such compensatory damages in nearly four dozen cases. *See, e.g.*, *Trader Joe's*, 373 NLRB No. 73 (July 9, 2024); *Maverick Fulfillment, LLC*, 373 NLRB No. 57 (June 20, 2024); *Intertape Polymer Corp.*, 373 NLRB No. 68 (June 17, 2024); *NP Red Rock LLC*, 373 NLRB No. 67 (June 17, 2024); *RFO808, LLC*, 373 NLRB No. 60 (May 16, 2024); *Regional Ready Mix, LLC*, 373 NLRB No. 56 (May 14, 2024); *Radnet Mgmt. Inc.*, 373 NLRB No. 58 (May 10, 2024); *Dist. Hosp. Partners, L.P.*, 373 NLRB No. 55 (May 8, 2024); *Compañia Cervecera de P.R., Inc.*, 373 NLRB No. 47 (Apr. 30, 2024); *HSA Cleaning Inc.*, 373 NLRB No. 46 (Apr. 19, 2024); *Spike Enter., Inc.*, 373 NLRB No. 41 (Apr. 10, 2024); *MPStar Pros., LLC*, 373 NLRB No. 42 (Apr. 2, 2024); *Flatline Constr., LLC*, 373 NLRB No. 35 (Mar. 13, 2024); *3484, Inc.*, 373 NLRB No. 28 (Mar. 7, 2024); *Atl. Veal & Lamb, LLC*, 373 NLRB No. 19 (Feb. 22, 2024); *North Mtn. Foothills Apts., LLC*, 373 NLRB No. 26 (Feb. 21, 2024); *Home Depot USA, Inc.*, 373 NLRB No. 25 (Feb. 21, 2024); *Int'l Longshoremen's Ass'n, Local 1526 (Fla. Int'l Terminal, LLC)*, 373 NLRB No. 22 (Feb. 14, 2024); *Vesta VFO, LLC*, 373 NLRB No. 10 (Jan. 10, 2024); *Twinbrook OpCo, LLC*, 373 NLRB No. 6 (Dec. 28, 2023); *East Freight Logistics, LLC*, 373 NLRB No. 7 (Dec. 22, 2023); *Phillips 66 Co.*, 373 NLRB No. 1 (Dec. 6, 2023); *Int'l Longshoremen's Ass'n, Local 1294 (Fed. Marine Terminals, Inc.)*, 372 NLRB No. 160 (Dec. 6, 2023); *United Parcel Serv., Inc.*, 372 NLRB No. 158 (Nov. 21, 2023); *Cemex Constr. Materials Pac., LLC*, 372

in *Thryv*," compensation to the employee for "direct or foreseeable pecuniary harms suffered as a result of the" unfair labor practice, including "search-for-work and interim employment expenses, if any, regardless of whether these expenses exceed[ed] interim earnings." *E.g.*, *Maverick Fulfillment, LLC*, 373 NLRB No. 57, 2024 WL 3088169, at *2 (June 20, 2024); *Spike Enter., Inc.*, 373 NLRB No. 41, 2024 WL 1602974, at *14 (Apr. 10, 2024); *Flatline Constr., LLC*, 373 NLRB No. 35, 2024 WL 1112176, at *2 (Mar. 13, 2024). The Board has also repeatedly overruled ALJ decisions to the extent that they failed to impose compensatory damages. *See, e.g.*, *Trader Joe's*, 373 NLRB No. 73, 2024 WL 3358073, at *1 n.2 (July 9, 2024); *NP Red Rock LLC*, 373 NLRB No. 67, 2024 WL 3063775, at *11

---

NLRB No. 157 (Nov. 13, 2023); *Maywood SNF Operations LLC*, 372 NLRB No. 152 (Oct. 13, 2023); *Integrity Def. Servs., Inc.*, 372 NLRB No. 151 (Sept. 30, 2023); *Metrohealth, Inc.*, 372 NLRB No. 149 (Sept. 30, 2023); *Instituto de Educacion Popular del Sur de Cal.*, 372 NLRB No. 146 (Sept. 28, 2023); *Solution One Indus., Inc.*, 372 NLRB No. 141 (Sept. 22, 2023); *Success Village Apts, Inc.*, 372 NLRB No. 140 (Sept. 19, 2023); *Wendt Corp.*, 372 NLRB No. 135 (Aug. 26, 2023); *Tecnocap LLC*, 372 NLRB No. 136 (Aug. 26, 2023); *Quickway Transp., Inc.*, 372 NLRB No. 127 (Aug. 25, 2023); *Miller Plastic Prods., Inc.*, 372 NLRB No. 134 (Aug. 25, 2023); *Stericycle, Inc.*, 372 NLRB No. 131 (Aug. 25, 2023); *Cemex Constr. Materials Pac., LLC*, 372 NLRB No. 130 (Aug. 25, 2023); *Int'l Longshoremen's Ass'n, Local 1294 (Fed. Marine Terminals, Inc.)*, 372 NLRB No. 132 (Aug. 24, 2023); *Hood River Distillers, Inc.*, 372 NLRB No. 126 (Aug. 24, 2023); *Acumen Cap. Partners, LLC*, 372 NLRB No. 129 (Aug. 24, 2023); *Capstone Logistics LLC*, 372 NLRB No. 124 (Aug. 22, 2023); *U.S. Postal Serv.*, 372 NLRB No. 119 (Aug. 15, 2023); *Los Robles Regional Med. Ctr.*, 372 NLRB No. 120 (Aug. 10, 2023); *Starbucks Corp.*, 372 NLRB No. 122 (Aug. 9, 2023); *Serta Simmons Bedding, LLC*, 372 NLRB No. 115 (Aug. 4, 2023); *Tackl-It, LLC*, 372 NLRB No. 118 (Aug. 1, 2023); *Drs. Mesh, P.C.*, 372 NLRB No. 106 (July 25, 2023).

