No. 24-40315

———————————

# United States Court of Appeals for the Fifth Circuit

———————————

SPACE EXPLORATION TECHNOLOGIES CORP.,

Plaintiff-Appellant,

v.

NATIONAL LABOR RELATIONS BOARD, et al.,

Defendants-Appellees.

———————————————

On Appeal from the United States District Court
for the Southern District of Texas
(Hon. Rolando Olvera)

———————————————

## BRIEF OF PACIFIC LEGAL FOUNDATION AS *AMICUS CURIAE* IN SUPPORT OF SPACE EXPLORATION TECHNOLOGIES CORP. AND REVERSAL

———————————————

OLIVER J. DUNFORD
PACIFIC LEGAL FOUNDATION
4440 PGA Blvd., Suite 307
Palm Beach Gardens, FL 33410
Telephone: (916) 503-9060
ODunford@pacificlegal.org

JOSHUA M. ROBBINS
PACIFIC LEGAL FOUNDATION
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
Telephone: (202) 945-9524
JRobbins@pacificlegal.org

*Counsel for Amicus Curiae Pacific Legal Foundation*

## SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 29.2, the undersigned counsel of record certifies that the following listed persons are entities as described in the fourth sentence of Rule 28.2.1 as having an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

- Pacific Legal Foundation, *Amicus Curiae*

- Joshua M. Robbins, *Counsel for Amicus Curiae Pacific Legal Foundation*

- Oliver J. Dunford, *Counsel for Amicus Curiae Pacific Legal Foundation*

DATED: July 24, 2024.

s/ *Joshua M. Robbins*
JOSHUA M. ROBBINS
*Counsel for Amicus Curiae*
*Pacific Legal Foundation*

## CORPORATE DISCLOSURE STATEMENT

Amicus Curiae Pacific Legal Foundation, a nonprofit corporation organized under the laws of California, states it has no parent companies, subsidiaries, or affiliates that have issued shares to the public.

# TABLE OF CONTENTS

SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS............i

CORPORATE DISCLOSURE STATEMT ................................ii

TABLE OF CONTENTS .........................................................iii

TABLE OF AUTHORITIES.................................................iv

STATEMENT OF IDENTIFICATION ................................... 1

STATEMENT OF AUTHORSHIP AND FUNDING ................. 3

ARGUMENT ....................................................................... 4

   I.    The NLRB's In-House Adjudication Violates the Allied
        Requirements of the Separation of Powers and Due Process
        of Law............................................................................. 5

  II.   The Seventh Amendment Requires a Jury Trial for NLRB
        Claims for Compensatory Damages............................. 12

       A.   An Unfair Labor Practice Claim Is a
           Suit at Common Law ........................................... 14

       B.   The NLRB Unfair Labor Practice Claim Does Not Fall
           Within the Public Rights Exception .................... 17

       C.   The Seventh Amendment Requires Any Legal Claim
           to Be Tried Before a Jury.................................... 20

          1. The Seventh Amendment Was Ratified to Prohibit
             Congress from Controlling the Availability of Civil
             Jury Trials ..................................................... 21

          2. *Atlas Roofing* Does Not Apply to NLRB Unfair Labor
             Practice Claims.............................................. 25

CONCLUSION ................................................................. 28

CERTIFICATE OF COMPLIANCE....................................... 30

CERTIFICATE OF SERVICE.............................................. 31

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AFL & CIO v. NLRB,*
57 F.4th 1023 (D.C. Cir. 2023)............................................................ 11

*Atlas Roofing Co., Inc. v. OSHA,*
430 U.S. 442 (1977)................................................... *passim*

*Axon Enter., Inc. v. FTC,*
598 U.S. 175 (2023)............................................................ 4, 10

*Ex parte Bakelite Corp.,*
279 U.S. 438 (1929)........................................................... 18

*Buckley v. Valeo,*
424 U.S. 1 (1976).................................................................. 4

*Chauffeurs, Teamsters and Helpers, Loc. No. 391 v. Terry,*
494 U.S. 558 (1990)........................................................... 27

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.,*
526 U.S. 687 (1999)........................................... 14–15, 17, 25

*Crowell v. Benson,*
285 U.S. 22 (1932)............................................................. 18

*Curtis v. Loether,*
415 U.S. 189 (1974).............................................. 15, 25, 27

*Dairy Queen, Inc. v. Wood,*
369 U.S. 469 (1962)........................................................... 17

*Feltner v. Columbia Pictures Television, Inc.,*
523 U.S. 340 (1998)........................................................... 14

*Freytag v. Comm'r,*
501 U.S. 868 (1991).............................................................. 4

*Martin v. Hunter's Lessee,*
14 U.S. (1 Wheat.) 304 (1816)........................................... 11

*Metro. Wash. Airports Auth. v. Citizens for the Abatement of Aircraft Noise, Inc.*,
501 U.S. 252 (1991) ..................................................................... 5

*N.L.R.B. v. Jones & Laughlin Steel Corp.*,
301 U.S. 1 (1937) .................................................... 16, 19, 26–27

*Oceanic Steam Navigation Co. v. Stranahan*,
214 U.S. 320 (1909) ............................................................ 18–19

*Parsons v. Bedford, Breedlove & Robeson*,
28 U.S. (3 Pet.) 433 (1830) .............................. 20, 22, 24, 26

