# United States Court of Appeals
# for the Fifth Circuit

SPACE EXPLORATION TECHNOLOGIES CORP.,

*Plaintiff-Appellant,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants-Appellees.*

## On Appeal from the United States District Court
## for the Southern District of Texas

## APPELLEES' BRIEF

JENNIFER A. ABRUZZO
  *General Counsel*
PETER SUNG OHR
  *Deputy General Counsel*
NANCY E. KESSLER PLATT
  *Associate General Counsel*
DAWN L. GOLDSTEIN
  *Deputy Associate General Counsel*
KEVIN P. FLANAGAN
  *Deputy Assistant General Counsel*

PAUL A. THOMAS
  *Supervisory Attorney*
DAVID P. BOEHM
GRACE L. PEZZELLA
  *Trial Attorneys*

NATIONAL LABOR RELATIONS BOARD
1015 Half Street, S.E., 4th Floor
Washington, D.C. 20570
(202) 273-4202

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required, as Defendant-Appellees are a government agency and government officials. Fifth Cir. R. 28.2.1.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant raises numerous procedural and substantive issues. Moreover, the relief sought would (at least preliminarily) find a nearly ninety-year-old agency unconstitutional and have government-wide implications for any agency employing administrative law judges. Oral argument is warranted.

# TABLE OF CONTENTS

Counterstatement of Jurisdiction ............................................................. 1

Counterstatement of Issues .................................................................... 2

Counterstatement of the Case ................................................................. 3

  I.  Structure and Functions of the NLRB ............................................ 3

  II. Administrative Proceedings .............................................................. 5

  III. District Court and Mandamus Proceedings ...................................... 6

Summary of the Argument ...................................................................... 9

Standard of review ................................................................................ 11

Argument ............................................................................................... 12

  I.  This appeal is not properly before this Court because there was no effective denial of SpaceX's injunction request. ................................... 12

  II. The district court's transfer determination is not properly before this Court and, in any event, was proper. .......................................... 16

    A.  This Court lacks appellate jurisdiction over the transfer decision because it is not inextricably intertwined with an appealable order ... ......................................................................................................... 16

    B.  The district court's venue determination was correct and supported by the record. .................................................................... 19

  III. SpaceX fails to meet the high bar for a preliminary injunction. .... 22

    A.  Congress has jurisdictionally barred injunctive remedies in cases growing out of labor disputes. ........................................................... 23

    B.  SpaceX is unlikely to succeed on any of its claims. ..................... 25

      1.  No relief—and certainly not an injunction—can issue here, because SpaceX cannot show that the challenged removability restrictions had a real-world impact on this case .......................... 25

      2.  SpaceX fails to show causal harm. ......................................... 27

      3.  A "here-and-now" injury sufficient for jurisdictional purposes under *Axon* does not state a claim or confer a right to relief. ........ 29

4. Preliminary injunctive relief is unavailable where severance can resolve the threat of appearing before an unconstitutionally insulated adjudicator. .................................................. 32

5. NLRB ALJ tenure protections are constitutional. ................. 35

6. Board member removal protections are constitutional. .......... 36

7. SpaceX's Seventh Amendment claim is beyond this Court's subject-matter jurisdiction and contrary to controlling law. ......... 43

    i. This Court has no subject-matter jurisdiction to pass upon claims that particular NLRA remedies violate the Seventh Amendment. .................................................................. 44

    ii. NLRB proceedings effectuate public rights. ........................ 47

    iii. NLRB proceedings are not legal in nature. ....................... 48

8. Not only is jurisdiction lacking to hear SpaceX's combined-functions claim, this Court recently rejected an indistinguishable argument. ......................................................................... 51

C. SpaceX has not met its burden to show irreparable harm arising from the constitutional infirmities it alleges. .................................. 55

1. SpaceX has not shown any irreparable harm resulting from removal protections for NLRB ALJs or Board members. ............. 55

2. SpaceX's Seventh Amendment claim is too speculative to be a basis for irreparable harm. .......................................................... 57

3. Statutory review provides an adequate legal remedy for SpaceX's combined-functions claim. ................................................ 58

4. SpaceX's additional arguments concerning alleged economic and reputational harm cannot support injunctive relief. ............... 59

D. The balance of equities and the public interest factors counsel against granting a preliminary injunction. ..................................... 61

Conclusion .................................................................................. 64

# TABLE OF AUTHORITIES

Page(s)

Cases

*Acoustic Sys., Inc. v. Wenger Corp.*,
207 F.3d 287 (5th Cir. 2000)................................................16

*Agostini v. Felton*,
521 U.S. 203 (1997)..........................................................31

*Agwilines, Inc. v. NLRB*,
87 F.2d 146 (5th Cir. 1936)...........................................49, 58

*Air Prods. & Chems., Inc. v. FERC*,
650 F.2d 687 (5th Cir. 1981)..............................................52

*Alivio Med. Ctr. v. Abruzzo*,
2024 WL 4188068 (N.D. Ill. Sep. 14, 2024) .........................64

*Andrade v. Chojnacki*,
934 F. Supp. 817 (S.D. Tex. 1996).....................................21

*Associated Press v. Herrick*,
13 F. Supp. 897 (S.D.N.Y. 1936) .......................................61

*Atlas Roofing Co. v. Occupational Safety Health & Rev. Comm'n*,
430 U.S. 442 (1977)......................................................43, 47

*Axon Enterprise, Inc. v. FTC*,
598 U.S. 175 (2023)................................................... passim

*Baltimore Contractors v. Bodinger*,
348 U.S. 176 (1955)..........................................................16

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
591 U.S. 610 (2020)..........................................................32

*Benisek v. Lamone*,
585 U.S. 155 (2018).........................................................61

*Bhatti v. Fed. Hous. Fin. Agency*,
97 F.4th 556 (8th Cir. 2024) ..............................................27

*Blankenship v. FINRA*,
2024 WL 4043442 (E.D. Pa. Sept. 4, 2024).........................44

*Boire v. Greyhound Corp.*,
376 U.S. 473 (1964)..........................................................59

*Boire v. Pilot Freight Carriers, Inc.*,
515 F.2d 1185 (5th Cir. 1975)............................................54

v

*Boys Markets, Inc. v. Retail Clerks Union*,
   398 U.S. 235 (1970) ........................................................................ 23

*Bradley Lumber Co. of Ark. v. NLRB*,
   84 F.2d 97 (5th Cir. 1936) ........................................................... 60

*Broker's Home, LLC v. Trans Union, LLC*,
   2008 WL 11350295 & n.4 (M.D. La. 2008) .......................... 21

*Calcutt v. FDIC*,
   37 F.4th 293 (6th Cir. 2022) ............................................... 27, 28

*Carson v. American Brands, Inc.*,
   450 U.S. 79 (1981) ............................................................ 12, 13, 14

*CFPB v. Community Fin. Servs. Ass'n of Am*,
   515 F.2d 922 (5th Cir. 1975) ....................................................... 57

*Chacon v. Granata*,
   515 F.2d 922 (5th Cir. 1975) ....................................................... 57

*Clarke v. CFTC*,
   74 F.4th 627 (5th Cir. 2023) ..................................................... 12

*Cochran v. SEC*,
   20 F.4th 194 (5th Cir. 2021) ..................................................... 29

*Collins v. Yellen*,
   594 U.S. 220 (2021) ............................................... 26, 31, 33

*Community Fin. Servs. Ass'n of Am. v. CFPB*,
   601 U.S. 416 (2024) ................................................................ 27

*Consumers' Rsch.*,
   91 F.4th ............................................................ 37, 39, 40, 42

*Curtis v. Loether*,
   415 U.S. 189 (1974) ................................................................ 47

*Decker Coal Co. v. Pehringer*,
   8 F.4th 1123 (9th Cir. 2021) ............................................... 27, 36

*Deerfield Med. Ctr. v. City of Deerfield Beach*,
   661 F.2d 328 (5th Cir. 1981) ....................................................... 57

*Direct Biologics, LLC v. McQueen*,
   63 F.4th 1015 (5th Cir. 2023) ................................................. 16

*Doran v. Salem Inn, Inc.*,
   422 U.S. 922 (1975) ................................................................ 35

*Eisenberg v. Holland Rantos Co.*,
   583 F.2d 100 (3d Cir. 1978) ....................................................... 55

*Elgin v. Dep't of Treasury*,
   567 U.S. 1 (2012) .................................................................... 46

*Elliott v. El Paso Elec. Co.*,
  88 F.2d 505 (5th Cir. 1937)..................................................................46

*Elrod v. Burns*,
  427 U.S. 347 (1976).........................................................................57

*Energy Transfer. LP v. NLRB*,
  2024 WL 3571494 (S.D. Tex. July 29, 2024)......................................34

*Entergy Miss., Inc. v. NLRB*,
  810 F.3d 287 (5th Cir. 2015)...........................................................48

*Exela Enter. Sols., Inc. v. NLRB*,
  32 F.4th 436 (5th Cir. 2022)........................................................4, 41

*Flamingo Hilton-Laughlin v. NLRB*,
  148 F.3d 1166 (D.C. Cir. 1998)........................................................55

*Foster v. Wilson*,
  504 F.3d 1046 (9th Cir. 2007)..........................................................49

*Free Enter. Fund v. Public Co. Accounting Oversight Board*,
  561 U.S. 477 (2010)..................................................................passim

*FTC v. Standard Oil Co. of Cal.*,
  449 U.S. 232 (1980).........................................................................59

*Giannakos v. M/V Bravo Trader*,
  762 F.2d 1295 (5th Cir. 1985)..........................................................23

*Graham v. Dyncorp Intl, Inc.*,
  973 F. Supp. 2d 698 (S.D. Tex. 2013)...............................................19

*Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*,
  434 F.3d 320 (5th Cir. 2005)......................................................17, 18

*Horne v. Polk*,
  394 P.3d 651 (Ariz. 2017) ...............................................................53

*Humphrey's Executor v. United States*,
  295 U.S. 602 (1935).........................................................................37

*Illumina, Inc. v. FTC*,
  88 F.4th 1036 (5th Cir. 2023)..........................................37, 38, 39, 52

*In re Fort Worth Chamber of Com.*,
  100 F.4th 528 (5th Cir. 2024)..........................................12, 13, 14, 15

*In re Sac Fox Tribe of the Mississippi in Iowa/Meskawaki Casino Litig.*,
  340 F.3d 749 (8th Cir. 2003)............................................................62

*Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*,
  457 U.S. 702 (1982).........................................................................23

*Jarkesy v. SEC*,
  34 F.4th 446 (5th Cir. 2022)................................................30, 35, 36

*Jarkesy v. SEC,*
   144 S. Ct 2117 (2024)............................................................ passim

*John Doe Co. v. CFPB,*
   849 F.3d 1129 (D.C. Cir. 2017)....................................................56

*Jones v. InfoCure Corp.,*
   310 F.3d 529 (7th Cir. 2002)........................................................18

*K&R Contractors, LLC v. Keene,*
   86 F.4th 135 (4th Cir. 2023) ........................................................27

*Kessel Food Mkts., Inc. v. NLRB,*
   868 F.2d 881 (6th Cir. 1989)........................................................55

*L. Offs. of Crystal Moroney, P.C.,*
   63 F.4th 174 (2d Cir. 2023)......................................................27, 28

*Leachco, Inc. v. Consumer Prod. Safety Comm'n,*
   103 F.4th 748 (10th Cir. 2024) ............................................... passim

*League of United Latin Am. Citizens v. Abbott,*
   601 F. Supp. 3d 147 (W.D. Tex. 2022) ......................................61

*Lodge No. 1424 v. NLRB,*
   362 U.S. 411 (1960)......................................................................63

*Lucia v. SEC,*
   585 U.S. 237 (2018)......................................................................36

*M.D. ex rel. Stukenberg v. Abbott,*
   907 F.3d 237 (5th Cir. 2018)........................................................58

*Mathews v. Eldridge,*
   424 U.S. 319 (1976)......................................................................53

