Nos. 24-40315

# United States Court of Appeals
# for the Fifth Circuit

---

SPACE EXPLORATION TECHNOLOGIES, CORPORATION,

*Plaintiff – Appellant,*

*v.*

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency; JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board; LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board; MARVIN E. KAPLAN, in his official capacity as a Board Member of the National Labor Relations Board; GWYNNE A. WILCOX, in her official capacity as a Board Member of the National Labor Relations Board; DAVID M. PROUTY, in his official capacity as a Board Member of the National Labor Relations Board; JOHN DOE, in his official capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants – Appellees.*

---

**On Appeal from the U.S. District Court for the Southern District of Texas, No. 1:24-cv-00001, Judge Rolando Olvera**

---

**BRIEF OF THE AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS - APPELLEES**

---

MATTHEW GINSBURG
*General Counsel*
ANDREW LYUBARSKY
*Associate General Counsel*
MANEESH SHARMA
*Associate General Counsel*
815 Black Lives Matter Plaza, NW
Washington, DC 20006
Tel. (202) 227-8969
alyubarsky@aflcio.org

## SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS

In addition to the interested parties listed in Plaintiff-Appellant and Defendants-Appellees' certificates of interested persons, the undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of this Court's Rule 28.2.1 have an interest in the outcome of this case. These supplemental disclosures are made pursuant to this Court's Rules 28.2.1 and 29.2 in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Matthew Ginsburg, Counsel for *Amicus Curiae* AFL-CIO

2. Maneesh Sharma, Counsel for *Amicus Curiae* AFL-CIO

3. Andrew Lyubarsky, Counsel for *Amicus Curiae* AFL-CIO

Dated: September 23, 2024

/s/ Andrew Lyubarsky
Andrew Lyubarsky
AFL-CIO
815 Black Lives Matter Plaza N.W.
Washington, DC 20006
Tel. (202) 227-8969
alyubarsky@aflcio.org

*Counsel for Amicus Curiae*

ii

## CORPORATE DISCLOSURE STATEMENT

The American Federation of Labor & Congress of Industrial Organizations (AFL-CIO), a not-for-profit labor organization, states that it has no parent companies, subsidiaries, or affiliates that have issued shares to the public, and no publicly held company has 10% or greater ownership in it.

Dated: September 23, 2024

*/s/ Andrew Lyubarsky*
Andrew Lyubarsky
AFL-CIO
815 Black Lives Matter Plaza N.W.
Washington, DC 20006
Tel. (202) 227-8969
alyubarsky@aflcio.org

*Counsel for Amicus Curiae*

## STATEMENT OF COMPLIANCE WITH FRAP 29(A)

Pursuant to Rule 29(a)(2) of the Federal Rules of Appellate Procedure, *amicus* states that all current parties have consented to the filing of this brief in support of Defendants-Appellees. In accordance with Federal Rule of Appellate Procedure 29(a)(4)(E), *amicus* states that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money to fund the preparation or submission of this brief; and no other person except *amicus*, its counsel and/or its members contributed money to fund the preparation or submission of this brief.

Dated: September 23, 2024

           */s/ Andrew Lyubarsky*
           Andrew Lyubarsky
           AFL-CIO
           815 Black Lives Matter Plaza N.W.
           Washington, DC 20006
           Tel. (202) 227-8969
           alyubarsky@aflcio.org

           *Counsel for Amicus Curiae*

# TABLE OF CONTENTS

Page

INTEREST OF AMICUS CURIAE.......................................................1

SUMMARY OF THE ARGUMENT ......................................................1

ARGUMENT ........................................................................4

I.   SpaceX is Not Entitled to a Preliminary Injunction Restraining
     Board Action on Its Removal Protections Claims .......................4

     A. To Secure Injunctive Relief Restraining Board Action on a
        Removal Protections Claim, SpaceX Must Demonstrate a
        Presidential Desire to Remove an Inferior Officer....................4

     B. Cochran and *Axon* Did Not Modify this Court's Remedial
        Requirements ................................................... 9

     C. Even if SpaceX Were Entitled to a Declaratory Judgment, It
        Cannot Secure a Preliminary Injunction of Far Greater Scope..13

II.  SpaceX Is Not Entitled to Preliminary Injunction on Its Seventh
     Amendment Claims...............................................17

     A. SpaceX Attempts to Disguise a Statutory Claim as a
        Constitutional One.............................................18

     B. The Court Lacks Jurisdiction Over SpaceX's Statutory
        Challenge Which Must be Litigated Through the NLRA's
        Judicial Review Provisions......................................20

     C. The Seventh Amendment Claim is Not Ripe...................25

     D. Even if this Court has Jurisdiction Over SpaceX's Claim,
        it is Meritless................................................27

CONCLUSION.......................................................32

# TABLE OF AUTHORITIES

**Page**

## Cases

*Abbott Labs. v. Gardner,*
  387 U.S. 136 (1967)...............................................................26

*Agwilines, Inc. v. NLRB,*
  87 F.2d 146 (5th Cir. 1936)............................................28, 29

*Atlas Roofing Co. v. OSHRC,*
  430 U.S. 442 (1970)...............................................................30

*Axon Enter., Inc. v. FTC,*
  598 U.S. 175 (2023),........................................................ *passim*

*Ayotte v. Planned Parenthood,*
  546 U.S. 320 (2006)...............................................................17

*Bank of Louisiana v. FDIC,*
  919 F.3d 916 (5th Cir. 2019)................................................22

*Bokat v. Tidewater Equip. Co.,*
  363 F.2d 667 (5th Cir. 1966)................................................24

*Calcutt v. FDIC,*
  37 F.4th 293 (6th Cir. 2022) ...................................................8

*CFPB v. All Am. Check Cashing, Inc.,*
  33 F.4th 218 (5th Cir. 2022) .................................................10

*CFPB v. L. Offs. of Crystal Moroney, P.C.,*
  63 F.4th 174 (2d Cir. 2023)......................................................8

