No. 24-40315

*In the*

# United States Court of Appeals for the Fifth Circuit

SPACE EXPLORATION TECHNOLOGIES, CORPORATION,
*Plaintiff-Appellant*,

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency;
JENNIFER ABRUZZO, in her official capacity as the General Counsel of the
National Labor Relations Board; LAUREN M.MCFERRAN, in her official
capacity as the Chairman of the National Labor Relations Board; MARVIN E.
KAPLAN, in his official capacity as a Board Member of the National Labor
Relations Board; GWYNNE A.WILCOX, in her official capacity as a Board
Member of the National Labor Relations Board; DAVID M. PROUTY, in his
official capacity as a Board Member of the National Labor Relations Board; JOHN
DOE, in his official capacity as an Administrative Law Judge of the National
Labor Relations Board,
*Defendants-Appellees*.

On Interlocutory Appeal from the
United States District Court for the Southern District of Texas
Civil Action No. 24-cv-00001

**BRIEF OF LAW PROFESSORS ERWIN CHEMERINSKY, BROOKE D.
COLEMAN, MAGGIE GARDNER, MYRIAM GILLES, J. MARIA
GLOVER, HELEN HERSHKOFF, RILEY T. KEENAN, DAVID MARCUS,
DAVID NOLL, LUKE NORRIS, JUDITH RESNIK, ADAM STEINMAN,
DAVID C. VLADECK, AND STEPHEN I. VLADECK AS AMICI CURIAE
IN SUPPORT OF DEFENDANTS-APPELLEES**

Michael Rubin
Stacey M. Leyton
Juhyung Harold Lee
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
*Attorneys for Amici Curiae*

## SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS

### *No. 24-40315, Space Exploration Technologies, Corporation v. National Labor Relations Board et al.*

The undersigned counsel for amici curiae certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.  Amici respectfully submit that their brief will assist the Court because amici have substantial expertise in and have researched, published, and taught courses on the federal courts, civil procedure, and constitutional law—areas that are highly relevant to this case.  Amici here include the following professors of federal courts, civil procedure, and constitutional law:

**Amici Curiae:**[*]

*Erwin Chemerinsky*, Dean and Jesse H. Choper Distinguished Professor of Law at University of California, Berkeley School of Law

*Brooke D. Coleman*, Vice Dean for Academic Affairs and Fredric C. Tausend Professor of Law at Seattle University School of Law

*Maggie Gardner*, Professor of Law at Cornell Law School

*Myriam Gilles*, Paul R. Verkuil Chair in Public Law at Cardozo School of Law

*J. Maria Glover*, Professor of Law at Georgetown University Law School

_____

[*] Institutional affiliations listed for identifications purposes only.

i

*Helen Hershkoff*, Herbert M. and Svetlana Wachtell Professor of Constitutional Law and Civil Liberties at New York University School of Law

*Riley T. Keenan*, Assistant Professor of Law at the University of Richmond School of Law

*David Marcus*, Professor of Law at University of California, Los Angeles School of Law

*David Noll*, Professor of Law at Rutgers Law School

*Luke Norris*, Professor of Law at University of Richmond School of Law

*Judith Resnik*, Arthur Liman Professor of Law at Yale Law School

*Adam Steinman*, Robert W. Hodgkins Endowed Chairholder in Law at University of Alabama School of Law

*David C. Vladeck*, A.B. Chettle, Jr. Professor of Law at Georgetown Law School

*Stephen I. Vladeck*, Charles Alan Wright Chair in Federal Courts at the University of Texas School of Law

**Counsel for Amici:**

Michael Rubin
Stacey M. Leyton
Juhyung Harold Lee
ALTSHULER BERZON LLP

As required by Federal Rule of Appellate Procedure 26.1, Amici Curiae

certify that no publicly traded company or corporation—aside from any that may

be identified in the Parties' certificates of interested persons—has an interest in the

outcome of this case or appeal.  No party's counsel authored the brief in whole or part or contributed money intended to fund the brief's preparation.**

/s/ *Michael Rubin*
Michael Rubin
*Attorney for Amici Curiae*

---

** A portion of the money used to fund preparation or submission of the brief was contributed by the Service Employees International Union, a not-for-profit labor organization exempt from income tax under section 501(c)(5) of the Internal Revenue Code.  It does not have a parent corporation, and no publicly held company has a 10% or greater ownership interest in it.

# TABLE OF CONTENTS

SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS.......................i

TABLE OF CONTENTS.......................................................................... iv

TABLE OF AUTHORITIES ...................................................................v

INTEREST OF AMICI ..........................................................................1

ARGUMENT ........................................................................................1

I.     Under this Court's precedents, the district court's inaction did not
       constitute an effective denial of the underlying injunction motion..........3

       A. The practical-effect doctrine typically applies to district court
          orders that have the practical effect of granting, modifying, or
          denying an injunction. .........................................................4

       B. In the absence of an order effectively denying an injunction,
          appellate jurisdiction may be appropriate where the district
          court's inaction constitutes an abuse of discretion.............................6

       C. The district court's failure to rule on the injunction before the
          date requested by Appellant did not constitute an abuse of
          discretion. .......................................................................9

       D. Appellant's broad interpretation of the practical-effect doctrine
          is inconsistent with this Court's practical-effect precedents and
          would otherwise improperly expand the narrow scope of
          § 1292(a)(1)....................................................................12

II.    There is no separate showing of a serious, irreparable consequence
       that can only be prevented by immediate appeal. ...................................19

