# In the United States Court of Appeals
## FOR THE FIFTH CIRCUIT

SPACE EXPLORATION TECHNOLOGIES, CORPORATION,
*Plaintiff - Appellant*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency;
JENNIFER ABRUZZO, in her official capacity as the General Counsel of the
National Labor Relations Board; LAUREN M. MCFERRAN, in her official
capacity as the Chairman of the National Labor Relations Board;
MARVIN E. KAPLAN, in his official capacity as a Board Member of the
National Labor Relations Board; GWYNNE A. WILCOX, in her official ca-
pacity as a Board Member of the National Labor Relations Board; DA-
VID M. PROUTY, in his official capacity as a Board Member of the Na-
tional Labor Relations Board; JOHN DOE, in his official capacity as an
Administrative Law Judge of the National Labor Relations Board,
*Defendants - Appellees*

On Appeal from the U.S. District Court for the Southern District of Texas,
No. 1:24-cv-00001, Judge Rolando Olvera

## APPELLANT'S REPLY BRIEF

HARRY I. JOHNSON, III
MORGAN, LEWIS & BOCKIUS LLP
2049 Century Park East, Suite 700
Los Angeles, CA 90067
(310) 255-9005

CATHERINE L. ESCHBACH
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
(713) 890-5719

MICHAEL E. KENNEALLY
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-3000

*Counsel for Space Exploration
Technologies Corp.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION .............................................................................. 1

ARGUMENT .................................................................................... 2

I.    SpaceX is entitled to a preliminary injunction. ............................ 2

     A.    SpaceX is likely to succeed on its claims. ....................... 2

         1.    The NLRB practically concedes that its ALJs are unconstitutionally insulated from removal under this Court's precedent. ................................... 2

         2.    NLRB Members are unconstitutionally insulated from removal. ............................................... 6

         3.    NLRB adjudications violate the Seventh Amendment. ...................................................... 9

         4.    The NLRB Members' blending of functions violates the separation of powers and due process. .... 18

     B.    SpaceX will suffer irreparable harm without a preliminary injunction. ....................................... 21

     C.    The balance of harms and public interest favor a preliminary injunction. ....................................... 25

II.    The NLRB's procedural objections to the injunction are meritless. ................................................................. 26

     A.    The NLRB placed venue at issue in this appeal. ................. 26

     B.    Potential severability is irrelevant here. .............................. 28

     C.    The Norris-LaGuardia Act does not apply. .......................... 29

III.    There was an effective denial of the preliminary injunction. ....... 30

CONCLUSION ................................................................................ 33

CERTIFICATE OF SERVICE ............................................................ 34

CERTIFICATE OF COMPLIANCE ..................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Airgas USA, LLC,*
373 N.L.R.B. No. 102 (Sept. 18, 2024)................................................. 10

*Aunt Bertha v. NLRB,*
No. 24-cv-798, 2024 WL 4202383 (N.D. Tex. Sept. 16, 2024)... 1, 21, 28

*Austin v. United States,*
509 U.S. 602 (1993)........................................................................... 11

*Axon Enter., Inc. v. FTC,*
598 U.S. 175 (2023).................................................................... *passim*

*BST Holdings, L.L.C. v. OSHA,*
17 F.4th 604 (5th Cir. 2021) ............................................................. 26

*Burgess v. FDIC,*
871 F.3d 297 (5th Cir. 2017)............................................................. 25

*Chamber of Com. of U.S. v. CFPB,*
No. 24-10248, Doc. 105-1 (5th Cir. Apr. 30, 2024) ........................... 32

*Cheney v. U.S. Dist. Ct.,*
542 U.S. 367 (2004)........................................................................... 17

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.,*
526 U.S. 687 (1999)...................................................................... 12, 13

*Cochran v. SEC,*
20 F.4th 194 (5th Cir. 2021) ...................................................... *passim*

*Collins v. Yellen,*
594 U.S. 220 (2021)..................................................................... *passim*

*Consumers' Research v. CPSC,*
91 F.4th 342 (5th Cir. 2024) .......................................................... 7, 8

*Dairy Queen, Inc. v. Wood*,
  369 U.S. 469 (1962)......................................................................12, 17

*Decker Coal Co. v. Pehringer*,
  8 F.4th 1123 (9th Cir. 2021) ....................................................................3

*Deerfield Med. Ctr. v. City of Deerfield Beach*,
  661 F.2d 328 (5th Cir. 1981)..................................................................22

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*,
  108 F.4th 194 (3d Cir. 2024)..................................................................23

*Energy Transfer, LP v. NLRB*,
  No. 24-cv-198, 2024 WL 3571494 (S.D. Tex. July 29, 2024) ...1, 21, 28, 29

*Exela Enter. Sols., Inc. v. NLRB*,
  32 F.4th 436 (5th Cir. 2022) ....................................................................6

*Feltner v. Columbia Pictures Television, Inc.*,
  523 U.S. 340 (1998)..........................................................................11, 12

*Free Enter. Fund v. PCAOB*,
  561 U.S. 477 (2010)..........................................................................5, 6, 7, 8

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000)................................................................................18

*FTC v. U.S. Anesthesia Partners*,
  No. 24-20270, slip op. (5th Cir. Aug. 15, 2024) ..................................22

*Granfinanciera, S.A. v. Nordberg*,
  492 U.S. 33 (1989)..........................................................................12, 15

*Halliburton, Inc. v. Admin. Rev. Bd.*,
  771 F.3d 254 (5th Cir. 2014)..........................................................13, 14

*Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*,
   434 F.3d 320 (5th Cir. 2005) ............................................................. 27

*Horne v. Polk*,
   394 P.3d 651 (Ariz. 2017) ................................................................ 20

*Humphrey's Executor v. United States*,
   296 U.S. 602 (1935) ................................................................ 6, 7, 8

*Illumina, Inc. v. FTC*,
   88 F.4th 1036 (5th Cir. 2023) .............................................................. 7

*In re Fort Worth Chamber of Com.*,
   100 F.4th 528 (5th Cir. 2024) ............................................................ 32

*Jarkesy v. SEC*,
   34 F.4th 446 (5th Cir. 2022) ...................................................... *passim*