(June 17, 2024).  And a recent memorandum from the Board's General Counsel trumpeted the "excellent job" the Board has done lately to secure compensatory relief that includes health insurance premiums, co-pays, retirement fund contributions, anticipated earnings from fund accounts, unreimbursed tuition payments, late fees, and job cost searches, among other things.  *See* Memorandum GC 24-04, *supra*, at 1–2.  The Board's consistent pursuit of such remedies entitles SpaceX to a jury trial.[6]

### 2. The Nature of the Cause of Action Only Confirms that the Seventh Amendment Applies.

Although in this case, like *Jarkesy*, the Board's pursuit of a common law remedy is "all but dispositive," the "relationship between the causes of action in this case and common law [actions]" further supports the applicability of the Seventh Amendment, as "[b]oth target the same basic conduct."  144 S. Ct. at 2129–30.  The Seventh Amendment "applies not only to common-law causes of action but also to statutory causes of action '*analogous* to common-law causes of action.'"  *City of Monterey*, 526 U.S. at 708–09 (emphasis added) (quoting *Feltner*, 523 U.S. at 348); *see also Tull*, 481 U.S. at 421.

---

[6]  Indeed, the Framers recognized that a jury trial is critical in order to determine the appropriate *amount* of damages that resulted from any defendant's unlawful activity.  *See Feltner*, 523 U.S. at 353 ("It has long been recognized that 'by the law the jury are judges of the damages.' . . . And there is overwhelming evidence that the consistent practice at common law was for juries to award damages." (quoting *Lord Townshend v. Hughes*, 2 Mod. 150, 151, 86 Eng. Rep. 994, 994–95 (C. P. 1677))).

Here, the NLRB's unfair labor practice claim is akin to a traditional tort cause of action. In *Monterey*, the claim at issue was a § 1983 action for just compensation following a regulatory taking. *See* 526 U.S. at 709–10. The Court explained that, "[j]ust as common-law tort actions provide redress for interference with protected personal or property interests, § 1983 provides relief for invasions of rights protected under federal law." *Id.* at 710; *see also id.* at 727 (Scalia, J., concurring in part) ("Like other tort causes of action, [§ 1983] is designed to provide compensation for injuries arising from the violation of legal duties, and thereby, of course, to deter future violations." (internal citation omitted)). That "compel[led] the conclusion that a suit for legal relief brought under the statute [was] an action at law." *Id.* at 710 (majority op.).

So too here. The NLRA creates an analogous scheme: "the statute merely defines a new legal duty, and," in the Board's view, authorizes the adjudicator "to compensate a plaintiff for the injury caused by the defendant's wrongful breach." *Curtis v. Loether*, 415 U.S. 189, 195 (1974). Specifically, the NLRA creates a duty for employers to refrain from interfering with or coercing employees exercising rights related to self-organizing, collective bargaining, or other concerted activities for mutual aid or protection. *See* 29 U.S.C. §§ 157, 158(a)(1). The Board may then order relief when the employer breaches that duty. *See id.* § 160(c). As such, "[a] damages action under the statute sounds basically in tort." *Curtis*, 415 U.S. at 195.

Applying this analysis, this Court recently held that the jury trial right attached to a statutory framework which provided a cause of action to recoup costs for pollution cleanup from the entity causing the pollution. *See* 33 U.S.C. § 2702(a). The court determined that the government's action for recoupment was, "at its foundation, one for tort," because "[t]he statute first creates a legal duty and then provides a right of action to compensate the injured party for a breach of that duty." *United States v. ERR, LLC*, 35 F.4th 405, 411–12 (5th Cir. 2022). "And historically, tort claimants had two routes to sue a tortfeasor for monetary compensation"— through either writs of trespass or quasi-contract. *Id.* "Both involved actions at law that were triable to juries." *Id.* at 411.