*Ross v. Bernhard*,
396 U.S. 531 (1970) ..................................................................... 24

*SEC v. Jarkesy*,
144 S. Ct. 2117 (2024) ................................................... *passim*

*Tamosaitis v. URS Inc.*,
781 F.3d 468 (9th Cir. 2015) ................................................ 16

*Thryv Inc. v. NLRB*,
102 F.4th 727 (5th Cir. 2024) ............................................... 8

*Thryv, Inc.*,
372 NLRB No. 22 (N.L.R.B. Dec. 13, 2022) ................. 8, 11, 16

*Tilton v. SEC*,
824 F.3d 276 (2d Cir. 2016), *cert. denied.*
581 U.S. 1006 (2017) ................................................................ 10

*Tull v. United States*,
481 U.S. 412 (1987) ............................................... 13–14, 25

*United States v. ERR, LLC*,
35 F.4th 405 (5th Cir. 2022) .................................. 15, 21–23

*United States v. Jicarilla Apache Nation*,
564 U.S. 162 (2011) .................................................................. 18

*United States v. Wonson,*
    28 F. Cas. 745 (C.C.D. Mass. 1812) .................................. 13, 21, 23–24

## United States Constitution

U.S. Const. art. I, § 1 .................................................................... 5, 11

U.S. Const. art. II, § 1 ....................................................................... 5

U.S. Const. art. III, § 1 ................................................................ 5, 11

U.S. Const. amend. VII ................................................................ *passim*

## Statutes

29 U.S.C. § 153(b) ............................................................................. 7

29 U.S.C. § 158 ................................................................................ 15

29 U.S.C. § 160 ........................................................ 7, 9, 11, 15–16

29 U.S.C. § 161 ................................................................................ 11

42 U.S.C. § 1983 ........................................................................ 14–15

## Regulations

29 C.F.R. §§ 101.1–43 ..................................................................... 11

29 C.F.R. § 101.2 ............................................................................... 8

29 C.F.R. § 101.4 ............................................................................... 8

29 C.F.R. § 101.8 ............................................................................... 8

29 C.F.R. § 101.10(a) ........................................................................ 8

29 C.F.R. § 101.11(a) ........................................................................ 8

29 C.F.R. § 101.11(b) ........................................................................ 8

29 C.F.R. § 101.12 .......................................................................... 8–9

# Other Authorities

3 Blackstone, William, *Commentaries on the Laws of England* (1768) ................................................................ 15

About NLRB: *Division of Judges Directory*,
https://www.nlrb.gov/about-nlrb/who-we-are/division-judges/division-judges-directory
(last visited July 22, 2024) ..................................................... 8

Baude, Wiliam, *Adjudication Outside Article III*,
133 Harv. L. Rev. 1511 (2020) ...................................... 7, 12

Chapman, Nathan S. & McConnell, Michael W.,
*Due Process as Separation of Powers*,
121 Yale L.J. 1672 (2012) ............................................ 5–6

*THE FEDERALIST NO. 47* (Madison) ....................................... 5

*THE FEDERALIST NO. 83* (Hamilton) ............................... 22–23

Henderson, Edith Guild, *The Background of the Seventh Amendment*,
80 Harv. L. Rev. 289 (1966) ............................................ 22

Lawson, Gary, *The Rise and Rise of the Administrative State*,
107 Harv. L. Rev. 1231 (1994) ........................................... 9

Lawson, Gary, *Take the Fifth . . . Please!:*
*The Original Insignificance of the Fifth Amendment's*
*Due Process of Law Clause*,
2017 BYU L. Rev. 611 (2017) ........................................... 12

Nelson, Caleb, *Adjudication in the Political Branches*,
107 Colum. L. Rev. 559 (2007) ..................................... 6, 10

Thomas, Suja A., *A Limitation on Congress:*
*"In Suits at Common Law"*,
71 Ohio St. L.J. 1071 (2010) ................................. 13, 21–24

Whitehouse, Sheldon, *Restoring the Civil Jury's Role in the Structure of Our Government,* 55 Wm. & Mary L. Rev. 1241 (2014) ................................................. 23

Wolfram, Charles W., *The Constitutional History of the Seventh Amendment*, 57 Minn. L. Rev. 639 (1973) ..................... 21–24

**STATEMENT OF IDENTIFICATION**

Founded in 1973, Pacific Legal Foundation (PLF) is a nonprofit, tax-exempt California corporation established for the purpose of litigating matters affecting the public interest. PLF provides a voice in the courts for limited constitutional government, private property rights, and individual freedom. PLF is the most experienced public-interest legal organization defending the constitutional principle of separation of powers in the arena of administrative law. *See, e.g.*, *Sackett v. EPA*, 598 U.S. 651 (2023) (interpreting "waters of the United States" in the Clean Water Act); *Leachco, Inc. v. CPSC*, 103 F.4th 748 (10th Cir. 2024) (removal power, Article III, Due Process of Law, Seventh Amendment); *Manis v. USDA*, No. 24-1367 (4th Cir.) (Appointments Clause and Seventh Amendment); *ATS Tree Services, LLC v. FTC*, No. 2:24-cv-01743 (E.D. Pa.) (statutory and constitutional challenge to ban on non-compete agreements).