*Maybelline Co. v. Noxell Corp.,*
   813 F.2d 901 (8th Cir. 1987)........................................................19

*Maysaroh v. Am. Arab Commc'ns & Translation Ctr., LLC,*
   51 F. Supp. 3d 88 (D.D.C. 2014)................................................22

*Meta Platforms, Inc. v. FTC,*
   2024 WL 1121424 n.4 (D.D.C. Mar. 14, 2024)...................53, 59

*Midwest Motor Exp., Inc. v. Cent. States,*
   70 F.3d 1014 (8th Cir. 1995)........................................................18

*Miss. Power & Light Co. v. United Gas Pipe Line Co.,*
   760 F.2d 618 (5th Cir. 1985)........................................................35

*Moats v. Nat'l Credit Union Admin. Board,*
   No. 3:23-cv-147, 2024 WL 1724271 (S.D. Tex. Apr. 9, 2024) ..............23

*Munaf v. Geren,*
   553 U.S. 674 (2008)......................................................................23

*Myers v. Bethlehem Shipbuilding Corp.*,
  303 U.S. 41 (1938)........................................................59, 60
*NAACP v. Tindell*,
  90 F.4th 419 (5th Cir.) ................................................15, 16
*Nathanson v. NLRB*,
  344 U.S. 25 (1953)..............................................................62
*Nat'l Collegiate Master Student Loan Tr.*,
  96 F.4th 599 (3d Cir. 2024)...............................................27
*Nat'l Licorice Co. v. NLRB*,
  309 U.S. 350 (1940)......................................................48, 62
*New Negro All. v. Sanitary Grocery Co.*,
  303 U.S. 552 (1938).............................................................24
*Nexstar Media, Inc. Grp. v. NLRB*,
  2024 WL 4127090 (N.D. Ohio Aug. 26, 2024)...............24, 44
*Nken v. Holder*,
  556 U.S. 418 (2009).............................................................61
*NLRB v. FLRA*,
  613 F.3d 275 (D.C. Cir. 2010)............................................40
*NLRB v. J. Weingarten, Inc.*,
  420 U.S. 251 (1975)............................................................45
*NLRB v. Jones & Laughlin Steel Corp.*,
  301 U.S. 1 (1937)........................................................ passim
*NLRB v. Sanford Home for Adults*,
  669 F.2d 35 (2d Cir. 1981) ...............................................55
*NLRB v. Seven-Up Bottling Co. of Miami*,
  344 U.S. 344 (1953)......................................................45, 46
*Phelps Dodge Corp. v. NLRB*,
  313 U.S. 177 (1941)............................................................45
*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
  734 F.3d 406 (5th Cir. 2013)..............................................62
*Petroleum Expl. Inc. v. Pub. Serv. Comm'n*,
  304 U.S. 209 (1938)............................................................60
*Renegotiation Bd. v. Bannercraft Clothing Co.*,
  415 U.S. 1 (1974)................................................................60
*Rest. L. Ctr. v. U.S. Dep't of Lab.*,
  66 F.4th 593 (5th Cir. 2023) ..............................................16
*Richmond Hosiery Mills v. Camp*,
  74 F.2d 200 (5th Cir. 1934)..........................................56, 61

*Rollins v. Home Depot USA,*
  8 F.4th 393 (5th Cir. 2021) ...................................................... 17
*Ruhrgas AG v. Marathon Oil Co.,*
  526 U.S. 574 (1999) .............................................................. 19
*Sampson v. Murray,*
  415 U.S. 61 (1974) ............................................................... 60
*Schlesinger v. Reservists Comm. to Stop the War,*
  418 U.S. 208 (1974) ............................................................. 34
*Seila Law LLC v. Consumer Financial Protection Bureau,*
  591 U.S. 197 (2020) ....................................................... passim
*Shanks v. City of Dallas,*
  752 F.2d 1092 (5th Cir. 1985) ......................................... 13, 15
*Siegel v. LePore,*
  234 F.3d 1163 (11th Cir. 2000) ............................................. 56
*Silver Star Enters., Inc. v. M/V Saramacca,*
  19 F.3d 1008 (5th Cir. 1994) ................................................. 17
*Space Exp. Tech. Corp. v. NLRB,*
  2024 WL 3512082 (W.D. Tex. July 23, 2024) ...................... 34
*Spike Enter., Inc.,*
  373 NLRB No. 41 (Apr. 10, 2024) ........................................ 46
*State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.,*
  108 F.4th 194 (3d Cir. 2024) ................................................ 56
*Tex. Alliance for Ret. Ams. v. Hughes,*
  976 F.3d 564 (5th Cir. 2020) ................................................ 62
*Thryv, Inc.,*
  372 NLRB No. 22 (Dec. 13, 2022) ............................ 44, 49, 50
*Thryv, Inc. v. NLRB,*
  102 F.4th 727 (5th Cir. 2024) ............................................... 44
*Ukiah Adventist Hosp. v. FTC,*
  981 F.2d 543 (D.C. Cir. 1992) .............................................. 18
*United States v. Texas,*
  144 S. Ct. 797 (2024) .......................................................... 15
*Va. Elec. & Power Co. v. NLRB,*
  319 U.S. 533 (1943) ............................................................. 48
*Valentine v. Collier,*
  956 F.3d 797 (5th Cir. 2020) ................................................ 62
*Wenner v. Tex. Lottery Comm'n,*
  123 F.3d 321 (5th Cir. 1997) ................................................ 35

*Wheeler v. Wexford Health Sources, Inc.*,
  689 F.3d 680 (7th Cir. 2012)...................................................56
*White v. Carlucci*,
  862 F.2d 1209 (5th Cir. 1989)..................................11, 22, 55
*Wiener v. United States*,
  357 U.S. 349 (1958).................................................................37
*Wiley v. Texas State Univ.*,
  2019 WL 317247 (W.D. Tex. Jan. 24, 2019) ........................58
*Williams v. Pennsylvania*,
  579 U.S. 1 (2016)......................................................................53
*Wilson v. Off. of Violent Sex Offender Mgmt.*,
  584 F. App'x 210 (5th Cir. 2014) ..........................................22
*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008)................................................10, 22, 25, 58
*Withrow v. Larkin*,
  421 U.S. 35 (1975)............................................................52, 54
*YAPP USA Auto. Sys. v. NLRB*,
  2024 WL 4119058 (E.D. Mich. Sept. 9, 2024)............34, 42, 46

Statutes

5 U.S.C. § 7521(a) ...........................................................................5
15 U.S.C. §45(b) .............................................................................53
15 U.S.C. § 53(b) ............................................................................41
15 U.S.C. § 2064(g) ........................................................................41
28 U.S.C. § 1292(a)(1)......................................................................1
28 U.S.C. § 1331........................................................................ passim
28 U.S.C. § 1391...............................................................19, 20, 21
28 U.S.C. § 1404(a) ........................................................................22
28 U.S.C. § 1406(a) ................................................................. passim
29 U.S.C. § 101, 104, 107, 113............................................2, 23, 24
29 U.S.C. § 151..................................................................................3
29 U.S.C. § 153(a) ................................................................... passim
29 U.S.C. § 157..................................................................................3
29 U.S.C. § 159..................................................................................4
29 U.S.C. § 160.......................................................................... passim
29 U.S.C. § 166................................................................................32

Rules

Fed. R. App. P. 4(a) ................................................... 17

Other Authorities

H.R. Rep. No. 80-245 .................................................. 63

14D Fed. Prac. & Proc. § 3806 ........................................ 21

2 The Developing Labor Law: The Board, the Courts, and the National Labor Relations Act ch. 31.III.B .......................................... 40

*The Three Permissions: Presidential Removal and the Statutory Limits of Agency Independence,*
121 Colum. L. Rev. 1 (2021) ................................................ 42

## COUNTERSTATEMENT OF JURISDICTION

This Court lacks appellate jurisdiction under 28 U.S.C. § 1292(a)(1). Plaintiff-Appellant Space Exploration Technology Corp. ("SpaceX")'s theory that the district court "effectively denied" its requested preliminary injunction hinges on SpaceX's unilateral imposition of a decisional timeline on that court—a timeline so artificial that SpaceX itself didn't even abide by it when it noticed this appeal. And if appellate jurisdiction of an effective denial existed, it would not extend to deciding the injunction in the first instance. Nor would it reach the interlocutory transfer order, ROA.1025-29,[1] that SpaceX attempts to tie to this appeal, as that order did not merge into any "effective denial" of the injunction.

The district court has subject-matter jurisdiction over Counts I and II of the complaint in the matter below (involving the tenure protections of National Labor Relations Board administrative law judges and Board members, respectively) under 28 U.S.C. § 1331, pursuant to the Supreme Court's holding in *Axon Enterprise, Inc. v.*

---

[1] "ROA" refers to the Electronic Record on Appeal prepared by the district court. "Br." refers to SpaceX's opening brief. "ECF" refers to the docket in the instant appeal.

*FTC*, 598 U.S. 175 (2023), because those counts raise structural challenges to the agency's power to decide cases in "all or a broad swath of its work." *Id.* at 189. Count III (involving whether particular administrative remedies require a jury trial) and Count IV (involving an allegedly unconstitutional combination of prosecutorial and adjudicative functions) raise specific challenges arising from the facts of this case, not structural challenges. District court jurisdiction over Counts III and IV is thus barred by Section 10(f) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(f), which channels such arguments to the courts of appeals upon review of a final order of the Board. Whether or not the district court had subject-matter jurisdiction over any claim, it was jurisdictionally barred by statute from issuing injunctive relief because the case involves and grows out of a labor dispute. 29 U.S.C. § 101, 104, 107.

## COUNTERSTATEMENT OF ISSUES

1.    Has SpaceX demonstrated a serious consequence requiring the district court to decide its injunction motion prior to SpaceX's unilaterally declared deadline and, if so, may this Court decide the motion in the first instance?

2. If this Court has jurisdiction, does it extend to the district court's transfer decision? If so, is transfer supported by the record?

3. Can SpaceX meet the demanding burden required to warrant a preliminary injunction? And, to the extent SpaceX raises non-structural challenges related to events in a particular agency proceeding, did the district court have jurisdiction to consider them as part of that burden?

## COUNTERSTATEMENT OF THE CASE

### I. Structure and Functions of the NLRB

The National Labor Relations Board ("NLRB")[2] is the exclusive federal agency designated to protect employee rights under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151, *et seq.*, to form and join unions, bargain collectively, and engage in concerted activity for mutual aid and protection, or to refrain from such activities. 29 U.S.C. § 157. The five-member Board is the sole statutory authority to adjudicate allegations that an employer or union has committed an unfair labor practice ("ULP"). *Id.* § 160. Such allegations arise from charges filed by

---

[2] References to "the NLRB" indicate the agency as a whole. References to "the Board" indicate the five-member adjudicative body.

members of the public; formal proceedings do not commence unless and until the NLRB's General Counsel,[3] or her delegate, finds merit to the charge and issues complaint, *id.* § 160(b), usually accompanied by a notice of hearing before an administrative law judge (ALJ).

This administrative process is the exclusive mechanism provided by Congress to enforce most of the NLRA's proscriptions against unfair labor practices; employees, unions, and employers may not bring their own private actions to enjoin unfair labor practices.

The five-seat Board issues final agency decisions in ULP cases under Section 10(c) of the NLRA (29 U.S.C. § 160(c)), conducts and certifies the outcome of union-representation elections under Section 9 (*id.* § 159), and promulgates rules and regulations under Section 6 (*id.* § 156). Its members are appointed by the President with the advice and consent of the Senate. 29 U.S.C. § 153(a). Board members serve five-year, staggered terms, and may only be removed "for neglect of duty or

---

[3] The General Counsel serves at the pleasure of the President, *Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 445 (5th Cir. 2022), and exercises "general supervision over all attorneys employed by the Board (other than [ALJs] and legal assistants to Board members) and over the officers and employees in the regional offices," 29 U.S.C. § 153(d).

malfeasance in office." *Id.* The procedures for removal of ALJs, who have tenure protection, are defined by statute. 5 U.S.C. § 7521(a).