*Cmty. Fin. Servs. Ass'n of Am. v. CFPB,*
  51 F.4th 616 (5th Cir. 2022) .......................................6, 7, 8, 9

*Cochran v. SEC,*
  20 F.4th 194 (5th Cir. 2021) .......................................9, 10, 12

*Collins v. Mnuchin,*
  938 F.3d 553 (5th Cir. 2019)......................................5, 13, 14

*Collins v. U.S. Dep't of Treasury,*
  83 F.4th 970 (5th Cir. 2023) ...................................................8

*Collins v. Yellen,*
  594 U.S. 220 (2021)......................................................... *passim*

*Consolidated Edison Co. of New York v. NLRB*,
    305 U.S. 197 (1938)..................................................................... 19
*Consumers' Rsch. v. CPSC*,
    91 F.4th 342 (5th Cir. 2024) ......................................... 13, 16
*Crossett Lumber*,
    8 NLRB 440 (1938)............................................................27
*Denton Cnty. Elec. Coop. Inc. v. NLRB*,
    962 F.3d 161 (5th Cir. 2020)...............................................24
*E.I. du Pont de Nemours & Co. v. NLRB*,
    489 F.3d 1310 (D.C. Cir. 2007).....................................25, 26
*Free Enter. Fund v. PCAOB*,
    561 U.S. 477 (2010)............................................................ 13
*Humphrey's Ex'r v. United States*,
    295 U.S. 602 (1935)............................................................ 16
*Janus v. AFSCME Council 31*,
    585 U.S. 878 (2018)............................................................29
*Leachco, Inc. v. CPSC*,
    103 F.4th 748 (10th Cir. 2024) ................................. 8, 11, 12
*Lou's Transp., Inc. v. NLRB*,
    945 F.3d 1012 (6th Cir. 2019)......................................26, 27
*Nat'l Licorice Co. v. NLRB*,
    309 U.S. 350 (1940)............................................................30
*NLRB v. Cmty. Health Servs.*,
    812 F.3d 768 (10th Cir. 2016)............................................27
*NLRB v. Jones & Laughlin Steel Co.*,
    301 U.S. 1 (1937)............................................3, 18, 28, 30
*Phelps Dodge Corp. v. NLRB*,
    313 U.S. 177 (1941)......................................................22, 31
*Scott v. Schedler*,
    826 F.3d 207 (5th Cir. 2016)............................................. 16
*SEC v. Jarkesy*,
    144 S. Ct. 2117 (2024) ............................................... *passim*
*Seila Law LLC v. CFPB*,
    591 U.S. 197 (2020)..................................................... 4, 5, 23

*Thomas v. Union Carbide Agr. Prod. Co.*,
   473 U.S. 568 (1985)..............................................................26
*Thryv, Inc.*,
   372 NLRB No. 22 (Dec. 13, 2022)..........................................*passim*
*Thunder Basin Coal Co. v. Reich*,
   510 U.S. 200 (1994).............................................................. 21
*UAW v. Russell*,
   356 U.S. 634 (1958)..............................................................19
*YAPP USA Auto. Sys. v. NLRB*,
   No. 24-cv-12173, 2024 WL 4119058 (E.D. Mich. Sept. 9, 2024) ..........11

## Constitutional Provisions

U.S. CONST. art. II, § 3, cl. 1................................................1, 4

## Statutes

5 U.S.C. § 7521(a) ...............................................................14, 15
15 U.S.C. § 77h-1(g)..............................................................20
15 U.S.C. § 78u-2(b)..............................................................20
15 U.S.C. § 80b-3(i)..............................................................20
29 U.S.C. § 160(e)..............................................................21, 25
29 U.S.C. § 160(f)..............................................................21, 25

## Regulations

29 C.F.R. § 101.16 ...............................................................25

## INTEREST OF AMICUS CURIAE

The American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO") is a federation of 60 national and international labor organizations with a total membership of over 12.5 million working men and women. For almost 90 years, AFL-CIO-affiliated unions have relied on the National Labor Relations Board ("NLRB" or "Board") to preserve their members' right to engage in protected concerted activity, remedy unfair labor practices, and resolve questions concerning representation. The AFL-CIO has a strong interest in ensuring that the Board is able to continue to carry out its vital function, to ensure that neither employers nor unions can evade accountability for violations of workers' labor rights.

## SUMMARY OF ARGUMENT

Under our Constitution, the executive power is vested in the President, who is charged with the duty to "take Care that the Laws be faithfully executed." U.S. CONST. art. II, § 3, cl. 1. Plaintiff-Appellant Space Exploration Technologies, Inc. ("SpaceX") seeks to prevent the President from fulfilling that duty by asking this Court to enjoin a proceeding against it at the NLRB. Without irony, SpaceX argues that

1

the NLRB proceeding must be enjoined in order to *protect* the President's duty to "take Care that the Laws be faithfully executed." According to SpaceX, no enforcement proceeding against it under the National Labor Relations Act ("NLRA") can go forward—*i.e.*, the NLRA cannot be faithfully executed here—because the properly-appointed administrative law judge ("ALJ") assigned to preside over the proceedings, and the properly-appointed Board Members who *may* eventually hear the case, are improperly insulated from *removal* by the President.

But the President has never expressed any desire to remove these officeholders, nor has SpaceX shown that he would have removed them but for the tenure protections. SpaceX is then asking this Court to stop the President and his subordinates from faithfully executing the law in order to protect the President's right to remove those subordinates, in a situation where the President has not sought to exercise that right himself or even indicated that he intends to. SpaceX's assertion of the President's right—when he had expressed no desire to exercise that right—cannot be the basis for blocking the President's execution of the law.