CONCLUSION.....................................................................................24

CERTIFICATE OF COMPLIANCE...................................................................26

CERTIFICATE OF SERVICE .........................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abbott v. Perez,*
    585 U.S. 579 (2018)...................................................................5

*Ass'n of Co-op. Members, Inc. v. Farmland Indus., Inc.,*
    684 F.2d 1134 (5th Cir. 1982) ............................................12

*Axon Enterprise, Inc. v. Federal Trade Commission,*
    598 U.S. 175 (2023)...........................................................22, 23

*Baltimore Contractors, Inc. v. Bodinger,*
    348 U.S. 176 (1955)...................................................................2

*Browning v. Kramer,*
    931 F.2d 340 (5th Cir. 1991) ...............................................18

*Carson v. Am. Brands, Inc.,*
    450 U.S. 79 (1981)........................................................*passim*

*Clarke v. Commodity Futures Trading Commission,*
    74 F.4th 627 (5th Cir. 2023) ...........................................16, 21

*Cloud v. United States,*
    No. 94-11165, 1995 WL 449638 (5th Cir. July 11, 1995) ................20

*Collins v. Yellen,*
    594 U.S. 220 (2021).................................................................23

*Complaint of Ingram Towing Co.,*
    59 F.3d 513 (5th Cir. 1995) .....................................................5

*Cruson v. Jackson Nat'l Life Ins. Co.,*
    954 F.3d 240 (5th Cir. 2020) ...............................................18

*In re Deepwater Horizon,*
    988 F.3d 192 (5th Cir. 2021) ...............................................18

*E.E.O.C. v. Kerrville Bus Co.*,
  925 F.2d 129 (5th Cir. 1991) ...................................................................6, 21, 22

*Firestone Tire & Rubber Co. v. Risjord*,
  449 U.S. 368 (1981).................................................................................21

*In re Fort Worth Chamber of Commerce*,
  100 F.4th 528 (5th Cir. 2024) ...........................................................*passim*

*Gardner v. Westinghouse Broad. Co.*,
  437 U.S. 478 (1978).................................................................................3

*Harvey Specialty & Supply, Inc. v. Anson Flowline Equip., Inc.*,
  434 F.3d 320 (5th Cir. 2005) ................................................................12

*Jones v. Infocure Corp.*,
  310 F.3d 529 (7th Cir. 2002) ................................................................12

*Leachco, Inc. v. Consumer Prod. Safety Comm'n*,
  103 F.4th 748 (10th Cir. 2024) .......................................................22, 23

*McCoy v. Louisiana State Board of Education*,
  332 F.2d 915 (5th Cir. 1964) ...........................................................*passim*

*Mass. Ass'n for Retarded Citizens v. King*,
  643 F.2d 899 (1st Cir. 1981).................................................................5

*National Association for the Advancement of Colored People,*
  *NAACP v. Tindell*,
  90 F.4th 419 (5th Cir.), *withdrawn and superseded by* 95 F.4th 212
  (5th Cir. 2024).......................................................................16, 17, 21

*National Association for the Advancement of Colored People v.*
  *Thompson*,
  321 F.2d 199 (5th Cir. 1963) ...........................................................8, 9

*Overton v. City of Austin*,
  748 F.2d 941 (5th Cir. 1984) .........................................................4, 5, 9

*Sampson v. Murray*,
  415 U.S. 61 (1974)................................................................................5

*Seila Law LLC v. Consumer Financial Protection Bureau,*
    591 U.S. 197 (2020)........................................................................22

*Sherri A.D. v. Kirby,*
    975 F.2d 193 (5th Cir. 1992) .....................................................*passim*

*Stringer v. Town of Jonesboro,*
    986 F.3d 502 (5th Cir. 2021) .............................................................18

*Switzerland Cheese Ass'n, Inc. v. E. Horne's Mkt., Inc.,*
    385 U.S. 23 (1966)..............................................................................3

*United States v. City of Jackson, Miss.,*
    519 F.2d 1147 (5th Cir. 1975) ......................................................9, 19

*United States v. Lynd,*
    301 F.2d 818 (5th Cir. 1962) ....................................................*passim*

## Federal Statutes

28 U.S.C. § 1292(a) ..........................................................................*passim*

28 U.S.C.
    § 1404(a) ...................................................................................14, 15
    § 1406(a) ...................................................................................15, 24

## Constitutional Provisions

Fifth Amendment .................................................................................21

**INTEREST OF AMICI**

Amici curiae are law professors in fields including civil procedure, federal courts, and constitutional law.  They have ongoing interests in ensuring adherence to statutory and procedural rules for federal appellate courts in their consideration of cases.  Amici's scholarly and teaching experiences will, they hope, provide insights into the law governing SpaceX's improper assertion of appellate jurisdiction.  Counsel for all parties have been notified and have consented to the filing.

**ARGUMENT**

The Court should dismiss the instant appeal for lack of subject-matter jurisdiction under 28 U.S.C. § 1292(a)(1), which is the only asserted basis for appellate jurisdiction.  In light of "the general congressional policy against piecemeal review," section 1292(a)(1) "carve[s] out only a limited exception to the final-judgment rule" for "[i]nterlocutory orders of the district courts … granting, continuing, modifying, refusing or dissolving injunctions."  *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83–84 (1981) (third quotation quoting § 1292(a)(1) (emphasis removed)).  An order that does not expressly "refus[e]" an injunction but "ha[s] the practical effect of doing so" may fall within this "narrow[]" exception.  *Id.*  However, given the already circumscribed nature of § 1292(a)(1), both the Supreme Court and this Court have cautioned that appellate review of such an

1

order should be made available even more sparingly, and "only in circumstances where an appeal will further the statutory purpose of 'permit[ting] litigants to effectually challenge interlocutory orders of serious, perhaps irreparable consequence.'" *Id.* at 84 (quoting *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 181 (1955)); *accord, e.g.*, *Sherri A.D. v. Kirby*, 975 F.2d 193, 203 (5th Cir. 1992).