*Leachco, Inc. v. CPSC*,
   103 F.4th 748 (10th Cir. 2024) ...................................................... 3, 23

*Louisiana v. Biden*,
   55 F.4th 1017 (5th Cir. 2022) ............................................................ 26

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993) .................................................................. 11, 12

*Meta Platforms, Inc. v. FTC*,
   No. 23-cv-3562, 2024 WL 1121424 (D.D.C. Mar. 15, 2024) ............... 19

*Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*,
   577 U.S. 136 (2016) .................................................................... 13

*Myers v. United States*,
   272 U.S. 52 (1926) ....................................................................... 9

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*NLRB v. Jones & Laughlin Steel Corp.*,
　301 U.S. 1 (1937)...................................................................... 15, 16

*Petteway v. Galveston Cnty.*,
　111 F.4th 596 (5th Cir. 2024) ................................................. 7

*Pineda v. Skinner Servs., Inc.*,
　22 F.4th 47 (1st Cir. 2021).................................................... 29

*SEC v. Jarkesy*,
　144 S. Ct. 2117 (2024)................................................ *passim*

*Seila Law LLC v. CFPB*,
　591 U.S. 197 (2020)....................................................... 5, 8, 9

*SpaceX v. Bell*,
　701 F. Supp. 3d 626 (S.D. Tex. 2023) .................................. 21

*SpaceX v. NLRB*,
　No. 24-cv-203, 2024 WL 3512082 (W.D. Tex. July 23, 2024)..... *passim*

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
　538 U.S. 408 (2003)............................................................. 12

*Thryv, Inc.*,
　372 N.L.R.B. No. 22 (Dec. 13, 2022)........................... *passim*

*Thryv, Inc. v. NLRB*,
　102 F.4th 727 (5th Cir. 2024) ............................................. 10

*Tull v. United States*,
　481 U.S. 412 (1987)............................................................. 11

*United States v. Scroggins*,
　599 F.3d 433 (5th Cir. 2010)............................................... 2

*WestRock Servs., Inc.*,
  366 N.L.R.B. No. 157 (Aug. 6, 2018) .................................................. 3

*Williams v. Pennsylvania*,
  579 U.S. 1 (2016) ............................................................... 19, 20

*Withrow v. Larkin*,
  421 U.S. 35 (1975) .................................................................. 19

*YAPP USA Auto. Sys., Inc. v. NLRB*,
  No. 24-cv-12173, 2024 WL 4119058 (E.D. Mich. Sept. 9, 2024) ........ 28

STATUTES

15 U.S.C. § 2064 ........................................................................ 7

Federal Trade Commission Act
  15 U.S.C. § 53 ........................................................................ 7

National Labor Relations Act
  29 U.S.C. § 160 .............................................................. 6, 18, 19, 20

Norris-LaGuardia Act
  29 U.S.C. § 113 ...................................................................... 29

OTHER AUTHORITIES

29 C.F.R.
  § 102.35 ............................................................................... 3
  § 102.48 ............................................................................... 3

U.S. CONST.,
  amend. I ............................................................................. 22
  amend. VII .................................................................... *passim*

# INTRODUCTION

The NLRB all-but-concedes that under the law of this Circuit, the agency's ALJs are unconstitutionally insulated from presidential oversight. Yet the NLRB thinks that parties in its administrative process—including SpaceX—cannot get relief for this constitutional violation because it is not enough of an injury. Binding precedent says otherwise. It would clearly "injure" SpaceX to have "to litigate before an ALJ who is unconstitutionally insulated from presidential control." *Cochran v. SEC*, 20 F.4th 194, 212-13 (5th Cir. 2021) (en banc), *aff'd sub nom. Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023). And that injury would be "impossible to remedy once the [NLRB's] proceeding is over." *Axon Enter.*, 598 U.S. at 191. So, SpaceX is entitled to the only relief available at this stage: a preliminary injunction that maintains the status quo until the courts can fashion a permanent remedy at final judgment.

Applying this precedent, district courts in this Circuit have resoundingly rejected the NLRB's position—just as the motions panel evidently did when it granted SpaceX's motion for an injunction pending appeal. *See Aunt Bertha v. NLRB*, No. 24-cv-798, 2024 WL 4202383 (N.D. Tex. Sept. 16, 2024) (granting preliminary injunction); *Energy Transfer,*

*LP v. NLRB*, No. 24-cv-198, 2024 WL 3571494 (S.D. Tex. July 29, 2024) (same); *SpaceX v. NLRB*, No. 24-cv-203, 2024 WL 3512082 (W.D. Tex. July 23, 2024) (same); Dkt. 40-2 (granting injunction pending appeal). This Court should do likewise and hold that SpaceX is entitled to a preliminary injunction while its constitutional claims proceed to final judgment in the district court.

## ARGUMENT

### I. SpaceX is entitled to a preliminary injunction.

#### A. SpaceX is likely to succeed on its claims.

##### 1. The NLRB practically concedes that its ALJs are unconstitutionally insulated from removal under this Court's precedent.

SpaceX's opening brief explained (at 13-18) that Fifth Circuit precedent establishes a likelihood of success on its ALJ removal-protection claim. The NLRB makes no real effort to deny that this Court's *Jarkesy* decision controls and dictates that NLRB ALJs are unconstitutionally protected from removal. The closest it comes is an undeveloped assertion that "NLRB ALJs' powers are significantly more restricted in scope" than SEC ALJs'. NLRB Br. 35.