Indeed, unfair labor claims like those asserted here are closely analogous to an array of traditional common law actions that were decided in the courts of Westminster in 1789. The Seventh Circuit's analysis in *Lebow v. American Trans Air, Inc.*, 86 F.3d 661 (7th Cir. 1996), is instructive. In that case, Lebow sued under the Railway Labor Act, claiming that his employer unlawfully discharged him due to his union-organizing activities. *Id.* at 667. The court reasoned that "Lebow's lawsuit [was] . . . similar to a common-law tort action," because the Act "create[d] a new legal duty on employers not to fire employees who organize unions, and it allow[ed] tort-like suits for violations of this duty." *Id.* at 669. Beyond that, the suit was "appropriately analogized to a common-law breach of contract action." *Id.* at

668. That was because, "unlike nineteenth-century American law, under which employees served at the will of their employers, the common law presumed that a contract existed between employers and employees." *Id.* As a result, "an improper discharge would have been viewed as a breach of contract" in eighteenth-century England. *Id.*

The Board makes the same basic claim on behalf of SpaceX employees here. Its complaint alleges an "unlawful discharge claim" that "is comparable to a common-law action for breach of an employment contract" and a standard "common-law tort action." *Id.* at 668–69; *see also Waldrop v. S. Co. Servs., Inc.*, 24 F.3d 152, 156 (11th Cir. 1994) (analogizing unlawful discharge claim under the Rehabilitation Act to tort and breach of contract actions). And because the Board alleges the terminations resulted from concerted activities between the employees, the Board's claim is also "analogous to certain causes of action that were brought in courts of law in the 18th century in order to protect contractual relationships from third-party interferences." *In re Jensen*, 946 F.2d 369, 371 (5th Cir. 1991).

Whichever way one views this case, then, the "close relationship between" the NLRB's claim and traditional common law causes of action "confirms that this action is 'legal in nature.'" *Jarkesy*, 144 S. Ct. at 2131 (citation omitted). It follows that the Seventh Amendment applies.

## II.    The NLRB Cannot Rely on the Public Rights Exception Where SpaceX's Private Rights Are at Stake.

The Board also attempts to avoid the Seventh Amendment by invoking the "public rights" exception, arguing that the NLRA's prohibitions are "purely statutory creations designed to advance broader governmental policies." Dkt. 30 at 21. Such reliance on the public rights exception is sorely misplaced.

*Jarkesy* once again removes any doubt. There, the Court held that the government "cannot 'conjure away the Seventh Amendment by mandating that traditional legal claims be . . . taken to an administrative tribunal.'" *Jarkesy*, 144 S. Ct. at 2136 (alteration in original) (quoting *Granfinanciera*, 492 U.S. at 52). And that is true "[e]ven when an action 'originates in a newly fashioned regulatory scheme.'" *Id.* at 2135 (citation and brackets omitted). What matters "is the substance of the suit, not where it is brought, who brings it, or how it is labeled." *Id.* at 2136. Indeed, "[i]f a suit is in the nature of an action at common law, then the matter presumptively concerns private rights, and adjudication by an Article III court is mandatory." *Id.* at 2132. The government can rebut that presumption only by pointing to firmly rooted "background legal principles" that justify a departure from the text of Article III and the Seventh Amendment. *Id.* at 2134; *see also id.* at 2147 (Gorsuch, J., concurring) ("[T]raditionally recognized public rights have at least one feature in common: a serious and unbroken historical pedigree.").

The NLRB can point to no such history on its side. This case does not involve traditionally recognized public rights, such as the collection and disbursement of tax revenues from a customs agent, the granting of land patents, or immigration matters. *See id.* at 2132–33 (majority op.); *Murray's Lessee*, 59 U.S. (18 How.) at 281–85. Rather, the NLRB seeks to force SpaceX to pay compensatory damages to other private parties. That "implicate[s] the core private right to property." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 204 (2023) (Thomas, J., concurring). And allowing the NLRB to adjudicate that classically private right in-house would be akin to reviving "the prerogative exercise of judicial power—the imposition of binding adjudication outside the courts"—which the Constitution's ratifying public viewed as a great affront to fundamental liberties. *See* Hamburger, *supra*, at 228. SpaceX need not suffer the sort of juryless inquisitions of government bureaucrats that our forebearers fought a revolution to abolish. It instead "has the right to be tried by a jury of [its] peers before a neutral adjudicator" in federal court. *Jarkesy*, 144 S. Ct. at 2139.

The Board's reliance on *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937), does not help it. For one thing, *Jones & Laughlin* held that an NLRB action was "not a suit at common law or in the nature of such a suit" simply because it was "a statutory proceeding." *Id.* at 48. The Supreme Court has since "clarified," however, "that the Seventh Amendment *does* apply to novel statutory regimes, so

long as the claims are akin to common law claims." *Jarkesy*, 144 S. Ct. at 2139 (emphasis added). As explained above, that is precisely the case here.