The NLRB's in-house case against Space Exploration Technologies Corp. (SpaceX) purports to adjudicate private rights and threatens legal remedies—contrary to the Constitution's Separation of Powers, the Fifth Amendment's Due Process of Law Clause, and the Seventh Amendment.

PLF represents individuals and small businesses in similar cases. *See, e.g.*, *Leachco, Inc.*, 103 F.4th 748; *Manis*, No. 24-1367. This experience informs PLF's discussion concerning the NLRB's violations of the Constitution's structural protections of liberty.[1]

---

[1] Counsel for PLF conferred with counsel for the parties and the parties do not oppose the filing of this brief.

## STATEMENT OF AUTHORSHIP AND FUNDING

This amicus brief was not authored in whole or in part by counsel for any party. No party or counsel for a party, and no person other than Amicus or its counsel, contributed money to fund this brief's preparation or submission.

## ARGUMENT

The NLRB's adjudication power is emblematic of the administrative state's erosion of the Constitution's separation of powers—the doctrine that lies "at the heart of our Constitution." *Buckley v. Valeo*, 424 U.S. 1, 119 (1976). "The leading Framers of our Constitution viewed the principle of separation of powers as the central guarantee of a just government." *Freytag v. Comm'r*, 501 U.S. 868, 870 (1991). Through its in-house action here, the NLRB exercises all three powers of government and thereby subjects SpaceX to "an unconstitutionally structured decisionmaking process." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 192 (2023). Due process of law is thus entirely absent: instead of making its case to an independent judge—and jury—the NLRB here need only convince itself. This Court should enforce the Constitution's structural guarantees of liberty and hold that the executive branch is precluded from acting as investigator, prosecutor, judge, jury, and appellate court in cases involving the core private rights of individuals and businesses. If the NLRB has a case against SpaceX, it can make that case in a court of law before a jury.

## I. THE NLRB'S IN-HOUSE ADJUDICATION VIOLATES THE ALLIED REQUIREMENTS OF THE SEPARATION OF POWERS AND DUE PROCESS OF LAW

The "ultimate purpose" of the Constitution's separation of powers is "to protect the liberty and security of the governed." *Metro. Wash. Airports Auth. v. Citizens for the Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 272 (1991). As James Madison explained, the "accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny." THE FEDERALIST NO. 47, at 324 (Madison) (J. Cooke ed., 1961). To prevent tyranny and protect liberty, the Constitution divides all the government's powers into three—and only three—distinct branches. U.S. Const. art. I, § 1; art. II, § 1; art. III, § 1.

The Fifth Amendment's Due Process of Law Clause is an "instantiation of separation of powers." Nathan S. Chapman & Michael W. McConnell, *Due Process as Separation of Powers*, 121 Yale L.J. 1672, 1672 (2012). The close connection between Due Process of Law and the Separation of Powers may not be immediately obvious, but due process of law developed over many centuries through the "increasing

institutional separation of lawmaking from law enforcing and law interpreting." *Id*. at 1679. The doctrine of due process of law therefore limits all three powers of government. *Cf. SEC v. Jarkesy*, 144 S. Ct. 2117, 2144–45 (2024) (Gorsuch, J., concurring) (The Fifth Amendment's Due Process Clause, "[a]s originally understood, … prohibited the government from depriving a person of those rights without affording him the benefit of (at least) those customary procedures to which freemen were entitled by the old law of England.") (simplified).

Most relevant here, the "allied requirements of due process and the separation of powers protect[]" the private rights of individuals and businesses against "interference by the political branches." Caleb Nelson, *Adjudication in the Political Branches*, 107 Colum. L. Rev. 559, 562 (2007). Accordingly, the government may not deprive private rights unless all three separate branches of government have acted: the Executive Branch must enforce a law enacted by Congress (with the President's signature or with a veto-proof majority), and the Executive must prove its case to an independent, life-tenured judge and, where appropriate, a jury. *See* Chapman & McConnell, *supra*, at 1679 (Due Process of Law means "that the executive could not deprive anyone of a

right except as authorized by law, and that to be legitimate, a deprivation of rights had to be preceded by certain procedural protections characteristic of judicial process…."); William Baude, *Adjudication Outside Article III*, 133 Harv. L. Rev. 1511, 1541 (2020) (The "predominant principle of *executive* action is that it cannot deprive people of life, liberty, or property without *judicial* process." (emphasis added)).

The NLRB's in-house case against SpaceX requires the concentration of the government's three powers in a single branch and thus flouts the allied requirements of due process and the separation of powers. A mere description of the NLRB's in-house proceedings—in which the NLRB itself acts as investigator, prosecutor, judge, jury, and appellate court—suffices to make this point. The process begins when an NLRB Regional Office, through authority delegated by the NLRB, investigates alleged wrongdoing, after which it may authorize an administrative complaint against employers. *See* 29 U.S.C. § 153(b) (describing NLRB's delegation authority); *id.* § 160(b) (complaint and notice of hearing); *see also* Doc. 88 at 4 (noting NLRB Regional Office 31's authorization of complaint against SpaceX and notice of hearing).