Orders of the Board are not self-enforcing. Section 10(e) of the NLRA provides that the Board must seek enforcement of its orders from an appropriate court of appeals for such orders to become enforceable as judicial injunctions. 29 U.S.C. § 160(e). Conversely, any "aggrieved person" may seek to set aside a final Board order in a court of appeals under Section 10(f) of the NLRA. *Id.* § 160(f).

## II.  Administrative Proceedings

This case stems from eight ULP charges filed by or on behalf of employees who reported to or were supervised by managers at the Hawthorne, California facility (the "Hawthorne Facility") operated by SpaceX. ROA.262 at n.16. When the action now on appeal was commenced, SpaceX's principal place of business was the Hawthorne Facility. ROA.262-63 at n.17. The ULP charges allege, among other things, that SpaceX fired the employees in response to their NLRA-protected conduct. ROA.263 at n.23. Following an investigation, the Regional Director of the NLRB's Los Angeles regional office found merit

to the ULP charges and issued an administrative complaint on January 3, 2024. ROA.263, 263 n.21.

### III. District Court and Mandamus Proceedings

On January 4, SpaceX filed a Complaint in the United States District Court for the Southern District of Texas, pressing four counts: the NLRB's ALJs (Count I) and Board members (Count II) are unconstitutionally insulated from removal; certain remedies awardable in the NLRB's adjudicative process violate the Seventh Amendment (Count III); and the NLRA's authorization of proceedings for temporary injunctive relief under Section 10(j), and the potential that the Board could authorize seeking such relief in this case, results in a combination of functions that violates the separation of powers and due process (Count IV). ROA.19-45.

On January 11, Defendants-Appellees[4] moved to transfer venue to a California district court pursuant to 28 U.S.C. § 1406(a) or, in the alternative, § 1404(a), because the Southern District of Texas was an improper and inconvenient venue. ROA.255-283. The next day, SpaceX moved for a preliminary injunction. ROA.299-421. Defendants asked

---

[4] References to "Defendants" encompass all Defendants-Appellees.

that transfer briefing be expedited, which SpaceX opposed and the district court denied. ROA.434-441, 463-479, 486-492, 496-501, 902-03.

On February 15, the district court granted transfer for lack of venue under 28 U.S.C. § 1406(a) because no substantial part of the events giving rise to the action occurred in the Southern District of Texas. The district court did not address Defendants' alternative request for transfer under § 1404(a) or SpaceX's preliminary injunction motion. ROA.1025-29.

On February 16, SpaceX petitioned this Court to reverse that transfer via an extraordinary writ of mandamus. *In re SpaceX*, No. 24-40103, Dkt. 2-2 (5th Cir. Feb. 16, 2024). A panel denied SpaceX's petition on March 5, and this Court declined to rehear the case en banc on April 17. ROA.1136-57. During that proceeding, however, the case was re-transferred from Central District of California to the district court at this Court's request. No. 24-40103, Dkt. 46-1.

Immediately after this Court denied rehearing on SpaceX's mandamus petition, SpaceX moved the district court to reconsider the transfer order, or alternatively, rule on its pending motion for

preliminary injunction before transfer. ROA.1130-1134. SpaceX did not request expedited briefing. *Id.*

On April 24, SpaceX learned that on May 2, an ALJ would be holding a teleconference in the ULP case. ECF 10-1 at 2. That underlying administrative proceeding had opened on March 5 for attorneys to enter appearances, but was immediately continued to mid-May[5] and then postponed indefinitely pending resolution of subpoena disputes. *Id.* The May 2 teleconference was aimed at resolving those disputes. *Id.* SpaceX was not expected to produce any evidence before or during that call.

SpaceX waited two days after learning of the May 2 teleconference, until after the close of business on Friday, April 26, to inform the district court of this fact. In its reply in support of reconsideration, SpaceX added a new demand, asking the district court to rule on its request for preliminary relief "no later than **May 2, 2024**" (emphasis SpaceX's). SpaceX presented no evidence that any action would be required at this teleconference, nor did it present evidence

---

[5] Administrative Law Judge's Order ("Order Postponing Hearing Dates"), Apr. 16, 2024, https://www.nlrb.gov/case/31-CA-307446.

that such participation would be impossible or ruinous. ROA.1172-84.

Defendants filed a surreply on Monday, April 29, that also addressed

SpaceX's demand for a ruling by May 2. ROA.1185-1192. On April 30,

two days *before* its own declared deadline, SpaceX filed the instant

interlocutory appeal. ROA.1193. This Court granted SpaceX's motion

for an injunction pending appeal on May 2, without explanation. ECF

40. And on May 3, this Court denied the NLRB's motion to dismiss the

appeal for lack of jurisdiction. ECF 47.

## SUMMARY OF THE ARGUMENT

This case collaterally attacks an agency proceeding with virtually

no connection to Texas. SpaceX's attack has blocked eight employees it

fired from the sole legal path to justice for alleged violations of the

NLRA: a proceeding before the NLRB.

To begin with, there is no jurisdiction to hear this appeal because

SpaceX can point to no urgent consequence that required the district

court to act on its injunction request prior to its unilaterally demanded

deadline. But even if the district court should have ruled on that

request, there is no support for SpaceX's audacious demand that this

Court do so in the first instance instead of remanding the matter for particularized findings.

Next, SpaceX tries to rope a non-appealable interlocutory transfer order into this appeal despite the fact the two issues are distinct and do not merge. In any event, that transfer decision was wholly supported by the record.

SpaceX's injunction request is doomed both because an injunction is jurisdictionally barred by an act of Congress and none of the required factors support it.[6] It cannot establish the required causation needed to state a claim for any right to relief for its officer removability claims— the Board member and ALJ tenure protections it challenges made no difference to the proceedings it complains of. And tenure protections for the leaders of any agency headed by a traditional multimember commission are presumptively valid under Supreme Court and Circuit law.

SpaceX's remaining claims are beyond the jurisdiction of the district court; they present complaints arising from the facts of a particular adjudication, which are subject to statutory exhaustion. In

---

[6] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

any event, both its Seventh Amendment and combination-of-functions claims are foreclosed by long-standing Supreme Court precedent.

SpaceX also fails to establish irreparable harm. SpaceX's constitutional claims are not of the type presumed to cause irreparable harm, and it offers no independent proof of harm that would qualify. Burdens incident to litigation—even if they may constitute injury to confer standing—are not irreparable as a matter of law. The same is true of its unsupported claims of reputational harm.

Finally, the equities and public interest here by themselves are sufficient to deny an injunction. The decree SpaceX seeks would thwart effective enforcement of a duly enacted federal statute and upend a system of industrial peace through law which has protected our nation for nearly ninety years. In so doing, it would set at naught the rights of numerous parties not before the court, most notably SpaceX's eight discharged employees.

## STANDARD OF REVIEW

Just as the decision to grant or deny a preliminary injunction "may be reversed on appeal only by a showing of abuse of discretion," *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (cleaned up), an

injunction request that was purportedly effectively denied is reviewed under the same standard. *See Clarke v. CFTC*, 74 F.4th 627, 640 (5th Cir. 2023).

## ARGUMENT

### I. This appeal is not properly before this Court because there was no effective denial of SpaceX's injunction request.

SpaceX argues that its preliminary injunction request was denied because the court below did not act on the timeline it demanded. But "appeal cannot be achieved simply by asserting that the trial court has failed to act as promptly as wished by a party seeking an injunction." *In re Fort Worth Chamber of Com.*, 100 F.4th 528, 535 (5th Cir. 2024) (cleaned up). Here it's even worse than that; SpaceX's notice of appeal was filed *two days before* its arbitrary unilateral deadline. ROA.1193-98.

As the Supreme Court held in *Carson v. American Brands, Inc.*, 450 U.S. 79 (1981), a case involving a district court's effective refusal to enter a consent decree, appeals challenging the "practical effect of refusing an injunction" lie only where a litigant can show "serious, perhaps irreparable, consequence," and judicial inaction can only be "effectually challenged" by immediate appeal. *Id.* at 84. That strict

standard is limited to truly exigent circumstances and reflects Congress's judgment that such appeals are a "limited exception to the final-judgment rule." *Id.* As this Court has elaborated, a district court's failure to act must have a "direct impact on the merits of the controversy." *Shanks v. City of Dallas*, 752 F.2d 1092, 1095 (5th Cir. 1985). Put differently, "[t]here must be a legitimate basis for the urgency." *Fort Worth Chamber,* 100 F.4th at 535.

Any claim of urgency in this case is belied by SpaceX's own actions. This appeal was initiated when SpaceX moved for reconsideration of the district court's transfer decision, or alternatively, a ruling on its pending preliminary injunction motion prior to transfer—on the heels of two months of unsuccessful attempts to get this Court to reverse the transfer decision by way of extraordinary writ. SpaceX did not request expedited briefing or suggest there was any urgency in its reconsideration motion to the district court. ROA.1130-34. It first did so *in a reply* in support of that motion, asking the district court to rule on its injunction request "no later than **May 2, 2024**" (emphasis in original)—less than a week later. ROA.1172-84. As noted above, the alleged "urgency" was a teleconference. SpaceX had notice of

that teleconference two days before it presented its unilateral deadline to the district court, but still did not invoke that court's emergency procedures or seek a temporary restraining order. *Id.* In other words, the only emergency was that the case might be properly transferred.

SpaceX failed to establish that its participation in the teleconference would be impossible, impracticable, or ruinous for the company. It simply asserted, *ipse dixit*, that any administrative action of any kind would inherently impose "irreparable constitutional injuries." ROA.1173. SpaceX's spectral showing is at war with the requirement of a "serious, perhaps irreparable, consequence," which can only be "effectually challenged" by immediate appeal. *Carson*, 450 U.S. at 84.

Notably, SpaceX had previously participated in two such teleconferences with the ALJ—acting as a special master overseeing document production [ROA.990; ECF 30 at 5]—and it points to no serious, much less irreparable, consequence as a result of those, or for that matter any potential injury from participating in a third. SpaceX made no suggestion that the district court was incapable of granting relief before SpaceX would be required to present evidence or witness

testimony—so there can be no argument that district court delay somehow caused a "direct impact on the merits of the controversy." *Shanks*, 752 F.2d at 1095.[7] Plaintiffs "cannot simply say they need an expedited ruling and then appeal by claiming effective denial when they don't get it on their preferred timeline." *Fort Worth Chamber*, 100 F.4th at 535. There was therefore no legitimate basis for SpaceX to impose a May 2 deadline on the district court (in a reply brief no less), and no justification for noticing an appeal two days prior to its own claimed deadline.[8]

SpaceX's continued attempts at piecemeal appellate review should be rejected. But if this Court believes an injunction was effectively denied, this Court should not accept SpaceX's immodest invitation to decide a question jurisdictionally assigned to be heard and decided in

_____

[7] Nor does mere participation in an administrative proceeding constitute "irreparable harm." *See* Section III.C.4, below.

[8] *NAACP v. Tindell*, 90 F.4th 419, 422 (5th Cir.), *withdrawn and superseded*, 95 F.4th 212 (5th Cir. 2024), cited by SpaceX [Br. 64] does not help. Administrative stays like the one issued there "do not typically reflect the court's consideration of the merits of the stay application." *United States v. Texas*, 144 S. Ct. 797, 798 (2024). And this Court never reached the question of "effective denial" in precedential fashion because the district court there, after some initial procedural confusion, expressly denied Plaintiffs' motion. *Id.* at 422.

the first instance by a trial court. All courts must prevent "unauthorized extension or reduction of jurisdiction, direct or indirect, [from] occur[ring] in the federal system." *Baltimore Contractors v. Bodinger*, 348 U.S. 176, 181 (1955), *overruled on other grounds by Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988). Because this is a "court of review, not first view," *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023) (citation omitted), the matter should be remanded to allow the district court to make particularized findings. *See Tindell*, 90 F.4th at 422 (district court directed to issue final appealable order); *Chamber of Com. of U.S. v. CFPB*, No. 24-10248, Unpublished Order, Doc. 105-1 (5th Cir. Apr. 30, 2024) (citing *Direct Biologics, LLC v. McQueen*, 63 F.4th 1015, 1023-24 (5th Cir. 2023)).