SpaceX's Seventh Amendment claim fares no better. While the claim is substantively meritless—indeed, foreclosed by the Supreme Court nearly ninety years ago in *NLRB v. Jones & Laughlin Steel Co.*, 301 U.S. 1 (1937)—it also suffers from a fatal jurisdictional defect. SpaceX argues that it is entitled to a jury trial only because the Board's General Counsel has evinced an intent to seek a specific monetary remedy that SpaceX itself characterizes as beyond its statutory authority. SpaceX's argument is then that the Board is statutorily limited to issuing equitable relief alone, and cannot issue legal relief. Thus, while cloaked in constitutional garb, SpaceX's argument is *statutory* at root. The district court lacked jurisdiction over such a claim, which must instead be litigated through the review process mandated by the NLRA.

The Court should deny SpaceX's motion. [1]

---

[1] For the reasons stated by the Board, SpaceX's final "combined-functions" claim is both meritless and jurisdictionally barred, and therefore provides no basis for injunctive relief. *See* NLRB Br. 51–55.

3

## ARGUMENT

### I.  SpaceX is Not Entitled to a Preliminary Injunction Restraining Board Action Based on Its Removal-Protections Claims

#### A.  <u>To Secure Injunctive Relief Restraining Board Action Based on a Removal-Protections Claim, SpaceX Must Demonstrate a Presidential Desire to Remove an Inferior Officer</u>

The Constitution "vest[s] in a President" the "executive power" and charges the President with the duty to "take Care that the Laws be faithfully executed." *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020) (*quoting* U.S. CONST. art. II, § 3, cl. 1). But "no single person could fulfill that responsibility alone," and so the President may appoint subordinates to assist him in faithfully executing the laws. *Id* at 204. Where those subordinates are "properly appointed[,]" they possess "the authority to carry out the functions of the[ir] office." *Collins v. Yellen*, 594 U.S. 220, 257–58 (2021) (emphasis omitted).

SpaceX seeks to enjoin the NLRB proceeding against it because of an alleged flaw in the statutory protections of the ALJ assigned to the matter, and the Board Members themselves. But in seeking to prohibit these officials from executing their duties, SpaceX does not claim that those officials were improperly appointed, in which case they would have

been "vested with authority that was never properly theirs to exercise" and their actions would be "void *ab initio*." *Collins v. Mnuchin*, 938 F.3d 553, 593 (5th Cir. 2019) (en banc). Instead, SpaceX contends the ALJs and Board Members must be prevented from assisting the President in faithfully executing the law because their statutory removal protections violate the Take Care clause of the Constitution by interfering with the President's "supervis[ory]" authority over these officeholders. SpaceX Br. 14 (quoting *Seila Law*, 591 U.S. at 204).

This cannot be so. The "unlawfulness of [a] removal provision does not strip [an inferior officer] of the power to undertake the . . . responsibilities of his office." *Collins*, 594 U.S. at 258 n.23; *see also id.* at 267 (Thomas, J., concurring) ("The mere existence of an unconstitutional removal provision . . . generally does not automatically taint Government action by an official unlawfully insulated."). As this Court has explained, cases involving "[r]estrictions on removal are different" from cases alleging improper appointments, because in removal protection cases, "the conclusion is that the officers are duly appointed by the appropriate officials and exercise authority that is properly theirs." *Collins v. Mnuchin*, 938 F.3d at 593. Accordingly, a plaintiff seeking relief from

agency action on a removal-restrictions claim may only prevail by proving that the restriction *has actually interfered with the President's authority to supervise subordinates* in their particular case, and thereby inflicted "compensable harm" on the *plaintiff*—for instance, where "the President had attempted to remove [an officer] but was prevented from doing so" or "had made a public statement expressing displeasure" with the officer's actions. *Collins*, 594 U.S. at 259–60. To not require this showing would actually *prevent* the President, through his subordinates, from ensuring that the "Laws be faithfully executed," based on a totally theoretical assertion that the President *may* someday want to remove those subordinates.

Recognizing the absurdity of such a result, this Court has emphasized that to demonstrate a likelihood of success on a claim that seeks to restrain agency action, a plaintiff "must show not only that the removal restriction transgresses the Constitution's separation of powers but also that the unconstitutional provisions caused (or would cause) them harm," *i.e.*, that "the President's inability to fire an [agency officer] affected the complained-of-decision." *Cmty. Fin. Servs. Ass'n of Am. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022) ("*CFSA*"). Drawing on the

Supreme Court's decision in *Collins*, this Court has set forth a detailed test establishing "three requisites for proving [such] harm":

> (1) A substantiated desire by the President to remove the unconstitutionally insulated actor, (2) a perceived inability to remove the actor due to the infirm provision, and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor.

*Id.*

Needless to say, SpaceX has not met any of these three requisites. Nor could it; the President has never expressed a desire to remove the ALJ or the Board Members.

Seeking to escape this showing, SpaceX contends that *CFSA*'s requirements do not apply where a litigant prospectively "seeks an administrative adjudication untainted by separation of powers violations," rather than seeking to "'void' the acts of any [agency] official" in the past. SpaceX Br. 17. This assertion openly defies this Court's express holding to the contrary.

Once again, this Court could not have been clearer: the concrete injury required by *Collins v. Yellen* "did not rest on a distinction between prospective and retrospective relief." *CFSA*, 51 F.4th at 631. Regardless of whether a plaintiff seeks forward- or backward-looking relief, the issue

7

was "whether a 'harm' occurred [or is likely to occur] that would create an entitlement to [any] remedy, rather than the nature of the remedy." *Id.* (citing *Calcutt v. FDIC*, 37 F.4th 293, 216 (6th Cir. 2022)). In dismissing the claims of the petitioners in *Collins v. Yellen* on remand, this Court reaffirmed *CFSA*'s holding. *See Collins v. U.S. Dep't of Treasury*, 83 F.4th 970, 981 (5th Cir. 2023) ("After *Collins*, a party challenging agency action must show not only that the removal restriction transgresses the Constitution's separation of powers but also that the unconstitutional provision caused (*or would cause*) them harm." (emphasis added)). And this Court has been unanimously joined by three other circuits, including decisions denying preliminary relief.[2]

Moreover, there is no persuasive reason that prospective relief should be treated different than retrospective relief. SpaceX suggests that unconstitutional removal protections may "influence how rational ALJs carry out their duties." SpaceX Br. 17. But that rationale would also

---

[2] *See Leachco, Inc. v. CPSC*, 103 F.4th 748, 757 (10th Cir. 2024) ("*Collins*' relief analysis applies to both retrospective and prospective relief," and therefore plaintiff "failed to establish that it would suffer future irreparable harm if the preliminary injunction is denied"); *CFPB v. L. Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 180–81 (2d Cir. 2023); *Calcutt*, 37 F.4th at 316 n.9.

suggest that the actions of unconstitutionally-insulated actors should be invalidated retrospectively since they may have been influenced by the removal protections in taking action—an outcome squarely rejected by the Supreme Court in *Collins*. If SpaceX is foreclosed from obtaining retrospective relief from agency action based on this rationale, it is similarly foreclosed from obtaining prospective relief.