In ordinary practical-effect cases such as *Carson*, the appeal arises from a district court order that takes some action that has the effect of granting, modifying, or denying an injunction, even though the district court does not characterize its action as such. Here, by contrast, Appellant purports to appeal from the *absence* of an order on its preliminary injunction motion and asks this Court to decide that motion in the first instance. Although this Court has on a few rare occasions found that district court *in*action on an injunction motion may effectively deny that motion for purposes of § 1292(a)(1), it has typically done so only where the movant has established before the district court that it is clearly entitled to injunctive relief, but the district court has abused its discretion by improperly delaying issuance of that relief, *and* where immediate appeal is necessary to avoid a serious and irreparable injury. *See, e.g.*, *United States v. Lynd*, 301 F.2d 818, 820–22 (5th Cir. 1962) (finding an effective denial where the district court conducted a merits hearing on the injunction motion, the movant

2

"proved without question" its entitlement to relief, but the district court sought unduly to delay ruling on the motion).

The instant case does not present such unusual circumstances. Nor does this case involve the sort of harms that § 1292(a)(1)'s narrow exception to the final judgment rule was intended to address. Rather than expand the scope of that exception, and open the door to more frequent and spurious attempts to bypass the district courts, the Court should dismiss this appeal for lack of subject-matter jurisdiction.

## I.    Under this Court's precedents, the district court's inaction did not constitute an effective denial of the underlying injunction motion.

By allowing for the immediate appeal of "[i]nterlocutory orders … granting, continuing, modifying, refusing or dissolving injunctions," § 1292(a)(1) provides an exception to "the general principle that only final decisions of the federal district courts would be reviewable on appeal." § 1292(a)(1); *Carson*, 450 U.S. at 83. "The exception is a narrow one," which courts are "not authorized to enlarge or extend." *Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478, 480 (1978); *see also, e.g.*, *Switzerland Cheese Ass'n, Inc. v. E. Horne's Mkt., Inc.*, 385 U.S. 23, 24 (1966) ("[W]e approach [§ 1292(a)(1)] somewhat gingerly lest a floodgate be opened that brings into the exception many pretrial orders.").

Although the Supreme Court and this Court have interpreted § 1292(a)(1) to allow for the immediate appeal of an effective denial of injunctive relief, closer

3

examination of those precedents establishes that the district court in this case did not effectively deny an injunction within the meaning of the statute. Where, as here, there is no court order that has the effect of denying a request for injunctive relief, and the district court did not unduly seek to delay issuance of injunctive relief to which the movant is clearly entitled, this Court has declined to assert jurisdiction under § 1292(a)(1). The Court should similarly decline to do so here.

### A. The practical-effect doctrine typically applies to district court orders that have the practical effect of granting, modifying, or denying an injunction.

In *Carson*, the Supreme Court addressed the practical effect of a written and reasoned order denying a motion to enter a proposed consent decree. *See* 450 U.S. at 81–82. Because the district court rejected the proposed decree on the merits, and "prospective relief was at the very core of the disapproved settlement," the Court easily concluded that the order refused an injunction within the meaning of § 1292(a)(1), even though the district court did not describe its order in those terms. *Id.* at 81, 83–84; *see also Overton v. City of Austin*, 748 F.2d 941, 950 (5th Cir. 1984) ("[I]n *Carson*, the district court clearly ruled on the proposed consent decree and entered an order denying the motion to enter it, together with an opinion stating its reasons."). The Supreme Court has since elaborated that this practical-effect inquiry focuses on the intent of the district court and serves to "prevent[] … manipulation" by courts seeking "to 'shield [their] orders from

4

appellate review' by avoiding the label 'injunction.'" *Abbott v. Perez*, 585 U.S. 579, 595 (2018) (quoting *Sampson v. Murray*, 415 U.S. 61, 87 (1974)) (discussing *Carson*).

Consistent with this purpose as well as with the text of § 1292(a)(1), this Court has typically applied the practical-effect doctrine to actual *orders* of the district courts. As this Court has observed, "[w]hile section 1292(a)(1) appealability requires that there be a 'granting, continuing, modifying, refusing or dissolving … or refusing to dissolve or modify' an injunction, it also requires that this be done by *order*." *Overton*, 748 F.2d at 951 (emphasis added) (quoting *Mass. Ass'n for Retarded Citizens v. King,* 643 F.2d 899, 904 (1st Cir. 1981)); *see also id.* at 950–51 (declining to find jurisdiction in part because "the district court has *not* denied or refused the motion to enter the consent decrees, and has made no order, written or oral, in that regard"). This Court has similarly recognized that "[i]nterlocutory appeals are not favored and the statutes allowing them must be strictly construed." *Complaint of Ingram Towing Co.*, 59 F.3d 513, 515 (5th Cir. 1995).

Limiting appeals to cases with a written order also helps ensure the narrow scope of § 1292(a)(1) is not unduly broadened. This Court looks to the written order for some "substantial indication—whether from the language of the order, or the grounds on which it rests, or the circumstances in which it was entered—that

the district court was acting specifically to deny injunctive relief." *E.E.O.C. v. Kerrville Bus Co.*, 925 F.2d 129, 132 (5th Cir. 1991); *see also id.* at 132 n.4 ("[O]ur cases have been careful to discern whether the order at issue particularly referred to, or was directed at, the injunctive relief sought."). Without such an indication, the Court risks unduly expanding the narrow scope of § 1292(a)(1), and contravening "the important policy of avoiding piecemeal appeals" that § 1292(a)(1) serves. *Id.* at 132.