At best, this assertion is waived because the NLRB develops no argument or support for it. *See, e.g.*, *United States v. Scroggins*, 599 F.3d

433, 446 (5th Cir. 2010) ("A party that asserts an argument on appeal, but fails to adequately brief it, is deemed to have waived it."). At worst, this assertion is affirmatively misleading. Contrary to the NLRB's suggestion (at 35-36), and as SpaceX's opening brief explained (at 15), NLRB ALJs *do* have the power to punish contemptuous conduct and issue decisions that can become final and binding. *See* 29 C.F.R. § 102.35(a)(6) (NLRB ALJs may "exclude persons or counsel from the hearing for contemptuous conduct"); *id.* § 102.48(a) (ALJ decisions become final and binding "[i]f no timely or proper exceptions are filed"). NLRB ALJs are not meaningfully distinguishable from SEC ALJs, which is why the NLRB itself (in a decision the NLRB now ignores) recognizes the similarity. *See* SpaceX Br. 15 (citing *WestRock Servs., Inc.*, 366 N.L.R.B. No. 157 (Aug. 6, 2018)). This Court's *Jarkesy* decision therefore requires finding that SpaceX has shown a likelihood of success on the merits of the ALJ removal-protection claim. *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022).[1]

---

[1] The NLRB gets nowhere invoking the out-of-Circuit decisions *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1133 (9th Cir. 2021), and *Leachco, Inc. v. CPSC*, 103 F.4th 748, 764 (10th Cir. 2024). Within this Circuit, the Court's *Jarkesy* decision is binding. SpaceX Br. 15 n.4; *SpaceX*, 2024 WL 3512082, at *2 n.1.

Unable to dispute the application or import of *Jarkesy*, the NLRB instead tries to impose an extra requirement to succeed on a removal-protection claim. In its view, beyond showing that the removal-protections are unlawful, SpaceX must show that those protections will cause some sort of "compensable harm" or "prejudice" in the administrative proceeding. NLRB Br. 25-31. The NLRB purports to derive this extra requirement from *Collins v. Yellen*, 594 U.S. 220, 259 (2021).

Once again, the NLRB simply ignores contrary authority. The en banc Fifth Circuit held that *Collins*'s causal-harm requirement does not apply when a litigant sues to obtain "an administrative adjudication untainted by separation-of-powers violations," as SpaceX has done here. SpaceX Br. 17 (citing *Cochran*, 20 F.4th at 210 n.16). Rather, the causal-harm requirement applies when a litigant "seek[s] to 'void' the acts of [the unlawfully protected] official." *Id.* The NLRB pretends that *Cochran* is irrelevant. NLRB Br. 29 n.18. But it recognizes—precisely because of the high showing that might be required to void an official's past acts— that a litigant's "only hope for meaningful judicial review" on a removal-protection claim is usually through a pre-enforcement lawsuit like this one. *Cochran*, 20 F.4th at 210 n.16.

Rather than grapple with the on-point en banc decision, the NLRB sets up a strawman (at 28) by pretending that SpaceX is arguing that *Collins* never applies to prospective relief. In fact, SpaceX recognized (at 46) that *Collins* applies to certain types of "prospective" relief. But as *Cochran* articulates, *Collins* does not apply to a pre-enforcement lawsuit to halt a proceeding before an unaccountable agency official. And, tellingly, the NLRB cites no Fifth Circuit case that applies *Collins* in a likelihood-of-success assessment for a pre-enforcement structural challenge to agency proceedings.

Worse, applying *Collins* as the NLRB advocates would conflict with *Collins* itself. *Collins* found merit in the challengers' claim that "the removal restriction violates the Constitution." 594 U.S. at 257. That finding is consistent with the Supreme Court's approach in *Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010), and *Seila Law LLC v. CFPB*, 591 U.S. 197, 203-05 (2020), and this Court's approach in *Jarkesy*. Each case held removal-protection claims meritorious without any discussion of causal harm, let alone an indication that causal harm is an element of the claim. A litigant who brings a pre-enforcement challenge to an agency adjudica-

tor's removal protections is "entitled to declaratory relief sufficient to ensure that the [administrative requirements] will be enforced only by a constitutional agency accountable to the Executive." *Free Enter.*, 561 U.S. at 513. If removal protections are unlawful, no further showing is required for a likelihood of success.

### 2. NLRB Members are unconstitutionally insulated from removal.

SpaceX also explained (at 18-24) why the NLRB Members' removal protections are also unconstitutional. The NLRB provides no justification for extending *Humphrey's Executor v. United States*, 296 U.S. 602 (1935), to NLRB Members. The NLRB disregards the significance of *Exela Enterprise Solutions, Inc. v. NLRB*, 32 F.4th 436 (5th Cir. 2022), to this case. *Exela* highlights the NLRB's unique structure and recognizes that the General Counsel's prosecutorial functions make the position "core to the executive function." *Id.* at 444. As SpaceX has explained (at 20-21), NLRB Members also exercise prosecutorial and core executive functions when they supervise the General Counsel's requests for injunctive relief in district court under Section 10(j). The NLRB does not dispute that when *Humphrey's* considered the FTC, commissioners did not wield a similar prosecutorial power to seek temporary injunctive relief in federal district

court. *See* SpaceX Br. 20 n.5. The NLRB instead cites post-*Humphrey's* legislation. NLRB Br. 41 n.25. (citing 15 U.S.C. § 53(b); 15 U.S.C. § 2064(g)).[2]

Given this Court's NLRB-specific precedent, the NLRB's reliance on *Consumers' Research v. CPSC*, 91 F.4th 342 (5th Cir. 2024), *petition for cert. filed* (June 14, 2024) (No. 23-1323), and *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1046 (5th Cir. 2023), is misplaced. Their analyses of different agencies, including the same multimember body from *Humphrey's*, are not controlling for NLRB Members. This Court is bound by the implications of its NLRB-specific caselaw as well as the Supreme Court's instructions.

Importantly, *Free Enterprise* did not give carte blanche for unaccountable multimember bodies. Rather, it reiterated *Humphrey's* limited

---

[2] The NLRB's power to prosecute alleged labor law violations by seeking injunctive relief in federal court, before the agency has adjudicated and found violations, is qualitatively different than the authority of the *Humphrey*'s era FTC to enforce its own orders. *Contra* CAC Amicus Br. 9. Moreover, the failure of some recent decisions to consider the implications of other agencies' prosecutorial authority, *see* NLRB Br. 41 n.25, does not foreclose SpaceX's argument about the NLRB's authority. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Petteway v. Galveston Cnty.*, 111 F.4th 596, 608 (5th Cir. 2024) (citation omitted).

holding that in "certain circumstances" Congress can "create independent agencies run by principal officers appointed by the President, whom the President may not remove at will but only for good cause." *Free Enter.*, 561 U.S. at 483. Then, in *Seila Law*, the Court explained that *Humphrey's* should not be extended to new circumstance and configurations. *See* 591 U.S. at 204. Holding here that *Humphrey's* controls whether NLRB Members' for-cause removal protection is constitutional would be an unwarranted extension of that case contrary to the Supreme Court's recent commands.