Moreover, the Board in *Jones & Laughlin* sought the limited remedies of reinstatement and associated backpay. *See* 301 U.S. at 48. But that is not what the Board is doing here. Under *Thryv*, the Board's "updated" approach imposes broader "[m]ake-whole relief" that "consistently compensates affected employees for all direct or foreseeable pecuniary harms that result from a respondent's unfair labor practice." 2022 WL 17974951, at *14. As the *Thryv* dissenters recognized, by "stray[ing] into [these] areas more akin to tort remedies," the majority ran "headlong into the Seventh Amendment's guarantee of the right to have such claims tried before a jury." *Id.* at *25, 27 (Kaplan and Ring, concurring in part and dissenting in part).

The Board's decision to adopt this novel remedy and impose it on employers in administrative proceedings, without the protections of an Article III court and an impartial jury, is especially concerning given the novel and aggressive positions it has taken in many recent adjudications. *See, e.g.*, U.S. Chamber of Commerce, *The Biden Administration's "Whole of Government" Approach to Promoting Labor Unions* 27–30 (2023), bit.ly/4d3RuZK. For example, the Board recently held that facially neutral rules that an employee "could" reasonably interpret to restrict union activity—even if the rules do not restrict such activity—are "presumptively unlawful." *Stericycle, Inc.*, 372 NLRB No. 113, 2023 WL 4947792, at *15 (Aug. 2,

2023). In another case, the Board overruled precedent to hold that it is an unfair labor practice to merely offer routine confidentiality and non-disparagement provisions in a voluntary severance agreement. *See McLaren Macomb*, 372 NLRB No. 58, 2023 WL 2158775, at *1 (Feb. 21, 2023). And in yet another case, the Board "exceeded the scope of [this Court's] remand" and "violated . . . due-process rights" by reaching out to overrule precedent that had better protected employers' rights to maintain harassment-free workplaces—without even "providing the company an opportunity to be heard on the issue." *Lion Elastomers, L.L.C. v. NLRB*, ___ F.4th ___, 2024 WL 3342430, at *5 (5th Cir. 2024); *see Lion Elastomers LLC*, 372 NLRB No. 83, 2023 WL 3173759, at *1, 11 (May 1, 2023). The Board's playbook of asserting new and unlawful interpretations of the NLRA in in-house adjudications, followed by an order requiring the employer to pay the employee compensatory damages for a violation, should be met with close constitutional scrutiny.

## CONCLUSION

"Congress did not establish a general scheme authorizing the Board to award full compensatory damages for injuries caused by wrongful conduct." *Int'l Union, United Auto., Aircraft & Agric. Implement Workers of Am. (UAW-CIO) v. Russell*, 356 U.S. 634, 643 (1958). *See generally* Chamber *Starbucks* Br., *supra.* Yet by trying to expand its statutory authority to impose such relief, the Board has ventured

straight into a constitutional trap. SpaceX has a Seventh Amendment right to a jury trial, and this Court should enjoin the NLRB's unconstitutional in-house proceeding.

Respectfully Submitted,

/s/ Steven A. Engel

| | |
|---|---|
| BRIAN A. KULP | STEVEN A. ENGEL |
| DECHERT LLP | *Counsel of Record* |
| Cira Centre | MICHAEL H. MCGINLEY |
| 2929 Arch Street | JUSTIN W. AIMONETTI |
| Philadelphia, PA 19104 | DECHERT LLP |
| | 1900 K Street, NW |
| KEVIN R. PALMER | Washington, DC 20006 |
| MARIA C. MONAGHAN | (202) 261-3369 |
| MARIEL A. BROOKINS | steven.engel@dechert.com |
| U.S. CHAMBER LITIGATION | |
| CENTER | |
| 1615 H Street, NW | |
| Washington, DC 20062 | |

*Counsel for the Chamber of Commerce of the United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2024, I caused the foregoing *amicus curiae* brief to be filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit. The Court's CM/ECF system was used to file the brief, and service will therefore be accomplished by the CM/ECF system on all CM/ECF-registered counsel.

Dated: July 24, 2024

/s/ Steven A. Engel
Steven A. Engel
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
(202) 261-3369
steven.engel@dechert.com

*Counsel of Record for the*
*Chamber of Commerce of the*
*United States of America*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains 6,247 words, excluding those portions of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Times New Roman 14-pt font.

Dated: July 24, 2024

*/s/ Steven A. Engel*
Steven A. Engel
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
(202) 261-3369
steven.engel@dechert.com

*Counsel of Record for the*
*Chamber of Commerce of the*
*United States of America*