Once an action is authorized, the "Government's case" is conducted by an NLRB-employed attorney from the applicable Regional Office, and the case is presented to an NLRB-employed ALJ. 29 C.F.R. § 101.10(a); *see also id.* §§ 101.2, .4, .8 (describing procedures).[2] In these hearings, the Federal Rules of Evidence and of Civil Procedure control only "so far as practicable." *Id.* § 101.10(a). At the end of the hearing, the NLRB's ALJ prepares a decision with findings of fact and conclusions, and a recommended remedy. *Id.* § 101.11(a). As a result of NLRB's legislative rulemaking through the adjudicative process, the remedies can include compensatory damages. *See Thryv, Inc.*, 372 NLRB No. 22, at *9 (Dec. 13, 2022).[3] An ALJ's decision becomes final unless a party files "exceptions"—*i.e.*, an appeal—to the NLRB. 29 C.F.R. §§ 101.11(b), .12(b). If an appeal is filed, the NLRB itself reviews the record, including "the exhibits, briefs, and arguments." *Id.* § 101.12(a). The NLRB itself then issues a decision and order in which it may, unlike traditional

---

[2] *See* About NLRB: Division of Judges Directory, https://www.nlrb.gov/about-nlrb/who-we-are/division-judges/division-judges-directory (last visited July 22, 2024) (identifying NLRB ALJs).
[3] This Court vacated in part the NLRB's decision in *Thryv*, but did not address the NLRB's claimed authority to award compensatory damages. *Thryv Inc. v. NLRB*, 102 F.4th 727 (5th Cir. 2024).

appellate courts, "adopt, modify, or reject" the ALJs findings of fact and recommendations. *Id.* Up to this point, no one outside of the NLRB is involved in the prosecution or adjudication of the case.

Only after this process is complete may a charged party seek review in a court of law. 29 U.S.C. § 160(f). But even then, because the courts' judicial power is severely restricted in these reviews, the regulated parties' rights are not protected. Thus, rather than making findings of fact with a jury, the court *must* defer to the NLRB's findings and consider them "conclusive" if they are "supported by substantial evidence." *Id.* And, rather than reaching independent judgments, courts regularly defer to agencies' legal conclusions. *See* Gary Lawson, *The Rise and Rise of the Administrative State*, 107 Harv. L. Rev. 1231, 1248–49 (1994) ("[T]he agency decision, even before the bona fide Article III tribunal, possesses a very strong presumption of correctness on matters both of fact and of law.").

Accordingly, even if it were otherwise constitutional for executive agencies to adjudicate private rights (it is not), deferential judicial review at the back-end violates the separation of powers and due process of law because, as a practical matter, it deprives the charged party of effective

review by an Article III court.[4] Moreover, belated and deferential review likewise deprives a charged party of its right to an independent, Article III court in the first instance. *See* Nelson, *supra*, at 590 ("When core private rights are at stake, [] not just any sort of 'judicial' involvement [will] do," and courts must "be able to exercise their own judgment" about the details relevant to a particular case or controversy.).

SpaceX pointed out that the NLRB's combination of prosecutor and judge violates the Due Process of Law Clause, which guarantees that "'no man can be a judge in his own case.'" Doc. 88 at 39 (quoting *Williams v. Pennsylvania*, 579 U.S. 1, 9 (2016)). But, as noted above, a more fundamental problem exists: the Due Process of Law and the allied Separation of Powers prohibit a single branch of government from depriving private rights.

---

[4] Unlike SpaceX, many businesses lack the wherewithal to survive agency adjudications. And agencies know they can threaten regulated parties with in-house "trials" and browbeat them into submission. *Cf. Tilton v. SEC*, 824 F.3d 276, 298 n.5 (2nd Cir. 2016) (Droney, J., dissenting) (noting "the vast majority" of respondents settle; and in a "number of cases" the SEC "threaten[s] administrative proceedings" before ALJs in a calculated effort to compel settlement), *cert. denied*, 581 U.S. 1006 (2017). *Tilton*'s holding—that district courts lack jurisdiction to hear collateral suits challenging the constitutionality of agency structure—was effectively overruled by *Axon*, 598 U.S. 175.

In the NLRB's in-house adjudication, through which it seeks to deprive private rights, the NLRB unconstitutionally exercises all three of the government's powers. It exercises legislative power when it adopts—almost exclusively through in-house adjudication—rules that bind private parties. *See, e.g., Thryv*, 372 NLRB at *9; *cf. AFL & CIO v. NLRB*, 57 F.4th 1023, 1026–27 (D.C. Cir. 2023) ("Unique among major federal agencies, the [NLRB] sets almost all of its policy through adjudications rather than rules."). It exercises executive power when it investigates and prosecutes alleged wrongdoing. 29 U.S.C. §§ 160–61. And it exercises judicial power when it resolves factual and legal disputes, makes findings of fact, and issues binding orders on private parties. *Id*. § 160(b)–(d), (k), (l); 29 C.F.R. §§ 101.1–43.

The Constitution, of course, vests the government's legislative power in Congress and the judicial power in the courts. U.S. Const. art. I, § 1; art. III, § 1. These vesting clauses, along with the doctrine of due process of law, preclude the executive branch from exercising those powers. *See, e.g.*, *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 330–31 (1816) (Congress "cannot vest any portion of the judicial power of the United States, except in courts ordained and established by itself.");

Baude, *supra*, at 1541 ("[O]ne of the most fundamental requirements" of the Due Process of Law Clause is "one of form and legality—as a limit on the legislature's ability to dispense with the courts.").