## II. The district court's transfer determination is not properly before this Court and, in any event, was proper.

### A. *This Court lacks appellate jurisdiction over the transfer decision because it is not inextricably intertwined with an appealable order.*

SpaceX attempts to obtain review of a non-appealable interlocutory transfer decision by stapling it to its appeal. Br. 52-54. But as the appellant, SpaceX bears the burden of establishing this Court's appellate jurisdiction over the venue order. *Acoustic Sys., Inc. v.*

*Wenger Corp.*, 207 F.3d 287, 289 (5th Cir. 2000). By failing to present any argument supporting jurisdiction in its opening brief, it has forfeited any such claim. *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021).

For the reasons stated in Section I, above, this Court lacks jurisdiction over any part of this case. But even if appeal of an "effective denial" of an injunction could be had here, the transfer decision did not merge into that issue.[9] The rule is strict; pendent appellate jurisdiction "is not to be used for the appeal of normally unappealable interlocutory orders that happen to be related, even closely related, to the appealable order." *Silver Star Enters., Inc. v. M/V Saramacca*, 19 F.3d 1008, 1014 (5th Cir. 1994).

In the injunction context, transfer orders are not appealable; the sole exception "is a narrow one" where the transfer decision *itself decides* the "substantive relief sought in the injunction." *Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*, 434 F.3d 320,

---

[9] Consequently, any appeal of the transfer decision would also be untimely. Fed. R. App. P. 4(a).

325-26 (5th Cir. 2005).[10] A transfer order which merely "'identifi[es] the proper court'" is not "inextricably bound up with" an injunction. *Id.*, 434 F.3d at 326 & n.23 (citing *Ukiah Adventist Hosp. v. FTC*, 981 F.2d 543, 548 (D.C. Cir. 1992)). Where, as here, the two issues are capable of being "resolved without reference to each other[,]" they do not merge. *Id.*, 434 F.3d at 326 & n.22 (citing *Jones v. InfoCure Corp.*, 310 F.3d 529, 537 (7th Cir. 2002)). Here, the only reason the Central District of California could not have granted or denied injunctive relief in this case is that SpaceX has fought to keep this case away from it.[11]

Even setting those legal issues aside, there was no merger here. The transfer decision below does not address injunctive relief. ROA.1025-29. And the district court's "denial" of relief—if denial there was—could only be said to be because it did not find extraordinary relief

---

[10] Thus, where a party has moved for an anti-suit injunction preventing litigation in another forum, an order transferring litigation to that forum is inherently inconsistent with, and therefore denies, that motion. *Midwest Motor Exp., Inc. v. Cent. States Se.*, 70 F.3d 1014, 1016 (8th Cir. 1995).

[11] If this Court were to accept SpaceX's claim [Br. 52] that a district court may issue preliminary injunctive relief even after determining that venue is improper, that would be all the more reason to find that the issues do not merge.

warranted on SpaceX's timeline.[12] The district court never entangled the two issues by stating that it would grant injunctive relief but for lack of venue. Its actions on venue and on injunctive relief proceeded on entirely non-intersecting tracks.

### B. *The district court's venue determination was correct and supported by the record.*

Although this Court has no appellate jurisdiction to reach the issue, the district court applied the correct legal standards governing transfer under 28 U.S.C. § 1406(a). SpaceX "ha[d] the burden of demonstrating that . . . venue is proper." ROA.1026 (citing, e.g., *Graham v. Dyncorp Intl, Inc.*, 973 F. Supp. 2d 698, 700 (S.D. Tex. 2013)). This turned on whether "a substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of Texas. *Id.* (citing 28 U.S.C. § 1391(e)(l)). The district court rightly

---

[12] While other courts have reviewed venue determinations that had implicitly been relied upon to *grant* an injunction, *Maybelline Co. v. Noxell Corp.*, 813 F.2d 901, 903, n.1 (8th Cir. 1987), that would not satisfy the high standard for merger set forth in *Silver Star* and *Harvey Specialty*, above. More importantly, *Maybelline*'s logic does not work in reverse. Even if the district court had ruled on SpaceX's motion for preliminary injunction directly, it could have denied that request on the merits without mentioning venue. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999).

concluded that "the nexus of facts is heavily focused" in the Central District of California. ROA.1027.

The district court then found SpaceX's facts supporting venue were "incidental," "insubstantial in number," "far less significant than those occurring in California," and did "not comprise a substantial part of the events giving rise to" SpaceX's district court claim. ROA.1028. The court found SpaceX's claims of disruption in Texas and an email sent by SpaceX's COO from a *different* Texas district were "incidental," representing "only a small part" of relevant events. ROA.1027-28. The court also concluded that remedies sought in the NLRB's proceeding and logistical demands of that proceeding would "not show any inherent connection to the Southern District of Texas" and would almost certainly "have far more relevance" to the Hawthorne facility. ROA.1028.

SpaceX insists on a reading of 28 U.S.C. § 1391(e)(l)(B) that would effectively erase "substantial" from that short provision. Br. 55-59. But statutes should be construed to "render every word operative" and not "make some idle or nugatory." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012). The reading

SpaceX advances would essentially create a general venue statute wherever a party had an office or some minimal event took place—which is contrary to the congressional intent expressed in the statute.

SpaceX's argument that the district court erroneously applied a "most" substantial test is meritless. The district court explicitly stated that a transfer decision is not based on a "best" venue standard. ROA.1026. It did not refer to "most substantial" events or a "most substantial" standard. *Contra* Br. 56. To the contrary, the district court found all Texas-based connections cited by SpaceX "insubstantial" or "incidental." ROA.1026-28.

The district court properly considered the totality of events giving rise to SpaceX's claims. *See Broker's Home, LLC v. Trans Union, LLC*, No. 07-846-JJB, 2008 WL 11350295, at *1 & n.4 (M.D. La. 2008) (in interpreting 28 U.S.C. § 1391 and 28 U.S.C. § 1406(a), courts should construe substantiality "in relation to totality of events"); *accord Andrade v. Chojnacki*, 934 F. Supp. 817, 827 n.18 (S.D. Tex. 1996); *see also* 14D Wright & Miller, Fed. Prac. & Proc. 3806 n.10 (only those acts or omissions with substantial, rather than tangential, connections to plaintiff's claims can establish venue). Nor did it err in finding that the

overwhelming majority of operative events occurred in California. *See, e.g.*, *Maysaroh v. Am. Arab Commc'ns & Translation Ctr., LLC*, 51 F. Supp. 3d 88, 93-95 (D.D.C. 2014) (transferring case under 28 U.S.C. § 1406(a) where "the overwhelming majority of events" occurred in another district). SpaceX provides no basis to reweigh the evidence or disturb the trial court's careful analysis.[13]

### III.  SpaceX fails to meet the high bar for a preliminary injunction.

A plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. All four requirements must be met. *See Wilson v. Off. of Violent Sex Offender Mgmt.*, 584 F. App'x 210, 212 (5th Cir. 2014) (mem.). Irreparable harm must "without question" be satisfied by "independent proof." *White,* 862 F.2d at 1211. And "[a] preliminary injunction is an extraordinary and drastic remedy" that

---

[13] The NLRB also sought transfer under 28 U.S.C. § 1404(a) because factors of convenience and justice, including the preemptive nature of the suit, supported transfer. ROA.267-71. That issue is not presented in this appeal and no party asserts that it is within this Court's appellate jurisdiction.

should "never [be] awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008).

> ### A. Congress has jurisdictionally barred injunctive remedies in cases growing out of labor disputes.

Absent a specific exception, Congress has jurisdictionally barred all "court[s] of the United States" from issuing injunctions "in any case involving or growing out of a labor dispute." 29 U.S.C. § 107; *see id.* § 101 *et seq.* (Norris-LaGuardia Act); *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 253 (1970).[14] This case unquestionably "grows out of" a labor dispute, which includes "any controversy concerning terms or conditions of employment." 29 U.S.C. § 113. Norris-LaGuardia's scope is clear, broad, and admits no non-statutory exception. *See Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n,* 457 U.S. 702, 711 (1982).[15]

---

[14] SpaceX claims Defendants raised this issue for the first time in reconsideration briefing, Br. 61, but it was noted months earlier. ROA.927, n.85; 1187, n.1. In any event, the requirements of the Norris-LaGuardia Act are jurisdictional, 29 U.S.C. § 101, and not subject to forfeiture. *See Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1297 (5th Cir. 1985).

[15] *Axon* does not affect Norris-LaGuardia's explicit jurisdictional bar, as *Axon*'s reasoning is limited to implicit bars. *See, e.g.*, *Moats v. Nat'l Credit Union Admin. Board*, No. 3:23-cv-147, 2024 WL 1724271, at *2-4

SpaceX's efforts to limit the law's reach, despite its plain meaning, [Br. 62] fail. *See Nexstar Media, Inc. Grp. v. NLRB*, --- F. Supp. 3d ---, No. 4:24-cv-01415-BYP, 2024 WL 4127090, at *5 (N.D. Ohio Aug. 26, 2024) (court "unpersuaded" by similar arguments as suit was "intended to divert the NLRB's ability to administratively resolve the dispute initiated by [a union on behalf of employees]"). Labor disputes are broadly defined and do not require a union. 29 U.S.C. § 113; *see New Negro All. v. Sanitary Grocery Co.*, 303 U.S. 552, 560 (1938).

SpaceX also claims no hearing is required here under Norris-LaGuardia because the evidence is undisputed. Br. 62. But here, the case was transferred before completion of briefing where objections to affidavit evidence could have been lodged, and before the NLRB had a chance to offer evidence of its own, most notably the testimony of impacted employees. In any event, 29 U.S.C. § 107 makes unambiguously clear that only "hearing the testimony of witnesses in open court" will do; submission of affidavits is facially inadequate.

---

(S.D. Tex. Apr. 9, 2024), *appeal docketed*, No. 24-40259 (5th Cir. Apr. 22, 2024).

Accordingly, SpaceX has not met its burden of establishing any exception to Norris-La Guardia's jurisdictional limitations on the power to issue injunctive relief.

## B.   *SpaceX is unlikely to succeed on any of its claims.*

Most of SpaceX's brief [Br. 13-52] is spent asking this Court to sit as one of first view and grant it injunctive relief. For the reasons just explained, that would be highly inappropriate, but even on their own terms, SpaceX's arguments fail to satisfy *Winter*'s stringent requirements. 555 U.S. at 20.

> 1.   No relief—and certainly not an injunction—can issue here, because SpaceX cannot show that the challenged removability restrictions had a real-world impact on this case.

SpaceX's first two challenges seek an injunction based on the bare existence of statutes restricting the removal of administrative law judges and Board members. The Supreme Court's and this Court's precedent renders these challenges fatally flawed.

A plaintiff challenging a removal restriction is entitled to relief only when the challenged restriction "inflict[ed] compensable harm" on

the plaintiff. *Collins v. Yellen*, 594 U.S. 220, 259 (2021).[16] Unlike an

unlawful appointment, an unconstitutional removal provision "does not

strip" the officer "of the power to undertake the other responsibilities of

his office." *Collins*, 594 U.S. at 258 n.23. In other words, the "mere

existence of an unconstitutional removal provision . . . generally does

not automatically taint Government action by an official unlawfully

insulated." *Id.* at 267 (Thomas, J., concurring).