B.   *Cochran* and *Axon* Did Not Modify this Court's Remedial Requirements

Rather than engage with *CFSA*'s harm requisites, SpaceX relies on this Court's decision in *Cochran v. SEC*, 20 F.4th 194 (5th Cir. 2021), and the Supreme Court's affirmance of that decision in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), to argue that merely being subject to an agency proceeding before an unconstitutionally insulated officer is a "here-and-now injury" that is irreparable and sufficient to warrant relief from those proceedings. *See, e.g.,* SpaceX Br. 45–46. But those cases dealt exclusively with a threshold question not at issue here—whether a plaintiff must raise its removal-protections claim via post-enforcement statutory review procedures. *Cochran*, 20 F.4th at 211 (deciding "only the issue of whether the Exchange Act divested district court jurisdiction over [removal-protection claims]; our holding extends no further."); *Axon*,

598 U.S. at 180 ("Our task today is not to resolve those challenges; rather it is to decide where they may be heard."). *Cochran* and *Axon* determined *where* (district court) and *when* (pre-enforcement) a plaintiff can challenge removal protections. But neither case discussed *what* a plaintiff needs to prove to ultimately obtain relief from agency proceedings.

Here, no one contests that the district court had subject matter jurisdiction over SpaceX's removal-protection claims, or argues that SpaceX must first raise its claims before the Board. But alleging facts that establish jurisdiction does not mean that SpaceX has alleged facts entitling it to injunctive relief restraining the Board's proceedings. As mentioned, an unconstitutional removal restriction is, "remedially speaking, unique[,]" *CFPB v. All American Check Cashing, Inc.*, 33 F.4th 218, 242 (5th Cir. 2022) (Jones, J., concurring), because the infirm removal provision "does not strip [an inferior officer] of the power to undertake the other responsibilities of his office," *i.e.*, does not render him or her an "illegitimate decisionmaker," unless the plaintiff makes a cognizable showing of harm, *Collins*, 594 U.S. at 258 n.23. Without such a showing, an injunction restraining Board action would interfere with—

10

rather than protect—the President's duty to take care that the laws are faithfully executed.[3]

The Tenth Circuit recently rejected the erroneous reading of *Axon* that SpaceX presses.[4] There, as here, a plaintiff sought a preliminary injunction against agency proceedings on the grounds that both ALJs and agency commissioners were unlawfully insulated from Presidential removal, and relied on *Axon*'s "here-and-now injury" language to suggest the danger of irreparable harm sufficient to warrant injunctive relief. *See Leachco, Inc. v. CPSC*, 103 F.4th 748 (10th Cir. 2024). In rejecting the plaintiff's argument, *Leachco* explained that the "'here-and-now injury' language in *Axon* originated from *Seila Law*," a case that "concerned

---

[3] Indeed, Justice Kagan, the author of the unanimous opinion in *Axon*, would be particularly astonished by the notion that *Axon* eliminated *Collins*'s requirement of proof of harm to obtain prospective relief. In her concurrence in *Collins*, she made clear her view that "plaintiffs alleging a removal violation are entitled to injunctive relief . . . only when the President's inability to fire an agency head affected the complained-of decision," and that "[w]hen an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue." 594 U.S. at 274–75 (Kagan, J., concurring).

[4] *See also YAPP USA Auto. Sys. v. NLRB*, No. 24-cv-12173, 2024 WL 4119058, at *9-10 (E.D. Mich. Sept. 9, 2024) (rejecting identical arguments about *Axon* and denying preliminary injunction of NLRB proceedings).

standing, *not* entitlement to injunctive relief." *Id.* at 759. In *Collins*, the Tenth Circuit noted, the Supreme Court "clarified [that] its 'here-and-now-injury' language from *Seila Law* . . . should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction." *Id.* (citing *Collins*, 594 U.S. at 258 n.24). Therefore, the Tenth Circuit undertook to "follow the Supreme Court's words of caution when interpreting the same 'here-and-now injury' language," declining to read *Axon*'s "limited jurisdictional holding" as a "broad ruling that creates an entitlement on the merits to a preliminary injunction in every case where such constitutional challenges are raised." *Id.* Simply put, "[t]he Supreme Court's jurisdictional analysis did not change the relief analysis required under *Collins*." *Id.* at 765.

Accordingly, nothing in *Cochran* or *Axon* disturbs the remedial holdings in *Collins* or this Court's later decisions. Because SpaceX makes no effort to fulfill *CFSA*'s three requisites to show harm, its motion must be denied.

C.     Even if SpaceX Were Entitled to a Declaratory Judgment, It Cannot Secure a Preliminary Injunction of Far Greater Scope

We have demonstrated that the separation-of-powers concerns that animate the Supreme Court's removal-restrictions jurisprudence foreclose a preliminary injunction that would restrain the ALJ from carrying out her lawful functions. This holds true regardless of whether SpaceX may ultimately be entitled to a declaratory judgment.