**B. In the absence of an order effectively denying an injunction, appellate jurisdiction may be appropriate where the district court's inaction constitutes an abuse of discretion.**

On certain rare occasions, this Court has applied the practical-effect doctrine to the *absence* of an order on an injunction motion. In doing so, the Court has looked to other actions taken by the district court to discern the district court's intent, and whether the district court's inaction may be fairly interpreted as a deliberate effort to deny an injunction within the meaning of § 1292(a)(1).

Most notably, in *Lynd*, a pre-*Carson* case, the Court considered whether it had jurisdiction to issue an injunction pending appeal where, "eight months after the suit for injunction was filed," the district court conducted an evidentiary hearing at which the movant presented evidence in support of its preliminary injunction motion, but the court "declin[ed] either to grant or refuse" the motion at the hearing's close, and instead "granted a recess of thirty days to permit the

6

defendants to file their answer and to prepare for proving their defens[e] case." 301 F.2d at 820–21.  In asserting jurisdiction to consider the motion for injunction pending appeal—but "not … the appeal from the refusal of the trial court to grant the temporary injunction on the merits"—the Court determined that the movant was "clearly entitled to have a ruling from the trial judge" "at the end of its presentation of evidence."  *Id.* at 822.  The Court therefore concluded that the district court's deliberate and unjustified withholding of such ruling was "in all respects a 'refusal,' so as to satisfy … Section 1292."  *Id.*

The Court took a similar approach in *McCoy v. Louisiana State Board of Education*, 332 F.2d 915 (5th Cir. 1964).  There, the movant sought an injunction prohibiting state officials from denying her admission to a state college on the basis of her race.  *See id.* at 916.  The district court conducted a hearing on the injunction motion, at which the movant clearly established her entitlement to the requested relief.  *See id.* ("School officials testified that there was no reason for appellant's rejection other than the belief that state law prohibits the college from accepting a Negro.").

Nevertheless, the district court declined to rule on the fully argued motion for more than three months, and then only did so after the movant sought a writ of mandamus in this Court.  *See id.*  Even then, however, rather than rule on the merits of the motion, the district court "dismissed the suit as to the Louisiana State

Board of Education and ruled that the individual members of the Board are necessary and indispensable parties, giving appellant sixty days in which to join them." *Id.* at 916–17. Because the movant had clearly established her right to attend the college, but the procedural delay ordered by the district court ensured that no ruling on the injunction motion would issue until after the relevant school term had already started, "it [was] clear that the practical [and intended] effect of the district court's [procedural] order was to deny the preliminary injunction." *Id.* at 917.

By contrast, in *National Association for the Advancement of Colored People v. Thompson*, 321 F.2d 199 (5th Cir. 1963), the Court declined to assert jurisdiction where the underlying injunction motion required "resolution of a fact issue between conflicting evidence" and involved a "difficult and delicate field of constitutional law." *Id.* at 202. In such circumstances, the Court was "unable to say that for the trial court to require time for a study of the record and the applicable law … before either granting or denying the relief … was an abuse of its discretion," and therefore, the Court could not discern whether the district court's delay was intended to deny the injunction. *Id.*

Accordingly, "it does not follow that every failure of a trial court to grant a temporary injunction is tantamount to a 'refusal' of such injunctive relief." *Id.* The Court exercised § 1292(a)(1) jurisdiction in *Lynd* and *McCoy* because in those

8

cases, "the plaintiff's rights" to an injunction were "so clearly established"
following evidentiary hearings that the "failure of the trial court to grant the
injunctive relief would be set aside by an appellate court as an abuse of discretion."
*Id.* *Lynd* and its progeny thus stand for the more limited principle that only "when
the plaintiff is '*clearly entitled* to have a ruling from the trial judge'" on the
injunction motion may the failure to issue such a ruling "constitute an 'order
refusing' injunctive relief." *Id.* (emphasis added).

**C. The district court's failure to rule on the injunction before the date
requested by Appellant did not constitute an abuse of discretion.**

This case is a "far cry" from *Lynd* or *McCoy*. *Overton*, 748 F.2d at 951.
Unlike in those cases, the district court has not held a hearing on the underlying
injunction motion, and Appellant has not otherwise established that it is clearly
entitled to have that motion granted. *See, e.g.*, *United States v. City of Jackson,
Miss.*, 519 F.2d 1147, 1153 (5th Cir. 1975) (emphasis added) ("[I]n *Lynd* there was
a convincing showing, by evidence at a hearing on the merits, of the movant's right
to relief."). Nor are there any "indications of partiality on the part of the trial court
[or] a paucity of plausible excuses for the delay" in ruling on the motion, such that
the appeals court can infer that the district court is unduly refraining from deciding
the motion in a deliberate attempt to prevent interlocutory review. *Id.*; *see also,
e.g.*, *Overton*, 748 F.2d at 951 (noting that the procedural history of *Lynd* "is
replete with examples of the district court's having placed extreme if not wholly

unreasonable requirements upon the government respecting particularized proofs of the underlying complaint, and of having granted questionable dilatory pleas and motions by defendants").