Nor does the NLRB deny that Board Members have stricter for-cause protections than those examined in *Humphrey's*: unlike FTC commissioners, NLRB Members cannot be removed for "inefficiency." NLRB Br. 42. The NLRB responds that *Consumers' Research* applied *Humphrey's* to other officers with the same stricter removal protection, but as SpaceX observed (at 23), this argument was not raised in *Consumers' Research*. The NLRB insists that the difference in removal protections does not matter based on an argument in a law review article. NLRB Br. 42. The Supreme Court, however, has explained that "[t]he President must be able to remove not just officers who disobey his commands but also

those he finds 'negligent and inefficient.'" *Collins*, 594 U.S. at 256 (quoting *Myers v. United States*, 272 U.S. 52, 135 (1926)). Under Supreme Court precedent, it is problematic that NLRB Members cannot be removed for inefficiency. *See SpaceX*, 2024 WL 3512082, at *4.

SpaceX did not create a novel principle when it argued that an agency's principal officers cannot be protected from removal if they wield "substantial executive power," NLRB Br. 40—that principle comes from *Seila Law*. 591 U.S. at 218 (recognizing a narrow exception "for multi-member expert agencies that do not wield substantial executive power"). SpaceX has thus also shown a likelihood of success on its NLRB removal protection claim as well. *See SpaceX*, 2024 WL 3512082, at *4 ("[T]here is a substantial likelihood that SpaceX succeeds on the merits with regards to a finding that the NLRB Members are unconstitutionally protected from removal").

### 3. NLRB adjudications violate the Seventh Amendment.

SpaceX's opening brief demonstrated that the NLRB proceeding also implicates the Seventh Amendment, that the public-rights exception

does not permit such a proceeding, and that the federal courts have jurisdiction over this claim. Not one of the NLRB's counterarguments has merit.

*First*, as SpaceX explained (at 25-31), the NLRB seeks and claims the authority to award relief that is, in substance, compensatory damages: "a novel, consequential-damages-like" remedy "to compensate affected employees" for the harms they allegedly suffered as a result of the alleged unfair labor practice. *Thryv, Inc. v. NLRB*, 102 F.4th 727, 737 (5th Cir. 2024); *Thryv, Inc.*, 372 N.L.R.B. No. 22, slip op. at 1 (Dec. 13, 2022), *enforcement denied*, 102 F.4th 727 (5th Cir. 2024). Despite this Court's vacatur of the Board's *Thryv* decision, the Board continues to award *Thryv* relief under its nonacquiescence policy. SpaceX Br. 26 n.7; *see Airgas USA, LLC*, 373 N.L.R.B. No. 102, slip op. at 1 n.2 (Sept. 18, 2024) ("[I]n the absence of the Board specifically acquiescing to the Fifth Circuit's adverse decision in *Thryv* or overruling its own decision in *Thryv* on other grounds, the Board's decision in *Thryv* remains controlling precedent, and the Board can and will rely on it[.]").

The NLRB barely addresses SpaceX's argument that *Thryv* remedies are legal relief. At most, it argues (at 50) that *Thryv* remedies are

"wholly distinct from the monetary penalties at issue in *Jarkesy*" and pursue the allegedly "equitable goal of ensuring that the victims of ULPs are made whole." But *Jarkesy* reaffirms that "compensatory damages—monetary relief for all losses their plan sustained as a result of the alleged breach"—are "the classic form of legal relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (emphasis omitted); *see SEC v. Jarkesy*, 144 S. Ct. 2117, 2129 (2024) (citing *Mertens*, 508 U.S. at 255).

It is true that *Jarkesy* analyzed penalties and thus invoked the well-settled rule that civil sanctions that serve a punitive purpose, rather than a restorative purpose, are legal in nature. *See Jarkesy*, 144 S. Ct. at 2129 (citing *Tull v. United States*, 481 U.S. 412, 422 (1987)); *Austin v. United States*, 509 U.S. 602, 610 (1993)). But the Supreme Court has cautioned that penalties and damages are analyzed differently for Seventh Amendment purposes. For instance, in *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998), the Court held that juries must determine the amount of statutory damages even though *Tull* had held that juries need not require the amount of civil penalties. So, *Jarkesy*'s test for penalties is not applicable here.

For damages, it is settled "beyond peradventure" that "a decree for the payment of money by way of damages" is prototypical legal relief. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 47-48 (1989) (citation omitted); *see also, e.g.*, *Mertens*, 508 U.S. at 255; *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 710 (1999); *Feltner*, 523 U.S. at 352-53. In invoking *Mertens*, *Jarkesy* reaffirms this rule. *See* 144 S. Ct. at 2129. *Jarkesy* does not, as the NLRB thinks, silently overrule a centuries-old understanding about the nature of money damages.

Nor does it matter that the NLRB now shies away from the "damages" label and prefers "make-whole" terminology. *See Thryv*, 372 N.L.R.B. No. 22, slip op. at 8-9. "[T]he constitutional right to trial by jury cannot be made to depend upon the choice of words used." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477-78 (1962). Substance governs over form, and the NLRB has made clear that the substance of *Thryv* relief is "to compensate affected employees." *Thryv*, 372 N.L.R.B. No. 22, slip op. at 1. In this respect, *Thryv* remedies are no different than ordinary compensatory damages and clearly legal in nature. *See, e.g.*, *City of Monterey*, 526 U.S. at 710-11 ("[C]ompensation is a purpose 'traditionally associated with legal relief.'" (quoting *Feltner*, 523 U.S. at 352)); *cf. State Farm Mut.*

*Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) ("It should be pre-sumed a plaintiff has been made whole for his injuries by compensatory damages[.]"); *Halliburton, Inc. v. Admin. Rev. Bd.*, 771 F.3d 254, 266 (5th Cir. 2014) (recognizing that providing "all relief necessary to make [an] employee whole" seeks to provide "such damages as are often available at common law").