Because of these fundamental constitutional violations, the (purported) fairness of the procedures within agency adjudications is irrelevant. *See* Gary Lawson, *Take the Fifth . . . Please!: The Original Insignificance of the Fifth Amendment's Due Process of Law Clause*, 2017 BYU L. Rev. 611, 631 (2017) ("Executive procedures, even highly formal, court-like executive procedures, may or may not be a good idea, and they may or may not serve any number of functions, but they cannot legitimate a deprivation that is not otherwise legitimate."). The Separation of Powers and the Due Process of Law Clause preclude the government from depriving rights through mere executive action.

## II. THE SEVENTH AMENDMENT REQUIRES A JURY TRIAL FOR NLRB CLAIMS FOR COMPENSATORY DAMAGES

The Constitution also ensures a specific form of judicial process—the civil jury trial. The Seventh Amendment guarantees that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. The phrase "Suits at common law" is broad and includes statutory

claims that meet two criteria. First, the statutory claim must be similar to "18th-century actions brought in the courts of England prior to the merger of the courts of law and equity" and provide a legal remedy. *Tull v. United States*, 481 U.S. 412, 417–18 (1987). Second, the Court must "consider whether the 'public rights' exception to Article III jurisdiction applies." *Jarkesy*, 144 S. Ct. at 2127.

The public rights exception applies only when an action "fall[s] within any of the *distinctive* areas involving governmental prerogatives where the Court has concluded that a matter may be resolved outside of an Article III court." *Id.* (emphasis added). The public rights exception should be applied in a limited way given the Seventh Amendment's original purpose as a prohibition against congressional control of the availability of a jury trial for any legal claims. *See id.* at 2134; *United States v. Wonson*, 28 F. Cas. 745, 750 (C.C.D. Mass. 1812) (Story, J.); Suja A. Thomas, *A Limitation on Congress: "In Suits at Common Law"*, 71 Ohio St. L.J. 1071, 1106 n.227 (2010).

The NLRB unfair labor practice action against SpaceX is a common law claim that does not fall within the public rights exception. As such, it requires a jury trial.

## A.  An Unfair Labor Practice Claim Is a Suit at Common Law

The Seventh Amendment applies to unfair labor practice claims brought by the NLRB because they are tort-like in nature and include compensatory remedies. *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709–11 (1999). A suit at common law—for purposes of the Seventh Amendment—includes any "suit[] in which *legal* rights [a]re to be ascertained and determined." *Id.* at 708. For statutory causes of action, they need only be "'analogous'" to an 18th-century English common law cause of action. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 348 (1998). This comparison looks at "both the nature of the statutory action and the remedy sought." *Id.*

Establishing the nature of the statutory action does not require the identification of a "precise[]" analog in 18th-century English common law. *Tull*, 481 U.S. at 421 (rejecting the necessity of an "'abstruse historical' search"). The comparison is to categories of actions that were brought at common law (*i.e.*, tort, contract, etc.). *See Monterey*, 526 U.S. at 711. For example, the cause of action for violations of constitutional or statutory rights by a state official in 42 U.S.C. § 1983 is a suit at common law because it "sound[s] in tort and s[eeks] legal relief." *Id.*; *see also*

*Curtis v. Loether*, 415 U.S. 189, 195 (1974). It is of no moment whether there is an "action equivalent to" the statutory action under consideration. *Monterey*, 526 U.S. at 709.

Like a § 1983 claim, the NLRB's unfair labor practice claim sounds in tort. *See Monterey*, 526 U.S. at 711. With respect to unfair labor practices, the National Labor Relations Act (NLRA) "merely defines a new legal duty, and authorizes the [NLRB] to compensate a [charging party] for the injury caused by the defendant's wrongful breach." *Curtis*, 415 U.S. at 195; *see also United States v. ERR, LLC*, 35 F.4th 405, 412 (5th Cir. 2022). This is the essence of a tort claim. *See* 3 W. Blackstone, Commentaries on the Laws of England 115–19 (1768); *Monterey*, 526 U.S. at 727 (Scalia, J., concurring in part) ("[T]orts are remedies for invasions of certain rights.").

More specifically, the statute prohibits employers from engaging in "unfair labor practice[s]" and empowers the NLRB to adjudicate whether an employer has violated that prohibition. 29 U.S.C. §§ 158, 160(a)–(c). It is effectively a common law wrongful discharge claim. Wrongful discharge is "'a tort so widely accepted in American jurisdictions today'"

courts "'are confident that it has become part of our evolving common law.'" *Tamosaitis v. URS Inc.*, 781 F.3d 468, 486 (9th Cir. 2015).

The NLRB also claims the power to award compensatory damages, a common law remedy that triggers the Seventh Amendment. *See Jarkesy*, 144 S. Ct. at 2129–30. When considering the application of the Seventh Amendment, "the remedy is all but dispositive." *Id.* at 2129. Traditionally, employers found liable for an unfair labor practice can be required to reinstate the employee "with or without back pay," 29 U.S.C. § 160(c), a remedy the Court considers to be equitable, *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48 (1937). In 2022, the NLRB unilaterally extended its remedial authority to include "direct or foreseeable pecuniary harms" (i.e. compensatory damages). *Thryv*, 372 NLRB at *10.