Accordingly, to obtain relief based on an allegedly invalid removal

restriction, the plaintiff must show that the provision actually

prejudiced the President's control of the administrative proceeding—for

example, by identifying a public statement in which the President

"express[es] displeasure with actions taken by" the unlawfully insulated

official and "assert[s] that he would remove" that official "if the statute

did not stand in the way." *Collins*, 594 U.S. at 259-60. Accordingly, this

Court and every other circuit to have considered claims based on the

---

[16] We refer to this concept as "causal harm" to avoid the implication
that non-compensatory relief could be awarded; as we will show, *no*
relief may be granted here.

alleged unconstitutionality of tenure protections has demanded a

showing of causal harm.[17]

2. SpaceX fails to show causal harm.

SpaceX presents zero evidence that the Board Members' or ALJs'

removal protections have caused, or would cause, any prejudice to it.

This Court, consistent with *Collins*, has held that there are "three

requisites for proving harm: (1) a substantiated desire by the President

to remove the unconstitutionally insulated actor, (2) a perceived

inability to remove the actor due to the infirm provision, and (3) a nexus

between the desire to remove and the challenged actions taken by the

insulated actor." *CFSA*, 51 F.4th at 632. Below, SpaceX did not even

---

[17] *Community Fin. Servs. Ass'n of Am. v. CFPB* ("*CFSA*"), 51 F.4th 616, 631-33 (5th Cir. 2022), *denying cert. to review this holding*, 143 S. Ct. 981 (2023), *and rev'd on other grounds*, 601 U.S. 416 (2024), *original op. reinstated in relevant part*, 104 F.4th 930 (5th Cir. 2024) (mem.); *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 765 (10th Cir. 2024); *Bhatti v. Fed. Hous. Fin. Agency,* 97 F.4th 556, 561 (8th Cir. 2024); *CFPB v. Nat'l Collegiate Master Student Loan Tr.*, 96 F.4th 599, 613-16 (3d Cir. 2024), *petition for cert. filed*, No. 24-185 (Aug. 16, 2024); *K&R Contractors, LLC v. Keene*, 86 F.4th 135, 150 (4th Cir. 2023); *CFPB v. L. Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 179-81 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2579 (2024); *Calcutt v. FDIC*, 37 F.4th 293 (6th Cir. 2022), *rev'd per curiam on other grounds*, 598 U.S. 623 (2023); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021).

plead—much less introduce—evidence that could satisfy any of these requirements.

SpaceX suggests that it need not show causal harm because it does not seek to invalidate "*past* agency action." Br. 46-47. But *Collins*'s causal-harm holding "did not rest on a distinction between prospective and retrospective relief." *CFSA*, 51 F.4th at 631; *accord Leachco*, 103 F.4th at 757 (agreeing with the Second, Fifth, and Sixth Circuits). Causal harm is therefore a required element of any officer removability claim, rather than a question of remedy. *See Calcutt*, 37 F.4th at 316 ("The *Collins* inquiry focuses on whether a 'harm' occurred that would create an entitlement to a remedy, rather than the nature of the remedy, and our determination as to whether an unconstitutional removal protection 'inflicted harm' remains the same whether the petitioner seeks retrospective or prospective relief."); *CFSA*, 51 F.4th at 631 (citing *Calcutt*'s analysis of *Collins* approvingly); *Crystal Moroney*, 63 F.4th at 180-81 (applying *Collins* where the plaintiff, the CFPB, requested prospective relief—enforcement of a civil investigative demand); *accord Free Enter. Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477, 508-11 (2010) (rejecting prospective injunctive

relief against agency component headed by officials with invalid

removal protections).

It is for this reason that the Tenth Circuit recently affirmed the

denial of a preliminary injunction sought on identical grounds. *See*

*Leachco*, 103 F.4th at 765. The *Leachco* plaintiff could identify nothing

about the proceeding that would be different if the challenged removal

restrictions did not exist. *Id.* at 757. Nor can SpaceX.

> 3. A "here-and-now" injury sufficient for jurisdictional purposes under *Axon* does not state a claim or confer a right to relief.

Rather than grapple with squarely controlling authority

foreclosing its removability claims, SpaceX relies upon inapposite

caselaw rooted in the doctrine of judicial preclusion (sometimes

described as channeling or jurisdictional exhaustion) Br. 46. SpaceX

posits that the Supreme Court's finding in *Axon* that a proceeding

before an unconstitutional tribunal "cannot be undone" dispensed with

*Collins*'s causal harm requirement. 598 U.S. 175, 191 (2023).[18] But as

---

[18] SpaceX's statement that *Axon* "held that being subjected to unconstitutionally structured agency proceedings is an irreparable constitutional injury" [Br. 45] is categorically incorrect.
Equally inapposite is this Court's *en banc* decision in *Cochran v. SEC*,

the Fifth Circuit recently explained, "*Axon* is a case about the original jurisdiction of federal courts under 28 U.S.C. [§]1331." *FTC v. U.S. Anesthesia Partners, Inc.*, No. 24-20270, slip op. at 7 (5th Cir. Aug. 15, 2024) (order granting motion to dismiss appeal). Put differently, *Axon* addressed only whether a district court could consider a constitutional challenge to an agency's structure where the normal course would allow only for judicial review of final agency action; it opens the courthouse door, but it does not dispense with a plaintiff's burden to show irreparable harm when seeking an injunction, nor establish any right to relief.

SpaceX's theory thus requires finding that *Axon*'s holding impliedly overruled *Collins'*s unequivocal causal harm requirement of just two years prior. But this Court is not permitted to make this leap. Even if a Supreme Court precedent directly on point "appears to rest on

20 F.4th 194, 210 and n.14 (5th Cir. 2021) [Br. 47], which likewise went no further than recognizing a plaintiff's right to bring a pre-enforcement collateral challenge, and disavowed any finding that plaintiffs had suffered irreparable harm or that injunctive relief was appropriate. And this Court's holding in *Jarkesy v. SEC* explicitly declined to find that an ALJ's unconstitutional removal protections alone afforded a right to relief. 34 F.4th 446, 463 n.17 (5th Cir. 2022), *aff'd on other grounds*, 144 S. Ct. 2117 (2024).

reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls." *Agostini v. Felton*, 521 U.S. 203, 237 (1997).

To be sure, *Axon* observes that a constitutionally illegitimate proceeding produces a "here-and-now injury." But *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197, 212 (2020)—the origin of the "here-and-now injury" language—makes clear that such an injury suffices only to establish a removal-restrictions challenger's standing. *See Leachco*, 103 F.4th at 759; *see also id.* at 765 ("The Supreme Court's jurisdictional analysis in *Axon* did not change the relief analysis required under *Collins*."). In fact, the Court in *Collins* specifically disavowed SpaceX's theory here, explaining that "[w]hat we said about standing in *Seila Law* should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction." 594 U.S. at 259 n.24. Nothing in *Axon* calls this directly applicable holding into question.

4. Preliminary injunctive relief is unavailable where severance can resolve the threat of appearing before an unconstitutionally insulated adjudicator.

Beyond SpaceX's failure to allege causal harm, its removal claims also fail because severing any statutory removal restrictions found unconstitutional would remedy the alleged violations. There is "a strong presumption of severability," under which courts "invalidate[] and sever[] unconstitutional provisions from the remainder of the law rather than raz[e] whole statutes or Acts of Congress." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 625, 627 (2020); *see also Free Enter. Fund*, 561 U.S. at 508; *Seila Law*, 591 U.S. at 234. Generally, statutes are severable if "the remainder of the law is capable of functioning independently and thus would be fully operative as a law." *Barr*, 591 U.S. at 630. And "it is fairly unusual for the remainder of a law not to be operative." *Id.* at 628. Should this Court find either ALJ or Board member removal protections to be unconstitutional, it could sever the relevant statutes' offending portions.

Severance would be consistent with the NLRA's explicit severability provision, 29 U.S.C. § 166, and with how the Supreme Court has repeatedly dealt with unlawful removal protections. *See*

*Collins*, 594 U.S. at 257-60; *Seila Law*, 591 U.S. at 232-38; *Free Enter. Fund*, 561 U.S. at 508-10.[19] In *Free Enterprise Fund*, the Court found the Public Company Accounting Oversight Board's ("PCAOB") removal protections unconstitutional, but it rejected the plaintiffs' attempt to enjoin the PCAOB's operations and instead severed the offending statutory provisions, leaving the members of the PCAOB freely subject to removal by the Securities and Exchange Commission. 561 U.S. at 508, 513. Likewise, in *Seila Law*, the Court found the removal protections for the Director of the Consumer Financial Protection Bureau (CFPB) unconstitutional. 591 U.S. at 232. But it did not limit any of the CFPB's operations, either generally or as exercised in that particular case. Instead, it severed the Director's removal protection, noting that "[t]he provisions of the [statute] bearing on the CFPB's structure and duties remain fully operative without the offending tenure restriction" and that "[t]hose provisions are capable of functioning independently." *Id.* at 235.

---

[19] It is not necessary for this Court to decide now precisely how severance would operate at final judgment to affirm here.

Where severance would be the appropriate final remedy, a party is not entitled to an injunction (preliminary or otherwise) against administrative proceedings. *See, e.g.*, *Free Enter. Fund*, 561 U.S. at 513; *see also Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 222 (1974) (when "the relief sought produces a confrontation with one of the coordinate branches of the Government," the "framing of relief" may be "no broader than required" to address any "concrete injury"). This outcome is commanded by law as well as logic—if the only ultimate remedy SpaceX can obtain is severance, then issuing an injunction now affords SpaceX a greater remedy than it would obtain at final judgment, incentivizing not only copycat lawsuits but also a plaintiff's avoidance of a final judgment that would cause the preliminary injunction to expire.

SpaceX's cited authorities are inapposite. Br. 60.[20] SpaceX has not established that, absent preliminary relief, it is likely to "suffer a

---

[20] Two district court decisions have granted injunctions notwithstanding the possibility of severance. *Energy Transfer, LP v. NLRB*, --- F. Supp. 3d. ---, No. 3:24-cv-198, 2024 WL 3571494, at *4; *Space Expl. Techs. Corp. v. NLRB*, --- F. Supp. 3d. ---, No. W-24-CV-00203-ADA, 2024 WL 3512082, at *5-6. But the recent decision in *YAPP USA Auto. Sys., Inc. v. NLRB* analyzed those decisions and found them wholly unpersuasive. No. 24-12173, 2024 WL 4119058, at *10 n.5 (E.D. Mich. Sept. 9, 2024).

substantial loss of business and perhaps even bankruptcy" such that "a favorable final [declaratory] judgment might as well be useless."[21] Nor will SpaceX be forced into "shutdown to avoid the risk of criminal prosecution" unless this Court enjoins the ULP proceeding.[22] The "serious administrative problems" at issue in *Mississippi Power & Light Company. v. United Gas Pipe Line Co.* are also not present here.[23]

Because the challenged removal restrictions are readily severable, and it makes no sense to give a party that would not be entitled to a permanent injunction a temporary one, injunctive relief is unavailable here.

5. NLRB ALJ tenure protections are constitutional.

SpaceX relies on *Jarkesy*, in which a split panel of this Court found removal protections for SEC ALJs unconstitutional. 34 F.4th at 463. But *Jarkesy* does not directly control—NLRB ALJs' powers are significantly more restricted in scope. *See id.* at 464 (noting that SEC

---

[21] *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975).

[22] *Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997).

[23] 760 F.2d 618, 624 (5th Cir. 1985) (determining that "refunds in a utility rate dispute are not adequate to compensate" consumers, due to processing fees and significant risk of undeliverable checks).

ALJs could "punish contemptuous conduct," and that "often their decisions are final and binding" (citing *Lucia*, 585 U.S. at 248)). SpaceX has not shown comparable authority here.

If *Jarkesy*, 34 F.4th at 463-65, does apply, this Court's rule of orderliness precludes this panel from overruling it. But Defendants preserve the argument that it should be overruled or substantially limited. The scope of the President's constitutional powers are not infringed upon here, because ALJs exercise purely adjudicative authority. *See Decker Coal*, 8 F.4th at 1133; *Leachco*, 103 F.4th at 764. The Supreme Court's decision in *Free Enterprise Fund* is therefore inapplicable to NLRB ALJs. *See Leachco*, 103 F.4th at 763-65.