"In a suit seeking to vindicate the President's removal power," this Court has suggested that a plaintiff with a meritorious claim may at most be "entitled to declaratory relief sufficient to ensure that the . . . requirements and . . . standards to which [it is] subject will be enforced only by a constitutional agency accountable to the Executive.'" *Consumers' Rsch. v. CPSC*, 91 F.4th 342, 351 (5th Cir. 2024) (citing *Free Enter. Fund v. PCAOB*, 561 U.S. 477 (2010)); *see also Cochran*, 20 F.4th at 233 (Oldham, J., concurring) (plaintiff alleging removal-restrictions claim "should at least be able to sue for declaratory relief requiring a constitutionally structured proceeding."). But this Court is clear that, absent the causal-harm showing that SpaceX fails to make here, it is entitled to no *more* than that. *See Collins v. Mnuchin*, 938 F.3d at 595

13

(plaintiffs' removal-restrictions "injury . . . is remedied by a declaration that the 'for cause' restriction is declared removed. We go no further.").

SpaceX contends that a preliminary injunction halting Board proceedings is appropriate to "preserve the status quo" while its claim for declaratory relief is being adjudicated, because there is "no mechanism for such declaratory relief before final judgment." SpaceX Br. 47–48. But the need to preserve the status quo suggests there is something invalid with the ALJs' and Board Members' performance of their validly possessed duties, and as explained above, without a causal-harm showing, that is not the case. And even if SpaceX is ultimately entitled to declaratory relief—a question not currently before this Court—that does not mean it is entitled to a sweeping injunction against Board proceedings. SpaceX *could* have requested a narrowly-tailored injunction that would restrain any ALJs assigned to its case from relying on the removal protections in 5 U.S.C. § 7521(a) in the event of a Presidential attempt to remove them. Such an injunction would indisputably prevent SpaceX from suffering its asserted injury—it would proceed to a hearing before an ALJ who was removable at-will by the President—while

14

allowing the President and his subordinates to "take Care that the Laws be faithfully executed" without hindrance.[5]

SpaceX asserts that only a broad injunction is appropriate because "[s]everability is a final remedies question." SpaceX Br. 59. But a court *can* consider severance issues as part of its likelihood of success analysis and in narrowly tailoring the scope of relief, and SpaceX cites no case to the contrary. Moreover, severance is not at issue here. Any injunction appropriately tailored to SpaceX's asserted injury would only restrain the specific ALJ in the SpaceX case from relying on their for-cause protections in the highly-unlikely event of a Presidential attempt at removal. Temporarily enjoining the invocation of a removal protection by one official presiding over one matter would not require the Court to declare 5 U.S.C. § 7521(a) unconstitutional or to "sever" anything.[6]

---

[5] SpaceX could also have promptly moved for summary judgment as this case presents a pure question of law. By not doing so, SpaceX seeks via preliminary relief more than it could achieve in a final judgment. Permitting that would obviously be inequitable and would create perverse incentives.

[6] In any case, any removal protections of ALJs are severable and their invalidation will not require the Court to wholly enjoin the enforcement of the NLRA because Congress included an express severability provision in the Act and it is enforcement of only that Act that is at issue here. *See* 29 U.S.C. § 166.

SpaceX then asserts that, absent an injunction halting the Board proceedings, the Court would be faced with the impossible task of picking and choosing between three separate layers of removal protections—those of the ALJ, those of the Merit Systems Protection Board ("MSPB") members, and those of Board Members. SpaceX Br. 60–61. Not so. Board Members' removal protections are plainly constitutional under *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and this Court's recent precedent. *See Consumers' Rsch.*, 91 F.4th at 352 (removal protections are lawful for any "traditional independent agency headed by a multimember board"). And, if an ALJ were enjoined from turning to the MSPB in the event of a Presidential bid to remove him, the fact that MSPB members themselves enjoy removal protection would be irrelevant. The only removal restrictions that matter here are the ALJ's and enjoining invocation of those protections would be the most appropriately-tailored action and would fully protect SpaceX.

Preliminary relief must be "narrowly tailor[ed] . . . to remedy the specific action which gives rise to the order as determined by the substantive law at issue." *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016) (citation omitted). SpaceX's sought-after injunction flunks this test

16

spectacularly. Sweeping far more broadly than its asserted injury, it seeks an order that would do precisely what the Supreme Court has prohibited in *Collins*—"strip the [ALJ] of the power to undertake the other responsibilities of [her] office." 594 U.S. at 258 n.23. This breathtakingly overbroad request must be denied. *See, e.g., Ayotte v, Planned Parenthood*, 546 U.S. 320, 328 (2006) (court must "limit the solution to the problem" when issuing remedies). Even if SpaceX may be ultimately entitled to declaratory relief, this Court should not provide injunctive relief that goes well beyond both any alleged harm and what it could ultimately obtain as a final judgment.

## II. SpaceX Is Not Entitled to a Preliminary Injunction on Its Seventh Amendment Claim

SpaceX also claims that it merits a preliminary injunction because the "NLRB proceeding violates the Seventh Amendment, which preserves the right to trial by jury '[i]n Suits at common law.'" SpaceX Br. 24 (citing U.S. CONST. amend. VII). But SpaceX also contends that the NLRA only permits the Board to assess equitable "make-whole" remedies and not legal relief. *Id.* at 27–28 n.8. Both of these assertions cannot be true at the same time. As we shall explain below, far from raising constitutional concerns, SpaceX's allegations amount to nothing

more than a premature claim that the Board *may* exceed the remedial powers afforded it by statute. This court lacks jurisdiction to entertain such a claim and it is plainly unripe.