Rather, the reason why Appellant has not yet obtained a ruling on its motion is because it has repeatedly sought to challenge the district court's ruling that venue was improper—first, by filing a mandamus petition in this Court on February 16, 2024; then by seeking en banc review of the motions panel's denial of that petition on March 7, 2024; and then by filing a motion for reconsideration in the district court on April 17, 2024, after the en banc petition was also denied. Irrespective of whether Appellant was wise to prioritize challenging the transfer order over receiving a prompt decision on its injunction motion, it cannot be said that the district court acted unreasonably in waiting for the resolution of Appellant's various procedural challenges to the transfer of venue. *See, e.g.*, Plaintiff SpaceX's Motion for Reconsideration or, in the Alternative, a Ruling on its Preliminary Injunction Motion, *Space Expl. Techs. Corp. v. Nat'l Lab. Rels. Bd.*, No. 1:24-cv-00001 (S.D. Tex. Apr. 17, 2024), ECF No. 112, at 1 ("This Court gave timely consideration to complex issues in a fast-moving case."); *see also, e.g.*, *id.* at 2–3 (requesting that the district court decide the preliminary injunction motion *only* in the alternative "if the Court is not inclined to reconsider its decision to transfer the case").

10

Nor does the district court's transfer order itself supply the necessary jurisdictional foothold under *Lynd*. Again, this Court has already had two opportunities to review that order. According to Appellant, the only way for it to seek interlocutory review of that decision was by writ of mandate. *See, e.g.*, Reply in Support of Emergency Petition for Writ of Mandate, *In re: Space Expl. Techs., Corp.*, No. 24-40103 (5th Cir. Feb. 23, 2024), ECF No. 38-1, at 3 ("[M]andamus is SpaceX's only adequate means of relief.").[1] And as reflected by this Court's initial denial of Appellant's mandamus petition and subsequent denial of en banc review, it cannot be said that the order constituted an abuse of discretion. Nevertheless, Appellant proceeded to file a motion for reconsideration of that order, in which it requested only as *alternative* relief the preliminary injunction that now provides the asserted basis for this appeal. Insofar as Appellant seeks to use § 1292(a)(1) to bring the district court's venue decision before this Court for a third time on interlocutory review, the Court should reject that attempt and dismiss the appeal. *See, e.g.*, *Carson*, 450 U.S. at 84 (emphasizing that § 1292(a)(1) must be

---

[1] Several amici previously argued that Appellant could have sought certification of the venue issue for interlocutory review under § 1292(b). *See* Brief of Law Professors as Amici Curiae in Support of Respondents' Opposition to Petition for Expedited Rehearing En Banc, *In re: Space Expl. Techs.*, No. 24-40103 (Mar. 18, 2024), ECF No. 80-2. Having failed to do so, Appellant cannot make an end-run around that provision through the narrow exception set forth in § 1292(a)(1).

"construed … narrowly").[2]

### D. Appellant's broad interpretation of the practical-effect doctrine is inconsistent with this Court's practical-effect precedents and would otherwise improperly expand the narrow scope of § 1292(a)(1).

According to Appellant, the practical-effect doctrine provides for appellate jurisdiction where (1) a movant identifies a "requested ruling date," (2) "the district court ha[s] time to act" by that date, but (3) the court fails to do so. Appellant's Opening Br., ECF No. 88, at 84. Not only is such an expansive interpretation of § 1292(a)(1) contrary to *Lynd*, but it is also at odds with Appellant's cited cases, the narrow and strictly construed nature of § 1292(a)(1), and other longstanding principles governing this Court's operation. Given the regularity with which litigants request injunctive relief by a specified date, holding the practical-effect doctrine applicable to this case would undoubtedly lead to more frequent invocations of that exception, and invite mischief by litigants seeking to skip the

---

[2] While this amicus brief focuses on the absence of appellate jurisdiction to review the "effective denial" of SpaceX's requested preliminary injunction, amici also agree with the National Labor Relations Board that the district court's venue decision is not properly before this Court. Mandamus review of that venue decision was denied, and this appeal is not the proper mechanism for this Court to revisit that decision. As the Board points out, a transfer decision is reviewable under the "effective denial" doctrine only in narrow circumstances not present here. NLRB Answering Br. 17-18 (citing *Harvey Specialty & Supply, Inc. v. Anson Flowline Equip., Inc.*, 434 F.3d 320, 325-26 (5th Cir. 2005)); *Jones v. Infocure Corp.*, 310 F.3d 529, 537 (7th Cir. 2002); *see also Ass'n of Co-op. Members, Inc. v. Farmland Indus., Inc.*, 684 F.2d 1134, 1137–38 (5th Cir. 1982) ("Appellate review under s 1292(a)(1), however, ordinarily extends only to those parts of an interlocutory order that relate to the grant of an injunction.").

district courts entirely. It would also unduly increase the pressure on the district courts to issue rulings by deadlines unilaterally set by litigants, even in circumstances that do not call for such urgency.

Appellant relies primarily on *In re Fort Worth Chamber of Commerce*, 100 F.4th 528 (5th Cir. 2024), a mandamus action in which this Court concluded that "the district court's inaction amounted to an effective denial of the [requested]… preliminary injunction" motion, giving rise to an appealable order under § 1292(a)(1). *Id.* at 537. But as in *Lynd* and *McCoy*—on which *Fort Worth Chamber* relies, *see id.* at 533 n.12—and unlike here, the Court in *Fort Worth Chamber* determined that the district court had committed a "clear abuse of discretion" that contributed to the delay, which the Court subsequently addressed with a writ of mandamus. *Id.* at 541.