The NLRB never argues that *Thryv* remedies have the traditional features that make certain monetary relief equitable. Unlike equitable restitution, *Thryv* remedies are not measured by what the defendant has gained, but by what the plaintiff has lost. *See, e.g.*, *City of Monterey*, 526 U.S. at 710. And they are paid from an employer's general assets, not specifically identified property in the employer's possession. *See, e.g.*, *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 144-46 (2016). There is no basis to characterize *Thryv* remedies as equitable in nature.

Although the legal nature of *Thryv* remedies is proof enough of the Seventh Amendment's applicability, the legal nature of the NLRB's un-derlying wrongful-discharge allegations provides further confirmation.

The NLRB never confronts the widespread recognition that wrongful discharge has common-law roots in contract and tort law. *See* SpaceX Br. 29-30. It simply asserts, with scant analysis (at 49), that "the NLRA claims at issue do not 'arise' under common law." But nothing turns on whether NLRA claims "arise" under the common law. "[T]he statutory nature of the claim [is] not legally relevant," and a statutory claim need not be "identical" to a common-law analogue. *Jarkesy*, 144 S. Ct. at 2129, 2131. The NLRA's action for wrongful discharge is sufficiently analogous to its common-law precursors. *See Halliburton*, 771 F.3d at 266 ("At common law, many jurisdictions recognize torts for wrongful discharge of employment[.]").

*Second*, the public-rights exception is inapplicable. In *Jarkesy*, the Supreme Court lamented that prior invocations of the exception offered a "circular" definition of the concept. 144 S. Ct. at 2139. The NLRB's brief takes the circularity to a new level. In its view (at 48), any rights that the NLRB chooses to recognize are by definition "public, not private," because the NLRB lacks authority to vindicate private rights. While it is true that Congress designed the NLRB to effectuate public rights rather than private ones, that does not guarantee that the NLRB always complies.

"[W]hat matters is the substance of the suit, not where it is brought, who brings it, or how it is labeled." *Jarkesy*, 144 S. Ct. at 2136. The question here is whether *Thryv* relief vindicates public rights. And on that question, the NLRB offers no response to SpaceX's argument (at 31-32): relief ordering one private party to compensate another private party for direct or foreseeable pecuniary harms arising from a wrongful discharge vindicates a private right, not a public one. *See, e.g.*, *Granfinanciera*, 492 U.S. at 51 n.9 (recognizing "the liability of one individual to another" as a matter of "private right" (citation omitted)). Indeed, the NLRB undercuts its own argument when, elsewhere in its brief (at 63), the NLRB faults SpaceX's balance-of-equities discussion for not factoring in the interests of the eight terminated employees. That accusation confirms that not even the NLRB sees its proceedings as concerned solely with public rights.

As SpaceX anticipated (at 32-33), the NLRB overreads *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48 (1937), to try to reconcile it with *Jarkesy*. But contrary to the NLRB's description (at 47-48), *Jones & Laughlin* does not mean that all NLRB proceedings involve public rights merely because they are "unknown to the common law." The public rights

exception does not kick in merely because the administrative action "originate[s] in a newly fashioned regulatory scheme." *Jarkesy*, 144 S. Ct. at 2135 (citation omitted). Despite *Jones & Laughlin*'s holding that awards of reinstatement with backpay comply with the Seventh Amendment, the Court should not expand that holding to the present situation. The NLRB is seeking to adjudicate claims analogous to common-law wrongful discharge and to provide a type of monetary compensation available only in law courts. *See Jarkesy*, 144 S. Ct. at 2136. That "is a common law suit in all but name." *Id.*

*Third*, the NLRB erroneously argues (at 44-47) that under *Axon*'s jurisdictional analysis, this claim must be raised in the administrative process before it is raised in court. That argument mischaracterizes this lawsuit as challenging the agency's statutory authority to award *Thryv* remedies. This lawsuit's challenge is not about NLRB's statutory authority to award this remedy; it is about whether the prospect of *Thryv* remedies entitles SpaceX to a jury. This argument falls squarely within *Axon* because it challenges "an unconstitutionally structured decisionmaking process." 598 U.S. at 192.

Appealing an adverse decision at the end of the NLRB process would not provide SpaceX "meaningful judicial review." *Id.* at 184-85 (citation omitted). For one thing, SpaceX might win before the agency and thus be unable to pursue a Seventh Amendment claim at that point. But SpaceX still "would have the same claim" that it had a right to a jury. *Id.* at 191. For another thing, post-judgment appeal is inadequate protection against the wrongful denial of jury trial right. It is well established that courts have a "responsibility . . . to grant mandamus" relief when necessary to protect the jury-trial right. *Dairy Queen*, 369 U.S. at 472. And a basic prerequisite for mandamus is a lack of "other adequate means to attain the [desired] relief." *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380 (2004) (citation omitted).

Likewise, the Seventh Amendment issue is "collateral" because it "do[es] not relate to the subject of the enforcement actions"—the alleged unfair labor practice. *Axon*, 598 U.S. at 193; *see also Cochran*, 20 F.4th at 207 ("[W]hether a claim is collateral to the relevant statutory-review scheme depends on whether that scheme is intended to provide the sort of relief sought by the plaintiff."). And while the NLRB is comparatively expert in deciding what remedies to award under the NLRA, *see* NLRB

Br. 45, the considerations of "constitutional law" that SpaceX is raising are "distant from the [NLRB's] 'competence and expertise,'" *Axon*, 598 U.S. at 194 (citation omitted). The *Axon* factors support jurisdiction.

> ### 4. The NLRB Members' blending of functions violates the separation of powers and due process.