"[M]oney damages are the prototypical common law remedy." *Jarkesy*, 144 S. Ct. at 2129. Thus, by incorporating a compensatory damages remedy into its unfair labor practices claim, *see Thryv*, 372 NLRB at *10, the NLRB has exceeded the bounds of the remedies *Jones & Laughlin* permitted it to seek without a jury. Even where legal issues are "'incidental' to equitable issues," the right of trial by jury is preserved.

*Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 473 (1962). Because unfair labor practice claims "can be said to 'soun[d] basically in tort,' and seek legal relief," "the Seventh Amendment jury guarantee extends to" this statutory claim. *Monterey*, 526 U.S. at 709; *Jarkesy*, 144 S. Ct. at 2128 ("The Seventh Amendment extends to a particular statutory claim if the claim is 'legal in nature.'").

### B. The NLRB Unfair Labor Practice Claim Does Not Fall Within the Public Rights Exception

Agency adjudication of otherwise legal claims is presently permitted only through the public rights exception to Article III jurisdiction. *Jarkesy*, 144 S. Ct. at 2131. The exception "has no textual basis in the Constitution" and must be narrowly drawn based on historical precedent. *Id.* at 2132, 2134. Here, there is no "background legal principle[]" that supports the application of the public rights exception to NLRB unfair labor practice claims. *Id.* at 2134. So, the claim may not be assigned to the NRLB.

Matters that fall within the public rights exception are those that "historically could have been determined exclusively by [the executive and legislative] branches." *Id.* at 2132 (quoting *Stern v. Marshall*, 564 U.S. 462, 493 (2011)). The public rights exception does *not* apply broadly

to any power exercised by Congress. *See id.* at 2136. The Supreme Court has identified revenue collection, immigration, tariffs, Indian tribe relations, public lands administration, and public benefits as public rights matters. *Id.* at 2132–33. These matters are all subjects that are owned by or have a tradition of plenary control by the federal government. The public rights exception for revenue collection "flowed from centuries-old rules." *Id.* at 2134. Historically, Congress also exercised total control over immigration and tariffs. *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909) ("[O]ver no conceivable subject is the legislative power of Congress more complete than [immigration]."); *id.* at 334–35 (tariffs); *Ex parte Bakelite Corp.*, 279 U.S. 438, 458 (1929) (same). Congress established a trust relationship with Indian tribes. *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 174 (2011). And public lands and public benefits are, "completely within congressional control." *Crowell v. Benson*, 285 U.S. 22, 50–51 (1932).

The regulation of labor relations in commerce neither falls within any of the historical public rights exceptions nor is it owned by or within the plenary control of Congress. The Supreme Court considers the

regulation of labor relations to fall within—and to be limited by—Congress's interstate commerce power. *Jones & Laughlin*, 301 U.S. at 30–32. The power to regulate interstate commerce is limited by "the constitutional grant" itself and the "explicit reservation of the Tenth Amendment" such that Congress cannot universally regulate labor relations. *Id.* at 30–31. The public rights precedents distinguished Congress's limited interstate commerce power from Congress's plenary power over foreign commerce to which the public rights exception applies. *Oceanic Steam Navigation*, 214 U.S. at 334; *Jarkesy*, 144 S. Ct. at 2133 n.1. The interstate commerce power is simultaneously broad with respect to the scope of interstate conduct that can be considered to affect commerce. *See Jones & Laughlin*, 301 U.S. at 31. Applying the public rights exception to causes of action created pursuant to this power risks "the exception [] swallow[ing] the rule." *Jarkesy*, 144 S. Ct. at 2134. There is no basis on which to apply the public rights exception to the NRLB claim.

The common law nature of NLRB's unfair labor practice claim also establishes that the public rights exception does not apply. *See id.* at 2135–36; *supra* Part II.A. The claim's "statutory origins are not

dispositive" "if the action resembles a traditional legal claim." *Jarkesy*, 144 S. Ct. at 2136. "Once [a common law] suit 'is brought within the bounds of federal jurisdiction,' an Article III court must decide it, with a jury if the Seventh Amendment applies." *Id.* at 2131. The unfair labor practice claim is effectively a common law wrongful discharge claim with a remedy of monetary compensatory damages. *See supra* Part II.A. "Therefore, Congress may not withdraw it from judicial cognizance." *Jarkesy*, 144 S. Ct. at 2136 (simplified).

## C. The Seventh Amendment Requires Any Legal Claim to Be Tried Before a Jury

The Seventh Amendment is properly understood to require *any* claim involving legal rights and remedies—including those brought by the federal government—to be tried before a jury. *See Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. (3 Pet.) 433, 447 (1830). The "'presumption [] in favor of Article III courts'" even for "'matters that arguably fall within'" the public rights exception should be liberally applied as a result. *Jarkesy*, 144 S. Ct. at 2134. So, the exception created in *Atlas Roofing Co. v. OSHRC*, 430 U.S. 442 (1977), for workplace safety enforcement should not be extended to prevent SpaceX from obtaining a jury trial on the NLRB's claims.