But it is unnecessary for the Court to reach this constitutional issue here, since severance and causal-harm principles render SpaceX's claim for injunctive relief unlikely to succeed.

6. Board member removal protections are constitutional.

SpaceX's Article II challenge to Board member removability fares far worse on the merits than its challenge to ALJ removability. For over a century, Congress has created independent regulatory agencies led by multimember commissions. The Supreme Court has never struck down

for-cause removal protections for any multimember agency head, and this Court has recently made clear that those Supreme Court precedents remain fully binding. *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1047 (5th Cir. 2023); *Consumers' Rsch.*, 91 F.4th at 353-54.

In *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Supreme Court held that it was not "an unconstitutional interference with the executive power of the President," *id.* at 626, for Congress to make members of the Federal Trade Commission (FTC) removable only "for inefficiency, neglect of duty, or malfeasance in office." *Id.* at 620 (cleaned up). It reaffirmed and, to an extent, expanded that holding in *Wiener v. United States*, 357 U.S. 349, 356 (1958) (embracing "[t]he philosophy of *Humphrey's Executor*, in its explicit language as well as its implications" in upholding removal protections for members of the War Claims Commission).

The Supreme Court's more recent removal-protection jurisprudence has consistently reaffirmed and relied upon *Humphrey's Executor. Free Enterprise Fund* invalidated "unusually" restrictive, multilevel tenure protections for members of the PCAOB. 561 U.S. at 503. But the Court was careful to tightly cabin its holding, expressly

acknowledging that "Congress can, under certain circumstances, create independent agencies run by principal officers appointed by the President, whom the President may not remove at will but only for good cause." *Id.* at 483.

The Supreme Court's acknowledgement of the core holding of *Humphrey's Executor* is even more apparent in *Seila Law*, in which the Court struck down for-cause removal protections for the Director of the CFPB. 591 U.S. at 204. The Court noted the constitutionality of "expert agencies led by a *group* of principal officers removable by the President only for good cause." *Id.* (emphasis in original). The *Seila* Court explicitly stated that even though it was striking the Director's removal protections, its analysis "d[id] not foreclose Congress from pursuing alternative responses to the problem—for example, converting the CFPB into a multimember agency." *Id.* at 237.

Essentially for these reasons, this Court has now twice reaffirmed the continuing precedential weight of *Humphrey's Executor*. In *Illumina, Inc. v. FTC*, the challenger claimed that because the FTC's powers have grown significantly since 1935, the Supreme Court's holding in *Humphrey's Executor* no longer controls. 88 F.4th at 1047.

Not so, this Court explained—"although the FTC's powers may have changed since *Humphrey's Executor* was decided, the question of whether the FTC's authority has changed so fundamentally as to render *Humphrey's Executor* no longer binding is for the Supreme Court, not us, to answer." *Id.*

This Court subsequently upheld the for-cause removal protections of another multimember agency, the CPSC. In *Consumers' Research*, the Fifth Circuit held that *Humphrey's Executor*'s rationale extends beyond the FTC and "still protects any 'traditional independent agency headed by a multimember board.'" 91 F.4th at 352 (quoting *Seila Law*, 591 U.S. at 207). Thus, even though the CPSC "exercises substantial executive power (in the modern sense)," its structure and the commissioners' statutory removal protections, which are identical to Board members', are constitutional. *Id.* at 353-54; *accord Leachco*, 103 F.4th at 762-63.[24]

---

[24] CPSC possesses the power "to promulgate safety standards and ban hazardous products, . . . to launch administrative proceedings, issue legal and equitable relief, and [to] commence civil actions in federal courts," including actions seeking injunctive relief and even civil monetary penalties. *Consumers' Rsch.*, 91 F.4th at 346.

SpaceX reads into precedent a novel principle that an agency's principal officers cannot be protected from removal if the officers wield "substantial executive power." Br. 18. But *Consumers' Research* directly controls. The NLRB's structure fits squarely into *Humphrey's Executor*'s permission of removal protections for multimember, fixed-term boards and commissions. Because *Humphrey's Executor* remains good law, Board members' removal protections are constitutional. *Accord Consumers' Rsch.*, 91 F.4th at 356 ("*Humphrey's* does settle the question.").

Moreover, SpaceX's argument fails on its own terms. The Board is "unique" among its regulatory peers in the *limited* nature of the "executive" (as opposed to quasi-legislative and quasi-judicial) functions it carries out. *NLRB v. FLRA*, 613 F.3d 275, 281 n.* (D.C. Cir. 2010). First, the Board depends entirely on outside entities to file unfair-labor-practice charges or representation petitions before it can engage in adjudication. *See generally* 2 The Developing Labor Law: The Board, the Courts, and the National Labor Relations Act ch. 31.III.B (John E. Higgins, Jr., et al., eds., 7th ed. 2017). Second, the NLRB's politically accountable General Counsel is independent of the Board and is

ultimately responsible for all unfair-labor-practice investigations and prosecutions. *See* 29 U.S.C. § 153(d); *Exela Enter.*, 32 F.4th at 445 (President lawfully removed General Counsel without cause). These structural features contextualize the limited executive power the Board exercises in comparison to other multimember boards and commissions.[25] Viewed in this light, there are simply no grounds for concluding that Board members somehow exercise more "substantial" executive power than FTC or CPSC commissioners whose removal protections have been repeatedly upheld by the Supreme Court and various lower courts. *Contra* Br. 21-22.

Finally, SpaceX attempts to skirt *Humphrey's Executor* by claiming that Board members' removal protections are "stricter" than

---

[25] SpaceX points to 29 U.S.C. §§ 159 and 160 to claim that "NLRB members do exercise substantial executive power in the constitutional sense through their administrative, policymaking, and prosecutorial authority". Br.19. Even if the Board could be said to be exercising limited "prosecutorial" powers whenever it authorizes the General Counsel to seek temporary injunctive relief in district court under Section 10(j) of the Act, 29 U.S.C. § 160(j), pointing to that rarely used power gets SpaceX nowhere. Br. 21. FTC commissioners and CPSC commissioners, whose removal protections are indisputably valid under binding Supreme Court and Fifth Circuit precedent, have the power to authorize similar injunction petitions. *See* 15 U.S.C. § 53(b); 15 U.S.C. § 2064(g).

those at issue in that case because Board members can be removed "for neglect of duty or malfeasance in office," 29 U.S.C. § 153(a), but not inefficiency. Br. 19.

While Congress could have added "inefficiency" as an *additional* ground for Board member removal, as it did to address the specific problem of patronage hires in other offices, this further ground goes beyond what is required by the Constitution's Take Care Clause. *See YAPP*, 2024 WL 4119058, at *6 n.4 (citing Jane Manners & Lev Menand, *The Three Permissions: Presidential Removal and the Statutory Limits of Agency Independence*, 121 Colum. L. Rev. 1, 68-69, n.383 (2021) (explaining that the absence of inefficiency as a ground for removal does not unconstitutionally interfere with the President's authority)). Neglect of duty and malfeasance in office are listed as the sole grounds for removal of various other federal officers, *id.* at 69, to whom *Humphrey's Executor* applies—including the very CPSC commissioners whose removal protections this Court just upheld. *See Consumers' Rsch.*, 91 F.4th at 346 (reviewing statutory language and remarking CPSC and FTC "are twins" because commissioners of both agencies can be removed only for cause); *see also Leachco*, 103 F.4th at

762-63. Because the NLRA's removal standard appropriately accommodates the President's constitutional duty to ensure that the law is faithfully executed, this claim is unlikely to succeed.

> 7. SpaceX's Seventh Amendment claim is beyond this Court's subject-matter jurisdiction and contrary to controlling law.

SpaceX's Seventh Amendment arguments are unsupported by controlling precedent. To begin with, they do not belong in this Court; arguments about particular NLRB remedies must be brought via the appeals process from final Board orders set forth in Section 10 of the NLRA. Even assuming subject-matter jurisdiction could be established, SpaceX's claims fail on their merits. First, to implicate the Seventh Amendment, the challenged adjudication must involve a claim that is "legal in nature." *Jarkesy*, 144 S. Ct. at 2128. That designation turns on an examination of the cause of action and the remedy that cause of action provides. *Id.* at 2129. And even where the action involves a legal claim, a court must determine whether the Supreme Court's public-rights cases permit Congress to assign it to agency adjudication without a jury trial. *See Atlas Roofing Co. v. Occupational Safety Health & Rev. Comm'n*, 430 U.S. 442 (1977).

> i. *This Court has no subject-matter jurisdiction to pass upon claims that particular NLRA remedies violate the Seventh Amendment.*

SpaceX puts the cart before the horse by proceeding straight to the merits of its Seventh Amendment claim without establishing subject-matter jurisdiction. Br. 35-36. That jurisdiction is lacking here under *Axon*, which considers three overlapping issues: (1) whether "precluding district court jurisdiction" could "foreclose all meaningful judicial review"; (2) whether the challenge is "wholly collateral" to the agency's normal proceedings; and (3) whether the claim falls within the "agency's expertise." 598 U.S. at 186 (cleaned up).

SpaceX's Seventh Amendment claim rests on the possibility that a future Board order may require it to reimburse certain foreseeable losses, as part of a make-whole remedy under *Thryv, Inc.,* 372 NLRB No. 22 (Dec. 13, 2022), *enf'd in part and denied in part*, 102 F.4th 727 (5th Cir. 2024). Br. 25-27. This claim fails all three *Axon* factors. *See Nexstar Media,* 2024 WL 4127090, at *3-5.[26] First, contesting a

---

[26] *See also Blankenship v. FINRA*, No. 24-cv-3003, 2024 WL 4043442, at *2-3 (E.D. Pa. Sept. 4, 2024) (channeling plaintiff's Seventh Amendment claim through the traditional adjudicatory process would not foreclose meaningful judicial review, as those claims "depend on FINRA's

44

particular subset of remedies that *may* result at the end of a specific

administrative proceeding is not a "structural" challenge attacking the

very existence of an agency. Second, determining what remedy should

flow from NLRA violations is what the NLRB does every single day; it

presents a question of "how [the NLRB's] power [is] wielded," not the

Board's "power generally." *Axon*, 598 U.S. at 193. Entertaining such

arguments now would disregard *Axon*'s careful emphasis that there is

no "newfound enthusiasm for interlocutory review." *Id.* at 175.

Finally, SpaceX's argument is squarely aimed at "actions taken in

the agency proceedings." *Axon*, 598 U.S. at 192. The Board's power to

fashion remedies has long been recognized as a core area of Board

expertise. *See, e.g., Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 194

(1941). That "broad," "discretionary" power enables the Board to fulfill

its function by "fashioning remedies to undo the effects of violations of

the Act." *NLRB v. Seven-Up Bottling Co. of Miami*, 344 U.S. 344, 346

(1953). Congress entrusted the "responsibility to adapt the Act to

changing patterns of industrial life," *NLRB v. J. Weingarten, Inc.*, 420

---

proceedings and the interpretation of its rules," and the interpretation
and application of those rules were within agency expertise).

U.S. 251, 266 (1975), based on the Board's "enlightenment gained from experience," *Seven-Up*, 344 U.S. at 346.

Allowing this remedial issue to percolate through the administrative process is particularly appropriate where, as here, the ALJ hearing the case, or the Board on review, might determine that complaint allegations lack merit, or that the requested remedies aren't warranted—precluding any need to address the constitutional issue. *See Elgin v. Dep't of Treasury*, 567 U.S. 1, 22-23 (2012) (finding lack of subject-matter jurisdiction where "preliminary questions unique to the employment context may obviate the need to address the constitutional challenge").[27] And because the NLRA's statutory review procedure "provides a plain, adequate, and complete remedy at law[,]" SpaceX cannot obtain "extraordinary equitable relief by injunction." *Elliott v. El Paso Elec. Co.*, 88 F.2d 505, 506 (5th Cir. 1937). Accordingly, SpaceX's Seventh Amendment claim must be dismissed for lack of jurisdiction. *See YAPP*, 2024 WL 4119058, at *11-12 (finding identical Seventh

---

[27] Indeed, at least one of the remedies SpaceX gripes about—"personal apology letters to the Charging Parties" [Br. 31]—has apparently never been ordered by the Board, which has expressly declined to order a comparable remedy in several recent cases. *E.g., Spike Enter., Inc.*, 373 NLRB No. 41 (Apr. 10, 2024).