A. SpaceX Attempts to Disguise a Statutory Claim as a Constitutional One

The Seventh Amendment "extends to a particular statutory claim [only] if the claim is legal in nature," and does not extend to "suits which are [] of equity or admiralty jurisdiction." *SEC v. Jarkesy*, 144 S. Ct. 2117, 2128 (2024). The Supreme Court has already held that the Board's remedies are equitable and beyond the reach of the Seventh Amendment. *See Jones & Laughlin*, 301 U.S. at 48 (rejecting argument that back-pay was "equivalent to a money judgment and hence contravenes the Seventh Amendment" because the jury trial right does not apply "to cases where recovery of money damages is an incident to equitable relief"). SpaceX attempts to escape *Jones & Laughlin*'s holding by claiming that it is entitled to relief from the entire NLRB proceeding based only on the possibility that the Board may order—in addition to backpay—relief for "all direct or foreseeable pecuniary harms that [its discharged] employees suffer[ed] as a result of [its] unfair labor practice" based on *Thryv, Inc.*,

18

372 NLRB No. 22, Slip. Op. at 1 (Dec. 13, 2022)) (hereinafter, "*Thryv* remedies"). SpaceX Br. 25–27.

SpaceX also notes, however, that "Congress did not establish a general scheme authorizing the Board to award full compensatory damages for injuries caused by wrongful conduct." *UAW v. Russell*, 356 U.S. 634, 643 (1958) (cited at SpaceX Br. 27–28 n.8). And the Supreme Court has often described the Board's remedial authority in equitable terms. *See, e.g., Consolidated Edison Co. of New York v. NLRB*, 305 U.S. 197, 236 (1938) ("The power to command affirmative action is remedial, not punitive, and is to be exercised in aid of the Board's authority to restrain violations and as a means of removing or avoiding the consequences of violation where those consequences are of a kind to thwart the purposes of the Act"). Therefore, SpaceX's claim is actually that the Board would have to exceed its statutory authority in order to issue the alleged legal relief authorized by *Thryv*. At bottom then, SpaceX's claim is a statutory one, not a constitutional one.[7]

---

[7] Even if the Court were to read SpaceX's argument as both statutory and constitutional, because the basis for both claims would be same—that the Board is awarding legal rather than just equitable relief—there would be no need to reach the constitutional issue.

This stands in marked contrast to the argument presented in *Jarkesy* related to the SEC's enforcement scheme. In addition to other remedies, the SEC is expressly empowered by statute to assess civil penalties that range up to $725,000 in its administrative proceedings. *See* 15 U.S.C. §§ 77h-1(g), 78u-2(b), 80b-3(i). There was no allegation that the SEC had overstepped the bounds of its Congressionally-granted authority—the sole question was whether it could exercise this unquestioned statutory power consistent with the Seventh Amendment. The constitutional issue was squarely presented and unavoidable.

Stripped of its superficial constitutional vestments, SpaceX presents nothing more than a garden-variety claim that the Board's remedial directions in *Thryv* exceed the authority granted it by statute. In addition to dooming its claim of a jury trial right on the merits, this changes the timing of any purported injury suffered by SpaceX—which, as we explain below, has decisive jurisdictional consequences.

B. <u>The Court Lacks Jurisdiction Over SpaceX's Statutory Challenge, Which Must Be Litigated Through the NLRA's Judicial Review Provisions</u>

Properly conceived as statutory rather than constitutional, SpaceX's challenge to *Thryv* remedies is jurisdictionally barred. Congress

20

granted the NLRB exclusive jurisdiction over unfair labor proceedings and channeled all judicial review to the courts of appeals. *See* 29 U.S.C. §§ 160(e)–(f). As a general rule, Congress's provision for "review in a court of appeals following the agency's own review process . . . divests district courts of their ordinary jurisdiction over the covered cases." *Axon*, 598 U.S. at 185.

To bring this claim in district court, SpaceX must establish an exception to this general rule. Such exceptions are defined by *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), where the Supreme Court identified three relevant factors: (1) whether precluding district court jurisdiction would "foreclose all meaningful judicial review" of the claim; (2) whether the claim is "wholly collateral" to the agency's review procedures; and (3) whether the claim is "outside the agency's expertise." *Id.* at 212-13.

We focus on the first factor, which is dispositive here.[8]

_____

[8] The other two factors are easily met here as well. A "collateral" claim arises when a litigant "object[s] to [an agency's] power generally, not to anything particular about how that power was wielded" in a particular enforcement action or any particular "actions taken in the agency proceedings." *Axon*, 598 U.S. at 192–93. Where, as here, a claim alleges "agency misdeeds *during* the enforcement proceedings themselves,"

21

To determine whether a litigant may receive meaningful judicial review in the courts of appeals following an agency proceeding, the Supreme Court analyzes the nature of the injury alleged. "The interaction between the alleged injury and the timing of review" is key: only where the claim is about subjection to an illegitimate "decisionmaking process . . . irrespective of its outcome, or of other decisions made within it," such that the plaintiff "would have the same claim had it *won* before the agency," is district court jurisdiction appropriate. *Axon*, 598 U.S. at 192. That is not the case here.

Even if SpaceX's Seventh Amendment argument were sound, it would not have the same claim if it wins its case before the Board. Indeed, at this juncture, it is unknown if the General Counsel will seek, the ALJ will recommend, or the Board will assess any *Thryv* remedies at all.

---

courts routinely find that standard statutory review mechanisms apply. *Bank of Louisiana v. FDIC*, 919 F.3d 916, 928 (5th Cir. 2019). And the Board has particular expertise in defining the appropriate relief to remedy unfair labor practices. *See Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 194 (1941) (rather than defining "the whole gamut of remedies to effectuate these policies in an infinite variety of specific situations," Congress intended to "leave[] the adaption of means to end to the empiric process of administration . . . committed to the Board, subject to limited judicial review").

SpaceX has no claim at all if: (1) the company is not found liable; (2) the ALJ does not recommend and/or the Board does not assess *Thryv* remedies; or (3) the specific *Thryv* remedies eventually awarded are deemed to be equitable. Accordingly, unlike a litigant who challenges "subjection to [agency] process regardless of its outcome, or of other decisions made within it," *Axon*, 598 U.S. at 192, SpaceX's claimed Seventh Amendment injury is *entirely* dependent on the proceedings' outcome and the (remedial) "decisions made within it."