*Fort Worth Chamber* also relied on several other factors to support its conclusion that the district court intended to effectively deny injunctive relief, none of which is present here. First, the movant in that case moved quickly and repeatedly for expedited briefing, which the district court had previously "found good cause" to grant. *Id.* at 534 (noting the movant's "diligence in seeking to expedite briefing and consideration"). It was therefore clear in *Fort Worth Chamber* that the district court understood—and agreed—that it was necessary to resolve the motion quickly, such that failing to do so would effectively deny the

motion.  By contrast here, Appellant did not file its own motion to expedite

briefing, and in fact, *expressly disclaimed* the need to alter the normal course of the

proceeding.  *See, e.g.*, Plaintiff SpaceX's Opposition to Motion to Expedite

Briefing on Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C.

§ 1406(a) and § 1404(a) or, in the Alternative, Plaintiff's Request to Reciprocally

Expedite Preliminary Injunction Briefing, *Space X*, No. 1:24-cv-00001 (Jan. 17,

2024), ECF No. 49, at 2 ("The Court should preserve its ability to decide the

parties' motions in the order it deems appropriate after considering the parties'

respective arguments.").  Nor is there any other indication that the district court

understood or agreed that it would effectively deny the motion by failing to rule on

it by a certain date.

Second, *Fort Worth Chamber* placed particular emphasis on the fact that,

when the injunction motion "became ripe," the district court did not merely fail to

rule on that motion, but it sua sponte invited new briefing on venue under the

discretionary venue standard set forth in § 1404(a).  *Fort Worth Chamber*, 100

F.4th at 534; *see, e.g.*, *id.* at 535 (emphasis added and removed) ("[T]he district

court effectively denied the motion by failing to rule on it by [the requested] dates

*and* sua sponte inviting briefing on venue/transfer.").  Here, however, the district

court did not raise the venue issue on its own or in lieu of ruling on a pending

injunction motion.  Rather, Appellees independently filed their motion to transfer

venue—under both § 1406(a)'s mandatory standard and § 1404(a)'s discretionary standard—on January 11, 2024, *before* Appellant filed its injunction motion on January 12. It cannot be said, therefore, that the district court "welcome[d]" further delay or sought to manipulate the proceedings in some improper way. *Id.* at 532.

Third, the movant in *Fort Worth Chamber* responded to the district court's sua sponte request for briefing on venue by filing a motion for expedited consideration of its injunction motion, in which the movant expressly stated that if the district court did not promptly rule on its motion by a certain date, it would consider such inaction an effective denial and would seek immediate appellate review. *See id.* at 532 (noting request for ruling by March 22, 2024). Before the deadline imposed by the movant had passed, the district court issued a reasoned, written order denying the motion to expedite. *See id.*; Order, *Chamber of Com. of United States v. Consumer Fin. Prot. Bureau*, No. 4:24-CV-00213-P, ECF No. 51, at 1 (N.D. Tex. Mar. 20, 2024). That order supplied clear indication of the district court's intention not to grant injunctive relief by the requested date, thereby clearing the way for the movant to seek a practical-effect appeal, which it did only *after* the deadline it set had passed. *See* Plaintiffs' Notice of Appeal, *Chamber of Com. of United States*, No. 4:24-CV-00213-P, ECF No. 57 (N.D. Tex. Mar. 25, 2024).

There is no similarly clear indication of the district court's intention here. Although Appellant's reply in support of its motion for reconsideration requested—only as an *alternative* to its primary request for reconsideration of the district court's transfer decision—that the district court rule on its preliminary injunction motion by May 2, 2024, Appellant did not even wait for that date to pass before prematurely rushing to docket its appeal on April 30, 2024. Appellant also made no mention of its intention to invoke the practical-effect doctrine absent the requested relief. And the district court did not expressly state, in a written order or otherwise, that it would not decide the motion by the deadline newly set by Appellant. Given these distinctions, *Fort Worth Chamber* provides no support for Appellant's effort to extend the practical-effect doctrine's reach to *this* case.

Appellant also relies on *National Association for the Advancement of Colored People, NAACP v. Tindell*, 90 F.4th 419 (5th Cir.), *withdrawn and superseded by* 95 F.4th 212 (5th Cir. 2024), but in fact, that case illustrates one of several fundamental problems with Appellant's expansive interpretation of the practical-effect doctrine.[3] In *Tindell*, "[u]nbeknownst to th[e] court and

---

[3] *Tindell* and *Clarke v. Commodity Futures Trading Commission*, 74 F.4th 627 (5th Cir. 2023), on which Appellant also relies, are otherwise distinguishable. As in *Fort Worth Chamber*, the movants in both *Tindell* and *Clarke* filed motions for expedited relief in which they expressly invoked the practical-effect doctrine. *See* Plaintiffs' Motion for TRO or Injunction Pending Appeal, *Nat'l Ass'n for the Advancement of Colored People v. Reeves*, No. 3:23-cv-272-HTW-LGI (S.D. Miss. Dec. 27, 2023), ECF No. 128, at 2; Motion to Expedite Hearing and

16

(apparently) plaintiffs," the district court was planning to issue an order on the

pending injunctive relief request, and did so at or around the same time that this

Court issued an injunction pending appeal—unnecessarily, it turns out—under the

practical-effect doctrine. *See* 90 F.4th at 422. It is precisely because the practical-

effect doctrine always requires some degree of appellate guesswork—and therefore

invites potential mischief by litigants seeking to skip ahead to appellate review—

that this Court has cautioned against broader application of the rule. *See, e.g.*,

*Sherri A.D.*, 975 F.2d at 203 (explaining the need in practical-effect cases to

"safeguard against undue widening of the floodgates which currently keep in

proper bounds the § 1292(a)(1) exception to the final judgment rule" because the

effective "grant, denial or modification of an injunction" is not always "simple to

recognize and can[] be conjured up by sophistic counsel where it does not in fact

exist").