SpaceX also demonstrated (at 37-44) a likelihood of success on its due process claim. The NLRB contests the courts' jurisdiction of this claim (at 52-52), but ignores the posture in which this claim arose. Just before SpaceX filed its district court complaint, the NLRB communicated that the Region was making a submission about seeking relief under NLRA Section 10(j), 29 U.S.C. § 160(j). And then the NLRB represented in court filings that the possibility of 10(j) relief was still under consideration by the General Counsel and the Board. ROA.978. Even now, the NLRB does not disavow an intent to seek 10(j) relief in this case and, even if it did, the NLRB cannot avoid a ruling on this claim through voluntary cessation. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

Similarly, the NLRB misrepresents *Axon*'s implications. The NLRB claims that because few cases are ultimately authorized for 10(j) relief, *Axon* is inapplicable. NLRB Br. 51-52. But here too, SpaceX's challenge

is not to a "specific substantive decision" but to the agency's structure. *Axon*, 598 U.S. at 189. In particular, SpaceX challenges a structure that permits the same NLRB Members who authorize a prosecution to adjudicate an administrative complaint making the same allegations. The NLRB makes no other response to SpaceX's argument that this claim satisfies the *Axon* factors. *See* SpaceX Br. 42-44.

On the merits, the NLRB pretends that Members' prior decision to authorize a 10(j) prosecution—which requires Members' assessment of a likelihood of success on the merits, SpaceX Br. 41—has no influence when those Members issue a final decision. NLRB Br. 53 n.31. The NLRB offers no explanation of how this mental compartmentalization occurs.

The NLRB attempts to cast aside the Supreme Court's most recent decision on these issues, *Williams v. Pennsylvania*, 579 U.S. 1 (2016). But the NLRB gets no help from the case it cites. *Meta Platforms, Inc. v. FTC*, No. 23-cv-3562, 2024 WL 1121424, at *15 (D.D.C. Mar. 15, 2024). There, the alleged due process violation was based on the FTC's vote to initiate an administrative proceeding that it would ultimately decide. *Id.* at *14-15; *see also Withrow v. Larkin*, 421 U.S. 35 (1975) (no constitutional issue where adjudicatory agency files an administrative complaint based on

probable cause). Here, in contrast, authorizing a 10(j) proceeding is not merely determining that there *may* be a violation of the NLRA or probable cause for an administrative complaint. Instead, the NLRB finds a likelihood of success on the merits of the claims, SpaceX Br. 41, which creates a risk they will be "psychologically wedded" to that position when they issue a final decision, *Williams*, 579 U.S. at 9. The NLRB does not contest that Board Members make this determination based on a one-sided presentation advocating unfair labor practices occurred and that potential defenses are meritless. *See* SpaceX Br. 41-42.

Nothing in *Williams* limits to only criminal cases its concern that "there is an impermissible risk of actual bias when a judge earlier had significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case." 579 U.S. at 8. This constitutional concern about an impermissible risk of actual bias would be equally applicable in administrative contexts where an official had a significant, prosecutorial role in the proceeding. *See Horne v. Polk*, 394 P.3d 651, 659 (Ariz. 2017). SpaceX has shown a likelihood of success on this claim, too.

**B.    SpaceX will suffer irreparable harm without a preliminary injunction.**

*Axon* and this Court's precedents hold that SpaceX has shown irreparable injury. *See* SpaceX Br. 44-50.

*Removal Protection.* The NLRB claims *Axon* addresses only subject-matter jurisdiction, not the requirements for an injunction. NLRB Br. at 29-31. This attempt to narrow *Axon* makes no sense. *Axon* holds that for jurisdictional purposes, the exact injury here is a legally cognizable "injury" that is "impossible to remedy" after the administrative proceeding. 598 U.S. at 191 (citation omitted). What more could be needed for irreparable injury? Unsurprisingly, many courts in this Circuit have rejected the NLRB's argument to escape *Axon*'s implications and have recognized that undergoing an unconstitutionally structured administrative hearing is irreparable harm sufficient for a preliminary injunction. *See Aunt Bertha*, 2024 WL 4202383, at *3; *Energy Transfer*, 2024 WL 3571494, at *4; *SpaceX*, 2024 WL 3512082, at *6; *see also SpaceX v. Bell*, 701 F. Supp. 3d 626, 633-34 (S.D. Tex. 2023); *cf. Cochran*, 20 F.4th at 212-13 (recognizing

that if a removal-protection "claim is meritorious, then withholding judicial consideration would injure" the claimant).[3]

The NLRB suggests (at 56-57) that deprivation of a constitutional right is irreparable only when the First Amendment is involved. But the NLRB cites *Deerfield Medical Center*, which said of the Fourteenth Amendment's right of privacy that "once an infringement has occurred it cannot be undone by monetary relief." 661 F.2d 328, 338 (5th Cir. 1981). Here, it is even clearer that once SpaceX undergoes an unconstitutionally structured administrative proceeding, the injury becomes impossible to remedy. *Axon*, 598 U.S. at 191. The NLRB does not explain how SpaceX's harm from undergoing an unconstitutionally structured proceeding can be remedied afterward, by monetary relief or otherwise.

---

[3] The NLRB cites the unpublished order in *FTC v. U.S. Anesthesia Partners*, No. 24-20270, slip op. at 7 (5th Cir. Aug. 15, 2024), to suggest this Court has found *Axon* inapplicable in this context. But that order has no relevance here. It merely rejected an appellant's effort to use *Axon* to appeal a federal district court's interlocutory denial of a motion to dismiss under the collateral order doctrine. In *U.S. Anesthesia*, the Court noted that the appellant was not challenging illegitimate agency proceedings, but a supposedly illegitimate suit in an Article III court. *Id.* at 3, 7.

Other than *Leachco*, none of the cases the NLRB cites on this point (at 56 & n.34) concern removal-protection injuries. And *Leachco* is unpersuasive because it applies *Collins* even when the claimant does not seek to void agency action. 103 F.4th at 759. As discussed, this application of *Collins* is foreclosed by this Court's en banc *Cochran* decision. *See supra* p. 4. If anything, the NLRB's cited authority supports SpaceX. It recognizes that injunctions are appropriate when "'required to preserve the status quo' while litigation is pending" and when the movant is suffering "harms beyond ones that can be cured after final judgment." *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 205 (3d Cir. 2024) (citation omitted). That describes this case: without an injunction, the administrative proceeding will move forward, and courts will lose their ability to remedy SpaceX's harm of undergoing an unconstitutionally structured proceeding with each new development in that proceeding.