1. **The Seventh Amendment Was Ratified to Prohibit Congress from Controlling the Availability of Civil Jury Trials**

The history of the Seventh Amendment's adoption demonstrates that it was intended—of its own force—to protect the right to a civil jury trial for all legal claims. The Seventh Amendment repudiated the Federalists' argument, made during the 1787 Constitutional Convention and the ratification debates, that the original Constitution empowered Congress to provide for civil jury trials where appropriate—and that it could be trusted to do so. *See* Thomas, *supra*, at 1106 n.227. The defeat of the Federalists' position in the ratification debate informs the scope of the Seventh Amendment. *Wonson*, 28 F. Cas. at 750 (Story, J.).

The ratification of the Seventh Amendment resulted from the 1787 Constitutional Convention's omission of a civil jury trial guarantee from the original Constitution. *ERR*, 35 F.4th at 409–10; Charles W. Wolfram, *The Constitutional History of the Seventh Amendment*, 57 Minn. L. Rev. 639, 656–57 (1973). The lack of a civil jury trial guarantee was raised shortly before the end of the convention. Wolfram, *supra*, at 658–60. But the convention voted down its inclusion. *Id.* at 659–60. One of the principal arguments raised by opponents at the convention was that the

power to provide for a jury trial in civil actions could be left to Congress. *Id.* at 659, 664–66; Thomas, *supra*, at 1106 n.227. One delegate, Nathaniel Gorham of Massachusetts, said that the "Representatives of the people may be safely trusted" to determine when a jury was appropriate. Wolfram, *supra*, at 659.

As the convention adjourned and the ratification debate began, the absence of a civil jury trial guarantee was a central argument of the Anti-Federalists against ratification. *Id.* at 667–71; Edith Guild Henderson, *The Background of the Seventh Amendment*, 80 Harv. L. Rev. 289, 295 (1966); *Parsons,* 28 U.S. at 446; *ERR*, 35 F.4th at 410. Anti-Federalists argued that jury trials were "'the surest barrier against arbitrary power'" and that "'[j]udges, unincumbered by juries, have been ever found much better friends to government than to the people.'" *ERR*, 35 F.4th at 409 & n.3. More specifically, they believed that civil jury trials were necessary in suits brought by citizens against the government to ensure a fair trial and in tax-enforcement actions to protect against abuse of the taxing power. Wolfram, *supra*, at 705–08; THE FEDERALIST NO. 83, at 563 (Hamilton). The Anti-Federalists would surely have felt the same way about civil enforcement suits.

Just as they did during the convention, the Federalists responded that Congress would protect the right to a civil jury trial. *ERR*, 35 F.4th at 410; *Wonson*, 28 F. Cas. at 750 (Story, J.); Wolfram, *supra*, at 664–65, 712 n.200; Thomas, *supra*, at 1106 n.227; Sheldon Whitehouse, *Restoring the Civil Jury's Role in the Structure of Our Government*, 55 Wm. & Mary L. Rev. 1241, 1250 & n.54 (2014). During the Virginia ratification convention, Madison argued that the contours of the jury trial right "must be [] left to the discretion of the legislature to modify [] according to circumstances." Wolfram, *supra*, at 712 n.200. Alexander Hamilton took the same position, arguing that it was "impossible" to "fix" the boundaries for the use of a civil jury. *THE FEDERALIST NO. 83*, at 573 (Hamilton).

The Anti-Federalists won. *See ERR*, 35 F.4th at 410; *Jarkesy*, 144 S. Ct. at 2128. Indeed, the lack of a civil jury trial guarantee was "perhaps the 'most success[ful]' critique leveled against the proposed Constitution." *Jarkesy*, 144 S. Ct. at 2128. Madison himself introduced what would become the Seventh Amendment in the House of Representatives. Wolfram, *supra*, at 726–29. This victory was a rejection of the Federalists' claim that Congress could define the scope of the civil

jury trial. *See* Thomas, *supra*, at 1106 n.227. And it is the background through which the court should "comprehend the scope and object of the amendment." *Wonson*, 28 F. Cas. at 750 (Story, J.); *see also* Wolfram, *supra*, at 672–73. The Seventh Amendment cannot be understood to permit Congress to assign suits at common law to forums without juries. *See* Thomas, *supra*, at 1106 n.227.

Soon after ratification, the U.S. Supreme Court too understood the Seventh Amendment to prohibit Congress from controlling the civil jury trial right. *Parsons*, 28 U.S. at 446–47. In 1830, Justice Story explained that the Seventh Amendment "may well be construed to embrace *all* suits which are not of equity and admiralty jurisdiction," regardless of how they "settle legal rights." *Id.* at 447 (emphasis added). His understanding encompassed any "suits in which *legal* rights were to be ascertained and determined," not just those involving existing common law claims. *Id.* After all, most, if not all, states had created "new legal remedies" that were tried by jury. *Id.* This expansive view of the Seventh Amendment has persisted into modern times when applied to statutory rights adjudicated in federal court, including for claims brought by the federal government. *See, e.g.*, *Ross v. Bernhard*, 396 U.S. 531, 532–33, 541–42

(1970) (jury trial required in shareholder derivative suit where underlying claim is legal); *Curtis*, 415 U.S. at 195 (jury trial required for fair housing claim for damages); *Tull*, 481 U.S. at 423 (jury trial required for civil money penalty claims); *Monterey*, 526 U.S. at 710 (jury trial required for § 1983 claim). And it extends to claims that Congress assigned to administrative agencies as well. *Jarkesy*, 144 S. Ct. at 2128–29, 2134–36.