Amendment claim "likely fails all three *Axon* subject-matter jurisdiction factors").

ii.    *NLRB proceedings effectuate public rights.*

Even if this Court has subject-matter jurisdiction to hear SpaceX's jury-trial claim, the public-rights exception to the Seventh Amendment suffices to defeat it. In *SEC v. Jarkesy*, the Supreme Court specifically held that Congress could properly insulate even legal remedies from the Seventh Amendment right to a jury trial where the underlying proceeding involves "public rights." 144 S. Ct. at 2131. *Jarkesy* found this exception inapplicable because the "fraudulent conduct" statutory provisions being enforced there "derive[d] from, and are interpreted in light of, their common law counterparts." *Id.* at 2138.

But *Jarkesy* left undisturbed the Supreme Court's longstanding, directly on-point precedent holding that the Board's unfair-labor-practice proceedings, which involve rights "unknown to the common law," *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48 (1937), fall within the public-rights exception. *Jarkesy*, 144 S. Ct at 2137-38 (citing *Jones & Laughlin* and its discussion in *Atlas Roofing Co.*, 430 U.S. at 453). *Jarkesy* also cited *Curtis v. Loether*, 415 U.S. 189, 193-94 (1974),

which distinguished the unique public-rights scheme at issue in *Jones & Laughlin* from other newly created rights. 144 S. Ct at 2128.

So, contrary to SpaceX's suggestions [Br. 31-34], it is beyond dispute that NLRA rights are public, not private. *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 362 (1940) ("The proceeding authorized to be taken by the Board under the National Labor Relations Act is not for the adjudication of private rights. . . . The Board acts in a public capacity to give effect to the declared public policy of the Act[.]"); *accord Va. Elec. & Power Co. v. NLRB*, 319 U.S. 533, 543 (1943) (claims arising under the NLRA "vindicate public, not private rights"); *Entergy Miss., Inc. v. NLRB*, 810 F.3d 287, 298-99 (5th Cir. 2015) ("[W]hen the Board brings an enforcement action under the Act, it acts in the public interest, even when it obtains money damages on behalf of private persons.").

iii.     *NLRB proceedings are not legal in nature.*

Even if the public-rights exception did not apply, SpaceX still cannot establish a valid Seventh Amendment claim; the underlying ULP adjudication is not "legal in nature" as neither "the cause of action [nor] the remedy it provides" support that conclusion. *Jarkesy*, 144 S.

Ct. at 2129. A cause of action can be legal in nature if there is a "close relationship" between a statutory claim and a "common law 'ancestor.'" *Id.* at 2130 (quoting *Foster v. Wilson*, 504 F.3d 1046, 1050 (9th Cir. 2007)). But, as addressed immediately above, SpaceX's challenge wholly ignores that the NLRA claims at issue do not "arise" under common law. *See Jones & Laughlin*, 301 U.S. at 48; *Agwilines, Inc. v. NLRB*, 87 F.2d 146, 150 (5th Cir. 1936) (finding that the NLRA's substantive rights "were not only unknown, they were obnoxious to the common law.").

The inapplicability of the Seventh Amendment is further confirmed by examining the remedy—that is, the make-whole relief authorized by the Board under *Thryv* for "direct or foreseeable pecuniary harm" arising from a ULP. 372 NLRB No. 22, slip op. at 1.[28] "What determines whether a monetary remedy is legal is if it is designed to punish or deter the wrongdoer, or, on the other hand, solely

---

[28] SpaceX asserts certain nonmonetary remedies requested by the NLRB's General Counsel, such as a letter of apology and the posting and reading of a notice to employees, are "punitive." Br. at 30-31. That claim is forfeited by failure to raise it below. And regardless of whether such remedies are permitted by the NLRA, the Seventh Amendment— which asks only whether an action is a "Suit[] at common law"—has nothing to say about them.

to restore the status quo." *Jarkesy*, 144 S. Ct. at 2129 (cleaned up). There, the Court determined that the SEC's civil monetary penalties, which had the potential to far exceed any loss to victims and could have been pocketed directly by the agency (as opposed to being returned to victims), clearly were designed to deter conduct, not to make individuals whole. *Id.* at 2129-30.

The remedy recognized by the Board in *Thryv* is wholly distinct from the monetary penalties at issue in *Jarkesy*, as *Thryv* remedies serve to "standardiz[e] [the Board's] make-whole relief to expressly include the direct or foreseeable pecuniary harms suffered by affected employees . . . to more fully effectuate the make-whole purposes of the Act." 372 NLRB No. 22, slip op. at 10. In other words, the *Thryv* remedies focus entirely on the equitable goal of ensuring that the victims of ULPs are made whole. *See Jarkesy*, 144 S. Ct. at 2129 (monetary remedies can be equitable if designed "solely to 'restore the status quo.'") (cleaned up). While "the remedy [was] all but dispositive" in favor of the challenger in *Jarkesy*, *id.*, it cuts the other way here.

Because SpaceX's combined-functions claim is exclusively focused on the NLRA's Section 10(j) [Br. 37-43], it falls outside *Axon*'s jurisdictional exception, as outlined above, Section III.B.7.i. Section 10(j) injunctive relief is not sought as part of the Board's regular proceedings, and the Board has not sought such relief here.[29] And even were the Board to authorize the politically accountable, independent General Counsel to initiate such a proceeding against SpaceX, *see* above p. 41, that would hardly demonstrate that the Board "wield[s] authority unconstitutionally in all or a broad swath of its work." *Axon*, 598 U.S. at 189. *Axon* permitted a district court to exercise jurisdiction over the claim that the FTC's "combination of prosecutorial and adjudicative functions…renders *all* of its enforcement actions unconstitutional." *Id.*

---

[29] In fiscal year 2023, out of 19,869 unfair-labor-practice charges, NLRB regional offices submitted 156 cases for consideration of Section 10(j) relief; of these, the General Counsel submitted only 15 for Board authorization, which was granted 14 times, resulting in 7 petitions filed in court under Section 10(j). *NLRB Performance and Accountability Report, FY 2023,* NLRB, at 27 and 86, available at https://www.nlrb.gov/reports/agency-performance/performance-and-accountability (last visited on Sept. 16, 2024).

at 183 (emphasis added). Such a "fundamental, even existential" challenge, *id.* at 180, bears little resemblance to SpaceX's here, which is cabined to a remedy pursued in a tiny fraction of NLRB actions.

This claim in any event is foreclosed by the Supreme Court's holding in *Withrow v. Larkin*, 421 U.S. 35 (1975). There, a physician made a due process challenge to state medical board proceedings based on "charges evolving from its own investigation." *Id.* at 46. The Court found where initial and ultimate actions by the same agency had "different bases and purposes[,]" there was no "intolerably high" risk of "bias or prejudgment." *Id.* at 57-58. Cases have thus "uniformly held" that some combination of prosecutorial and adjudicative functions in a single agency does not violate due process. *Air Prods. & Chems., Inc. v. FERC*, 650 F.2d 687, 709-10 (5th Cir. 1981) (collecting cases).

Just recently, this Court rejected a challenge alleging that the FTC improperly serves as both prosecutor and judge, finding "the Supreme Court has held that administrative agencies can, and often do, investigate, prosecute, and adjudicate rights without violating due process." *Illumina*, 88 F.4th at 1047 (quoting *Withrow*, 421 U.S. at 47

(1975)).[30]  It explained that "courts cannot 'presume bias' merely from the institutional structure of an agency." *Id.*[31]

---

[30] SpaceX incorrectly implies that the FTC's members do not have "dual roles" [Br. 40], but 15 U.S.C. § 45(b), on which parts of the NLRA were modeled, expressly provides for "the Commission" to issue administrative complaints and the selfsame Commission to adjudicate them.

[31] SpaceX's reliance [Br. 38-39] on *Williams v. Pennsylvania*, 579 U.S. 1 (2016), a *death-penalty* case, is unavailing given the interests involved, the fundamental distinctions between criminal and civil cases, and the far more substantive involvement of the prosecutor. *See Meta Platforms, Inc. v. FTC*, --- F. Supp. 3d ---, No. 23-3562, 2024 WL 1121424, at *15 n.4 (D.D.C. Mar. 14, 2024) (rejecting bias argument based on *Williams* because a prosecutor approving of seeking the death penalty then sitting as appellate judge reviewing its imposition is not comparable to an agency authorizing initiation of a proceeding based on available evidence and then deciding whether to take that action after hearing from respondent), *appeal docketed*, No. 24-5054 (D.C. Cir. Mar. 15, 2024). Due process "is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). The stakes here cannot compare. And *Williams* did not purport to fundamentally reinterpret due process in a way that would overrule all prior cases.

Even further afield is SpaceX's citation to *Horne v. Polk*, 394 P.3d 651 (Ariz. 2017). Br. 39-40. In *Horne*, a special attorney general made the final agency decision to affirm her own order over an ALJ's recommendation, without a board or commission reviewing that decision. 394 P.3d at 653-55. The Board does not affirm, reverse, or even *consider* an earlier decision to seek Section 10(j) relief when it issues final decisions in cases where such relief was sought; it instead decides the merits of those cases.

*Illumina* dispenses with SpaceX's argument here. Under the NLRA, the NLRB's independent, presidentially accountable General Counsel issues and prosecutes administrative complaints, without which the Board may not even seek a Section 10(j) injunction.[32] And the General Counsel performs an additional gatekeeping function by screening regional office recommendations for Section 10(j) relief and submitting authorization requests to the Board only in cases she deems worthy, see above, n.25. Even when it does approve the seeking of Section 10(j) relief, the Board merely authorizes court litigation to "prevent erosion of the status of the parties pending its final decision." *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1188 (5th Cir. 1975). If the Board were to authorize seeking Section 10(j) relief, but then found after hearing that SpaceX committed no violations, it "would not implicitly be admitting error in its prior finding." *Withrow*, 421 U.S. at 57. Instead, its position "most probably would merely reflect the benefit of a more complete view of the evidence." *Id.* at 58.

---

[32] Notably, commissioners for the FTC and CPSC, whose structure has been upheld by binding Supreme Court and Fifth Circuit precedent, have similar statutory power to authorize seeking injunctive remedies, *see above* n.24 & 30—*without* an additional layer of required approval comparable to the role of the NLRB General Counsel.

For these reasons, SpaceX's arguments have been summarily dismissed by every court to have encountered them.[33] The reason those cases are relatively old is that until this case, there was a consensus that this argument lacked any merit. *Contra* Br. 37-43. It still does.

### C. SpaceX has not met its burden to show irreparable harm arising from the constitutional infirmities it alleges.

#### 1. SpaceX has not shown any irreparable harm resulting from removal protections for NLRB ALJs or Board members.

SpaceX fails to offer "independent proof" of irreparable harm, let alone establish that such harm is likely to occur. *White*, 862 F.2d at 1211. SpaceX primarily bases its claim of irreparable harm on the notion that *Axon* makes such proof unnecessary. Br. 45-48. But, as discussed extensively above in Section III.B.3, *Axon* did not address injunctive relief and does not bear on the question of irreparable harm. A bare citation to *Axon* coupled with a constitutional challenge to an agency's proceeding does not make out irreparable harm. Nor has

---

[33] *See Flamingo Hilton-Laughlin v. NLRB*, 148 F.3d 1166, 1174 (D.C. Cir. 1998); *Kessel Food Mkts., Inc. v. NLRB*, 868 F.2d 881, 887 (6th Cir. 1989) *NLRB v. Sanford Home for Adults*, 669 F.2d 35, 37 (2d Cir. 1981); *Eisenberg v. Holland Rantos Co.*, 583 F.2d 100, 104 n.8 (3d Cir. 1978).