But the Court would lack jurisdiction even if SpaceX could *guarantee* that *Thryv* remedies would be assessed in its case. Because, according to SpaceX's own argument, the Board is powerless to issue legal relief under the NLRA, the Seventh Amendment right to a jury trial would never vest and SpaceX will suffer no "here-and-now injury" at any hearing before the ALJ or the Board. *See Seila Law*, 591 U.S. at 212. Instead, its injury—if any—would stem from the Board's remedial order itself. Such orders are not self-enforcing. If SpaceX believes that any portion of such an order crosses the line from equitable to legal and thus exceeds the Board's statutory authority, it will have the opportunity to seek judicial review. This Court has not hesitated to police the outer

23

boundaries of the Board's remedial authority by vacating any portion of its orders that oversteps its statutory authorization. *See, e.g., Denton Cnty. Elec. Coop. Inc. v. NLRB*, 962 F.3d 161, 175 (5th Cir. 2020) ("*Denton*") (vacating notice-reading and bargaining order remedies as impermissibly punitive, while enforcing remainder of order).[9] There is therefore no barrier whatsoever to SpaceX securing full and meaningful post-enforcement judicial review of its claim relating to *Thryv* remedies, or even the notice-related remedies it also complains of.

While SpaceX may have asserted a claim "voiced in conclusory language of a denial of . . . constitutional rights," the availability of post-enforcement judicial review and the absence of any injury occurring at the hearing itself make clear that the claim "does not warrant stopping the Board in its tracks." *Bokat v. Tidewater Equip. Co.*, 363 F.2d 667, 672 (5th Cir. 1966); *see also id.* at 673 (remedy for denial of statutory or

---

[9] Indeed, the nature of SpaceX's statutory claim is highlighted by its subsidiary argument that certain notice-related remedies would be punitive, and are therefore legal remedies. SpaceX Br. 30–31. SpaceX cites to *Denton* to argue that the remedies are punitive; but *Denton* addressed just such a garden-variety claim that the Board exceeded its remedial authority under the NLRA through the statute's review procedures, finding those remedies to be punitive and therefore beyond the Board's statutory authority.

constitutional rights during Board hearing is "denial of enforcement of the order or other appropriate relief by the Court of Appeals, not the over-the-shoulder supervision of District Courts").

The district court lacked jurisdiction over SpaceX's Seventh Amendment claim.

### C. The Seventh Amendment Claim is Not Ripe

The district court also lacked jurisdiction over SpaceX's Seventh Amendment claim for a related reason—it is not ripe.

At this juncture, it is impossible to know whether the ALJ will recommend or the Board will order *any* remedy that SpaceX objects to. Indeed, this question *first* turns on a liability finding that is either voluntarily complied with or is enforced by a court of appeals, *see* 29 U.S.C. §§ 160(e)–(f), and *second* turns on what, if any, evidence can be introduced to prove any direct or foreseeable pecuniary harm, which takes place at a compliance proceeding that follows the liability finding, *see* 29 C.F.R. § 101.16; *Thryv*, 372 NLRB No. 22 at 14; *E.I. du Pont de Nemours & Co. v. NLRB*, 489 F.3d 1310, 1317 (D.C. Cir. 2007) (Kavanaugh, J.) ("[I]f the Board reserves the [remedy] issue for later consideration," the court's opportunity to review the remedy "will

25

necessarily be deferred until the Board resolves the issue in a subsequent order" (cleaned up)). SpaceX's claim therefore rests on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 580–81 (1985).

SpaceX appears to request that this Court address *Thryv* remedies as a generic category, encompassing all forms of pecuniary relief beyond backpay, divorced from any factual record. This manner of proceeding would violate the ripeness doctrine, which exists "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967).

A cursory review of the Board's remedial case law demonstrates that *Thryv* remedies are long-standing and varied. While SpaceX characterizes *Thryv* as a novel departure, the decision synthesized a long line of prior Board decisions—some dating back to the earliest days of the Act. *See Thryv*, 372 NLRB No. 22, at *11–13 (collecting cases). To provide one example discussed in *Thryv*, discharged employees often incur expenses searching for new employment, such as "expenses for transportation, room, and board, which [employees] would not have

incurred had they continued to work for the [employer]." *Lou's Transp., Inc. v. NLRB*, 945 F.3d 1012, 1024 (6th Cir. 2019). Such expenses "have been factored into back pay awards [by the Board] for more than 80 years," and judicially approved of as an equitable remedy. *Id.* (citing *Crossett Lumber*, 8 NLRB 440, 497–98 (1938)). Though such expenses are but one example of "direct or foreseeable pecuniary harm" suffered by discharged employees— then-Judge Gorsuch characterized them as "tested and pretty ancient backpay procedures" necessary to "restore[] the employee to the same position she would've enjoyed but-for the employer's misconduct," *i.e.* to make the employee whole as a matter of equity. *NLRB v. Cmty. Health Servs.*, 812 F.3d 768, 781 (10th Cir. 2016) (Gorsuch, J., dissenting).

SpaceX's claim is therefore unripe. Even if the district court had jurisdiction over the matter under *Axon* and *Thunder Basin*—which it did not—it would be unable to meaningfully assess the lawfulness of a potential remedy that has not yet been, and may never be, assessed.

## D. Even if this Court has Jurisdiction Over SpaceX's Claim, it is Meritless

Finally, even if construed as raising a constitutional issue, SpaceX's Seventh Amendment claim fails on the merits.

27

The Supreme Court held in 1937 that the Seventh Amendment's right to a jury trial does not attach to NLRB proceedings, and the Court's recent decision in *SEC v. Jarkesy*, 144 S. Ct. 2117 (2024), reinforces that conclusion. In *Jarkesy*, the Supreme Court explained that the Seventh Amendment attaches to a statutory claim "if the claim is legal in nature" rather than equitable. 144 S. Ct. at 2128 (cleaned up). "To determine whether a suit is legal in nature," courts must "consider the cause of action and the remedy it provides[,]" with remedy being the "more important consideration." *Id.* at 2129 (cleaned up).