Appellant's proposed approach is also in tension with other established

principles frequently cited by this Court. First, "[a]s a court for review of errors,"

this Court generally does "not … decide facts or make legal conclusions in the first

---

Resolution of Plaintiffs' Motion for Preliminary Injunction, *Clarke v. Commodity Futures Trading Comm'n*, No. 1:22-cv-00909-DAE (W.D. Tex. Nov. 18, 2022), ECF No. 23, at 6. And, as in *Fort Worth Chamber*, the district court in *Tindell* expressly denied the movant's motion for expedited relief. *See* Minute Entry, *Reeves*, No. 3:23-cv-272-HTW-LGI (Dec. 28, 2023), ECF No. 132.

instance." *Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991). But unlike in cases like *Lynd*, 301 F.2d at 820-22, and *McCoy*, 332 F.2d at 916, where it was apparent that the district court *had* considered the request for injunctive relief on the merits, or *Fort Worth Chamber*, 100 F.4th at 537–38, where the Court still gave the district court initial pass at the injunction motion, Appellant urges this Court to decide its injunction motion in the first instance. Pursuant to the "repeatedly observed" maxim that this Court is a "court of review, not first view," the Court should decline to do so. *Stringer v. Town of Jonesboro*, 986 F.3d 502, 509 (5th Cir. 2021) (quoting *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 249 n.7 (5th Cir. 2020)).

Second, this Court has also frequently recognized the "broad discretion and inherent authority" of a district court "to manage its [own] docket." *In re Deepwater Horizon*, 988 F.3d 192, 197 (5th Cir. 2021). Although *Lynd* establishes that the district court's discretion in this regard has limits, if this principle is to retain any vitality, "plaintiffs cannot simply say they need an expedited ruling and then appeal by claiming effective denial when they don't get it on their preferred timeline." *Fort Worth Chamber*, 100 F.4th at 535. Because that is exactly what Appellant has attempted to do here, the Court should dismiss the appeal.

In sum, this is not one of the "unusual case[s]" where the district court's failure to rule on the injunction motion "would amount to an abuse of discretion,

*and* there is unjustified delay." *Jackson*, 519 F.2d at 1153 (emphasis added; citation omitted).  The Court should therefore not countenance Appellant's efforts to transform the practical-effect doctrine from an uncommon application of a narrow exception into an easy shortcut to appellate review—or in this case, appellate *first* view.

## II.    There is no separate showing of a serious, irreparable consequence that can only be prevented by immediate appeal.

This Court should decline to assert jurisdiction for a separate, independent reason.  Where, as here, a litigant seeks to appeal from the alleged effective denial of an injunction, the "litigant must show more than that the order has the practical effect of refusing an injunction." *Carson*, 450 U.S. at 84.  "Unless a litigant can show that an interlocutory order of the district court might have a 'serious, perhaps irreparable, consequence,' and that the order can be 'effectually challenged' *only* by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal." *Id.* (emphasis added).  The Supreme Court and this Court have explained that these additional requirements are necessary because § 1292(a)(1) must be "construed … narrowly to ensure that appeal as of right under [the statute] will be available only in circumstances where an appeal will further the statutory purpose." *Id.*; *accord Sherri A.D.*, 975 F.2d at 203 (emphasizing that "[t]he showing of a threat of immediate and irreparable harm" addresses the Supreme Court's "concern not to expand exceptions to the final

19

judgment rule too far").

Appellant does not squarely address these binding features of the practical-effect doctrine, much less purport to satisfy them. For that reason alone, the Court should decline jurisdiction. *See Cloud v. United States*, No. 94-11165, 1995 WL 449638, at *2 (5th Cir. July 11, 1995) (dismissing appeal for lack of jurisdiction where appellant "ma[de] no attempt" to comply with *Carson*). But even if Appellant had tried to make the required additional showing under *Carson*, it could not do so.

First, Appellant does not face the sort of serious, irreparable consequence required by *Carson*. Appellant invokes the practical-effect doctrine on the ground that the district court did not issue a ruling on Appellant's preliminary injunction motion by May 2, 2024.[4] *See, e.g.*, Plaintiff SpaceX's Notice of Appeal, *In re: Space Expl. Techs.*, No. 24-40315 (May 1, 2024), ECF No. 1, at 4. According to Appellant, the reason why it needed relief by that date was because a teleconference on discovery issues in the underlying administrative proceeding had been scheduled for that date. *See* Plaintiff SpaceX's Reply in Support of Motion for Reconsideration or, in the Alternative, a Ruling on its Preliminary Injunction

---

[4] As discussed above, Appellant did not identify this alleged deadline until filing its April 26, 2024 Reply in Support of Motion for Reconsideration or, in the Alternative, a Ruling on its Preliminary Injunction Motion, and did not even wait until its own deadline to docket the instant appeal.

Motion, *Space Expl. Techs.*, No. 1:24-cv-00001 (Apr. 26, 2024), ECF No. 117, at

1; *see id.*, Ex. A, ECF No. 117-1 (email from agency stating that teleconference

was only "preliminary").[5]

    Treating this alleged harm as a sufficiently "serious" and "irreparable

consequence" would render *Carson*'s important "safeguard[s]" meaningless.