*Seventh Amendment Claim.* The NLRB does not contest that if a Seventh Amendment jury right attaches, SpaceX's deprivation of that right is irreparable harm. SpaceX Br. 48-49. Instead, the NLRB claims this harm is speculative because *Thryv* remedies might not be ordered. It

also claims that if this Court determines *Thryv* remedies are impermissible, it could issue a limited injunction preventing the Board from seeking *Thryv* remedies. NLRB Br. 57-58. But again, this suit is not challenging the Board's statutory authority to award *Thryv* remedies. It is responding to the NLRB's seeking of such relief in its pending administrative action. SpaceX has a right to have a jury sit as factfinder regardless of whether liability attaches or *Thryv* remedies are awarded. *See supra* p. 16. So long as the NLRB pursues these remedies and claims authority to award them, SpaceX is entitled to a jury.

*Due Process.* The NLRB does not dispute that a violation of SpaceX's due-process rights, if shown, would harm SpaceX. Nor does it dispute that SpaceX would be entitled to relief for such an ongoing due-process violation. But it contends that the deprivation of SpaceX's due-process rights can be properly remedied by more process rather than an injunction. NLRB Br. at 58-59. The NLRB fails to say how. Once Board Members engage in prosecutorial decision-making that requires their recusal from adjudication, more process before those actors would compound the injury, not relieve it.

*Economic and Reputational Harm.* The NLRB contends that the Court should disregard the economic harms SpaceX incurs through participation in unconstitutional proceedings because they are the "burdens of litigation." NLRB Br. 59-60. But SpaceX "challenges the entire legitimacy of [the] proceedings, not simply the cost and annoyance." *Cochran*, 20 F.4th at 209-10 (disagreeing with the government that plaintiff complained only about the "expenses of litigation"). The additional harms SpaceX has identified merely underscore the concrete ways that this illegitimate proceeding has and will continue to injure SpaceX absent an injunction. SpaceX Br. 50.

The NLRB's attempt to dismiss SpaceX's reputational harm also fails. When, as here, harm to reputation stems from constitutionally infirm proceedings, such harm is irreparable. *See Burgess v. FDIC*, 871 F.3d 297, 304 (5th Cir. 2017) (holding that a "decision pursuant to a constitutionally infirm hearing that injured petitioner's reputation" was "sufficient to satisfy irreparable injury" (cleaned up)).

## C. The balance of harms and public interest favor a preliminary injunction.

The final two preliminary injunction factors strongly favor SpaceX. The NLRB ignores the cases holding there is no valid governmental or

public interest in unconstitutional executive conduct. *See, e.g.*, *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021); *Louisiana v. Biden*, 55 F.4th 1017, 1022 (5th Cir. 2022). Instead, it concentrates on the public's interest in the enforcement of enacted laws. NLRB Br. 61-62. The Constitution, however, is the supreme enacted law. And the public's interest in enforcing statutes does not allow an agency to violate the Constitution to do so.

## II.   The NLRB's procedural objections to the injunction are meritless.

### A.   The NLRB placed venue at issue in this appeal.

The NLRB argued to this Court and the district court that they lacked authority to grant temporary injunctive relief after the transfer motion was granted, placing venue at issue in this appeal. *See* SpaceX Br. 52 (citing ROA.1189; Dkt. 30, at 17-18); *see also* ROA.1165-68. The NLRB also urged the district court not to grant the injunction in its initial opposition based on improper venue. ROA.748-49. Now, the NLRB apparently regrets these arguments and insists that there is no jurisdiction to review the transfer order. But the venue and preliminary injunction issues have become intertwined because of the NLRB's position that authority to grant an injunction depends on the existence of proper venue.

*Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*, 434 F.3d 320, 326 (5th Cir. 2005), is not to the contrary. It recognizes that where "the motion for injunction and the order to transfer [are] inextricably bound up with each other" interlocutory appeal of both orders is permitted. *Id.*

Pretending it never made the arguments it did, the NLRB no longer maintains its erroneous view that a district court lacks authority to grant injunctive relief after finding improper venue. *See* NLRB Br. 16-22; SpaceX Br. 52-54. Instead, the NLRB attempts to defend the district court's holding that venue was improper in the Southern District of Texas. But the NLRB says nothing new about the district court's erroneous venue analysis. And the NLRB notably omits that its administrative complaint alleges that an unfair labor practice occurred in the Southern District of Texas, Brownsville division based on an email sent to employees in that division. *See* SpaceX Br. 58. The NLRB's arguments are incorrect for the reasons SpaceX has already identified (at 54-59). If an alleged unlawful act underlying (and generating) the challenged administrative proceeding occurred in the forum, that should be more than enough as a substantial part of the events giving rise to the claim challenging that

proceeding. This Court should end the confusion that the district court's erroneous venue decision has caused in not only this case but the district courts in this Circuit more generally.

**B.   Potential severability is irrelevant here.**

The NLRB insists (at 35) that "the challenged removal restrictions are readily severable," but it never explains how. In its view (at 33 n.19), the Court need not "decide now precisely how severance would operate." It should just take the NLRB's word that figuring out which, if any, of the three removal protections to sever from the three separately enacted statutes (the ALJs', the MSPB's, and the NLRB's) is "readily" doable. But as the district court in the Western District of Texas recently explained in a separate SpaceX lawsuit, it is not remotely clear that these removal provisions are severable. *SpaceX*, 2024 WL 3512082, at *5.

In any event, the NLRB's premise that severability is relevant at the preliminary injunction stage is unsupported. Three judges in this Circuit have rejected this argument. *Aunt Bertha*, 2024 WL 4202383, at *3; *Energy Transfer*, 2024 WL 3571494, at *4; *SpaceX*, 2024 WL 3512082, at *5-6. The NLRB cites a single, out-of-circuit district court decision for this argument, *YAPP USA Auto. Sys., Inc. v. NLRB*, No. 24-cv-12173, 2024

WL 4119058, at *10 n.5 (E.D. Mich. Sept. 9, 2024). But that case departs from *Energy Transfer* and *SpaceX* based on its erroneous view that the "*Collins* harm standard" applies, not because of severability. The NLRB cites no on-point authority for its severability argument.