### 2. *Atlas Roofing* Does Not Apply to NLRB Unfair Labor Practice Claims

Despite the historical record, the Supreme Court created an ahistorical exception to the Seventh Amendment by permitting Congress to assign certain statutory claims brought by the government to administrative agencies for adjudication. *See Atlas Roofing*, 430 U.S. at 460–61. *Atlas Roofing* involved a Seventh Amendment challenge to the imposition of civil money penalties for workplace safety violations by the Occupational Safety and Health Review Commission—an executive branch agency—rather than through a jury trial. *Id.* at 448–49. The Court held that a "new cause of action . . . unknown to the common law" could be assigned by Congress to an administrative tribunal for adjudication. *Id.* at 461.

*Atlas Roofing* rests on a misunderstanding of the history of the Seventh Amendment and Supreme Court precedent. The Seventh Amendment indeed "preserve[s]" the existing jury trial right rather than apply it beyond legal claims. U.S. Const. amend. VII; *Atlas Roofing*, 430 U.S. at 459. But the word "preserve[s]" was *not* understood to limit the right to a jury trial exclusively to common law claims that existed in the late 18th-century. *Parsons*, 28 U.S. at 446–47. The Court in *Atlas Roofing* cited no authority to support this contradiction of its earlier—and correct—view in *Parsons*. *Atlas Roofing*, 430 U.S. at 459. *Atlas Roofing* also contradicts *itself* by recognizing that the Seventh Amendment applies to certain statutory claims *if* they are "assigned [] to a federal court." *Id.* at 455. But the elimination by Congress of the jury trial in civil suits involving the government is precisely what the Anti-Federalists sought to prevent. *See supra* Part II.C.1.

The Court also extended its mischief by reinterpreting *Jones & Laughlin* to broadly uphold the practice of agency adjudication. *Atlas Roofing*, 430 U.S. at 453–54. *Atlas Roofing* claimed that *Jones & Laughlin* "upheld 'congressional power to entrust enforcement of statutory rights to an administrative process or specialized court of

equity free from the strictures of the Seventh Amendment.'" *Id.* at 454 (quoting *Curtis*, 415 U.S. at 194–95). But that is not the holding of *Jones & Laughlin*.

*Jones & Laughlin* dealt with an equitable NLRB claim that the Seventh Amendment would never reach. 301 U.S. at 48–49. At issue was whether the NLRB's award of net wages to the charging employees violated the Seventh Amendment. *Id.* at 48. The Court held that the wages were "incident to equitable relief" and did not convert the proceeding into a suit at common law. *Id.* The backpay was equitable restitution because it was money "wrongfully held" by the employer that should have been paid absent the unlawful discharge. *See Chauffeurs, Teamsters and Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 571 (1990). *Jones & Laughlin* has nothing to say about the Seventh Amendment's applicability to awards of compensatory damages—a legal remedy—by administrative agencies, including the NLRB. Its description in *Atlas Roofing* is another example of the opinion misusing the historical record to undermine the Seventh Amendment.

Now, *Atlas Roofing* has been all but overturned. *Jarkesy* recognized that the forum to which a statutory cause of action is assigned is

irrelevant; it is "the substance of the action" that determines the Seventh Amendment's applicability. 144 S. Ct. at 2135. This holding repudiates the core of *Atlas Roofing*. *Jarkesy* was also openly dismissive of *Atlas Roofing*'s continued relevance, noting that the Justice who authored *Atlas Roofing* already thought the opinion may have been overruled, describing the case as "a departure from our legal traditions," and compiling scholarly criticism of its reasoning. *Jarkesy*, 144. S. Ct. at 2137 n.3, 2138 n.4. Whatever continued relevance *Atlas Roofing* has, it cannot be applied here to a claim with compensatory damages and in light of the presumption in favor of Article III courts. *See id.* at 2134; *supra* Part II.A.

## CONCLUSION

For all the foregoing reasons, this Court should REVERSE the district court's effective denial SpaceX's motion for a preliminary injunction.

DATED: July 24, 2024.

Respectfully submitted,

OLIVER J. DUNFORD
PACIFIC LEGAL FOUNDATION
4440 PGA Blvd., Suite 307
Palm Beach Gardens, FL 33410
Telephone: (916) 503-9060
ODunford@pacificlegal.org

s/ Joshua M. Robbins
JOSHUA M. ROBBINS
PACIFIC LEGAL FOUNDATION
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
Telephone: (202) 945-9524
JRobbins@pacificlegal.org

*Counsel for Amicus Curiae Pacific Legal Foundation*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) and 32(a)(7)(B)(i) because it contains 5,379 words excluding the parts exempt by Federal Rule of Appellate Procedure 32(f).

This motion complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

DATED: July 24, 2024.

s/ *Joshua M. Robbins*
JOSHUA M. ROBBINS
*Counsel for Amicus Curiae*
*Pacific Legal Foundation*

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2024, I submitted the foregoing to the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF, which will send notice of this submission to all counsel of record.

s/ *Joshua M. Robbins*
JOSHUA M. ROBBINS