SpaceX proffered any evidence of actual harm from the alleged constitutional violations.

Irreparable harm does not automatically flow from constitutional claims. Parties are not entitled to injunctive relief "merely because an act is unconstitutional." *Richmond Hosiery Mills v. Camp*, 74 F.2d 200, 200 (5th Cir. 1934). Rather, "one seeking relief on that ground must further show that he is entitled to it on some clear ground of equity jurisdiction." *Id.* To the extent that SpaceX argues that every constitutional injury is per se irreparable without the need for evidence [Br. 45], it is mistaken. "Constitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction," *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 203 (3d Cir. 2024) (cleaned up), because "[e]quity is contextual. It turns on facts." *Id.* at 205; *accord Siegel v. LePore*, 234 F.3d 1163, 1177-78 (11th Cir. 2000) (en banc) (per curiam).[34] SpaceX relies on inapposite authorities, which say nothing

---

[34] *Accord, e.g.*, *Leachco*, 103 F.4th at 753 (unconstitutionally structured proceeding is not irreparable harm); *John Doe Co. v. CFPB*, 849 F.3d 1129, 1135 (D.C. Cir. 2017) (rejecting proposition that "any alleged separation-of-powers injury is by its very nature irreparable"); *Wheeler*

about constitutional claims not involving First Amendment rights. Br. 45 (citing *Elrod v. Burns*, 427 U.S. 347 (1976), and *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328 (5th Cir. 1981)).

As discussed in depth above in Section III.B.2, SpaceX has failed to allege any causal harm arising from the allegedly unconstitutional removal protections for Board members and ALJs. As such, its claim of irreparable harm arising from such removal protections falls flat.

### 2. SpaceX's Seventh Amendment claim is too speculative to be a basis for irreparable harm.

SpaceX provides no basis for finding that the possibility that the NLRB may eventually order *Thryv* make-whole remedies harms SpaceX in any irreparable way. Br. 48-49. First, "an injunction is appropriate only if the anticipated injury is imminent and irreparable." *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975) (cleaned up). SpaceX's speculation does not qualify.

More importantly, even should this Court conclude that the Board lacks authority to order *Thryv*-type remedies, this purported defect

---

*v. Wexford Health Sources, Inc.*, 689 F.3d 680, 682 (7th Cir. 2012) ("equitable relief depends on irreparable harm, even when constitutional rights are at stake").

would not taint the Agency's entire proceeding. Such a finding by this Court would not bear upon the Board's power to seek other statutory remedies such as backpay, long deemed outside the Seventh Amendment's reach. *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48 (1937); *Agwilines, Inc,* 87 F.2d at 150-51. Instead, the appropriate relief would be *at most* to enjoin the NLRB from seeking those remedies in its administrative proceedings, not the "extraordinary remedy" of a preliminary injunction halting the entire administrative process. *Winter*, 555 U.S. at 24; *see M.D. ex rel. Stukenberg v. Abbott*, 907 F.3d 237, 272 (5th Cir. 2018) ("[I]njunctions must be narrowly tailored to remedy the specific action which gives rise to the order.") (cleaned up).

### 3. Statutory review provides an adequate legal remedy for SpaceX's combined-functions claim.

SpaceX's combined-functions challenge is predicated on an as-applied claim of unlawful bias. Br. 37-42. But "the remedy for a procedural due process claim is more process." *Wiley v. Texas State Univ.*, No. 1:18-CV-930-RP, 2019 WL 317247, at *4 (W.D. Tex. Jan. 24, 2019). It thus makes little sense to adjudicate such a claim before the challenged process is complete. *Id.* Here, SpaceX presents no claim of actual or apparent bias that could not be redressed on appellate review

where "the regularity of [the Board's] proceedings [and] all questions of constitutional right or statutory authority are open to examination." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 49 (1938); *see Boire v. Greyhound Corp.*, 376 U.S. 473, 479, n.5 (1964) (citing legislative history finding statutory review provided an "exclusive, complete, and adequate remedy" to ULP respondents); *Meta Platforms*, 2024 WL 1121424, at *10-11 (rejecting "anemic" due process claim because plaintiff failed to demonstrate that "no adequate remedy" existed).

> 4. SpaceX's additional arguments concerning alleged economic and reputational harm cannot support injunctive relief.

Finally, SpaceX half-heartedly argues that the "real-world burdens of the proceedings also inflict irreparable harm." Br. 50. But even *Axon* itself did not find the burdens of litigation sufficient to justify immediate court intervention. 598 U.S. at 192. The Supreme Court has repeatedly held that neither the "expense and annoyance of litigation" nor "litigation expense, even substantial and unrecoupable cost . . . constitute irreparable injury." *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) (cleaned up) (citing *Petroleum Expl., Inc. v.*

*Pub. Serv. Comm'n*, 304 U.S. 209, 222 (1938); *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974)). The Fifth Circuit has long recognized that these supposed harms are part of the "social burden of living under government." *Bradley Lumber Co. of Ark. v. NLRB*, 84 F.2d 97, 100 (5th Cir. 1936).

SpaceX also speculates that NLRB proceedings will tarnish its reputation and will provide the government with "leverage to extract settlement terms." Br. 50 (quoting *Axon*, 598 U.S. at 216 (Gorsuch, J., concurring)). These, too, are simply burdens incident to litigation:

> Obviously, the rule requiring exhaustion of the administrative remedy cannot be circumvented by asserting that . . . the mere holding of the prescribed administrative hearing would result in irreparable damage. Lawsuits [] often prove to have been groundless; but no way has been discovered of relieving a defendant from the necessity of a trial to establish the fact.

*Myers*, 303 U.S. at 51-53. SpaceX has presented no authority finding that reputational harm from an agency proceeding is irreparable. Claimed reputational harm "falls far short of the type of irreparable injury which is a necessary predicate" to injunctive relief. *Sampson v. Murray*, 415 U.S. 61, 91-92 (1974).

Regardless, SpaceX's concern over reputational harm rings hollow, as it fails to explain how its decision to aggressively sue Defendants in an effort to block employees' sole legal path to justice under the NLRA would not similarly wound its reputation. *See Associated Press v. Herrick*, 13 F. Supp. 897, 901 (S.D.N.Y. 1936) (it was "equally probable" that challenger's suit to enjoin the NLRA on constitutionality grounds would result in a "similar loss of [] good will" as would an adverse finding of the Board) (citing *Richmond*, 74 F.2d at 201). Hypothetical harms cannot merit extraordinary relief.

### D. The balance of equities and the public interest factors counsel against granting a preliminary injunction.

The final two injunction factors—balance of harms and the public interest— "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). And those issues are not mere formalities; if a plaintiff's showing on them is weak, injunctive relief should be denied. *Benisek v. Lamone*, 585 U.S. 155, 158-59 (2018) (per curiam) (balance of equities and public interest may overcome other two factors even in constitutional cases).

It is axiomatic that "the public has a powerful interest in the enforcement of duly enacted laws." *League of United Latin Am. Citizens*

61

*v. Abbott*, 601 F. Supp. 3d 147, 184 (W.D. Tex. 2022) (cleaned up). As this Court has repeatedly held, interfering with the enforcement of "statutes enacted by representatives of [the] people" is a "form of irreparable injury" to the public interest the NLRB represents. *See, e.g., Tex. Alliance for Ret. Ams. v. Hughs*, 976 F.3d 564, 569 (5th Cir. 2020) (cleaned up); *Valentine v. Collier*, 956 F.3d 797, 803 (5th Cir. 2020); *accord Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013). And "great weight" should be accorded to "the fact that Congress already declared the public's interest and created a regulatory and enforcement framework." *In re Sac Fox Tribe of the Mississippi in Iowa/Meskawaki Casino Litig.*, 340 F.3d 749, 760 (8th Cir. 2003) (cleaned up).

Frustration of Congress's intent to protect the Act's "public rights," *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 366 (1940), would be especially severe here, given that the Act's procedures are the sole mechanism for enforcing the NLRA, *Nathanson v. NLRB*, 344 U.S. 25, 27 (1953). SpaceX's argument that an injunction would cause "no cognizable harm" [Br. 51] amounts to a brazen assertion that our nation's core labor laws do no more than inconveniently "distract[] from

its important missions." ROA.309. Worse, even a temporary delay in the agency proceedings raises the likelihood that, in the interim, "records have been destroyed, witnesses have gone elsewhere, and recollections of the events in question have become dim and confused." *IAM Loc. Lodge No. 1424 v. NLRB*, 362 U.S. 411, 419 (1960) (cleaned up) (quoting H.R. Rep. No. 80-245, at 40 (1947)).

SpaceX shrugs off as collateral damage the nation's workers who stand to lose critical workplace protections if the NLRB is indefinitely enjoined from fulfilling its statutory mandate. Conspicuously absent from SpaceX's equities argument is the effect that granting a preliminary injunction would have on those not before this Court: in particular, the eight employees terminated in alleged violation of the NLRA. Those employees have no other legal means to vindicate their federal labor rights and compel SpaceX to offer them reinstatement to their prior positions absent the NLRB's procedures.

And granting an injunction here would portend that nearly every ULP case arguably connected to this Circuit can meet a similar fate. As the Northern District of Illinois put it just days ago, SpaceX's "position—if accepted—would neuter the National Labor Relations Act

by blocking all proceedings before the National Labor Relations Board, the independent agency that has steadfastly and exclusively enforced the statute for the past eighty-nine years against entities accused of unfair labor practices. Quite extraordinary, indeed." *Alivio Med. Ctr. v. Abruzzo*, No. 1:24-cv-7217, 2024 WL 4188068 at *11 (N.D. Ill. Sep. 14, 2024). Extraordinary—and totally unjustified.

## CONCLUSION

SpaceX's gambits should not be further indulged by this Court; this appeal should be dismissed, all interim orders should be vacated, and the case should be remanded for appropriate proceedings.

Respectfully submitted,

JENNIFER A. ABRUZZO
  *General Counsel*
PETER SUNG OHR
  *Deputy General Counsel*
NANCY E. KESSLER PLATT
  *Associate General Counsel*

DAWN L. GOLDSTEIN
  *Deputy Associate General Counsel*
KEVIN P. FLANAGAN
  *Deputy Assistant General Counsel*
PAUL A. THOMAS
  *Supervisory Trial Attorney*
GRACE L. PEZZELLA
  *Trial Attorney*

/s/ David P. Boehm
DAVID P. BOEHM
  *Trial Attorney*

64

National Labor Relations Board
Contempt, Compliance, and Special
Litigation Branch
1015 Half Street, SE, 4th Floor
Washington, D.C. 20003
Tel: (202) 273-4204
Fax: (202) 273-4244
david.boehm@nlrb.gov

Dated: September 16, 2024
      Washington, DC

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Appellees' Brief was
filed electronically with this Court's CM/ECF system on this date,
which will send an electronic notice to all registered parties and
counsel.

/s/ David P. Boehm

DAVID P. BOEHM
*Trial Attorney*
National Labor Relations Board
1015 Half Street, SE, 4th Floor
Washington, DC 20570
Tel: (202) 273-4204
david.boehm@nlrb.gov

Dated: September 16, 2024
Washington, DC

# CERTIFICATE OF COMPLIANCE

The National Labor Relations Board certifies that this document complies with the typeface, type-style, and length requirements in Fifth Circuit Rule 32.1 and Federal Rules of Appellate Procedure 32(a)(5)-(7), because it contains 12,795 words, excluding those exempted by Federal Rule of Appellate Procedure 32(f), which are proportionally-spaced, 14-point Century font, and the word-processing software used was Microsoft Word for Office 365.

/s/ David P. Boehm
_____

DAVID P. BOEHM
   *Trial Attorney*
National Labor Relations Board
1015 Half Street, SE, 4th Floor
Washington, DC 20570
Tel: (202) 273-4204
david.boehm@nlrb.gov

Dated: September 16, 2024
      Washington,  D.C.