The Supreme Court in *Jones & Laughlin* spoke directly to the nature of an NLRB proceeding when it explained such a proceeding is "not a suit at common law or in the nature of such a suit." 301 U.S. at 48. As the Court explained, because an NLRB "proceeding is one unknown to the common law[,]" and because the Seventh Amendment "has no application to cases where recovery of monetary damages is an incident to equitable relief[,]" the Seventh Amendment was inapplicable to remedies "imposed for violation of the [NLRA.]" *Id.* at 48.

An NLRB proceeding does not adjudicate causes of action similar to those recognized at common law. *See Agwilines, Inc. v. NLRB*, 87 F.2d

28

146, 151 (5th Cir. 1936) ("the statute may not be construed as establishing . . . a common-law right to damages. . . . If it gives any right, it gives a new one unknown to the common law."); *Janus v. AFSCME Council 31*, 585 U.S. 878, 904 n.7 (2018) ("under common law, collective bargaining was unlawful" (citation omitted)). And a Board proceeding does not result in remedies intended to punish or deter wrongdoers, as the Board grants "equitable relief." *See Agwilines*, 87 F.2d at 151 (Board exerts "power to restore status disturbed in violation of statutory injunction similar to that exerted by a chancellor in issuing mandatory orders to restore status").

Not only does an NLRB proceeding not pass *Jarkesy*'s test for whether the Seventh Amendment attaches, it also falls within the public rights exception to the reach of Article III and the Seventh Amendment. *See Jarkesy*, 144 S. Ct. at 2131 (explaining that "[u]nder this exception, Congress may assign the matter for decision to an agency without a jury"). As the Court explained, "[i]n contrast to common law claims, no involvement by an Article III court in the initial adjudication is necessary in" cases involving "public rights." *Id.* at 2132. Only "matters concerning private rights may not be removed from Article III courts[,]" and "[i]f a

suit is in the nature of an action at common law, then the matter presumptively concerns private rights, and adjudication by an Article III court is mandatory." *Id.*

The NLRA "did not borrow its cause of action from the common law[,]" *id.* at 2137, and so actions under the Act are "not suits at common law or in the nature of such suits[,]" *id.* at 2138, quoting *Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 453 (1970) (quoting in turn *Jones & Laughlin*, 301 U.S. at 48) (cleaned up). The rights established in the NLRA do not "reiterate common law terms of art" and so "bring no common law soil with them." *Id.* at 2137. Unlike the fraud claims in *Jarkesy*, unfair labor practice claims "had never been brought in an Article III court" prior to the passage of the Act. *Id.* at 2138. And the Supreme Court has long recognized that the NLRA protects public rights. *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 362 (1940). As such, NLRA claims fall within the public rights exception, and can be assigned to the NLRB for adjudication.

The Board's *Thryv* remedies do not change this analysis. *First*, as explained, the Seventh Amendment does not attach to Board proceedings. *Second*, *Thryv* remedies are equitable.

"What determines whether a monetary remedy is legal is if it is designed to punish or deter the wrongdoer, or, on the other hand, solely to restore the status quo." *Jarkesy*, 144 S. Ct. at 2129 (cleaned up). *Thryv* remedies are intended not to punish, but to further the "underlying policy of Section 10(c) [of the NLRA, which] is 'a restoration of the situation, as nearly as possible, to that which would have obtained but for the illegal discrimination.'" *Thryv*, 372 NLRB No. 22, at \*7 (cleaned up) (quoting *Phelps Dodge*, 313 U.S. at 194). "Making the workers whole for losses suffered on account of an unfair labor practice is part of the vindication of the public policy which the Board enforces." *Phelps Dodge*, 313 U.S. at 197. The Board's *Thryv* remedies further vindication of the public policy by ensuring that the discriminatee employees, as well as other employees, will not be chilled in the exercise of their statutory rights by unremedied harms. *Thryv* remedies are then equitable, not legal.

That is further clarified by comparing *Thryv* remedies to the civil penalties in *Jarkesy*, which the Supreme Court found to be legal based on three characteristics. *First*, whether the civil penalties were available turned on considerations related to "culpability, deterrence, and recidivism." *Jarkesy*, 144 S. Ct. at 2129. *Id*. *Second*, the size of the civil

penalties was based on "the culpability of the defendant and the need for deterrence, not the size of the harm that must be remedied." *Id.* at 2130. *Third*, the civil penalties at issue were punitive because "the SEC is not obligated to return any money to victims." *Id.* (cleaned up). *Thryv* remedies do not share any of these characteristics.

Accordingly, nothing about *Thryv* remedies changes the Supreme Court's holding in *Jones & Laughlin* that the Seventh Amendment does not attach to NLRB proceedings.

## CONCLUSION

The motion for a preliminary injunction should be denied.

Dated: September 23, 2024

<div style="margin-left:40%">

Respectfully submitted,

MATTHEW GINSBURG
    *General Counsel*

*/s/ Andrew Lyubarsky*
ANDREW LYUBARSKY
    *Associate General Counsel*
MANEESH SHARMA
    *Associate General Counsel*
AFL-CIO
815 Black Lives Matter Plaza N.W.
Washington, DC 20006
Tel. (202) 227-8969
alyubarsky@aflcio.org
*Counsel for Amicus Curiae*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2024, I caused the foregoing *amicus curiae* brief to be filed with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit. The Court's CM/ECF system was used to file the brief, and service will thus be accomplished by the CM/ECF system on all CM/ECF registered counsel.

Dated: September 23, 2024

*/s/ Andrew Lyubarsky*
Andrew Lyubarsky
AFL-CIO
815 Black Lives Matter Plaza N.W.
Washington, DC 20006
Tel. (202) 227-8969
alyubarsky@aflcio.org

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains **6,495 words**, excluding those portions of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using 14-point **Century Schoolbook font**.

Dated: September 23, 2024

*/s/ Andrew Lyubarsky*
Andrew Lyubarsky
AFL-CIO
815 Black Lives Matter Plaza N.W.
Washington, DC 20006
Tel. (202) 227-8969
alyubarsky@aflcio.org

*Counsel for Amicus Curiae*