*Sherri A.D.*, 975 F.2d at 203.  As this Court has explained, irreparable harm for

purposes of *Carson* must be "greater than the harm suffered by any litigant forced

to wait until the termination of the [proceedings] before challenging interlocutory

orders it considers erroneous." *Id.* at 204 n.15 (quoting *Firestone Tire & Rubber

Co. v. Risjord*, 449 U.S. 368, 378-79 n.13 (1981)).  Accordingly, "[n]either delay

nor increased cost of litigation alone will suffice to show irreparable harm." *Id.*

    *Kerrville*, 925 F.2d 129, is instructive.  There, the movant similarly sought

to enjoin proceedings before an administrative agency on constitutional grounds,

among other bases.  *See id.* at 130 (describing challenge to Equal Employment

Opportunity Commission proceeding based on alleged improprieties in the

underlying investigation, including alleged Fifth Amendment violations).  In that

case, as in this one, "[t]he only injuries alleged by [the movant] stem from having

---

[5] The harms alleged in this case thus differ from the harms alleged in *Tindell*, 90 F.4th at 423, and *Clarke*, 74 F.4th at 643, which were not limited to merely having to appear before an administrative agency.

to defend the charges" before the agency.  *Id.* at 133.  In concluding that these injuries were "not sufficiently serious to warrant interlocutory appeal," this Court expressed concern that "if the burdens and potential expense of litigation were the sort of serious, perhaps irreparable injury adverted to by *Carson*," it would be far too easy for a litigant to establish "injury justifying interlocutory review."  *Id.*

Appellant places great weight on language from *Axon Enterprise, Inc. v. Federal Trade Commission*, 598 U.S. 175 (2023), to argue that, for purposes of the preliminary injunction inquiry (albeit not for the *Carson* inquiry), merely being subjected to an allegedly unconstitutional administrative proceeding is "a here-and-now injury" that must be addressed immediately.[6]  *Id.* at 191.  But *Axon* did not involve a *Carson* practical-effect appeal or address the meaning of irreparable harm for purposes of *Carson*, and the Supreme Court has expressly cautioned against giving a broad reading to the language quoted by Appellant.

As the Tenth Circuit recently explained, "[t]he Court's 'here-and-now injury' language in *Axon* originate[s] from" the Supreme Court's decision in *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197 (2020), which "concerned standing."  *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 759 (10th Cir. 2024).  And the Supreme Court has emphasized that "[w]hat

---

[6] As noted, Appellant does not acknowledge *Carson* or attempt to make a showing of serious, irreparable consequence for purposes of *Carson*.

[it] said about standing in *Seila Law* should not be misunderstood as a holding" on other matters not addressed in that opinion. *Collins v. Yellen*, 594 U.S. 220, 258-59 & n.24 (2021); *see also id.* at 258 ("The shareholders claim to find implicit support for their argument in *Seila Law* … , but they read far too much into th[at] decision[].")  The Court should therefore decline Appellant's invitation to apply *Seila Law* reflexively here.

In any event, such a broad interpretation of irreparable harm is squarely at odds with *Carson*'s concern for "the general congressional policy against piecemeal review."  450 U.S. at 84.  Adopting that interpretation in this case would surely open the door to interlocutory review in nearly every case where the district court fails to act immediately—or, at the least, by a deadline unilaterally set by the movant—upon an injunction motion challenging an administrative proceeding on constitutional grounds.  *Cf. Leachco*, 103 F.4th at 759 (declining to convert "the Supreme Court's limited jurisdictional holding in *Axon*, which only upheld district court jurisdiction to consider collateral constitutional challenges to administrative proceedings … into a broad ruling that creates an entitlement on the merits to a preliminary injunction in every case where such constitutional challenges are raised").  In light of the narrowness of § 1292(a)(1)'s exception to the final-judgment rule and the strictness with which that statute must be construed, the Court should avoid such "undue widening of the floodgates" here.  *Sherri A.D.*,

975 F.2d at 203.

Second, if Appellant truly required urgent injunctive relief, it had a pathway to such relief that did not require resort to § 1292(a)(1)'s narrow exception. As noted, the delay in this case was caused by Appellant's repeated attempts to challenge the district court's non-discretionary venue decision under § 1406(a). Following this Court's denial of en banc review of that decision, Appellant could have accepted the twice-reviewed transfer order and diligently pursued a prompt ruling on its injunction motion before the transferee court. Instead, Appellant opted to move the district court to reconsider its determination that venue was improper, even though there were no new facts or changes to the law to bring to the court's attention.[7] On this record, Appellant cannot establish that its only means of obtaining prompt relief was an immediate appeal before this Court, and therefore, the important policies served by *Carson* preclude appellate jurisdiction.

---

[7] As discussed above, prior to entry of the district court's transfer order, Appellant also could have filed an independent motion to expedite review of its preliminary injunction motion, but declined to do so.

## CONCLUSION

The Court should dismiss the appeal for lack of subject-matter jurisdiction under § 1292(a)(1).

Dated: September 23, 2024

Respectfully submitted,

/s/ Michael Rubin
Michael Rubin
Stacey M. Leyton
Juhyung Harold Lee
ALTSHULER BERZON LLP
*Attorneys for Amici Curiae Law Professors*

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Federal Rule of Appellate Procedure 32(g), that this brief was prepared in 14-point Times New Roman, a proportionally spaced typeface, using Microsoft Word. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because the brief contains 5,973 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

Dated: September 23, 2024                        Respectfully submitted,

                                                 /s/ Michael Rubin
                                                 Michael Rubin

**CERTIFICATE OF SERVICE**

I certify that on September 23, 2024, I electronically filed the foregoing brief of amici curiae with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.  I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Michael Rubin*
Michael Rubin