### C. The Norris-LaGuardia Act does not apply.

Contrary to the NLRB's assertion (at 23-24), the plain meaning of the Norris-LaGuardia Act supports SpaceX, not the NLRB. *See* SpaceX Br. 62. The NLRB never explains how a suit between SpaceX and NLRB officials meets the statute's definition for growing out of a labor dispute. 29 U.S.C. § 113(a). The NLRB seems to think that any dispute over terms or conditions of employment triggers the statute, which would mean injunctions in any employment dispute are always subject to the statute. No case supports that extreme view. *See, e.g.*, *Pineda v. Skinner Servs., Inc.*, 22 F.4th 47, 57-58 (1st Cir. 2021) (holding that Norris-LaGuardia's definition of "labor dispute" does not encompass action for unpaid wages under the Fair Labor Standards Act).

In any event, the NLRB has no real response to SpaceX's alternative argument that no Norris-LaGuardia hearing is required when the evidence is undisputed. SpaceX Br. 62-63. The NLRB cites no contrary

decision. Instead, it suggests that it would have disputed the evidence but had no "chance" to do so. NLRB Br. 24. Untrue. The NLRB submitted an opposition to SpaceX's preliminary-injunction motion and could have submitted its own accompanying evidence or objected to SpaceX's evidence, but it chose not to. ROA.721-66.

## III. There was an effective denial of the preliminary injunction.

Finally, the NLRB rehashes jurisdictional arguments that the motions panel rightly rejected in denying the NLRB's motion to dismiss the appeal. *See* Dkts. 14 &47. The NLRB's insistence that there was no effective denial of the preliminary injunction rests on revisionist history.

Having moved for a preliminary injunction on January 12, 2024, SpaceX still had no ruling on April 17, 2024, when it requested either reconsideration of transfer or a ruling on the injunction before transfer. Then SpaceX learned, on April 24, that it would have to appear before a new ALJ on May 2 for a discovery proceeding. SpaceX had a pending motion for reconsideration of transfer or, alternatively, a ruling on the preliminary injunction, and in its reply, SpaceX requested a ruling before May 2. (The May 2 ALJ hearing was not raised in the reconsideration motion because the hearing had not been announced when SpaceX moved

for reconsideration.) Participating in that proceeding before the new ALJ—especially when that ALJ was set to resolve disputes over 100 discovery requests from the NLRB and charging parties—would have resulted in new injuries that could not later be remedied under *Axon*. Requesting relief before then to avoid this irreparable injury was reasonable and appropriate. Nor was this some unilateral and arbitrary deadline. The NLRB itself created, and at all times controlled, the urgency of the matter: it refused stay and extension requests from SpaceX to resolve the issues raised in this case first, and it opened the administrative hearing over SpaceX's objection despite the pendency of this action.

The NLRB complains that SpaceX filed its notice of appeal 40 hours before the ALJ hearing was set to commence. This complaint ignores reality. Emergency motions practice takes some time to play out. The NLRB itself requested, on May 1, 48 hours to respond to SpaceX's appellate motion—even though the ALJ hearing was set for 2 p.m. on May 2. Dkt. 19. SpaceX waited as long as it could without sacrificing its ability to secure appellate relief.

The NLRB now claims that SpaceX should have sought a TRO, but that suggestion makes little sense. SpaceX's preliminary injunction motion had been pending for over three months. SpaceX properly asked that it finally receive its long-awaited ruling in time to prevent further harm based on a new development in the administrative proceeding. There's no question that "[t]here [was] a legitimate basis for the urgency." *In re Fort Worth Chamber of Com.*, 100 F.4th 528, 535 (5th Cir. 2024).

As for the NLRB's suggestion that this Court should remand the case for further factual findings, it fails to identify any facts that need further development. *See* NLRB Br. 15-16. As SpaceX explained in the opening brief (at 65-66), the relevant facts are uncontested. All that is left to resolve are questions of law. Resolving those questions would not usurp any power of the district court.[4]

---

[4] Should this Court disagree, it should issue a limited remand where the panel retains jurisdiction pending the district court's entry of particularized findings. *See Chamber of Com. of U.S. v. CFPB*, No. 24-10248, Doc. 105-1 at 2 (5th Cir. Apr. 30, 2024) ("This is a limited remand. Our panel retains jurisdiction over this appeal").

## CONCLUSION

For all these reasons, the Court should reverse and remand with instructions and maintain this Court's injunction pending appeal until the district court enters a preliminary injunction.

Dated: October 7, 2024

Respectfully submitted,

s/ Michael E. Kenneally

| | |
|---|---|
| HARRY I. JOHNSON, III | MICHAEL E. KENNEALLY |
| MORGAN, LEWIS & BOCKIUS LLP | MORGAN, LEWIS & BOCKIUS LLP |
| 2049 Century Park East, Suite 700 | 1111 Pennsylvania Avenue, N.W. |
| Los Angeles, CA 90067 | Washington, DC 20004 |
| (310) 255-9005 | (202) 739-3000 |

CATHERINE L. ESCHBACH
MORGAN, LEWIS & BOCKIUS
1000 Louisiana Street, Suite 4000
Houston, TX 77002
(713) 890-5719

*Counsel for Space Exploration Technologies Corp.*

# CERTIFICATE OF SERVICE

I certify that on this day, October 7, 2024, I served a true and correct copy of the foregoing Appellant's Reply Brief on counsel of record for all other parties through this Court's CM/ECF system:

DAVID P. BOEHM
NATIONAL LABOR RELATIONS BOARD
1015 Half Street, S.E., Fourth Floor
Washington, D.C. 20003
David.Boehm@NLRB.gov
T: (202) 273-4202
F: (202) 273-4244

*Counsel for Respondent*
*National Labor Relations Board*

s/ Michael E. Kenneally
MICHAEL E. KENNEALLY

*Counsel for Space Exploration*
*Technologies Corp.*

**CERTIFICATE OF COMPLIANCE**

1.      This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), this document contains 6,473 words.

2.      This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and 5th Cir. R. 32.1, and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document was prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font.


Dated:  October 7, 2024                    s/ Michael E. Kenneally
                                                          MICHAEL E. KENNEALLY

                                                          *Counsel for Space Exploration Technologies Corp.*